1  ERIKSON LAW GROUP
   David Alden Erikson (SBN 189838)
2    david@daviderikson.com
   Antoinette Waller (SBN 152895)
3    antoinette@daviderikson.com
   S. Ryan Patterson (SBN 279474)
4    ryan@daviderikson.com
   200 North Larchmont Boulevard
5  Los Angeles, California 90004
   Telephone: 323.465.3100
6  Facsimile: 323.465.3177

7  Attorneys for Plaintiff Francesca Gregorini

8

9                    UNITED STATES DISTRICT COURT

10       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12

13  FRANCESCA GREGORINI,              Case No. 2:20-cv-00406-JFW-JC
                                      Hon. John F. Walter
            Plaintiff,
14
         v.
15
    APPLE INC., a California corporation;   **PLAINTIFF'S OBJECTION TO**
16  M. NIGHT SHYAMALAN, an                  **DEFENDANTS' REQUEST FOR**
    individual, BLINDING EDGE               **JUDICIAL NOTICE**
17  PICTURES, INC., a Pennsylvania
    corporation; UNCLE GEORGE              **[Filed concurrently with Plaintiff's**
18  PRODUCTIONS; a Pennsylvania           **Opposition to Motion to Dismiss]**
    corporation; ESCAPE ARTISTS LLC,
19  a California limited liability company;
    DOLPHIN BLACK PRODUCTIONS,           Date:  April 27, 2020
20  a California corporation; TONY        Time:  1:30 p.m.
    BASGALLOP, an individual; ASHWIN      Crtrm: 7A
21  RAJAN, an individual; JASON
    BLUMENTHAL, an individual; TODD
22  BLACK, an individual; STEVE TISCH,
    an individual; and DOES 1-10,
23  inclusive

24
            Defendants.
25

26

27

28

1   Plaintiff respectfully submits this Objection to Defendants Apple Inc.; M. Night

2   Shyamalan; Blinding Edge Pictures, Inc.; Uncle George Productions; Escape Artists

3   LLC; Dolphin Black Productions; Tony Basgallop; Ashwin Rajan; Jason Blumenthal;

4   Todd Black; and Steve Tisch's (collectively "Apple") Request for Judicial Notice

5   ("RJN").

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

OBJECTION TO REQUEST FOR
JUDICIAL NOTICE

## I.   INTRODUCTION

Apple asks the Court to judicially notice several "works" and three additional facts. As explained below, Plaintiff does not object to notice of the allegedly infringing work (the first three episodes of *Servant*). Plaintiff objects, however, to Apple's further requests for judicial notice, as detailed below. Briefly:

- Plaintiff objects to Apple's request that the Court judicially notice Episodes 4-10 of Season 1 of *Servant*. Plaintiff does not allege that these episodes infringe her work, and cannot be said to have incorporated them into her First Amended Complaint ("FAC") because she does not mention or refer to them.

- Plaintiff objects to Apple's request that the Court judicially notice one of the "trailers" for *Servant*—for the same reasons. Plaintiff does not mention or refer to the trailer—and there is no reason to believe that the trailer is part of *Servant*, or even that Apple created it.

- Plaintiff objects to judicial notice of the fact that "**using a doll to cope with grief is a widely known therapeutic technique in real life**" because it is subject to dispute (and indeed is probably false); and is improperly offered as evidence to factually challenge the FAC.

- Plaintiff objects to judicial notice of the facts that "many expressive works feature" certain features and premises—because judicial notice of third party works is improper, and because the purported facts are unsupported by competent evidence, and subject to dispute (especially given that the word "many" renders them a subjective value judgment).

## II.   JUDICIAL NOTICE REQUIRES THAT AN ADJUDICATIVE FACT BE BEYOND REASONABLE DISPUTE.

Courts may not take judicial notice of an adjudicative fact that is reasonably subject to dispute. Fed. R. Evid. 201(b) advisory committee's note (1972) ("With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy.")

1   Rule 201(b) contains two different tests for determining whether a factual

2   assertion has attained a sufficiently high degree of certainty that it would be consonant

3   with fair procedure to dispense with formal proof. The first, traditional test, is whether

4   the fact is not subject to reasonable dispute because it is "generally known" within the

5   territorial jurisdiction of the trial court. Fed. R. Evid. 201(b)(1). The second test is

6   whether the fact is not subject to reasonable dispute because it is "capable of accurate

7   and ready determination" by reference to sources the accuracy of which cannot

8   reasonably be questioned. 2 Moore's Federal Rules Pamphlet § 201.6 (2019); Fed. R.

9   Evid. 201(b)(2); *Hawaii v. Trump*, 859 F.3d 741, 773 n. 14 (9th Cir. 2017). Both tests

10   have a common theme: the basic restriction that the fact must not be subject to

11   reasonable dispute. 2 Moore's Federal Rules Pamphlet § 201.6 (2019).

12                    **III.    THE COURT SHOULD DENY APPLE'S REQUESTS**

13   **A.     The Court should deny Apple's request to judicially notice Episodes 4-10.**

14          If there's one thing a copyright plaintiff has control of, it is the particulars of

15   her claim: what allegedly infringes what. *See*, *e.g.*, *Zella v. E.W. Scripps Co.*, 529 F.

16   Supp. 2d 1124, 1132 (C.D. Cal. 2007) (declining to take notice of all episodes of a

17   show where the pleadings only referenced specific episodes, because "as masters of

18   their Complaint, Plaintiffs must allege the best facts for their case."). Here, Plaintiff

19   explicitly alleges that episodes 1-3 of the series *Servant* infringe on her film *The Truth*

20   *About Emanuel*. [FAC, ¶ 2, fn. 1.]

21          1.    **Episodes 4-10 are not incorporated into the FAC.**

22          Apple seeks judicial notice of all *Servant* episodes that have aired to date, based

23   on the doctrine of incorporation by reference. [RJN 1:12-24.] That doctrine allows a

24   court to take judicial notice of certain key documents referenced in a complaint—even

25   though not attached—on the theory that they are incorporated by reference. [RJN, §1.]

26   Apple claims the standard is that documents are deemed incorporated when they are

27   "referenced" in the complaint. [RJN, 1:12-24.] But while that is one prerequisite,

28   *Apple inexplicably neglects to mention the more important requirement that the*

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

2                                    OBJECTION TO REQUEST FOR
                                    JUDICIAL NOTICE

1    *document be central to the plaintiff's claim.* United States ex rel. Lee v. Corinthian

2    Colls., 655 F.3d 984, 999 (9th Cir. 2011).

3         The full and proper statement of the doctrine is that courts *may* "consider

4    unattached evidence on which [a] complaint 'necessarily relies' if: (1) the complaint

5    refers to the document; (2**) the document is central to the plaintiff's claim**; and (3)

6    no party questions the authenticity of the document." *United States ex rel. Lee*, 655

7    F.3d at 999 (9th Cir. 2011) (internal citations omitted, emphasis added); *Lee v. City of*

8    L.A., 250 F.3d 668, 688-89 (9th Cir. 2001). "This rule serves a critical policy interest

9    in preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately

10   omitting references to documents upon which their claims are based." *Zella,* 529

11   F.Supp.2d at 1131 (C.D. Cal. 2007) (internal quotations omitted).

12         In copyright infringement cases, this means that only that the allegedly

13   infringing and infringed materials are deemed to be incorporated—as reflected in

14   Apple's own cases, which all involve incorporation only of the allegedly

15   infringing/infringed material. The plaintiff in *Brown v. Electronic Arts* alleged

16   unauthorized use of his image in a video game, and the court took judicial notice of

17   that video game. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 n.7 (9th Cir. 2013). In

18   *Silas v. Home Box Office*, the plaintiff alleged that the defendants' entire television

19   series (not any particular episode) infringed his copyright; and the court took judicial

20   notice of the entire television series. *Silas v. HBO, Inc.*, 201 F. Supp. 3d 1158, 1169

21   (C.D. Cal. 2016). In *Gadh v. Spiegel*, the plaintiff alleged that the defendants' film

22   infringed his screenplay, and the court took judicial notice of the screenplay and the

23   allegedly infringing film. *Gadh v. Spiegel*, 2014 U.S. Dist. LEXIS 64081, at *6 n.2

24   (C.D. Cal. Apr. 2, 2014). In *Zella v. E.W. Scripps Co*., the plaintiffs alleged that the

25   defendants' show, "as an ongoing series," infringed on the treatment and script for a

26   cooking show, and the court took judicial notice of specific episodes. *Zella* 529 F.

27   Supp. 2d at 1128 (C.D. Cal. 2007).

28

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

OBJECTION TO REQUEST FOR
JUDICIAL NOTICE

Apple cites each of these cases with a parenthetical suggesting that the material was deemed incorporated because it was "referenced" in the Complaint. That is incorrect. The materials in each case were the specific works alleged to be infringing.

### 1. The FAC does not in fact reference episodes 4-10 of *Servant.*

Even if the standard were as Apple incorrectly describes it, judicial notice of Episodes 4-10 would be improper because Plaintiff does not even reference these episodes. [See, e.g., FAC ¶ 1, cited at Apple's Motion to Dismiss ("MTD"), 1:26-28.]

Apple argues that Plaintiff's allegations of specific similarities "extend beyond the first three episodes." They do not. The FAC contains over 19 paragraphs, across twenty-five pages, of detailed similarities between Plaintiff's film and *Servant* (see FAC, ¶¶ 63-81) yet Apple identifies only two allegations that they claim are "beyond the first three episodes": (1) the nanny character being "revealed to have targeted the mother"; and (2) a reference to "a number of scenes of family and extended-family dinners" (which Apple asserts occurs only once in the first three episodes). [RJN, 2:10-18.] But Apple mischaracterizes these allegations in stretching to argue that they refer to Episodes 4-10.

With regard to the nanny targeting the mother, Plaintiff alleges that this may be inferred from the first episode because the nanny "seemingly has a live baby at the ready." [FAC, ¶ 78 (30:3, 4).] With regard to the dinner scenes, there are indeed multiple "scenes of family and extended-family dinners" in the first three episodes. Apple's argument to the contrary relies on easily refuted word games. Apple doesn't argue that there is only one dinner scene in the first three episodes—but rather only that there is only one *extended-family* dinner scene. Apple would agree there were multiple *family* dinner scenes, which makes Plaintiff's allegation entirely correct even with respect to the first three episodes. [See FAC ¶ 68 (23:12-22), identifying by time stamp family dinner scenes in episodes 1 and 2 of *Servant.*]

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

4

OBJECTION TO REQUEST FOR
JUDICIAL NOTICE

**2.  The FAC does not rely on references to the series as a whole.**

In even more of a stretch, Apple urges the court to consider Episodes 4-10 based on FAC snippets that purportedly relate to the entire series. [RJN 1:25-2:22.] To support this claim, Apple combs through the FAC to find any background mention of the series as a whole. For example, Apple argues that Plaintiff's claims are "based upon[] Defendants' television series" because the FAC identifies "*Servant* as one of eleven 'shows' launching [Defendant Apple's] streaming service," and states that "*Servant* is meant to showcase Apple's new streaming service." [RJN, 1:25-2:1.] Apple goes so far as to argue that the FAC incorporates the entire season because it cites to an "article discussing *the entire season* of *Servant* and notes that defendant Tony Basgallop wrote 'all 10 episodes,'" [RJN 2:1-4 (italics in original).]

But acknowledging that *Servant* is a television show does not equate to incorporating the entire show by reference or involuntarily asserting that the entire show infringes. This is so because "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018) (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

2.  **Episodes 1-3 are an organic unit.**

There is nothing arbitrary about Plaintiff alleging that the first three episodes infringe. Plaintiff alleges these episodes are an organic and self-contained whole—in part because they were written as a unit, long before the other episodes; and presented to the public together on November 28, 2019 as the Series "pilot". [FAC, ¶ 13, fn. 3.] These allegations, of course, are taken as true in the context of a 12(b)(6) motion.

Furthermore, it is axiomatic that a portion of a defendant's entire work can infringe a plaintiff's work—for the simple reason that adding original material to another's work does nothing to mitigate an infringement. 4 Nimmer on Copyright § 13.03[B][1][a] (2019) ("It is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

5

OBJECTION TO REQUEST FOR
JUDICIAL NOTICE

1   element of plaintiff's work can be shown"); *L.A. Printex Indus., Inc. v. Aeropostale,*

2   *Inc.*, 676 F.3d 841, 851 (9th Cir. 2012). "No plagiarist can excuse the wrong by

3   showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn*

4   *Pictures Corp.*, 81 F.2d 49 (2d Cir. 1936); *see also*, *Shaw v. Lindheim*, 919 F.2d 1353,

5   1362 (9th Cir. 1990).

6          Also, there are certainly examples of courts respecting a plaintiff's allegation

7   that only certain episodes infringe. For instance, in *Funky Films, Inc. v. Time Warner*

8   *Entm't Co., L.P.*, the district court compared the plaintiff's screenplay with the first

9   three episodes of the defendants' allegedly infringing show. *Funky Films, Inc. v. Time*

10  *Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006); *see also*, *Shaw v.*

11  *Lindheim*, 919 F.2d 1353, 1363-1364 (C.D. Cal. 1992) (copyright infringement claim

12  based solely on the alleged infringement of the plaintiff's script by the pilot episode of

13  the defendants' television series). And while the plaintiffs in *Zella* alleged that the

14  defendants' show, "as an ongoing series," infringed, the court considered only those

15  specific episodes identified by the parties, and denied the plaintiffs' request to

16  consider all 150 episodes of the show. *Zella*, 529 F. Supp. 2d at 1128.

17  **B.      The Court should deny Apple's request to consider the trailer for *Servant*.**

18         Apple further argues that the Court should consider "the official *Servant* trailer

19  released on YouTube by Apple TV+" because "Plaintiff's FAC *begins* by alleging

20  how Apple TV+ and M. Night Shyamalan are heavily promoting their original series

21  *Servant*," and "alleges that Defendants 'distributed and promoted' *Servant* in

22  California." [RJN 2:25-3:1 (italics in original).] These background allegations—even

23  in their original context—do not justify taking judicial notice of any of the *Servant*

24  trailers, because the FAC makes no reference to such a trailer, and Plaintiff's claims

25  do not rely on the content (or even existence) of a trailer. In other words, Plaintiff

26

27

28



OBJECTION TO REQUEST FOR
                                                          JUDICIAL NOTICE

1  does not mention "the official *Servant* trailer" in her FAC, much less allege that the

2  trailer infringes her copyright.[1]

3        Apple's request should also be denied based on their failure to properly

4  authenticate the trailer, or provide the Court (or Plaintiff) with the material to be

5  noticed. Indeed, Apple does not identify who created the "official trailer." And (since

6  we are now citing the internet at will), Plaintiff will point out that (1) there appears to

7  be more than one official trailer, and (2) studios commonly outsource to independent

8  "trailer houses." *See*, *e.g.*, Matthew Kitchen, "Meet the People Who Grind Out the

9  Best Movie Trailers in the World," The Ringer (July 23, 2018), available at

10 https://www.theringer.com/movies/2018/7/23/17601024/movie-trailer-editors-marvel-

11 pixar-how-made. In fact, it is quite common for the creative persons behind a series to

12 vehemently object to the contents of a trailer, because trailer houses don't mind

13 ruining surprises for the sake of attracting more viewers.

14       Again, the fact that the trailer (when properly authenticated) might constitute

15 relevant evidence does not mean it is incorporated. *Khoja*, 899 F.3d at 1002-03.

16 **C.**     **The Court should deny Apple's request to judicially notice that "using a**

17        **doll to cope with grief is a widely known therapeutic technique in real life."**

18       In her Complaint, Plaintiff alleges that:

19     No doctor or therapist has or would recommend such a "therapy," as
20     Servant acknowledges by calling it quackery. The reason no serious
       therapist would recommend using a doll to deal with a mother's grief is
21     that it is antithetical to all goals of bereavement therapy, which
       emphasizes recognizing and genuinely working through authentic
22     emotions. Indeed, use of a doll for grief would not even qualify as a
       fringe therapy, or even as a myth. It's not a therapy that has ever been
23     studied, and most doctors have never heard of it (which renders its
       mirror-image treatment in Emanuel and Servant all the more
24     remarkable). [FAC ¶ 71, fn. 10.]

25

26 _____

[1] Apple references the trailer in its Motion to Dismiss solely as a defense (of sorts) to Plaintiff's
27 claims. However, the fact that the trailer merely creates a defense does not mean that it forms the
   basis of the FAC. *Khoja*, *supra*, 899 F.3d at 1002-03. "Otherwise, defendants could use the doctrine
28 to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id*.

**ERIKSON**
**LAW GROUP**
ATTORNEYS
LOS ANGELES CA

Apple seeks judicial notice of precisely the opposite fact: that "using a doll to cope with grief is a widely known therapeutic technique in real life." Apple bears the burdens of persuading the Court that a particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination. *Promotions v. Zaslavsky*, 2016 U.S. Dist. LEXIS 195406, at *14 (C.D. Cal. Oct. 5, 2016).

In support of its purported fact, Apple cites a smattering of Internet articles and videos from various websites and television programs that "have covered the phenomenon of reborn dolls." [RJN, 3:25-6:4.] As a threshold matter, Apple's request is improper because the source materials it relies on are not properly before the court. Apple does not request that the Court take judicial notice of the content of these articles—presumably because doing so would imply that the adjudicative fact to be noticed is not "widely known."

It's also worth mentioning that the Internet sites and videos that Apples cites—even if they were properly before the Court—do not show what Apple claims they do. Most of the videos are simply about the remarkable—and for some obsessive—hobby of collecting reborn dolls. If "therapy" is mentioned, it usually refers only to the soothing value of having such a hobby—as one might say about needlepoint. If psychologists are quoted, it is usually only to opine that the hobby can go too far. Only a few involve psychological therapy, and some of those are about dementia patients. The few items that even touch on the idea of a bereaved mother owning a reborn are simply testaments to the idea that you can find pretty much anything discussed on the internet (especially if you are willing to treat lifestyle sites or the "Malta Independent" as learned treatises). To put it mildly, Apple fails to dispositively refute the allegation that real therapists have never heard of doll therapy for bereavement, because such therapy does not exist. Even *Servant* itself treats the therapy as quackery. [FAC, ¶ 71, fn. 10.]

To put it mildly, Apple fails to dispositively refute Plaintiff's allegation that real therapists would never recommend doll therapy to a bereaved mother, because

OBJECTION TO REQUEST FOR
JUDICIAL NOTICE

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

1  there is no such recognized therapy. Indeed, Apple's sources fail to unearth a single

2  medical professional or therapist that acknowledges actually recommending a doll to a

3  patient. Indeed, Dr. Gail Saltz's Today Show article (which had nothing to do with

4  bereavement therapy) begins with an acknowledgement that "there has been no

5  specific research on the phenomenon of women owning lifelike doll babies." [RJN,

6  4:18-26 (citing https://www.today.com/health/fake-babies-ease-womens-anxiety-

7  sadness-wbna26974105).] Similarly, in the segment that Apple cites from *The*

8  *Doctors*, a psychologist describes the relationship between a collector and her dolls as

9  "one of those things that can go from a hobby to something that isn't quite right…

10  You start to get concerned about a person's psychological well-being…." During this

11  segment, the panel of hosts frequently laugh about the topic and one confesses that

12  she tried to hold one of the dolls but "it creeped me out!" [*Id.*, 5:28 (citing

13  https://www.youtube.com/watch?v=VuXG696Ofts).]

14         Several of the videos that Apple cites explore whether the women who collect

15  reborn dolls need therapy *because* of this odd hobby, not whether the *dolls* are

16  therapeutic. For instance, Dr. Phil McGraw (who holds a PhD in clinical psychology)

17  does not opine on the "therapeutic technique" of using dolls to cope with grief, but

18  treats the matter as a joke by sending a comedian to interview a group of women that

19  collect reborn dolls—a hobby he calls "creepy" and "kind of odd." [Id., 5:25-26

20  (citing https://www.youtube.com/watch?v=Dt-lQepN1kA).] He closes the segment by

21  mockingly asking a reborn doll collector if she is "too old to play with dolls?" [*Id.*]

22  **D.     The Court should deny Apple's request to take judicial notice of the**

23          **contents of "expressive works" not at issue in this case.**

24         Apple seeks judicial notice of the "facts" that "many expressive works feature"

25  (1) "a character treating a doll as their child," and (b) "the premise of hiring a nanny

26  or babysitter." One immediate difficulty is that it is hard to say whether the proffered

27  "facts" are true or false, due to the imprecision of the word "many." Do ten films

28  count as many? Thirty? Does it matter that there are probably many more films about

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

OBJECTION TO REQUEST FOR
                                                            JUDICIAL NOTICE

1    babysitters than about dolls treated as children? Because these questions cannot be

2    objectively answered, the propositions in question—which are value judgments—

3    cannot be said to be beyond dispute.

4        Apple's requests should also be denied because judicial notice of "movies,

5    television shows, novels, [] news media," etc., that allegedly "contain . . . elements"

6    featured in Plaintiff's work, is improper. *Silas v. Home Box Office, Inc.*, 201 F. Supp.

7    3d 1158, 1170 (C.D. Cal. 2016). The contents of such third-party works cannot be

8    deemed "generally known" or "capable of accurate and ready determination by resort

9    to sources whose accuracy cannot be questioned." *Id*. (internal quotation marks

10   omitted); *Dillon v. NBC Universal Media, LLC*, No. CV 12-09728 SJO (AJWx), 2013

11   U.S. Dist. LEXIS 100733, at *13-15 n.3 (C.D. Cal. June 18, 2013) (refusing judicial

12   notice of shows that allegedly featured the elements in plaintiff's television

13   treatment). The *Silas* court thus rejected the defendants' request for judicial notice of

14   uncontroversial elements offered as common to depictions of the lifestyles of

15   professional football players, such as "cocky football players driving flashy sports

16   cars…." *Silas*, 201 F. Supp. 3d at 1169.

17       Further, Apple supports these requests solely by citing the contents of postings

18   on various websites that purport to describe the contents of a variety of other

19   "expressive works." [RJN § III.] Apple does not seek judicial notice of these source

20   materials, much less the third-party works they purport to describe, and therefore has

21   no competent support for their requests. *See*, *Dahl v. Toyota Motor Sales USA, Inc.*,

22   No. 2:14-CV-1737 JCM (PAL), 2015 U.S. Dist. LEXIS 29757, at *6-7 (D. Nev. Mar.

23   10, 2015) (refusing to take judicial notice of evidence gleaned from the Internet "that

24   the storyline of a lost instrument found and returned to its original owner is common

25   and prevalent in public works") (internal quotation marks omitted); *Columbia*

26   *Pictures v. Bunnell*, No. CV 06-01093 FMC (JCx), 2006 U.S. Dist. LEXIS 100480, at

27   *3-4 (C.D. Cal. May 10, 2006) (refusing to take judicial notice of the contents of

28   internet search for variety of copyrighted works).

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

OBJECTION TO REQUEST FOR
                                          JUDICIAL NOTICE

1

2    DATED: 4/6/2020                    ERIKSON LAW GROUP

3

4                                       By: _____

5                                            DAVID A. ERIKSON
                                             Attorneys for Plaintiff Francesca Gregorini
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

11                    OBJECTION TO REQUEST FOR
                      JUDICIAL NOTICE

**PROOF OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California.  My business address is 200 North Larchmont Boulevard, Los Angeles, CA 90004.

On **April 6, 2020**, I served true copies of the foregoing document(s) described as: **PLAINTIFF'S OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE** on the interested parties in this action as follows:

☑ BY CM/ECF.

☐ BY MAIL: I placed a true and correct copy of the document listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

☐ BY PERSONAL SERVICE: I caused the document listed above to be personally delivered to the persons at the address set forth below.

Nicolas Jampol
Davis Wright Tremaine LLP
865 S Figueroa Street, Suite 2400
Los Angeles, CA 90017
Email: nicolasjampol@dwt.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **April 6, 2020**, at Los Angeles, California.

_/s/ David A. Erikson_
David A. Erikson



12                                      OBJECTION TO REQUEST FOR
                                        JUDICIAL NOTICE