NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
CAMILA PEDRAZA (State Bar No. 329984)
  camilapedraza@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLINDING EDGE PICTURES, INC.; UNCLE GEORGE PRODUCTIONS, LLC; APPLE INC.; ESCAPE ARTISTS, INC. (erroneously sued as ESCAPE ARTISTS LLC); DOLPHIN BLACK PRODUCTIONS; M. NIGHT SHYAMALAN; TONY BASGALLOP; ASHWIN RAJAN; JASON BLUMENTHAL; TODD BLACK; STEVE TISCH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA GREGORINI,<br><br>    Plaintiff,<br><br>  vs.<br><br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 2:20-cv-00406- JFW-JC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: April 27, 2020<br>Time: 1:30 p.m.<br>Dept.: 7A |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  THE COURT CAN ASSESS SIMILARITY AT THIS STAGE ................... 2

III. PLAINTIFF'S THEORIES ABOUT SUBSTANTIAL SIMILARITY AND *SCENES A FAIRE* CONTRADICT ESTABLISHED LAW ................ 3

IV.  PLAINTIFF'S COMPARISON OF THE WORKS IS DEFICIENT ............. 4

    1.  Plot ................................................................................................ 5

    2.  Sequence of Events ...................................................................... 7

    3.  Theme ........................................................................................... 7

    4.  Characters ..................................................................................... 8

    5.  Setting ........................................................................................... 9

    6.  Mood ........................................................................................... 10

    7.  Pace ............................................................................................. 10

    8.  Dialogue ..................................................................................... 10

V.   PLAINTIFF'S LAWSUIT IS NOT SAVED BY HER SELECTION-AND-ARRANGEMENT ARGUMENT ....................................................... 10

VI.  PLAINTIFF'S ADDITIONAL CLAIMS FAIL ............................................ 12

VII. CONCLUSION ................................................................................................ 12

i

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**Cases**

*Apple v. Microsoft*,
　35 F.3d 1435 (9th Cir. 1994) ................................................................................ 4

*Benay v. Warner Bros.*,
　607 F.3d 620 (9th Cir. 2010) ........................................................................... 4, 8

*Braddock v. Jolie*,
　691 Fed. Appx. 318 (9th Cir. 2017) ..................................................................... 2

*Cavalier v. Random House*,
　297 F.3d 815 (9th Cir. 2002) ............................................................................... 4

*Fox Broad. Co. v. Dish Network*,
　747 F.3d 1060 (9th Cir. 2014) ........................................................................... 12

*Funky Films v. Time Warner*,
　462 F.3d 1072 (9th Cir. 2006) ............................................................................. 4

*Gadh v. Spiegel*,
　2014 WL 1778950 (C.D. Cal. Apr. 2, 2014) ....................................................... 2

*Heusey v. Emmerich*,
　692 Fed. Appx. 928 (9th Cir. 2017) ................................................................ 2, 3

*Litchfield v. Spielberg*,
　736 F.2d 1352 (9th Cir. 1984) ............................................................................. 5

*Metcalf v. Bochco*,
　294 F.3d 1069 (9th Cir. 2002) ..................................................................... 10, 11

*Rice v. Fox Broadcasting*,
　330 F.3d 1170 (9th Cir. 2003) ........................................................................... 11

*Ricketts v. CBS*,
　2020 WL 1643864 (C.D. Cal. Feb. 18, 2020) ................................................... 11

*Satava v. Lowry*,
　323 F.3d 805 (9th Cir. 2003) ............................................................................. 10

ii
DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Schkeiban v. Cameron*,
    566 Fed. Appx. 616 (9th Cir. 2014) .................................................................. 2

*Shame on You Prods. v. Banks*,
    120 F. Supp. 3d 1123 (C.D. Cal. 2015) ............................................................ 3

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990) ........................................................................ 11

*Silas v. HBO*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) ......................................................... 3, 8

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ........................................................................ 11

*Smith v. AMC*,
    2019 WL 402360 (N.D. Cal. Jan. 31, 2019) ...................................................... 3

*Swirksy v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ............................................................................ 3

*Tarantino v. Gawker Media*,
    2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) ................................................ 12

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ............................................................................ 3

*Wild v. NBC Universal*,
    513 Fed. Appx. 640 (9th Cir. 2013) .................................................................. 2

*Zella v. E.W. Scripps*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ............................................................ 3

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I. INTRODUCTION

Plaintiff concedes that the overarching concepts she alleges the works share—"a mother so traumatized by her baby's death that she cares for a doll she believes to be her real baby" (FAC ¶ 72 n.11), and "a privileged mother hiring a nanny to care for the doll she believes to be her deceased baby" (Opp. at 1)—are unprotectable under copyright law. She even acknowledges that there "have been a number of literary works featuring teen nannies, maternal longing, realistic dolls, grief, self-delusion, etc." Opp. at 18. In her attempt to survive dismissal, however, Plaintiff makes several novel arguments that are unsupported by the law.

*First*, Plaintiff argues that this Court may not consider whether or not the works are substantially similar as a matter of law despite *extensive* Central District and Ninth Circuit precedent to the contrary. *See* Section II.

*Second*, Plaintiff rejects well-established Ninth Circuit authority setting forth how courts are to assess substantial similarity and instead proposes a new multi-step test that she purports to cobble together from various cases. She also attempts to severely restrict the principle of *scenes a faire* by claiming only those elements that are strictly necessary to a work's premise qualify as *scenes a faire* (and ignores the numerous cases that contradict this theory). *See* Section III.

*Third*, instead of addressing the points raised in Defendants' motion and engaging in a substantive comparison of the works, Plaintiff simply ignores most of the extensive dissimilarities between the works, including the most important ones—like that *Servant* revolves around the mystery of a doll that seemingly turns into a real baby and a seemingly paranormal nanny who might be the cause of supernatural events that occur between her bouts of self-flagellation and meals of canned soup, as compared to *Emanuel*, which is a journey of redemption as two women process their respective grief. *See* Section IV.

*Fourth*, acknowledging that the alleged similarities between *Emanuel* and *Servant* might consist of unprotectable elements, Plaintiff argues that her "selection

1
DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and arrangement" of these elements is protectable.  But courts do not apply "selection and arrangement" in the way that Plaintiff contends—in fact, the Ninth Circuit has not found infringement of a literary work based on its selection and arrangement in almost twenty years.  *See* Section V.

Despite Plaintiff's attempts to confuse and obfuscate, the issue on this motion is straightforward: whether, after filtering out unprotectable elements, the works are substantially similar.  They are not.

## II. THE COURT CAN ASSESS SIMILARITY AT THIS STAGE

Plaintiff claims that substantial similarity "*cannot* be adjudicated at the pleading stage" because "expert analysis is *required*" to dismiss a copyright-infringement claim.  Opp. at 4 (emphases added).  This is untrue.  In copyright-infringement cases, courts can—and frequently do—evaluate substantial similarity on a motion to dismiss, and the Ninth Circuit has affirmed dismissal for lack of substantial similarity under Rule 12(b)(6) in numerous cases involving the same types of works at issue here.  *See, e.g.*, *Heusey v. Emmerich*, 692 Fed. Appx. 928, 929 (9th Cir. 2017) (affirming Rule 12(b)(6) dismissal on ground that defendants' film was not substantially similar to plaintiff's screenplay); *Braddock v. Jolie*, 691 Fed. Appx. 318, 319 (9th Cir. 2017) (same; finding defendants' film and plaintiff's novel not substantially similar), *cert. denied*, 138 S. Ct. 2686 (2018); *Schkeiban v. Cameron*, 566 Fed. Appx. 616, 617 (9th Cir. 2014) (same; defendant's film not substantially similar to plaintiff's novel or screenplay); *Wild v. NBC Universal*, 513 Fed. Appx. 640, 641 (9th Cir. 2013) (same; defendants' television series not substantially similar to plaintiff's novel).  This Court confirmed this principle in *Gadh v. Spiegel*, 2014 WL 1778950, at *3 n.2 (C.D. Cal. Apr. 2, 2014).

Plaintiff's contention that expert testimony is "required" is similarly flawed; in granting defendants' motions to dismiss, these courts necessarily did not consider expert testimony.  Indeed, "courts routinely disregard expert testimony in conducting the extrinsic test, even where it is otherwise properly before the court."

2

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1147 (C.D. Cal. 2015) (granting motion to dismiss), *aff'd*, 690 Fed. Appx. 519 (9th Cir. 2017). Rather than confront the cases in the Central District evaluating similarity of literary works without expert testimony (and affirmed by the Ninth Circuit), Plaintiff instead relies on two Ninth Circuit musical-composition cases, and one Northern District case that expressly rejected the long-established Central District line of cases holding the opposite. Opp. at 4 (citing *Swirksy v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (which, contrary to Plaintiff's cite, does not say that expert testimony is required); and *Smith v. AMC*, 2019 WL 402360, at *6 (N.D. Cal. Jan. 31, 2019) (rejecting *Zella v. E.W. Scripps*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007), *Silas v. HBO*, 201 F. Supp. 3d 1158 (C.D. Cal. 2016), and even *Heusey*, despite *Heusey*'s affirmance from the Ninth Circuit)). These three cases do not upend longstanding precedent that courts may dismiss literary copyright-infringement cases for lack of substantial similarity.

Lastly, while Plaintiff contends that the Court's analysis should be limited to the first three episodes, she relies on content beyond those episodes. For example, the FAC alleges that "the nanny in *Servant* is revealed to have targeted the mother" (FAC ¶ 78), which she repeats in her opposition (Opp. at 11, 20). But *Servant* does not hint that Leanne targeted the Turners until Episode 4, and does not fully explain this until Episode 10. *See* Ex. 4 at 30:50; Ex. 10 at 12:20. Plaintiff cannot rely on content beyond the first three episodes and prevent Defendants from doing the same. The Court may thus consider the entire first season of *Servant*. Importantly, however, whether the Court reviews three or ten episodes of Servant does not alter the conclusion that *Servant* and *Emanuel* are not substantially similar.

### III. PLAINTIFF'S THEORIES ABOUT SUBSTANTIAL SIMILARITY AND *SCENES A FAIRE* CONTRADICT ESTABLISHED LAW

Plaintiff attempts to rewrite the law in several ways. In particular, she purports to distill various Ninth Circuit cases into her own novel articulation of the

3

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

substantial similarity analysis (Opp. at 6-9) despite that the Ninth Circuit regularly recites the actual test: to assess substantial similarity on a motion to dismiss, courts must "filter out and disregard" non-protectable elements and perform an "objective comparison of specific expressive elements," focusing on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in [the] two works." *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 2002). *See also* Mot. at 7-8.

Plaintiff also attempts to dismiss the *significant* differences between the works by claiming differences between works are "immaterial." Opp. at 14-15. In reality, differences in plot, dialogue, and the other extrinsic elements are *routinely* the basis for a lack of substantial similarity. *See, e.g., Benay v. Warner Bros.*, 607 F.3d 620, 625 (9th Cir. 2010) ("a closer examination of the protectable elements… exposes many more differences than similarities"); *Funky Films v. Time Warner*, 462 F.3d 1072, 1078 (9th Cir. 2006) (despite "apparent similarities in plot," works were not substantially similar; "an actual reading of the two works reveals greater, more significant differences and few real similarities at the levels of plot, characters, themes, mood, pace, dialogue, or sequence of events.").

Plaintiff also attempts to restrict the principle of *scenes a faire* to only those elements that are strictly necessary to a work (Opp. at 15-17). In reality, "[f]amiliar stock scenes and themes" *and* "situations and incidents that flow necessarily *or naturally* from a basic plot premise" are not protectable. *Benay*, at 624-625 (emphasis added) (quoting *Cavalier*, 297 F.3d at 822). Generic elements are also disregarded in assessing substantial similarity. *See* Mot. at 8; *Apple v. Microsoft*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("[S]imilarities derived from the use of common ideas cannot be protected").

### IV. PLAINTIFF'S COMPARISON OF THE WORKS IS DEFICIENT

In response to Defendants' fourteen-page, detailed analysis of the alleged similarities between the works (Mot. at 12-25), Plaintiff barely musters a response,

4

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

instead deciding to pick and choose a few elements to dispute (and not the most important ones) and ignoring the rest. For the alleged similarities that Plaintiff bothers to address, she relies on gross mischaracterizations about the works.

### 1. Plot

The alleged similarities that Plaintiff addresses reflect what courts warn against—relying on "random similarities scattered throughout the works." *See Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984). Plaintiff also ignores important dissimilarities and mischaracterizes the remainder:

- Plaintiff does not address the foundational questions in *Servant*—where the baby came from, is the baby actually Jericho brought back to life, who (or what) is the nanny, and is she the cause of the various paranormal events in the house. Nothing even remotely similar is found in *Emanuel*, which, in contrast with *Servant*, spends the majority of the work exploring the question of why Linda is treating a doll as her baby and how she and Emanuel can resolve their feelings of loss together. These are vastly different expressions of an arguably shared premise.

- Contrary to Plaintiff's suggestion, the "dramatic[] reveal" in *Emanuel* is that Chloe is a doll (Opp. at 11), but the actual reveal in *Servant*—the first season's inciting incident—is that the doll seemingly *comes to life*.[1] And while Plaintiff continues to contend that viewers are unsure whether the doll in *Emanuel* comes back to life (Opp. at 11-12), no reasonable viewer would believe that the baby from Emanuel's very-obvious vision might have actually come back to life in the real world of *Emanuel*. *See* Dkt. 13 at 1:10:00. Indeed, in that same scene the baby swims to Emanuel's deceased mother, and even Plaintiff does not contend viewers might think Emanuel's mother has come back from the dead.

---

[1] The doll's existence cannot be the "reveal" in *Servant* as it was shown in the series' trailers and other advertising. It was never hidden and was never "revealed."

5
DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

- While Emanuel keeps the doll hidden, Leanne takes the doll into the outside world without any indication that she is attempting to hide it from others. Leanne does not seem to be "playing along"—she treats the doll exactly as one would treat a real baby, even when she is alone, and even after Sean tells not to.

- Plaintiff doubles down on alleging that "[w]ater imagery plays a prominent role" in both works (Opp. at 12), arguing that Emanuel's fantastical visions of trains and bedrooms filling with water are comparable to one shot of Leanne taking a bath. *Compare* Dkt. 13 at 24:39 & 1:10:00 *with* Ex. 2 at 6:13.

- Plaintiff dismisses as "of little import" that the characters in *Emanuel* achieve catharsis and peace while no character in *Servant* achieves anything resembling those things. Opp. at 15. This is the defining journey throughout *Emanuel*—indeed, "[a]t its core, *Emanuel* is about salvation and redemption." https://www.francescagregorini.com/features/the-truth-about-emanuel/ (quotation marks and ellipses omitted). This is completely absent in *Servant*.

- Plaintiff claims that Defendants "avoid" that both works include "stolen wine to be paired with bread and cheese." Opp. at 12. This is another example of Plaintiff straining to make the works sound more similar than they are. In *Emanuel*, Emanuel and her boyfriend Claude go to a store to buy bread and cheese for a date, and Claude steals some wine. Dkt. 13 at 46:15. In *Servant*, Sean pays Tobe to keep an eye on Leanne while the Turners are out, and Leanne asks Tobe to pick out a bottle of wine from the cellar while she cooks dinner. Tobe rattles through what food he could pair with the wine—naturally, bread and cheese are on the list—but Leanne instead abruptly chops off an eel's head. Ex. 3 at 18:10.

*Emanuel* and *Servant* both feature concepts that Plaintiff concedes are not protectable, including "a mother so traumatized by her baby's death that she cares for a doll she believes to be her real baby" (FAC ¶ 72 n.11) and "a privileged mother hiring a nanny to care for the doll she believes to be her deceased baby"

6

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(Opp. at 1).[2] Beyond these concepts, and the unprotectable similarities that flow from these concepts, the plots of the two works are extremely different.

### 2. Sequence of Events

Plaintiff's argument as to sequence of events boils down to (1) that the works unfold chronologically, (2) that both works have an "interview" scene, and (3) both works feature scenes in which the mother and then the babysitter/nanny apply makeup. Opp. at 19. Each of these three arguments is easily disposed: Plaintiff does not dispute that a linear chronology is unprotectable; Plaintiff admits the "point" of mentioning the interview was regarding the purported similarities in "content and tone," not the sequence of the interview; and two works sharing a scene in which someone applies makeup hardly demonstrates substantial similarity in the sequence of events (in fact, it has nothing to do with sequence of events). *Id.*

### 3. Theme

Despite Defendants' extensive comparison of the themes of the works, Plaintiff's opposition includes a one-paragraph argument disputing just a few of the points made in the motion. Notably, Plaintiff does not contest that *Emanuel*'s primary theme is "motherhood and daughterhood." FAC ¶ 14. *Compare* Mot. at 15 with Opp. at 19. And despite alleging that *Servant* "squanders a compelling premise by missing the female perspective on an extremely female story," FAC ¶ 17, Plaintiff also contends the opposite—that *Servant* similarly features a theme of a "mother/daughter relationship." Opp. at 19.

Plaintiff also contends there is "no hint" that *Servant* has a darker premise than *Emanuel* (Opp. at 19) despite the fact that the *Servant* delves into the supernatural from the very first episode, in which Leanne seems to bring a doll to

---

[2] These concessions highlight the fact that the Court should filter out these concepts regardless of whether or not it judicially notices that using a doll to cope with grief is a widely known therapeutic technique or that works featuring these concepts are commonplace. There is no dispute that they are unprotectable.

7

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

life. *See, e.g.*, Ex. 1 at 34:08. In addition, as Sean questions Leanne's motives and background, he begins to discover wooden splinters all over his body, and then slowly loses his sense of taste, smell, and touch. *E.g.*, Ex. 2 at 10:38, 17:44, 27:10, 28:11. Plaintiff also denies that *Emanuel* includes a theme of a parent losing a spouse and raising a child as a single parent, despite the film's emphasis on Emanuel's relationships with her father and stepmother—elements notably absent from *Servant*. *Compare* Opp. at 19 *with* Dkt. 13 at 3:37, 7:50, 16:45, 45:20, 52:07, 57:01, 1:15:15, 1:16:18, 1:19:43.

### 4. Characters

Plaintiff rejects the assessment of "noticeable differences" between the characters in the works at issue, arguing that *Silas v. HBO* was "obviously wrong" (failing to mention any authority to the contrary). Opp. at 20. Despite Plaintiff's contention that *Silas* was discussing the standard for copyright infringement of a character, *Silas* was actually performing a routine substantial-similarity analysis of the same sort that the Court will perform in this case, and relied on the Ninth Circuit's decision in *Benay* in comparing the characters in the parties' works. *See Silas*, 201 F. Supp. at 1177 (citing *Benay*, 607 F.3d at 626-627). The *Silas* court made the unremarkable observation that where characters are noticeably different, they are not substantially similar. *Id.*

Notably, Plaintiff's opposition fails to address Defendants' arguments about most of the characters mentioned in the FAC—Thomas, Sean, Arthur, Julian, Claude, and Tobe—conceding that these characters are dissimilar. *Compare* Opp. *with* Mot. at 18-20. Plaintiff also fails to address the characters in *Emanuel* with no corollary in *Servant* (such as Emanuel's father and stepmother) or the characters in *Servant* with no corollary in *Emanuel* (such as the private investigator Roscoe).

As for the characters the opposition does address, Plaintiff selects a few of Defendants' arguments (ignoring the rest) and mischaracterizes alleged similarities between the characters. In particular, Plaintiff fails to explain how Emanuel is a

8

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"nanny" despite the facts that the movie calls her a babysitter (so did Plaintiff before this lawsuit), she works at a medical supply store, lives next door to Linda, and appears to only occasionally help with the "baby." Plaintiff also falsely claims there is no potential magic in *Servant*'s first three episodes (Opp. at 20), ignoring the most potentially supernatural moment of the entire series—a doll seemingly turning into a real baby—which occurs in the first episode. In her attempt to make Leanne seem like a normal, everyday teenager, Plaintiff ignores almost everything about Leanne (including her self-flagellation and her penchant for creating mystical wooden crosses, among many other things) and dismisses that she potentially has supernatural powers (contending that is somehow not a character trait). Plaintiff also repeatedly disputes that Emanuel is a quintessential American teen (Opp. at 2, 14), without even attempting to justify the objection.

Plaintiff also ignores Dorothy's ambition, privilege, and pride (three of her defining character features) to incorrectly paint her as some kind-hearted soul desperate to graft her maternal instincts onto the nearest teenager, even going so far as to discount Dorothy's all-consuming job as a news reporter—a focal point in *Servant*—as an "immaterial addition." *See* Opp. at 15, 20-21. Ultimately, Plaintiff has done little to combat the extensive, crucial differences between Emanuel and Leanne, and Linda and Dorothy, as described in detail in Defendants' motion and left mostly undisputed. *See* Mot. at 16-18.

**5.  Setting**

*Emanuel* takes place in a variety of settings, including Emanuel's home, Linda's new Victorian home, the train, Emanuel's work, and a mental institution. *Servant* takes place almost entirely inside the Turners' home. *See* Mot. at 22. Plaintiff contends that both Linda's and the Turners' homes have a "prominent entryway" and wooden staircases, but fails to explain why these apparently minimal and generic similarities are protectable. *See* Opp. at 21. Plaintiff's only other argument as to setting is that both works feature "scenes of the mothers' graves,"

9

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 but concedes both that visiting a gravesite is not protectable, and also that the
2 scenes "are different in the two works." Opp. at 21. *See also* Mot. at 21-22.

### 6. Mood

Plaintiff alleges that the works' moods are similar "even if it's hard to articulate why." Opp. at 21. It goes without saying that this is insufficient to establish similarity. Moreover, beyond the unprotectable concept of "suspense," the moods are quite different in the works. *Emanuel* is a story focused on grief, coping, and healing. While *Servant* also deals with grief, it emphasizes the supernatural, fear, and dread, with no redemption or salvation to be found. *See* Mot. at 22-23.

### 7. Pace

Plaintiff fails to provide any specific analysis of how the works' paces are allegedly similar, instead repeating her allegation that "the characters can barely keep up with events as they unfold"—hardly a protectable concept. *See* Opp. at 22. Further, she concedes that, "as [Defendants] point[] out," *Emanuel* includes "scenes that unfold leisurely," though she seems to falsely contend this applies to *Servant* as well. Opp. at 22. It does not; *Emanuel*'s many moments of calm are absent in *Servant*, which is suspenseful from start to finish. *See* Mot. at 23.

### 8. Dialogue

Again, Plaintiff fails to provide the Court with any specific analysis showing substantial similarity of dialogue. Opp. at 23. Plaintiff thus concedes that the works' dialogue is not substantially similar.

## V.  PLAINTIFF'S LAWSUIT IS NOT SAVED BY HER SELECTION-AND-ARRANGEMENT ARGUMENT

The Ninth Circuit has long held that "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). Notably, since the Ninth Circuit's decision in *Metcalf v. Bochco*,

10
DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

294 F.3d 1069 (9th Cir. 2002), the court has not found infringement under this "selection and arrangement" standard in *any* case involving a film, television show, book, play, or other literary work. *See, e.g.*, *Rice v. Fox Broadcasting*, 330 F.3d 1170, 1178-79 (9th Cir. 2003) (rejecting plaintiff's argument where works did not involve the "same pattern of generic similarities"). *See also Ricketts v. CBS*, 2020 WL 1643864, at *13-14 (C.D. Cal. Feb. 18, 2020) (rejecting plaintiff's selection-and-arrangement argument where the works "[told] decidedly different stories;" holding that "most of the similarities between the two works flow[ed] from the basic plot" or were "overstate[d]") (granting judgment on the pleadings).

      Plaintiff's FAC and opposition do nothing to suggest that the alleged overlap between *Emanuel* and *Servant* is so pervasive, important, and sequential as to constitute a protectable selection and arrangement. Plaintiff's attempt to reorganize, mischaracterize, and oversimplify the works certainly does not make this showing. Even a cursory review of each work reveals how drastically different they are.

      Plaintiff's reliance on *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990), and its progeny *Metcalf v. Bochco*, does not change this conclusion. In its recent en banc opinion in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020), the Ninth Circuit overruled *Shaw* because it required the plaintiff to demonstrate a lower degree of similarity based on the now-rejected inverse ratio rule. *See id.* at 1066-1067 (overruling *Shaw*). *See also Shaw*, 919 F.2d at 1363 (because the defendants admitted they had access to the plaintiff's work, "the required degree of similarity" was "somewhat less"). The *Skidmore* court similarly called *Metcalf* into question, and explained that the selection-and-arrangement theory applies only to "substantial amounts" of shared elements combined in the same "novel arrangement." *Id.* at 1067, 1075. Because Skidmore's purported similarities were "just 'random similarities scattered throughout [the relevant portions of] the works'" (*id.* at 1075 (quoting *Shaw*, 919 F.2d at 1362)), the court found them insufficient to support a selection-and-arrangement theory. *Id.* The same is true in *Emanuel*.

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

11

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## VI. PLAINTIFF'S ADDITIONAL CLAIMS FAIL

Plaintiff claims her allegations, based entirely on information and belief, about early iterations of *Servant* scripts survive dismissal because they are "based on media interviews with the Defendants." Opp. at 24-25. But neither Plaintiff's FAC nor opposition provides even a hint as to what "media interviews" might form the basis of her claim, nor does either allege *any* specific similarities between the Scripts and *Emanuel*. The contention that plaintiffs can survive dismissal without alleging specific facts about an allegedly infringing work, or without even seeing the work, is unsupported. See *Tarantino v. Gawker Media*, 2014 WL 2434647, at *4 (C.D. Cal. Apr. 22, 2014) (Walter, J.) (dismissing claim where plaintiff "merely speculate[d]" that direct copyright infringement "must have taken place"). Moreover, the alleged similarities between *Emanuel* and the Scripts are a subset of the alleged similarities between *Emanuel* and *Servant*; because her claims against *Servant* fail, so too do her claims against the Scripts. See Mot. at 24-25.

Finally, Plaintiff does not dispute that if her direct-infringement claims fail, her claim for contributory and vicarious infringement also fails. See *Fox Broad. Co. v. Dish Network*, 747 F.3d 1060, 1068 (9th Cir. 2014).

## VII. CONCLUSION

One need only view the works at issue in this case to conclude that they are not substantially similar as a matter of law. Accordingly, Defendants respectfully request that this Court dismiss Plaintiff's FAC with prejudice.

DATED: April 13, 2020

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
DIANA PALACIOS
CYDNEY SWOFFORD FREEMAN
CAMILA PEDRAZA

By: /s/ Nicolas A. Jampol
Nicolas A. Jampol

Attorneys for Defendants

12

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4811-0020-4729v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899