ERIKSON LAW GROUP
David Alden Erikson (SBN 189838)
  david@daviderikson.com
Antoinette Waller (SBN 152895)
  antoinette@daviderikson.com
S. Ryan Patterson (SBN 279474)
  ryan@daviderikson.com
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
Facsimile: 323.465.3177

Attorneys for Plaintiff Francesca Gregorini

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FRANCESCA GREGORINI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS; a Pennsylvania corporation; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive<br><br>　　　　　Defendants. | Case No. 2:20-cv-00406-JFW-JC<br>Hon. John F. Walter<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**<br><br>Date:　July 27, 2020<br>Time:　1:30 p.m.<br>Crtrm:　7A |

Plaintiff Francesca Gregorini respectfully submits this Opposition to Defendants Apple Inc.; M. Night Shyamalan; Blinding Edge Pictures, Inc.; Uncle George Productions; Escape Artists LLC; Dolphin Black Productions; Tony Basgallop; Ashwin Rajan; Jason Blumenthal; Todd Black; and Steve Tisch's (collectively "Apple") motion for recovery of attorneys' fees pursuant to 17 U.S.C. § 505 ("Section 505") (the "Motion").

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. DEFENDANTS' MOTION SHOULD BE DENIED. ...................................... 2

    A. Fee awards are evaluated under a well-established five-factor test. ....... 2

    B. Plaintiff's claims are neither frivolous nor unreasonable. ..................... 2

        1. Apple is wrong to suggest that finding lack of substantial similarity as a matter of law somehow establishes unreasonableness. .................................................................................. 2

        2. Here, the Court's own recitation of similarities is sufficient to show that Plaintiff's claim was not unreasonable. ................... 4

        3. There are further undeniable similarities that the Court did not mention. .................................................................................. 5

    C. Apple demonstrates no improper motivation. ......................................... 6

        1. Plaintiff amended her complaint in good faith. ........................... 6

        2. Apple is wrong that the four producers could not have been liable. ........................................................................................... 7

        3. Even if true, the alleged misconduct would not justify a fee award. ........................................................................................... 8

        4. Failure to establish culpability defeats this Motion—because as a practical matter, culpability is a key inquiry. ....................... 9

    D. A fee award is not justified by the goals of "compensation and deterrence." ............................................................................................... 9

    E. The amount of Defendants' requested fees is unreasonable. ............... 10

III. CONCLUSION ............................................................................................... 10

## I. INTRODUCTION

The Court found, as a matter of law, that *Emanuel* and *Servant* are not substantially similar. Even accepting that conclusion, Plaintiff submits that there were sufficient similarities between the works to render her claim colorable, non-frivolous, and not unreasonable. Indeed, even the limited similarities specifically acknowledged by the Court are sufficient to avoid an award of fees under Section 505—all the more so when supplemented by further uncontroversial and unrefuted parallels.

Apple seeks to avoid this result by suggesting that a copyright claim that fails as a matter of law is "routinely" found to be unreasonable. [Motion 5:8-10.] But this assertion flies in the face of the Supreme Court's 2016 reaffirmation of the proposition that fees must not be awarded under Section 505 as a matter of course, and the many cases decided as a matter of law in which fees are denied. See, e.g., *Zindel v. Fox Searchlight Pictures, Inc.*, 2018 U.S. Dist. LEXIS 223906 (C.D. Cal. 2018) ("*Zindel*").

Apple also argues that Plaintiff's bad faith—as evidenced by two litigation choices—weighs in favor of a fee award. But as discussed below, a closer examination reveals that neither of these moves was in any way improper—much less sufficiently culpable to justify a fee award. If anything, that Apple had to stretch this far to find something to offer as improper shows that Plaintiff was a model litigant.

Finally, Apple makes the simple point that an award of fees would deter "similarly situated plaintiffs" from bringing unsuccessful claims. That's probably true—but more important under applicable law is that it would also chill meritorious claims. Indeed, and as explained below, the Supreme Court has recently cautioned against a generalized deterrence argument for exactly this reason. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ("*Kirtsaeng*").

## II. DEFENDANTS' MOTION SHOULD BE DENIED.

### A. Fee awards are evaluated under a well-established five-factor test.

A district court may consider (but is not limited to) five factors in making an attorneys' fees determination pursuant to Section 505. These factors are (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) reasonableness of losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence. *Shame on You Prods. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018) ("*SOYP*"). Since the Supreme Court's 2016 decision in *Kirtsaeng*, district courts should continue to consider all these factors, but accord substantial weight to factual and legal unreasonableness. *SOYP* at 666.

In this case, other than the factor of Apple's success, the circumstances weigh strongly against Apple's over-reaching Motion to recover fees.

### B. Plaintiff's claims are neither frivolous nor unreasonable.

Courts often address the frivolousness and reasonableness factors together. *Zindel* at *6-7. A claim is frivolous when it is clearly baseless, involving fantastic or delusional scenarios. *Id.* at 7.

#### 1. Apple is wrong to suggest that finding lack of substantial similarity as a matter of law somehow establishes unreasonableness.

The fact that a defendant has successfully moved to dismiss a plaintiff's copyright infringement complaint does not render that claim frivolous or objectively unreasonable. *Zindel* at *6-7 (citing cases). When a court weighs whether to grant attorneys' fees, a legal argument that loses is not necessarily unreasonable. *SOYP, at 666* (citing as examples *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013)). A district court may not award attorneys' fees as a matter of course to a prevailing party. *Kirtsaeng,* 136 S.Ct. at 1982.

*Nimmer* criticizes the notion that fees are "routinely" awarded, and makes clear that the Supreme Court has specifically rejected any such approach. 4 Nimmer on

2

Copyright § 14.10 (2019) ("The Fifth Circuit characterized such fees as 'discretionary but routinely awarded.' Later, the Supreme Court disapproved that approach."(citing *Kirtsaeng*)). Further, in cases like this, where liability depends on a finding of the scope of protectability of the copyrighted work, a finding as a matter of law does little to justify an award. See *Seltzer*, 725 F.3d at 1181 (reversing district court's grant of fees, where court relied on fact that plaintiff lost on summary judgment); *Berkla v. Corel Corp.*, 302 F.3d 909, 923 (9th Cir. 2002) (summary judgment for copyright defendant because there was "no protectable expression" in plaintiff's work did not justify fee award).

Apple has unearthed two district court cases (a New York case from 1994 and an unpublished case from this district) for its incorrect proposition that courts "routinely" award fees in cases like this one. But both of these cherry-picked cases (decided prior to *Kirtsaeng*) involved extremely unreasonable claims—and the court treated that finding as something over and above the finding of lack of substantial similarity. In *DuckHole v. NBCUniversal Media*, the court found that the works were similar only in that they were set each set in an animal hospital. *DuckHole Inc. v. NBCUniversal Media LLC*, No. CV-12-10077-BRO, 2013 U.S. Dist. LEXIS 157304, at *15-17 (C.D. Cal. Oct. 25, 2013). Even more of a stretch, in *Williams v. Crichton*, the plaintiff alleged that best-selling novelist Michael Crichton's 400-page thriller "*Jurassic Park*" (and its blockbuster film adaptation) infringed his series of semi-educational 30-page children's books. Like *Duck Hole*, the only element in the two works that the court considered to be arguably similar was their setting—a dinosaur zoo/theme park. *Williams v. Crichton*, 860 F.Supp. 158, 164 (S.D.N.Y. 1994).

In other words, something more than losing as a matter of law is required to demonstrate objective unreasonableness. "Determinations about substantial similarity are rarely obvious." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 444 (9th Cir. 1991) (ruling that plaintiff's arguments were not wholly meritless and denying attorneys' fees on appeal even though copyrighted and accused works shared only

nonprotectable elements); *Zindel* at 9-10; *Segal v. Rogue Pictures*, 2012 U.S. Dist. LEXIS 198293, at *5 (C.D. Cal. 2012) ("Although the Court rejected Plaintiff's arguments because some of the similarities were based on generic elements, and some were based on inaccurate characterizations of the works, this does not establish that Plaintiff's claim had no arguable basis in the law. Indeed, dismissal of Plaintiff's claim required a relatively lengthy and detailed analysis.").

### 2. Here, the Court's own recitation of similarities is sufficient to show that Plaintiff's claim was not unreasonable.

Even this Court's opinion finding a lack of substantial similarity notes enough similarities between the works to demonstrate that Plaintiff's claim was not unreasonable. First, the Court found that the two works share a common premise (which it defined as "a mother so traumatized by her baby's death that she cares for a doll she believes to be a real baby." [Docket No. 39 ("Order"), p. 8, ¶2.] On top of this shared premise, the Court mentioned the following additional similarities:

- "[B]oth *Emanuel* and *Servant* have an unusual element of sexual tension or longing between the mother and the nanny/babysitter." [Order, p. 8, ¶ 4.]
- The nannies "are both attractive, white, 18-year old girls who have long dark hair and blue eyes." [Id., p. 9, ¶, 1.]
- "There are some basic similarities between Linda and Dorothy… both mothers: lost their only child; suffer from a similar delusion; enter 'a trance-like state several times, which we understand to involve a moment when the awful truth of her baby's death might be percolating toward the surface of her consciousness'; are so committed to their delusion that they hire a nanny or babysitter; are in their mid-thirties; are white, sophisticated, and privileged; wear stylish clothing; and channel some of their maternal longing into the nanny/babysitter." [Id., p. 9, ¶, 5.]
- Both husbands "explain how their child died and how their wife came to rely on a doll." [Id., p. 10, ¶ 4.]

- Both dolls "are both 'ultra-lifelike "reborn" baby dolls' who 'have patchy dark hair' and 'look to be about three months old.' The Court agrees that the dolls look alike." [Id., p. 11, ¶ 3.]
- "[B]oth works feature visits to gravesites." [Id., p. 12, ¶ 1.]
- The works "are both psychological thrillers." [Id., p. 12, ¶ 4.]
- "[T]he scenes where the mother considers her post-baby body and stretch marks in a mirror and the scenes where the nanny or babysitter sits at the mother's vanity while applying the mother's makeup are similar in each of the works." [Id., p. 13, ¶ 3.]

Plaintiff submits that these similarities alone are sufficient to establish a colorable claim of infringement.[1]

### 3. There are further undeniable similarities that the Court did not mention.

There are other notable similarities between the works that bolster the reasonableness of Plaintiff's claim. While the Court did not mention these, the following similarities are undeniable and unrefuted by Apple.

- In both works, the nannies *played along with* the mothers' delusion, for personal reasons all their own. [FAC, ¶ 78 (p. 31, ll. 11-21).]
- Early in both works, the audience assumes the baby is real—until it is dramatically revealed to be a reborn doll. [Id., ¶ 78 (p. 31, ll. 1-10.]

---

[1] In addition, there are a number of additional similarities that the Court noted, but discounted as random, involving unprotected elements, or illusory: "(1) in both works, the nanny/babysitter directs her love interest to "steal a bottle of wine (to be paired with French bread and cheese)"; (2) both works feature intimate home birthday dinner celebrations; (3) in both works, the nanny/babysitter faints and awakens to the gaze of concerned faces; (4) in both works, the mother considers her post-baby body and stretch marks in a mirror; (5) in both works the nanny/babysitter applies makeup at the mother's vanity; (6) in both works, the dolls appear to "come back to life"; and (7) both works include magical realism and water imagery." [Order, 13.] Even though discounted, these additional similarities bolster the reasonableness of Plaintiff's claim.

- Both nannies' mothers died years prior, leaving a hole in their lives that the mother partially fills, leading the nanny to adore the mother to an almost irrational degree. [Id., ¶ 70, p. 24, ll. 17-19.]
- In addition to plot parallels, the works share a look and feel, as illustrated by the many images incorporated into the FAC. [Id., ¶ 80.]

With these additional uncontroversial parallels factored in, there is no question that Plaintiff's claim was not frivolous or unreasonable.

**C.  Apple demonstrates no improper motivation.**

Apple claims that the "motivation" factor weighs in favor of a fee award—but it struggles to find convincing evidence of culpability or bad faith. Apple does not argue that Plaintiff is vexatious or motivated by anything other than a sincere belief that her work was infringed. Such a goal cannot constitute improper motivation, even if misguided. See *Twentieth Century Fox Film Corp. v. Streeter,* 438 F. Supp. 2d 1065, 1074-75 (D.Ariz. 2006); *Moofly Prods., LLC v. Favila* 2015 U.S.Dist. LEXIS 121476, at *17 (C.D.Cal. 2015).

Without an improper overarching goal to cite, Apple stretches to find two aspects of Plaintiff's *litigation conduct* that it claims constitute bad faith. But a closer examination reveals nothing close to bad faith.

**1.  Plaintiff amended her complaint in good faith.**

Apple's first demonstration of Plaintiff's improper motive is as follows:

> "despite a detailed, in-person meet and confer regarding Defendants' motion to dismiss the initial complaint, Plaintiff made Defendants go through the exercise of filing the motion just to then decide to slightly amend her complaint…." [Motion 6:17-20.]

Apple's argument is essentially that its meet and confer was so thorough as to be coextensive with its eventual motion, and thus that Plaintiff should have amended then and there if at all, obviating Apple's need to file its motion to dismiss twice. [Id.] In support, Apple argues that the FAC included only "slight" changes—and refers the Court very generally to the basic case documents to verify this fact. [Id., 6:17-22.]

Apple also argues (at least implicitly) that all of Plaintiff's changes are directed to points asserted at the meet and confer.

But in fact, even a cursory glance at the FAC shows that its revisions were far more than "slight." [See Docket 25-1 (redline comparison of original Complaint and FAC.] They are extensive, to say the least. [Id.] Moreover, a number of the new allegations addressed arguments advanced by Apple in its first Motion to Dismiss *that were not discussed at the meet and confer, or discussed only in a cursory manner*.

One example (among many) of Plaintiff amending her complaint in response to arguments that were not fully previewed in the parties' pre-motion conference concerns new allegations that the first three Servant episodes function as a pilot. [See FAC, ¶ 64.] In its original motions to dismiss, Apple strenuously argues that the Court should compare *Emanuel* to the entire first season of *Servant*, even though Plaintiff alleged that the first three episodes were the infringing material. Upon seeing the argument for the first time[2] in Apple's motion to dismiss, Plaintiff chose to amend in order to allege facts supporting its assertion that the first three episodes were the proper unit of comparison, including because they constitute "an organic and self-contained whole, in terms of their story structure and conflict." [Id.]

**2.    Apple is wrong that the four producers could not have been liable.**

Apple's second demonstration of Plaintiff's improper motive is that "Plaintiff asserted her claims against several individual producers who had no creative involvement in Servant." But this fact is simply asserted. There is nothing in the record that sheds light on the particular role of these Defendants—and Apple did not see fit to back up its assertion with a declaration or other evidence. It doesn't even make clear which Defendants it is referring to.

---

[2] The parties Joint Statement reveals that at the pre-motion conference, Apple explained only that it would seek judicial notice of the entire season—not that it would also argue that the content of the later episodes could constitute relevant differences between the works for purposes of the extrinsic test. [See Docket 18 (Joint Statement).]

But more important, these Defendants could be liable for copyright infringement even if they played no "creative role." "Distributing" infringing content constitutes infringement—whether or not the distributing party played a creative role. See *UMG Recordings, Inc. v. Augusto* 628 F.3d 1175, 1177 (9th Cir. 2011). Further, a defendant is liable for copyright infringement if he enjoys a direct financial benefit from the infringement and has the right and ability to supervise such conduct. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Plaintiff specifically alleged liability on this basis. [FAC, ¶ 107.]

Finally, Apple neglects to mention that prior to filing suit, Plaintiff explained the above analysis, and solicited Apple's counsel's thoughts on proper Defendants—explicitly giving the Defendants the opportunity of explaining why any given potential Defendant would not be liable. [Declaration of David Erikson, ¶ 2, Exh. A.] Apple's counsel's response was to "respectfully decline your request that we do a factual and legal analysis of your claims." [Id., ¶ 3.]

### 3. Even if true, the alleged misconduct would not justify a fee award.

As bad faith goes, Apple's candidates are quite benign, and pale in comparison to what has actually been cited as evidencing the kind of improper motivation that could justify a fee award. For example, in *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, the court found that the plaintiff "chose to obstruct and unnecessarily delay the course of this litigation" based on its repeated failure to supply evidence of the complained of infringement up until the date that dispositive motions were due. *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 103 F. Supp. 3d 1242, 1248 (W.D.Wash. 2015). In *Baker v. Baker*, the plaintiff was found to have pursued litigation as an attempt to use the court system to harass his ex-wife." *Baker v. Baker*, 2018 U.S.Dist.LEXIS 225907, at *21 (C.D. Cal. 2018). The court's finding was based on evidence of the plaintiff's pre-litigation threats against his ex-wife and her associates, a complaint that "was complex, unnecessarily acrimonious, and raised numerous novel (but fanciful) legal theories," and the plaintiff's conduct in "filing

numerous unnecessary motions and blatantly ignoring the Local Rules and the Court's admonitions." *Id.*, at *2, *21.

### 4. Failure to establish culpability defeats this Motion—because as a practical matter, culpability is a key inquiry.

Where "evidence regarding [a plaintiff's] motivation [is] equivocal," fees should not be awarded even if the district court ruled against the plaintiff's infringement claim. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007). While the losing party's bad faith is not the only factor to be considered, attorneys' fees generally will not be awarded in copyright cases unless there is some element of moral culpability. 4 Nimmer on Copyright § 14.10 (2019) at [D][6][b] ("culpability [is still] the ever-present touchstone" for the award of attorneys' fees); *Id*. at [D][2][c] (losing party's "culpability emerges as an important, if not **the decisive factor**," in fee analysis) (emphasis added). *Id.*

### D. A fee award is not justified by the goals of "compensation and deterrence."

Apple offers no argument that Plaintiff herself is vexatious or otherwise needs to be deterred. Rather, Apple's argument is that an award of fees would have the effect of deterring plaintiffs like Ms. Gregorini from bringing unsuccessful claims. [Motion 7:3-12 (referring to "similarly situated plaintiffs").]

Apple ignores that the Supreme Court criticized such reasoning in 2016, in *Kirtsaeng*. In fact, Apple inexplicably relies heavily on the unpublished district court order in *Shame on You Productions* (which did not take *Kirtsaeng* into account) [Motion 7:13-18], even though the post-*Kirtsaeng* published Ninth Circuit opinion in that case explains that this very order "might be in tension" with the Supreme Court's hostility to awarding attorneys' fees to a prevailing party as a matter of course, as expressed in *Kirtsaeng*. *SOYP, supra*, at 669. In *Shame on You*, The Ninth Circuit specifically criticized the very aspect of the trial court opinion Apple points to, explaining "[t]he district court did not quite award fees 'as a matter of course,' but it

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

did justify its fee award partly by pointing to reasoning that could be broadly applied to most copyright cases in which a defendant prevails." *Id.*

To the extent that courts and authorities have considered incentives in the abstract, they emphasize the potential chilling effect of Section 505 fee awards against unsuccessful plaintiffs. See *Roth v. Pritikin*, 787 F.2d 54, 57 (2d Cir. 1986). Thus, fees "to prevailing defendants [should] be awarded circumspectly to avoid chilling a copyright holder's incentive to sue on colorable claims." 4 Nimmer on Copyright § 14.10 (2019) at [D][2][a] (internal quotations omitted). The Supreme Court reaffirmed this principle in *Kirtsaeng*, cautioning against "fee-shifting" because such awards "easily discourage" parties from "pursu[ing] the kinds of suits that 'meaningfully clarif[y]' copyright law," creating a "disincentive" for the "risk-averse" to participate in copyright cases at all. *Kirtsaeng*, at 1987. Consistent with these policies, the Ninth Circuit has repeatedly cautioned against imposing fees on losing copyright holders who raised a colorable claim of infringement. See *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 816 (9th Cir. 2003).

### E.   The amount of Defendants' requested fees is unreasonable.

Plaintiff acknowledges that Apple's counsel's discounted hourly rates are reasonable—but disputes the sheer number of hours billed for bringing a motion to dismiss (and a largely duplicative renewed such motion). Because Apple so heavily redacted the bills attached to its moving papers, and failed to explain why such an extraordinary number of hours were required, the amount requested is unreasonable.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Attorneys' Fees.

DATED: July 6, 2020                               ERIKSON LAW GROUP
                                                  By: /s/
                                                      David A. Erikson
                                                      Attorneys for Plaintiff

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

10