NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
CAMILA PEDRAZA (State Bar No. 329984)
  camilapedraza@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLINDING EDGE PICTURES, INC.; UNCLE GEORGE PRODUCTIONS, LLC; APPLE INC.; ESCAPE ARTISTS, INC. (erroneously sued as ESCAPE ARTISTS LLC); DOLPHIN BLACK PRODUCTIONS; M. NIGHT SHYAMALAN; TONY BASGALLOP; ASHWIN RAJAN; JASON BLUMENTHAL; TODD BLACK; STEVE TISCH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA GREGORINI,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,<br><br>　　　　　　　Defendants. | Case No. 2:20-cv-00406-JFW-JC<br><br>**DEFENDANTS' [PROPOSED] STATEMENT OF DECISION GRANTING MOTION FOR ATTORNEYS' FEES**<br><br>Date:　July 27, 2020<br>Time:　1:30 p.m.<br>Dept.:　7A |

## [PROPOSED] STATEMENT OF DECISION

On June 23, 2020, defendants Blinding Edge Pictures, Inc., Uncle George Productions, LLC, Apple Inc., Escape Artists, Inc. (erroneously sued as Escape Artists LLC), Dolphin Black Productions, M. Night Shyamalan, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch (collectively, "Defendants") filed a Motion for Attorneys' Fees ("Motion") pursuant to 17 U.S.C. § 505. On July 6, 2020, plaintiff Francesca Gregorini ("Plaintiff") filed her Opposition to the Motion, and on July 13, 2020, Defendants filed their reply in support of the Motion. After considering the moving, opposing, and reply papers, and all arguments therein, the Court rules as follows:

On January 15, 2020, Plaintiff filed this action. Dkt. 1. On February 18, 2020, Defendants moved to dismiss Plaintiff's Complaint. Dkt. 20. On March 2, 2020, Plaintiff filed a Notice of Non-Opposition to Defendants' Motion (Dkt. 24), and on March 10, 2020, Plaintiff filed her First Amended Complaint ("FAC"). Dkt. 25. Defendants moved to dismiss the FAC on March 24, 2020 (Dkt. 30), and after the parties fully briefed the motion, the Court granted Defendants' motion to dismiss with prejudice on May 28, 2020. Dkt. 39 ("Order"). Defendants moved for attorneys' fees on June 23, 2020 (Dkt. 44) ("Motion" or "Mot."), Plaintiff opposed on July 6, 2020 (Dkt. 48) ("Opp."), and Defendants filed their reply on July 13, 2020 (Dkt. 49).

Plaintiff's original complaint included claims for direct, contributory, and vicarious copyright infringement, alleging that three of the ten episodes of *Servant* are "strikingly similar" to *Emanuel*. Dkt. 1. Plaintiff filed the lawsuit against the companies that produced and distributed *Servant*, and individuals M. Night Shyamalan (executive producer) and Tony Basgallop (writer), along with four individual producers (Jason Blumenthal, Todd Black, Steve Tisch, and Ashwin Rajan). The FAC asserted the same direct, contributory, and vicarious infringement claims as the initial complaint, and added two new copyright infringement claims

1

against certain defendants regarding alleged "early" and "later" draft scripts for *Servant*'s first three episodes. See FAC ¶¶ 93-104. Both the new claims were made solely "on information and belief." *Id.* ¶ 95 n.15 & 101 n.16.

In dismissing Plaintiff's FAC, the Court found that "many of the alleged similarities in the First Amended Complaint are mischaracterizations of one or both of the works at issue, stock scenes, or scenes a faire," Order at 13, and held that each element considered under the Ninth Circuit's extrinsic test for substantial similarity demonstrated a lack of protectable similarity between *Emanuel* and *Servant*. Accordingly, the Court ruled that "the works at issue are not substantially similar as a matter of law." Order at 14. Because Plaintiff's direct infringement claim regarding *Servant* failed, so too did her claims as to the purported *Servant* scripts and for contributory and vicarious infringement. *Id.* The Court ordered dismissal of Plaintiff's FAC in full, with prejudice. *Id.*

Defendants timely moved for a portion of their reasonable attorneys' fees in connection with their successful motion to dismiss. The Court finds that the factors considered in determining a prevailing party's right to attorneys' fees weigh in favor of Defendants, and awards Defendants their fees in the amount of $162,467.30.

## I. DEFENDANTS ARE ENTITLED TO RECOVER THEIR FEES UNDER THE COPYRIGHT ACT

The Copyright Act grants courts broad discretion to award "full costs," including a "reasonable attorney's fee," to prevailing parties in copyright infringement actions. 17 U.S.C. § 505. Notably, Section 505 requires treating prevailing defendants and prevailing plaintiffs alike. *Fogerty v. Fantasy*, 510 U.S. 517, 534 & n.19 (1994) ("*Fogerty I*"). See also *Inhale v. Starbuzz Tobacco*, 755 F.3d 1038, 1043 (9th Cir. 2014) ("A successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does.").

In assessing whether to award a prevailing defendant's attorneys' fees, courts generally consider several non-exclusive factors, including "the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." *Maljack Prods. v. GoodTimes Home Video*, 81 F.3d 881, 889 (9th Cir. 1996). The U.S. Supreme Court recently reaffirmed these factors and held that courts must give substantial weight to the "objective reasonableness of the losing party's position." *Kirtsaeng v. John Wiley & Sons*, 136 S. Ct. 1979, 1983 (2016).

The Court finds that these factors support granting this Motion.

## A. Defendants Achieved Complete Success in This Litigation

The parties agree that Defendants achieved complete success in their defense of Plaintiff's lawsuit, and that, accordingly, this factor weighs in favor of awarding Defendants their fees. *See* Mot. at 4; Opp. at 2. Moreover, Defendants' success was on the merits, which cuts even more heavily in favor of a fee award. *See, e.g.,* *DuckHole v. NBCUniversal Media*, 2013 WL5797204, at *2 (C.D. Cal. Oct. 25, 2013) ("This factor weighs more heavily in favor of a party who prevailed on the merits, rather than on a technical defense.").

## B. Plaintiff's Claims Were Objectively Unreasonable

Whether a plaintiff's copyright claim was objectively unreasonable must be given "substantial weight" under Section 505. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). While courts also assess whether the claims were "frivolous," such a finding "is no longer required" to award fees under Section 505. *Fantasy v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996) ("*Fogerty II*").

Here, Plaintiff's copyright claims were objectively unreasonable. Simply reviewing the two works makes clear that *Servant* did not copy protectable elements of *Emanuel*. As the Court explained, *Emanuel* and *Servant* "tell completely different stories," and their alleged similarities "pale in comparison to [their] differences." Order at 6, 14. Plaintiff offered the Court a list of scattered

3

similarities, many of which the Court found to be "mischaracterizations of one or both the works at issue," in an attempt to twist two highly dissimilar works into similarity. *See* Order at 13. But the Court rejected Plaintiff's arguments, noting that it was "'unimpressed' with these types of 'random similarities scattered throughout the works.'" Order at 13 (quoting *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir. 1994)). Notably, the Court found a lack of similarity in every category that it assessed, including plot, sequence of events, theme, characters, setting, mood, pace, and dialogue. *See* Order at 6-14. Here, like in *Shame on You Prods. v. Banks*, even though the Court "did note several similarities between the two films," the Court "did not find the substantial similarity issue to be close." 893 F.3d 661, 667 (9th Cir. 2018) (affirming attorneys' fees award to defendants who prevailed in pleadings motion on substantial similarity).

Moreover, Plaintiff's FAC contained no allegations specific to her claims relating to purported scripts for *Servant*'s first three episodes, which she alleged entirely "on information and belief" (*see* FAC ¶ 95 n.15 & 101 n.16), and the Court similarly dismissed those claims with prejudice. Plaintiff's opposition fails to offer any argument as to why those allegations were objectively reasonable.

Plaintiff claims that the Court failed to consider certain "other notable similarities between the works." Opp. at 5. The Court considered each of Plaintiff's alleged similarities in deciding Defendants' motion to dismiss the FAC. If the Court did not explicitly list the "similarity" in the Order, the Court did not consider the "similarity" to be protectable, substantial, or an accurate characterization of the works. But the Court notes that it *did* address each of the four similarities mentioned in Plaintiff's opposition. *See* Order at 7 (Leanne "never treats the doll as anything other than a living child even when no one is watching"; there is nothing to suggest that she was "playing along"); *id.* (the "inciting event" in *Servant* is not that the baby is a doll, it is that the doll becomes a live baby); *id.* at 8 (while Leanne "appears to have some sort of obsessive interest in Dorothy, it is not

4

clear why … or that it originates from maternal longing"); *id.* at 6-14 (explaining in detail the differences between the works, not finding that they shared a "look and feel").

Plaintiff's claims were objectively unreasonable, both legally and factually. This factor thus weighs strongly in favor of granting Defendants' fee request.

**C.   Certain of Plaintiff's Litigation Decisions Lacked a Proper Motive**

Courts also consider a plaintiff's "motivation" in pursuing a lawsuit, though Ninth Circuit unequivocally has held that "a plaintiff's culpability is no longer required" for a prevailing defendant to recover fees. *Fogerty II*, 94 F.3d at 558. Improper motivation can be inferred from evidence that a party engaged in "overly aggressive litigation tactics," or pursued the lawsuit regardless of the merits of the claims. *See Bridgeport Music v. WB Music*, 520 F.3d 588, 593 (6th Cir. 2008) (approving fee award against plaintiff based in part on plaintiff's aggressive tactics and pursuit of futile claims).

Some of Plaintiff's litigation tactics appear to have lacked a proper motive. Specifically, despite the Court's required in-person meet and confer regarding Defendants' motion to dismiss the initial complaint, Plaintiff made Defendants go through the exercise of filing the motion only to then her complaint and add new claims on "information and belief." *See* Dkt. 29 (Joint Statement); Dkt. 20 (Motion to Dismiss Complaint); Dkt. 24 (Notice of Non-Opposition); Dkt. 25 (First Amended Complaint). Her new claims related to purported "early" and "later" versions of scripts for *Servant*'s first three episodes, but included no allegations specific to the scripts. *See* FAC ¶¶ 93-104. Plaintiff's opposition makes no excuse for this tactic. Moreover, Plaintiff named *eleven* entities and individuals as defendants, including four individual producers for whom Plaintiff appears to concede she was unaware of their role, if any, in connection with *Servant*. *See* Opp. at 7.

5

PROPOSED STATEMENT OF DECISION FOR
MOTION FOR ATTORNEYS' FEES
4845-7749-3442v.1 0113237-000003

While this factor favors Defendants, the Court notes that regardless of Plaintiff's motivation in bringing suit or her litigation tactics, her claims were so objectively unreasonable that the Court would award fees to Defendants regardless of the outcome of this factor. *See Kirtsaeng*, 136 S. Ct. at 1985 (courts are to give "substantial weight" to whether a plaintiff's claims are objectively reasonableness).

### D. A Fee Award Is Appropriate to Advance the Copyright Act's Goals of Compensation and Deterring Meritless Litigation

The final factor Courts often consider in deciding motions for attorneys' fees pursuant to 17 U.S.C. § 505 is whether such an award serves "to advance considerations of compensation and deterrence." *Fogerty I*, 510 U.S. at 534 n.19 (internal quotation marks omitted). The Court finds that an award to Defendants would deter Plaintiff and those similarly situated from litigating an objectively unreasonable claim resting on mischaracterizations and superficial and unprotectable similarities between the works at issue. This is especially true here, where Plaintiff's pleading itself admitted that the works' purportedly shared premise is unprotectable. FAC ¶ 72 n.11; Order at 6. Accordingly, this factor weighs in favor of awarding Defendants their reasonable attorneys' fees.

## II. DEFENDANTS' REQUESTED FEES ARE REASONABLE

In determining a reasonable fee award under Section 505, the Court "must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 622 (9th Cir. 1993). "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Id.* Defendants request the following rates and fees incurred in defending against Plaintiff's copyright claims:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Nicolas A. Jampol (Partner) | 159.7 | $541 | $86,397.70 |
| Cydney Swofford Freeman (Associate) | 155.8 | $362 | $56,399.60 |
| Camila Pedraza (Associate) | 70 | $281 | $19,670.00 |
| **Total** | **385.5** | | **$162,467.30** |

As explained below, the Court finds that Defendants' requested rates and hours expended to be reasonable.

**A.    Defendants' Counsel's Billing Rates Are Reasonable**

A reasonable hourly rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) (internal quotes omitted). The "best evidence" of an attorney's reasonable hourly rate is the "rate customarily charged" by that attorney. *Elser v. I.A.M. Nat'l Pension Fund*, 579 F. Supp. 1375, 1379 (C.D. Cal. 1984) (internal quotes omitted). Indeed, "[u]nless counsel is working outside his or her normal area of practice, the billing-rate multiplier is, for practical reasons, usually counsel's normal billing rate." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982).

Defendants request the following hourly rates charged by their defense counsel from Davis Wright Tremaine LLP, a firm nationally recognized for intellectual property litigation: $541 per hour for partner and lead counsel Nicolas A. Jampol; $362 per hour for senior associate Cydney Swofford Freeman; and $281 per hour for junior associate Camila Pedraza. Plaintiff acknowledges that these hourly rates are reasonable. Accordingly, given the attorneys' skills and reputations, as well as the substantial pre-negotiated discount received by Defendants, and absent any dispute from Plaintiff, the Court finds that these rates are reasonable.

7
PROPOSED STATEMENT OF DECISION FOR
MOTION FOR ATTORNEYS' FEES
4845-7749-3442v.1 0113237-000003

### B. The Hours Expended by Defendants' Counsel Are Reasonable

A fee award "should ordinarily include compensation for all hours reasonably spent, including those relating solely to the fee." *Serrano v. Unruh*, 32 Cal. 3d 621, 624 (1982). Defendants' request is reasonable for several reasons.

**First**, Plaintiff chose to sue eleven different individuals and entities in this action. Defendants chose to consolidate their defense by engaging one law firm to represent them all. This choice drastically reduced the overall amount of fees Defendants incurred in defending against Plaintiff's claims, and supports that the fees they did incur were reasonable.

**Second**, Defendants do not request reimbursement for all their time spent defeating Plaintiff's claims. They do not seek reimbursement for the time incurred by other DWT attorneys and paralegals who have assisted with the matter, nor for the time spent on this matter by in-house counsel at Apple, notwithstanding that those fees are recoverable. *See PCLM Grp. v. Drexler*, 22 Cal. 4th 1084, 1094 (2000) (affirming fee award for work performed by in-house counsel, finding "no basis for discriminating" between in-house counsel and outside attorneys on a particular matter). Moreover, Defendants do not seek an award for many hours spent responding to the written discovery Plaintiff propounded. Defendants also do not request attorneys' fees incurred in connection with this Motion.

**Third**, Defendants' motion was entirely successful, and resulted in an early dismissal of Plaintiff's FAC with prejudice. The U.S. Supreme Court has explained that where a prevailing party "has obtained excellent results, [their] attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). This is particularly significant because Plaintiff was not merely seeking damages, but also wide-ranging injunctive relief and attorneys' fees. Dkt. 25 at 48.

**Fourth**, Defendants' attorneys managed this case efficiently and the hours were reasonable in light of the complexity of the issues and the nature of the case.

Defendants' motion to dismiss required defense counsel to demonstrate to the Court that the two works were not substantially similar with respect to plot, characters, themes, and the other elements of the Ninth Circuit's "extrinsic test" for substantial similarity. This, in turn, required careful review and analysis by Defendants' counsel of both *Emanuel* and *Servant*. Defendants' counsel also researched and reviewed numerous other works featuring the elements that Plaintiff claimed as her own. See Dkt. 30 & 30-1 (Defendants' motion to dismiss the FAC and accompanying request for judicial notice).

**Fifth**, the amount requested is within the range of fees awarded to prevailing defendants in other comparable copyright actions. For example, in *Teixeira*, the court awarded $117,741 in attorneys' fees to the defendants after they – like Defendants here – succeeded in obtaining a dismissal with prejudice of the plaintiff's copyright claim on a Rule 12(b)(6) motion. 2015 WL 6146269, at *6-7. *See also Shame on You*, 2016 WL 5929245, at *19 (awarding $315,669.75 in attorneys' fees for defendants' successful motion for judgment on the pleadings); *Wild v. NBC Universal*, 2011 WL 12877031, at *4 (C.D. Cal. July 18, 2011) (awarding $113,041.85 in attorneys' fees and costs for defendants' successful motion to dismiss copyright action).

The Court finds that all these reasons support granting Defendants their reasonable attorneys' fees incurred in defending against Plaintiff's copyright claims, in the full amount requested.

//

//

//

9

PROPOSED STATEMENT OF DECISION FOR
MOTION FOR ATTORNEYS' FEES
4845-7749-3442v.1 0113237-000003

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for attorneys' fees is **GRANTED**. Plaintiff, within 30 days of this date, shall pay to Defendants the amount of $162,467.30 in attorneys' fees incurred defending against Plaintiff's copyright claims.

Dated: _____    By: _____
                                  Honorable John F. Walter
                                  United States District Judge