1
2
3
4
5

ERIKSON LAW GROUP
David Alden Erikson (SBN 189838)
  david@daviderikson.com
Antoinette Waller (SBN 152895)
  antoinette@daviderikson.com
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
Facsimile: 323.465.3177

6

Attorneys for Plaintiff Francesca Gregorini

7

8

9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10
11
12
13
14
15
16
17
18
19
20
21
22

FRANCESCA GREGORINI,

            Plaintiff,

       v.

APPLE INC., a California corporation;
M. NIGHT SHYAMALAN, an
individual, BLINDING EDGE
PICTURES, INC., a Pennsylvania
corporation; UNCLE GEORGE
PRODUCTIONS; a Pennsylvania
corporation; ESCAPE ARTISTS LLC,
a California limited liability company;
DOLPHIN BLACK PRODUCTIONS,
a California corporation; TONY
BASGALLOP, an individual; ASHWIN
RAJAN, an individual; JASON
BLUMENTHAL, an individual; TODD
BLACK, an individual; STEVE TISCH,
an individual; and DOES 1-10,
inclusive

            Defendants.

Case No. 2:20-cv-00406-JFW-JC
Hon. John F. Walter

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
BIFURCATE DISCOVERY AND
PERMIT INITIAL SUMMARY
JUDGMENT MOTION ON
SUBSTANTIAL SIMILARITY**

Date: June 27, 2022
Time: 1:30 p.m.
Dept.: 7A

23
24
25
26
27
28

Plaintiff Francesca Gregorini respectfully submits this Opposition to

Defendants Apple Inc.; M. Night Shyamalan; Blinding Edge Pictures, Inc.; Uncle

George Productions; Escape Artists LLC; Dolphin Black Productions; Tony

Basgallop; Ashwin Rajan; Jason Blumenthal; Todd Black; and Steve Tisch's

(collectively "Apple") motion to bifurcate discovery (Docket #81), (the "Motion").

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.    BACKGROUND ......................................................................................... 3

    A.    Plaintiff alleges that Episodes of 1-3 of *Servant* infringe *Emanuel.* ......................................................................................... 3

    B.    Plaintiff served reasonable discovery more than two years ago, mirroring Apple's initial disclosures—and Apple indicated that it would comply. ............................................................................... 4

    C.    The Court dismissed for lack of substantial similarity. ...................... 4

    D.    The Court of Appeals reversed because "reasonable minds could differ on the issue of substantial similarity." ......................................... 5

III.   LIMITING DISCOVERY TO EXPERT OPINION WOULD BE UNWORKABLE IN THIS CASE .................................................................. 6

    A.    The Ninth Circuit did not reverse on the ground that expert testimony is required—but rather because "reasonable minds could differ on the question of substantial similarity." ......................... 6

    B.    Considering the parties' actual disputes under the extrinsic test reveals that Apple's proposal is entirely unworkable. ........................... 8

        1.    The issue of whether Leanne is merely "playing along" shows the limits of expert testimony. ........................................... 9

        2.    Characterization of the mastitis scene is another good example. ..................................................................................... 10

        3.    The reciprocity of nanny/mother longing is another good example. ..................................................................................... 11

        4.    There are unlimited examples of this type. .............................. 12

        5.    Even disputes where experts could help would also benefit from traditional discovery. ...................................................... 13

    C.    Apple's arguments rely on its misunderstanding of the elements of copyright infringement, and the place of the extrinsic test. ........... 14

    D.    Apple's two seemingly viable legal authorities do not support its position. .......................................................................................... 16

IV.   EVEN BIFURCATION OF DISCOVERY ON SUBSTANTIAL SIMILARITY IS UNWARRANTED ............................................................. 17

    A.    Broad discovery is the norm—and bifurcation is disfavored. ............. 17

    B.    This Court's reversed ruling does not provide good cause—and

OPPOSITION

the Ninth Circuit's findings render summary judgment unlikely.........18

V.     BIFURCATION WOULD PREJUDICE PLAINTIFF...................................19

VI.    CONCLUSION.............................................................................................21

OPPOSITION

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Bassil v. Webster*,
 2021 WL 1235258 (C.D. Cal. 2021) ........................................................ 16, 17

*Batts v. Adams*,
 No. 10-cv-8123-JFW-RZx, Dkt. 116 (May 9, 2011)(Walter, J.)..................... 1

*Baxter v. MCA, Inc.*,
 812 F.2d 421 (9th Cir. 1987) ......................................................................... 14

*Benay v. Warner Bros. Ent.*,
 607 F.3d 620 (9th Cir. 2010) ......................................................................... 15

*Bethea v. Burnett*,
 No. 04-cv-07690-JFW-PLA, Dkt. 64 (March 31, 2005)(Walter, J.) ............... 1

*Broderbund Software, Inc. v. Unison World, Inc.*,
 648 F.Supp. 1127 (N.D.Cal.1986) ................................................................ 16

*Brooks v. Motsenbocker Advanced Developments, Inc.*,
 No. 07cv773 BTM (NLS), 2008 WL 698470 (S.D. Cal. Mar. 14, 2008)....... 18

*Burlington N. Santa Fe. R. Co. v. Assiniboine and Sioux Tribes of Fort Peck
 Reservation*,
 323 F.3d 767 (9th Cir. 2003) ......................................................................... 21

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991)........................................................................................ 14

*Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*,
 25 F.3d 119 (2nd Cir.1994) ........................................................................... 15

*Flynn v. Surnow*,
 No. 02-cv-09058-JFW-PLA, Dkt. 23 (August 8, 2003)(Walter, J.) ............... 1

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
 462 F.3d 1072 (9th Cir. 2006) ....................................................................... 14

OPPOSITION

*Gregorini v. Apple Inc.*,
    2022 WL 522307 (9th Cir. Feb. 22, 2022) ........................................................ 6

*Home Elevator, Inc. v. Miller Elevator Service Co.*,
    933 F.Supp. 1090 (N.D. Ga. 1996) ........................................................ 17

*Koontz v. Jaffarian*,
    617 F.Supp. 1108 (E.D.Va.1985), aff'd, 787 F.2d 906 (4th Cir.1986) .......... 16

*Lee v. Hill* et al.,
    No. 1:19-cv-09220, Dkt. 56 (S.D.N.Y. May 7, 2020) ................................. 17

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*,
    2012 WL 12920191 (N.D. Cal. May 17, 2012) ............................................. 18

*Price v. Fox Entertainment Group, Inc.*,
    2007 WL 1259101 (S.D. N.Y. 2007) ............................................................. 10

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
    668 F.3d 1148 (9th Cir. 2012) ........................................................ 15

*Rogers v. Koons*,
    960 F.2d 301 (2nd Cir.1992) ........................................................ 15

*Rottlund Company, Inc. v. Pinnacle Corporation*,
    2004 WL 1879983 (D. Minn. Aug. 20, 2004) ............................................. 16

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990) ........................................................ 15

*Spectra-Physics Lasers, Inc. v. Uniphase Corp.*,
    144 F.R.D. 99 (N.D. Cal. 1992) ........................................................ 17

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ........................................................ 14

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ........................................................ 14

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018) ........................................................ 14

*Wixen Music Publ'g v. Triller, Inc*,
    2021 WL 4816627 (C.D.Cal. 2021) ............................................................. 16

*Yeasayer, LLC et al. v. Tesfaye*,
    No. 1:20-cv-01608, Dkt. 37 (S.D.N.Y. Apr. 30, 2020) ................................ 17

*Zahedi v. Miramax, LLC*,
    2021 WL 3260603 (C.D.Cal. 2021) ............................................................. 16

**<u>Other Authorities</u>**

Howard B. Abrams, *The Law of Copyright* § 14:10 (2011)....................................... 15

**<u>Rules</u>**

Fed. R. Civ. P. 42(b) ................................................................................................. 17

**<u>Treatises</u>**

Nimmer on Copyright ¶ 13.03 .................................................................................. 15

Patry on Copyright § 9:81 ........................................................................................ 10

OPPOSITION

# I.   INTRODUCTION

There's a reason Apple cites no instances where a court limited discovery to expert testimony on substantial similarity: *because no court has ordered such a thing*. Indeed, this Court regularly denies even far less controversial bifurcation motions because the burden for such relief is high.[1] While Apple relies on conclusions and generalities in its attempt to meet that burden, Plaintiff shows that Apple's proposal defies common sense when applied to the actual controversies of this case.

Apple devotes pages of argument to bifurcation in general, or bifurcation of the issue of substantial similarity. But it offers just one argument for its extraordinary further request that such discovery be limited to expert opinion: that such an approach offers the prospect of an easy and inexpensive disposition of the case, while respecting that the "The Ninth Circuit remanded this case on the basis that this Court should have allowed expert discovery on substantial similarity before making that assessment." [Notice of Motion, 1:22-25.]. Based on that premise, Apple's hope is to have the Court repeat its side-by-side comparison of the works and reach the same result as it did on Apple's motion to dismiss—but now with an expert testimony requirement met.

This argument fails for two overarching reasons. First, the primary reason for

---

[1] *Batts v. Adams,* No. 10-cv-8123-JFW-RZx, Dkt. 116 (May 9, 2011)(Walter, J.)(denying motion to bifurcate the issue of liability and damages for discovery and trial); *Bethea v. Burnett,* No. 04-cv-07690-JFW-PLA, Dkt. 64 (March 31, 2005)(Walter, J.)(denying motion to stay discovery regarding damages, or to stay discovery pending adjudication of defendant's motion for summary judgment, because defendants failed to show good cause for the disruption of the Court's current Scheduling Order); *Flynn v. Surnow*, No. 02-cv-09058-JFW-PLA, Dkt. 23 (August 8, 2003)(Walter, J.)(denying motion to bifurcate discovery and trial of liability and remedies issues).

the Ninth Circuit's reversal of this Court's finding of a lack of substantial similarity was not, as Apple insists, that expert testimony was missing. As shown in Section III(A), a simple review of the ruling—and in particular its final paragraph—shows that the appellate panel's chief rationale was its finding that "reasonable minds could differ on the questions of substantial similarity"—a finding made without qualification and with the benefit of both works in the record. The Court of Appeal also agreed with Plaintiff that because reasonable minds could differ, discovery could be helpful—and thus that it was error to rule without it. It also agreed that one type of discovery that could be useful was expert testimony.

Second, taking a moment to think practically about the parties' actual disputes reveals that limiting discovery to expert opinion would be unworkable in this case. Plaintiff has argued that expert opinion would obviously be helpful on certain issues, which she enumerated—including most obviously the factual propositions Apple sought to establish by judicial notice. But as shown below, *dueling film professors would have much less to contribute to most of the parties' myriad individual disputes than would the traditional discovery afforded every other copyright plaintiff*. This is shown in Section III(B) with actual examples drawn from this case (something Apple does not consider).

If Apple has its way, the next five to twelve months of this litigation will be devoted exclusively to side-by-side comparison of *Emanuel* and *Servant* by experts. But a great deal of evidence that would appear probative of "copying" and "substantial similarity" would be excluded, even from experts' factual investigations. Most notably, neither side would be permitted to gather testimony or documents from the other's creative team (including responses to the document requests Plaintiff served two years ago, which largely mirror Apple's initial disclosures, and with which Apple agreed to comply). Because there is no good reason to partially blindfold the Court, parties, and experts as they analyze substantial similarity, this Motion should be denied. If the parties are working

OPPOSITION

towards Apple's planned motion for summary judgment on substantial similarity, then plaintiff is entitled to all discovery that might be probative on that issue.

Further, as argued in Section IV below, Apple has not even demonstrated that bifurcation of discovery on substantial similarity in general (let alone *expert opinion* of substantial similarity) is warranted. The only way that even such limited bifurcation could make sense is if one assumes in advance that Apple is likely to prevail on this issue on summary judgment. And while the Court previously made such a finding, it's difficult to see how Apple could be confident about dislodging the Ninth Circuit's finding that "reasonable minds could differ" on the issue, which naturally points to resolution at trial.

Apple also blithely reports that Plaintiff would not be prejudiced if forced to rush to find and engage experts, develop analyses and expert reports, take and defend perhaps ten depositions, and defeat a preliminary summary judgment motion. Only Apple, the world's richest company, could find the costs associated with such work to be so trivial that they go unmentioned in its discussion of prejudice. Just as important, such a detour would further delay this case—even after Plaintiff has waited two years for responses to basic discovery.

## II.   BACKGROUND

### A.   Plaintiff alleges that Episodes of 1-3 of *Servant* infringe *Emanuel*.

Plaintiff alleges that the first three episodes of *Servant* infringe *Emanuel*. Because the works are incorporated, Plaintiff's operative complaint serves as a much-abbreviated guidebook of the works' overlap. [Docket # 25 ("FAC"), ¶¶ 63-82.] Also, because some of the similarities are not obvious, the FAC can serve as a preview of Plaintiff's application of the extrinsic test—comparing the works after analytically dissecting them into their constituents parts, which naturally leads to a long list of alleged similarities in the works' plots, settings, characters, etc.. [e.g. FAC ¶ 64.]

The parties also place the defendants' inspiration and development process at

issue. After describing her own very personal reasons for making *Emanuel*, Plaintiff quotes what *Servant's* creator has said about his own motivations. For its part, Apple asserts that "*Servant* was created independently of, and without reference to, *Emanuel*," that "Mr. Basgallop began developing what would become *Servant* in 2006, well before *Emanuel* was released," and even that "[n]one of the Defendants saw or heard of *Emanuel* before this lawsuit," [Joint Rule 26 Report, Docket # 31, 2:24-25; Defendants' April 8, 2020 Initial Disclosures.]

**B.      Plaintiff served reasonable discovery more than two years ago, mirroring Apple's initial disclosures—and Apple indicated that it would comply.**

On April 8, 2020, the defendants served initial disclosures, identifying numerous individuals with discoverable information on "*Servant's* development, pre-production, production, and/or post-production." [Erikson Decl., ¶ 2.] In March and April 2020, Plaintiff served two sets of document requests. [Id.] The requests were what one would expect of an initial set in a copyright case, and the second set largely mirrored Apple's initial disclosures. [Id.] With few exceptions, defendants indicated that they would indeed produce responsive documents, or at least meet and confer to clarify terms. [Id.]

**C.      The Court dismissed for lack of substantial similarity.**

On March 24, 2020, Defendants moved to dismiss the FAC for lack of substantial similarity. Consistent with the extrinsic test, Apple asserted very specific disagreements about individual similarities alleged by Plaintiff. [Apple's Motion to Dismiss ("MTD"), Docket # 30, pp. 8-24.] Apple discounted virtually all the commonalities alleged by Plaintiff on the grounds that the element in question was (a) an unprotectable scene a faire, idea, or stock element, or (b) based on a mischaracterization of one or both works. [Id.]

In opposition, Plaintiff mined each of the works for "evidence"—such as scenes, plot points, and other cinematic elements—to support her characterizations of the works as similar or to take issue with Apple's assertions of unprotectability.

OPPOSITION

[Plaintiff's Opposition to MTD, Docket #34, ("Opposition"), pp. 10-24.] Plaintiff also emphasized the need to build the factual record through discovery, including but not limited to expert discovery. [Opposition § IV(D)(4) ("Evaluating similarities requires discovery and expert testimony").][2] The Court granted Apple's motion, largely adopting Apple's reasoning. [Order granting MTD, Docket #39 ("Order").]

**D.     The Court of Appeals reversed because "reasonable minds could differ on the issue of substantial similarity."**

Plaintiff appealed, on the ground that this Court erred by finding lack of substantial similarity without the benefit of a more developed factual record, discovery, or expert testimony. [Plaintiff's Opening Brief, Appellate Dkt. Entry #15 ("Opening Brief"), § III (Statement of the issues presented for review).] The parties' Ninth Circuit briefing offers a preview of what will follow in this case. With greater page limits (especially for Plaintiff), and the entire works in the record, the parties continued the same individual debates under the extrinsic test, now with the ability to cite to more scenes and cinematic elements as support. [Erikson Decl., ¶3].

The Ninth Circuit reversed. Its key reasoning is featured in a single paragraph:

> Here, the district court's dismissal of Gregorini's suit at this early stage of the case was improper because reasonable minds could differ on the issue of substantial similarity. Moreover, this is a case in which discovery could shed light on the issues that actually matter to the outcome. In particular, expert testimony would aid the court in objectively evaluating similarities in

---

[2] Plaintiff made clear that she sought to introduce expert opinion on some, but not all, alleged similarities: "Plaintiff intends to offer expert testimony on the following subjects, to name a few: (1) whether using a doll is a recognized grief therapy, as Apple asserts; (2) whether certain creative elements are common or scènes à faire, as Apple suggests; (3) the idiosyncrasy/rarity/originality of many expressive elements in the works; (4) the cinematic language and tools relating to creating suspense and discomfort; (5) whether the works in question feature magical realism—and whether the use of magical realism in a psychological thriller is rare; and (6) the differing mediums, formats and conventions of motion pictures and episodic television." [Opposition 24:4-11.]

cinematic techniques, distinguishing creative elements from *scènes à faire*, determining the extent and qualitative importance of similar elements between the works, and comparing works in the different mediums of film and television [*Gregorini v. Apple Inc.*, 2022 WL 522307, *1 (9th Cir. Feb. 22, 2022)("Opinion") (all citations, ellipses, and quotation marks deleted)

Below, Plaintiff carefully walks through the language of this paragraph.

## III.   LIMITING DISCOVERY TO EXPERT OPINION WOULD BE UNWORKABLE IN THIS CASE

If Apple had asked to bifurcate liability and damages, Plaintiff would have listened. If Apple had asked to bifurcate the general issue of copying or substantial similarity, Plaintiff would have listened (but would have ultimately declined, for the reasons advanced in Section V). But Apple's actual request that only expert discovery proceed—and they make no alternative request—is too extraordinary and prejudicial to entertain seriously.

**A.    The Ninth Circuit did not reverse on the ground that expert testimony is required—but rather because "reasonable minds could differ on the question of substantial similarity."**

For purposes of this Motion, several aspects of the Ninth Circuit's opinion are notable. Most critical, Apple's all-important characterization of the Opinion as "based on its determination that expert testimony would aid this Court in assessing substantial similarity" is incorrect.[3] [Motion 1:9-10.].

---

[3] Apple makes this all-important assertion—that the Court of Appeal reversed on the ground that expert analysis was required—again and again. [See Notice of Motion, 1:22-25 ("The Ninth Circuit remanded this case on the basis that this Court should have allowed expert discovery on substantial similarity before making that assessment") Motion 1:7-10 ("The Ninth Circuit reversed those decisions (in an unpublished memorandum disposition) based on its determination that expert testimony would aid this Court in assessing substantial similarity"); 1:16-20 ("Given the Ninth Circuit's decision in this case that the determination of substantial similarity without allowing the parties to engage in expert discovery was improper, ….."), 6:8-15 ("The Ninth Circuit reversed and remanded this case on the grounds that assessing substantial similarity without allowing the parties to engage in expert (footnote continued)

OPPOSITION

1     The Court of Appeals' decision can be best understood by walking through

2     the language of the paragraph quoted above, and especially its use of the transitions

3     "moreover" and "in particular"—an exercise that shows that lack of expert

4     testimony was not the sole, and not even the chief, reason for reversal.

5     The panel leads off with its primary reason for reversal, that:

6     Here, the district court's dismissal of Gregorini's suit at this early stage of
      the case was improper because **reasonable minds could differ on the issue**

7     **of substantial similarity.** [Opinion, *1]

8     This finding was made with the benefit of both works being before the panel, in

9     their entireties. The Ninth Circuit made this finding without offering any prefatory

10    language or qualifications such as "Without the benefit of discovery…" "or "Until

11    expert opinion has been considered…" Further, the word "premature"—which is a

12    critical part of Apple's explication of the Opinion—is found nowhere therein. [See

13    Motion, 6:8-15 ("6:8-15 ("The Ninth Circuit reversed and remanded this case on the

14    grounds that assessing substantial similarity without allowing the parties to engage

15    in expert discovery was premature, and that expert testimony would 'aid' the

16    Court").]

17    After finding that "reasonable minds could differ on the issue of substantial

18    similarity," the Court of Appeal begins the next sentence with "Moreover," which

19    signals a new and related point. ["That is not all. There is more to be said." Oxford

20    English Dictionary.]

21    **Moreover this is a case in which discovery could shed light on [the]**
      **issues that actually matter to the outcome.**

22

23    The Court of Appeal is clearly speaking of discovery in general at this point,

24    _____

25    discovery was premature, and that expert testimony would 'aid' the Court"), 7:20-

26    24("This lawsuit is a model candidate for bifurcation because an initial phase of
      discovery allowing expert testimony on substantial similarity—the very thing that

27    the Ninth Circuit said was required before assessing substantial similarity in this

28    case….").]

because the next sentence gives "expert discovery" as *one particular example of discovery that could be useful,* as is clear from use of the phrase "In Particular," which signals that a key example will follow:

> **In particular, expert testimony would aid the court in objectively evaluating similarities in cinematic techniques, distinguishing creative elements from *scènes à faire*, determining the extent and qualitative importance of similar elements between the works, and comparing works in the different mediums of film and television.**

Given this language, the Ninth Circuit's Opinion cannot be said to provide any support for a phase of discovery limited to expert opinion. The difference between the Court of Appeal's actual decision, as explicated just above, and Apple's caricature of it (that a finding of substantial similarity was premature because no expert opinion was considered) makes all the difference, and defeats Apple's key argument, which solves a problem that does not exist:

> The Ninth Circuit remanded this case on the basis that this Court should have allowed expert discovery on substantial similarity before making that assessment. Defendants seek bifurcation to focus on exactly that. [Notice of Motion, 1:22-25.]

**B.    Considering the parties' actual disputes under the extrinsic test reveals that Apple's proposal is entirely unworkable.**

As mentioned, some of the parties' particular disputes do appear to lend themselves to expert opinion. But as shown in this Section through concrete examples, these are the exception and not the rule. Most of the parties' disputes are ones where expert testimony would be of little or no value, and simply continue the parties' own common-sense debate over how to characterize the works.

It is only by looking at examples that one clearly sees these truths about the limits of expert testimony and the obvious helpfulness of traditional discovery. Indeed, the reason why Apple avoids discussion of any actual issue in this case is to avoid revealing Apple's approach to be a parlor game, in which contestants try to determine substantial similarity only with their expert eye.

**1.** **The issue of whether Leanne is merely "playing along" shows the limits of expert testimony.**

To take one example, one similarity alleged by Plaintiff and denied by Apple is that in both works, the nanny plays along with the mother's delusion that the doll is her living baby (who has recently died at three months old). Plaintiff notes that this is a remarkable similarity, and unlike any other literary works. [FAC, ¶ 78.] But Apple claims there is little such similarity because Emanuel is truly and knowingly playing along, while Leanne appears to actually believe doll-Jericho is in fact real (including by talking to the doll when no one is around etc.). [MTD, 11:12-18.]

Both sides mine the works for support for their characterizations. For example, Apple claims Leanne treats the doll as a baby from the very outset, while Emanuel hesitates. [MTD, 11:12-18.] Plaintiff counters that Emanuel, like Leanne, speaks to the doll as if it were real [Opposition, 11-15-1] and that Apple ignores a key early scene in *Servant* where Leanne secretly enters the nursery alone, and we see her reach down to touch the baby before the scene cuts—giving her ample time to realize and digest the truth and process her shock before her next interaction with Dorothy. [Opposition, 14:6-11, citing to *Servant,* Ep. 1 5:15-5:45.] As for Emanuel, Plaintiff points out that it takes her only ninety seconds from first discovering the doll to fully playing along. [Id., citing to *Emanuel* 21:00-22:30.]

Going forward, Apple's view is apparently that such debate—on this and a thousand similar issues—should now continue between film professors. But it is not immediately clear what a film theorist's view might add, beyond offering the same further detail that the parties could argue themselves given more time or space to do so.[4] But if the purpose of this exercise is to get at the objective truth of substantial

---

[4] One could even argue that that expert testimony would not be helpful in such an instance, because jurors are perfectly capable of comparing the works themselves. Professor Patry points that "while it is common to permit expert testimony at the
(footnote continued)

1    similarity (and thus whether Leanne believes the doll is real, is playing along, or

2    whether the question is unanswerable), would it not "aid" the trier to consider the

3    writers' testimony or emails on the subject?

4         **2.**      **Characterization of the mastitis scene is another good example.**

5       Plaintiff asserts that one remarkable similarity between the works is that they

6    both feature an oddly erotic bathroom scene. In the FAC, Plaintiff alleges that "[i]n

7    both works, the proxy mother-daughter bond between mother and nanny co-exists

8    with a subtle and unspoken sexual tension—felt throughout and more overtly

9    displayed in surprisingly intimate first-aid scenes in the mother's bathroom." [FAC,

10    ¶ 9.]. In support, Plaintiff cites that Dorothy seems to have a "faux orgasm." [Id.

11    p.34, n. 13.] Apple's response is to simply deny that such scene in *Servant* had

12    sexual undertones. [Docket #30, 18:11-13 ("And the one moment between Dorothy

13    and Leanne that the FAC describes as being erotic (FAC ¶ 78) is not: Leanne helps

14    Dorothy to relieve her painful mastitis.").]

15       Again, judging by this motion, Apple apparently believes that the best way to

16    adjudicate this issue would be to let the debate continue, now between experts. And

17    while such experts might help by explaining certain tricks of the trade for signaling

18    sexuality in film, it is more likely that they would simply look deeper for the same

19    common-sense clues that the parties would cite if unencumbered by page limits. But

20    certainly, the tools of traditional discovery such as asking the defendants for "all

21    emails relating to the meaning of the mastitis scene," would at very least offer some

22    minimal degree of probative value as a supplement to expert opinion.

23    _____

24    copying stage, the frequency of such use hardly commends the practice. In the vast

25    majority of cases, the parties' works are not complex; with assistance of competent
lawyers and clear jury instructions, experts can easily be dispersed with." Patry on

26    Copyright § 9:81; see also *Price v. Fox Entertainment Group, Inc*., 2007 WL

27    1259101 (S.D. N.Y. 2007) ("These are not highly technical works. The jury is
capable of recognizing and understanding the similarities without the help of an

28    expert.").

         OPPOSITION

### 3.      The reciprocity of nanny/mother longing is another good example.

Similar examples can be found even among the parties' most important disputes. Two issues that are truly key are whether Leanne's fascination with Dorothy results in part from her yearning for the mother she lost years ago (like Emanuel); and whether Dorothy reciprocally channels her maternal longing in part into Leanne (like Linda). While acknowledging that both propositions accurately characterize *Emanuel*, Apple denies that either of them apply to *Servant*. If Plaintiff is correct, one of her most remarkable points is true: that "*Emanuel* was the first film to explore maternal longing by examining its delusional misplacement, while also studying a young woman's misplaced longings for a mother. *Servant* was the second." [FAC, ¶ 67.]

Again, both sides mine the works for supporting evidence. Apple denies that Dorothy is experiencing maternal feelings directed at Leanne. [MTD 11:22-24 ("Leanne never expresses longing for either of her parents, and Dorothy often treats Leanne as the help, not a daughter").] Apple cites specific scenes featuring non-maternal behavior by the Turners, going so far as to assert that Leanne is "routinely demeaned by them both. They refer to her as "staff", convince her to spend her meager earnings on shoes that Dorothy immediately asks to borrow, and even send her out in a thunderstorm on a fool's errand so they can be intimate." [MTD 16:17-20.]

In response, Plaintiff disputes Apple's claim that Dorothy considers Leanne 'help.' In fact, it is her husband who refers to Leanne as "staff," which clearly disgusts Dorothy." [Opposition, 21:1-4.] Plaintiff also mines *Servant* for further evidence, such as that Dorothy frequently and affectionately strokes Leanne's face, takes her shopping for clothes, tucks her into bed, and provides extremely nurturing care after Leanne faints. [Id., 20:26-21:5.] Plaintiff also cites Leanne's utter fascination with Dorothy (shown through voyeurism, including privately and intently watching Dorothy's news broadcasts, being entranced by her home and

belongings, and the fact that she can only pretend to call her mother when given the opportunity to do so. [Id., 14:13-17.] Again, given more space, both sides could have argued more—which is exactly what experts would do.

### 4.    There are unlimited examples of this type.

These are not the only examples. It's fair to say that for *all* of the parties' individual disagreements that involve characterization of *Servant*, experts would add little to what the parties would do themselves, and that traditional discovery would be at least possibly helpful. Additional examples include the following:

- Whether Leanne has supernatural powers, including the ability to bring the dead back to life and get wood into Sean's body. Apple speaks as if this is established in Episodes 1-3. [e.g. MTD 4:14-24.] Plaintiff claims that it is, at best, raised as one tantalizing prospect (among other far more plausible possibilities).[5] [Opposition, 14:19-21.] This dispute is particularly important because it drives Apple's contrast of Leanne as objectively "creepy" [MTD 4:2-4] and Emanuel as a typical American teen. [e.g. Id. 1:15].

- Whether Leanne's underwater bathtub scene is similar to the water imagery appearing throughout *Emanuel*. Plaintiff claims this is a remarkable similarity, but Apple discounts the *Servant* scene as merely a bath [MTD 11:11-12 ("In reality, the nanny takes a bath and dunks her head underwater for 7 seconds. That is it.")

- Whether *Servant* employs "magical realism," as *Emanuel* does. Apple speaks as if impossible happenings are clearly just visions in *Emanuel*, while clearly "real" in *Servant*. [MTD, 22:19-23:3.] This dispute is particularly important because it allows Apple to dismiss many alleged similarities out of hand, such as the doll coming back to life in *Emanuel*. Indeed, by understating the "reality" of the supernatural in

---

[5] To anyone who has watched all ten episodes of Season 1 of *Servant*, or subsequent seasons, it can be difficult to step back to consider what was apparent after Episode 3. This practical difficulty would be less of a problem when reviewing emails, given that Episodes 1-3 were thought of by the defendants, sold, and released, as a unified work.

OPPOSITION

*Emanuel*, and overstating it in *Servant*, Apple unfairly minimizes the works' similarity. While an expert could explain magical realism, resolution of the dispute will turn on common-sense evidence in the works. That watery "visions" leave real-world puddles certainly suggests a blurring of lines as to what is real in *Emanuel*. But a film expert is simply unnecessary to point this out even to a viewer who failed to notice upon a first viewing.

- Whether Leanne's relationship with Tobe has a romantic element (as does Emanuel's relationship with Claude). Apple simply denies this by minimizing the significance of Leanne's rebuffed attempt to kiss Tobe. [MTD 20:7-14.] Plaintiff cites this same interlude as quite surprising, given everything else we know about Leanne, and notes other surprising similarities in the scenes. [Opposition, 11:28-12:2.]

For all of these disputes, there are many additional clues in the works themselves, which the parties would have mined if given the opportunity, and will no doubt mine at trial. Indeed, the appellate briefs (where Plaintiff in particular was afforded many more pages) show that the parties will continue to support characterizations with individual elements from the works offered as evidence.

### 5. Even disputes where experts could help would also benefit from traditional discovery.

Even the few disputes that do lend themselves to expert testimony would also benefit from traditional discovery. For example, Apple's MTD relied on several "facts" pivotal enough to warrant requests for judicial notice, including that "using a doll to cope with grief is a widely known therapeutic technique in real life." [Request For Judicial Notice, Docket #30-1.] While experts could certainly help on this issue, traditional discovery might be a useful supplement. Suppose Plaintiff's expert psychologist opines that he has never heard of doll therapy and that no serious practitioner would consider it because it is antithetical to the goals of grief therapy; and Apple's expert testifies that there are plenty of quack life coaches out there who do or might pursue such a therapy. In addition to expert testimony, there

could very well be an internal memo that reveals what *Servant's* creative team thought on the subject. Again, this is a key point because Plaintiff argues that the shared idea of using a doll to cope with grief (yes, Plaintiff acknowledges that in isolation, this is an "idea") is all the more remarkable because it springs solely her imagination.

## C.    Apple's arguments rely on its misunderstanding of the elements of copyright infringement, and the place of the extrinsic test.

Apple could argue that while internal memos and deposition testimony might appear to be interesting, they do not play a proper role in the extrinsic test, which is nothing more than a side-by-side objective comparison of two works.

But such an argument reflects a muddled understanding of the elements of copyright infringement: which are (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, (1991); *Funky Films, Inc. v. Time Warner Entm't Co.*, L.P., 462 F.3d 1072, 1076 (9th Cir. 2006). Countless cases explain the relationship between "substantial similarity" and the "copying" element: Because direct evidence of copying is rarely available, a plaintiff may establish copying by circumstantial evidence of: (1) defendant's access to the copyrighted work, and (2) substantial similarity. *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987); *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018); *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000); *Funky Films, Inc. v. Time Warner Entertainment Co*., L.P., 462 F.3d 1072, 1076 (9th Cir.2006)

In other words, while side-by-side comparison is the preferred way to show "copying," it is not the only type of evidence that could be probative on the issue. Also relevant is "direct" evidence, such as deposition testimony and review of

OPPOSITION

emails.[6] Apple's extraordinary bifurcation proposal would improperly allow for summary judgment on the element of *copying* without affording Plaintiff to discover relevant "direct" evidence on that very issue.

This point is borne out by the many cases in which a court refers to direct evidence of copying (whether or not it finds copying). For example, two of the cases most cited by the parties in this case, applying the extrinsic test to literary works, note that a defendant's *acknowledging* that he copied a work's (uncopyrightable) title "may ... have copyright significance as one factor in establishing" an infringement claim. *Benay v. Warner Bros. Ent.*, 607 F.3d 620, 628 (9th Cir. 2010); see *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990). Other cases find direct evidence to support a finding of copying, or see fit to mention it while reaching the opposite conclusion. *See* Howard B. Abrams, *The Law of Copyright* § 14:10 (2011) ("Direct proof [of copying] can consist of ... testimony of direct observation of the infringing act...."); *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2nd Cir.1994) (defendant's former employee testified that president said he was sending plaintiff's dolls to a factory in China for copying and that the president bragged that the finished product was indistinguishable from the plaintiff's doll); *Rogers v. Koons*, 960 F.2d 301, 307 (2nd Cir.1992) (defendant admittedly gave a copy of the photograph to artisans with the explicit instruction to copy it); *Broderbund Software, Inc. v. Unison World, Inc.*, 648 F.Supp. 1127, 1135

---

[6] This uncontroversial and oft-repeated law—that it is the rarity of direct evidence of copying that leads to reliance on circumstantial evidence of access and substantial similarity—has led at least one court to observe that "substantial similarity is not an element of copyright infringement" because copying can be alternatively established via direct evidence. *See Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012) (a "showing of substantial similarity is irrelevant in a case like this one, in which [plaintiffs] produced evidence . . . [of] direct copying of copyrighted works."). While Nimmer is critical of this extreme stance (Nimmer on Copyright ¶ 13.03 ("it is impossible to accept the blanket proposition of this case, he certainly does not dispute that direct evidence can be probative of copying.)

OPPOSITION

(N.D.Cal.1986) (finding direct evidence of copying where programmers testified that they carried out orders to copy plaintiff's program); *Rottlund Company, Inc. v. Pinnacle Corporation,* 2004 WL 1879983, at *19 (D. Minn. Aug. 20, 2004), report and recommendation adopted (Oct. 19, 2004) (defendant acknowledged his reliance on plaintiff's architectural plans, referred to brochures and toured townhomes insufficient to establish copying without a substantial similarity analysis, but "eyebrow raising"); *Koontz v. Jaffarian*, 617 F.Supp. 1108, 1113–15 (E.D.Va.1985), aff'd, 787 F.2d 906 (4th Cir.1986) (defendant's former employee testified that defendant made a page by page display of the plaintiff's work, making small modifications).

**D.     Apple's two seemingly viable legal authorities do not support its position.**

As mentioned, no Court has ordered a threshold expert-only phase of discovery focusing on substantial similarity. The absence is less than conspicuous because Apple does appear to offer at least two supporting cases. Apple's assertion is:

> This lawsuit is a model candidate for bifurcation because an initial phase of discovery allowing expert testimony on substantial similarity—the very thing that the Ninth Circuit said was required before assessing substantial similarity in this case—might dispose of this whole matter, and if not, the parties will simply move to discovery on the other issues. [Motion, 7:20-24.]

This argument fails, first and foremost, because it mischaracterizes the Ninth Circuit's Opinion, as explained above. But it's also worth examining the string citation that follows. Three of the five cases can be ignored because they deal with bifurcation in general as opposed to an expert-only preliminary phase. *Zahedi v. Miramax, LLC*, 2021 WL 3260603, at *2 (C.D.Cal. 2021) (bifurcation of ownership issue); *Wixen Music Publ'g v. Triller, Inc*, 2021 WL 4816627 at *2 (C.D.Cal. 2021) (bifurcation of ownership issue); *Bassil v. Webster*, 2021 WL 1235258 at *2 (C.D. Cal. 2021) (bifurcating liability and damages).

But Apple provides parentheticals describing the *Yeasayer* and *Lee* cases as

examples of courts ordering an early expert-only discovery phase. The reason there are no Westlaw and Lexis cites is that they are not opinions, but rather out-of-circuit case management orders. *Yeasayer, LLC et al. v. Tesfaye*, No. 1:20-cv-01608, Dkt. 37 (S.D.N.Y. Apr. 30, 2020); *Lee v. Hill* et al., No. 1:19-cv-09220, Dkt. 56 (S.D.N.Y. May 7, 2020). In both instances, the case management orders are too brief to reveal much about the facts case or the substance of any relevant discovery disputes.

## IV.    EVEN BIFURCATION OF DISCOVERY ON SUBSTANTIAL SIMILARITY IS UNWARRANTED

The Court should not bifurcate discovery even on the general issue of substantial similarity. The only reason to organize the case in this manner would be a pre-supposition that Apple will likely prevail on this ground. But such an assumption would not be warranted—especially given this Court's prior recitation of similarities (in its order granting Apple's motion to dismiss) and the Court of Appeals' finding that "reasonable minds could differ" on the question of substantial similarity.

**A.    Broad discovery is the norm—and bifurcation is disfavored.**

Although the Court has broad discretion in managing the discovery process, bifurcation "is not the usual course that should be followed." *Home Elevator, Inc. v. Miller Elevator Service Co*., 933 F.Supp. 1090, 1091 (N.D. Ga. 1996); see also Fed. R. Civ. P. 42(b), Advisory Committee Notes to the 1966 Amendment ("bifurcation is not to be routinely ordered"). The party seeking bifurcation bears the burden of proving that it is justified. *Bassil v. Webster*, 2021 WL 1235258, at *1 (C.D. Cal. 2021); *Spectra-Physics Lasers, Inc. v. Uniphase Corp*., 144 F.R.D. 99, 101 (N.D. Cal. 1992).

A planned dispositive motion does not constitute good cause to bifurcate. While bifurcation might make sense for simple and discrete threshold dispositive issues (such as jurisdiction, immunity, limitations, etc.), a contemplated dispositive

motion is not sufficient. *Brooks v. Motsenbocker Advanced Developments, Inc.*, No. 07cv773 BTM (NLS), 2008 WL 698470, at *3 (S.D. Cal. Mar. 14, 2008)(motion to bifurcate damages discovery denied because anticipated summary judgment motion was not "good cause"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*, 2012 WL 12920191, at *1-2 (N.D. Cal. May 17, 2012)(anticipated motion for summary judgment not sufficient to bifurcate discovery).

**B.      This Court's reversed ruling does not provide good cause—and the Ninth Circuit's findings render summary judgment unlikely.**

Apple argues that its likelihood of prevailing on summary judgment rises above speculation because this Court has already found substantial similarity to be lacking. Such sentiments might not evaporate upon reversal—especially if the Ninth Circuit had ruled only because this Court's findings were "premature," as Apple suggests [Motion, 6:8-15]. This argument fails for several reasons.

First, even this Court's reversed opinion enumerates enough similarities between the works to demonstrate that Plaintiff's claim should survive summary judgment. The Court found an impressive list of similarities (which are detailed in Plaintiff's Opposition to Apple's motion to recover attorneys' fees, if the Court cares to review them).[7] [Docket # 48.] The Court of Appeals' reversal was not based on additional similarities that were somehow not noticed or credited by this Court. Rather, the appellate panel found that *those very similarities* were sufficient to negate the possibility of finding a lack of substantial similarity as a matter of law.

---

[7] See Order, pp. 6-14. Just as one example of the noted similarities, this Court found that "[t]here are some basic similarities between Linda and Dorothy… both mothers: lost their only child; suffer from a similar delusion; enter 'a trance-like state several times, which we understand to involve a moment when the awful truth of her baby's death might be percolating toward the surface of her consciousness'; are so committed to their delusion that they hire a nanny or babysitter; are in their mid-thirties; are white, sophisticated, and privileged; wear stylish clothing; and channel some of their maternal longing into the nanny/babysitter." [Id., p. 9.]

More important, with both works before it, the Ninth Circuit found that "reasonable minds could differ" on the question of substantial similarity. Apple will be hard pressed to explain how this finding could be dislodged based on expert testimony, or even further open discovery meant to aid the side-by-side comparison.

The Court of Appeal could have ruled on the ground that this Court's dismissal was "premature" because Plaintiff was afforded no opportunity to conduct discovery or present expert testimony, as Apple asserts. But in fact, Apple's characterization of the appellate court's Opinion as finding the Order to be "premature" finds no support in the Opinion. [Motion 8:6-15.] ("The Ninth Circuit reversed and remanded this case on the ground that assessing substantial similarity without allowing the parties to engage in expert discovery was **premature**, and that expert testimony would "aid" the Court.") (emphasis added).

Instead, the Ninth Circuit added that "reasonable minds could differ" on the question of substantial similarity. The parties will surely argue about whether this finding precludes summary judgement. But for now, it is enough to observe that the finding makes it difficult to treat summary judgment on lack of substantial similarity as inevitable or even particularly likely—especially when coupled with the long list of similarities specifically cited by *this* Court even in granting Apple's prior Motion to Dismiss. And with that, any good argument for bifurcation—even on the general issue of copying or substantial similarity—disappears.

## V.   BIFURCATION WOULD PREJUDICE PLAINTIFF.

Somehow, Apple does not see that Plaintiff would be prejudiced if forced to drop everything, spend a great deal of money on experts and expert discovery[8] —

---

[8] This is a case that would require many experts. Plaintiff has stated that she would engage experts on topics such as whether using a doll is a recognized grief therapy; whether certain differences in the works follow from the differing mediums, formats and conventions of motion pictures and episodic television; and whether certain creative elements are common or scènes à faire. But this last category would require (footnote continued)

and then more on defending against a (doomed) summary judgment motion. And presumably, at least some of the same experts would return for a second round with the benefit of information gathered in a subsequent round of traditional discovery. Besides cost, the significant delay hurts Plaintiff, who has already waited two years to even begin discovery in a very personal case.

To minimize the obviously prejudicial delay of its proposal, Apple proposes a wildly accelerated and unrealistic 140-day period (knowing that Plaintiff would have to ask for more time). In particular, Apple proposes that the parties have all experts reports *completed* in the next thirty days—a time frame so rushed that many potential experts would have to decline the engagement. With all other time periods similarly condensed, Apple's proposal assumes—implausibly—that no disputes arise along the way.[9]

Obviously, in every case, of every kind, a defendant can pick its favorite path to victory and seek to narrowly limit discovery to that – and then quite rightly point

---

as many experts as there are disputes about whether something is a scenes a faire. So for example, whether similarities in the house and nurseries are scenes a faire, as Apple suggests, requires an interior designer. In addition, at least two film professors would be required: one regarding film theory (to address questions about "inciting incidents," catalysts," the qualitative importance and unusualness of various elements, the use of magical realism, etc.), and one regarding film production (to opine regarding camera angles, music, lighting, etc).

[9] Apple also argues that it will be prejudiced if forced to litigate in the normal manner, given the complexity of Plaintiff's other claims. But Plaintiff's other claims are simple. In addition to her marquee claim discussed throughout this brief, Plaintiff alleges that certain of the eleven defendants sold a first iteration of the scripts for Episodes 1-3 [FAC ¶¶ 93-98]; and that certain other defendants sold a second iteration of the scripts to Apple Inc. [FAC ¶¶ 99-104.]  Plaintiff alleges that these scripts are substantially similar to *Emanuel* in all the ways Episodes 1-3 of *Servant* are. [FAC ¶¶ 95, 101.] These additional claims hardly render this case complex.

out that such a move *could* greatly save time and money. And certainly, all copyright defendants would favor expensive, burdensome, and time-consuming threshold requirements. But here, if expert opinion fails to somehow dislodge the finding that "reasonable minds could differ on the question of substantial similarity," then Plaintiff will have wasted a great deal of money.

## VI.    CONCLUSION

Discovery should be freely allowed where a summary judgment motion is filed "early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case ..." *Burlington N. Santa Fe. R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). It would greatly prejudice Plaintiff if she were prohibited from pursuing discovery in this case and instead limited to retaining expert witnesses to defend against a summary judgment by Apple. Plaintiff respectfully requests that the Court deny the motion and allow Plaintiff to finally pursue her lawsuit against Apple.

DATED: June 6, 2022               ERIKSON LAW GROUP


By:    */s/David A. Erikson*_____
        DAVID A. ERIKSON
Attorneys for Plaintiff Francesca Gregorini