UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA GREGORINI,<br><br>                  Plaintiff,<br><br>    v.<br><br>APPLE, INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; and STEVE TISCH,<br>an individual,<br><br>                  Defendants. | Case No. 2:20-cv-00406-SSS-JCx<br><br>**ORDER DENYING DEFENDANTS' MOTION TO BIFURCATE DISCOVERY AND PERMIT INITIAL SUMMARY JUDGMENT MOTION ON SUBSTANTIAL SIMILARITY [Dkt. 81].** |

Before the Court is a Motion to Bifurcate Discovery and to Permit Initial Summary Judgment Motion on Substantial Similarity ("Motion"), filed by Defendants Apple Inc., M. Night Shyamalan, Blinding Edge Pictures, Inc., Uncle George Productions, Escape Artists LLC, Dolphin Black Products, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch. [Dkt. 81]. Defendants ask the Court to stay all discovery, except for expert reports and discovery concerning whether Plaintiff's film and the first three episodes of Defendants' television series are "substantially similar," to permit Defendants to file a motion for summary judgment on the grounds that they are not. Defendants further request that, if the Court denies summary judgment on substantial similarity, it does so without prejudice to Defendants' ability to file a second motion for summary judgment on alternative grounds later in the proceedings.[1]

Defendants' Motion is fully briefed. [Dkt. 81, 88, 89]. After considering the papers, the Court finds it appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the reasons set forth below, the Motion is DENIED.

## I. BACKGROUND

Plaintiff's feature film, *The Truth About Emanuel* ("*Emanuel*"), was released in 2013. The titular Emanuel is a teenaged girl whose mother has recently passed away. She is hired to babysit an infant, who turns out to be a hyper-realistic "reborn" doll. After the doll's 'father' explains to Emanuel that

---

[1] Although the Federal Rules of Civil Procedure and Local Rules of this District do not require litigants to seek leave of court to file a second or successive motion for summary judgment, this Court's Civil Standing Orders do.

his wife's delusion is due to her grief over the loss of their real baby, Emanuel stays to help care for the imaginary child and develops "strong feelings for her employer [that] stem from longings for a missing mother figure." [Dkt. 25 at ¶ 4-8].

*Servant*, Defendant's ten-episode series released in 2019, also concerns a "mother so traumatized by her baby's death that she cares for a doll she believes to be her real baby" [Dkt. 39 at 6] and, according to Plaintiff, an "extraordinary and almost irrational reciprocal devotion between mother and nanny." [Dkt. 25 at ¶ 4-8]. Plaintiff's Amended Complaint catalogues the alleged similarities between the two works and concludes that *Servant* appropriates not only "the plot and characters of *Emanuel*… but also its use of cinematic language, creating a substantially similar feeling, setting, mood, and theme." [Dkt. 25 at ¶ 2].

Plaintiff filed suit on January 15, 2020. [Dkt. 1]. Her Amended Complaint alleges three causes of action: (1) copyright infringement by all Defendants with respect to Episodes 1 through 3 of *Servant* [Dkt. 25 at ¶ 83-92]; (2) copyright infringement by individual Defendants Tony Basgallop and Jason Blumenthal with respect to the first iteration of the scripts for Episodes 1 through 3 of *Servant* (the "Early Scripts") [Dkt. 25 at ¶ 93-98]; (3) copyright infringement by all Defendants except Apple Inc. with respect to a second iteration of scripts for Episodes 1 through 3 of Servant (the "Later Scripts") [Dkt. 25 at ¶ 99-104]; and (4) contributory and vicarious copyright infringement by all Defendants [Dkt. 25 at ¶ 105-107].

On March 24, 2020, Defendants moved to dismiss Plaintiff's Amended Complaint on the grounds that she had failed to allege that *Servant* and *Emanuel* were substantially similar. [Dkt. 30]. Judge John F. Walter of the Central District of California granted their motion and dismissed all of Plaintiff's claims. [Dkt. 39, Dkt. 41].

Judge Walter's detailed Order evaluated the two works' respective plots (including a comparison of each work's catalyst and denouement), themes, tones, characters (comparing and distinguishing several characters in *Servant* from their supposed counterparts in *Emanuel*), setting, mood, pace, and dialogue. It concluded that (1) the purportedly similar components of the two works consisted of generic elements not individually entitled to copyright protection, and that (2) "the alleged overlap between *Emanuel* and *Servant* [was] not pervasive enough or substantial enough to demonstrate substantial similarity based on a 'selection and arrangement' theory."[2] [Dkt. 39 at 6-14].

On appeal, Ninth Circuit reversed and remanded the case. It cautioned that while "dismissal [of copyright claims] at the pleading stage is by no means unprecedented… even summary judgment is not highly favored on questions of substantial similarity in copyright cases." [Dkt. 60 at 3]. It further held that "the district court's dismissal of Gregorini's suit at this early stage of the case was improper because reasonable minds could differ on the issue of substantial similarity." The appellate court underscored the necessity of discovery to properly resolve the case, highlighting the "particular" importance of expert testimony to "aid the court in objectively evaluating similarities in cinematic techniques, distinguishing creative elements from *scènes à faire*, determining the extent and qualitative importance of similar elements between the works, and comparing works in the different mediums of film and television." [Dkt. 60 at 3-4].

---

[2] The Ninth Circuit has determined that "a combination of unprotectable elements" may be "eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." [Dkt. 39 at 14] citing *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).

On May 25, 2022, this case returned to this Court for further proceedings and Defendants filed the instant Motion to Bifurcate. [Dkt. 81].

## II. LEGAL STANDARD

**A. Bifurcation**

Federal Rule 42(b) provides that a trial court may exercise its discretion to bifurcate proceedings "[f]or convenience or to avoid prejudice, or to expedite and economize." The court's power to bifurcate proceedings includes the "power to limit discovery to the segregated issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970).

One important purpose of bifurcation is to facilitate judicial economy. *See Wright & Miller*, §2388. Thus, it may be appropriate where the resolution of a single claim or issue could be dispositive of the entire case." *General Patent Corp. v. Hayes Microcomputer*, No. 97-00429, 1997 WL 1051899 at *1 (C.D. Cal. Oct. 20, 1997); *see also Wixen Music Publ'g v. Triller, Inc.*, 2021 WL 4816627, No. 20-10515 at *1 (C.D. Cal. Feb. 24, 2021).

However, bifurcation is considered "the exception rather than the rule of normal trial procedure within the Ninth Circuit," *Zahedi v. Miramax, LLC*, No. CV 20-4512, 2021 WL 3260603 at *1 (C.D. Cal. Nov. 24, 2021) (internal citations and quotation marks omitted). It is the moving party's burden to demonstrate that bifurcation is likely to promote efficiency. *Medtronic Minimed Inc. v. Animas Corp.*, No. CV 12-04471, 2013 WL 3233341 at *1 (C.D. Cal. June 25, 2013); *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992). Even if the court finds sufficient reason to believe bifurcation could facilitate the speedy resolution of a case, it must weigh this potential benefit against the risk that bifurcation will prejudice the non-moving party Prejudice may arise if bifurcation might, for example, increase the litigant's costs, postpone the full and final resolution of her claims, or require her to prepare for extensive additional proceedings. *Clark v. IRS*, 772 F. Supp.

2d 1265, 1269-70 (D. Haw. 2009); *Transcontinental Ins. Co. v. St. Paul Mercury Ins. Co.*, No. 05-00031, 2006 WL 3859009 at *4 (D. Mont. Dec. 1, 2006).

### B. Copyright Infringement

In order to prevail on a claim of copyright infringement, a plaintiff must demonstrate (1) "ownership" (that she possesses a valid copyright in the work allegedly infringed upon); (2) "copying" (that defendant copied her protected work); and (3) "unlawful appropriation." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

In the absence of direct evidence, copying may be established by evidence (1) that defendant had access to the plaintiff's work *and* (2) of "probative similarities" between plaintiff's and defendant's works. Probative similarities "may be based on the overlap of unprotectable as well as protectable elements." *Id.*

To satisfy the "unlawful appropriation" prong, the plaintiff must establish that her work and Defendant's work are substantially similar. At this stage, the factfinder is to consider only "the *protectible* elements, standing alone," and must disregard any similarities between the works' non-protectible elements. *Id.* at 1070. Substantial similarity is assessed using "a two-part analysis consisting of the 'extrinsic test' and the 'intrinsic test.'" *Id.* at 1118. The plaintiff must satisfy both to prevail on her claim. *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.* 462 F.3d 1072, 1077 (9th Cir. 2006).

The intrinsic test "examines an ordinary person's subjective impressions of the similarities between the two works," and is "exclusively the province of the jury." *Id.* Thus, on a motion to dismiss or for summary judgment, a court may evaluate only *extrinsic* substantial similarity. *Id.*

The extrinsic test requires an objective comparison of "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters,

and sequence of events" in the two works. *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir. 1994). The factfinder must compare "not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic v. Chricton,* 761 F.2d 1289, 1293 (9th Cir. 1985).

Prior to the Ninth Circuit's 2020 opinion in *Skidmore v. Led Zeppelin*, courts in this Circuit applied the "inverse ratio" rule. Under the inverse ratio rule, if a plaintiff made a sufficiently strong showing that defendant had *access* to her copyrighted work, her burden in demonstrating *similarity* was lowered. *See, e.g., Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010). This rule necessarily entangled infringement's "copying" and "unlawful appropriation" prongs, so that litigants and courts alike often – but erroneously – discussed "substantial similarity" as a component of both. 952 F.3d at 1067. For this reason, among others, the *Skidmore* court formally rejected the inverse ratio rule. *Id.* at 1069. Post-*Skidmore*, a copyright plaintiff must separately demonstrate (1) copying (which may be inferred from access plus *probative* similarities) and (2) unlawful appropriation (requiring *substantial* similarity).

### III. DISCUSSION

Defendants assert that their requested bifurcation – allowing only expert discovery in anticipation of an initial motion for summary judgment on the question of extrinsic substantial similarity – is appropriate because an "initial focus on [this] discrete and dispositive issue" would promote the efficient resolution of the case. [Dkt. 81 at 13].

1     Defendants are correct that if this Court grants their anticipated summary judgment motion, it will indeed dispose of Plaintiff's case.[3] [Dkt. 81 at 15]; *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994). This outcome would surely be more efficient than allowing discovery to proceed on all issues and requiring the parties to develop all of their arguments before filing a single, comprehensive summary judgment motion.

    However, if Defendants' motion is unsuccessful, bifurcation will make additional work for all parties involved and likely incur additional expense for the litigants. It will surely open the door to a second round of summary judgment motions for the parties to brief and for this Court to consider. And, at least as important as any judicial economy concerns, is the apparent risk of prejudice to Plaintiff should this case proceed beyond the initial substantial similarity phase.

    Defendants claim that bifurcation would not harm Plaintiff regardless of the outcome of their summary judgment motion because she will have to "confront substantial similarity at some point, and whether she does that sooner as opposed to later does not prejudice her." [Dkt. 81 at 17]. But this argument elides the likely inefficiencies and redundancies of the sort of sequential, constrained discovery process they have proposed. Plaintiff notes, for example, that the Defendants' proposed second phase of discovery may well require her to re-engage the very same paid experts she relied upon in the first phase. [Dkt. 88 at 26]. And although Defendants' exceptionally compressed briefing schedule promises otherwise [Dkt. 81 at 3], a more realistic bifurcated discovery timeline could well prolong a case that has already spanned more than two and a half years and a Ninth Circuit appeal.

    Because bifurcation's benefits here arise only if Defendants succeed on their motion for summary judgment on the issue of substantial similarity, it is necessary to consider the likelihood of this outcome. For the reasons set forth below, the Court is highly skeptical that it would be possible to rule – for *either* party – on the issue of extrinsic substantial similarity at the summary judgment stage in this case.

---

[3] Plaintiff's arguments that the issue of extrinsic substantial similarity may not be dispositive of her case seem to reflect the conflation of "probative similarities" and "substantial similarity" that *Skidmore* sought to remedy. [Dkt. 88 at 14-15].

Defendants represent that courts in this Circuit "regularly grant summary judgment to copyright defendants on the issue of substantial similarity." [Dkt. 81 at 14]. But in each of the cases Defendants cite, the parties either did not offer experts at all, or the district court did not consider the experts' opinions in its ruling. *See Alfred v. Walt Disney Pictures*, No. CV 18-8074-CBM-ASx, 2021 WL 6882322 at *3 (C.D. Cal. Dec. 16, 2021) (discussing *Funky Films*, *Benay*, and *Gable*); *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1179 (9th Cir. 2003) (affirming summary judgment where the district court found the parties' expert opinions irrelevant and did "not rely on either."). Without the benefit of expert testimony, each court's analysis of substantial similarity was limited to its own objective comparison of elements in the two works. This is the very same analysis that the Ninth Circuit has already found insufficient to resolve the question of extrinsic similarity in this case.

Where courts have considered competing expert testimony on the question of extrinsic similarity, they have generally refused to grant motions for summary judgment on that basis. In *Alfred v. Walt Disney Pictures*, just as in this case, the Ninth Circuit had already reversed and remanded the district court's grant of summary judgment for defendant on the question of substantial similarity. 2021 WL 6882322 at *1, *3. Its instructions on remand about the importance of discovery, including but not limited to expert testimony, were nearly identical to Ninth Circuit's orders in this case. *Id.* Following a stipulation to bifurcate proceedings in much the same way Defendants have requested here, each side in *Alfred* produced its expert on the question of substantial similarity. *Id.* at *3, *4. Then, faced with the two sides' competing experts, the *Alfred* court found that it could not grant summary judgment in either side's favor. This outcome is unsurprising: a pair of competing, but admissible and otherwise credible, expert reports will almost necessarily introduce genuine issues of fact and thus preclude summary judgment. *See also,*

*e.g., Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 937 (C.D. Cal. 2016) (noting that the case "boil[ed] down to a battle of the experts [on substantial similarity], and such a battle must be left for the jury's resolution."), *aff'd*, 742 F. App'x 282 (9th Cir. 2018).

Although bifurcation could promote judicial economy in the event Defendants' motion for summary judgment is successful, the Court finds that it is unlikely to be able to rule as a matter of law on the question of substantial similarity. Defendants have not demonstrated that bifurcation is likely enough to expedite this matter to justify the risk that it will complicating the proceedings and harm Plaintiff. The Court therefore declines to exercise its discretion to bifurcate discovery.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion. The Court hereby **VACATES** the hearing previously set for September 16, 2022.

The parties are further advised that, in connection with this Order, the Court has issued a revised scheduling order to supersede Judge Walter's prior order dated May 16, 2022. [Dkt. 68]. A revised scheduling order is necessary, as this Court's pretrial deadlines and procedures differ in some respects from Judge Walter's. Consistent with this Order, the revised schedule includes *one* deadline for all expert discovery and *one* deadline to file any non-discovery motions, including motions for summary judgment.

**IT IS SO ORDERED.**

Dated: August 26, 2022

SUNSHINE S. SYKES
United States District Judge