# EXHIBIT 4



Suite 2400
865 South Figueroa Street
Los Angeles, CA  90017-2566

**Nicolas A. Jampol**
(213) 633-8651
nicolasjampol@dwt.com

May 1, 2023

**By Email**

David Erikson
Antoinette Waller
Erikson Law Group
200 North Larchmont Boulevard
Los Angeles, California 90004
david@daviderikson.com
antoinette@daviderikson.com

<div style="padding-left: 2em;">

Re:    *Gregorini v. Apple Inc. et al.*
       Case No. 2:20-cv-00406-SSS-JC

</div>

Dear David and Antoinette:

Pursuant to Local Rule 37-1, we are writing to request a meet and confer in our office within the next ten days regarding your client's responses to Defendants' discovery requests, dated March 13, 2023, and March 14, 2023. As required, we have provided the below information regarding the specific deficiencies in your client's responses.

In addition, please let us know when you will produce Ms. Gregorini's documents.  Once that happens, we can discuss a mutually convenient date for her deposition.

## I.    INTERROGATORIES

### A.    General Objections

Ms. Gregorini sets forth general objections to each set of interrogatories on numerous grounds. For example, she asserts boilerplate objections to the extent that all interrogatories seek privileged, confidential, and/or proprietary business information. "[U]nexplained and unsupported boilerplate objections are improper." *See Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375 (C.D. Cal. 2009). We ask you to confirm that no interrogatory responses or information will be withheld on the basis of the general objections.

### B.    Blinding Edge Pictures, Inc.

Interrogatory 1: This interrogatory asks that Ms. Gregorini "identify the amount of revenue generated from each streaming service on which EMANUEL was distributed." Ms. Gregorini objects to this request by stating that the request is "vague, ambiguous, overbroad, and unlimited in time" and that it "contains subparts, is compound, conjunctive, or disjunctive[.]" These responses are deficient for several reasons.

Anchorage
Bellevue
Los Angeles

New York
Portland
San Francisco

Seattle
Shanghai
Washington, D.C.

www.dwt.com

Page 2

First, Ms. Gregorini does not specify which aspect of this request is vague, ambiguous, or overbroad.[1] Such unsupported objections are improper, particularly as the "responding party should exercise common sense and attribute ordinary definitions to terms in discovery requests." *Advanced Visual Image Design, LLC v. Exist, Inc.*, 2015 WL 4934178, at *6 (C.D. Cal. Aug. 18, 2015); *see Bingham v. Marriott Int'l, Inc.*, 2022 WL 886116, at *3 (C.D. Cal. Feb. 17, 2022) ("To the extent that Plaintiff objects to the request on the ground that it is vague, ambiguous, or overbroad, Plaintiff must explain how the request is vague, ambiguous, or overbroad.") (citation omitted). As to Ms. Gregorini's objection to the purported lack of time limit, for avoidance of any doubt, Defendants request responsive revenue amounts spanning from the first date on which EMANUEL was distributed to the present.

Second, Ms. Gregorini's compound objections are equally improper. Fed. R. Civ. P. 33(a) contemplates that "interrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessary related to the primary question." *Withers v. eHarmony, Inc.*, 2010 WL 11520197, at *3 (C.D. Cal. Apr. 1, 2010) (citation omitted). "[I]nterrogatories asking for different bits of information about the same topic generally are considered one interrogatory" and are not compound. *Olen Properties Corp. v. ACE Am. Ins. Co.*, 2017 WL 11635014, at *4 (C.D. Cal. Jan. 30, 2017); *see also id.* at *3 ("Subparts relating to a 'common theme' should generally be considered a single interrogatory."). For example, an interrogatory asking for "information of a single, particular type" but "requesting that details about each [incident] be provided separately," "must be construed as singular, not compound." *Gonzalez v. City of Maywood*, No. CV 08-3109-ODW (SHX), 2010 WL 11601322, at *3 (C.D. Cal. Apr. 7, 2010); *see also Sec. & Exch. Comm'n v. Mazzo*, 2013 WL 12172628, at *6 (C.D. Cal. Oct. 24, 2013) (request not compound simply because it asks a party "to describe each communication" related to a common theme). Likewise, here Defendant Blinding Edge seeks the revenue amount generated from each streaming service on which EMANUEL was distributed, or put otherwise, "different bits of information about the same topic." *Olen Properties*, 2017 WL 11635014, at *4. Accordingly, we ask that Ms. Gregorini supplement her response to this interrogatory.

Interrogatories 2-3: These interrogatories ask that Ms. Gregorini identify "all costs, revenues, and profits related to EMANUEL" (Interrogatory 2) and "all costs, revenues, and profits obtained by YOU [Ms. Gregorini] related to EMANUEL" (Interrogatory 3). Ms. Gregorini objects to these requests by stating that the requests are "vague, ambiguous, overbroad, and unlimited in time" and that they "contain[] subparts, [are] compound, conjunctive, or disjunctive[.]" As in Interrogatory 1, Ms. Gregorini fails to specify which aspects of the interrogatories are vague, ambiguous, and overbroad. In addition, the interrogatories request information that is related to a common theme, and are thus not compound. That said, to avoid any dispute, Defendants are willing to treat these interrogatories as six separate interrogatories. Accordingly, we ask that Ms. Gregorini supplement her response to these interrogatories.

Interrogatory 4: This interrogatory asks how Ms. Gregorini calculated her alleged damages as referenced in ¶¶ 90-91, 97-98, and 103-104 of the FAC. Ms. Gregorini objects to these requests by stating they are "vague, ambiguous, overbroad, and unlimited in time" and that

---

[1] Indeed, Ms. Gregorini's own requests for production to Blinding Edge Pictures, Inc. (RFP 29) seek documents sufficient to show "all revenue [Blinding Edge has] received Related to *Servant*."

they "contain[] subparts, [are] compound, conjunctive, or disjunctive[.]" As in Interrogatory 1, Ms. Gregorini fails to specify which aspects of the interrogatory are vague, ambiguous, and overbroad. In addition, the interrogatory requests information that is related to a common theme, and is thus not compound.

Ms. Gregorini also objects to this request by stating that it "is not full and complete in and of itself and requires reference to other documents." This response is deficient, as this request is being issued in response to factual allegations directly set forth in Ms. Gregorini's FAC. Rule 33(a)(2) explicitly provides that interrogatories may relate to any matter that may be inquired into under Rule 26(b). *See* Fed. R. Civ. P. 33(a)(2); *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007) (requiring plaintiff under Rule 33 to answer contention interrogatories related to "the nature of the contentions ma[de]" in her complaint and the "factual bases for her contentions"); *see also Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 278-79 (N.D. Cal. 2015) (granting motion to compel because response to interrogatory asking responding party to "[d]escribe in detail the total amount of damages" was essentially "wait until we serve our expert report" which was "plainly insufficient"); *Evox Prods. v. Kayak Software Corp.*, 2016 WL 10586303, at *3 (C.D. Cal. June 14, 2016) (granting motion to compel interrogatory seeking computation of actual damages where plaintiff provided no legitimate reason for failure to provide such figures). Ms. Gregorini's own extensive factual allegations relating to her purported substantial loss of profits and damages necessitate a response to this interrogatory. As you know, a plaintiff's claimed damages are a fundamental component of any action, particularly under the Copyright Act. Accordingly, we ask that Ms. Gregorini supplement her response to this interrogatory.

Interrogatory 5: This interrogatory asks Ms. Gregorini to describe her "alleged submission to Tony Basgallop and other executives for BERLIN STATION, as referenced in ¶ 52 of the FAC." Ms. Gregorini responds as follows: "In or about March 2017 Olivia Blaustein, an agent at CAA, had an assistant that sent *Emanuel* to producers of Berlin Station, including Tony Basgallop (co-executive producer), to showcase Ms. Gregorini's talent for the purpose of being hired." This response is incomplete, as Ms. Gregorini failed to provide the name of the assistant that purportedly sent the March 2017 email to Berlin Station producers. This allegation is central to Ms. Gregorini's theory of Defendants' access to her allegedly infringed work, which Defendants are entitled to explore in discovery. Accordingly, we ask that Ms. Gregorini supplement her response to this interrogatory.

Interrogatory 6: This interrogatory asks Ms. Gregorini to identify "any response[s] received to [Ms. Gregorini's] alleged submission to Tony Basgallop and other executives for BERLIN STATION, as referenced in ¶ 52 of the FAC[.]" Ms. Gregorini objects to this request by stating that the request is "vague, ambiguous, and overbroad"; "not full and complete in and of itself and requires reference to other documents";  and that it "contains subparts, is compound, conjunctive, or disjunctive[.]" As in Interrogatory 1, Ms. Gregorini fails to specify which aspects of the interrogatory are vague, ambiguous, and overbroad. In addition, the interrogatory requests information that is related to a common theme, and is thus not compound. As in Interrogatory 4, this interrogatory references factual allegations directly set forth in Ms. Gregorini's FAC. This allegation is central to Ms. Gregorini's theory of Defendants' access to her allegedly infringed work, which Defendants are entitled to explore in discovery. Accordingly, we ask that Ms. Gregorini supplement her response to this interrogatory.

Page 4

Interrogatories 7-8: These interrogatories ask Ms. Gregorini to explain the circumstances by which she obtained access to the "EARLY SERVANT SCRIPT, including by what means and when [she] obtained access to the EARLY SERVANT SCRIPT" (Interrogatory 7) and the same for the LATER SERVANT SCRIPT (Interrogatory 8). Ms. Gregorini objects to these requests by stating that they are "vague, ambiguous, and overbroad" and "contain[] subparts, [are] compound, conjunctive, or disjunctive[.]" As in Interrogatory 1, Ms. Gregorini fails to specify which aspects of the interrogatories are vague, ambiguous, and overbroad. In addition, the interrogatories request information that is related to a common theme, and are thus not compound.

Ms. Gregorini also objects to these interrogatories on the basis that they "assume[] facts and appear[] to seek confidential or privileged information." First, these interrogatories are based on Ms. Gregorini's own claims in the FAC, in which she alleges copyright claims based on specific alleged similarities between the EARLY and LATER SERVANT SCRIPTS and EMANUEL, which presumably were based on her review of those SCRIPTS prior to filing her FAC. Accordingly, it is well within the scope of Rule 26(b) to ask Ms. Gregorini to provide information about her access to those scripts. *See Marti v. Baires*, No. 1:08-CV-00653-AWI, 2012 WL 2029720, at *5 (E.D. Cal. June 5, 2012) ("A party is obligated to make a reasonable effort to respond [to ROGs]."). Second, Ms. Gregorini's bare assertion of "apparent" privacy, confidentiality, or privilege does not pass muster. *Id.* at *6 ("[B]are assertion[s]" of privacy or privilege "fall well below the standard set for successfully claiming a right, an interest, or a privilege, shielding the discovery from disclosure."). Accordingly, we ask Ms. Gregorini to supplement her response to these interrogatories.

Interrogatories 9-16: These interrogatories ask Ms. Gregorini to "describe all negotiations and/or pitches YOU have engaged in to develop EMANUEL into a television series" (Interrogatory 9); "all discussions and/or negotiations YOU have engaged in to option or license EMANUEL to any party" (Interrogatory 10); "all negotiations YOU have engaged in to write, direct, or produce television, film, theatrical, commercial, or other project, including but not limited to the television series "The Dropout," since the release of EMANUEL until the release of SERVANT" (Interrogatory 11); "all negotiations YOU have engaged in to write, direct, or produce television, film, theatrical, commercial, or other project, including but not limited to the television series "The Dropout," since the release of SERVANT" (Interrogatory 12); "all agreements YOU have entered into to write, direct, or produce any television, film, theatrical, commercial, or other project, including but not limited to the television series "The Dropout," since the release of EMANUEL until the release of SERVANT" (Interrogatory 13); "all agreements YOU have entered into to write, direct, or produce any television, film, theatrical, commercial, or other project, including but not limited to the television series "The Dropout," since the release of SERVANT" (Interrogatory 14); "all revenues, and profits obtained by YOU in connection with any television, film, theatrical, commercial, or other project since the release of EMANUEL until the release of SERVANT" (Interrogatory 15); and "all revenues, and profits obtained by YOU in connection with any television, film, theatrical, commercial, or other project since the release of SERVANT" (Interrogatory 16).

Ms. Gregorini objects to the majority of these requests by stating that they are "vague, ambiguous, and overbroad," and in some instances "unlimited in time and scope"; "appear to seek" or "seek" "confidential or privileged information"; and "contain[] subparts, [are]

compound, conjunctive, or disjunctive[.]" As in Interrogatory 1, Ms. Gregorini fails to specify which aspects of the interrogatories are vague, ambiguous, and overbroad. In addition, the interrogatories request information that is related to a common theme, and are thus not compound. As in Interrogatories 7-8, Ms. Gregorini's bare assertions of confidentiality and privilege do not pass muster.

Ms. Gregorini additionally objects to Interrogatories 11-16 on the grounds that the information is protected by attorney-client privilege and related privileges; the right to privacy; and is not "sufficiently related to any of the claims, allegations, or defenses in this case"; that the requests are "unduly burdensome, oppressive, harassing, annoying, and vexatious seeking information that is neither relevant to this case, nor likely to lead to the discovery of admissible evidence"; and that the requests seek information "containing trade secret or other confidential, competitively sensitive, or proprietary business information or that would require Plaintiff to violate any confidentiality agreement or any court order pertaining to confidentiality." For all of these, Plaintiff merely asserts bare, generalized, and boilerplate objections that fall far short of meeting her discovery burden. *See Everflow Tech. Corp. v. Millennium Elecs. Inc.*, No. 07-05795JF(HRL), 2009 WL 672985, at *2 (N.D. Cal. Mar. 13, 2009) (overruling "improper blanket objections" that discovery requests purportedly seek "documents protected by the attorney-client privilege, work product privilege, or the right of privacy" or "seek[] trade secrets, confidential, proprietary and/or other secret information" when party failed to explain those objections "with any specificity"); *Brill v. Napolitano*, 2010 WL 11512400, at *2 (C.D. Cal. May 12, 2010) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper–especially when a party fails to submit any evidentiary declarations supporting such objections.") (citation omitted).

As to Ms. Gregorini's relevance objections, these requests relate to Ms. Gregorini's professional endeavors in the two periods between EMANUEL's release and SERVANT's release, and after SERVANT's release, which are plainly relevant to Ms. Gregorini's allegations that she has suffered "substantial damages to her business in the form of diversion of trade, loss of profits, and a dilution in the value of [her] rights and reputation," *see* FAC ¶¶ 90, 97, 103, resulting from the alleged copyright infringement. Accordingly, we ask that Ms. Gregorini supplement her response to these interrogatories.

Interrogatory 17: This interrogatory asks Ms. Gregorini to identify "all agreements relating to EMANUEL, including the date(s) that any agreements went into effect, the payment and other terms of the agreements, and other details of any agreements relating to EMANUEL." Ms. Gregorini objects on the grounds that the information is protected by attorney-client privilege, related privileges, and the right to privacy; that the interrogatory "contains subparts, is compound, conjunctive, or disjunctive"; that it is not "sufficiently related to any of the claims, allegations, or defenses in this case"; and that it "seeks information containing trade secret or other confidential, competitively sensitive, or proprietary business information or that would require Plaintiff to violate any confidentiality agreement or any court order pertaining to confidentiality."

As in Interrogatory 1, Ms. Gregorini fails to specify which aspects of this interrogatory are vague, ambiguous, and overbroad. In addition, the interrogatory requests information that is related to a common theme, and is thus not compound. As in Interrogatories 7-8 and 9-16, Ms.

Gregorini's bare assertions of confidentiality, privacy, and privilege do not pass muster.
Specifically as to Ms. Gregorini's relevance objection, this request is plainly within the scope of
Rule 26(b) as it relates to agreements pertaining to the allegedly infringed work. Indeed, Ms.
Gregorini has issued over 30 requests for production to Blinding Edge Pictures, Inc. seeking
various agreements related to SERVANT (RFPs 53-87). Accordingly, we ask that Ms. Gregorini
supplement her response to these interrogatories.

Interrogatory 18: This interrogatory asks Ms. Gregorini to "explain why Emanuel Film
LLC was 'dissolved and cancelled,' as referenced in ¶ 85 of the FAC." Ms. Gregorini objects on
the grounds that the information is protected by attorney-client privilege and related privileges;
that the interrogatory is not "full and complete in and of itself and requires reference to other
documents"; that it is not "sufficiently related to any of the claims, allegations, or defenses in this
case"; that it is "unduly burdensome, oppressive, harassing, annoying, and vexatious seeking
information that is neither relevant to this case, nor likely to lead to the discovery of admissible
evidence"; that it "seeks information containing trade secret or other confidential, competitively
sensitive, or proprietary business information or that would require Plaintiff to violate any
confidentiality agreement or any court order pertaining to confidentiality"; and that it is "vague
and ambiguous."

As in Interrogatory 1, Ms. Gregorini fails to specify which aspects of the interrogatory
are vague, ambiguous, and overbroad. In addition, this interrogatory requests information that is
related to a common theme, and is thus not compound. As in Interrogatory 4, this interrogatory
references factual allegations directly set forth in Ms. Gregorini's FAC. As in Interrogatories 7-8
and 9-16, Ms. Gregorini's bare assertions of confidentiality and privilege do not pass muster.
Specifically as to Ms. Gregorini's relevance objection, this request is plainly within the scope of
Rule 26(b), as it relates to Ms. Gregorini's own allegations in the FAC about the dissolution and
cancellation of the corporate entity that originally "authored" and copyrighted the allegedly
infringed work before allegedly assigning the copyright to Ms. Gregorini. FAC ¶¶ 84-85.
Accordingly, we ask that Ms. Gregorini supplement her response to these interrogatories.

### C.      Tony Basgallop

Interrogatory 6: This interrogatory asks Ms. Gregorini to "state all facts to support YOUR
contention that defendant Tony Basgallop 'has offered an account of his personal inspiration for
the story [of SERVANT] that comes off as vague and implausible,' as referenced in ¶ 45 n.8 of
the FAC." Ms. Gregorini responds: "Defendant's account of his alleged personal inspiration for
the story of Servant is vague and implausible." This circular, conclusory response is deficient,
and Defendants are entitled to explore in discovery Ms. Gregorini's basis for that allegation.
Accordingly, we ask that Ms. Gregorini supplement her response to this interrogatory or
otherwise confirm that she has no factual basis for this allegation.

### D.      Uncle George Productions, LLC

Interrogatory 3: This interrogatory asks Ms. Gregorini to describe "the work that was
registered with the U.S. Copyright Office Reg. No. PA0002353598 by 'Well Go USA Ent.'" Ms.
Gregorini objects to this interrogatory on the grounds that it is "vague and ambiguous"; that it is
"not sufficiently related to any of the claims, allegations, or defenses in this case"; and that it is

"overbroad, unduly burdensome, oppressive, and harassing." As in Interrogatories 1 and 9-16, Ms. Gregorini fails to specify which aspects of the interrogatory are vague, ambiguous, overbroad, oppressive, and harassing. Specifically as to Ms. Gregorini's relevance objection, this request is plainly within the scope of Rule 26(b) as it pertains to another DVD version of Ms. Gregorini's allegedly infringed work that has been registered by a third party, "Well Go USA Ent." Defendants are entitled to seek discovery from Ms. Gregorini about this work, including any licensing or assignments of rights from Ms. Gregorini to "Well Go USA Ent." Accordingly, we ask that Ms. Gregorini supplement her response to this interrogatory.

Interrogatories 12-13: These interrogatories ask Ms. Gregorini to identify "each and every person" who contributed to the production (Interrogatory 12) and the distribution (Interrogatory 13) of EMANUEL. Ms. Gregorini objects to these requests on the grounds that they are "vague, ambiguous, and overbroad" and that they "contain[] subparts, [are] compound, conjunctive, or disjunctive[.]" As in Interrogatory 1, Ms. Gregorini fails to specify which aspects of these interrogatories are vague, ambiguous, and overbroad. In addition, the interrogatories request information that is related to a common theme, and are thus not compound. These interrogatories seek information related to the individuals involved in the production and distribution of her allegedly infringed work, which is plainly within the scope of Rule 26(b). Accordingly, we ask that Ms. Gregorini supplement her response to these interrogatories.

Interrogatory 16: This interrogatory asks Ms. Gregorini to "identify any and all materials related to EMANUEL that YOU know were provided by anyone other than YOU to any Defendant." Ms. Gregorini responds as follows: "Plaintiff is aware that Olivia Blaustein, an agent at CAA . . . had an assistant that sent Emanuel in March 2017 to producers of Berlin Station, including Tony Basgallop (co-executive producer), to showcase Ms. Gregorini's talent for the purpose of being hired." This response is incomplete, as Ms. Gregorini failed to provide the name of the assistant that purportedly sent the March 2017 email to Berlin Station producers. The alleged transmission of Emanuel from Olivia Blaustein's assistant to the Berlin Station producers is central to Ms. Gregorini's theory of Defendants' access to her allegedly infringed work, which Defendants are entitled to explore in discovery. Accordingly, we ask that Ms. Gregorini supplement her response to this interrogatory.

Interrogatory 18: This interrogatory asks Ms. Gregorini to "identify all locations of non-theatrical distributions of EMANUEL, including but not limited to all streaming services where EMANUEL has ever been distributed." Ms. Gregorini responds as follows: "Since 2014, Emanuel has been available for purchase or rental on defendant Apple's own iTunes as well as multiple additional streaming services and platforms." This response is incomplete, as Ms. Gregorini failed to provide the specific name of each and every "multiple additional streaming services and platforms" where Emanuel has been distributed. This information is essential in determining the extent of Emanuel's distribution, profits, and revenue, as well as Ms. Gregorini's alleged substantial loss of profits and damages. Accordingly, we ask that Ms. Gregorini supplement her response to this interrogatory.

Interrogatories 20-21: These interrogatories ask Ms. Gregorini to identify "the revenues of any and all theatrical releases of EMANUEL, including but not limited to box office receipts" (Interrogatory 20) and "the number of rentals and/or sales for each streaming service on which EMANUEL was distributed." Ms. Gregorini objects to these requests on the grounds that they

are "vague, ambiguous, overbroad, and [] unlimited in time" and that they "contain[] subparts, [are] compound, conjunctive, or disjunctive[.]" As in Interrogatory 1, Ms. Gregorini fails to specify which aspects of these interrogatories are vague, ambiguous, and overbroad. In addition, the interrogatories request information that is related to a common theme, and are thus not compound. As in Interrogatory 18, this information is essential in determining the extent of Emanuel's distribution, profits, and revenue, as well as Ms. Gregorini's alleged substantial loss of profits and damages. Accordingly, we ask that Ms. Gregorini supplement her response to these interrogatories.

## II.     REQUESTS FOR PRODUCTION

### A.     General Objections

First, as with the interrogatories, Ms. Gregorini asserts general, boilerplate objections to the extent that all requests for production seek privileged, confidential, and/or proprietary business information. Such objections are improper. *Hupp v. City of Beaumont*, 2017 WL 11635255, at *9 (C.D. Cal. May 5, 2017) ("Boilerplate objections to a request for a production are not sufficient."). Please confirm that no documents will be withheld on the basis of the general objections.

Second, for many of these requests, Ms. Gregorini objects that Defendants' "failure to produce discovery as promised impedes and interferes with Plaintiff's ability to respond" to Defendants' discovery requests. Please confirm that no documents will be withheld on the basis of this objection.

### B.     Definitional Objections

First, Ms. Gregorini objects to "Defendant's definition of 'reborn doll' as vague and ambiguous." Defendant's definition, however, expressly refers to the term "'reborn' doll" as referenced in ¶ 4 of the FAC."

Second, for many of these requests, Ms. Gregorini objects to the definition of "document" as being "overly broad as to scope and time, unduly burdensome, oppressive, and to the extent that it impermissibly attempts to shift the cost of production of data to Plaintiff in violation of Federal Rule of Civil Procedure 26(b)." But this definition does "no more than provide a broad definition of the term 'documents,'" which courts have found "permissible in order to insure that all discoverable material is provided." *Baykeeper v. Kramer Metals, Inc.*, 2009 WL 10671577, at *6 (C.D. Cal. Feb. 27, 2009).

Please confirm that no documents will be withheld on the basis of these definitional objections.

### C.     Uncle George Productions, LLC

Request for Production No. 1: This request seeks all documents, including communications, about EMANUEL. Ms. Gregorini incorporates the general objections; objects on grounds that the information is privileged and protected by the right to privacy; the request is not "sufficiently related to any of the claims, allegations, or defenses in this case"; is "overbroad,

Page 9

unduly burdensome, oppressive, harassing, annoying, and vexatious seeking information that is neither relevant to this case, nor likely to lead to the discovery of admissible evidence"; "seeks information containing trade secret or other confidential, competitively sensitive, or proprietary business information or that would require Plaintiff to violate any confidentiality agreement or any court order pertaining to confidentiality"; "is vague and ambiguous"; "includes general instructions and definitions which render it improper, objectionable, and/or contrary to discovery rules and statutes"; and "is premature to the extent it seeks documents and information that are the subject of expert discovery."

Ms. Gregorini's extensive boilerplate objections are deficient. *See Ecological Rts. Found. v. Hot Line Constr., Inc.*, 2022 WL 2101902, at *4 (C.D. Cal. Apr. 14, 2022) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper–especially when a party fails to submit any evidentiary declarations supporting such objections.") (citation omitted); *Belden v. Cnty. of San Bernardino*, 2020 WL 3129208, at *4 (C.D. Cal. June 12, 2020) (faulting party for making "boilerplate objections to almost every single request for production, including broad relevancy objections, objections of 'overly burdensome and harassing,' privacy, and attorney-client privilege/work product protection") (citation omitted); *Kitsinian v. Manoukian*, 2018 WL 6265004, at *6 (C.D. Cal. Mar. 15, 2018) (concluding that asserted privacy objections "can be mitigated by an appropriate protective order" and that to the extent "responsive documents are protected by attorney-client privilege or work-product doctrine, [the party] shall provide a privilege log"); *Solomon v. Jacobson*, 2016 WL 6039184, at *2 (C.D. Cal. Apr. 1, 2016) (finding "nonspecific boilerplate" responses to requests for production "inadequate" under FRCP 34); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[B]oilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper.").

This request is clearly relevant to this dispute as it pertains to Ms. Gregorini's allegedly infringed work. Defendants are willing to meet and confer to clarify or narrow this request. Accordingly, please provide all documents responsive to this request, or let us know if you need any further clarification.

Request for Production No. 2: This request seeks all documents, including communications, "relating to the registration of the REGISTERED WORK with the U.S. Copyright Office, including applications, registrations, and transfers." As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why this request is improper. Ms. Gregorini also limits the request and responds that she will provide a "copy of U.S. Copyright Office Reg. No. PA0002213169." Ms. Gregorini's exclusion of all other relevant documents related to the REGISTERED WORK's registration is improper, given that these documents are plainly relevant to this dispute. Accordingly, please provide all documents responsive to this request, or let us know if you need any further clarification.

Request for Production No. 3: This request seeks all documents, including communications, "relating to the registration of the REGISTERED SCRIPT with the U.S. Copyright Office, including applications, registrations, and transfers." As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why this request is improper. Specifically as to relevance, this request is clearly relevant

to this dispute as it pertains to another version of Ms. Gregorini's allegedly infringed work.
Accordingly, please provide all documents responsive to this request, or let us know if you need
any further clarification.

Request for Production No. 4: This request seeks all documents, including
communications, "relating to the registration of EMANUEL with the U.S. Copyright Office Reg.
No. PA0002353598 registered to copyright claimant 'Well Go USA Ent.'" As in RFP 1, Ms.
Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific
basis for why this request is improper. Specifically as to relevance, this request is clearly relevant
to this dispute as it pertains to another related version of Ms. Gregorini's allegedly infringed
work. Accordingly, please provide all documents responsive to this request, or let us know if you
need any further clarification.

Request for Production No. 5: This request seeks all documents, including
communications, "relating to any and all additional copyright registrations for EMANUEL or
any version thereof." As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate
objections but fails to articulate any specific basis for why this request is improper. Specifically
as to relevance, this request is clearly relevant to this dispute as it pertains to any other
registrations of Ms. Gregorini's allegedly infringed work. Accordingly, please provide all
documents responsive to this request, or let us know if you need any further clarification.

Request for Production No. 6: This request seeks all documents, including
communications, "submitted to or filed with the U.S. Copyright Office regarding EMANUEL,
including applications, registrations, and transfers." As in RFP 1, Ms. Gregorini provides an
extensive list of boilerplate objections but fails to articulate any specific basis for why this
request is improper. Ms. Gregorini also limits the request and responds that she will provide a
"copy of U.S. Copyright Office Reg. No. PA0002213169." Ms. Gregorini's exclusion of all
other relevant documents related to the REGISTERED WORK's registration is improper, given
that Defendants are entitled to explore the details of Emanuel's copyright registration during
discovery. Accordingly, please provide all documents responsive to this request, or let us know if
you need any further clarification.

Requests for Production Nos. 7-8: These requests seek all documents, including
communications, relating to any and all copyright transfers relating to EMANUEL (RFP 7) and
ownership of any copyrights to EMANUEL, any version of EMANUEL, or any derivative
thereof (RFP 8). As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections
but fails to articulate any specific basis for why these requests are improper. Specifically as to
relevance, these requests are clearly relevant to this dispute as they pertain to transfers and
copyright ownership of Ms. Gregorini's allegedly infringed work. Accordingly, please provide
all documents responsive to these requests, or let us know if you need any further clarification.

Requests for Production Nos. 9-11: These requests seek all documents, including
communications, regarding deposit copies for any copyright registration of EMANUEL (RFP 9);
all deposit copies submitted to the U.S. Copyright Office in connection with the REGISTERED
WORK (RFP 10); and all deposit copies submitted to the U.S. Copyright Office in connection
with the REGISTERED SCRIPT (RFP 11). As in RFP 1, Ms. Gregorini provides an extensive
list of boilerplate objections but fails to articulate any specific basis for why these requests are

improper. Specifically as to relevance, these requests are clearly relevant to this dispute as they pertain to deposit copies of and related documents pertaining to Ms. Gregorini's allegedly infringed work and versions thereof. Accordingly, please provide all documents responsive to these requests, or let us know if you need any further clarification.

Requests for Production Nos. 12-13: These requests seek all agreements relating to EMANUEL (RFP 12) and all documents relating to agreements referencing EMANUEL (RFP 13). As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why these requests are improper. Specifically as to relevance, these requests are clearly relevant to this dispute as they pertain to agreements and related documents pertaining to Ms. Gregorini's allegedly infringed work. Indeed, Ms. Gregorini has issued over 30 requests for production to Blinding Edge Pictures, Inc. (as just one example) seeking various agreements related to SERVANT (RFPs 53-87). Defendants are willing to meet and confer to clarify or narrow this request. Accordingly, please provide all documents responsive to these requests, or let us know if you need any further clarification.

Request for Production No. 15: This request seeks all agreements between Ms. Gregorini and Well Go USA Entertainment. As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why this request is improper. Specifically as to relevance, this request is clearly relevant to this dispute as it pertains to agreements's between Ms. Gregorini and a third party that has registered a version of Ms. Gregorini's allegedly infringed work with the U.S. Copyright Office. Defendants are willing to meet and confer to clarify or narrow this request. Accordingly, please provide all documents responsive to this request, or let us know if you need any further clarification.

Requests for Production Nos. 17-27: These requests seek all documents, including communications, about the creation (RFP 17), inspiration(s) for (RFP 18), writing of (RFP 19), development of (RFP 20), production of (RFP 21), post-production of (RFP 22), distribution of (RFP 23), promotion of (RFP 24), marketing of (RFP 25), release of (RFP 26), and the financing of (RFP 27) EMANUEL. As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why these requests are improper. Specifically as to relevance, these requests are clearly relevant to this dispute as they pertain to the creative development, production, and release of Ms. Gregorini's allegedly infringed work that she alleges shares substantial similarities with SERVANT. Defendants are willing to meet and confer to clarify or narrow this request. Accordingly, please provide all documents responsive to these requests, or let us know if you need any further clarification.

Requests for Production Nos. 35-36, 38: These requests seek all communications between Ms. Gregorini and Sarah Thorp (RFP 35); all documents with or about Sarah Thorp, relating to EMANUEL (RFP 36); and all agreements between Ms. Gregorini and Sarah Thorp (RFP 38).[2] Ms. Gregorini asserts that these requests are duplicative. Otherwise, as in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why these requests are improper. Specifically as to relevance, these requests are undoubtedly relevant to this dispute as they pertain to communications and documents relating to

---

[2] Defendants' Requests for Production initially spelled Sarah Thorp's name as "Sarah Thorpe." In all instances involving that name, Defendants intended to refer to "Sarah Thorp."

Sarah Thorp, who Ms. Gregorini has identified as a co-writer of the story on which her allegedly
infringed work is based (see Response to Interrogatory No. 10 issued by Uncle George
Productions, LLC). Defendants are willing to meet and confer to clarify or narrow this request.
Accordingly, please provide all documents responsive to these requests, or let us know if you
need any further clarification.

   **Requests for Production Nos. 37, 39**: These requests seek all communications with or
about Tatiana Von Furstenberg relating to EMANUEL (RFP 37) and all agreements between Ms.
Gregorini and Tatiana Von Furstenberg (RFP 39). As in RFP 1, Ms. Gregorini provides an
extensive list of boilerplate objections but fails to articulate any specific basis for why these
requests are improper. Specifically as to relevance, these requests are clearly relevant to this
dispute as, upon information and belief, Ms. Von Furstenberg played a key role in the financing,
production, and/or distribution of EMANUEL. Defendants are willing to meet and confer to
clarify or narrow this request. Accordingly, please provide all documents responsive to these
requests, or let us know if you need any further clarification.

   **Requests for Production Nos. 40-42**: These requests seek all agreements between Ms.
Gregorini and Emanuel Film LLC (RFP 40); all documents relating to the organization of
Emanuel Film LLC (RFP 41); and all documents relating to the dissolution of Emanuel Film
LLC, as referenced in ¶ 85 of the FAC (RFP 42). As in RFP 1, Ms. Gregorini provides an
extensive list of boilerplate objections but fails to articulate any specific basis for why these
requests are improper. Specifically as to relevance, these requests are clearly relevant to this
dispute as they relate to Ms. Gregorini's own allegations in the FAC about the dissolution and
cancellation of the corporate entity that originally "authored" and copyrighted the allegedly
infringed work before allegedly assigning the copyright to Ms. Gregorini. Accordingly, please
provide all documents responsive to these requests, or let us know if you need any further
clarification.

   **Request for Production No. 43**: This request seeks all documents, including
communications, about REBORN DOLLS. As in RFP 1, Ms. Gregorini provides an extensive
list of boilerplate objections but fails to articulate any specific basis for why this request is
improper. Specifically as to relevance, this request is clearly relevant to this dispute as it
references Ms. Gregorini's *own definition* of "REBORN DOLL" in the FAC, and Ms. Gregorini
repeatedly alleges that the "reborn doll" is a key similarity between the works. *E.g.*, FAC ¶¶ 71,
78. Accordingly, please provide all documents responsive to this request, or let us know if you
need any further clarification.

   **Request for Production Nos. 44-54**: These requests seek all documents, including
communications, referencing Apple Inc. (RFP 44); M. Night Shyamalan (RFP 45); Blinding
Edge Pictures, Inc. (RFP 46); Uncle George Productions (RFP 47); Escape Artists, Inc. (RFP
48); Dolphin Black Productions (RFP 49); Tony Basgallop (RFP 50); Ashwin Rajan (RFP 51);
Jason Blumenthal (RFP 52); Todd Black (RFP 53); and Steve Tisch (RFP 54). As in RFP 1, Ms.
Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific
basis for why these requests are improper. Specifically as to relevance, these requests are clearly
relevant to this dispute as they seek documents in Ms. Gregorini's possession referencing the
named defendants in this litigation. Defendants are willing to meet and confer to clarify or

narrow this request. Accordingly, please provide all documents responsive to these requests, or let us know if you need any further clarification.

Requests for Production Nos. 55-65: These requests seek all communications with Apple Inc. (RFP 55); M. Night Shyamalan (RFP 56); Blinding Edge Pictures, Inc. (RFP 57); Uncle George Production (RFP 58); Escape Artists LLC (RFP 59); Dolphin Black Productions (RFP 60); Tony Basgallop (RFP 61); Ashwin Rajan (RFP 62); Jason Blumenthal (RFP 63); Todd Black (RFP 64); and Steve Tisch (RFP 65). Ms. Gregorini responds that she will produce responsive, non-privileged documents reflecting communications with each named individual or entity solely "relating to Plaintiff's allegations in the First Amended Complaint that are in Plaintiff's possession, custody, or control, if any exist." Ms. Gregorini's unilateral limitation of the requests to "Plaintiff's allegations in the First Amended Complaint" is not appropriate, given that there may well exist communications with the named individuals/entities that are relevant under Rule 26(b) to this litigation but are not explicitly related to "Plaintiff's allegations" in the FAC. Accordingly, please provide all documents responsive to these requests, or let us know if you need any further clarification.

Requests for Production Nos. 66-67: These requests seek all communications about EMANUEL between Ms. Gregorini and her agent(s) (RFP 66) and manager(s) (RFP 67). As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why these requests are improper. Specifically as to relevance, these requests are clearly relevant to this dispute as they pertain to communications about Ms. Gregorini's allegedly infringed work. Further, in her FAC, Ms. Gregorini expressly relies on alleged communications with her agent(s) to set forth her alleged theory of Defendants' access to Emanuel (FAC ⁋ 52). Defendants are willing to meet and confer to clarify or narrow this request. Accordingly, please provide all documents responsive to these requests, or let us know if you need any further clarification.

Requests for Production Nos. 68-72: These requests seek all communications about SERVANT between Ms. Gregorini and her agent(s) (RFP 68); manager(s) (RFP 69); Jane Lee (RFP 70); Ellen Jones (RFP 71); and ICM Partners (RFP 72). Ms. Gregorini responds that she will produce responsive, non-privileged documents reflecting communications with each named individual or entity solely "about *Servant* relating to Plaintiff's allegations . . . that are in Plaintiff's possession, custody, or control[.]" Ms. Gregorini's unilateral limitation of the requests to communications "about *Servant* relating to Plaintiff's allegations" is not appropriate given that there may well exist communications with the named individuals/entities that are relevant under Rule 26(b) to this litigation but are not explicitly related to "Plaintiff's allegations." Moreover, Ms. Gregorini's limitation specifically carves out communications relating to Emanuel that are central to this dispute, including those related to her access allegations involving her agent(s) (FAC ⁋ 52). Defendants are willing to meet and confer to clarify or narrow this request. Accordingly, please provide all documents responsive to these requests, or let us know if you need any further clarification.

Requests for Production Nos. 73-74: These requests seek all documents, including communications, regarding "all theatrical distributions" (RFP 73) and "all non-theatrical distributions" (RFP 74) of EMANUEL. As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why these requests are

improper. Specifically as to relevance, these requests are clearly relevant to this dispute as they pertain to the distribution of Ms. Gregorini's allegedly infringed work, which is related to her theory of Defendants' access to that work as well as her claimed damages. Accordingly, please provide all documents responsive to these requests, or let us know if you need any further clarification.

Requests for Production Nos. 75-76: These requests seek all documents, including communications, "about any and all negotiations and/or pitches [Ms. Gregorini has] engaged in to develop EMANUEL into a television series" (RFP 75) and "about any and all negotiations and/or pitches [Ms. Gregorini has] engaged in regarding other adaptations and/or derivative works of EMANUEL" (RFP 76). As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why these requests are improper. Specifically as to relevance, these requests are clearly relevant to this dispute as they relate to Ms. Gregorini's allegations that she was harmed by her purported inability to "develop[] Emanuel into a television series." FAC ¶¶ 94, 100. Defendants are entitled to explore those allegations in discovery. Accordingly, please provide all documents responsive to these requests, or let us know if you need any further clarification.

Request for Production No. 77: This request seeks all documents, including communications, "about any and all negotiations YOU have engaged in regarding licenses of EMANUEL." As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why this request is improper. Specifically as to relevance, this request is clearly relevant to this dispute as it relates to licenses of the allegedly infringed work, which bear on, among other issues, Ms. Gregorini's claimed allegations of a "dilution in the value" of her "rights and reputation" (FAC ¶¶ 90, 97, 103). Accordingly, please provide all documents responsive to this request, or let us know if you need any further clarification.

Request for Production No. 78: This request seeks all documents, including communications, "referring to or about SERVANT." As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why this request is improper. Specifically as to relevance, this request is clearly relevant to this dispute as it pertains to Ms. Gregorini's documents and communications about Defendants' allegedly infringing work. Defendants are entitled to explore in discovery, among other issues, the nature and substance of Ms. Gregorini's knowledge and communications regarding the work at issue in this dispute. Accordingly, please provide all documents responsive to this request, or let us know if you need any further clarification.

Requests for Production Nos. 79-81: These requests seek all documents, including communications, about the EARLY SERVANT SCRIPT, as referenced in FAC ¶ 94 (RFP 79); LATER SERVANT SCRIPT, as referenced in FAC ¶ 100 (RFP 80); and any script of SERVANT (RFP 81). As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why these requests are improper. Specifically as to relevance, these requests are clearly relevant to this dispute as they relate to Ms. Gregorini's allegations about scripts of Defendants' allegedly infringing work. Further, Defendants are entitled to explore in discovery, among other issues, the timing of Ms. Gregorini's access to these scripts as well as the nature of her communications regarding them.

Page 15

Accordingly, please provide all documents responsive to these requests, or let us know if you
need any further clarification.

    <u>Request for Production No. 82</u>: This request seeks all documents, including
communications, about BERLIN STATION, as referenced in Ms. Gregorini's FAC ⁋ 52. As in
RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate
any specific basis for why this request is improper. Specifically as to relevance, this request is
clearly relevant to this dispute as it relates to Ms. Gregorini's theory of Tony Basgallop's alleged
access to EMANUEL, as described in Ms. Gregorini's response to Tony Basgallop's
Interrogatory No. 1 as well as in the FAC ⁋ 52. Defendants are willing to meet and confer to
clarify or narrow this request. Accordingly, please provide all documents responsive to this
request, or let us know if you need any further clarification.

    <u>Request for Production No. 84</u>: This request seeks all documents, including
communications, supporting Ms. Gregorini's contention in ⁋ 51 of the FAC that EMANUEL was
"widely disseminated to the public beginning 2013." As in RFP 1, Ms. Gregorini provides an
extensive list of boilerplate objections but fails to articulate any specific basis for why this
request is improper. Specifically as to relevance, this request is clearly relevant to this dispute as
it relates to a key contention made by Ms. Gregorini in the FAC in support of her theory of
access. Accordingly, please provide all documents responsive to this request, or let us know if
you need any further clarification.

    <u>Request for Production No. 93</u>: This request seeks all non-privileged communications
between Ms. Gregorini and any news, entertainment, or third-party media about this lawsuit,
including but not limited Ms. Gregorini's statements referenced in Sophie Gilbert's January 15,
2020 article in *The Atlantic*. As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate
objections but fails to articulate any specific basis for why this request is improper. Specifically
as to relevance, this request is clearly relevant to this dispute as Ms. Gregorini specifically
references *The Atlantic* article *in her complaint* (FAC ⁋ 17) and Defendants are entitled to
explore that allegation in discovery. Accordingly, please provide all documents responsive to this
request, or let us know if you need any further clarification.

    <u>Requests for Production Nos. 95-97</u>: These requests seek all documents, including
communications, relating to all "expenses incurred in connection with" (RFP 95); "revenues
earned in connection with" (RFP 96); and "profits earned in connection with" (RFP 97)
EMANUEL. As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but
fails to articulate any specific basis for why these requests are improper. Specifically as to
relevance, these requests are clearly relevant to this dispute as they relate to expenses, revenues,
and profits pertaining to Ms. Gregorini's allegedly infringed work, and therefore Ms. Gregorini's
alleged damages. Accordingly, please provide all documents responsive to these requests, or let
us know if you need any further clarification.

    <u>Requests for Production Nos. 99-113</u>: These requests seek all documents, including
communications, relating to any opportunities for Ms. Gregorini to direct (RFPs 99-100), write
(RFPs 101-102), and produce (RFPs 103-104) any television, film, theatrical, commercial or
other project in the two periods since the release of EMANUEL until the release of SERVANT
and since the release of SERVANT; any negotiations Ms. Gregorini, her agents, or her managers

have engaged in regarding her role in any television, film, theatrical, commercial or other project since the release of SERVANT (RFP 105) and documents relating to any payments for any such roles (RFP 106); and Ms. Gregorini's role on various television series, including "The Dropout" (RFP 107); "Killing Eve" (RFP 108); "Chambers" (RFP 109); "Electric Dreams" (RFP 110); "Humans" (RFP 111); "The Hypnotist's Love Story" (RFP 112); and the film "Hurricana" (RFP 113). As in RFP 1, Ms. Gregorini provides an extensive list of boilerplate objections but fails to articulate any specific basis for why these requests are improper. Specifically as to relevance, these requests are clearly relevant to this dispute as Ms. Gregorini alleges that she has suffered "substantial damages to her business in the form of diversion of trade, loss of profits, and a dilution in the value of [her] rights and reputation," *see* FAC ¶¶ 90, 97, 103, resulting from the alleged copyright infringement, and thus Defendants are entitled to explore Ms. Gregorini's damages claims in discovery. Defendants are willing to meet and confer to clarify or narrow these requests. Accordingly, please provide all documents responsive to these requests, or let us know if you need any further clarification.

As you know, the local rules require our meeting to take place at our office within the next ten days. Please let me know some dates and times that work for you.

Sincerely,

Nicolas A. Jampol
DAVIS WRIGHT TREMAINE LLP