# EXHIBIT 9



Suite 2400
865 South Figueroa Street
Los Angeles, CA  90017-2566

**Cydney Swofford Freeman**
213-633-8612 tel
213-633-6899 fax

cydneyfreeman@dwt.com

August 8, 2023

**By Email**

David Erikson
Antoinette Waller
Erikson Law Group
200 North Larchmont Boulevard
Los Angeles, California 90004
david@daviderikson.com
antoinette@daviderikson.com

   Re: *Gregorini v. Apple Inc. et al.*
     Case No. 2:20-cv-00406-SSS-JC

Dear David and Antoinette:

   Our office has produced more than 11,000 documents in response to Plaintiff's voluminous requests for production to Defendants.  After requesting numerous extensions, you have produced only 145 documents to date and continue to ignore the deadlines you yourself have set to produce the remaining documents.  You have sent numerous offensive pre-motion letters, all the while claiming not to have had the time to manage your own productions.  We must move forward.

   Pursuant to Local Rule 37-1, we are writing to request a meet and confer in our office or telephonically within the next ten days regarding Plaintiff's (1) failure to produce documents responsive to Defendants' requests for productions and (2) failure to re-produce cut-off, or otherwise incomplete, documents as flagged by Defendants.  Defendants request that Plaintiff complete her document productions and re-produce all deficient documents.

   In addition, we provide a summary below regarding the parties' various agreements on Plaintiff's discovery responses, as well as those that remain in dispute.  Although Defendants have already complied with the Local Rule 37 meet and confer process regarding these discovery responses, we include the outstanding disputes here to streamline the parties' discussions and motion practice, as Defendants will move to compel supplemental responses and productions in connection with these outstanding issues as well.

**I. Background**

   On September 22, 2022, Defendants served requests for production and interrogatories on Plaintiff.  Defendants granted numerous extensions to Plaintiff's deadline to provide written responses, and Plaintiff served those responses on March 13 and 14, 2023.

Page 2

On May 17, 2023, Ms. Waller stated during a meet and confer that the first of Plaintiff's productions would be served by May 31.  No document production was made by that date.

On June 6, after completing the Local Rule 37 meet and confer process as to several of Plaintiff's responses to interrogatories and requests for production, Defendants filed a Motion to Compel.  Shortly thereafter, in light of Mr. Erikson's ongoing health emergencies, as well as the discovery remaining for the parties to complete, the parties agreed to jointly request a continuance of all pretrial and trial deadlines in this action.  The Court granted the parties' request on June 12.  ECF Nos. 113-114.  In light of that Order, the parties' further agreements as to a number of discovery requests at issue in the June 6 Motion, and ongoing discussions regarding other requests raised in the Motion, on June 13 Defendants agreed to withdraw the Motion without prejudice to Defendants filing a new Motion to Compel regarding any remaining requests on which the parties could not reach agreement.  ECF No. 115.  The parties met and conferred on June 9, June 21, and June 27, ultimately reaching agreement on several discovery requests at issue in the June 6 Motion.

On June 21, during the parties' meet and confer, Ms. Waller stated that she was then "trying" for an initial document production the following week.  A week later, at the June 27 meet and confer, Ms. Waller again stated that they were "trying" to produce documents that week but "not promising," and that Plaintiff definitely would produce by the "next week."  On June 30, I emailed Ms. Waller, reminding her of our meet and confer discussions and asking if Plaintiff would make her promised production that week.  Ms. Waller pushed the production by yet another week, promising to produce documents by the following Friday.

On July 7, Plaintiff made her first production, which contained only 57 documents.  That day, Ms. Waller stated, "This is part of a rolling production.  Subsequent phases will be produced next week."  No document productions were made the following week.  On July 21, I emailed Plaintiff's counsel to again request that Plaintiff produce the promised documents.  That same day, I also raised that Plaintiff's sole production contained several inappropriately truncated email chains[1] and asked that they be re-produced by July 28.

On July 25, having received no response, I asked Ms. Waller to "please provide a schedule for Plaintiff's remaining document productions in response to Uncle George's first set of RFPs by Friday 7/28."  The email stated that if Plaintiff's counsel "[did] not provide a schedule that accounts for substantive completion in the next two weeks, Defendants will be forced to resume the process of a motion to compel next week."  In the same email, I included a chart summarizing the parties' various agreements as to Defendants' interrogatories and requests for production and informed Plaintiff's counsel that, unless Plaintiff's positions on the outstanding requests had changed, Defendants intended to move to compel responses to Uncle George's Interrogatories 20-21 and Uncle George's Requests for Production 43, 66-67, and 75-76.  I asked Ms. Waller to confirm Plaintiff's position as to the outstanding discovery disputes by July 28 and stated that, absent a change of position, we would provide her with a revised joint stipulation.

---

[1] See Plaintiff's production, Bates Nos.  FG000641, FG000642, FG000644, FG000645, and FG000646.

Page 3

On July 28, Plaintiff served her second document production of 88 documents.  In that email, Ms. Waller also stated that "[w]e anticipate at least one more phase in this production and that those documents will be produced next week [by August 4]."  Ms. Waller also stated that Plaintiff will serve supplemental discovery responses "pursuant to the parties' meet and confer discussions" by August 18.  Ms. Waller also stated, "We are following up on the email chains you cite as incomplete in your July 21 email and will get back to you shortly as to those emails.  We will ensure that all responsive email chains are produced in full."  Finally, as to Defendants' July 25, email, Ms. Waller stated, "[W]e will have our position to you by Wednesday [August 2]."

On August 3, still having received no substantive response to the July 25 email, as promised; no additional document productions or anticipated production date, as promised; and no re-productions of the deficient documents from Plaintiff's July 7 production, as promised, I again emailed Ms. Waller to ask her to provide her positions as to the disputed requests that day before Defendants moved forward with a revised joint stipulation.  I also asked Ms. Waller to confirm that Plaintiff's document production would be substantially complete by Friday, August 4 given prior representations, else Defendants would move forward with a motion to compel.

On August 4, Ms. Waller finally responded, only to state that she had been "out of pocket for the past two days and [was] working on other deadlines" that afternoon but that "we are working diligently with our client on the discovery matters and will continue to do so."  As to the July 25 email regarding the disputed discovery requests, Ms. Waller stated, "I will make every effort to have a final answer as to whether we will supplement those requests by late today.  If not today, then over the weekend."

Ms. Waller did not respond over the weekend, but on August 7, she sent Defendants' counsel a letter stating that Plaintiff would provide certain supplemental responses to Uncle George Interrogatory Nos.  20-21, and Uncle George Requests for Production No.  43, 66-67, and 75-76.  *See infra* Section II.b.  The remaining six pages of Ms. Waller's seven-page letter raised issues with Defendants' discovery responses and requested a Local Rule 37 meet and confer on those requests.

Plaintiff still has not provided any schedule for completing document production.

## II.   Discovery Disputes

### a.   Plaintiff's Failure to Produce Documents and Re-Produce Deficient Documents

As of this letter, Plaintiff still has not provided any date certain by which she will substantially complete her document productions, nor any date certain by which she will re-produce the deficient documents in her July 7 production.

To date, Plaintiff has failed to produce several categories of documents responsive to the requests for production that she has agreed to produce.  For example, Plaintiff has not produced

Page 4

any communications to/from Sarah Thorp, the individual co-credited for the story of the allegedly infringed work in this lawsuit; any communications related to Plaintiff's alleged director submission for the series *Berlin Station*, one of Plaintiff's key theories of access; and any documents and communications relating to *Servant*, the allegedly infringing work. These are just a few examples of the documents central to this litigation that Plaintiff has not yet produced.

Plaintiff's minimal productions are especially surprising in light of her repeated argument that a party must have initial disclosure documents in hand at the time of those disclosures. But Plaintiff still has not produced several categories of documents that she represented more than three years ago were in her possession, custody, or control, including, for example, "materials establishing and supporting Defendants' infringing activity including documents and communications concerning *Servant*, Defendants' interviews and media related to *Servant*"; "materials establishing and supporting Defendants' knowledge and information regarding Plaintiff's work"; and "correspondence to or from Defendants regarding the subject matter of this case." And she has produced only a limited number of documents related to her initial disclosure category of "materials establishing and supporting Plaintiff's intellectual property and copyright at issue in this litigation, including the creation, development and distribution of *Emanuel*."

As courts have repeatedly found, a failure to produce documents "prejudices" a party's ability to "[defend] its case diligently" and "interferes with the rightful resolution" of the case. *MySpace, Inc. v. Wallace*, 2008 WL 1766714, at *4 (C.D. Cal. Apr. 15, 2008); *see also Alonzo v. City of Los Angeles*, 2015 WL 13919184, at *2 (C.D. Cal. July 24, 2015) (finding sufficient prejudice to defendant where plaintiff "failed to produce documents . . . necessary for [d]efendant to adequately litigate this case"). Nearly two months after Defendants produced more than 11,000 documents, Plaintiff has only produced 145 documents, with broad swaths of documents unproduced and no clear deadlines as to when the rest of the production(s) will be complete. Plaintiff has also provided no date by which she will re-produce deficient documents. This ongoing failure severely prejudices Defendants' ability to defend this case.

Accordingly, Defendants will move the Court for an order requiring that Plaintiff (1) complete her document productions, as agreed, in response to Uncle George's Requests for Production Nos. 1-13, 15, 17-26, 28-42, 44-54,[2] 68-74, 77-94, 96-98 (where narrowed as relevant, per the parties' meet and confer discussions, *see infra* Section II.b); (2) complete her document productions as to the remaining disputed requests, Uncle George's Requests for Production Nos. 43, 66-67, and 75-76, *see infra* Section II.b; and (3) re-produce all deficient documents in their complete form.

---

[2] Note that, as previously explained in the parties' June 6 Joint Stipulation, ECF No. 112 at 62 n.12, because the parties' agreed-upon narrowing of Uncle George's RFPs 44-54 would encompass RFPs 55-65, Defendants are not separately pursuing RFPs 55-65 at this time, but reserve all rights to do so at a future date should Plaintiff not produce responsive documents.

Page 5

### b.  Discovery Requests Disputed by June 6 Motion

### i.  Agreed-Upon Discovery Requests

Below is a chart summarizing the parties' agreements on the discovery responses raised in Defendants' June 6 motion.

| Discovery Request | Status |
|---|---|
| Blinding Edge Interrogatory 1 | Plaintiff agreed to supplement this response with Plaintiff's total revenue. |
| Blinding Edge Interrogatories 2-3 | Plaintiff agreed to provide Plaintiff's total revenue in connection with *Emanuel*. |
| Blinding Edge Interrogatories 7-8 | Plaintiff agreed to supplement her responses to identify the manner of her receipt of the *Servant* scripts. |
| Blinding Edge Interrogatories 9-10 | The parties did not reach any agreement regarding pitches, discussions, or negotiations to option *Emanuel* for television or for licensing. |
| Blinding Edge Interrogatory 17 | Plaintiff agreed she will produce all executed agreements related to *Emanuel*, but will not update this response to identify the relevant executed agreements. |
| Uncle George Interrogatory 3 | Plaintiff agreed to supplement this response with a description or explanation of what specific copyright(s) Well Go USA Ent.  holds with respect to *Emanuel*. |
| Uncle George Interrogatory 18 | Plaintiff agreed to supplement this response to provide information regarding the locations of *Emanuel*'s non-theatrical distribution, including streaming services. |
| Uncle George RFPs 2-11 | Plaintiff agreed to produce documents concerning copyright ownership of *Emanuel*. |

Page 6

| Uncle George RFPs 12-13, 15 | Plaintiff agreed to produce executed agreements regarding *Emanuel*'s copyright but not agreements related to licensing. |
|---|---|
| Uncle George RFPs 17-26 | Plaintiff agreed to produce documents about *Emanuel*'s creative development, promotion, marketing, release, and distribution. |
| Uncle George RFPs 35-36, 38 | Plaintiff agreed to produce communications between Sarah Thorp and herself regarding *Emanuel* and/or *Servant*, as well as all executed agreements with Ms. Thorp relating to *Emanuel*. |
| Uncle George RFPs 37, 39 | Plaintiff agreed to produce communications with or about Tatiana von Furstenberg relating to *Emanuel*. |
| Uncle George RFPs 40-42 | Plaintiff agreed to produce agreements between Plaintiff and Emanuel Film LLC, documents relating to its organization, and documents relating to its dissolution. |
| Uncle George RFPs 44-54 | The parties agreed that Plaintiff will produce documents/communications relating to (1) claims made by Plaintiff in this lawsuit and (2) defenses raised by each Defendant. |
| Uncle George RFPs 68-72 | Plaintiff agreed to produce her communications  with her agents, managers, Jane Lee, Ellen Jones, and ICM Partners about *Servant* relating to Plaintiff's allegations. |
| Uncle George RFPs 73-74 | Plaintiff agreed to produce agreements related to theatrical and non-theatrical distributions and submissions. |
| Uncle George RFP 77 | Plaintiff agreed to produce agreements related to *Emanuel*'s theatrical and non-theatrical distribution. |
| Uncle George RFP 78 | Plaintiff agreed to produce documents and communications referring to or about *Servant* with the Defendants' agreement to limit the request to |

Page 7

| | documents/communications dated prior to the filing of Plaintiff's complaint. |
|---|---|
| Uncle George RFPs 79-81 | Plaintiff agreed to produce documents responsive to this request regarding *Servant* scripts with the Defendants' agreement to limit the request to documents/communications dated prior to the filing of Plaintiff's complaint. |
| Uncle George RFP 82 | Plaintiff agreed to produce documents and communications related to her submission to direct episodes of *Berlin Station*. |
| Uncle George RFP 84 | Plaintiff agreed to produce documents supporting her contention that *Emanuel* was widely disseminated. |
| Uncle George RFP 93 | Plaintiff agreed to produce documents responsive to this request regarding her communications with press about this lawsuit. |
| Uncle George RFP 97 | Plaintiff agreed to produce her total revenue in connection with *Emanuel*. |

### ii.   Remaining Disputed Discovery Requests

Below is a chart summarizing the parties' outstanding disputes on the discovery responses raised in Defendants' June 6 motion.

| **Discovery Request** | **Status** |
|---|---|
| Uncle George Interrogatories 20-21 | Plaintiff agreed to provide the total revenue for *Emanuel* but refused to provide information regarding rental numbers, sales, and box office receipts.  Defendants intend to move to compel production unless Plaintiff produces this information or abandons her widespread dissemination theory.<br><br>Plaintiff's August 7 response: "Plaintiff will provide supplemental responses, subject to and without waiving the objections, and to the extent |

Page 8

| | |
|---|---|
| | the information is available, to provide the box office receipts of *Emanuel* and the number of streaming service rentals/sales." |
| Uncle George RFP 43 | Plaintiff did not agree to produce all documents and communications regarding reborn dolls. Defendants intend to move to compel production of these documents and communications if Plaintiff does not produce them.<br><br>Plaintiff's August 7 response: "Plaintiff will provide a supplemental response, subject to and without waiving the objections, after a reasonable and diligent search, Plaintiff will produce responsive, non-privileged documents reflecting communications about reborn dolls relating to plaintiff's allegations that are in her possession, custody, or control, if any exist, subject to terms of a protective order entered in this action." |
| Uncle George RFPs 66-67 | Plaintiff agreed to produce communications regarding her submission to direct episodes of *Berlin Station*, but did not agree to provide other communications between Plaintiff and her agent/manager relating to *Emanuel*. Defendants intend to move to compel production of these documents and communications if Plaintiff does not produce them.<br><br>Plaintiff's August 7 response: "Plaintiff will provide supplemental responses, subject to and without waiving the objections, after a reasonable and diligent search, Plaintiff will produce responsive, non-privileged documents reflecting communications with her agent/manager about *Emanuel* relating to plaintiff's allegations that are in her possession, custody, or control, if any exist, subject to terms of a protective order entered in this action." |
| Uncle George RFPs 75-76 | Plaintiff refused to produce documents related to any negotiations and/or pitches relating to developing *Emanuel* into a TV series or other |

Page 9

|  | adaptations and/or derivative works.  If Plaintiff agrees she will not use any documents or communications regarding licensing Emanuel or pitching or creating any adaptation of Emanuel or otherwise mention or rely on that information in any way in this case, Defendants will not move to compel production of these documents and communications.  Otherwise, Defendants will move to compel.<br><br>Plaintiff's August 7 response: "Plaintiff will provide a supplemental response, subject to and without waiving the objections, after a reasonable and diligent search, Plaintiff will produce responsive, non-privileged documents reflecting negotiations to develop Emanuel into a television series, or other adaptions or derivative works that Plaintiff may rely on in this case that are in her possession, custody, or control, if any exist, subject to terms of a protective order entered in this action." |
|---|---|

### 1.  Uncle George Interrogatories 20-21

<u>Interrogatory 20</u>: Identify the revenues of any and all theatrical releases of EMANUEL, including but not limited to box office receipts.

<u>Interrogatory 21</u>: Identify the number of rentals and/or sales for each streaming service on which EMANUEL was distributed.

On August 7, Plaintiff agreed to provide supplemental responses as requested.  Defendants confirm that they will refrain from moving to compel on these interrogatories, as long as these supplemental responses are provided by **August 18, 2023**, along with the other supplemental responses as promised (*see supra*).

### 2.  Uncle George RFP 43

<u>RFP 43</u>: All DOCUMENTS, including COMMUNICATIONS, about REBORN DOLLS.

On August 7, Plaintiff agreed to produce responsive, non-privileged documents reflecting communications about reborn dolls, but only those "relating to plaintiff's allegations" in her

Page 10

possession, custody, or control. This limitation is inadequate. Plaintiff has repeatedly alleged in
this litigation that "reborn dolls" are a key similarity between the works at issue. *See* FAC ¶¶ 71,
78. Further, in response to Defendants' motion to dismiss, Plaintiff contended that using reborn
dolls is not a "real therapy" and that even if it were, a "physically realistic" doll is not
"indispensable" to that premise. Opp. to Mot. to Dismiss at 17 (ECF No. 34).

Given the centrality of this concept and its protectability to Plaintiff's claims, Defendants
are entitled to explore documents in Plaintiff's possession, custody, or control, related to "reborn
dolls" beyond just those documents that Plaintiff may perceive to be "related" to her allegations.
Accordingly, Defendants request that Plaintiff produce all documents, including communications,
about reborn dolls, whether or not Plaintiff determines they are "relating to [her] allegations;"
otherwise, Defendants intend to move to compel production of these documents.

### 3.  Uncle George RFPs 66-67

RFP 66: All COMMUNICATIONS between YOU and your agent(s) about EMANUEL.

RFP 67: All COMMUNICATIONS between YOU and your manager(s) about
EMANUEL.

During the parties' previous meet and confer discussions, Plaintiff agreed to produce
communications regarding her submission to direct episodes of *Berlin Station* in response to these
requests. On August 7, Plaintiff further agreed to produce responsive, non-privileged documents
reflecting communications with her agent/manager about *Emanuel* "relating to plaintiff's
allegations" in her possession, custody, or control. Again, this limitation is inadequate, as it is
unclear how Plaintiff will determine what "relates" to her allegations as to *Emanuel* and would
therefore be responsive. For example, would Plaintiff consider her agent or manager's efforts to
sell *Emanuel*—a highly relevant category of documents to determine among other elements,
Plaintiff's own characterizations of her work and Defendants' ability (or lack thereof) to access
*Emanuel*—to "relate" to her allegations? Nevertheless, in the spirit of compromise, Defendants
would be willing to narrow this request to "communications with Plaintiff's agent/manager about
*Emanuel* relating to (1) claims made by Plaintiff in this lawsuit and (2) defenses raised by each
defendant."

### 4.  Uncle George RFPs 75-76

RFP 75: All DOCUMENTS, including COMMUNICATIONS, about any and all
negotiations and/or pitches YOU have engaged in to develop EMANUEL into a television series.

RFP 76: All DOCUMENTS, including COMMUNICATIONS, about any and all
negotiations and/or pitches YOU have engaged in regarding other adaptations and/or derivative
works of EMANUEL.

Page 11


On August 7, Plaintiff agreed to produce responsive, non-privileged documents "reflecting negotiations to develop Emanuel into a television series, or other adaptions or derivative works that Plaintiff may rely on in this case" in her possession, custody, or control.  But it is not acceptable for Plaintiff to cherry-pick which documents "she may rely on" and not produce the rest.  Plaintiff's document production obligations extend beyond initial disclosure documents, *i.e.*, those she may rely on to prosecute her case, to include affirmative discovery requests served by Defendants.  These documents are relevant for several reasons.  First, Plaintiff's allegations attribute the many differences between *Emanuel* and *Servant* to their different formats (feature film vs. television).  *See* FAC ¶¶ 3, 82.  To the extent *Emanuel* was ever conceptualized, pitched, or developed as a television series, the way in which it was described and pitched would be highly relevant information for those allegations.  Second, these documents reflect how Plaintiff characterizes and promotes her own work to third parties, which significantly relates to *Emanuel*'s creative development and distribution.  Third, these documents are relevant to Plaintiff's widespread dissemination theory of access by providing information regarding the "degree of [*Emanuel*'s] commercial success and on its distribution through . . . other relevant mediums." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016).


In the spirit of compromise, Defendants offered that they would not move to compel production of these topics if Plaintiff categorically agrees that she will not use any documents or communications regarding licensing or pitching Emanuel; creating any adaptation of Emanuel; or otherwise mention or rely on that information in any way in this case.  Otherwise, Defendants intend to move to compel production of these highly relevant documents.


* * *


As you know, the local rules require our meeting to take place at our office or telephonically within the next ten days.  We are available to meet with you at our DTLA or Culver City office or over the telephone, whichever is more convenient for you.  Please let us know some dates and times that work for you.


Sincerely,


Cydney Swofford Freeman
DAVIS WRIGHT TREMAINE LLP