ERIKSON LAW GROUP
David Alden Erikson (SBN 189838)
 david@daviderikson.com
Antoinette Waller (SBN 152895)
 antoinette@daviderikson.com
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
Facsimile: 323.465.3177

Attorneys for Plaintiff Francesca Gregorini

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FRANCESCA GREGORINI,<br><br>           Plaintiff,<br><br>      v.<br><br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS; a Pennsylvania corporation; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive<br><br>           Defendants. | Case No. 2:20-cv-00406-SSS-JC<br>Hon. Sunshine S. Sykes<br><br>**DECLARATION OF DAVID A. ERIKSON IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION TO CONTINUE SCHEDULE OF PRETRIAL AND TRIAL DATES [DKT. 114]**<br><br>Discovery cutoff:    November 17, 2023<br>Pretrial conference: May 24, 2024<br>Trial:                        June 10, 2024 |

I, David A. Erikson, declare:

1. I am an attorney for Plaintiff Francesca Gregorini. I make this declaration in support of Ms. Gregorini's *ex parte* application seeking a six-month continuance of pretrial deadlines and the trial date set in this case. If called as a witness, I could and would competently testify with respect to the following statements.

2. I serve as lead counsel on this matter. I have a long friendship and professional relationship with Ms. Gregorini, and I have represented her in other, varied, legal cases. Although I specialize in intellectual property litigation, I assume that she considers me to be her general and go-to lawyer.

3. I have submitted a prior declaration to this Court about my health. But I will offer this update of some very troubling recent developments that have changed the landscape dramatically and makes it difficult for me to work of late (especially given multiple hospitalizations and trips to the hospital, including a recent one that lasted more than 3 weeks). Indeed, my health situation renders it impossible for me to devote the time required by this extremely intensive case. According to doctor's orders, I cannot work full time for the next four to six months. I nevertheless work on this case for hours every day and will continue to do so. I have a stellar support staff, including experienced attorney Antoinette Waller, who has picked up the day-to-day duties to a large extent. But as lead counsel, it is extremely difficult to have me at less diminished strength.

4. The Court heard about my health in June, when the parties stipulated to a 4-month continuance of trial-related deadlines. At that time, Defendants' counsel submitted a declaration partially relating to my health, which was one reason for the requested continuance (which was granted). But in part based on new developments, in part described here, I need a longer continuance. I should also mention that once again, my health is only one reason for the requested continuance—and there is easily good cause for the continuance even if I was at 100 per cent. This declaration, however, is only about my health.

5. As mentioned, I have worked on this case through my illness. I had cancer through the period we successfully fought this case at the Ninth Circuit. Although my health is now much worse, I do not work less. This is especially true in the prior six months. Specifically, the parties have engaged in extensive discovery efforts, including, unfortunately, extended contentious disputes in attempting to obtain Defendants' discovery. For example, Plaintiff was forced to bring a motion to compel to even obtain Defendants' initial disclosure documents. Defendants have resisted and continue to resist Plaintiff's discovery efforts. For Plaintiff's part, she has responded to hundreds of discovery requests from Defendants, including twelve sets of written discovery. Plaintiff has also produced over 128,000 pages of discovery materials The parties are pursuing and have pursued third-party subpoenas and two witnesses have been deposed during the past month.

6. Before going back to describe the background of my illness and what led up to the prior continuance, I will briefly describe the new challenges I am facing.

7. I have not had the strength or well-being to receive chemotherapy treatments for the past 10 months. For one thing, since my hospitalization this past June, I am "tube fed." It's far worse than traditional tube feeding, in which nutrition enters the actual digestive tract. In my case, at least for the time being, I receive all nutrition (food and water) intravenously. This happens overnight, from roughly 10 PM to 10 AM, not to mention all the preparation and take down. A home nursing company helps, but my wife does most of the work—including connecting me every night and disconnecting me every morning. There is hope that this incredibly cumbersome situation could end (or at least greatly mitigate) in the next six months.

8. In addition, various objective and subjective measures of my strength and vitality indicate that I have not been ready for chemotherapy, including various blood and iron counts and metrics, and the like, as well as just my general fatigue level. Again, there is hope that this situation could end in the next four to six months.

9. Starting now, I am resuming chemotherapy. In fact, my first day back

was last week, Thursday, October 5. This happens to be the day after our meet and confer on the subject of a continuance with Defendants' counsel—but much of this was already known, and we certainly went back and informed them and showed them a copy of a preliminary version of this declaration. In fact, they have been aware of the facts stated here since October 6, when we showed them a preliminary draft of this declaration.

10.  While one might imagine that I have resumed chemotherapy as of last week because of at least a partial recovery or improvement of my general health, such is unfortunately not the case. The opposite is true. Rather, I have resumed chemotherapy because it is medically *necessary* for various reasons I won't go into. So, for example, I will be on overnight I.V. nutrition, and that will go on even during chemotherapy treatments. Chemotherapy involves an infusion in the hospital—followed by 48 hours of home infusion through a pump. My wife and I joke that it's hard to keep straight on what is pumped where (left arm is intravenous nutrition; right arm is chemotherapy drugs). A home chemotherapy nurse is necessary for the latter. By the way, these are simple intravenous lines. They last for months and enter the body near the top of the arm, so the contents can easily reach the heart.

11.  Relatedly, I was just told on October 5 that I will need regular, perhaps, biweekly, blood transfusions, to keep me healthy enough for chemotherapy. In fact, it may happen that I do chemotherapy and blood transfusions on alternate weeks for the next few months.

12.  Having briefly described the situation as it exists today, I'll briefly back up to explain the overall course of my disease. I was diagnosed with colon cancer two-and-a-half years ago, in February 2021. I quickly began chemotherapy and radiation therapy and had a major surgery to remove the cancerous area (the colon) in November of 2021. That surgery was a success and I more or less stuck to the schedule of moving towards a hoped-for full recovery by February 2022. However, I began to experience new complications (in large part related to blockages in

intestines) which were eventually recognized as a cancer recurrence, leading to new treatment. The difference is that this time, my treatment is made entirely more difficult by intestinal blockage issues.

13. Nevertheless, I generally continued working on this case, full-time, until two new hospitalizations in June of this year. In May, the watch-and-wait approach to my chemotherapy ceased working because the pain made it impossible to eat or to continue chemotherapy. For the first time, my weight dropped abruptly and dramatically (I had already lost forty pounds; but that number has increased to sixty-five pounds lately). This was also the first time that my ability to work has been affected for an extended period). During that May hospitalization, which lasted a week, I was treated in various ways—and visited daily with various medical professionals including my oncologist, my colorectal surgeon, my gastroenterologist, and more. Again, I was sent home with some optimism that I could at least go about a normal life (including eating and working).

14. It didn't work. By early June, I was back in the hospital due to stomach pains and inability to eat. As my weight was now an extreme concern, I was placed on an intravenous nutrition system as well as traditional "tube feeding." I also had emergency gallbladder surgery while at Cedars Sinai (and there was some hope that perhaps this will lead to general improvement); and dealt with several infections. I was in the hospital for three weeks before being sent home. This time, we don't have to hope that my stomach allows me to eat—because I will continue to receive the IV nutrition for as long as I need it.

15. That situation remained somewhat stable—until the developments of the last week (described above) where it is medically necessary to take a few extreme steps in order to allow chemotherapy to work its magic over the next four to six months. I am told to expect at least four months of chemotherapy, but hopefully not more than six.

16. I should note that my disease is not terminal. I am lucky in the sense that

my cancer has not spread beyond my colon. There is every hope that the currently planned course of chemotherapy will shrink the increasingly problematic tumors in my colon, which could one day lead to a semi-normal life, including food and full-time work. Again, I fully expect to be taking a very active role in this case as soon as I am able, hopefully in the coming months. So far, the very capable lawyers on my team have taken and defended depositions. But in the future, I hope to take a good number of the key depositions that are coming up. My doctors say this is realistic, especially if the requested continuance is forthcoming.

17. As it is, I work mostly from home, for perhaps 4-5 hours per day—and I have the help of a wonderful team. I also spend as much time as possible with our six-year-old son.

18. I should mention also that Defendants' counsel has been gracious about my cancer and related complications. But while they SAY—quite sincerely I am sure—all the right things, it has not translated into action. Perhaps Defendants will say that they cannot be expected to prejudice their own case. And all things considered, it's hard to deny that Defendants benefit their own case by being unrelenting. They are obviously well-funded and have demonstrated as much in this case. It would be difficult under any circumstances to meet some of their demands. The reason for this application is that these are not quite normal times. Interestingly, Defendants are hard pressed to claim any prejudice whatsoever because of the requested continuance. Indeed, it would take a herculean effort from them (as well as us) to get necessary discovery completed by the current deadline. The fact that they are pushing to make both sides undertake such effort shows that Defendants desire and benefit from such an unreasonable and unrelenting pace. Apparently, they see any deviation from that stance as intolerably self-prejudicial.

19. My client is very much aware of my health situation, and I have urged her to begin thinking about approaching other counsel on the off chance that I cannot continue. Because she is fiercely loyal and supportive to me, she is having a difficult

time doing so. But because this is an intellectually fascinating case, I have learned that it would not be difficult to locate a replacement counsel to step in if my condition does not improve as hoped.

20. I realize my health story is disturbing. But I can say with confidence that my illness has not slowed down this case a bit. In our *ex parte* application, we relay more about that.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed October 12, 2023, at Los Angeles, California.

By:   /s/ *David Alden Erikson*
       David Alden Erikson