NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
  meenakshikrishnan@dwt.com
SAMANTHA LACHMAN (State Bar No. 331969)
  samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel.:  (213) 633-6800; Fax:  (213) 633-6899

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FRANCESCA GREGORINI,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-00406-SSS-JC<br>Hon. Sunshine S. Sykes<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**<br><br>Expert Disclosures: October 20, 2023<br>Discovery cutoff:    November 17, 2023<br>Pretrial conference: May 24, 2024<br>Trial:                      June 10, 2024 |

Defendants Blinding Edge Pictures, Inc. ("Blinding Edge"), Uncle George Productions, LLC ("Uncle George"), Apple Inc. ("Apple"), Escape Artists, Inc. (erroneously sued as Escape Artists LLC) ("Escape Artists"), Dolphin Black Productions ("Dolphin Black"), M. Night Shyamalan, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch (collectively, "Defendants") submit this opposition to plaintiff Francesca Gregorini's *ex parte* application for a further six-month continuance of all dates.

## I.    INTRODUCTION

After years of litigation and numerous extensions and continuances, and with approximately a month remaining for fact and expert discovery (and one week remaining for expert disclosures), Plaintiff now seeks an eleventh-hour extension of all dates by an additional six months.  Plaintiff's justification for this request has shifted over the last few weeks, from alleged discovery deficiencies to Plaintiff's lead counsel's health.  And despite first raising the continuance on September 29, Plaintiff waited almost two full weeks to file this request.  While Defendants are sympathetic regarding lead counsel's health – which is why they granted so many extensions, including numerous extensions for Plaintiff's discovery responses and the prior four-month continuance of all dates – his colleague has been leading discovery for the last ten months, and has simply failed to diligently prosecute this case.  Plaintiff now attempts to use Defendants' willingness to grant numerous extensions against them, contending that Defendants have never "shown any urgency" to dispose of the case.  But the law is clear that the failure to conduct needed discovery within the time allowed by the Court is not grounds for a last-minute continuance, and certainly not an *ex parte* continuance.  Plaintiff cannot obtain endless extensions to conduct the discovery that they have failed to do, and Defendants cannot be forced to litigate this case in perpetuity.

Defendants respectfully request that Plaintiff's *ex parte* application be denied. To the extent the Court is inclined to grant some continuance, Defendants request

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION
4863-8045-2484v.6 0113237-000003

that the upcoming expert disclosure deadline and discovery cutoffs remain in place, and then post-discovery dates, such as the dispositive motion deadline and pre-trial and trial dates, be continued.  That would enable the parties to complete discovery by the deadline while still providing Plaintiff some continuance.

## II.   FACTUAL BACKGROUND

This case was filed almost four years ago.  After Plaintiff filed her First Amended Complaint ("FAC") in March 2020, the parties engaged in limited initial discovery.  Plaintiff served over 600 document requests on Defendants, to which Defendants timely responded, and both parties exchanged their initial disclosures.  Declaration of Cydney Swofford Freeman ("Freeman Decl.") ¶¶ 2-4.

Then, after this Court granted Defendants' motions to dismiss and for attorneys' fees, and following Plaintiff's appeal of both decisions, the case was pending before the Ninth Circuit for almost two years, until it was remanded in April 2022.  ECF Nos. 60-61.  Within a month of remand, Defendants filed a motion to bifurcate discovery, after which the case was transferred to Judge Sykes.  ECF Nos. 81, 93.  While that motion was pending, Defendants' counsel began collecting millions of documents from their eleven clients.  Freeman Decl. ¶ 10, 13.  On August 26, 2022, this Court denied Defendants' motion to bifurcate and entered a Scheduling Order, setting a fact and expert discovery cutoff for July 14, 2023, with initial expert disclosures scheduled for June 16, 2023.  ECF Nos. 99-100.

Since then, the parties have been conducting discovery.  Defendants moved promptly and diligently to pursue discovery, including by serving discovery requests and noticing Plaintiff's deposition in September 2022.  Freeman Decl. ¶ 12.  Throughout this period, Defendants' counsel worked extensively with Defendants and their e-discovery vendors to continue the collection, search, and review of Defendants' documents, and to determine a reasonable and efficient way to conduct discovery that still provided Plaintiff with the sought-after documents and information.  *Id.* ¶ 13.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

4863-8045-2484v.6 0113237-000003

In mid-December 2022, at which point Defendants had already granted Plaintiff two extensions for her discovery responses (totaling an additional three months), the parties agreed to meet and confer in January 2023 to determine a reasonable discovery schedule for both sides. *Id.* ¶¶ 14, 16-17. At this time, Mr. Erikson also informed Defendants' counsel that his colleague, Antoinette Waller, would be handling discovery in the case, and that he always "delegate[s] discovery to someone other than me." *Id.* ¶¶ 18-19. Prior to the parties' January 2023 meet and confer, Defendants' counsel informed Plaintiff's counsel that Defendants' collection, search, and review process was well underway, but that there are "hundreds of thousands of documents" that were potentially responsive. *Id.* ¶ 19.

Over the next two months, Defendants repeatedly tried to engage with Plaintiff to reach reasonable agreements on the scope of discovery to no avail. *Id.* ¶¶ 21-24. Instead, Ms. Waller rejected all of Defendants' detailed proposals and provided no counter-proposals. *Id.* ¶ 22. During this time, due to Ms. Waller's mother's passing, Defendants granted an additional two-month extension for Plaintiff's discovery responses. *Id.* ¶ 20. Because Plaintiff categorically rejected all of Defendants' proposals, Defendants were forced to proceed with a costly, time-consuming, and burdensome review process on behalf of eleven individual and corporate defendants, ultimately producing 11,583 documents between February 27 and September 12, 2023, the majority of which (11,541 documents, or 99% of Defendants' total production) was produced by June 16, 2023. *Id.* ¶ 24.

Despite their much higher collection, search, and review burden than Plaintiff, Defendants produced the bulk of their documents long before Plaintiff produced a single document. Plaintiff repeatedly made, and broke, promises on her document productions, even though she only had to review the files of one individual. For example, Ms. Waller promised that Plaintiff's first production would be served by May 31, 2023, and then repeatedly moved that date several times, until Plaintiff made her first production of just 57 documents on July 7. *Id.*

¶¶ 30-34.  Ms. Waller then again made and broke promises regarding the second production, which was not served until July 28, 2023 and only contained 88 documents.  *Id.* ¶¶ 35-37.  After Defendants were forced to bring a motion to compel, and after additional broken promises, Plaintiff finally produced over 12,500 documents September 25, 2023, the night before the hearing on Defendants' motion to compel.  *Id.* ¶¶ 38-42.  Based on Defendants' discovery vendor's analysis and initial counsel review, this production appears to contain over 7,000 exact duplicates.  *Id.* ¶ 42.

In June 2023, Plaintiff sought her first four-month continuance from Defendants, to which Defendants agreed in light of Mr. Erikson's health.  *Id.* ¶¶ 46-48.  On June 12, over five months ago, the Court entered the Amended Scheduling Order, which set a fact and expert discovery cutoff of November 17, with the parties' initial expert disclosures to be exchanged on October 20, *one week from today*.  ECF No. 114.

Before and after that continuance, Defendants have been diligently pursuing discovery.  For example, Defendants have propounded discovery requests; served several third-party subpoenas; amended their initial disclosures well in advance of the discovery cutoff; served supplemental discovery responses; and retained experts who have prepared reports to be served on October 20.  *Id.* ¶¶ 50-52.  Defendants have also noticed and taken two third-party depositions: Ms. Thorp on September 27 (which Ms. Waller attended), and Ms. Blaustein on October 3 (which Ms. Waller's co-counsel, Ryan Patterson, attended).  *Id.* ¶ 50.  Defendants also served an amended notice for Plaintiff's deposition on October 20 (a date that Ms. Waller has refused to confirm).  *Id.* ¶¶ 51-53, 55-57.

By contrast, Plaintiff's counsel has not noticed or taken a single deposition.  *Id.* ¶ 57.  Only on October 4 did Ms. Waller email Defendants' counsel asking for deposition dates for Mr. Rajan, Mr. Shyamalan, and Mr. Basgallop.  *Id.* ¶ 52.  Although Defendants' counsel promptly provided several dates for Mr. Rajan and

Mr. Basgallop (and are seeking dates for Mr. Shyamalan), Plaintiff has not noticed any of those depositions. *Id.* ¶¶ 53-55, 57.

On September 29, forty-five minutes after serving Plaintiff's first set of interrogatories on Apple, and contrary to her representation that Defendants "long knew" about and were "amenable" to the continuance, Ms. Waller informed Defendants' counsel *for the first time* that Plaintiff would be seeking another four-month continuance and asked Defendants to stipulate to the extension, without providing any grounds for the request. *Id.* ¶¶ 58-59. After Defendants' counsel asked for those grounds, Ms. Waller attributed the requested continuance to Defendants' "obstreperous and obstructionist conduct" and provided a long list of Defendants' purported discovery deficiencies. *Id.* ¶¶ 61-62 & Ex. 1. Ms. Waller's email included a one-line reference to Mr. Erikson's health. *Id.* ¶ 63 & Ex. 1. The next week, on October 4, Defendants' counsel and Ms. Waller met and conferred, during which Ms. Waller attributed the justification for the continuance entirely to Defendants' discovery and, contrary to Ms. Waller's representation, did not once mention Mr. Erikson's health as grounds. *Id.* ¶¶ 65-66. During that meet and confer, Ms. Waller stated that Plaintiff would file an *ex parte* application on October 6, and if Defendants did not agree to stipulate, Plaintiff would "list" every so-called "dirty deed" by Defendants. *Id.* ¶ 66.

After speaking with their clients, Defendants' counsel informed Ms. Waller that Defendants would not agree to stipulate to another four-month continuance, given how long the case had been pending; the already extended discovery schedule; and Defendants' satisfaction of all discovery obligations. *Id.* ¶ 68. In response, Ms. Waller reiterated that the basis for the continuance was Defendants' discovery conduct. *Id.* ¶ 69. The next afternoon, Mr. Erikson sent Defendants' counsel a draft declaration describing at length his health situation and new developments complicating his recovery, which, contrary to Defendants' call with Ms. Waller, were now cited as a justification for the requested continuance. *Id.*

1  ¶ 70.  Defendants' counsel alerted Mr. Erikson to the fact that this was "new

2  information," but that they would speak with their clients; in the meantime,

3  Defendants' counsel understood if Plaintiff wished to proceed with her *ex parte*

4  application.  *Id.* ¶ 71.  After the weekend, and after speaking with their clients,

5  Defendants' counsel emailed Mr. Erikson that Defendants are "genuinely

6  sympathetic, and we considered various ways we could agree to some permutation

7  of a continuance, but the determination is that it would significantly prejudice our

8  clients to push this out even further."  *Id.* ¶ 72.  Defendants' counsel offered, "If you

9  had any creative ideas that would help things on your end without causing any

10  prejudice to our clients, we are open to having that conversation," but that, barring

11  such ideas, Defendants would "respectfully oppose the motion."  *Id.*  Shortly

12  thereafter, Mr. Erikson responded that Plaintiff would seek a six-month

13  continuance, instead of the four-month continuance previously proposed.  *Id.* ¶ 73.

14  Plaintiff's counsel did not propose any ideas other than a four-month continuance of

15  all dates without restriction.  *Id.*

16  Despite initially informing Defendants that they planned to file their *ex parte*

17  application on October 6, Plaintiff waited until October 12, just over a week before

18  the parties' initial expert disclosure deadline, to do so.  ECF No. 121.

19  **III.  *EX PARTE* RELIEF IS NOT APPROPRIATE HERE**

20  Plaintiff makes no effort to justify the *ex parte* nature of her request.  The law

21  on *ex parte* applications in this Circuit is clear.  In order to bypass the normal

22  motion process, the moving party must establish both (a) that she will be

23  "irreparably prejudiced if the underlying motion is heard according to regular

24  noticed motion procedures" and (b) "[(i)] that [she] is without fault in creating the

25  crisis that requires ex parte relief, or [(ii)] that the crisis occurred as a result of

26  excusable neglect."  *Mission Power Eng'g v. Continental Cas. Co.*, 883 F. Supp.

27  488, 492 (C.D. Cal. 1995) (denying *ex parte* motion to shorten time to hear

28

discovery motion).  Plaintiff's application does not even mention, much less establish, the *Mission Power* factors.

Here, Plaintiff could have filed a regularly noticed motion at any point over the last few months.  More importantly, Plaintiff cannot establish that she was without fault in creating this "crisis" or that it occurred as a result of excusable neglect.  While the grounds for Plaintiff's request shifted over the last few weeks, Plaintiff now provides two grounds for her request: (a) a need for additional discovery, based largely on purported deficiencies in Defendants' document productions and Plaintiff's need for depositions; and (b) lead counsel's health.

First, Plaintiff's argument that she needs additional time for discovery due to Defendants' purported discovery deficiencies lacks merit.  Plaintiff claims that Defendants delayed and served incomplete document productions, and that not all Defendants have produced documents.  These contentions are incorrect.

Despite having to collect millions of documents on behalf of eleven individual and corporate defendants, and despite Plaintiff's refusal to meaningfully engage on ways to agree on a reasonable scope of discovery, Defendants still managed to complete 99% of their productions by June 16, nearly four months ago, and before Plaintiff – a single individual – produced a *single document*.  Freeman Decl. ¶¶ 24, 34.  Plaintiff cannot plausibly claim that Defendants' document productions delayed discovery when she has had almost all their documents for months.  In contrast, she did not produce the vast majority of her documents until less than a month ago, on September 25.  *Id.* ¶ 42.

As Defendants have repeatedly explained to Plaintiff over several months (and as early as May), all eleven Defendants have produced documents.  *Id.* ¶¶ 24-27.  Defendants have time and again informed Plaintiff that in order to avoid duplication, Defendants did not double-produce an individual defendant's documents from both that individual and that individual's corporate entity.  *Id.* ¶¶ 25-26.  As Plaintiff knows from those repeated explanations, Defendants produced

documents with one of five Bates-stamp prefixes, which correspond to documents produced by each of the defendants.[1]  *Id.*  Though Plaintiff has repeatedly inquired about the nature of Defendants' document productions – receiving the same explanation each time – she has not filed a motion to compel on this issue in the intervening five months.  Nor have Defendants unilaterally "limited" their document productions; instead, the narrowing in Defendants' supplemental responses that Plaintiff broadly references reflects the parties' agreements reached after meet and confers and memorialized over email.  *Id.* ¶ 28.[2]

Plaintiff also justifies the continuance based on the need for "more" depositions, but she has not taken a single deposition in over a year of discovery.  Though Plaintiff states that the "parties" have taken two depositions, those depositions were noticed by Defendants; Plaintiff has yet to even *notice* a single deposition.  Not until October 4, several days after she sought Defendants' stipulation to this continuance, did Ms. Waller even inquire as to certain Defendants' deposition availability.  *Id.* ¶ 52.  And though she claims she needed Defendants' documents before proceeding with depositions, Plaintiff fails to account for why she did not notice any depositions in the preceding *four months* in which she has had almost all of Defendants' documents.

---

[1] Specifically, those prefixes are: "BE-GREGO" (documents produced from Blinding Edge, the Blinding Edge individual defendants, Mr. Shyamalan and Mr. Rajan, and Uncle George, which is Blinding Edge's production entity for Servant and does not have documents separate from Blinding Edge); "TB-GREGO" (documents produced from Mr. Basgallop and his corporate entity, Dolphin Black); "APL-GREGO" (documents produced from Apple); "EA-GREGO" (documents produced from Escape Artists and the Escape Artists individual defendants, Mr. Blumenthal, Mr. Black, and Mr. Tisch); and "O-GREGO" (documents produced from external sources, including publicly available sources).  Freeman Decl. ¶ 25.

[2] Plaintiff's motion also makes it clear that she intends to use any additional time to file motions to compel, but she fails to explain with any specificity what is missing from Defendants' productions, or why she has not filed those motions in the last several months.

To the extent that Plaintiff now claims she needs more time so that she can depose all of Defendants' initial disclosure witnesses, Plaintiff knew about most of these witnesses for months, if not years.  At the very least, Plaintiff should have known whether she intended to depose the *eleven* individual and corporate defendants when she sued them almost four years ago.  Plaintiff claims that there are so many parties in this case, but that is simply because she made the decision to sue a laundry list of defendants – most of whom have no business being in this case. On top of that, Defendants first provided their initial disclosures over three years ago (which contained almost all of the corporate designations that Plaintiff now apparently takes issue with, but which she never previously raised), and by August 31, had amended their initial disclosures to include additional witnesses and contact information.  *Id.* ¶¶ 4, 50, 67.

Courts routinely deny *ex parte* applications to extend or continue discovery cutoffs where, like here, a party has waited until the last minute to pursue discovery. For example, in *Valadez v. County of Los Angeles*, the court denied the plaintiffs' *ex parte* application to amend the scheduling order where they "ha[d] not been diligent in pursuing discovery" and failed to notice depositions until the very last minute prior to the discovery cutoff.  2022 WL 19914191, at *2 (C.D. Cal. Nov. 18, 2022). And in *Sadowski v. Hollywood Unlocked, Inc.*, the court denied dueling *ex parte* requests to continue discovery deadlines where the plaintiff waited to notice depositions until just before the close of fact discovery and the defendants likewise delayed and "waited to seek discovery until the eve of discovery cutoff, even though they had ample time to do so beforehand."  2020 WL 10506032, at *2 (C.D. Cal. Dec. 8, 2020).  *See also Stone v. Signode Indus. Grp. LLC*, 2022 WL 3574287, at *2 (C.D. Cal. May 25, 2022) (denying *ex parte* application to modify scheduling order where plaintiff simply "failed to complete discovery in the allotted time"); *Kim v. BMW of N. Am., LLC*, 2020 WL 13064697, at *1 (C.D. Cal. June 24, 2020) ("The moving party must also show that it used the entire discovery period

efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period . . . Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have.") (citation omitted).  Plaintiff failed to act diligently in discovery and waited until the last minute to request more time.  This does not satisfy the bar for *ex parte* relief.

Second, as for lead counsel's health, Defendants are sympathetic to those concerns, which is why they did not hesitate to grant numerous extensions and a prior four-month continuance.  But Defendants also cannot litigate this case in perpetuity and need some finality, particularly given Plaintiff's plans to assert belated and meritless motions to compel against Defendants.  Importantly, last year, lead counsel expressly "turned discovery over" to his colleague, who has been leading that effort since, along with a third counsel.  Freeman Decl. ¶¶ 18-19.  Plaintiff's application does not explain why, all of a sudden, her lead discovery counsel cannot finish out the last month of fact and expert discovery.

In sum, any outstanding discovery that Plaintiff references to justify this continuance is of her own making and does not justify a continuance of all dates, including those that are a week away, and certainly do not justify *ex parte* relief.

## IV.   THE SCHEDULE SHOULD REMAIN INTACT

A court may modify its case schedule "for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "Good cause" looks to the moving party's diligence, and "[t]he district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citation omitted).  The inquiry focuses on "the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end." *Id.*[3]

---

[3] *See also id.* at 610 ("The burden was upon Johnson to prosecute his case properly.  He cannot blame Mammoth Recreations for his failure to do so.  The simple fact is that his attorneys filed pleadings and conducted discovery but failed

Here, though Plaintiff claims there is "no suggestion" that she has been "anything less than diligent" in discovery, the record establishes the opposite. Plaintiff has failed to undertake her most fundamental discovery obligations. This case was remanded in April 2022, and Defendants' motion to bifurcate discovery was denied in August 2022. The original fact and expert discovery cutoff was July 14, 2023, which was extended to November 17, 2023. Plaintiff has known about this date for months, but still has not noticed a single deposition. While Plaintiff contends that she could not depose any Defendants until she received their documents, she received the vast majority of those documents by June 2023.

Plaintiff seems to suggest that only lead counsel could conduct the depositions, but there is no explanation why Ms. Waller, his experienced colleague who has handled all discovery in this case, could not handle those, particularly given that she and a third counsel, Mr. Patterson (who has many years of experience on this matter), have handled both third-party depositions taken by Defendants to date.[4] Plaintiff claims Defendants have never "shown any urgency" to dispose of the case, Appl. at 9, but she is attempting to use Defendants' willingness to grant numerous extensions as a reason to obtain another one. Defendants have granted every requested extension or continuance throughout discovery in this case; Defendants have only agreed to these out of respect for Plaintiff's counsel's various medical and family needs. Plaintiff cannot in one breath say that Defendants have aggressively litigated this case, and in the other contend that Defendants have been the ones to slow discovery.

---

to pay attention to the responses they received. That is precisely the kind of case management that Rule 16 is designed to eliminate.").

[4] Ms. Waller attended the deposition of Sarah Thorp, where she asserted objections and questioned the witnesses. Mr. Patterson attended the deposition of Olivia Blaustein, at which he did the same. In addition, while Plaintiff claims that Plaintiff's counsel hired Mr. Patterson in August 2023, he was on the caption filed in this matter in January 2020.

Plaintiff also now claims for the first time that a "primary rationale" for her application is that she cannot meet next week's October 20 deadline to submit expert reports, a deadline she has known about for four months.  Appl. at 8-9. Moreover, one of Plaintiff's primary arguments on appeal, years ago, was that she needed expert testimony, so this new claim that she cannot meet the expert disclosure deadline is entirely her own doing.  Though she cites Defendants' purportedly lacking document productions as justification, she provides no basis for that claim: even setting aside that Defendants' document productions have been substantially complete for months, Plaintiff does not actually say whether she has retained any experts, which documents those experts may require, or which specific categories of Defendants' documents those experts purportedly lack to prepare their reports.[5]  By contrast, Defendants began to engage experts over a year ago and arranged their workloads to work with them for months to prepare their expert reports by October 20.  Amending expert discovery deadlines at the eleventh hour would significantly prejudice Defendants.

The simple fact is that Plaintiff's counsel has not been diligent in prosecuting this action to date, and her actions do not rise to the level of "good cause" meriting another continuance in this matter.

## V.   AT A MINIMUM, THE FACT AND EXPERT DISCOVERY CUTOFFS SHOULD REMAIN INTACT

If this Court is inclined to amend the scheduling order again, for the reasons set forth above, Plaintiff's application provides no basis for extending the expert discovery deadline or fact and expert discovery cutoff, particularly given that Plaintiff extensively argued about the need for expert discovery in connection with

---

[5] Indeed, if Plaintiff has retained a substantial similarity expert, which was a key aspect of her Ninth Circuit appeal, such experts do not require *any* documents other than the works at issue.  *See* Appellant's Opening Br., *Gregorini v. Apple et al.*, No. 20-55664 (9th Cir. Oct. 28, 2020).

her appeal.  Defendants do not object if the Court extends deadlines *after* the discovery cutoff, so that Defendants can at least be sure they do not have to spend infinite amounts of time and money on perpetual discovery.

To the extent the Court is inclined to extend the discovery cutoff, Defendants would additionally request some guardrails or limits on any extended discovery, to avoid a repeat of what happened over the last four months following the last continuance – i.e., endless threats in response to Defendants' extensive discovery efforts.  Plaintiff has specifically referenced three depositions, and any extended period should be limited to just those three depositions.  The Court should not fully open the discovery window for even more time.

## VI.   CONCLUSION

Defendants respectfully request that Plaintiff's *ex parte* application be denied, and that the Amended Schedule of Pretrial and Trial Dates (ECF No. 114) remain in effect.  At a minimum, Defendants respectfully request that the current fact and expert deadlines remain intact.

DATED: October 13, 2023

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
SAMANTHA LACHMAN

By:   */s/ Cydney Swofford Freeman*
Cydney Swofford Freeman

Attorneys for Defendants

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION
4863-8045-2484v.6 0113237-000003