NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
  meenakshikrishnan@dwt.com
SAMANTHA LACHMAN (State Bar No. 331969)
  samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel.:  (213) 633-6800; Fax:  (213) 633-6899

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA GREGORINI,<br><br>            Plaintiff,<br><br>    vs.<br><br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. 2:20-cv-00406-SSS-JC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION TO COMPEL**<br><br>**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**<br><br>Discovery cutoff:  May 17, 2024<br>Pretrial conference: November 22, 2024<br>Trial:          December 9, 2024 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ........................................................................ 1

II.   *EX PARTE* RELIEF IS NOT APPROPRIATE HERE.................................. 2

    A.    Plaintiff Created This Crisis ................................. 3

    B.    Any Prejudice to Plaintiff Is Due to Her Own Conduct...................... 5

    C.    Plaintiff Cannot Revisit Prior Counsel's Decisions at the Last Minute ........................................................................ 6

III.   PLAINTIFF IS NOT ENTITLED TO THE REQUESTED DISCOVERY ........................................................................ 7

IV.   CONCLUSION........................................................... 12

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Alfred v. Walt Disney Co.*,
  388 F. Supp. 3d 1174 (C.D. Cal. 2019), *rev'd on other grounds*,
  821 Fed. App'x 727 (9th Cir. 2020) ................................................................ 11

*Blackwell v. City of Los Angeles*,
  2022 WL 17345910 (C.D. Cal. July 26, 2022) ................................................2

*Burns v. Imagine Films Ent., Inc.*,
  164 F.R.D. 589 (W.D.N.Y. 1996) ..................................................................... 10

*C.B. v. Moreno Valley Unified Sch. Dist.*,
  2023 WL 6782902 (C.D. Cal. Aug. 16, 2023) ................................................5

*Charter Sch. Cap., Inc. v. Charter Asset Mgmt. Fund, LP*,
  2015 WL 12655550 (C.D. Cal. Mar. 9, 2015) ............................................... 10

*Crocs, Inc. v. Effervescent, Inc.*,
  2021 WL 8084831 (D. Colo. Feb. 26, 2021) ..................................................7

*Energy Intel. Grp. Inc. v. Plains All Am. Pipeline LP*,
  2012 WL 12888542 (C.D. Cal. Dec. 7, 2012) ................................................2

*Godinez v. BMW of N. Am., LLC*,
  2019 WL 8105333 (C.D. Cal. Jan. 14, 2019) .................................................5

*Goldwater Bank N.A. v. Elizarov*,
  2023 WL 4295138 (C.D. Cal. May 26, 2023) ................................................5

*Hendricks v. DreamWorks*,
  2007 WL 9705916 (C.D. Cal. Nov. 20, 2007) ......................................... 8, 10, 11

*Ho v. Marathon Pat. Grp., Inc.*,
  2021 WL 10862801 (C.D. Cal. Nov. 12, 2021) ..............................................4

*In re Intermagnetics Am., Inc.*,
  101 B.R. 191 (C.D. Cal. 1989) ........................................................................2

*Kaseberg v. Conaco*,
  2016 WL 3997600 (S.D. Cal. July 26, 2016) ................................................ 8, 9

ii

*Mackie v. Rieser*,
   296 F.3d 909 (9th Cir. 2002) ........................................................ 8, 11

*Misch v. Refresco Beverages US, Inc.*,
   2022 WL 18278629 (C.D. Cal. Nov. 2, 2022)...................................4

*Mission Power Eng'g v. Continental Cas.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ........................................... 3, 5, 6

*Polar Bear Prods. v. Timex Corp.*,
   384 F.3d 700, *amended by* 2004 WL 2376507 (9th Cir. Oct. 25, 2004)....... 8, 11

*Poulos v. City of Los Angeles*,
   2020 WL 5210958 (C.D. Cal. June 10, 2020) ..................................4

*Salinas v. Procter & Gamble*,
   2020 WL 8455187 (C.D. Cal. Dec. 4, 2020) ........................... 8, 11, 12

*Sartor v. Cnty. of Riverside*,
   2024 WL 1136333 (C.D. Cal. Feb. 15, 2024) ...................................5

*Sys. Am., Inc. v. Rockwell Software, Inc.*,
   2007 WL 1593219 (N.D. Cal. June 1, 2007)....................................8

*Thompson v. Riverside Cnty. Sheriff Dep't*,
   2020 WL 4037167 (C.D. Cal. June 2, 2020) ....................................5

*Treehouse Avatar LLC v. Valve Corp.*,
   2021 WL 4428407 (W.D. Wash. Sept. 24, 2021)...............................7

*Valadez v. Cnty. of Los Angeles*,
   2022 WL 19914191 (C.D. Cal. Nov. 18, 2022) .................................6

**Rules**

Federal Rule of Civil Procedure 30(b)(6) ...................................................5

**Other Authorities**

Hon. Jacqueline Chooljian, Judge's Procedures No. 2,
   https://www.cacd.uscourts.gov/honorable-jacqueline-chooljian.........................1

iii

Defendants Blinding Edge Pictures, Inc. ("Blinding Edge"), Uncle George Productions, LLC ("Uncle George"), Apple Inc. ("Apple"), Escape Artists, Inc. (erroneously sued as Escape Artists LLC) ("Escape Artists"), Dolphin Black Productions ("Dolphin Black"), M. Night Shyamalan, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch (collectively, "Defendants") submit this opposition to plaintiff Francesca Gregorini's *Ex Parte* Motion to Compel Production of Defendants' Financial Information for Seasons 2-4 (ECF No. 158) (the "Motion" or "Mot.").

## I.   INTRODUCTION

Plaintiff's Motion attempts to use the extraordinary *ex parte* procedure at the eleventh hour to explore an issue that she has failed to pursue for the entirety of the discovery period in this case.  For over a year, Plaintiff has known of Defendants' position that profits from Seasons 2-4 are irrelevant to her alleged damages, and she has made no attempt in that time to compel production of that information.  To justify her belated Motion, she blames Defendants for their timely responses to her recent set of requests for production.  But this Court has instructed that "absent an emergency which is not of the moving party's own making, an ex parte application may not be used to obtain a ruling on a discovery dispute."[1]  Plaintiff barely attempts to make this showing, neglecting even to mention the standard for *ex parte* relief until the final pages of her motion and relegating her contention that she is without fault in causing the emergency to little more than an afterthought.  *See* Mot. at 11-13.  In reality, Plaintiff's Motion seeks a ruling on a discovery dispute that the parties resolved more than a year ago, and it should be denied for that reason alone.

Even if the Motion did not suffer from fatal procedural flaws, it should still be denied because Plaintiff has not established her entitlement to the discovery she

---

[1] *See* Hon. Jacqueline Chooljian, Judge's Procedures No. 2, https://www.cacd.uscourts.gov/honorable-jacqueline-chooljian.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

seeks.  Plaintiff provides no evidence whatsoever supporting a causal nexus

between Defendants' alleged infringement and the profits from Seasons 2-4 of

*Servant*, and therefore fails to meet the requirements for seeking its discovery.

*Fact discovery closes in two days*.  Plaintiff's Motion is a misuse of the *ex*

*parte* procedure to correct her own decisions or indecisions throughout discovery.

Defendants respectfully request the Court deny the Motion in full and grant

Defendants their related attorneys' fees for Plaintiff's latest attempt to relitigate

issues that were decided or determined long ago in this case by her counsel.

## II.  *EX PARTE* RELIEF IS NOT APPROPRIATE HERE

Courts in this Circuit, as well as this Court's procedures, make clear that *ex*

*parte* applications may not be used to obtain relief regarding a purported emergency

of the moving party's own making.  *Ex parte* applications are "nearly always

improper," and "the opportunities for legitimate [ones] are extremely limited."[2]

*Blackwell v. City of Los Angeles*, 2022 WL 17345910, at *2 (C.D. Cal. July 26,

2022) (denying *ex parte* application to compel regarding discovery dispute)

(quoting *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 192, 193 (C.D. Cal. 1989)).

To bypass the normal motion process and obtain *ex parte* relief, the moving party

must establish *both* "that [she] is without fault in creating the crisis that requires *ex*

*parte* relief, or that the crisis occurred as a result of excusable neglect," *and* that she

will be "irreparably prejudiced if the underlying motion is heard according to

_____

[2] Specifically, this Court has held that *ex parte* applications are appropriate
only where "(1) there is some genuine urgency that 'immediate and irreparable
injury, loss or damage will result to the applicant before the adverse party or his
attorney can be heard in opposition'"; "(2) there is a danger that notice will result in
the flight of the noticed party"; or "(3) the moving party is seeking only a routine or
ministerial order."  *Energy Intel. Grp. Inc. v. Plains All Am. Pipeline LP*, 2012 WL
12888542, at *2 (C.D. Cal. Dec. 7, 2012) (denying *ex parte* application to compel
document production and interrogatory responses).  While Plaintiff acknowledges
some of these circumstances, Mot. at 12, she makes no attempt to explain how any
of them are present here.  They are not.

regular noticed motion procedures." *Mission Power Eng'g v. Continental Cas.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) (denying *ex parte* application to shorten time to hear motion to compel).  Plaintiff cannot satisfy the threshold requirements established by *Mission Power*; indeed, she barely attempts to address them, belatedly reaching the argument near the end of her Motion.

## A.    Plaintiff Created This Crisis

To start, Plaintiff's "crisis" requiring *ex parte* relief—her eleventh-hour pursuit of irrelevant discovery Defendants have disputed producing for a year—is entirely of her own doing.  As this Court specifically warned, *see supra* n.1, *ex parte* applications are "not intended to save the day for parties who have failed to present [discovery] requests when they should have."  *Mission Power*, 883 F. Supp. at 493 (citation omitted).  Plaintiff must show that she "used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period."  *Id.*  Here, she cannot.

Plaintiff first asked for the information at issue in this motion with her first set of requests for production served between March 30 and April 20, 2020, in which she sought "Documents sufficient to show all revenue You have received Related to the television series *Servant*."  *See, e.g.*, Declaration of Cydney Swofford Freeman in Opposition to Plaintiff's *Ex Parte* Motion to Compel ("Freeman Decl.") ¶ 2.  The parties met and conferred regarding Plaintiff's RFPs numerous times in 2023, ultimately agreeing in June 2023—nearly a year ago, and importantly, *after Servant* Season 4's last episode aired on March 17, 2023—that Defendants would produce documents sufficient to show their revenue for *Servant* Season 1, in light of Plaintiff's insistence that this case involves only Episodes 1-3 of Season 1.  Freeman Decl. ¶ 5.  Defendants provided their Season 1 revenue information on August 31, 2023, and the agreement is memorialized in Defendants' September 19, 2023 supplemental responses to Plaintiff's requests for production.  *See, e.g.*, Freeman

Decl. ¶ 6.  Plaintiff never moved to compel additional information in connection
with those requests.  Freeman Decl. ¶ 7.

Plaintiff's fourth set of counsel joined the case on March 31, 2024, and soon
raised whether Defendants would produce financial information related to *Servant*
Seasons 2-4.  Freeman Decl. ¶ 8.  Defendants reiterated the above, as Plaintiff's
own motion admits.  *Id.*; *see also* Mot. at 4.  But rather than move on the prior
requests with a duly noticed motion at that time, Plaintiff instead served additional
requests on April 10, 2024—approximately one month prior to the close of fact
discovery and after nearly two years of discovery.  Freeman Decl. ¶ 9.  Defendants
timely responded on their May 10 deadline, and Plaintiff brought this *ex parte*
Motion on May 14.[3]  Far from a "scheduling issue," Mot. at 12, Plaintiff's *ex parte*
motion is merely the logical result of her own discovery delay.

Courts *routinely* deny *ex parte* motions to compel discovery where, like here,
a party has simply waited until the last minute to pursue discovery.  For example, in
*Poulos v. City of Los Angeles*, this Court denied an *ex parte* application to compel
discovery responses filed four days prior to the discovery cutoff because,
notwithstanding counsel's illness for a certain portion of discovery, plaintiffs were
"responsible for the bulk of the delay" and "have not provided a sufficient
justification for why they let weeks pass … without pursuing a motion on these
discovery issues."  2020 WL 5210958, at *2 (C.D. Cal. June 10, 2020); *see also*
*Misch v. Refresco Beverages US, Inc.*, 2022 WL 18278629, at *2 (C.D. Cal. Nov. 2,
2022) (denying *ex parte* relief where plaintiff filed application on the last business
day before the discovery cut-off despite having several months to pursue discovery
at issue); *Ho v. Marathon Pat. Grp., Inc.*, 2021 WL 10862801, at *2 (C.D. Cal.
Nov. 12, 2021) (denying *ex parte* relief where party "could have moved to compel

---

[3] Plaintiff apparently takes issue that Defendants did not respond sooner, *see*
Mot. at 1, 12, but Defendants are under no obligation to serve early responses to
belated requests.

the … production of the documents he now seeks" at any point during prior six months of discovery and therefore is "at fault … by failing to efficiently utilize the discovery period"). The cases cited by Plaintiff, Mot. at 13, merely reinforce this point. *See Thompson v. Riverside Cnty. Sheriff Dep't*, 2020 WL 4037167, at *9 (C.D. Cal. June 2, 2020) (granting *ex parte* relief to *pro se* plaintiff *solely* as to documents that defendants *previously agreed to produce*, but otherwise finding moving party failed to justify relief); *C.B. v. Moreno Valley Unified Sch. Dist.*, 2023 WL 6782902, at *3 (C.D. Cal. Aug. 16, 2023) (granting *ex parte* relief largely because of opposing party's blatant "noncooperation" in providing deposition availability of witnesses "over several weeks" in an apparently intentional effort to run out the discovery clock).

## B.   Any Prejudice to Plaintiff Is Due to Her Own Conduct

To receive *ex parte* relief, a plaintiff also must show she will be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Mission Power*, 883 F. Supp. at 492. Plaintiff's sole argument regarding irreparable prejudice is that she lacks time for a noticed motion. Mot. at 12. But as explained above, any prejudice she suffers results from her own failure to timely pursue this discovery. *See supra* Section II.A; *Godinez v. BMW of N. Am., LLC*, 2019 WL 8105333, at *1 (C.D. Cal. Jan. 14, 2019) (finding insufficient any "injury or prejudice … attributable to the [moving party's] lack of diligence"). Plaintiff's posture is different from each of the cases she cites, in which prejudice resulted from last-minute actions taken by the *opposing* party. *See Sartor v. Cnty. of Riverside,* 2024 WL 1136333, at *2 (C.D. Cal. Feb. 15, 2024) (*ex parte* relief granted where moving party sought to quash third-party subpoenas involving privileged and private information that were served by *opposing* party thirteen days prior to the discovery cutoff); *Goldwater Bank N.A. v. Elizarov*, 2023 WL 4295138, at *2 (C.D. Cal. May 26, 2023) (*ex parte* relief granted where *opposing* party unilaterally removed its Rule 30(b)(6) designee at her deposition and failed to

produce her and moving party "acted promptly" but *denying ex parte* relief as to purportedly deficient document production where moving party knew for two weeks that opposing party would not be producing documents at issue).

Apart from the above, Plaintiff also cannot show irreparable prejudice because the ultimate relief she seeks is meritless. *See infra* Part III; *Mission Power*, 883 F. Supp. at 492 ("To show irreparable prejudice, it will usually be necessary to refer to the merits of the accompanying proposed motion, because if it is meritless, failure to hear it cannot be prejudicial."). Indeed, in the last few weeks of discovery, as Plaintiff's own motion concedes, Plaintiff's counsel has taken several depositions where she sought and received some testimony related to financial information for Seasons 2-4 (though Plaintiff's characterization of the testimony omits Defendants' testimony that Seasons 2-4 were quite different from Season 1 Episodes 1-3). *See* Mot. at 8-9 & Declaration of Emily E. Niles (Dkt. No. 158-1, "Niles Decl.") Exs. 28-31; Freeman Decl. Ex. 4 ("Rajan Decl."). Even if Plaintiff were entitled to the information at issue in this motion—which she is not—she cannot claim that she has been prejudiced by her inability to pursue it through other discovery means.

In sum, Plaintiff caused this "crisis" and suffers no irreparable prejudice. *See Valadez v. Cnty. of Los Angeles*, 2022 WL 19914191, at *1 (C.D. Cal. Nov. 18, 2022) ("Lawyers must understand that filing an *ex parte* motion . . . is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire."). *Mission Power* simply does not permit *ex parte* relief here.

## C.     Plaintiff Cannot Revisit Prior Counsel's Decisions at the Last Minute

In addition to inappropriately seeking *ex parte* relief, Plaintiff's application also improperly reneges on prior discovery agreements. As explained above, the Motion backtracks on her previous counsel's acceptance of Defendants' agreement to produce only financial information related to Season 1 of *Servant* because Plaintiff's infringement allegations were limited to Season 1 Episodes 1-3. *See*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

*supra* Section II.A.  The Motion further appears to attempt to revive Plaintiff's claim for actual damages, Mot. at 10, which Plaintiff repeatedly disclaimed in her discovery responses and in multiple filings to this Court, and which Defendants relied upon in agreeing to withdraw numerous discovery requests regarding Plaintiff's alleged actual damages.  *See* ECF No. 112 at 7 n.5 (Plaintiff "dropping" actual damages); ECF No. 112-8 ¶ 29 ("As part of the discovery disputes discussion, Plaintiff had agreed to forego her claims for actual damages.").

Plaintiff is bound by the agreements of her prior counsel, which provide an additional, independent basis for denying the relief she seeks.  *See Treehouse Avatar LLC v. Valve Corp.*, 2021 WL 4428407, at *2-3 (W.D. Wash. Sept. 24, 2021) (denying motion to compel certain financial discovery not sought by prior counsel because argument that new counsel can "now obtain the very information that was excluded" under prior discovery agreements is "contrary to the intentions of the parties at the time the agreement was made"); *Crocs, Inc. v. Effervescent, Inc.*, 2021 WL 8084831, at *3 (D. Colo. Feb. 26, 2021) ("[J]ust because new counsel have entered the case … with perhaps a new litigation strategy, there is simply no legal basis presented to re-negotiate" or "entirely gut" prior discovery agreements).  Her attempts simply to ignore any previous agreements that no longer suit her current litigation strategy are improper and should be rejected.

## III.   PLAINTIFF IS NOT ENTITLED TO THE REQUESTED DISCOVERY

Throughout this case, Plaintiff repeatedly has alleged that only three episodes (Season 1 Episodes 1-3) of *Servant* infringe her work.  *See, e.g.*, ECF No. 34 at 2, 15 (arguing to this Court in 2020 that "Plaintiff alleges that Episodes of 1-3 of *Servant* infringe *Emanuel*" and that "Episodes 4-10 [of Season 1] … are not alleged to infringe."); *Gregorini v. Apple et al.*, No. 20-55664, Reply Br. (Dkt. 50 at 16, 18) (9th Cir. July 6, 2021) (arguing to the Ninth Circuit that "Plaintiff carefully avoided any … mention of Episodes 4-10 in her FAC").  Nevertheless, with new counsel she now attempts to extend her potential damages to Defendants' profits from the

series' other *37* episodes, including the 30 episodes from Seasons 2-4 as requested in her Motion.  The Ninth Circuit recognizes a distinction between profits in a copyright action that flow directly from the sale of the allegedly infringing work (direct profits), and those that do not (indirect profits).  *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002).  Here, the profits from Seasons 2-4 do not flow from the sale of the allegedly infringing works (*i.e.* Episodes 1-3 of Season 1), and therefore would be indirect profits.

A copyright plaintiff seeking to recover indirect profits may do so only upon establishing a "causal nexus" between the alleged *infringement* and the stream of profits the plaintiff seeks to recover—that is, a showing that the "revenue stream . . . bear[s] a legally significant relationship to the *infringement*."  *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 711, *amended by* 2004 WL 2376507 (9th Cir. Oct. 25, 2004) (emphasis added).  To seek discovery regarding a particular stream of profits, the plaintiff must "show[] a sufficient possibility of such a nexus."  *Sys. Am., Inc. v. Rockwell Software, Inc.*, 2007 WL 1593219, at *1 (N.D. Cal. June 1, 2007).  Mere speculation is not enough.  *Salinas v. Procter & Gamble*, 2020 WL 8455187, at *2 (C.D. Cal. Dec. 4, 2020).

Moreover, a plaintiff cannot merely show any creative connection between the allegedly directly infringing work and the indirectly profitable work; she must tie the *allegedly infringing elements* to the revenue streams at issue.  For example, in *Hendricks v. DreamWorks*, the court held that where a draft screenplay allegedly infringed the plaintiff's work, but the film based on that screenplay did not, evidence regarding the film's revenue was irrelevant.  2007 WL 9705916, at *3 (C.D. Cal. Nov. 20, 2007).  And in *Kaseberg v. Conaco*, for example, the plaintiff brought a copyright claim based on allegations that the "Conan" show stole his jokes and sought to compel discovery of information regarding revenues and profits of the Conan show for the entire year in which the allegedly infringing episodes aired.  2016 WL 3997600, at *6-8 (S.D. Cal. July 26, 2016).  The court denied the

request as "simply not relevant to any damages calculation," and limited discovery to revenues and profits for the shows in which the allegedly infringing material appeared. *Id.* at *8.

Here, Plaintiff has alleged infringement only as to certain elements contained in 3 episodes of a 40-episode television series and provides no support for her argument that any specifically infringed element continued into Seasons 2-4, much less that those allegedly infringed elements drove revenues for later seasons. Nor could she. The only element Plaintiff's Motion alleges carries over from Season 1 Episodes 1-3 to Seasons 2-4 is the inclusion of characters Leanne, Dorothy, Sean, Julian, and baby Jericho, Mot. at 8—characters creator Tony Basgallop first wrote years before Plaintiff's film was even written. But Plaintiff does not and cannot argue these characters are wholesale infringing. She makes *no* argument as to how any particular allegedly *infringing* elements carry over to Seasons 2-4, much less that they did so to such an extent that revenues from those 37 episodes may be attributable to the alleged infringement.

Plaintiff's assertion that Defendants' witnesses "testified as to the connection and relationship between the first three episodes and the remainder of the show," *see* Mot. at 8, is misleading at best: the testimony attached to the Motion touches on the connection between Season 1 and Seasons 2-4 only in the vaguest sense and does not address at all the connection between later seasons and Episodes 1-3. *See* Mot. at 8-9. Importantly, the Motion omits unrebutted testimony emphasizing their differences: for example, ████████████████████████████
████████████████████████████████████████████████████████
████████     *See*, *e.g.*, Rajan Tr. at 144:20-22 ████████████████████████
████████████████████████████████████████████████████████

9

1  ██████████); *id.* at 143:14-15 (██████████████).[4]

2  Plaintiff also misleadingly cites testimony for the proposition that Seasons 2-4

3  would not have existed "but for" Season 1 Episodes 1-3, *compare* Mot. at 8 *with*

4  Niles Decl. Ex. 30 (Cherniss Tr.) at 160:8-12  (██████████████

5  ████████████████████████████████

6  █████████████████████) (bolded language omitted in

7  Plaintiff's Motion), but ultimately Plaintiff is merely arguing that it would be non-

8  sensical to watch a television series out of order.  Regardless, even if there were

9  some "but for" connection between the seasons, courts have rejected the contention

10  that such a relationship between the allegedly infringing work and the stream of

11  revenues for which discovery is sought sufficiently supports the possibility of a

12  causal nexus to justify discovery, absent evidence that it *drove* those revenues.  *See,*

13  *e.g.*, *Hendricks*, 2007 WL 9705916, at *3.[5]

14       Plaintiff further skirts the "causal nexus" requirement by baldly offering that

15  "the first three episodes of Season 1 of *Servant* established and elevated the public's

16  _____

17  [4] Were the Motion duly noticed rather than *ex parte*, Defendants would have
had the opportunity to provide additional declarations and exhibits regarding how

18  Seasons 2-4 differ from Season 1 and how the elements that Plaintiff now claims
are in later seasons were almost uniformly written before Plaintiff's film was made

19  or distributed.

20  [5] Plaintiff misleadingly cites *Charter Sch. Cap., Inc. v. Charter Asset Mgmt.*

21  *Fund, LP,* 2015 WL 12655550, at *3 (C.D. Cal. Mar. 9, 2015) for the proposition
that a causal nexus is shown if the later work "would not have existed but for the

22  success of the [allegedly infringing work]."  Mot. at 6.  *Charter School Capital* did
not purport to apply a "but for" analysis to the question of causal nexus between

23  infringement and indirect profits, but simply quoted language from *Burns v.*

24  *Imagine Films Ent., Inc.*, 164 F.R.D. 589, 592 (W.D.N.Y. 1996) as an example of a
case in which a court had found the plaintiff sufficiently alleged a causal nexus to

25  justify discovery.  2015 WL 12655550 at *3; *see also Hendricks*, 2007 WL

26  9705916, at *3 (distinguishing *Burns*).  The facts of *Charter School Capital*—
which allowed discovery into investors' identities, in connection with the plaintiff's

27  allegation that defendants infringed plaintiff's copyrighted financing agreements
and used them to lure investors—bear little resemblance to the present case.

28

interest in the latter episodes and seasons." Mot. at 8. But the Motion offers no support whatsoever for this assertion, making it "mere speculation" insufficient to support discovery into profits for Seasons 2-4, especially in the face of unrebutted testimony that ████████████████████████████████████████████████.

*See Salinas*, 2020 WL 8455187, at *2; *see Hendricks*, 2007 WL 9705916 at *3 (where plaintiff offered no evidence that allegedly infringing screenplay increased interest in film based on it, revenues from film excluded as irrelevant to plaintiff's copyright claim).

The causal connection between the alleged infringement and the discovery Plaintiff now seeks is particularly attenuated as to Apple, since any revenues from *Servant* Seasons 2-4 would have been collected in the form of Apple TV+ subscriptions. Plaintiff has offered no evidence to support that Apple TV+ subscriptions increased as a result of Seasons 2-4 of *Servant*, and courts have rejected claims for indirect profits based on similar speculative allegations that infringement created profits by generally contributing to a defendant's goodwill. *See*, *e.g.*, *Mackie*, 296 F.3d at 916 (dismissing indirect damages based on theory that infringing artwork in symphony brochure caused individuals to subscribe to the symphony, where plaintiff did not provide evidence of causation); *Polar Bear Prods.*, 384 F.3d at 715 ("claims to indirect profits purportedly resulting from enhanced good will" are "generally rejected by courts").

Plaintiff's Motion thus is fundamentally different from that at issue in *Alfred v. Walt Disney Co.*, in which the court granted a motion to compel information regarding revenues from sequels to the allegedly infringing film. *See* Niles Decl. Ex. 24 (the "*Alfred* Order"). In that case, the court had reviewed all of the sequels at issue, as well as documents relating to the copyright registration of defendants' works. *See Alfred v. Walt Disney Co.*, 388 F. Supp. 3d 1174, 1181-82 (C.D. Cal. 2019) (taking judicial notice of motion picture and sequels), *rev'd on other grounds*, 821 Fed. App'x 727 (9th Cir. 2020). Its holding that there was a plausible causal

nexus between the allegedly infringing work and the sequels was based on finding that the works "contain the same main characters and other key elements from the original film," that "the copyright registrations for the sequels state that the sequels are based on pre-existing motion picture and story elements from the original movie," and that "the sequels are an extension of and borrow elements from the original movie." *Alfred* Order at 5. Plaintiff has proffered no such evidence here; on the contrary, as discussed above, she repeatedly has argued that this Court and the Ninth Circuit cannot consider any episode beyond the three she alleges infringe her work. *See, e.g.*, ECF No. 34 at 2, 15; *Gregorini v. Apple et al.*, No. 20-55664, Reply Br. (Dkt. 50 at 16, 18) (9th Cir. July 6, 2021).

At bottom, Plaintiff's Motion consists of little more than evidence-free insinuations of connections between *Servant* Season 1 Episodes 1-3 and Seasons 2-4 and asks the Court to fill in the blanks to order the intrusive discovery she seeks on an emergency basis via *ex parte* application. Courts have admonished against just such attempts to leverage "mere speculation" into "a fishing expedition of Defendants' books." *Salinas*, 2020 WL 8455187 at *2.

## IV.   CONCLUSION

Plaintiff fails to show that her requested relief is appropriate at any stage, much less on an *ex parte* basis two days before the close of a two-year discovery period. Defendants respectfully request that the Court deny her motion in full and grant Defendants' their reasonable attorneys' fees in connection with this motion, in an amount to be determined by subsequent filing.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

DATED: May 15, 2024

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
SAMANTHA LACHMAN

By:  */s/ Cydney Swofford Freeman*
Cydney Swofford Freeman

Attorneys for Defendants

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION