NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
  meenakshikrishnan@dwt.com
CARL MAZUREK (*pro hac vice*)
  carlmazurek@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel.: (213) 633-6800; Fax: (213) 633-6899

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA GREGORINI,<br><br>             Plaintiff,<br><br>    vs.<br><br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,<br><br>             Defendants. | Case No. 2:20-cv-00406-SSS-JC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF ELLEN PITTLEMAN**<br><br>**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**<br><br>Date:    August 23, 2024<br>Time:    2:00 p.m.<br>Dept.:    Courtroom 2 |

**PLEASE TAKE NOTICE** that on August 23, 2024, at 2:00 p.m. or as soon as may be heard in Courtroom 2 of the United States District Court for the Central District of California, 3470 Twelfth Street, Riverside, California 92501, defendants Blinding Edge Pictures, Inc., Uncle George Productions, LLC, Apple Inc., Escape Artists, Inc. (erroneously sued as Escape Artists LLC), Dolphin Black Productions, M. Night Shyamalan, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch (collectively, "Defendants") will and hereby move for an order excluding the expert reports and testimony of Ellen Pittleman.

This motion is made on the grounds that Pittleman's reports and testimony fail to meet the standards set forth in Rule 702 of the Federal Rules of Evidence. *First*, Pittleman's opinions regarding access—both wide dissemination and direct access—are unreliable and unhelpful because they constitute no more than a recitation of alleged facts followed by speculation and an improper ultimate legal conclusion. *Second*, Pittleman's opinions regarding causal nexus are unreliable and unhelpful because she is not qualified to render such opinions and she lacks any proper methodology for reaching her unsupported and speculative conclusions.

The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Cydney Swofford Freeman, the pleadings and papers on file in this action, the matters of which this Court may take judicial notice, and such additional matters and oral argument as may be offered in support of the Motion.

This Motion is made following the Local Rule 7-3 conference of counsel, which took place on July 10, 2024.

DATED: July 26, 2024

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
CARL MAZUREK

By:  /s/ Cydney Swofford Freeman

Attorneys for Defendants

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARD........................................................................................... 1

III. ARGUMENT ....................................................................................................... 3

     A.   Pittleman's Opinions Regarding Access Are Unreliable and Unhelpful ................................................................................................. 3

          1.   Pittleman Has No Reliable Methodology for Evaluating Widespread Dissemination. .................................................... 3

          2.   Pittleman Has No Reliable Methodology for Evaluating Direct Access .................................................................................. 5

               a.   Pittleman Speculates that Tony Basgallop Had Access to Emanuel ............................................................................. 5

               b.   Pittleman's Theory of Apple's Access to Emanuel Relies on a False Premise ................................................. 6

     B.   Pittleman's Flawed Understanding and Application of Causal Nexus Should Be Excluded .................................................................. 7

          1.   Pittleman Is Not Qualified to Opine on Causal Nexus. ............. 8

          2.   Pittleman's Methodology Is Unreliable .................................. 10

IV. CONCLUSION.................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleman v. Volvo Cars of North Am., LLC*,
  2020 WL 4742814 (C.D. Cal. Apr. 15, 2020) ................................................. 9

*Art Attacks Ink, LLC v MGA Enter.*,
  581 F.3d 1138 (9th Cir. 2009) ....................................................................... 3

*Batts v. Adams*,
  2011 WL 13217923 (C.D. Cal. Feb. 8, 2011) ............................................... 4

*Boyd v. City & Cnty. of S.F.*,
  576 F.3d 938 (9th Cir. 2009) ......................................................................... 2

*Celador Int'l, Ltd. v. Walt Disney Co.*,
  2008 WL 11342595 (C.D. Cal. Dec. 17, 2008) ......................................... 5, 6

*Cope v. Warner Records*,
  2023 WL 11827959 (C.D. Cal. June 5, 2023) ............................................... 3

*Counts v. Meriwether*,
  2015 WL 9594469 (C.D. Cal. Dec. 30, 2015) ............................................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) .................................................................................. 1, 2

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ......................................................................... 2

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*,
  2022 WL 254348 (N.D. Cal. Jan. 27, 2022) .............................................. 2, 3

*Focal Point Films, LLC v. Sandhu*,
  2020 WL 5760355 (N.D. Cal. Sept. 28, 2020) ............................................ 10

*Gable v. Nat'l Broadcasting Co.*,
  438 Fed. Appx. 587 (9th Cir. June 16, 2011) ................................................ 9

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................ 2, 10

*Lois v. Levin*,
   2022 WL 4351968 (C.D. Cal. Sept. 16, 2022) ...................................................... 4

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) .............................................................................. 3, 5

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
   2014 WL 3417941 (N.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 553 (9th Cir. 2016) ........................................................................................................... 2

*Lutron Elecs. Co. v. Creston Elecs., Inc.*,
   970 F. Supp. 2d 1229 (D. Utah 2013) ..................................................................... 8

*Oculu, LLC v. Oculus VR*,
   2015 WL 3619204 (C.D. Cal. Jun. 8, 2015) ........................................................ 11

*Polar Bear Prods. v. Timex*,
   384 F.3d 700 (9th Cir. Oct. 25, 2004) ..................................................................... 7

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ..................................................................................... 2

*Pyramid Techs., Inc. v. Hartford Cas. Ins.*,
   752 F.3d 807 (9th Cir. 2014) ..................................................................................... 8

*Rearden LLC v. Walt Disney Co.*,
   2021 WL 6882227 (N.D. Cal. Jul. 12, 2021) ................................................ 11, 12

*Rutherford v. Palo Verde Health Care Dist.*,
   2015 WL 12864245 (C.D. Cal. Apr. 17, 2015) ..................................................... 8

*Snyder v. Bank of Am., N.A.*,
   2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ........................................................ 8

*Sterling Sav. Bank v. Poulsen*,
   2013 WL 3945989 (N.D. Cal. July 29, 2013) ....................................................... 8

*Synergy Hematology-Oncology Med. Assocs. v. Abbott Labs., Inc.*,
   2023 WL 3319218 (C.D. Cal. Mar. 15, 2023) ..................................................... 2

*Towler v. Sayles*,
   76 F.3d 579 (4th Cir. 1996) ..................................................................................... 5

*U.S. v. Sandoval-Mendoza*,
   472 F.3d 645 (9th Cir. 2006) ..................................................................................... 2

ii
MOTION TO EXCLUDE REPORTS AND TESTIMONY OF ELLEN PITTLEMAN

*Woodland v Hill*,
  2002 WL 19250191 (C.D. Cal. Dec. 8, 2022) ................................................................. 3

**Rules**

Fed. R. Evid. 702 ............................................................................................... *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendants move to exclude the unreliable testimony of Plaintiff's access and causal nexus expert Ellen Pittleman, who relies on conjecture and speculation instead of methodology and analysis in reaching her unsupported opinions. In fact, her opinion on access—a required element for Plaintiff's copyright infringement claim—does little more than recite the allegations in the First Amended Complaint regarding the distribution of Plaintiff's film *The Truth About Emanuel* ("*Emanuel*"). With no further support, she then concludes that Plaintiff established access. This approach flies in the face of well-established law regarding the proper role of an expert, rendering her report and testimony unreliable and unhelpful, and thus inadmissible.

Similarly, Pittleman's opinion regarding causal nexus lacks any methodological foundation and is therefore unreliable. Admitting that her knowledge of causal nexus was based on one unspecified website she read following a Google search, Pittleman has no expertise in financial analysis or profit allocation, and that she performed no analysis of profits generated by the episodes that Pittleman claims are causally linked to the allegedly infringing content. This dubious basis renders her opinion inadmissible on the causal nexus between profits of the full series and the three accused episodes.

Because Plaintiff has not satisfied Rule 702 with respect to Pittleman's testimony, Defendants request that this Court exclude her as an expert.

## II.  LEGAL STANDARD

District courts are the gatekeepers of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Rules of Evidence "assign to the trial judge the task of insuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597. It is Plaintiff's burden to establish, by a preponderance of the evidence, that Pittleman's testimony is

admissible under Rule 702 (*see id*. at 592 n.10), which requires among other things that she have specialized knowledge that will help the trier of fact and that the testimony be based on sufficient facts and reflect a reliable application of sound principles to the case.  Fed. R. Evid. 702.

Expert testimony is "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *U.S. v. Sandoval-Mendoza,* 472 F.3d 645, at 654 (9th Cir. 2006)).  The test for reliability focuses on "the soundness of [the expert's] methodology." *Daubert v. Merrell Dow Pharms., Inc*., 43 F.3d 1311, 1318 (9th Cir. 1995).  Courts, including the Supreme Court, have emphasized that faulty or deficient methodology is grounds for excluding an expert. *See Boyd v. City & Cnty. of S.F.*, 576 F.3d 938, 946 (9th Cir. 2009) (if expert fails to "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," her testimony must be excluded) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).  Similarly, where testimony is based on faulty assumptions or bad facts—or where the expert herself is not qualified to opine on the subject-matter at issue—that testimony has no "valid connection to the pertinent inquiry," and should be stricken as unhelpful. *Primiano*, 598 F.3d at 565 (quoting *Sandoval-Mendoza,* 472 F.3d at 654).

Finally, courts routinely exclude expert report or testimony that "'merely summarizes the record evidence and gratuitously interprets it' with a conclusion that offers nothing more than what [plaintiff's] counsel could argue to the jury in closing arguments." *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2022 WL 254348, at *10 (N.D. Cal. Jan. 27, 2022) (quoting *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941, at *13 n.8 (N.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 553 (9th Cir. 2016))*; see Synergy Hematology-Oncology Med. Assocs. v. Abbott Labs., Inc.*, 2023 WL 3319218, at *4-6 (C.D. Cal. Mar. 15, 2023)

(excluding expert report that offered "no comprehensible analysis and applied no discernible methodology" and parroted plaintiff's allegations of breach of contract).

## III. ARGUMENT

### A. Pittleman's Opinions Regarding Access Are Unreliable and Unhelpful

A copyright plaintiff must show the defendant had access to the allegedly infringed work. *Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir. 2016). "Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *Id.* at 995 (quoting *Art Attacks Ink, LLC v MGA Enter.,* 581 F.3d 1138, 1143 (9th Cir. 2009)). Pittleman opines on both wide dissemination and direct access, relying on speculation and conjecture for each opinion and failing to engage with the facts that emerged in discovery.

#### 1. Pittleman Has No Reliable Methodology for Evaluating Widespread Dissemination

An expert opinion is inadmissible, when it "does not apply specialized [] expertise in any way," and instead "simply summarizes evidence already in the record." *Edwards Lifesciences Corp.*, 2022 WL 254348, at *10. Because that is all Pittleman's report does, it should be excluded.

In support of her opinion regarding access through widespread dissemination of *Emanuel*, Pittleman merely recites Plaintiff's allegations and concludes that Defendants must have seen the film. Pittleman offers no methodology for her conclusion, much less a reliable one, and fails to differentiate between the film's availability and *widespread dissemination* under the law.[1] For example:

---

[1] *See Cope v. Warner Records*, 2023 WL 11827959, at *4 (C.D. Cal. June 5, 2023) (quoting *Woodland v Hill,* 2002 WL 19250191, at *3 (C.D. Cal. Dec. 8, 2022) (courts "have consistently held that the mere availability of a work online is insufficient to establish widespread dissemination" and collecting cases); *see also*

- Pittleman states that *Emanuel* was shown at various film festivals, including the Sundance Film Festival and the Ashland Independent Film Festival. Declaration of Cydney Swofford Freeman ("Freeman Decl.") Ex. 7 ("Pittleman Rpt.") ¶¶ 25-26.  She states that 46,000 people attended Sundance (*Id.* at ¶ 21), but she does not note how many attended any screening(s) of *Emanuel* (or how many times it was screened), and concedes that Sundance likely screened between 50-70 films that year.  Freeman Decl. Ex. 8 ("Pittleman Dep.") at 240:8-241:3.
- She states that *Emanuel* was distributed through other film festivals and in movie theaters but offers no concrete numbers as to how many people attended any of those screenings, either.  Pittleman Rpt. ¶ 26.  Instead, she testified that she did not know how long the film played during its theatrical run, or in how many theaters, and that the theatrical run was a result of so-called "four-walling," where a distributor pays a theater to screen a film—meaning that even the limited theatrical run was the result of Plaintiff and/or her distributor's money, not audience demand.  Pittleman Dep. at 260:2-5.  In fact, film's total box office receipts were a mere $4,000, which Pittleman conceded is "not a lot."  *Id.* at 258:23-25; 261:4-5.
- As for non-theatrical distribution (like video-on-demand), Pittleman asserts that *Emanuel* was available in more than 50 million homes on various streaming apps without providing any *actual data* regarding the film's viewership.  Pittleman Report ¶ 32.  That figure speaks to the reach of the platforms, not the reach of this specific film.  The only concrete numbers for *Emanuel* that she relies upon are from the iTunes Store, through which *Emanuel* was rented or purchased only approximately ▮ times through

---

*Lois v. Levin*, 2022 WL 4351968 at *3 (C.D. Cal. Sept. 16, 2022) ("the mere availability of a work online is insufficient to establish widespread dissemination"); *Batts v. Adams*, 2011 WL 13217923, at *4 (C.D. Cal. Feb. 8, 2011) (same).

> 2019. *Id.* ¶ 34; Pittleman Dep. at 262:8-22; ECF No. 180-1 ("SUF") 244-45. She also mentions that *Emanuel* was pirated, but she conceded that she did not know how many times the film had actually been downloaded. Pittleman Dep. at 263:3-8.

Ultimately, Pittleman explains that *Emanuel* was not "marketed to a mass audience" but rather to "industry insiders." Pittleman Rpt. ¶ 30. But Pittleman considers herself an insider, yet she concedes that, prior to being engaged as an expert in this lawsuit, she had never heard of the film or Plaintiff. Pittleman Dep. at 142:7-9.

Pittleman's recitation of bare facts is presented on its own without any application or actual expert analysis. Indeed, the record she cites reflects the opposite of her conclusion, revealing that *Emanuel* reached only a miniscule audience. Pittleman's widespread dissemination sections are therefore not helpful or reliable testimony, and should be excluded.

### 2. Pittleman Has No Reliable Methodology for Evaluating Direct Access

Pittleman's opinion regarding Defendants' access to *Emanuel* on a chain-of-events theory is also flawed. Pittleman Rpt. ¶¶ 36-42. Pittleman's opinion that Basgallop and Apple executives had access to *Emanuel* is based either on pure speculation or on a gross misrepresentation of the timeline of *Servant*'s creation and development, making it both unreliable and unhelpful.

#### a. Pittleman Speculates that Tony Basgallop Had Access to *Emanuel*

In assessing whether a copyright defendant had access to the plaintiff's work, "mere speculation" is not competent evidence and therefore cannot establish that "it is ... reasonably possible that the paths of the infringer and the infringed work crossed." *See Loomis v. Cornish*, 836 F.3d 991, 995-996 (9th Cir. 2016) (quoting *Towler v. Sayles,* 76 F.3d 579, 582-583 (4th Cir. 1996)). "[E]xperts cannot engage in rank speculation," and opinions that do so should be excluded as unreliable.

*Celador Int'l, Ltd. v. Walt Disney Co.*, 2008 WL 11342595, at *10 (C.D. Cal. Dec. 17, 2008) (rejecting expert's assertion that certain license rates should be reduced based because "it just felt right"), *report and recommendation approved*, 2009 WL 10675217 (C.D. Cal. Feb. 13, 2009).

Here, Pittleman's methodology for assessing Basgallop's access to *Emanuel* amounts to "mere speculation" that Basgallop *may* have had access to the film. Specifically, Pittleman claims that *Emanuel*'s inclusion in Sundance London in 2013 supports access because Basgallop is "from the UK" and she "thinks" Basgallop was living there when *Emanuel* was screened. Pittleman Rpt. ¶ 26; Pittleman Depo. at 245:1-2. Screening a film one time in a country cannot possibly constitute access for one resident of that country, but regardless, it is not even accurate, as Basgallop moved to Los Angeles in 2012. Freeman Decl. Ex. 15 ("Basgallop Dep.") at 10:8-10. Pittleman further asserts that Basgallop could have seen *Emanuel* because Plaintiff was submitted as a potential director on the show *Berlin Station*, on which Basgallop was a writer and co-producer. Pittleman Rpt. ¶¶ 38-39. Pittleman offers no analysis in support of this contention; she merely speculates that because Basgallop worked on *Berlin Station*, it is possible he reviewed *Emanuel*. *Id*. Plaintiff herself does not even believe this. SUF255 (testifying that she did not believe Basgallop accessed *Emanuel* as a result of her alleged submission to direct an episode of *Berlin Station*).

Pittleman's opinion regarding Basgallop's access to *Emanuel* is nothing more than "rank speculation," and is therefore unreliable. *Celador*, 2008 WL 11342595 at *10. It should be excluded.

### b. Pittleman's Theory of Apple's Access to *Emanuel* Relies on a False Premise

While Pittleman provides a list of various attenuated connections between *Emanuel* and Apple executives, her opinion is based on the faulty premise that any connection with Apple constitutes direct access for copyright purposes. Pittleman

Rpt. ¶¶ 40-41.  *See*, *e.g.*, *Counts v. Meriwether*, 2015 WL 9594469, at *7 (C.D. Cal. Dec. 30, 2015) (employee's receipt of work not probative of access without link between that employee and individuals allegedly responsible for copying).  At her deposition, Pittleman conceded that it would not matter if Apple executives had watched *Emanuel* if they did not contribute any allegedly infringing material to *Servant*.  Pittleman Dep. at 225:10-229:12.[2]  The timeline reflects that Apple had no role in the alleged copying, yet Pittleman fails to engage with the facts.

In this case, by the time *Servant* was pitched to Apple in 2018, the allegedly infringing elements *were already in the scripts*, including the reborn doll concept, SUF146-149, 157, and specific scenes and plot points (such as Dorothy and Leanne's contrasting baths, Sean spying on Leanne praying, and Sean snooping in Leanne's room, among others).  SUF87-126, 131-137, 142-143.  Plaintiff herself effectively concedes this point in her FAC, by acknowledging that all of the alleged similarities between *Emanuel* and *Servant* were present in *Servant* scripts predating Apple's involvement in the project.  FAC ¶¶ 95, 101.  Because *Servant* included those elements before Apple was involved in the project, Pittleman's theory has no bearing to the case and should be stricken.

**B.     Pittleman's Flawed Understanding and Application of Causal Nexus Should Be Excluded**

Plaintiff also proffers Pittleman as an expert to opine on causal nexus in an attempt to recover profits from all 40 episodes of *Servant* despite alleging that only the first three episodes are infringing.  A copyright plaintiff seeking to recover profits generated by a non-infringing work may do so only upon establishing a "causal nexus" between the indirect profits and the alleged infringement.  *Polar Bear Prods. v. Timex*, 384 F.3d 700, 711 (9th Cir. Oct. 25, 2004).  Pittleman is not qualified to opine on any causal nexus between profits generated by Episodes 4-40

---

[2] While the timeline makes this immaterial, they did not. SUF257-64.

of *Servant* and the alleged infringement in Episodes 1-3, and even if she were, her "methodology" consists of nothing more than the fact that the numbers 4-40 follow the numbers 1-3 sequentially. Her report and testimony should be excluded as unreliable and unhelpful.

### 1. Pittleman Is Not Qualified to Opine on Causal Nexus

Rule 702 requires that the person testifying must be "qualified as an expert by knowledge, skill, experience, training, or education" in the relevant field. General qualifications are insufficient; experts must be qualified as to the specific "issues on which [the expert] opine[s]." *Pyramid Techs., Inc. v. Hartford Cas. Ins.*, 752 F.3d 807, 814 (9th Cir. 2014). Otherwise, the expert lacks "specialized knowledge" that would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Sterling Sav. Bank v. Poulsen*, 2013 WL 3945989, at *8 (N.D. Cal. July 29, 2013) ("Although Bernhardt may be qualified as an expert to address the California banking industry in general terms, he is not qualified to opine as to financial elder abuse."); *Rutherford v. Palo Verde Health Care Dist.*, 2015 WL 12864245, at *2 (C.D. Cal. Apr. 17, 2015) (expert witness was not qualified to testify about lost earnings where he did not claim any special expertise in assessing the effects that reputational harm or adverse employment actions may have on an individual's earning capacity). "[E]xpertise in one subject does not necessarily mean the expert will be qualified to testify on all issues that could arise from that subject." *Snyder v. Bank of Am., N.A.*, 2020 WL 6462400, at *4 (N.D. Cal. Nov. 3, 2020) (alteration in original) (quoting *Lutron Elecs. Co. v. Creston Elecs., Inc.,* 970 F. Supp. 2d 1229, 1241 (D. Utah 2013)). Here, Pittleman lacks the kind of specialized knowledge required under Rule 702 to testify as to the cause of profits from episodes of *Servant* for at least two reasons.

*First*, Pittleman lacks any training or expertise in financial analysis. She concedes that her understanding of the concept of indirect profits and causal nexus comes exclusively from Plaintiff's counsel and a cursory Google search, and does

not even remember what articles her Google search returned or which one she read. Pittleman Dep. at 145:17-147:23.  She otherwise has no "formal training in finance or accounting" (*see id.* at 105:21-106:9), and has never personally performed an analysis of the factors driving revenue on a project.  *See id.* at 106:21-107:12.

*Second*, Pittleman has limited practical experience in film finance.  She has been a "programming person" in charge of putting together film festival slates, involved in the production of foreign films, and a member of various acquisition and distribution teams, but that work has never included a finance role.  Pittleman Dep. at 16:5-22:16, 104:1-6; Pittleman Rpt. Exhibit A at 1.  She has never been in charge of analyzing a film or television program's profits.  Pittleman Dep. at 88:14-20, 106:21-107:12.  In fact, she admitted she has relied on her employers' "financial planning and analysis group" whenever she needed information on a project's finances.  Pittleman Dep. at 103:130-104:6, 106:21-107:7.  And Pittleman conceded she does not have an understanding of the profitability models of streaming services.  Pittleman Dep. at 184:21-185:1.  This is disqualifying information for a purported expert opining on the alleged source of particular profits.

Regardless of Pittleman's experience in the industry more broadly, she lacks the training and experience and expertise to opine on profits here.  Plaintiff has not met her burden of establishing Pittleman's qualifications as an expert, and her report and testimony should be stricken as a result.  *See Gable v. Nat'l Broadcasting Co.*, 438 Fed. Appx. 587, 589 (9th Cir. June 16, 2011) (district court did not err in excluding David Nimmer's expert report on substantial similarity because while he was undoubtedly an expert in the field of copyright law, he failed to establish that he had "knowledge, skill, experience, training, or education" relevant to the evidence at issue); *Aleman v. Volvo Cars of North Am., LLC*, 2020 WL 4742814, at *4 (C.D. Cal. Apr. 15, 2020) (rejecting that "35 years of experience in the automotive industry, including as an automotive technician and [] automotive expert," qualified expert to value specific vehicle makes).

### 2. Pittleman's Methodology Is Unreliable

Pittleman's opinion regarding causal nexus is also unreliable for the separate reason that it is not based "on sufficient facts or data," but instead on speculation. Fed. R. Evid. 702(b). As the Supreme Court has made clear, the question under Rule 702 is "not the reasonableness *in general*" of the expert's approach, but the reasonableness of applying that approach in "*the particular matter*." *Kumho*, 526 U.S. at 153-154. Pittleman's deficient methodology underlying her conclusion that there is a causal nexus between the full series' profits and the alleged infringement in Episodes 1-3 falls far short of Rule 702's requirements.

*First*, Pittleman failed to conduct any sort of analysis of the data to support her opinion regarding causal nexus. Instead, her opinion is predicated entirely on the fact that *Servant* Episodes 4-40 were released after Episodes 1-3 and reflected some of the same characters and continuing storylines as the earlier episodes. Pittleman Dep. at 149:16-22; Pittleman Rpt. ¶¶ 61-62; Freeman Decl. Ex. 18 ("Pittleman Rebuttal") ¶¶ 17, 21. Pittleman did not even watch Seasons 2-4 (*i.e.*, Episodes 11-40), but rather relied on brief Wikipedia and IMDb synopses of those episodes to make her opinion. Pittleman Dep. at 140:5-141:4. This alone is disqualifying. *See Focal Point Films, LLC v. Sandhu*, 2020 WL 5760355, at *9 (N.D. Cal. Sept. 28, 2020) (holding that expert was not permitted to offer opinions on audience appeal of film where she admitted she had not seen the film, because those opinions had "no factual basis"). Had Pittleman actually watched those episodes, she would have seen that the later seasons of *Servant* depart dramatically from the first few episodes of the series, not just because of new plot twists and characters, but because of an increasing emphasis of the supernatural themes lacking in *Emanuel*.[3]

---

[3] *See* Freeman Decl. Ex. 9 ("Rajan Dep.") at 144:20-22 ("Those characters exist as [Season 1] continues, but we bring in other characters as well and the story changes, in fact, quite dramatically[.]"); *id.* at 143:14-15 ("[I]t really takes a right

At most, Pittleman established a creative correlation between the earlier and later episodes of *Servant*, but this is not sufficient to establish causal nexus. The court in *Rearden* made this critical point when it rejected an expert's report that concluded that "at least some of [the film at issue's] revenue can be directly attributed to the use of [the plaintiff's motion capture technology]" based only on "a *correlation* between 'uncanny human-like virtual characters in feature films' and the 'estimated budgets and gross film takings' in feature films." *Rearden LLC v. Walt Disney Co.*, 2021 WL 6882227, at *7 (N.D. Cal. Jul. 12, 2021) (emphasis added); *see also Oculu, LLC v. Oculus VR*, 2015 WL 3619204, at *21 (C.D. Cal. Jun. 8, 2015) ("Lacking any factual basis beyond mere correlation, [expert's] opinion on causation is speculative as well as misleading"; opinion excluded under Rule 702).

*Second*, even if the later episodes were a creative continuation of the plots and characters established in *Servant* Episodes 1-3, that does not mean that profits generated by the later episodes were the result of alleged infringement in the earlier episodes. Pittleman did not even attempt to articulate how the allegedly infringing elements in Episodes 1-3 drove the profits of any of the remaining episodes of Season 1. Nor did she do any sort of financial analysis or assessment of the source of any profits, as she is not an expert in such assessments. Pittleman Dep. at 105:21-107:12, 109:22-110:2. Instead, she treated 40 episodes of television "holistically" (*id.* at 180:23-181:2), as some of kind of undifferentiated mass of

---

turn, Season 2."); Freeman Decl. Ex. 10 ("Shyamalan Dep.") at 223:19-224:4 ("Q. You were white-boarding even for the ones that you were not directing? A. Yeah. Eventually, when Tony left the show, I was deciding where we were going with the entire show. So I would outline everything of what the movement was of the show, of how we were going to do -- what happens here, and could we have the episode like this, and the cult does this. And at the end of Season 3, this event can happen. And at the end of our cult show, this event can happen.").

content, and concluded for all of those episodes that any profits they generated were causally linked to the alleged infringement without any specific analysis.

This is particularly problematic in this case, where there are numerous elements in Episodes 1-3 that Plaintiff cannot possibly claim are infringing, including the elements that were written by Basgallop prior to *Emanuel* and the elements in the underlying story on which *Emanuel* is based, which belong to Sarah Thorp. *See* SUF204-218. Pittleman did not do any analysis to assess what specifically in Episodes 1-3 allegedly contributed to profits generated by Episodes 4-40. In fact, she admitted that she did not even consider the *possibility* that profits generated by Episodes 4-40 could have been caused by the myriad elements of Episodes 1-3 that predated *Emanuel* or could otherwise be independent of the alleged infringement. Pittleman Dep. at 178:16-179:14.

Instead, Pittleman based her opinions on the fact that Episodes 4-40 came after Episodes 1-3 sequentially, without any attempt at assessing other potential reasons for those profits. Pittleman Dep. at 149:16-22; 178:20-180:2. Such a fact has no established connection to causal nexus, under the law or common sense, and, regardless, the Court does not need an expert to explain the sequence of numbers. Moreover, relying on the sequence of the episodes and ignoring all other information and data that might contradict her opinion is a quintessential example of a biased selection process, whereby an expert relies only on those facts that support their predetermined opinion and ignore any facts that contradict it. Courts have not hesitated to reject expert opinion for this very reason. *See Rearden LLC v. Walt Disney Co.*, 2021 WL 6882227, at *7 (N.D. Cal. July 12, 2021) (rejecting expert's "biased selection process" that purported to establish causal nexus between movies' profits and allegedly infringing use of plaintiff's motion capture technology, where expert simply "selected movies that she believed supported the conclusion she wanted to reach").

*Third*, Pittleman's opinions regarding a causal nexus with any profits generated by Apple TV+ overall are even more tenuous. Pittleman did not review any financial documents, engage in any financial analysis, or conduct any assessment whatsoever of the reasons or sources of any profits generated by Apple TV+. In fact, she admitted that she "didn't do anything with the financials," Pittleman Dep. at 187:23-188:2, but instead just read some news articles about Apple (*e.g.*, Pittleman Rpt. ¶ 92; Pittleman Rebuttal ¶¶ 32-34) and then jumped to the conclusion that the alleged infringement in *Servant* Episodes 1-3 somehow drove profits to Apple TV+, without conducting any analysis or using any underlying methodology.

Pittleman's opinion on causal nexus is based on unsupported speculation and a biased selection of facts, and should therefore be stricken.

## IV.   CONCLUSION

Lacking the qualifications, factual foundation, and viable methodology to opine on access or causal nexus, Pittleman proffers only her conjecture and speculation. Her report does not meet the strict requirements of Rule 702 and should be stricken, and she should be excluded as an expert witness.

DATED: July 26, 2024

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
CARL MAZUREK

By:   /s/ Cydney Swofford Freeman
　　　　Cydney Swofford Freeman

Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,868 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 26, 2024          /s/ Cydney Swofford Freeman
                              Cydney Swofford Freeman