NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
  meenakshikrishnan@dwt.com
CARL MAZUREK (*pro hac vice*)
  carlmazurek@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel.: (213) 633-6800; Fax: (213) 633-6899

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA GREGORINI,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No. 2:20-cv-00406-SSS-JC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DOMINIC PERSECHINI**<br><br>**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**<br><br>Date:　　August 23, 2024<br>Time:　　2:00 p.m.<br>Dept.:　　Courtroom 2 |

1     **PLEASE TAKE NOTICE** that on August 23, 2024, at 2:00 p.m. or as soon as may be heard in Courtroom 2 of the United States District Court for the Central District of California, 3470 Twelfth Street, Riverside, California 92501, defendants Blinding Edge Pictures, Inc., Uncle George Productions, LLC, Apple Inc., Escape Artists, Inc. (erroneously sued as Escape Artists LLC), Dolphin Black Productions, M. Night Shyamalan, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch (collectively, "Defendants") will and hereby move for an order excluding the expert reports and testimony of Dominic Persechini.

    This motion is made on the grounds that Persechini's reports and testimony fail to meet the standards set forth in Rule 702 of the Federal Rules of Evidence. *First*, Persechini's expert reports and testimony regarding causal nexus, to the extent proffered, are unreliable and unhelpful because Persechini himself admitted he lacks any specialized knowledge or methodology to assess causal nexus. *Second*, Persechini's reports and testimony regarding the attributability of Defendants' profits to the alleged infringement are unreliable and unhelpful because he fails to consider the requirement that claimed profits be attributable to the alleged infringement. *Third*, Persechini's reports and testimony regarding Apple's deductible costs, and therefore Apple's profits, are unreliable and unhelpful because he adopts inconsistent methodologies to account for revenues and costs without any justification.

    The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and Proposed Order, the Declaration of Cydney Swofford Freeman, the pleadings and papers on file in this action, the matters of which this Court may take judicial notice, and such additional matters and oral argument as may be offered in support of the Motion.

    This Motion is made following the Local Rule 7-3 conference of counsel, which took place on July 10 and July 19, 2024.

DATED: July 26, 2024

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
CARL MAZUREK

By: /s/ Cydney Swofford Freeman

Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. LEGAL STANDARD......................................................................................... 2

III. ARGUMENT ..................................................................................................... 3

    A. Persechini's Opinion on Causal Nexus, to the Extent Proffered, Is Unreliable and Unhelpful ............................................................... 3

        1. Persechini Testified He Was Not Opining on Causal Nexus................................................................................ 4

        2. Persechini Admitted He Was Not Qualified to Opine on Causal Nexus................................................................ 4

        3. Persechini's Causal Nexus Opinion Lacks Any Methodology ........................................................................ 6

    B. Persechini's Opinion That All Profits Are Attributable to the Alleged Infringement Is Unsupported and Unreliable ......................... 7

    C. Persechini's Opinions Regarding Apple Profits Are Unreliable.......... 9

IV. CONCLUSION................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boyd v. City & Cty. of S.F.*,
  576 F.3d 938 (9th Cir. 2009) ................................................................................2

*Cream Records, Inc. v. Jos. Schlitz Brewing Co.*,
  754 F.2d 826 (9th Cir. 1985) ................................................................................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ..............................................................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ................................................................................2

*Hendricks v. Dreamworks, LLC*,
  2007 WL 9705916 (C.D. Cal. Nov. 20, 2007) ......................................................5

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ..............................................................................................3

*Mackie v. Rieser*,
  296 F.3d 909 (9th Cir. 2002) ................................................................................3

*Polar Bear Prods. v. Timex*,
  384 F.3d 700 (9th Cir. Sept. 3, 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004) ............................................................................ 3, 7

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) ............................................................................ 2, 3

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
  752 F.3d 807 (9th Cir. 2014) ................................................................................5

*Rearden LLC v. Walt Disney Co.*,
  2022 WL 2064976 (N.D. Cal. June 8, 2022) ........................................................3

*Rutherford v. Palo Verde Health Care Dist.*,
  2015 WL 12864245 (C.D. Cal. Apr. 17, 2015) .....................................................5

*Teradata Corp. v. SAP SE*,
  570 F. Supp. 3d 810 (N.D. Cal. 2021) ............................................................... 11

*In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prod. Liab. Litig.*,
    424 F. Supp. 3d 781 (N.D. Cal. 2020) .................................................................. 11

**Statutes**

17 U.S.C. § 504(b) ........................................................................................... 7, 8, 9

**Rules**

Federal Rule of Evidence
    702 ................................................................................................................ *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants move to exclude the unsupported and unreliable opinions of Plaintiff Francesca Gregorini's financial expert Dominic Persechini, who parrots Plaintiff, her counsel, and other experts instead of relying on his own methodology and analysis.  For example, despite testifying again and again he was not opining on Plaintiff's arguments regarding causal nexus—i.e., that she was entitled to profits from all forty episodes of Defendants' television series *Servant* despite claiming infringement in only three episodes—Persechini seemingly changed his mind upon questioning by Plaintiff's counsel.  Although he previously acknowledged he had no qualifications or methodology to assess causal nexus, he nonetheless testified that a causal nexus existed between profits generated by Episodes 4-40 and the alleged infringement in Episodes 1-3 without any sort of analysis or methodology.

Persechini also repeats Plaintiff's contentions that *all* profits generated by Episodes 1-3 are recoverable even though he acknowledged that the Copyright Act allows only for those profits that are *attributable to the alleged infringement*. Persechini did not attempt to separate out non-infringing and allegedly infringing elements in *Servant*, though he testified about how it could be done.  Persechini could not explain why he failed to employ the methodology he outlined.  Instead, he concluded that all profits were attributable to the infringement only because it would be difficult to "get through that spaghetti bowl."  Declaration of Cydney Swofford Freeman ("Freeman Decl.") Ex. 1 ("Persechini Dep.") at 112:5-13.  This is especially problematic here where there are *numerous* elements that Plaintiff cannot claim are infringing, such as those written by Tony Basgallop prior to Plaintiff's film *The Truth About Emanuel* ("*Emanuel*") and those in the underlying story on which *Emanuel* is based that belong to third-party Sarah Thorp.  *See* ECF No. 180-1 ("SUF") ¶ 217.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ Had he used the same methodology for revenues and costs, it would significantly reduce the potential profits that Plaintiff estimates she can recover in this case. This inconsistent and selective application of Persechini's methodology serves Plaintiff's interests but has no reliable basis.

These errors render Persechini's opinions unreliable, unhelpful, and inadmissible under Federal Rule of Evidence 702. Defendants request that this Court exclude him as an expert.

## II.  LEGAL STANDARD

District courts are the gatekeepers of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). Indeed, the Rules of Evidence "assign to the trial judge the task of insuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id*. at 597. It is Plaintiff's burden to establish by a preponderance of the evidence that Persechini's testimony is admissible under Rule 702 (*see id*. at 592 n.10), which requires among other things that he have specialized knowledge that will help the trier of fact and that the testimony be based on sufficient facts and reflect a reliable application of sound principles to the case. Fed. R. Evid. 702.

Expert testimony is "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation omitted). The test for reliability focuses on "the soundness of [the expert's] methodology." *Daubert v. Merrell Dow Pharms., Inc*., 43 F.3d 1311, 1318 (9th Cir. 1995). Courts, including the Supreme Court, have emphasized that faulty or deficient methodology is grounds for excluding an expert. *See Boyd v. City & Cty. of S.F*., 576 F.3d 938, 946 (9th Cir. 2009) (if a purported expert fails to "employ[] in the courtroom the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field," her testimony must be excluded) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Similarly, where testimony is based on faulty assumptions or bad facts—or where the expert herself is not qualified to opine on the subject matter at issue—that testimony has no "valid connection to the pertinent inquiry," and should be stricken as unhelpful. *Primiano*, 598 F.3d at 565 (citation omitted).

### III. ARGUMENT

#### A. Persechini's Opinion on Causal Nexus, to the Extent Proffered, Is Unreliable and Unhelpful

As with Plaintiff's other experts, Persechini proffers speculative opinions on profits from Episodes 4-40 that Plaintiff might recover based on a purported causal nexus theory, though he lacks any expertise on that topic. A copyright plaintiff seeking to recover indirect profits generated by non-infringing works may do so only upon establishing a "causal nexus" between the indirect profits and the alleged infringement. *Polar Bear Prods. v. Timex*, 384 F.3d 700, 711 (9th Cir. Sept. 3, 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004). Courts routinely reject causal nexus theories "in the absence of concrete evidence" tying the profitability of a non-infringing work to purported copyright infringement—particularly where, as here, "many factors" may have contributed to the purported profits at issue. *Rearden LLC v. Walt Disney Co.*, 2022 WL 2064976, at *2 (N.D. Cal. June 8, 2022) (quoting *Mackie v. Rieser*, 296 F.3d 909, 916 (9th Cir. 2002)); *see also Polar Bear*, 384 F.3d at 711 (quoting 5 *Nimmer on Copyright* § 14.03) ("When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner.").

Persechini repeatedly testified that he was not opining on causal nexus and admitted that he would have no reliable method for assessing causal nexus. And yet, in a reversal at the very end of his deposition, in response to questions from Plaintiff's counsel, he offered an unsupported and speculative opinion on the issue.

Persechini's testimony regarding causal nexus does not come close to satisfying Rule 702 because it is both unreliable and unhelpful and should therefore be excluded.

### 1. Persechini Testified He Was Not Opining on Causal Nexus

Because Persechini is not proffering any expert opinion establishing a causal nexus between any profits stemming from Episodes 4-40 and the alleged infringement in Episodes 1-3, Plaintiff cannot rely on any of his purported opinions on causal nexus. In his own words: "I'm not proffering a causal nexus opinion as part of my expert work." Persechini Dep. at 70:5-7; *see also id.* at 69:6-9 ("Q. But you're not offering an expert opinion on whether there is a causal nexus in this case? A. That is correct. I'm not proffering that opinion."); 68:10-12 ("Q. Are you providing any expert opinion on that issue [causal nexus]? A. I am not.").

Instead, Persechini testified he was treating the existence of a causal nexus as an "input" in connection with his opinion regarding the alleged profits generated by *Servant* Episodes 4-40. *See, e.g.*, Persechini Dep. at 68:19-69:1 ("Q. Just so I'm clear … you are assuming there is a causal nexus and opining on what the damages would be in that case? A. I have not been asked to proffer a causal nexus opinion. That is … an input to me."); 69:13-17 ("Q. So you're not purporting to understand the contours of causal nexus? … A. That's correct. That's an input to me."); 69:22-70:7 ("The financial analysis I did, yes, assumes that there is a nexus between Episodes 1, 2, and 3 and the remainder of *Servant*").

Because Persechini expressly and repeatedly confirmed that he was not offering an opinion on whether there is a causal nexus, Plaintiff should be precluded from relying on his reports, opinions, or testimony for that purpose.

### 2. Persechini Admitted He Was Not Qualified to Opine on Causal Nexus

Even if Persechini did opine on causal nexus—which he expressly said he did not—his own testimony confirms he is unqualified to do so. Rule 702 requires that

the person testifying must be "qualified as an expert by knowledge, skill, experience, training, or education" in the relevant field. Fed. R. Evid. 702. General qualifications in some areas are insufficient; experts must be qualified as to the specific "issues on which [the expert] opine[s]." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014). Otherwise, the expert lacks "specialized knowledge" that would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Rutherford v. Palo Verde Health Care Dist.*, 2015 WL 12864245, at *2 (C.D. Cal. Apr. 17, 2015) (expert witness excluded as to proffered opinions where he did not claim any special expertise in issue at hand). Here, Persechini's own testimony establishes that he is not qualified as an expert to conduct a causal nexus analysis.

*First*, Persechini confirmed he only has a "layman's understanding" of causal nexus, Persechini Dep. at 65:6-12, and that Plaintiff's attorneys told him there is a causal nexus "if the infringement at least partially caused the profits that the infringer generated" from non-infringing works. *Id.* at 63:16-64:6, 65:15-21; *see also* Freeman Decl. Ex. 2 ("Persechini Rpt.") ¶ 53; Freeman Decl. Ex. 3 ("Persechini Rebuttal Rpt.") ¶ 58. He testified that he relied on Plaintiff's counsel's "but for" formulation; he did not do any independent verification or analysis regarding the appropriate standard for causal nexus. Persechini Dep. at 63:16-64:6, 72:13-73:11. Defendants are not aware of any precedent in the Ninth Circuit—and Plaintiff to date has cited none—supporting the so-called "but for" standard for recovering indirect profits. On the contrary, courts have rejected this "but for" logic in the indirect profits context relating to films. *See Hendricks v. Dreamworks, LLC*, 2007 WL 9705916, at *1-3, 5 (C.D. Cal. Nov. 20, 2007) (plaintiff not entitled to indirect profits generated from non-infringing, subsequently written screenplay drafts and movie that would not exist but for allegedly infringing screenplay). Persechini's reliance on an incorrect legal principle as an assumption underlying his purported opinions renders them unreliable.

*Second*, Persechini specifically acknowledged he would not be equipped to assess causal nexus in this case. Other than the "but for" test formulated by counsel, he testified that he is "not aware of a methodology" related to causal nexus in copyright cases. Persechini Dep. at 71:21-73:11. This may because he has never previously performed a causal nexus analysis in an intellectual property case. *Id.* at 67:1-10, 71:21-72:18. In fact, he assessed causal nexus only once—in a breach of contract case—and specifically testified the methodology used in that case "would not be applicable" here as it was a "very different beast." *Id.* at 66:3-25. He has done no research or literature review on a reliable causal nexus methodology for this case. *Id.* at 73:8-11. He also has no expertise in assessing profits or sources of revenue generated in connection with a particular film or television series as part of a causal nexus analysis, nor did he independently analyze in this case the factors that led to any profits generated by any particular episode of *Servant*. Persechini Dep. at 66:3-25, 67:1-10, 71:21-72:18, 95:7-13. He simply took the causal nexus issue as a given, which makes him no different than a lay witness.

In short, even if Persechini *were* opining on causal nexus, by his own admission he is a lay witness on that issue and cannot be qualified as an expert.

### 3. Persechini's Causal Nexus Opinion Lacks Any Methodology

At the end of his deposition, on examination from Plaintiff's counsel, Persechini suggested for the first time that he *was* proffering an opinion on causal nexus, contradicting hours of testimony immediately prior. Persechini Dep. at 175:10-23. Though not reflected in his Reports, Persechini belatedly testified that his analysis apparently consisted of "looking at profits from Episodes 1, 2, and 3" and "profits from Episodes 4 through 10 of Season 1, as well as Seasons 2, 3 and 4," and that it "sort of follows logically, that you couldn't have profits from the follow-on episodes, if you didn't have the profits from the initial episodes." *Id.* at 175:13-21; *see also* 180:13-181:3 (similar). Even if *Servant* Episodes 1-3 generated

profits, however, that does not necessarily mean that profits generated by Episodes 4-40 were *caused by the alleged infringement* in Episodes 1-3.[1]

In particular, Persechini failed to conduct any sort of financial analysis or assessment of the sources or reasons for any profits generated by Episodes 4-40. He did not analyze how the allegedly infringing elements in Episodes 1-3 drove any profits of other episodes, nor did he evaluate how any profits generated from Episodes 4-40 bear any connection to the alleged infringement. *Polar Bear*, 384 F.3d at 711. Nor has he ever opined on what factors make a multi-season television series profitable, or how profits can and should be allocated. Persechini Dep. at 95:7-10. He also failed to assess what factors within Episodes 1-3 may have driven profits in other seasons, given that numerous elements in those episodes were written before *Emanuel* or do not belong to Plaintiff. He did none of that and, instead, simply "assume[d] that there is a nexus between Episodes 1, 2, and 3 and the remainder of *Servant*." *Id.* at 69:22-70:7. This opinion is unreliable and unhelpful and is inadmissible under Rule 702.

**B.  Persechini's Opinion That All Profits Are Attributable to the Alleged Infringement Is Unsupported and Unreliable**

Persechini's unfounded assumption that 100% of profits from Episodes 1-3 are attributable to the alleged infringement also renders his opinion unreliable. Copyright law permits a plaintiff's recovery of "any profits of the infringer that are *attributable to the infringement*." 17 U.S.C. § 504(b) (emphasis added). In establishing profits, the copyright plaintiff is required to "present proof" of the infringer's gross revenue, and the alleged infringer is then "required to prove his or

---

[1] Persechini also testified that a causal nexus existed because Episodes 4-40 sequentially followed Episodes 1-3, Persechini Dep. at 181:4-5, but that says nothing about the *cause* of certain profits, nor is it helpful to the trier of fact. He also did not watch or assess any episodes of *Servant* and, thus, also cannot reliably speak to any connection between specific elements in Episodes 1-3 and any profits generated by Episodes 4-40.

her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* Persechini opined that all profits generated by *Servant* Episodes 1-3 are attributable to the alleged infringement and, even if they were not, the non-infringing elements are "inextricably tied to the creation of episodes that infringe a copyright," thus entitling Plaintiff to all profits. Persechini Rebuttal Rpt. ¶¶ 116-117. Both of these conclusions are wrong and, moreover, reveal the absence of a reliable methodology underlying these opinions.

*First*, there are numerous factors other than the alleged infringement that contributed to any profits generated by *Servant* Episodes 1-3, such as the marketing and promotion of the series and the involvement of M. Night Shyamalan. In fact, there are many elements in Episodes 1-3 that Plaintiff herself cannot possibly claim are infringing, including the numerous elements that Basgallop wrote long before *Emanuel* and elements from the underlying story on which *Emanuel* is based belonging to Sarah Thorp. *See* ECF No. 180-1 (SUF) ¶¶ 77-143, 202-208 (including *Servant*'s premise, main characters, setting, tone, and numerous allegedly infringing scenes and dialogue). Persechini's refusal to consider these non-infringing elements demonstrates the unreliability of his opinions. *See Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 829 (9th Cir. 1985) (where infringer's profits are not entirely due to the infringement, some apportionment must be made to avoid the "unjust course of giving the plaintiffs everything") (citation omitted).

*Second*, at his deposition, Persechini could not provide any basis for his opinion that the infringing and non-infringing aspects of Episodes 1-3 are inextricably intertwined other than claiming that he did not "see how you'd … get through that spaghetti bowl." Persechini Dep. at 112:5-13, 132:25-133:5; *see also id.* at 111:21-112:3 (testifying that "any potential non-infringing elements are so commingled that there's no way to disentangle that, at least, not that I have seen"). But Persechini acknowledged there *is* a way of separating out revenues from the

allegedly infringing and non-infringing elements, testifying "theoretically you could try to determine if there are … non-infringing factors, how those factors would generate profits." *Id.* at 121:10-17; *see also id.* at 122:4-11 ("Theoretically, hypothetically, you would want to do some sort of analysis that – again, this high level – that looked at various elements and how those elements drove or are responsible for profits."). He simply did not do that analysis, instead testifying that he accepted Plaintiff's other experts' "view of the world" that the allegedly infringing and non-infringing elements in Episodes 1-3 are "inextricably intertwined" and therefore that they are infringing in their entirety. *Id.* at 107:24-108:11, 110:13-18, 131:25-132:10.

Persechini's opinion regarding allocation is based entirely on other experts' opinions, without attempting to do the analysis himself. *Id.* at 110:24-111:14 ("A. So, again, the best way I can answer is that I'm relying on the opinions of Professor Roman and Ms. Pittleman as to the fact that … that to the extent there are non-infringing elements, those are inextricably linked to the infringing elements[.]"). His failure to independently identify and implement his own reliable methodology and justifications for his opinions renders them unreliable and unhelpful.

### C.  Persechini's Opinions Regarding Apple Profits Are Unreliable

Once copyright defendants establish their "deductible expenses," they are subtracted from the gross revenue that the plaintiff established and considered along with the elements of profit attributable to factors other than the alleged infringement, to arrive at profits attributable to the infringement. *See* 17 U.S.C. § 504(b). When calculating Apple's alleged profits related to Seasons 1-4, however, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉ Freeman Decl. Ex. 4 ("Persechini Supplemental Rpt."), Schedule 3.1 n.b. In reaching that conclusion, Persechini failed to apply the same methodology he

1  used to calculate Apple's revenues.  This failure makes his opinion as to Apple's
2  profits unreliable.

3  ████████████████████████████████████████
4  ████████████████████████████████████████
5  ████████████████████████████████████████
6  ████████████████████████████████████████
7  ████████████████████████████████████████
8  ████████████████████████████████████████
9  ████████████████████████████████████████
10 ████████████████████████████████████████
11 ████████████████████████████████████████
12 ████████████████████████████████████████
13 ████████████████████████████████████████
14 ████████████████████████████████████████
15 ████████████████████████████████████████
16 ████████████████████████████████████████
17 ████████████████████████████████████████
18 ████████████████████████████████████████
19 ████████████████████████████████████████
20 ████████████████████████████████████████
21 ████████████████████████████████████████
22 ████████████████████████████████████████
23 ████████████████████████████████████████

---

[2] Generally speaking, incremental costs are "the total cost incurred due to an additional unit of product being produced." https://www.investopedia.com/terms/i/incrementalcost.asp.

[3] As explained in Defendants' Motion for Summary Judgment, Plaintiff's contention that she is entitled to profits generated by *Servant* Episodes 4-40 should be rejected in its entirety.  *See* ECF No. 180 at 22-23.

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ████████████████████████████████████████

5 ████; he just concludes it cannot be done and therefore fails to reliably apply his

6 own methodology to the facts in this action. *Id*. at 87:17 (simply concluding that

7 "there's no analog for the cost"). Courts have excluded as unreliable experts who

8 similarly inconsistently apply their own methodology. *See Teradata Corp. v. SAP*

9 *SE*, 570 F. Supp. 3d 810, 842-843 (N.D. Cal. 2021) (expert's application is

10 "problematic," and "unreliable and unhelpful" where "inconsistent" with his own

11 methodology).

12 ████████████████████████████████

13 ████████████████████████████████████████

14 ████████████████████████████████

15 ████████████████████████████████

16 ████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████

19 ████████████████████████████; *see also id*. at

20 90:23-25 ("[M]y expectation would be that further data could exist and then further

21 analysis could be completed."). Here, as elsewhere, it appears that Plaintiff's

22 desired result—maximizing potential damages—drove his methodology or, more

23 accurately, his refusal to adopt a reliable methodology that would decrease those

24 damages. *In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prod. Liab. Litig.*,

25 424 F. Supp. 3d 781, 797 (N.D. Cal. 2020) (excluding experts' "unduly results-

26 driven" analysis). ████████████████████████

27 ████████████████████████████████████████

28 ████████████████████████████████

1 ██████████████████████████████████████████████████
2 ██ This renders his opinions about Apple's profits unreliable.

### IV. CONCLUSION

Persechini's opinions on causal nexus, profit allocation, and Apple's profits are unreliable and unhelpful and, thus, inadmissible under Rule 702. Defendants respectfully request that the Court grant this motion and exclude the corresponding expert reports and testimony of Dominic Persechini.

DATED: July 26, 2024

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
CARL MAZUREK

By: /s/ Cydney Swofford Freeman
   Cydney Swofford Freeman

Attorneys for Defendants

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,571 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 26, 2024

/s/ Cydney Swofford Freeman
Cydney Swofford Freeman