1    **ROBINS KAPLAN LLP**
     Michael A. Geibelson (SBN 179970)
2    MGeibelson@RobinsKaplan.com
     Patrick M. Arenz *(Pro hac vice)*
3    PArenz@RobinsKaplan.com
     Emily E. Niles *(Pro hac vice)*
4    ENiles@RobinsKaplan.com
     Annie Huang *(Pro hac vice)*
5    AHuang@RobinsKaplan.com
     Prateek N. Viswanathan *(Pro hac vice)*
6    PViswanathan@RobinsKaplan.com

7    2121 Avenue of the Stars
     Suite 2800
8    Los Angeles, California  90067
     Telephone:  310 552 0130
9    Facsimile:   310 229 5800

10   *Attorneys for Plaintiff Francesca Gregorini*

11                  **UNITED STATES DISTRICT COURT**

12                  **CENTRAL DISTRICT OF CALIFORNIA**

13

14

15   | | |
     |---|---|
     | Francesca Gregorini, | Case No. 2:20-cv-00406-SSS-JC |
     | Plaintiff, | *Hon. Sunshine S. Sykes* |
     | v. | **PLAINTIFF FRANCESCA GREGORINI'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY BY DAVID ROMÁN** |
     | APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual; BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive, | Date: August 23, 2024 Time: 2:00 p.m. Dept.: Courtroom 2 |
     | Defendants. | |

16

17

18

19

20

21

22

23

24

25

26

27

28

*ROBINS KAPLAN LLP*
*ATTORNEYS AT LAW*
*LOS ANGELES*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND...................................................................................1

I.      Ms. Gregorini will prove at trial that elements from *Servant* are substantially similar to original elements in *Emanuel*. ....................................1

II.     Professor David Román is a tenured professor at the University of Southern California. ............................................................................................2

III.    Professor Román detailed his opinions about the similarities between *Emanuel* and *Servant* and the qualitative importance of those similarities. ........................................................................................................2

ARGUMENT...........................................................................................................6

I.      The Court should not exclude Professor Román's analysis and opinions under the extrinsic test.................................................................6

        A.      Professor Román's opinions address original/protectable elements in *Emanuel* and *Servant*. ....................................................7

        B.      Defendants' "prior art" argument has no basis in copyright law. .......11

        C.      The Court should not exclude Professor Román over Defendants' perceived dissimilarities.................................................13

        D.      Defendants' argument about alleged inaccuracies presents no issue under Rule 702. ...............................................................15

        E.      Defendants again misstate the record about Professor Román's opinion about striking similarity.......................................16

II.     Defendants' disagreement with Professor Román's selection-and-arrangement analysis is no reason to exclude it. ...........................................17

III.    Defendants' arguments about causal nexus warrant no relief.......................19

CONCLUSION.....................................................................................................20

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accentra Inc. v. Staples Inc.*,
No. 07-5862, 2010 WL 11459205 (C.D. Cal. Oct. 7, 2010) ............................ 17

*Alfred v. Walt Disney Pictures*,
No. 18-8074, 2021 WL 6882322 (C.D. Cal. Dec. 16, 2021)
.................................................................................................... 2, 7, 19

*Alfred v. Walt Disney Pictures*,
No. 18-8074, Dkt. 243 (C.D. Cal. May 13, 2022) ............................................ 19

*Batts v. Adams*,
2011 WL 13217923 (C.D. Cal. Feb. 8, 2011) ................................................... 14

*Baxter v. MCA, Inc.*,
812 F.2d 421 (9th Cir. 1987) ........................................................................... 13

*Burns v. Imagine Films Entm't, Inc.*,
164 F.R.D. 589 (W.D.N.Y. 1996) .................................................................... 19

*Desire, LLC v. Manna Textiles, Inc.*,
986 F.3d 1253 (9th Cir. 2021) ......................................................................... 12

*Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy Stud.*,
No. 16-226, 2016 WL 7486286 (C.D. Cal. May 25, 2016) ................................ 7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ..................................................................................... 7, 12

*Fodor v. Los Angeles Unified Sch. Dist.*,
No. 12-8090, 2014 WL 12235424 (C.D. Cal. June 3, 2014) ............................ 10

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
886 F.2d 1545 (9th Cir. 1989) ......................................................................... 19

*Gregorini v. Apple Inc.*,
No. 20-55664, 2022 WL 522307 (9th Cir. Feb. 22, 2022) .................................. 2

*Guangzhou Yucheng Trading Co. v. Dbest Prod., Inc.*,
644 F. Supp. 3d 637 (C.D. Cal. 2022) ....................................................... 14, 16

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Hanagami v. Epic Games, Inc.*,
    85 F.4th 931 (9th Cir. 2023) ...................................................................... 18

*Infodek, Inc. v. Meredith-Webb Printing Co.*,
    830 F. Supp. 614 (N.D. Ga. 1993) ............................................................ 12

*Irish Rover v. Sims*,
    No. 20-06293, 2023 WL 6793218 (C.D. Cal. June 30, 2023) ............... 7, 12, 15

*Kennedy v. Collagen Corp.*,
    161 F.3d 1226 (9th Cir. 1998) .................................................................. 15

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) .................................................................................... 6

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012) ............................................................... 13, 16

*Lester v. U2 Ltd.*,
    No. 706612, 2009 WL 10673938 (C.D. Cal. Apr. 10, 2009) ................... 12

*Mackie v. Reiser*,
    296 F.3d 909 (9th Cir. 2002) .................................................................... 19

*Metcalf v. Bochco*,
    294 F.3d 1069 (9th Cir. 2002) ............................................................. 17, 18

*Michaleczko v. C. R. Bard, Inc.*,
    No. 19-07736, 2021 WL 4732920 (C.D. Cal. Mar. 31, 2021) ................. 19

*Narell v. Freeman*,
    872 F.2d 907 (9th Cir. 1989) .................................................................... 10

*Olson v. National Broadcast Co.*,
    855 F.2d 1446 (9th Cir. 1988) .................................................................. 14

*Schroeder v. Cnty. of San Bernardino*,
    No. 18-427, 2019 WL 3037923 (C.D. Cal. May 7, 2019) ....................... 13

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990) ............................................................. 14, 18

*Skidmore v. Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) .................................................................. 18

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:20-cv-00406-SSS-JC

iii

PLAINTIFF FRANCESCA GREGORINI'S
OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY BY DAVID ROMÁN

95149398.2

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004) ............................................................................ 7

*White v. L.A. Cnty.*,
No. CV 19-4669, 2021 WL 9204238 (C.D. Cal. Apr. 6, 2021) ......................... 6

*Wilson v. Walt Disney Co.*,
No. 14-01441, 2014 WL 4477391 (N.D. Cal. July 30, 2015) .......................... 14

*Woodall v. Walt Disney Co.*,
2024 WL 3191230 (C.D. Cal. May 22, 2024) .................................................. 12

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
235 F.3d 1184 (9th Cir. 2000) ............................................................................ 8

*Zaragoza v. Cnty. of Riverside*,
No. 5:20-cv-01381, 2024 WL 663235 (C.D. Cal. Jan. 18, 2024) ...................... 6

**Statutes**

35 U.S.C. §§ 102-103 ............................................................................... 11, 12

**Other Authorities**

Fed. R. Evid. 702 ...................................................................................*passim*

NIMMER & DAVID NIMMER, Nimmer on Copyright § 13.03 [A][1][E] ................. 13

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# INTRODUCTION

Defendants' scorched-earth effort to pre-try this case continues with *Daubert* motions against all Ms. Gregorini's expert witnesses. These motions generally do not assert that Ms. Gregorini's expert witnesses are unqualified. Rather, Defendants rehash their arguments from summary judgment, mischaracterize and distort the experts' opinions and testimony, and offer their contrary evidence to dispute the merits. None of these arguments is a basis for exclusion under Rule 702.

Defendants' motion to exclude Professor David Román is a prime example. Professor Román is a tenured professor with expertise evaluating structures and patterns across a wide range of works. This background offers unique expertise to conduct the extrinsic test on substantial similarity. And that is what he did here, just as he did in the high-profile copyright litigation over *Pirates of the Caribbean*. His expert report in this matter details his opinions about the psychological thriller genre, how Ms. Gregorini's work, *The Truth About Emanuel (Emanuel)*, diverges from the standard tropes and generic elements in that genre, and then meticulously details the expressive elements that are highly original to *Emanuel* and also found in Defendants' infringing work, *Servant*. Defendants' motion offers no basis to exclude this qualified expert testimony that will aid the jury's resolution of this case on the merits. At most, their arguments are for cross-examination and rebuttal expert testimony at trial. The Court should deny Defendants' motion.

# FACTUAL BACKGROUND

## I.    Ms. Gregorini will prove at trial that elements from *Servant* are substantially similar to original elements in *Emanuel*.

Francesca Gregorini sued Defendants for copyright infringement in 2020. Ms. Gregorini alleged that episodes 1-3 from Defendants' *Servant* television show infringe her copyright in the film *The Truth About Emanuel*. After the district court granted Defendants' motion to dismiss, the Ninth Circuit reversed, holding that dismissal was "improper" because "reasonable minds could differ on the issue of

substantial similarity." *Gregorini v. Apple Inc.*, No. 20-55664, 2022 WL 522307, at *1 (9th Cir. Feb. 22, 2022) (internal quotations omitted). The Ninth Circuit explained further that expert testimony "in particular" was useful to evaluate "the extent and qualitative importance of similar elements between the works[.]" *Id.* On remand, the parties completed expert discovery in June 2024. Dkt. 132.

## II.    Professor David Román is a tenured professor at the University of Southern California.

David Román is a Professor in the Department of English at the University of Southern California, where he teaches undergraduate and graduate courses. Dkt. 180-84 at 2 & Ex. B. His publications cover a wide range of plays, novels, and films. *Id.* He has lectured around the world and held an affiliation with the University of London's Royal Central School of Speech and Drama since 2018. *Id.* at 3. He is also a recipient of the prestigious MacArthur Fellowship. *Id.* at 2 n.2.

Professor Román holds a Ph.D. in Comparative Literature from the University of Wisconsin-Madison. *Id.* at 3. Comparative literature is an interdisciplinary practice that encompasses literary, performing, and visual arts, including film. *Id.* His training and expertise allow him to scrutinize structures and patterns across stories, like themes, plots, characters, sequence of events, tonalities, moods, and dialogue. *Id.* This expertise includes a unique ability to observe patterns across genres, including how creative elements are selected and arranged within a story. *Id.* Professor Román has applied this expertise to copyright infringement, like as an expert witness in the *Alfred v. Walt Disney Pictures* dispute over the *Pirates of the Caribbean* franchise. *Id.* at 4 & [Ex. C].

## III.    Professor Román detailed his opinions about the similarities between *Emanuel* and *Servant* and the qualitative importance of those similarities.

Professor Román completed his expert analysis for this matter last spring. Before arriving at his opinions, counsel for Ms. Gregorini instructed him on legal

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

principles, like the originality standard, and the eight factors underlying the

extrinsic test for evaluating substantial similarities across television and films. *Id.* at

4-5. Professor Román studied considerable material, like *Emanuel*, the first season

of *Servant*, and many other documents and files. Dkt. 180-84 at Ex. A. Professor

Román drafted his report and completed it on May 24, 2024.[1]

Professor Román's expert report details his analysis and opinions that

*Servant* uses protectable expressive elements from *Emanuel*. To start, Professor

Román provided background on the gothic/psychological thriller genre. Dkt. 180-

84 at 6-7. This background included standard tropes about protagonists and story

lines, along with examples like *Gaslight* and *Rosemary's Baby*. *Id.* Professor

Román then described how *Emanuel*—and in turn, *Servant*—departed from these

standard tropes and generic elements from the genre. *See generally id.* at 6-39.

After summarizing both *Emanuel* and *Servant*, Professor Román provided an

overview of similarities between the works. *Id.* at 7-10. He previewed the highly

original aspects of *Emanuel* and why they transcend generic elements or mere

scènes à faire. *Id.* at 10-12. For instance, Professor Román observed that "[s]ome of

these elements in isolation might be characterized as scènes à faire (or generic) and

therefore unprotected—a grieving mother, a young nanny, a troubled marriage, a

shared delusion—as standard tropes in a family drama or domestic tragedy." *Id.* at

12. But Professor Román continued to explain that the similarities he found across

both works are far more detailed and expressive than these general concepts. *Id.* at

12-39. Put differently, Professor Román *only* addressed similarities that he

determined were original and protectable expressions from *Emanuel*. *See id.*

Professor Román detailed those original elements across the eight factors of

the extrinsic test. *See, e.g.*, *id.* at 18-39.

---

[1] Ms. Gregorini's previous counsel retained Professor Román on short notice to provide a rebuttal report last fall. Professor Román's rebuttal report was incomplete based on the unusual circumstances at the time involving Ms. Gregorini's previous counsel's medical condition. This opposition memorandum will focus on Professor Román's complete analysis from May 2024.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF FRANCESCA GREGORINI'S
OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY BY DAVID ROMÁN

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**Plot.** Professor Román described the expressive elements in the plot for both *Emanuel* and *Servant* across five pages. At a high level, Professor Román set forth "a relationship between a distressed grieving mother and a young motherless nanny who serves as a surrogate daughter. The plot hinges on this mutual need for the other—the mother's maternal longings, which she projects onto the nanny, and the nanny's maternal yearnings, which she projects onto the mother. The reciprocity of this need plays out throughout the film and the series, and each plot features an infant-like doll, which the mother perceives as real and the nanny treats as real." *Id.* at 19. He proceeds to examine how this plot plays out through the works across various common scenes and events in both works. *Id.* at 19-24. Professor Román concludes this section with his opinion about how this plot does not follow generic or standard plots in the psychological thriller genre. *Id.* at 24.

**Characters.** Professor Román described the expressive elements across many characters in both works. *Id.* at 24-31. He started with the nanny/caretaker role. Far from relying on that description alone, Professor Román detailed the unique visual and expressive characteristics for this character. For example, the nanny/caretaker is "slightly framed, darkly long haired and fair-skinned blue-eyed white girls in their late teens that are hired by a grieving mother to take care of their infant child[,]" with a "dark or tragic past," "socially awkward," and who develops "an obsession with the mother and the doll." *Id.* at 24-25. These descriptive elements continue in more detail. *Id.* at 25-27.

Professor Román also examines the unique similarities between the mothers in both works. *Id.* at 27-28. Not just "a grieving mother," he identifies the specific traits that the mother in both works feature. For instance, the mother character is a white thirty-something well-to-do woman with resources and privilege, who lost her first baby tragically and succumbs to a delusional psychosis that leads her to believe that a life-like doll is her actual baby. *Id.* at 27. This delusion is what leads the mother to hire the nanny/caretaker for the doll. *Id.*

Professor Román continued with his descriptions about the expressive elements in the baby doll and more minor male characters. *Id.* at 28-31. He concludes with his opinion about the originality in these characters, especially the "the nanny/mother/doll characters." *Id.* at 31.

**Setting.** Professor Román described how the setting for both works is so similar in precise detail. *Id.* at 31-33. Both works "take place in affluent Victorian-styled neighborhoods" that feature "traditional multi-story homes." *Id.* The mothers' homes share particularized expressions, like the layout, the pristine manner of upkeep, and the liminal role that the foyer plays. *Id.* at 32-33. The nursery rooms are "displays of wealth and comfort and are eerily hyper-clean, nearly sterile" with "vintage cribs, rocking horses, striped walls" and other paraphernalia for a "classic set for a realistic film and not an actual place where a baby is being raised." He also describes the important detail and role in the dining room for both works. *Id.* at 33.

**Themes.** Professor Román scrutinized two key themes in both works. *Id.* at 34-35. The first is the "mother/daughter/doll triad" that breaks the mold for "standard fare of Hollywood" by focusing on the mother/daughter relationship along with sensual undertones between the mother and nanny characters—a "quite complex" theme in both works. *Id.* at 34. He also described how "delusion, especially based on trauma, that involves the complicity of denial by others" is an important theme in both works. *Id.* at 34-35.

**Mood & Tone.** Professor Román addressed the suspenseful tone in both works contrasted with the unusual supernatural elements given that the works address "motherhood and grief." *Id.* at 35. And while suspense and supernatural exist in the thriller genre, he highlights the original use of "humor, irony, and even sarcasm" found in both works. *Id.* at 36.

**Dialogue.** Professor Román noted minor similarities in dialogue. *Id.* at 36-37.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    **Pace & Sequence of Events.** Professor Román concludes with his opinion

2    about the pace and sequence of events. For example, both works follow the same

3    trajectory: "[A] mother loses a child under mysterious circumstances, a life-like

4    doll replaces the dead infant, the mother hires a nanny to care for the doll, the

5    mother and the nanny bond over this secret, the mother's delusions about the doll

6    take over the story. This is not a standard storyline, rather, it is highly original

7    concept that has no previous representational lineage." *Id.* at 37.

8        After providing his detailed analysis across the eight factors, Professor

9    Román synthesized the "selection and arrangement of core elements" found in both

10   works. *Id.* at 39-40. He also highlighted visual expressions from *Emanuel* and

11   *Servant* that illustrate the similarities he described above. *Id.* at 41-52. These

12   images were pulled from a video comparison that was produced during fact

13   discovery.

14   <center>**ARGUMENT**</center>

15   **I.    The Court should not exclude Professor Román's analysis and opinions**

16   **under the extrinsic test.**

17       The Court should deny Defendants' motion from the outset. In cases about

18   "non-scientific testimony," like Professor Román's, "reliability will depend

19   'heavily on the knowledge and experience of the expert, rather than the

20   methodology or theory behind it.' *White v. L.A. Cnty.*, No. CV 19-4669, 2021 WL

21   9204238, at *7 (C.D. Cal. Apr. 6, 2021) (quoting *Hangarter v. Provident Life &*

22   *Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)); *see also Kumho Tire Co. v.*

23   *Carmichael*, 526 U.S. 137, 150 (1999) ("In other [non-scientific] cases, the relevant

24   reliability concerns may focus upon personal knowledge or experience."); *Zaragoza*

25   *v. Cnty. of Riverside*, No. 5:20-cv-01381, 2024 WL 663235, at *2 (C.D. Cal. Jan.

26   18, 2024). Yet Defendants make no challenge to Professor Román's accomplished

27   background, credentials, and experience. The Court should deny Defendants'

28   motion for this reason alone.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Recent similar cases illustrate why Defendants' motion fails. In *Alfred v.*
2  *Walt Disney Pictures*, for instance, the court found Professor Román's analysis and
3  opinions under the extrinsic test—the same analysis he performed here—created a
4  triable issue over substantial similarity. No. 18-8074, 2021 WL 6882322, at *2-3
5  (C.D. Cal. Dec. 16, 2021) (rejecting challenges to the weight of Professor Román's
6  opinions and finding that he "opines that the parties' works are substantially similar
7  and have original elements in common"). The court reached a similar conclusion in
8  *Irish Rover v. Sims*, No. 20-06293, 2023 WL 6793218 at *2-3 (C.D. Cal. June 30,
9  2023). There, the defendant moved to exclude the plaintiff's expert on the same
10  grounds below, an alleged failure to filter unprotectable elements. *Id.* The district
11  court denied that motion because the expert's "comparison of the works includes
12  overlaps in story-telling components that are common to both works, including the
13  areas of character, plot, sequence of events, theme, setting, mood, tone, pace, and
14  dialogue[,]" and the "remaining arguments regarding [the expert's] methodology,"
15  all  "go to the weight, not admissibility, of his testimony." *Id.* at *3. This same
16  analysis and conclusion apply with equal force to Professor Román's analysis and
17  opinions here.

18    **A.    Professor Román's opinions address original/protectable elements**
19         **in *Emanuel* and *Servant*.**

20    Defendants' argument that Professor Román did not filter unprotectable
21  elements has no merit. The "touchstone" for copyright protection is originality.
22  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346-47 (1991). Originality
23  is a low standard: "[T]he requisite level of creativity is extremely low; even a slight
24  amount will suffice." *Id.* at 345. This standard controls any dispute over
25  protectability in a copyrighted work. Indeed, courts use "original" and "protected"
26  interchangeably. *See, e.g.*, *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004).
27  And disputes over originality (and thus protectability) are classic fact disputes for
28  juries to resolve at trial. *See, e.g.*, *Divine Dharma Meditation Int'l Inc. v. Inst. of*

*Latent Energy Stud.*, No. 16-226, 2016 WL 7486286, at *5 (C.D. Cal. May 25, 2016) (explaining "question of originality in copyright law 'is one of fact, not law'" (quoting *Dezendorf v. Twentieth Century-Fox Film Corp.*, 99 F.2d 850, 851 (9th Cir. 1938))). *Daubert* is not a proper channel to weigh evidence or resolve fact disputes. *See, e.g.*, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1192 (9th Cir. 2000).

Professor Román will testify about original (and thus protectable) elements in *Emanuel* that are substantially similar to elements in *Servant*. While not a lawyer himself, counsel instructed him on the law about originality and explained that "[c]opyright law does not protect generic elements, or scénes a faire (meaning elements that are indispensable to an idea or expressions that flow necessarily from a basic plot premise)." Dkt. 180-84 at 4. Professor Román then analyzed *Emanuel* and *Servant* to determine whether any protectable elements from *Emanuel* were substantially similar to elements in *Servant* "between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in both works." *Id.* at 4-5. Put simply, he evaluated both works under the extrinsic test and meticulously detailed his opinion over protectable elements in both works. *See id.* at 18-39.

Defendants' contention that Professor Román did not filter unprotectable elements from his analysis is false. Dkt. 196 at 4. Unlike the case law relied on by Defendants (Dkt. 196 at 4), Professor Román's report explains that he did. For instance, he identifies examples of unprotected elements, like "a grieving mother, a young nanny, a troubled marriage, a shared delusion—as standard tropes in a family drama or domestic tragedy." Dkt. 180-84 at 12. But he does not rely on those generalities as the basis for his opinion. Rather, he meticulously detailed extensive expressive characteristics that transform those general tropes into original and protectable elements. Here are several examples.

//

//

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:20-cv-00406-SSS-JC                    8                    PLAINTIFF FRANCESCA GREGORINI'S
OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY BY DAVID ROMÁN

95149398.2

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**Grieving mother**. Professor Román's opinion about the grieving mothers goes beyond identifying their existence as a trope and describes expressive details that are similar:

> To begin with, Linda and Dorothy are white thirty-something well-to-do women with financial resources and assumed privilege. They are both first-time mothers who lost their babies tragically under mysterious circumstances. Their grief is all encompassing and leads them into a delusional psychosis where they believe that a "reborn doll" is their actual baby. Both mothers are loving and attentive mothers to their "babies," showering the doll with affection and care. Also, the mothers in both the film and the series are so lost in their delusional belief that the doll is their actual child that they hire a nanny to help them care for it. The mothers are sensitive and seemingly functional. Dkt. 180-84 at 27.

**Nanny/caretaker**. Professor Román's opinion on the similarities of the nannies goes beyond the element of the nannies alone: that they "are slightly framed, darkly long haired and fair-skinned blue-eyed white girls in their late teens that are hired by a grieving mother to take care of their infant child." Dkt. 180-84 at 25. For example, both nannies are strikingly pretty in a way that gathers comment; both nannies have a dark or tragic past that informs their relationships with other characters; both nannies are withholding and enigmatic, often moody and distant. *Id.*

**Relationship between grieving mother and nanny/caretaker.** Professor Román also opines on the unique relationships between the nannies and the mothers. Both nannies serve first-time mothers in their late thirties who have lost an infant child and who now use an infant life-like doll as a replacement coping mechanism that they delusionally believe to be their living baby. *Id.* at 25. Both nannies support the delusion of the mothers and perform increasingly elaborate and superfluous ways of making the babies appear real as the plot progresses. *Id.* The nanny in each work bonds with the mother and maintains her delusion that the doll is real. *Id.* For instance, both the film and series feature Emanuel/Leanne dressing and speaking to the doll on the changing table in a strikingly similar scene. *Id.* at

26. And in turn, both mothers "are highly engaged in the raising of their child, even if it's in fact a doll, and they are equally involved in caring for the nanny." *Id.* at 28.

These examples are just that. Professor Román's report describes the full basis for his opinion on protectable elements in each factor under the extrinsic test. This extensive detail reveals Defendants' shameless mischaracterizations and misleading excerpts about his opinions in their brief. His deposition testimony likewise refutes Defendants' contention that "Román made no attempt to filter out unprotectable elements from his analysis." Dkt. 196 at 5. Yet he testified the exact opposite: "Q. Did you analyze whether the elements of "Emanuel" that you believed are similar to "Servant" were generic or not? A. Yeah." Dep. Tr. at 190:20-23. Professor Román proceeded to give detailed explanations in his answers on this subject too, like why the specific expressions in the grieving mother or the birthday scene are not generic here. Dep. Tr. at 194:10-195:21, 210:8-212:8. At core, Defendants argument rests on misstatements about, and disagreements with, Professor Román's analysis and opinions—neither of which is proper for this Court to resolve under Rule 702.

Defendants' arguments about "facts" fare no better. While a historical fact by itself may not be protected, the expression of facts—particularly in a fictional work—clearly is. *Cf. Narell v. Freeman*, 872 F.2d 907, 910-11 (9th Cir. 1989); *Fodor v. Los Angeles Unified Sch. Dist.*, No. 12-8090, 2014 WL 12235424, at *10-12 (C.D. Cal. June 3, 2014). That someone in real life may have cared for a therapy doll does not remove fictional works that give expressive detail to that concept. If Defendants were right, then Rocky would receive no copyright protection because boxing exists as a fact; James Bond would not be copyrighted because spies exist as a factual matter; and no Disney princess would receive protection because royalty exists as a matter of fact. Yet they all receive copyright protection because they are original expressions of fictional works.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

The same is true with *Emanuel*. Professor Román does not limit his opinion that the works are similar because they both include "use of reborn dolls by grieving mothers" as therapy. Rather, he explains that both works use the reborn doll to express the mother's delusion. The mothers' use of the "reborn doll" was "a delusional psychosis where they believe that a 'reborn doll' is their actual baby." Dkt. 180-84 at 27 (emphasis added). Professor Román also described that Sean explains "why they allow Dorothy to imagine the 'reborn doll' as her actual dead child." Dkt. 180-84 at 10. He also will testify about how important it is that Emanuel/Leanne keep up the pretense that the doll is real both in the presence of the mothers and while the mother is absent. Dkt. 180-84 at 42. And he found that the supernatural elements made the works "more complex and mysterious than anticipated in a more realistic representational context—for example, in a drama that explored the use of a reborn doll as therapy." Dkt. 180-84 at 11.

Finally, Defendants' contentions about Sarah Thorp also present no issue under Rule 702. As explained in opposition to summary judgment, Ms. Thorp provided no protected expression to Ms. Gregorini. *See* Dkt. 192-2 at ¶¶ 355-58. Their oral conversation lasted less than five minutes and Ms. Thorp agrees that 100% of the copyright in *Emanuel* belongs to Ms. Gregorini. *Id.* At most, Defendants argument would go to weight or cross-examination. But even then, Professor Román's opinion on the expressive similarities between *Emanuel* and *Servant* far surpasses any undeveloped idea that Ms. Thorp quipped about to Ms. Gregorini.

### B.    Defendants' "prior art" argument has no basis in copyright law.

Copyrighted expression does not turn on prior art. Prior art is relevant to patent law. An inventor, for instance, may only obtain a patent if her invention is novel and non-obvious over the prior art. 35 U.S.C. §§ 102-103. But in copyright law, the Supreme Court has held that "novelty is not required" under the originality

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

standard. *Feist Publ'ns, Inc.*, 499 U.S. at 358; *see also* 35 U.S.C. § 102. Courts have often rejected arguments about prior art as a result:

- *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1261, n.3 (9th Cir. 2021): The Ninth Circuit rejected the defendant's "prior art" argument because "[t]he 'similarity' of one design to another has no bearing on whether [the copyright owner] 'independently created' the subject design." *Id.* at 1260.

- *Lester v. U2 Ltd.*, No. 706612, 2009 WL 10673938, at *3 (C.D. Cal. Apr. 10, 2009): The court rejected the infringer's "prior art" argument because "the existence of prior art that is substantially similar to a copyrighted work does not defeat copyright protection" and that "the search for prior art that frequently goes into challenging a patent plays no role in copyright cases."

- *Infodek, Inc. v. Meredith-Webb Printing Co.*, 830 F. Supp. 614, 622–23 (N.D. Ga. 1993): The court rejected the infringer's "prior art" arguments because the novelty standard in patent law is different from the originality requirement in copyright law.

- *Irish Rover*, No. 20-06293, 2023 WL 6793218: The court denied a motion to exclude an expert's testimony based on the argument that the expert "failed to filter out unprotectable elements by failing to consider an [sic] 'prior art.'"

Defendants offer no relevant case law to the contrary. The only case Defendants rely on for this argument is *Woodall v. Walt Disney Co.*, which just notes that prior works may be "helpful" to address stock scenes and scénés a faire. 2024 WL 3191230, at *2 (C.D. Cal. May 22, 2024). Far from any basis to exclude Professor Román, the court also reasoned that the expert "did **not** use a 'prior art' methodology," and thus *denied* a motion to exclude that expert. *Id.* (emphasis added). *Woodall* offers no support to Defendants' argument here, and in fact, suggests that Defendants' proposed prior art methodology would be improper.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Defendants' attacks on Professor Román's background in film has no merit. To start, Defendants make no argument that he is unqualified to give his opinions under Rule 702. *See generally* Dkt 196 (arguing about methodology, not qualifications). Any such challenge to Professor Román's qualifications would fail too, as his interdisciplinary education, experience, and practice provides a prime background to objectively evaluate "structures and patterns in stories" across "the full range of literary, performing, and visual arts, including film." Dkt. 184-80 at 3. Even then, courts do not require specialists in a field if that expert is in the right profession. *See, e.g.*, *Schroeder v. Cnty. of San Bernardino*, No. 18-427, 2019 WL 3037923, at *3 (C.D. Cal. May 7, 2019) (citing *Doe v. Cutter Biological, Inc., a Div. of Miles Labs., Inc.*, 971 F.2d 375, 385 (9th Cir. 1992)). Cross-examination and contrary evidence are all that Defendants' argument warrants.

## C.    The Court should not exclude Professor Román over Defendants' perceived dissimilarities.

Defendants' argument about "dissimilarities" has no merit. "[A] copyright defendant need not copy a plaintiff's work in its entirety to infringe the work. It is enough that the defendant appropriated *a substantial portion* of the plaintiff's work." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012) (emphasis added). Indeed, the court has embraced Judge Hand's famous maxim that "it is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Id.* (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)). For this reason, courts have found infringement on only a six-note sequence in an entire song, or just 20-percent of an entire film. *See, e.g.*, *Baxter v. MCA, Inc.,* 812 F.2d 421, 425 (9th Cir. 1987); Nimmer on Copyright § 13.03 [A][1][E] (citing *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354 (9th Cir. 1947)). "Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." *Id.* at 425.

1    And Professor Román opined about the qualitative importance of the similarities in

2    comparison to the standard tropes and elements in the psychological thriller genre.

3    *See, e.g.*, Dkt. 180-84 at 6-7, 18-39. At most, such arguments are for the jury to

4    weigh. *See, e.g.*, *Wilson v. Walt Disney Co.*, No. 14-01441, 2014 WL 4477391, at

5    *1 (N.D. Cal. July 30, 2015) ("Although Disney is correct that differences exist

6    between the works (particularly with respect to pace and mood), their plot and

7    sequence of events have too much in common for a court to conclude that 'no

8    reasonable juror could find substantial similarity of ideas and expression.'" ). The

9    Ninth Circuit held the same in *Shaw v. Lindheim*, 919 F.2d 1353, 1358 (9th Cir.

10   1990) (reversing summary judgment "[d]espite these dissimilarities").

11   Defendants' isolated case law does not support exclusion either. Dkt. 196 at

12   10. *Olson v. National Broadcast Co.* did not involve the admissibility of expert

13   testimony. 855 F.2d 1446, 1450 (9th Cir. 1988). Rather, the court observed that the

14   expert opinion in that matter was entitled to little weight. *Id.* This holding confirms

15   that this Court could not rely on this reasoning here because courts do not weigh

16   evidence under Rule 702. *See, e.g.*, *Guangzhou Yucheng Trading Co. v. Dbest*

17   *Prod., Inc.*, 644 F. Supp. 3d 637, 658 (C.D. Cal. 2022) (citing *Alaska Rent-A-Car,*

18   *Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 968-70 (9th Cir. 2013)). Nor was that

19   decision factually analogous, as it involved a random list of similarities between a

20   screenplay and 27 episodes of the A-Team. Professor Román, in contrast, identified

21   concrete similarities from the 90-minute *Emanuel* film throughout the 90 minutes

22   of *Servant* episodes 1-3.

23   The district court's decision on a preliminary injunction in *Batts v. Adams*

24   also did not address the admissibility of expert testimony. 2011 WL 13217923 at

25   *5-6 (C.D. Cal. Feb. 8, 2011). Again, the court weighed the expert's testimony, and

26   determined that the plaintiff was unlikely to prevail on access or substantial

27   similarity. *Id.* This decision on a preliminary injunction record in a music case has

28   no relevance to Professor Román's analysis here.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Defendants mischaracterize Professor Román's opinions here too. Professor Román does not ignore dissimilarities between the works. To start, Professor Román summarized and provided an objective background for both works. Dkt. 180-84 at 7-10. He also acknowledged differences while still explaining why the underlying expressive similarities still mattered. *See, e.g.*, Dkt. 180-84 at 9-10 (addressing importance of visual expressions of dolls turning into babies, while acknowledging the revelation in *Servant* that the doll is now a real baby); at 32 (noting that the nanny in *Servant* lives with the mother while the nanny in Emanuel lives nearby); and 38 (addressing water versus wood supernatural elements), among others. Once again, Defendants' criticisms are best for cross-examination, not exclusion.

## D. Defendants' argument about alleged inaccuracies presents no issue under Rule 702.

Defendants fail to cite a single case to support its argument that this Court may weigh the accuracy (or inaccuracy) of Professor Román's opinions. The reason for this omission is that the law does not allow it. Rule 702 focuses on "the principles and methodology underlying an expert's testimony, not on the conclusions." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998). Courts do "not weigh conflicting expert testimony or attempt to determine whether the conclusions are correct." *Irish Rover*, 2023 WL 6793218, at *1 (citing *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1192 (9th Cir. 2000)). Defendants' entire argument violates this cardinal rule under *Daubert*.

Defendants' contentions also have no merit. For example, Defendants claim Leanne and Emanuel treat the dolls differently when the mother is away—without addressing that Emanuel talks to the doll as if it were real while dressing her. Dkt. 180-84 at 42. And Leanne does indicate she is aware the doll is not a real baby when she asks Julian about Jericho in episode 3: "Were you here when it happened? Did they call you for help? Did you see something?" Dkt. 180-46 at 22:57-23:19.

Defendants split hairs over their perceived difference between the word "nanny" and "babysitter," when those words are synonymous. *See, e.g.*, https://www.thesaurus.com/browse/nanny. (Even then, Professor Román called this role a "nanny/caretaker." *See* Dkt. 180-84 at 11, 40). This and other examples also misstate and misunderstand the analysis. The issue for the jury is whether elements are substantially similar, not identical. *L.A. Printex Indus., Inc.*, 676 F.3d at 851. That both works feature life-like dolls later visually expressed in human form is the point. Defendants' arguments are both incorrect and incorrectly weigh the merits. They challenge weight, not admissibility, and Defendants' remedy for these alleged shortcomings is to cross-examine Professor Román before a jury. *Guangzhou Yucheng Trading Co*, 644 F. Supp. 3d at 658 (citations omitted).

### E.    Defendants again misstate the record about Professor Román's opinion about striking similarity.

Defendants' argument that Professor Román did not write the Striking Similarities section of his Report distorts the record. Other than the legal principles section (provided by counsel) and Exhibit A, he prepared the first draft of his report. Román Tr. 121:16-23. When Professor Román prepared the Striking Similarity section, he identified several cinematic similarities and then a musical similarity: the use of European pop music and opera with female singers. Dkt. 180-84 at 52. (Professor Román later second-guessed his inclusion of this musical similarity in the Striking Similarities section because it was the only non-visual element, and explained he would have put the music in "its own section." David Román Dep. Tr. 170:18-172:7.) Professor Román also considered a compilation video that third-party Anthony Langdon created and produced in fact discovery. David Román Tr. 126:7-12; 120:5-12. That compilation video featured many side-by-side visual comparisons of the two works. Dkts. 194-6; 194-7 (Arenz Decl. Exs. 102-121). Counsel formatted select images into his report that overlapped with his substantial similarity narrative. Román Tr. 120:13-25. 121:16-23, 124:6-17.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Defendants' reliance on *Accentra Inc. v. Staples Inc.* does not support their argument. Professor Román satisfied the rule that the expert must "substantially participate in the preparation of his report." No. 07-5862, 2010 WL 11459205, at *4 (C.D. Cal. Oct. 7, 2010). *Accentra* itself confirms no issue when counsel (1) provided "teamwork," "collaboration," or editorial assistance on the report, (2) composed initial drafts of reports based on communications with the experts, or (3) drafted the report with the expert's substantive assistance. *Id.* (collecting cases). *Accentra* itself approved an expert report which counsel drafted an initial outline for and then met with the expert over "three [or] for hours and together drafted [the] five-page report." *Id.* at *3. Professor Román's involvement well exceeds what *Accentra* and other courts find permissible.

## II.    Defendants' disagreement with Professor Román's selection-and-arrangement analysis is no reason to exclude it.

Defendants offer no *Daubert*-based argument to exclude Professor Román's opinion about the original selection-and-arrangement analysis he performed. Rather, they just rehash their summary judgment argument over their disagreement with the merits of it. *Cf.* Dkt. 180 at 26. Neither the procedure nor the substance of their argument offers any reason for the Court to exclude this opinion.

The seminal case over original selection-and-arrangement of elements in a television show is *Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002). There, the Ninth Circuit observed that the setting was "set in overburdened county hospitals in inner-city Los Angeles with mostly black staffs" and "deal[t] with issues of poverty, race relationships and urban blight." *Id.* at 1073. The main character is a "young, good-looking, muscular" surgeon who grew up in the hospital's neighborhood, and struggles "to choose between the financial benefits of private practice and the emotional rewards of working in the inner city." *Id.* This character also develops a strong attraction to a hospital administrator who is in her thirties, divorced, and devoted to the hospital. *Id.* As to plot, the court recounted that "the

hospital's bid for reaccreditation is vehemently opposed by a Hispanic politician." *Id.* at 1074. To be clear, whether any of these elements above was individually protectible was irrelevant. The Ninth Circuit explained in *Metcalf*, "One cannot copyright the idea of an idealistic young professional choosing between financial and emotional reward, or of love triangles among young professionals that eventually become strained, or of political forces interfering with private action." 294 F.3d at 1074. But the combination of even generic elements in the television show across the eight factors from the extrinsic test "can itself be a protectible element." *Id.*; *see also Shaw*, 919 F.2d at 1363 ("Even if none of these plot elements is remarkably unusual in and of itself, the fact that both scripts contain all of these similar events gives rise to a triable question of substantial similarity of protected expression.").

Professor Román described a combination of elements far more detailed than what the Ninth Circuit found sufficient in *Metcalf*. Defendants neither address *Metcalf* nor explain why Professor Román's more detailed combination of similarities is somehow entitled to less protection. And the subject matter in *Metcalf* refutes Defendants' argument that elements in a television show or film, like elements from the eight-factor extrinsic test including theme and tone, could not support a selection-and-arrangement opinion. To the contrary, one of Defendants' two cases they rely on explains that selection-and-arrangement "addresses whether a protected expression, as a whole, was unlawfully copied." *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942 (9th Cir. 2023). This inquiry would be frustrated if, as Defendants contend, expressive elements over theme or tone must be excluded because they cannot be "arranged."

Defendants offer no credible support for their argument either. Dkt. 180 at 18. The only case they rely on in any substance is *Skidmore v. Zeppelin*, 952 F.3d 1051, 1072 (9th Cir. 2020). But *Skidmore*, a music case about a four-bar passage in

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

a song, bears no resemblance to this television/film dispute. Nor did the plaintiff even present any selection-and-arrangement argument to the jury.

### III.  Defendants' arguments about causal nexus warrant no relief.

Copyright owners may recover both direct profits from the infringement and indirect profits that have a causal nexus to the infringement. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1554 (9th Cir. 1989). A causal nexus exists when "the infringement at least partially caused the profits that the infringer generated as a result of the infringement." *Mackie v. Reiser*, 296 F.3d 909, 911 (9th Cir. 2002). In *Alfred v. Walt Disney Pictures.*, the court found "that the sequels are an extension of and borrow elements from the original (infringing] movie" and thus allowed the plaintiffs to proceed on indirect profits. *Alfred v. Walt Disney Pictures*, No. 18-8074, Dkt. 243 at 5 (C.D. Cal. May 13, 2022); Dkt. 158-25 at 7. The district court in *Burns v. Imagine Films Entm't, Inc.*, reached the same conclusion when the plaintiff alleged that the *Backdraft* film infringed his copyright and sought indirect profits on a non-infringing theme park ride. 164 F.R.D. 589, 592 (W.D.N.Y. 1996). The court recognized that the theme park "attraction would not exist *but for* the success of the motion picture *Backdraft*." *Id.* (emphasis added). Ms. Gregorini seeks direct profits for episodes 1-3 and indirect profits from follow-on episodes.

Defendants move to exclude opinions that Professor Román never provided. And they ignore that "[e]xperts need not have an opinion on the ultimate question to be resolved by the trier of fact in order to satisfy FRE 702. . . . Stated another way, the testimony needs to simply be a piece of the puzzle that Plaintiff attempts to assemble before the jury." *Michaleczko v. C. R. Bard, Inc.*, No. 19-07736, 2021 WL 4732920, at *3 (C.D. Cal. Mar. 31, 2021). Here, Professor Román will provide helpful testimony about how Defendants continued the story arc and characters from episodes 1-3 over the course of episodes 4-10. Dkt. 180-84 at 13-18. The testimony will aid the jury's determination over causal nexus for the reasons discussed in *Alfred* and *Burns*.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## CONCLUSION

2    Defendants' attacks on Professor Román present no basis to exclude his

3 testimony. To the contrary, they confirm the need for the jury to hear competing

4 evidence and decide this case on the merits after a full trial. The Court should deny

5 Defendants' motion.

6

7    Dated: August 2, 2024                ROBINS KAPLAN LLP

8

9                                         By: */s/ Patrick M. Arenz*
                                              Patrick M. Arenz

10

11                                        Attorneys for Plaintiff
                                          Francesca Gregorini

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:20-cv-00406-SSS-JC                20                PLAINTIFF FRANCESCA GREGORINI'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY BY DAVID ROMÁN

95149398.2

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**ROBINS KAPLAN LLP**
Michael A. Geibelson (SBN 179970)
MGeibelson@RobinsKaplan.com
Patrick M. Arenz *(Pro hac vice)*
PArenz@RobinsKaplan.com
Emily E. Niles *(Pro hac vice)*
ENiles@RobinsKaplan.com
Annie Huang *(Pro hac vice)*
AHuang@RobinsKaplan.com
Prateek N. Viswanathan *(Pro hac vice)*
PViswanathan@RobinsKaplan.com

2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
Telephone:   310 552 0130
Facsimile:    310 229 5800

*Attorneys for Plaintiff Francesca Gregorini*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Francesca Gregorini, | Case No. 2:20-cv-00406-SSS-JC |
| Plaintiff, | *Hon. Sunshine S. Sykes* |
| v. | **L.R. 11-6.1 CERTIFICATE OF COMPLIANCE** |
| APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual; BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive, | Date:        August 23, 2024<br>Time:       2:00 p.m.<br>Dept.:       Courtroom 2 |
| Defendants. | |

1       The undersigned, counsel of record for Plaintiff Francesca Gregorini,

2 certifies that this brief contains 6,316 words, which complies with the word limit

3 of L.R. 11-6.1.

4

5 Dated: August 2, 2024                      ROBINS KAPLAN LLP

6

7                                  By: */s/ Patrick M. Arenz*
                                      Patrick M. Arenz

8                                Attorneys for Plaintiff
9                                Francesca Gregorini

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28