NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
  meenakshikrishnan@dwt.com
CARL MAZUREK (*pro hac vice* pending)
  carlmazurek@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel.:  (213) 633-6800; Fax:  (213) 633-6899

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA GREGORINI,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-00406-SSS-JC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>**[REDACTED VERSION OF DOCUMENT FILED PURSUANT TO ORDER OF COURT DATED AUGUST 15, 2024]**<br><br>Date:      August 30, 2024<br>Time:      2:00 p.m.<br>Dept.:     Courtroom 2 |

**PLEASE TAKE NOTICE** that on August 30, 2024, at 2:00 p.m. or as soon as may be heard in Courtroom 2 of the United States District Court for the Central District of California, 3470 Twelfth Street, Riverside, California 92501, defendants Blinding Edge Pictures, Inc., Uncle George Productions, LLC, Apple Inc., Escape Artists, Inc. (erroneously sued as Escape Artists LLC), Dolphin Black Productions, M. Night Shyamalan, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch (collectively, "Defendants") will and hereby move for an order pursuant to Federal Rule of Civil Procedure 56: (1) granting summary judgment in favor of Defendants on Plaintiff's First Amended Complaint; or, in the alternative, (2) granting summary judgment to Defendants on the grounds that Plaintiff is not entitled to indirect profits. This Motion is made on the grounds that there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law for the reasons stated below.

1.    Defendants are entitled to judgment as a matter of law on Plaintiff's claims for direct copyright infringement (Claims 1-3) because (1) Plaintiff's copyright registration in *The Truth About Emanuel* is invalid, and she therefore may not bring a claim for infringement of that work; (2) Plaintiff has not established Defendants had access to her work; (3) Defendants' allegedly infringing work— Episodes 1-3 of the series *Servant*—is not substantially similar to *The Truth About Emanuel*; and (4) Defendants independently created *Servant*.

2.    Defendants are entitled to judgment as a matter of law on Plaintiff's claim for vicarious and contributory copyright infringement (Claim 4) because (a) Defendants are entitled to judgment on Plaintiff's direct infringement claims, necessitating judgment on her secondary infringement claims as well; and (b) Plaintiff has not established the elements of those claims.

3.    Defendants are entitled to judgment as a matter of law that Plaintiff is not entitled to Defendants' profits from Episodes 4-40 of *Servant* and from Apple

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

TV+ because she cannot establish a causal nexus between those profits and defendants' alleged infringement.

This motion is based on this notice of motion, the attached memorandum of law, the concurrently lodged separate statement of uncontroverted facts and conclusions of law, the concurrently filed declarations of Tony Basgallop, M. Night Shyamalan, Ashwin Rajan, Namaan Marshall, Taylor Latham, Jason Blumenthal, Matt Cherniss, Laura Ross, Liz Lewin, Jessica Sykes, Richard Gold, Brad Winters, and Cydney Swofford Freeman, along with exhibits thereto, any matters of which this Court may take judicial notice, all pleadings, files, and records in this action, and any such other argument as may be presented to the Court at the time of the hearing on this motion.

This Motion is made following the Local Rule 7-3 conference of counsel, which took place on July 10, 2024. *See* Declaration of Cydney Swofford Freeman. ("Freeman Decl.") ¶ 3.

DATED: July 12, 2024

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
CARL MAZUREK

By:   /s/ Cydney Swofford Freeman
        Cydney Swofford Freeman

Attorneys for Defendants

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................... 1

II.  STATEMENT OF FACTS ................................................................. 3

     A.   The Works at Issue ................................................................. 3

          1.   *The Truth About Emanuel* .......................................... 3

          2.   *Servant* ....................................................................... 4

     B.   Tony Basgallop Begins Work on *Servant* a Decade Prior to *Emanuel* ................................................................................ 5

     C.   *Servant*'s Development and Production ................................. 6

     D.   Discovery Reveals *Emanuel* Is Based on a Story Owned by Third-Party Sarah Thorp ....................................................... 6

     E.   Plaintiff Conceals and Misrepresents Origin and Ownership of *Emanuel* ............................................................................ 7

     F.   *Emanuel*'s Limited Release and Plaintiff's Access Allegations .......... 8

     G.   This Lawsuit ........................................................................... 8

III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ............. 9

     A.   Plaintiff's Copyright Registration Is Invalid ..................... 10

     B.   Plaintiff Failed to Establish Access as a Matter of Law ..... 10

          1.   Plaintiff Failed to Show Widespread Dissemination ............... 11

          2.   Plaintiff Failed to Show Direct Access ...................... 12

     C.   *Servant* and *Emanuel* Are Not Substantially Similar ........ 13

          1.   The Works' Protected Expression Is Not Substantially Similar ............................................................................ 14

               a.   Plot, Sequence of Events, and Pace ................. 15

               b.   Characters ........................................................ 16

               c.   Setting ............................................................. 17

               d.   Theme, Tone, and Mood .................................. 17

               e.   Dialogue .......................................................... 18

          2.   Selection and Arrangement ........................................ 18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

A. *Servant* Was Independently Created ................................................. 19

B. Defendants Are Entitled to Summary Judgment on Plaintiff's Claims Based on Scripts of *Servant* ................................................. 21

C. Defendants Are Entitled to Summary Judgment on Plaintiff's Secondary Liability Claims ................................................................. 21

IV.    PLAINTIFF IS NOT ENTITLED TO INDIRECT PROFITS ..................... 22

V.    CONCLUSION ............................................................................................ 23

ii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records v. Napster*,
   239 F.3d 1004 (9th Cir. 2001) .................................................. 21

*Apple v. Microsoft*,
   35 F.3d 1435 (9th Cir. 1994) ................................................... 14

*Batts v. Adams*,
   2011 WL 13217923 (C.D. Cal. Feb. 8, 2011) ................................. 11

*Benay v. Warner Bros.*,
   2008 WL 11336277 (C.D. Cal. Mar. 14, 2008), *aff'd*, 607 F.3d 620 (9th
   Cir. 2010) ......................................................................... 13

*Benay v. Warner Bros.*,
   607 F.3d 620 (9th Cir. 2010) ............................................. 13, 14

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ........................................... 13, 14

*Bernal v. Paradigm Talent & Literary Agency*,
   788 F. Supp. 2d 1043 (C.D. Cal. 2010) ....................................... 11

*Bethea v. Burnett*,
   2005 WL 1720631 (C.D. Cal. June 28, 2005) ................................. 21

*Cavalier v. Random House*,
   297 F.3d 815 (9th Cir. 2002) ................................................... 14

*Clonus Assocs. v. Dreamworks*,
   417 F. Supp. 2d 248 (S.D.N.Y. 2005) ......................................... 11

*Cooley v. Target*,
   2022 WL 4540091 (D. Minn. Sept. 28, 2022).................................. 12

*Cope v. Warner Records*,
   2023 WL 11827959 (C.D. Cal. June 5, 2023) (Sykes, J.) ..................... 11

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Counts v. Meriwether*,
  2015 WL 9594469 (C.D. Cal. Dec. 30, 2015) ........................................ 13

*Experian Info. Sols. v. Nationwide Mktg.*,
  893 F. 3d 1176 (9th Cir. 2018) .......................................................... 14

*Express v. Forever 21*,
  2010 WL 3489308 (C.D. Cal. Sept. 2, 2010) .................................... 10

*Funky Films v. Time Warner Ent.*,
  462 F.3d 1072 (9th Cir. 2006) .......................................................... 13

*Gable v. Nat'l Broad.*,
  727 F. Supp. 2d 815 (C.D. Cal. 2010), *aff'd*, 438 F. App'x 587 (9th Cir.
  2011) .................................................................................................. 13

*Gold Glove Prods. v. Handfield*,
  2014 WL 11870220 (C.D. Cal. Feb. 24, 2014), *aff'd*, 648 F. App'x 679
  (9th Cir. 2016) .................................................................................. 13

*Gregorini v. Apple*,
  2020 WL 6128067 (C.D. Cal. May 28, 2020) ...................................... 2

*Gregorini v. Apple*,
  2022 WL 522307 (9th Cir. Feb. 22, 2022) ...................................... 2, 9

*Hendricks v. DreamWorks*,
  2007 WL 9705916 (C.D. Cal. Nov. 20, 2007) .................................. 22

*Idema v. Dreamworks*,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) .......................................... 14

*Jones v. Twentieth Century Studios*,
  2023 WL 9051282 (C.D. Cal. Nov. 28, 2023) ..................... 13, 14, 19

*Lois v. Levin*,
  2022 WL 4351968 (C.D. Cal. Sept. 16, 2022) .................................. 11

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016) ...................................................... 10, 11

*Luvdarts v. AT & T Mobility*,
  710 F.3d 1068 (9th Cir. 2013) .......................................................... 21

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Perfect 10, v. Giganews*,
847 F.3d 657 (9th Cir. 2017) ............................................................... 21

*Polar Bear Prods. v. Timex*,
384 F.3d 700 (9th Cir. Oct. 25, 2004)............................................. 22, 23

*Rentmeester v. Nike*,
883 F.3d 1111 (9th Cir. 2018) ...............................................................9

*Rice v. Fox Broad.*,
330 F.3d 1170 ....................................................................................... 11

*Silas v. Home Box Office*,
201 F. Supp. 3d 1158 (C.D. Cal. 2016) ............................................... 18

*Silberstein v. Fox Ent.*,
424 F. Supp. 2d 616 (S.D.N.Y. 2004), *aff'd sub nom. Silberstein v. John
Does 1-10*, 242 F. App'x 720 (2d Cir. 2007)...................................... 20

*Skidmore v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) .................................................. 9, 10, 18

*Smith v. Weeknd*,
2019 WL 6998666 (C.D. Cal. Aug. 23, 2019)...................................... 21

*Stabile v. Paul Smith*,
137 F. Supp. 3d 1173 (C.D. Cal. 2015) ................................................ 21

*Unicolors v. H&M Hennes & Mauritz*,
52 F.4th 1054 (9th Cir. 2022) ............................................................... 10

*Walker v. Viacom*,
2008 WL 2050964 (N.D. Cal. May 13, 2008), *aff'd*, 362 F. App'x 858
(9th Cir. 2010)...................................................................................... 21

*Yonay v. Paramount Pictures*,
2024 WL 2107721 (C.D. Cal. Apr. 5, 2024) ....................................... 13

**Statutes**

17 U.S.C.
§ 409................................................................................................. 10
§ 411................................................................................................. 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Years of extensive discovery confirmed what the Court previously found: the first three episodes of Defendants' series *Servant* do not infringe Plaintiff Francesca Gregorini's film *The Truth About Emanuel* ("*Emanuel*").  In fact, the undisputed evidence establishes the opposite, that *Servant* was independently created over decades, and, in a surprising twist, the only copying that took place was by *Plaintiff*. She misappropriated a story conceived of and owned by her close friend to write *Emanuel*, and misrepresented the origin of her film to the public, the press, the Copyright Office, and even this Court.  Plaintiff's unfounded accusations cannot create a genuine issue of material fact in light of the undisputed evidence, and Defendants are entitled to summary judgment on multiple independent grounds.

*First*, third-party discovery uncovered that Plaintiff's now-former friend, Sarah Thorp, pitched Plaintiff a story that Thorp was working on—about a mother who loses a child and creates a delusion in which she believes the child is still alive—in the hopes that Plaintiff would consider directing the project.  Instead, Plaintiff secretly turned that story into *Emanuel* before revealing the truth to Thorp and signing an agreement confirming Thorp retained 100% of any copyright in that story.  Despite Plaintiff's acknowledgement that *Emanuel* was based on Thorp's story, Plaintiff repeatedly misrepresented that she alone conceived of the film, including to the Copyright Office, rendering her copyright registration invalid.

*Second*, there is no evidence supporting Plaintiff's allegations that Defendants had access to *Emanuel*.  Her film was not widely disseminated—in theaters, her film grossed only about $4,000, and the only concrete evidence Plaintiff could muster regarding dissemination elsewhere was approximately ███ purchases or rentals on the iTunes service.  Her scattershot theories of direct access fare no better, lacking any evidence supporting a finding of access by anyone who created the allegedly similar elements.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Third*, discovery confirmed the Court's prior finding that "the alleged similarities between the works pale in comparison to the differences in the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Gregorini v. Apple*, 2020 WL 6128067, at *12 (C.D. Cal. May 28, 2020) ("*Gregorini I*"). While the Ninth Circuit reversed on the grounds that Plaintiff should have an opportunity to conduct discovery on substantial similarity, *Gregorini v. Apple*, 2022 WL 522307, at *1 (9th Cir. Feb. 22, 2022) ("*Gregorini II*"), the evidence now shows that most of the alleged similarities between Episodes 1-3 of *Servant*—i.e., the allegedly infringing episodes of the series—and *Emanuel* are unprotectable because they (a) flow from the story owned by Thorp, (b) constitute unprotectable facts, and/or (c) predate *Emanuel*. Such elements are thus not considered in assessing substantial similarity. Plaintiff also failed to introduce any reliable expert testimony regarding substantial similarity: her expert misapplied the extrinsic test, mistakenly believed facts were copyrightable, and failed to conduct any assessment of prior art, including Thorp's story—of which he was not informed. Proper application of the extrinsic test reaffirms that the works are not substantially similar as a matter of law.

*Fourth*, *Servant* was independently created by Tony Basgallop, who developed the concept almost a decade before *Emanuel*. His notes and draft scripts—dated years before *Emanuel*—contained numerous of the elements Plaintiff alleges were copied. Plaintiff's unsubstantiated allegations of a conspiracy to copy elements from *Emanuel* by those involved in *Servant*'s creative process cannot create a genuine issue of material fact regarding independent creation.[1]

*Fifth*, Plaintiff has not adequately substantiated the elements for secondary liability against any Defendant.

---

[1] Notably, this motion should be granted in its entirety if the Court finds that Defendants are entitled to judgment on *any* of the grounds set forth above—i.e., copyright validity, access, substantial similarity, or independent creation.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Defendants alternately seek summary judgment on Plaintiff's claim for Defendants' profits from Episodes 4-40 of *Servant* and Apple TV+ subscriptions more generally because she has not established a causal nexus between any such profits and the alleged infringement.

Summary judgment should be awarded to Defendants, bringing this case finally—after more than four years of litigation—to a close.

## II.    STATEMENT OF FACTS

### A.    The Works at Issue

#### 1.    *The Truth About Emanuel*

*Emanuel* is a 2013 film directed by Plaintiff that follows its eponymous protagonist, and opens with the line, "I'm 17 years old and I killed my mother," which the audience learns is because Emanuel's mother died during childbirth. SUF1-3.  Emanuel carries a heavy burden of guilt, demanding her father recount her mother's death each year on her birthday and refusing to visit her mother's grave. SUF4-5.  Emanuel lives in a house in a suburb with her father and stepmother, and works at a medical supply store with her socially awkward coworker Arthur. SUF7-12.  On the train to work, Emanuel meets a young man named Claude, and the two strike up a relationship, which endures throughout the film.  SUF14-15.

Emanuel becomes fascinated with Linda, a single mother bearing a striking resemblance to Emanuel's dead mother, who moves in next door with her infant daughter Chloe.  SUF17-20.  Emanuel offers to babysit Chloe in an effort to get closer to Linda, only to discover that Chloe is a doll.  SUF21.  While initially uncomfortable, Emanuel eventually pretends the doll is a baby in Linda's presence, though generally not when Linda is gone.  SUF22-25.  Throughout the film, Emanuel works to prevent others from finding out the truth about Chloe.  SUF26.

Linda's delusion is exposed when Arthur discovers the doll.  SUF27.  Linda is committed to an institution, and while she is there, her ex-husband comes to Emanuel's house.  SUF31-32.  He explains that the real Chloe died, and Linda was

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

given a lifelike therapy doll. SUF33-35. After this discovery, Emanuel breaks Linda out of the institution and takes her to Emanuel's mother's grave, where they bury the doll. SUF37-39. The film closes on the pair looking up at the stars, with a feeling of hope that both Linda and Emanuel can finally begin to heal. SUF40.

### 2. *Servant*

Episodes 1-3 of *Servant*[2] follow a wealthy couple, Sean and Dorothy Turner, who live in an elegant townhouse in Philadelphia. *Servant* opens with the arrival of Leanne Grayson, the nanny the Turners hired to care for their infant son Jericho so Dorothy can return to work. SUF47-50, 55-56, 58. Approximately 12 minutes into Episode 1, Sean is shown entering the nursery alone, picking up a lifelike doll from the crib by its foot. SUF54. As he explains to Leanne, Jericho died suddenly at 13 weeks, and the doll was prescribed to Dorothy as a coping mechanism. SUF57. Sean tells Leanne he is not sure how long they will have to maintain the charade. SUF58. Sean asks if she has any questions and Leanne replies she does not. SUF59. Leanne mysteriously always treats the doll as a real baby. SUF61.

At the end of the first episode, the doll disappears—instead, Sean finds a real baby in the nursery. SUF62-63. In the next episode, he confronts Leanne, but she bizarrely shows no awareness Jericho has changed. SUF64. From there, strange occurrences begin, including Sean getting splinters in his finger and throat and losing his sense of taste. SUF65. Dorothy's brother Julian hires a private investigator, Roscoe, to track down information about Leanne. SUF68. Julian and Roscoe visit Leanne's hometown and discover gravestones for Leanne's parents *and Leanne herself*, raising the question of who (or what) Leanne is. SUF69-71.

Apple held its premiere on November 19, 2019, and then released the first three episodes on Apple TV+ later that month. SUF44-45.

---

[2] Plaintiff alleges that only Episodes 1-3 of *Servant* infringed her purported copyright in *Emanuel*. FAC ¶¶ 2 n.1, 13.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.      Tony Basgallop Begins Work on *Servant* a Decade Prior to *Emanuel***

Basgallop first conceived of *Servant*, under its former title *Practically Perfect*, in November 2005.  SUF77.  When his then-wife returned to work, they hired a nanny, an 18-year-old from a strict religious family.  SUF78-82.  A UK production company coincidentally approached him to create and write a show about "naughty nannies," sparking Basgallop's idea to subvert the classic "nanny" trope of a prim and proper Mary Poppins to tell a story from the parents' perspective of welcoming a stranger into their home.  SUF83-85.

Basgallop's brainstorming documents and early scripts from 2005-2007 establish the broad premise of the show, including many of the elements Plaintiff contends were copied from her 2013 film.  SUF77, 83-137.  The show follows the Turners, a mid-thirties couple with their three-month-old baby Jericho, as they welcome the arrival of Leanne, a teenage, religious nanny.  SUF86-137.  The story explores the Turners' relationship, the impact of the nanny, and the mysterious, potentially supernatural events that began to happen after her arrival.  *Id.*  These early documents even mention a mother-daughter relationship between the mother and the nanny, and toyed with the idea that the mother's "baby died, and this [new baby] is one she bought as a replacement."  SUF95, 103, 112, 137.

Basgallop wrote four episodes of *Practically Perfect* for Channel 4, but the network passed in June 2007.  SUF128-139.  Over the next several years, Basgallop frequently revisited the project, variously reworking it as a feature film and novel.  SUF140-143.  After Basgallop moved to Los Angeles in 2012, he wrote for television shows featuring supernatural and horror elements, never forgetting about *Practically Perfect*.  SUF144-145.

In 2014, Basgallop watched an episode of the series *The Leftovers* in which a grieving mother who lost her husband and two children finds hyper-realistic, life-sized dolls based on her disappeared family members.  SUF146-147.  In the writer's room for the series that Basgallop was working on at the time (*Resurrection*),

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

someone explained the concept of using hyper-realistic "reborn" dolls as grief therapy.  SUF148.  Basgallop thought reborn dolls could be a potential addition to *Practically Perfect*.  SUF149.

**C.**  ***Servant*'s Development and Production**

In October 2016, Basgallop implemented the reborn doll concept into *Practically Perfect*, with the doll turning into a baby in the first episode.  SUF152-157.  That same month, before starting as a writer on Season 2 of the television series *Berlin Station*, Basgallop sent Escape Artists ("EA") the scripts for the series' first and second episodes.  SUF158.  He also shared media coverage about reborn dolls with Taylor Latham at EA (SUF159-161), and EA set about trying to attach a production company to the project.  SUF162.

By the fall of 2017, EA attached Shyamalan's production company, Blinding Edge Pictures ("BE"), to produce the series, with Shyamalan as the director for Episode 1.  SUF163-169.  Between August 2017 and January 2018, Basgallop wrote the third episode of the series, which was renamed *Servant*.  SUF170.  In January 2018, Basgallop, BE, and EA pitched *Servant* to Apple and others.  SUF173.  Apple was interested in the project due to Shyamalan's involvement, a prominent creator known for his work in the mystery, suspense, and supernatural thriller genres.  SUF174.  Basgallop, BE, and EA accepted Apple's offer, and *Servant* began production in the summer of 2018.  SUF175.  Shyamalan directed Episode 1, using many of the same techniques and shots he used in his previous works and building the show's look and feel with Naaman Marshall and others, while Daniel Sackheim directed Episodes 2 and 3.  SUF177-197.

**D.**  **Discovery Reveals *Emanuel* Is Based on a Story Owned by Third-Party Sarah Thorp**

While Plaintiff repeatedly claimed she alone created *Emanuel*, third-party discovery revealed that *Emanuel* is based on a story Plaintiff took from her friend Sarah Thorp, who conceived of—and pitched Plaintiff—a project about a mother

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

who loses a child, blames herself, and creates a delusion in which she believes the child is still alive.  SUF204.  The story Thorp shared "opens w/ [the woman] moving into a small town, w/ her child and @ some point we find out that the child does not in fact exist."  SUF205.  When confronted with the fact that her child is fake, the woman "panics and accuses those around her of having hurt or hav[ing] taken her baby."  SUF208.

While Thorp hoped Plaintiff would direct Thorp's project, Plaintiff later revealed she actually used Thorp's story to write her own script.  SUF207-208.  Thorp accused Plaintiff of taking "the exact story I shared with you," for which Plaintiff profusely apologized.  SUF206, 208.  Plaintiff proposed a work-for-hire agreement to Thorp, but ultimately entered into an agreement confirming *Emanuel* was based on Thorp's story and that Thorp retained any copyright in the story as embodied in *Emanuel*.  SUF210-218.  Thorp received a "Story By" credit in *Emanuel* and Plaintiff received a non-exclusive license to use the story in *Emanuel*.  SUF216.  As Plaintiff's similarity expert testified, the elements from Thorp's story are all present in *Emanuel*.  SUF209.

### E.    Plaintiff Conceals and Misrepresents Origin and Ownership of *Emanuel*

Despite privately agreeing that she based *Emanuel* on Thorp's story, Plaintiff repeatedly misrepresented the film's origin.  For example, the Copyright Office initially denied Plaintiff's copyright application, instructing Plaintiff to (a) confirm everyone in the credits (including Thorp) made their contributions as works for hire or (b) describe the portions of *Emanuel* that were not works for hire.  SUF221-223.  Plaintiff falsely responded that *Emanuel* was a work for hire in its entirety despite Thorp's earlier refusal of a work-for-hire agreement.  SUF224.  Based on Plaintiff's misrepresentation, the copyright registration issued.  SUF225.

Plaintiff took the same approach in this litigation, alleging that "the idea for [*Emanuel*] came to [Plaintiff] in 2010," including the concept of "giving birth to a child only to see it die."  FAC ¶ 42.  Plaintiff's discovery responses about the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

sources of inspiration for Emanuel falsely stated that she "served as her own inspiration and conceived of *Emanuel*."  SUF229.  Plaintiff even concealed this information from her own similarity expert, who testified it would be a "serious problem" if Emanuel were based on content owned by a third party.  SUF230.

## F.   *Emanuel*'s Limited Release and Plaintiff's Access Allegations

In 2013, *Emanuel* premiered among many other films at the Sundance Film Festival.  SUF232-233.  The following year, it was shown in twelve theaters and generated box office receipts of approximately $4,000.  SUF236-240.  Plaintiff then submitted *Emanuel* to various video-on-demand services, including Apple's iTunes Store, where it was rented or purchased approximately ▮▮▮ times.  SUF241.

Plaintiff alleges various connections between *Emanuel* and Defendants, most of which occurred after Basgallop wrote the scripts for *Servant* Episodes 1-3.  The only alleged connection between *Emanuel* and Basgallop is his work as a writer and producer on Season 2 of *Berlin Station*.  Plaintiff alleges she was submitted as a potential director for one episode of the series, FAC ¶ 52, but produced no evidence confirming the submission or Basgallop's involvement considering director submissions (he had none).  SUF246-255.  Plaintiff did not allege any connection between *Emanuel* and Shyamalan; Plaintiff's own expert doubted Shyamalan saw the film.  SUF256.  Lastly, Plaintiff raised connections to *Emanuel* by various individuals at Apple, but Apple only began its involvement with *Servant* in 2018, after scripts for Episodes 1-3 were already written.  SUF158, 170, 173.

Plaintiff proffered no evidence that any Defendant or other individual who created any of the allegedly infringing elements in *Servant* accessed, viewed, or discussed *Emanuel* at any point prior to Plaintiff's claims.  SUF246-264.

## G.   This Lawsuit

Plaintiff sued Defendants on January 15, 2020, and filed her first amended complaint ("FAC") on March 10, 2020.  The FAC brings claims for direct copyright infringement against all Defendants, alleging Episodes 1-3 of *Servant* infringed

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Emanuel* (FAC ¶¶ 83-92); direct copyright infringement against Basgallop and Blumenthal on the basis that a *Servant* script they shopped to Shyamalan infringed *Emanuel* (FAC ¶¶ 93-98); direct copyright infringement against all Defendants except Apple on the basis that the *Servant* scripts they shopped to Apple infringed *Emanuel* (FAC ¶¶ 99-104); and contributory and vicarious copyright infringement against all Defendants (FAC ¶¶ 105-107).

The Court dismissed the case on May 28, 2020, concluding that *Emanuel* and Episodes 1-3 of *Servant* are not substantially similar as a matter of law. ECF No. 39. It held that apart from the unprotectable shared premise of "a mother so traumatized by her baby's death that she cares for a doll she believes to be a real baby," there were "vast differences between the plots of the two works." *Id.* It also found no significant similarities in the works' characters, sequence of events, theme, mood, pace, or dialogue. *Id.* Separately, the Court rejected Plaintiff's assertion that *Servant* copied *Emanuel*'s selection and arrangement of elements. *Id.*

Plaintiff appealed, and the Ninth Circuit reversed and remanded on February 22, 2022. The Ninth Circuit did not take issue with the Court's substantive analysis, but rather held that "expert testimony would aid the court in objectively evaluating similarities in cinematic techniques, distinguishing creative elements from *scenes a faire*, determining the extent and qualitative importance of similar elements between the works, and comparing works in the different mediums of film and television." *Gregorini II*, 2022 WL 522307 at *1.

## III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

A copyright plaintiff must demonstrate that (1) she owns a valid copyright; and (2) defendants copied protected aspects of the work. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). The second prong has two distinct components: "copying" and "unlawful appropriation." *Id.* (quoting *Rentmeester v. Nike*, 883 F.3d 1111, 1117 (9th Cir. 2018)). "In the absence of direct evidence," copying can be proven by showing "that the defendant had access to the plaintiff's

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

work and that the two works share similarities probative of copying." *Id.* A
plaintiff must additionally show "unlawful appropriation," meaning that "the works
share *substantial* similarities." *Id.* (emphasis in original).

## A.    Plaintiff's Copyright Registration Is Invalid

Only parties with valid copyright registrations may initiate infringement
lawsuits.  17 U.S.C. § 411(a).  Defendants may invalidate a registration by
demonstrating "(1) the registrant submitted a registration application containing
inaccuracies, (2) the registrant knew that the application failed to comply with the
requisite legal requirements, and (3) the inaccuracies in question were material to
the registration decision by the Register of Copyrights." *Unicolors v. H&M Hennes
& Mauritz*, 52 F.4th 1054, 1067 (9th Cir. 2022).  Each of these elements is satisfied.

First, Plaintiff submitted an inaccurate application by misrepresenting that
she was the sole author of *Emanuel*, SUF220, instead of disclaiming Thorp's story
upon which *Emanuel* was based.  *See* 17 U.S.C. § 409(9) (requiring disclosure of
"any preexisting work or works that it is based on").  Second, Plaintiff knew she
was not the sole author of *Emanuel*—and thus her application was inaccurate—
because (a) she tried and failed to have Thorp sign a work-for-hire agreement, and
(b) Plaintiff agreed that Thorp retained ownership of her story and that *Emanuel*
was based on that story.  SUF210-218.  Third, Plaintiff's misstatements were
material to registration, as the Copyright Office expressly relied on the
misrepresentation.  SUF 221-225.  *See Express v. Forever 21*, 2010 WL 3489308, at
*6 n.9 (C.D. Cal. Sept. 2, 2010) (collecting cases granting summary judgment based
on failure to disclose preexisting works).  Plaintiff's invalid registration is fatal to
her lawsuit.

## B.    Plaintiff Failed to Establish Access as a Matter of Law

A copyright plaintiff must show the defendant had access to the allegedly
infringed work.  *Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir. 2016).  "Where
there is no direct evidence of access, circumstantial evidence can be used to prove

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *Id.* at 995.  Summary judgment is appropriate where the plaintiff does not come forward with "significant, affirmative and probative evidence" to substantiate either widespread dissemination or direct access. *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1053 (C.D. Cal. 2010).  Here, Plaintiff demonstrated neither.

### 1.    Plaintiff Failed to Show Widespread Dissemination

Widespread dissemination requires a "substantial" degree of success or notoriety. *Cope v. Warner Records*, 2023 WL 11827959, at *4 (C.D. Cal. June 5, 2023) (Sykes, J.).  "In most cases, the evidence of widespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." *Loomis*, 836 F.3d at 997 .  Widespread dissemination is measured at the time of the alleged copying. *Clonus Assocs. v. Dreamworks*, 417 F. Supp. 2d 248, 251 (S.D.N.Y. 2005).  It is undisputed that Basgallop completed writing the first two episodes of *Servant* in 2016 and the third by January 2018.  SUF158, 172.  So Plaintiff must proffer "significant, affirmative, and probative evidence" regarding *Emanuel*'s wide dissemination prior to those dates.  She failed to do so.

The undisputed facts show meager dissemination of *Emanuel*.  It performed poorly at the box office, with several thousand dollars in ticket sales, and approximately ███ rentals or purchases on the iTunes Store through 2019.  SUF240, 244-245.  Courts "have consistently held that the mere availability of a work online is insufficient to establish widespread dissemination," *Cope*, 2023 WL 11827959 at *4 (collecting cases); *see also Lois v. Levin*, 2022 WL 4351968 at *3 (C.D. Cal. Sept. 16, 2022) (same); *Batts v. Adams*, 2011 WL 13217923, at *4 (C.D. Cal. Feb. 8, 2011) (same).  This falls far below the threshold required to raise an issue of fact regarding widespread dissemination. *See, e.g.*, *Rice v. Fox Broad.*, 330

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

F.3d 1170, 1178 (17,000 copies of plaintiff's work did not constitute widespread dissemination); *see also Cooley v. Target*, 2022 WL 4540091, at *5 (D. Minn. Sept. 28, 2022) (125,000 views of video did not constitute widespread dissemination). Plaintiff cannot show access on this basis.

### 2.    Plaintiff Failed to Show Direct Access

None of Plaintiff's scattershot "chain of events" theories support a finding of access by those who created *Servant*.

*First*, Plaintiff's only theory regarding alleged access by Basgallop, who wrote *Servant*, is that Plaintiff's agent, Olivia Blaustein, *may have* pitched Plaintiff to direct an episode of *Berlin Station* while Basgallop was working on the show. But Plaintiff did not know whether Blaustein actually submitted her, and neither did Blaustein. SUF246-253. The undisputed evidence from the showrunner and studio executive on the series establishes they and other producers—not Basgallop— selected directors. SUF254. Plaintiff herself testified she did not believe Basgallop obtained access to *Emanuel* while working on *Berlin Station*. SUF255.[3]

*Second*, Plaintiff has not presented evidence of access by Shyamalan, despite accusing him of copying various cinematographic techniques from *Emanuel*. Indeed, Plaintiff's own expert on access testified that Shyamalan "probably would have never watched" Emanuel. SUF256. Plaintiff similarly has no theory as to how Sackheim, the director for Episodes 2 and 3 of *Servant*, had access to *Emanuel* even though many of the allegedly infringing cinematographic elements reflected choices under his control and direction.

*Third*, Plaintiff's theories of direct access focus on Apple, but *Servant*'s first three episodes were already written by January 2018 when the series was pitched to Apple. SUF158, 172. Apple offered a handful of creative suggestions after that

---

[3] Even if Basgallop had been involved in selecting directors, the potential submission occurred *after* Basgallop wrote Episodes 1 and 2 containing the vast majority of the allegedly copied elements. SUF158.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

point, all unrelated to the allegedly similar elements.  SUF176.  Indeed, Plaintiff acknowledged that all of the alleged similarities between *Emanuel* and *Servant* were present in *Servant* scripts predating Apple's involvement in the project.  FAC ¶¶ 95, 101.  Access to a work by individuals not responsible for the alleged copying does not create a triable issue.  See, e.g., *Counts v. Meriwether*, 2015 WL 9594469, at *7 (C.D. Cal. Dec. 30, 2015) (employee's receipt of work not probative of access without link between that employee and individuals allegedly responsible for copying).

## C.     *Servant* and *Emanuel* Are Not Substantially Similar

On a motion for summary judgment, courts in the Ninth Circuit assess substantial similarity using the extrinsic test.  *Funky Films v. Time Warner Ent.*, 462 F.3d 1072, 1076-1077 (9th Cir. 2006).  The extrinsic test is an "objective test" based on "specific expressive elements: the test focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in two works."  *Benay v. Warner Bros.*, 607 F.3d 620, 624 (9th Cir. 2010).  This test can be, and is, applied as a matter of law, and district courts *routinely* grant—and the Ninth Circuit affirms—summary judgment for lack of substantial similarity.  *See, e.g., Yonay v. Paramount Pictures*, 2024 WL 2107721, at *8 (C.D. Cal. Apr. 5, 2024) (granting summary judgment to defendant on substantial similarity); *Jones v. Twentieth Century Studios*, 2023 WL 9051282, at *11 (C.D. Cal. Nov. 28, 2023) (same); *Gold Glove Prods. v. Handfield*, 2014 WL 11870220, at *2 (C.D. Cal. Feb. 24, 2014) (same), *aff'd*, 648 F. App'x 679 (9th Cir. 2016); *Gable v. Nat'l Broad.*, 727 F. Supp. 2d 815, 832 (C.D. Cal. 2010) (same), *aff'd*, 438 F. App'x 587 (9th Cir. 2011); *Benay v. Warner Bros.*, 2008 WL 11336277 (C.D. Cal. Mar. 14, 2008) (same), *aff'd*, 607 F.3d 620 (9th Cir. 2010); *Funky Films*, 462 F.3d 1072 (same).  Importantly, the Court must do its own "independent review" of the works.  *See, e.g.*, *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) (affirming summary judgment after "independent review" of works).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, Plaintiff proffers no evidence supporting a departure from the Court's prior decision that the works are not substantially similar. In fact, discovery unearthed *more* support for the decision, including that numerous allegedly similar elements in *Servant* were written long before *Emanuel*, many other elements were from Thorp's story that Plaintiff does not own, and other elements are based on unprotectable facts, specifically the use of a reborn doll as grief therapy.

### 1.    The Works' Protected Expression Is Not Substantially Similar

In comparing similarities between protected elements of works under the extrinsic test, "a court must filter out and disregard the non-protectible elements," and "take care to enquire only whether the protectible elements, standing alone, are substantially similar." *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 2002). Courts "may place *no* reliance upon any similarity in expression resulting from unprotectable elements." *Apple v. Microsoft*, 35 F.3d 1435, 1446 (9th Cir. 1994) (emphasis in original). Here, several categories of unprotectable elements must be filtered out during the similarity analysis.

*First*, "[g]eneral plot ideas are not protected by copyright law." *Berkic*, 761 F.2d at 1293. *Second*, no protection is available for *scenes a faire*, which are elements that flow naturally from a basic premise. *See, e.g., Benay,* 607 F.3d at 624-625 (disregarding numerous similarities flowing from shared "basic plot premise"). *Third*, no protection is available for generic or common elements. *See, e.g., Jones,* 2023 WL 9051282 at *10-12. *Fourth*, facts are not entitled to copyright protection. *Experian Info. Sols. v. Nationwide Mktg.*, 893 F. 3d 1176, 1181 (9th Cir. 2018). *Fifth*, the Court must disregard elements of *Emanuel* that were taken from Thorp's preexisting work. *See Idema v. Dreamworks*, 162 F. Supp. 2d 1129 (C.D. Cal. 2001) ("elements borrowed from another author or from the 'public domain'" are unprotectable).

Once the unprotectable elements have been filtered out, a comparison of *Emanuel* and *Servant* confirms that they bear little resemblance to each other.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### a.    Plot, Sequence of Events, and Pace

Almost all of the specific plot similarities alleged by Plaintiff and her expert rest on unprotectable aspects or mischaracterizations of the works.

*First*, a grieving mother who believes a reborn doll is her dead child and hires a nanny for the doll is an unprotectable idea, as both Plaintiff and her expert concede.  SUF265-266, 272.  Indeed, using a reborn doll to cope with the death of a child is a real phenomenon, and thus an unprotectable fact.  SUF269.  Many works have explored the concept of parents treating a doll as their child.  *See* SUF270.

*Second*, numerous similarities flow from this unprotectable idea and thus are similarly unprotectable.  For example, depicting a new mother naturally leads to elements like the mother having help with the baby, holding the baby, and considering her changed body.  And using a reborn doll to cope with the death of a child naturally results in elements like the dolls being realistic.  These are unprotectable *scenes a faire*.

*Third*, many of the alleged similarities relate to high-level concepts and elements that are ubiquitous in film and television, such as a birthday dinner interrupted by conflict (FAC ¶ 78; Román Rpt. at 23), an "interview scene" in which a parent asks a caretaker about their plans for the future (FAC ¶ 79; Román Rpt. at 21), or showing a character underwater (FAC ¶ 78; Román Rpt. at 44).  *See generally* Gale Rpt. at 10-35 (overview of relevant prior art); Gale Supplement at 9-42 (same); Gale Rebuttal at 6, 40-41 (discussing similarities based on common cinematographic techniques).

*Fourth*, many of the alleged similarities are based on mischaracterization of the works.  For example, Plaintiff and her expert claim that Emanuel treats the doll as a real baby when the mother is not around (FAC ¶ 78; Román Rpt. at 7, 19, 21) and that Chloe comes back to life in *Emanuel* (FAC ¶ 72; Román Rpt. at 29), but they conceded those descriptions of *Emanuel* are misleading.  *See* SUF273-275.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The protectable expression of the works' plots is very different.  *Servant* is an occult mystery that prominently features religious and supernatural elements, while *Emanuel* tells the story of a relationship between two women who form a personal bond informed by their respective grief.  SUF20-26, 37-40, 53, 70.  In *Servant*, the doll becomes a real, living baby *in the first episode*, which drives the mystery of how that happened, whose baby that is, and who (or what) Leanne really is.  SUF62-63-64, 68-71.  None of these questions are raised in *Emanuel*, an earnest portrayal of two woman struggling to resolve their grief.  *See generally* Gale Rpt. at 18-19; Gale Rebuttal at 11-14.

Unsurprisingly given their different plots, the works' sequences of events bear little resemblance to each other besides that each employs a linear timeline—a device Plaintiff's expert concedes is "conventional."  Román Rpt. at 37; *see* Gale Rpt. at 20-23.  Nor is the pacing of the two works similar, with *Servant* proceeding at a "much slower" pace than *Emanuel*.  Gale Rpt. at 34-35.

**b.    Characters**

Plaintiff draws parallels between various characters in *Emanuel* and *Servant*, but none of the pairs are similar.  *Emanuel* also contains two important characters— Dennis and Janice—who have no equivalent in *Servant*.

**Emanuel vs. Leanne:** Beyond generic similarities in age and appearance, these characters share little in common.  Emanuel lives with her father and explains her background in the opening scene, whereas Leanne's background and family remain a mystery in Episodes 1-3.  SUF3-5, 7, 68-71.  Emanuel is outspoken and provocative, and dresses like a typical teenager, whereas Leanne is quiet and overtly religious, and dresses conservatively.  SUF6, 9, 13, 16, 51, 53, 74; *see generally* Gale Rpt. at 26-27.

**Linda vs. Dorothy:** Besides the basic premise that they both lost a child and are using a reborn doll as therapy, the mother characters are vastly different.  While Linda does not appear to have a job, Dorothy is a television reporter and

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

conspicuously wealthy.  SUF17, 56.  Linda lives by herself with Chloe after running away from her husband, and we learn nothing about her family, whereas Dorothy is married and close to her brother.  SUF17, 34, 66-67.  While Linda is warm and friendly, Dorothy is more self-centered and superficial.  *See generally* Gale Rpt. at 28.

**Thomas vs. Sean:** Thomas is a character so minor that he is not even named in *Emanuel* and makes only a brief appearance at the end of the movie.  SUF35.  We know nothing of his personal life except that he was married to Linda.  Sean, by contrast, is a main character in *Servant*.  *See generally* Gale Rpt. at 29.

**Claude vs. Tobe:** Claude is Emanuel's boyfriend and a central character in *Emanuel*'s subplot.  SUF14-15.  Tobe only appears in the third episode, and Leanne's brief encounter with him ends when Julian arrives.  SUF72-73.  *See* Gale Rpt. at 30.

**Arthur vs. Julian:** Arthur and Julian share no similarities besides, at most, a very broad physical resemblance.  *See* Gale Rpt. at 30-31.

### c.    Setting

Most of the alleged similarities in setting flow from the unprotectable premises of a new mother, hiring a babysitter or nanny, or using a therapy doll to cope with the loss of a child.  Other alleged similarities relate to elements that are generic, and therefore unprotectable, such as a wooden staircase, scenes of family dinners where tensions are revealed, or nurseries with rocking horses and striped wallpaper.  Besides these unprotectable elements, the settings of the two works share little in common.  *See* SUF7, 10-11, 37-39, 75.  *See generally* Gale Rpt. at 33.

### d.    Theme, Tone, and Mood

The theme of *Servant* in its first three episodes concerns the danger of allowing a stranger into one's house, as reflected in the line from the trailer: "Do you know who you welcomed into your home?"  SUF46.  This theme reflects the ominous and frightening tone of *Servant*, a series with occult and horror elements,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

which is nowhere to be found in *Emanuel*.  These elements are part of Shyamalan's

brand for supernatural thrillers, and specifically for works walking the line between

the supernatural and the grounded.  SUF164-168.  *Servant* does not have any trace

of the uplifting and optimistic theme and tone of *Emanuel*.  *See* Gale Rpt. at 33-34.

### e.    Dialogue

"[F]or a plaintiff to demonstrate substantial similarity of dialogue, it must

show extended similarity of dialogue."  *Silas v. Home Box Office*, 201 F. Supp. 3d

1158, 1181 (C.D. Cal. 2016).  Plaintiff does not allege *any* specific dialogue shared

between the two works.  FAC ¶ 81.

### 2.    Selection and Arrangement

While a plaintiff can properly claim a copyright in the original selection and

arrangement of unprotected elements, this requires more than simply identifying

"random similarities scattered throughout … the works" and "[l]abeling them a

'combination' of unprotectable elements."  *Skidmore*, 952 F.3d at 1075.  Rather, the

plaintiff must show "the *particular* way in which the artistic elements form a

coherent pattern, synthesis, or design."  *Id*. at 1074 (emphasis in original).

Here, most elements in *Servant* have no equivalent in *Emanuel*.  Even the

alleged similarities between the works identified by Plaintiff appear in a different

order and at different points in the two works, with no particular similarity in how

they are arranged.  In fact, several of the allegedly similar elements identified by

Plaintiff *cannot* be "arranged," because they consist of general themes present

throughout the works.  The Court previously rejected Plaintiff's attempt to claim

ownership over the unprotectable elements in *Emanuel*, ruling that "the alleged

overlap between *Emanuel* and *Servant* is not pervasive enough or substantial

enough to demonstrate substantial similarity based on a 'selection and arrangement'

theory."  ECF No. 39.  That still holds true.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### A. *Servant* Was Independently Created

Even if Plaintiff could establish access *and* substantial similarity, which she cannot, her claims would *still* fail because *Servant* was independently created. Independent creation is a "complete" defense to copyright infringement. *Jones*, 2023 WL 9051282, at *8.

Here, the undisputed evidence shows Basgallop independently created what became *Servant*, as well as many of the allegedly infringing elements, *years* before *Emanuel* premiered in 2013. SUF87-126, 131-137, 142-143. In 2005, Basgallop created *Servant*'s underlying story of a professional couple in their thirties with a three-month-old baby named Jericho and the arrival of a mysterious and religious teenage nanny. SUF86-137. As his early notes and scripts show, Basgallop conceptualized the specific character traits and dynamics of Sean, Dorothy, Leanne, Julian, and Jericho; the play-like, urban townhouse setting; the show's dark and humorous tone with supernatural elements; its interlocking themes of how Leanne's arrival impacts the couple, and vice versa; and its slow burn pace, all of which appear in *Servant*. SUF87-126, 131-137, 142-143. He wrote *numerous* of the plot points, scenes, and verbatim passages of dialogue that appeared in *Servant* and which Plaintiff falsely accused Basgallop of copying from her, including Leanne's tour of the Turner house; Dorothy and Leanne's contrasting baths; Sean spying on Leanne praying; Sean snooping in Leanne's room; Leanne snooping when the Turners leave; Leanne relieving Dorothy's mastitis; Sean splintering and losing his sense of taste; Dorothy looking at her post-partum body in the mirror; Dorothy dressing up Leanne; and many more. *Id.* He even sketched plot lines of a mother-daughter relationship between the mother and nanny and begin thinking about a plot involving a woman whose baby died and a "replacement" she purchased. SUF95, 103, 112, 137.

Basgallop kept revisiting *Practically Perfect* over the years. SUF140. In 2016, Basgallop introduced elements drawn from his intervening experience writing

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

for supernatural and horror shows.  SUF145-151, 157-160.  In particular, Basgallop

thought the addition of a reborn doll into the first episode of *Practically Perfect* and

then having it turn into a baby at the end of that episode would be a compelling

twist.  SUF157.  He learned about reborn dolls while discussing an episode of *The*

*Leftovers* depicting life-like dolls in the place of family members.  SUF146-149.

These incremental additions are evidence of Basgallop's creative process, not

copying.  *See Silberstein v. Fox Ent.*, 424 F. Supp. 2d 616, 628-629 (S.D.N.Y.

2004) (finding independent creation where elements "evolved and developed in an

incremental fashion that does not bear any indicia of having been shaped by

plaintiff's [work]"), *aff'd sub nom. Silberstein v. John Does 1-10*, 242 F. App'x 720

(2d Cir. 2007)).

Numerous individuals involved in production—Basgallop, Shyamalan

(Episode 1 director), Sackheim (Episodes 2 and 3 director), Naaman Marshall

(production designer), and others—collaborated to create Episodes 1-3 of *Servant*.

SUF177-197.  This involved hundreds of creative decisions regarding

cinematography, lighting, production design, and music, among others, which were

informed by the scripts, character dynamics, and the real-life Philadelphia setting.

*Id*.  Episode 1's directorial choices also reflect Shyamalan's own well-established

brand in the supernatural thriller genre, along with his extensive filmography

featuring the same shot types as the allegedly infringing ones.  SUF164-167, 180-

184.  As for Episodes 2 and 3, Sackheim had full autonomy over the directorial

choices he made in those episodes.  SUF189.  None of these individuals

communicated about *Emanuel*. SUF257-264.

Plaintiff has not provided any evidence casting doubt on independent

creation.  She instead rests on unsubstantiated accusations that numerous

individuals working on *Servant* conspired to copy numerous different aspects of

*Emanuel*, from plots and characters to props and lighting, but somehow did so

without ever communicating about it.  Summary judgment is appropriate where, as

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

here, a plaintiff merely disbelieves the evidence.  *See Stabile v. Paul Smith*, 137 F. Supp. 3d 1173, 1191 (C.D. Cal. 2015) (granting summary judgment where plaintiff failed to rebut defendant's "substantial and uncontroverted evidence" of independent creation); *Walker v. Viacom*, 2008 WL 2050964, at *9 (N.D. Cal. May 13, 2008), *aff'd*, 362 F. App'x 858 (9th Cir. 2010) (similar); *Bethea v. Burnett*, 2005 WL 1720631, at *15-16 (C.D. Cal. June 28, 2005) (similar).

**B.    Defendants Are Entitled to Summary Judgment on Plaintiff's Claims Based on Scripts of *Servant***

Plaintiff's causes of action based on "early" and "later" scripts of Episodes 1-3 of *Servant* must also fail.  FAC ¶¶ 93-104.  Plaintiff has not established the scripts infringe *Emanuel*, with Plaintiff's own similarity expert stating only in a footnote that he is "prepared to testify" about the scripts without offering any analysis or opinion about the alleged similarities.  Román Rpt. at 19 n.5.  Moreover, there is no evidence that these scripts contain *any* allegedly infringing elements that are not in the series, and thus the arguments set forth above apply with equal force here.

**C.    Defendants Are Entitled to Summary Judgment on Plaintiff's Secondary Liability Claims**

Plaintiff's claims for secondary infringement fail along with her claims for direct infringement.  *A&M Records v. Napster,* 239 F.3d 1004, 1013 n. 2 (9th Cir. 2001).  Moreover, Plaintiff has failed to proffer any evidence establishing the elements for contributory or vicarious infringement, such as each defendant's knowledge of another's alleged infringement (*see Perfect 10, v. Giganews*, 847 F.3d 657, 670 (9th Cir. 2017)), material contribution to that infringement (*id.*), or right and ability to supervise the infringing activity (*see Luvdarts v. AT & T Mobility*, 710 F.3d 1068, 1071 (9th Cir. 2013)).  Plaintiff also failed to proffer any evidence or argument on the foundational issue of which parties she believes directly infringed and which is contributorily or vicariously responsible for such infringement.  *See Smith v. Weeknd*, 2019 WL 6998666, at *3 (C.D. Cal. Aug. 23, 2019) (no secondary

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  liability for own direct infringement).  Defendants are entitled to summary

2  judgment on Plaintiff's secondary infringement claims.

### IV.   PLAINTIFF IS NOT ENTITLED TO INDIRECT PROFITS

4  Plaintiff's claims to Defendants' indirect profits—from Episodes 4-40 of

5  *Servant* and Apple TV+ subscriptions more generally—lack any causal nexus to the

6  alleged infringement.

7  A copyright plaintiff seeking to recover profits generated by a non-infringing

8  work may do so only upon establishing a "causal nexus" between the indirect

9  profits and the alleged infringement.  *Polar Bear Prods. v. Timex*, 384 F.3d 700,

10  711 (9th Cir. Oct. 25, 2004).  Summary judgment as to indirect profits is

11  appropriate where the plaintiff proffers no evidence supporting a causal nexus

12  between the sought-after profits and the alleged infringement.  *Id.*

13  Here, there is no evidence that profits generated by Episodes 4-40 of *Servant*

14  share a causal nexus with the alleged infringement in Episodes 1-3.  Plaintiff

15  proffers no analysis regarding the causes for any profits by Episodes 4-40 or the

16  connection of any profits to the alleged infringement within Episodes 1-3.  Plaintiff

17  relies on the fact that Episodes 4-40 follow Episodes 1-3 sequentially, but indirect

18  profits from non-infringing episodes are not recoverable simply because they come

19  later in time than earlier allegedly infringing episodes.  *See, e.g.*, *Hendricks v.*

20  *DreamWorks*, 2007 WL 9705916, at *2-3 (C.D. Cal. Nov. 20, 2007) (denying

21  discovery regarding profits from later-in-time film based on allegedly infringing

22  screenplay, due to lack of causal nexus).  Notably, *none* of Plaintiff's three experts

23  have watched Seasons 2-4 of *Servant*, and two of them—Román and Persechini—

24  admitted they did not analyze the issue of causal nexus.  SUF276-279, 284.  Only

25  Plaintiff's access expert Ellen Pittleman opined on causal nexus, but only after

26  admitting she has no expertise in financial analysis or profit allocation.  SUF280-82.

27  Plaintiff similarly has no support for any argument that Apple TV+ revenues

28  more generally share a causal nexus with the alleged infringement, again relying on

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

conjecture instead of evidence.  Her contentions amount to little more than a "claim[] to indirect profits purportedly resulting from enhanced good will," which are "generally rejected by courts," and should be rejected here  *Polar Bear*, 384 F.3d at 715.

## V.    CONCLUSION

For the reasons above, Defendants respectfully request that this Court grant their motion for summary judgment.

DATED: July 12, 2024

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
CARL MAZUREK

By:    /s/ Cydney Swofford Freeman
Cydney Swofford Freeman

Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,991 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 12, 2024

/s/ Cydney Swofford Freeman
Cydney Swofford Freeman

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899