**ROBINS KAPLAN LLP**
Michael A. Geibelson (SBN 179970)
MGeibelson@RobinsKaplan.com
Patrick M. Arenz *(Pro hac vice)*
PArenz@RobinsKaplan.com
Emily E. Niles *(Pro hac vice)*
ENiles@RobinsKaplan.com
Annie Huang *(Pro hac vice)*
AHuang@RobinsKaplan.com
Prateek N. Viswanathan *(Pro hac vice)*
PViswanathan@RobinsKaplan.com

2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
Telephone: 310 552 0130
Facsimile: 310 229 5800

*Attorneys for Plaintiff Francesca Gregorini*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

Francesca Gregorini,

Plaintiff,

v.

APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,

Defendants.

Case No. 2:20-cv-00406-SSS-JC

**PLAINTIFF FRANCESCA GREGORINI'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE AND ARGUMENTS OVER ANY DISPUTE INVOLVING SARAH THORP ABOUT THE OWNERSHIP AND COPYRIGHT INTEREST IN THE SCREENPLAY FOR THE TRUTH ABOUT EMANUEL**

Date: November 15, 2024
Time: 2:00 P.M.
Dept.: Courtroom 2

**PLEASE TAKE NOTICE** that on November 15, 2024, at 2:00 p.m. or as soon as may be heard in Courtroom 2 of the United States District Court for the Central District of California, 3470 Twelfth Street, Riverside, California 92501, Plaintiff Francesca Gregorini will and hereby moves in limine for an order excluding evidence and arguments over any dispute involving Sarah Thorp about the ownership and copyright interest in the screenplay for *The Truth About Emanuel*.

This motion is made on the grounds that evidence and arguments over any alleged dispute involving Sarah Thorp about the ownership and copyright interest in the screenplay for *The Truth About Emanuel* is irrelevant under Rule 402 of the Federal Rules of Evidence. Any potential probative value of such evidence and arguments is far outweighed by the substantial risk of unfair prejudice to Plaintiff, confusion of issues and misleading the jury, in addition to being a waste of time under Rule 403 of the Federal Rules of Evidence.

The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Patrick M. Arenz and the exhibits attached thereto, and on such other oral or documentary evidence as may be presented at any hearing on this Motion. Plaintiff will lodge a proposed order along with this Motion.

This Motion is made following the Local Rule 7-3 conference of counsel, which took place on October 4, 2024 at 11:00 a.m. PT. Patrick Arenz, Emily Niles, and Annie Huang, counsel for Plaintiff, and Nicolas Jampol and Cydney Freeman, counsel for Defendants, participated in the conference. The conference lasted about 45 minutes to an hour. Counsel addressed each of the party's motions in limine.

Dated: October 11, 2024

ROBINS KAPLAN LLP

By: */s/ Patrick M. Arenz*
Patrick M. Arenz

Attorneys for Plaintiff
Francesca Gregorini

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE AND ARGUMENTS OVER ANY DISPUTE INVOLVING SARAH THORP

## INTRODUCTION

Plaintiff Francesca Gregorini moves to preclude evidence and arguments over any alleged dispute between Sarah Thorp, a third party, and Ms. Gregorini about the ownership and copyright interest in the screenplay for *The Truth About Emanuel*. The undisputed evidence is that Ms. Gregorini is the sole (100%) owner of the screenplay for *Emanuel*, including the copyright interest. Ms. Thorp agrees. Indeed, any dispute between Ms. Gregorini and Ms. Thorp about the ownership or copyright interest in the screenplay for *Emanuel* was resolved more than a decade ago with the Amended and Restated Screenplay Purchase Agreement (ARSPA) in 2011.

The resolved dispute is irrelevant to any copyright infringement issue that the jury must decide between Ms. Gregorini and Defendants. The Court should exclude any such irrelevant evidence under Rule 402. Even then, any potential probative value of this purported dispute between Ms. Thorp and Ms. Gregorini—a friendship spat at most—is far outweighed by the substantial risk of unfair prejudice, confusion of issues, misleading the jury, in addition to being a waste of time at trial. Under Rule 403, the Court should also exclude all references to any alleged dispute involving Ms. Thorp about the screenplay for *Emanuel*.

## FACTUAL BACKGROUND

Ms. Gregorini and Ms. Thorp first met when they were both students at Brown University in the late 1980s. They became good friends and played in a band together at Brown and in Los Angeles after they graduated. Ex. J at 164:16-20. They also had a romantic relationship. By 2008, their lives had gone in different directions, although they occasionally met for dinner. Ex. J at 164:21-165:11. In the two decades since college, Ms. Thorp became a screenwriter and Ms. Gregorini had written and directed *Tanner Hall*, an independent film. Ex. J at 166:14-21.

In January 2009, Ms. Gregorini and Ms. Thorp had a brief telephone conversation about ideas Ms. Thorp had for the two of them to potentially

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE AND ARGUMENTS OVER ANY DISPUTE INVOLVING SARAH THORP

collaborate on a film or television project. Ex. J at 166:8-167:1, 197:3-5; Ex. K at 43:24-44:16. Ms. Thorp ran several ideas by Ms. Gregorini to see if any piqued her interest. Ex. J at 167:20-25. The discussion lasted less than five minutes. Ex. J at 197:3-5. One idea—that interested Ms. Gregorini because she was going through IVF treatment—was a story told from the point of view of a postpartum depressed mother who thought that her school-aged child was still alive. The mother, who was on the run, was the only character that could see the deceased child, but the audience would be unaware that the child did not really exist. Ex. J at 169:1-8, 169:15-170:9; Ex. K 24:15-23, 38:4-8. At the time, Ms. Thorp had recently seen news stories of women who had killed their babies in a bathtub and was thinking about how one survives such traumatic events. Ex. K at 23:9-23. Ms. Thorp did not share her idea in writing such as an email, treatment or script with Ms. Gregorini. Ex. J at 170:16-23; Ex. K at 46:1-12, 85:23-86:3, 154:7-10. Ms. Thorp admits that her "idea was not completely fully formed" and she did not have a script when she discussed her idea with Ms. Gregorini. Ex. K at 25:25-26:5, 85:23-86:3, 92:19-20, 154:7-10.

After the conversation with Ms. Thorp, Ms. Gregorini came back with ideas that "took her in a different direction" from Ms. Thorp's idea. Ex. K at 53:6-9. Ms. Gregorini pursued an idea for a different story that focused on the point of view of a troubled teenager who forms a connection with a mother who is parenting a baby doll as if it was her living baby. This teenager is hired to nanny the doll as if it was a living baby. Ex. J at 170:10-15, 174:19-175:5; Ex. K at 45:6-9, 50:2-4. Ms. Gregorini hoped that Ms. Thorp would be excited to write a story focused on the troubled teenager and Ms. Gregorini would direct the project. Ex. J at 174:19-175:5. But Ms. Thorp was not interested in the story Ms. Gregorini wanted to tell. Ex. J at 169:8-14, 170:24-171:1.

Based on Ms. Thorp's disinterest, Ms. Gregorini went on to write a script for the story that she shared with Ms. Thorp from the teenager's point of view. Ms.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

PLAINTIFF'S MOTION IN LIMINE NO. 3 TO
EXCLUDE EVIDENCE AND ARGUMENTS OVER
ANY DISPUTE INVOLVING SARAH THORP

Gregorini completed a first draft of the screenplay for *Emanuel* several months later around October 2009. She shared a "full script" with Ms. Thorp, who thought it "was very complete and very well done." Ex. K at 104:13-25. Based on her friendship with Ms. Thorp, and given the conversation Ms. Gregorini had with her, Ms. Gregorini offered to share a co-story and co-producer credit with Ms. Thorp. Ex. K at 57:18-58:5. While Ms. Thorp felt hurt because of the lost opportunity to collaborate with her friend, "she didn't feel that there was any legal issue between" her and Ms. Gregorini. Ex. K at 59:19-24. In fact, Ms. Thorp "didn't feel that [she] owned that germ of an idea" that she had shared with Ms. Gregorini as there was neither a teenage nanny nor a doll in Ms. Thorp's idea. Ex. K at 59:19-24.

Because there were some hurt feelings among two individuals with a long personal history, and to address and resolve any potential disputes about the story ideas that Ms. Thorp and Ms. Gregorini had shared with each other, they entered into an agreement. Ex. O. Ms. Gregorini wanted to make sure she had sole ownership of her screenplay for *Emanuel*, the right to use any portion of the story Ms. Thorp and Ms. Gregorini discussed in the screenplay while ensuring that Ms. Thorp could pursue her own projects related to the different story about a school-age child. Ex. J at 233:10-20, 236:5-19. Ms. Thorp agreed to a co-story and co-producer credit. Ex. K at 97:18-23.

The agreement between Ms. Gregorini and Ms. Thorp was memorialized in the ARSPA. Ex. O. In the ARSPA, "Screenplay" is defined as "original screenplay written by Gregorini currently entitled 'Emanuel and the Truth About Fishes'"[1] and "Story" is defined as "original story written by Gregorini and Thorp (the 'Story') upon which the Screenplay is based." Ex. O at 1. In the Writers Guild of America's (WGA) Screen Credits Manual:

---

[1] Ms. Gregorini later changed the title of the Screenplay to *The Truth About Emanuel*. In the ARSPA, "Producer" is defined as Emanuel Film, LLC.

- "Story" means a writing contribution "distinct from screenplay and consisting of basic narrative, idea, theme or outline indicating character development and action" and
- "Screenplay" is described as "consist[ing] of individual scenes and full dialogue, together with such prior treatment, basic adaption, continuity, scenario, and dialogue as shall be used in, and represent substantial contributions to the final script."

Ex. L at 17.

In the ARSPA, the ownership of, copyright interest in, and use of the Screenplay and Story are stated as follows:

> Ownership of Story and Screenplay/Copyright. It is understood and agreed that as between Gregorini and Thorp, **ownership of the Screenplay (including, but limited to, copyright interest therein) shall be vested solely (100%) in Gregorini**, subject solely to any payment obligations to Thorp herein. It is understood and agreed that **ownership in the Story (including, but no limited to copyright interest therein) shall be vested solely (100%) in Thorp**, subject to the non-exclusive rights granted to Producer to use the Story as contained in the Screenplay in connection with the Picture and **subject to Gregorini's right to use the Story as contained in the Screenplay in connection with the rights reserved to Gregorini as set forth herein**. For purposes of clarity, the parties acknowledge and agree that Thorp is not granting the right to use any prior versions of the Story, only the Story as it appears in the Screenplay (and/or any versions thereof) and the parties acknowledge and agree that **Thorp is free to exercise any all rights in the Story in her sole discretion with no obligation of any kind to Producer and/or Gregorini**.

Ex. O ¶ 3.0(b) (emphasis added).

The ARSPA also set forth the amount Ms. Thorp would be paid for the rights she granted for the use of the Story in the Screenplay under the applicable Writers Guild of America (WGA) Agreement. Ex. O ¶¶ 1.0-2.0. Ms. Thorp did not write a single word or develop the Screenplay, as she viewed it as Ms. Gregorini's own project. Ex. K at 97:18-23, 150:20-24. This is consistent with Ms. Gregorini's representation in the ARSPA that she "is the sole author of the Screenplay" and "is the sole and exclusive owner and proprietor throughout the universe of the Screenplay and any

and all rights in and to the Screenplay granted to Producer herein[.]" Ex. O ¶ 13.0(b). Ms. Gregorini and Ms. Thorp granted a "non-exclusive license, in perpetuity and throughout the universe the right to use the Story as embodied in the Screenplay in [one motion picture]" to Emanuel Film, LLC. Ex. O ¶ 3.0.

When production on *Emanuel* began, Ms. Gregorini tried to involve Ms. Thorp and invited her to screenings, but Ms. Thorp did not take up Ms. Gregorini's offers and only remembered her reaction to the possibility of casting Kate Winslet as her only involvement. Ex. K at 101:7-12, 105:1-6. While Ms. Thorp provided some notes on typos in the script, she provided no creative input for the screenplay and was not otherwise involved in the making of the film. Ex. K at 103:8-104:25. After Ms. Thorp and Ms. Gregorini executed the ARSPA, Ms. Thorp remained supportive from afar. Ex. K at 101:14-15.

Defendants deposed Ms. Thorp on September 27, 2023 for nearly a full day and obtained no testimony disputing Ms. Gregorini's sole ownership of the screenplay for *Emanuel*, including the copyright interest. Ms. Thorp's testimony also confirmed she did not contribute to the production of the film.

## ARGUMENT

This Court should not allow Defendants to create a sideshow at trial over an ancillary dispute between Ms. Gregorini and Ms. Thorp that does not even exist. Rule 402 of the Federal Rules of Evidence precludes Defendants from offering irrelevant evidence at trial. And Rule 403 serves as another guardrail to prevent Defendants from offering even mildly relevant evidence if unfair prejudice, waste of time, and juror confusion would substantially outweigh that relevance. Ancillary disputes between a party and a third party often violate both these rules. *See, e.g.*, *Bioriginal Food & Science Corp. v. Biotab Nutraceuticals, Inc.*, No. 2:13–CV–05704, 2015 WL 10733384, at *6 (C.D. Cal. Aug. 24, 2015); *Grouse River Outfitters Ltd. v. Oracle Corp.*, at *4 (C.D. Cal. 2019) (explaining third party

disputes are "likely to confuse issues, mislead the jury, cause undue delay, and waste time because 'the evidence will spawn collateral mini-trials to disprove or rebut' the allegations"). Defendants' efforts to rely on a manufactured dispute with Ms. Thorp fail to clear the guardrails of Rules 402 and 403.

**I. Defendants have no basis to challenge the validity of Ms. Gregorini's copyright registration of *The Truth About Emanuel*.**

Ms. Thorp agrees that Ms. Gregorini is the sole owner of the screenplay for *The Truth About Emanuel*, including the copyright interest. Ex. O ¶ 3.0(b). Ms. Thorp granted a license to Emanuel Film, LLC to use the story she and Ms. Gregorini discussed and as embodied in Ms. Gregorini's screenplay to make *The Truth About Emanuel*. Ex. O ¶ 3.0. Ms. Thorp received compensation for granting that right. Ex. O ¶ 1.0. No story was "stolen" from Ms. Thorp. *See* Dkt. 213 at 1. Defendants' allegations to the contrary are only meant to mislead and distract the jury from the actual theft in this case—the copying of *The Truth About Emanuel* by Defendants.

Just as there was no theft of Ms. Thorp's story, Ms. Gregorini made no misrepresentation to the Copyright Office regarding the authorship of *The Truth About Emanuel*.[2] When the Copyright Office sought clarification of the individuals who contributed to the production of the film, Ms. Gregorini accurately updated her application to identify Emanuel Films, LLC (employer) as the author of the work and to state that the work was made for hire. Dkt. 180-74. Ms. Thorp should not have been named in the submission to the Copyright Office, nor did she need to execute a work made for hire agreement because she made no contribution to the production of *The Truth About Emanuel*. Despite Ms. Gregorini's offers to be involved in producing the film, Ms. Thorp chose not to be involved. Ex. K at 101:7-

[2] On this record, the Court should grant summary judgment in Ms. Gregorini's favor under Rule 56(f) of the Federal Rules of Civil Procedure, as set forth in her opposition to Defendants' motion for summary judgment. Dkt. 192-2 at 12-13.

12. Ms. Thorp was also "not creatively involved in [Ms. Gregorini's] script." Ex. K at 103:13-14. Indeed, Ms. Thorp concedes that she did not contribute a single word to the screenplay for *The Truth About Emanuel*. Ex. K at 97:18-23, 150:20-24.

Moreover, Ms. Thorp's story "idea" that led Ms. Gregorini to go in a "different direction" and write her the *Emanuel* screenplay is one of the "elements of a motion picture" that is "not protected by copyright." Ex. M (emphasis in original); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea…regardless of the form in which it is described, explained, illustrated, or embodied in such work."). Indeed, copyright law only protects the expression of ideas. *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 740 (9th Cir. 1971). Ms. Gregorini and Ms. Thorp shared story ideas upon which the screenplay for *Emanuel* is based. Ex. O at 1. Under the ARSPA, they both granted the right to use their original story as embodied in Ms. Gregorini's screenplay to make one motion picture, which was *The Truth About Emanuel*. Ex. O ¶ 3.0. Ownership of the *Emanuel* screenplay "vested solely (100%) in Gregorini." Ex. O ¶ 3.0.

Ms. Gregorini generously gave Ms. Thorp a co-story credit and did not want to hinder Ms. Thorp from pursuing the story she wanted to tell. Ex. J at 233:10-20, 236:5-19. Ms. Thorp admits that at the time she spoke with Ms. Gregorini, her idea was not "fully formed" and she did not have a completed script. Ex. K at 25:25-26:5, 85:23-86:3, 92:19-20, 154:7-10. Ms. Thorp's hurt feelings after reading Ms. Gregorini's "very complete and very well done" script was over the lost opportunity to collaborate on a project with her friend. Ex. K at 104:13-25. Ms. Thorp's hurt feelings over a lost opportunity is not relevant to an authorship submission to the Copyright Office or to a jury in this matter. Ms. Thorp admits that there this is no legal issue between her and Ms. Gregorini. Ex. K at 59:19-24. Even if there were, any legal issue was resolved by the ARSPA. Ex. O. Indeed, Ms. Thorp even doubts

that she "owned the germ of an idea" that she shared with Ms. Gregorini more than fifteen years ago. Ex. K at 59:23-24.

At no time does Ms. Thorp claim to be a victim. Defendants' efforts to concoct a dispute on Ms. Thorp's behalf where none exists is a complete waste of this Court's and the jury's time. If allowed to continue at trial, Defendants will continue this irrelevant sideshow to try to place Ms. Gregorini in an unflattering light and distract the jury from Defendants' own misconduct. Under Rules 402 and 403, the Court should exclude any reference to any alleged dispute involving Ms. Thorp and allow the jury to focus on the merits of this case.

## CONCLUSION

At issue in this case is Defendants' infringement of Ms. Gregorini's copyright in her film *The Truth About Emanuel,* not hurt feelings over a lost opportunity for two longtime friends to collaborate on a project. Ms. Thorp does not dispute that Ms. Gregorini is the sole writer, owner, and copyright holder for the screenplay for *The Truth About Emanuel*. The Court should exclude Defendants from arguing otherwise on behalf of a third party who wants no part in Defendants' sideshow.

Dated: October 11, 2024         ROBINS KAPLAN LLP

By: */s/ Patrick M. Arenz*
Patrick M. Arenz

Attorneys for Plaintiff
Francesca Gregorini

**ROBINS KAPLAN LLP**
Michael A. Geibelson (SBN 179970)
MGeibelson@RobinsKaplan.com
Patrick M. Arenz *(Pro hac vice)*
PArenz@RobinsKaplan.com
Annie Huang *(Pro hac vice)*
AHuang@RobinsKaplan.com
Emily E. Niles *(Pro hac vice)*
ENiles@RobinsKaplan.com
Prateek Viswanathan *(Pro hac vice)*
PViswanathan@RobinsKaplan.com

2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
Telephone: 310 552 0130
Facsimile: 310 229 5800

*Attorneys for Plaintiff Francesca Gregorini*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

Francesca Gregorini,

Plaintiff,

v.

APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,

Defendants.

Case No. 2:20-cv-00406-SSS-JC

**CERTIFICATE OF COMPLIANCE**

Date: November 15, 2024
Time: 2:00 P.M.
Dept.: Courtroom 2

The undersigned, counsel of record for Plaintiff Francesca Gregorini, certifies that this brief contains 8 pages, which complies with the page limit set by court order dated August 26, 2022.

Dated: October 11, 2024

ROBINS KAPLAN LLP

By: */s/ Patrick M. Arenz*
Patrick M. Arenz

Attorneys for Plaintiff
Francesca Gregorini