1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ROBINS KAPLAN LLP**
Michael A. Geibelson (SBN 179970)
MGeibelson@RobinsKaplan.com
Patrick M. Arenz (*Pro hac vice*)
PArenz@RobinsKaplan.com
Emily E. Niles (*Pro hac vice*)
ENiles@RobinsKaplan.com
Annie Huang (*Pro hac vice*)
AHuang@RobinsKaplan.com
2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
Telephone:   (310) 552 - 0130
Facsimile:    (310) 229 - 5800

*Attorneys for Plaintiff Francesca Gregorini*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Francesca Gregorini, | Case No. 2:20-cv-00406-SSS-JC |
| Plaintiff, | *Hon. Sunshine S. Sykes* |
| v. | **PLAINTIFF FRANCESCA GREGORINI'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual; BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive, | Discovery cutoff:    May 17, 2024<br>Pretrial conference:  November 22, 2024<br>Trial:                December 9, 2024<br><br>**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED OCTOBER 9, 2024 (Dkt. 264)]** |
| Defendants. | |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 1

I.    Francesca Gregorini created and released *Emanuel*. ............................ 1

II.   Apple TV+ released *Servant* in 2019. ...................................................... 2

III.  Ms. Gregorini sued Defendants for copyright infringement in 2020. .... 4

ARGUMENT ........................................................................................................ 5

I.    Defendants cannot meet their burden to prove that Ms. Gregorini's copyright registration is invalid. ............................................................. 5

II.   The Court should deny Defendants' motion over access. ...................... 6

    A.    Defendants' motion fails because Emanuel was widely disseminated. ................................................................................. 7

    B.    Defendants' motion fails because several Defendants had direct access to *Emanuel*. ...................................................................... 10

    C.    Striking similarity between *Emanuel* and *Servant* also negates any need to prove access. ............................................................... 12

III.  The Court should deny Defendants' motion because a genuine dispute exists over the substantial similarity between *Emanuel* and *Servant*. .. 12

    A.    Professor Román's expert opinions alone render summary judgment improper. ...................................................................... 13

    B.    Juries resolve disputes about originality/protectability over similar elements across both works. ...................................................... 14

IV.   The Court should not grant summary judgment on the fact-intensive dispute over independent creation. ........................................................ 19

V.    Defendants' motion over *Servant* scripts also fails. ............................. 20

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

VI.   Defendants are not entitled to summary judgment on Ms. Gregorini's secondary liability claims. ........................................................................ 21

VII.  Defendants' motion over indirect profits fails. ..................................... 21

CONCLUSION ........................................................................................... 23

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred v. Walt Disney Co.*,
   821 F. App'x 727, 729 (9th Cir. 2020) .................................................. 15

*Alfred v. Walt Disney Pictures*,
   No. CV 18-8074-CBM(ASX), 2021 WL 6882322 (C.D. Cal. Dec.
   16, 2021) .............................................................................................. 13

*Alfred v. Walt Disney Pictures*,
   No. CV 18-8074-CBM(ASX), 2022 WL 1580807 (C.D. Cal. Mar.
   2, 2022) ................................................................................................ 22

*Anhing Corporation v. Thuan Phong Co. Ltd.*,
   215 F. Supp. 3d 919 (C.D. Cal. 2015) ..................................................... 6

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
   581 F.3d 1138 (9th Cir. 2009) ................................................................. 6

*Bethea v. Burnett*,
   2005 WL 1720631 (C.D. Cal. June 28, 2005) ....................................... 20

*Burns v. Imagine Films Entm't, Inc.*,
   164 F.R.D. 589 (W.D.N.Y. 1996) ......................................................... 22

*Cope v. Warner Recs., Inc.*,
   No. 22-01384, 2023 WL 11827959 (C.D. Cal. June 5, 2023) ................... 7

*Dealertrack, Inc. v. Huber*,
   No. 06–2335, 2008 WL 11337833 (C.D. Cal. July 21, 2008) ................... 6

*Desire, LLC v. Manna Textiles, Inc.*,
   986 F.3d 1253 (9th Cir. 2021) ............................................................... 18

*Dezendorf v. Twentieth Century-Fox Film Corp.*,
   99 F.2d 850, 851 (9th Cir. 1938 ............................................................ 14

*Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy Stud.*,
   No. 16-226, 2016 WL 7486286 (C.D. Cal. May 25, 2016) ............... 14, 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) .......................................................................... 14, 19

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
886 F.2d 1545 (9th Cir. 1989) ............................................................ 21, 22

*Fun With Phonics, LLC v. LeapFrog Enterprises, Inc.*,
No. 09-916, 2010 WL 11404474 (C.D. Cal. Sept. 10, 2010) ........................ 19

*Gray v. Perry*,
No. 15-05642, 2018 WL 3954008 (C.D. Cal. Aug. 13, 2018)
........................................................................................... 8, 9, 11, 19

*Gregorini v. Apple Inc.*,
No. 20-55664, 2022 WL 522307 (9th Cir. Feb. 22, 2022) .................... 4, 12, 16

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*,
446 F.2d 738 (9th Cir. 1971) ................................................................. 5

*Irish Rover v. Sims*,
No.: 20-06293, 2023 WL 4317054 (C.D. Cal. June 30, 2023) ............. 10, 11, 13

*Kaseberg v. Conaco, LLC*
260 F. Supp. 3d 1229 (S.D. Cal. 2017) ................................................. 19, 20

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
676 F.3d 841 (9th Cir. 2012) ................................................... 7, 8, 10, 19

*Lewert v. Boiron, Inc.*,
212 F. Supp. 3d 917 (C.D. Cal. 2016), *aff'd*, 742 F. App'x 282 (9th
Cir. 2018).......................................................................................... 13

*Liuget v. Danney*,
No. 18-01683, 2019 WL 7906432 (C.D. Cal. Dec. 6, 2019) .......................... 14

*Loomis v. Cornish*,
836 F.3d 991 (9th Cir. 2016) ........................................................... 6, 7, 9

*Mackie v. Reiser*,
296 F.3d 909 (9th Cir. 2002) ................................................................ 22

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
922 F.3d 946 (9th Cir. 2019) ................................................................ 12

*Metcalf v. Bochco*,
294 F.3d 1069 (9th Cir. 2002).................................................. 14, 15, 16, 17

*Metro-Goldwyn-Mayer Studios Inc v Grokster, Ltd.,*
   545 U.S. 913 (2005) ................................................................. 21

*Narell v. Freeman,*
   872 F.2d 907 (9th Cir. 1989) .................................................. 18

*Peel & Co. v. Rug Mkt.,*
   238 F.3d 391 (5th Cir. 2001) .................................................... 8

*Polar Bear Productions, Inc. v. Timex Corp.,*
   384 F.3d 700 (9th Cir. 2004) .................................................. 23

*Schaffer v. Litton Loan Servicing, LP,*
   No. 05-07673, 2008 WL 9758641 (C.D. Cal. July 31, 2008) ........................ 5, 6

*Shaw v. Lindheim,*
   919 F.2d 1353 (9th Cir. 1990) .......................................... 16, 17

*Silberstein v. Fox Ent.,*
   424 F. Supp. 2d 616 (S.D.N.Y. 2004) ...................................... 20

*Skidmore v. Zeppelin,*
   952 F.3d 1051 (9th Cir. 2020) .............................................. 16

*Stabile v. Paul Smith,*
   137 F. Supp. 3d 1173 (C.D. Cal. 2015) ................................... 20

*Swirsky v. Carey,*
   376 F.3d 841, 846-47 (9th Cir. 2004 ............................ 13, 14, 18

*Three Boys Music Corp. v. Bolton,*
   212 F.3d 477 (9th Cir. 2000) .................................................. 6

*Twentieth Century-Fox Film Corp. v. MCA, Inc.,*
   715 F.2d 1327 (9th Cir. 1983) ........................................... 12, 16

*Unicolors Inc. v. H&M Hennes & Mauritz L.P.,*
   52 F.4th 1054 (9th Cir. 2022) ................................................. 5

*Unicolors, Inc. v. Urban Outfitters, Inc. Eyeglasses,*
   853 F.3d 980 (9th Cir. 2017) ............................................... 20

*Vargas v. Transeau,*
   514 F. Supp. 2d 439 (S.D.N.Y. 2007) .................................... 12

-vi-

*Walker v. Viacom*,
  2008 WL 2050964 (N.D. Cal. May 13, 2008) ................................................. 20

*Yellowcake, Inc. v. Morena Music, Inc.*,
  522 F. Supp. 3d 747 (E.D. Cal. 2021) .......................................................... 5

*Zamora Radio, LLC v. Last. FM Ltd.*,
  No. 09-cv-20940, 2010 WL 11505226 (S.D. Fla. Jan. 27, 2010) ...................... 21

**Statutes**

17 U.S.C. § 102(a) ........................................................................................... 5

**Court Rules**

Cal. Code Civ. Proc. § 12 ................................................................................ 16

Fed. R. Civ. P. 56(f) ......................................................................................... 6

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

**Introduction**

The Defendants' motion demands the Court hold a mini bench trial, evaluating 14 declarations with over 100 pages of testimony, and reviewing over 1,000 pages and watching 3 hours of videos across 81 exhibits. But they ignore the substantial evidence that genuinely disputes their trial presentation. Defendants ignore that Ms. Gregorini's *Emanuel* was widely renowned for its acclaim and awards at film festivals and in the press. Defendants ignore their extensive familiarity with Ms. Gregorini and her works, and that one Defendant even maintained a direct link to *Emanuel* in his email inbox while Servant was created. They also ignore that the Ninth Circuit found it "improper" for the district court to decide substantial similarity based on the works alone, and that substantial (and striking) similarity is a battle of the experts on this record. The most elementary principles for summary judgment prevent the Court from weighing this competing evidence and resolving credibility disputes now. The Court should deny Defendants' motion.

**Factual Background**

**I.    Francesca Gregorini created and released *Emanuel*.**

Francesca Gregorini is an Emmy-nominated director with acclaimed hits like *Killing Eve* and *The Dropout*. PSOF288. In 2010, she wrote the screenplay for *Emanuel and The Truth about Fishes*. PSOF289. After raising money to develop her screenplay into a film, Ms. Gregorini directed and produced a feature-length indie film renamed as *The Truth About Emanuel* (*Emanuel*). PSOF290-91. *Emanuel* was a female-centric psychological thriller that revolves around an 18-year-old nanny/caretaker who bonds with and forms a tender relationship with an apparently well-functioning mother after she lost her infant, and the nanny/caretaker supports the mother's delusion that a hyper-realistic doll is in fact alive and cares for the doll in that manner. PSOF290.

In 2013, *Emanuel* premiered at the prestigious Sundance Film Festival and earned a nomination for the 2013 Grand Jury Prize – Dramatic. PSOF293. Sundance staff referred to the film as "the most artistically liberated film at the 2013 Sundance Film Festival." PSOF295. *Emanuel* earned widespread recognition and awards from domestic and international festivals. PSOF296-97. In 2014, *Emanuel* premiered in movie theaters across the United States and in London. PSOF298.

*Emanuel* then became available in various non-theater platforms. In 2013, for instance, Apple first made *Emanuel* available to stream on iTunes. PSOF299. *Emanuel* also became available in more than 50 million homes in the United States and Canada through on-demand and then other streaming options, like Amazon Watch Instantly, VUDU, Xbox, Sony PlayStation, Google Play, and YouTube. PSOF300. *Emanuel* was available through DVD and Blu-ray platforms, like Amazon Video Direct, and Redbox, among others. PSOF301. Comcast, Charter, Cox, and Xfinity made *Emanuel* available over cable. PSOF302. Finally, *Emanuel* has been available on Amazon Prime, Netflix, and Hulu. PSOF301-03.

## II.    Apple TV+ released *Servant* in 2019.

From 2005 through 2012, Mr. Basgallop developed materials for a television series and later for a novel called *Practically Perfect*. PSOF304-05. He maintains that his personal life served as a foundation for them, "a true story (sort of)." PSOF306. These male-centric works addressed ██████████████ ████████████████████████████████ PSOF307-08. No company chose to produce or publish *Practically Perfect*. PSOF311-15. By 2015, for instance, Mr. Basgallop complained that *Practically Perfect* was "treated like a $5 crack whore with an anal prolapse." PSOF317.

Before 2016, Mr. Basgallop had no work that involved a reborn or life-like doll. PSOF309-10. He claims he discussed a fleeting scene from *The Leftovers* in a writer's room on a different show in 2014 that inspired him to redraft *Practically*

-2-

*Perfect* around this concept in 2016. PSOF325. Mr. Basgallop does not have a single document or witness to corroborate this story. PSOF148.

In 2016, Zack Van Amburg, Jamie Erlicht, and Max Aronson were executives at Sony Pictures TV. PSOF326. They all knew and worked with Ms. Gregorini as a director on Sony's show *Electric Dreams*. PSOF327. In 2017, Mr. Aronson, along with Mr. Van Amburg and Mr. Erlicht left Sony to become executives at Apple to launch its new streaming television unit, Apple TV+. PSOF330.

In 2018, Mr. Basgallop, M. Night Shyamalan, and Ashwin Rajan, among others, met with Mr. Van Amburg, Mr. Erlicht, Matt Cherniss, and Mr. Aronson at Apple to discuss a new television series. PSOF331. Following this meeting, Apple decided to move forward with Season 1 of *Servant.* PSOF332. These same individuals worked on the creation and development of *Servant*. PSOF345. Multiple defendants knew about *Emanuel* through their consideration of Ms. Gregorini for director roles (including for *Servant*) and consideration of Jimmi Simpson, who played Arthur in *Emanuel*, for roles as Julian or Sean in *Servant* too. PSOF326-28, 347-49. Mr. Aronson even joined his colleague Ms. Woodruff at an interview of Ms. Gregorini to work as a director on an Apple series. PSOF346. When Apple considered Ms. Gregorini for a director role, in fact, Mr. Aronson received an email with a direct link to watch *Emanuel*. PSOF264.

In 2019, Apple TV + released *Servant* over the coveted Thanksgiving weekend to launch Apple TV +. PSOF350. *Servant* is a female-centric psychological thriller that revolves around an 18-year-old nanny/caretaker who bonds with and forms a tender relationship with an apparently well-functioning mother after she lost her infant, and the nanny/caretaker supports the mother's delusion that a hyper-realistic doll is in fact alive and cares for the doll in that manner. PSOF351. Based on the show's success, Apple greenlit seasons 2-4 to continue the story and characters. PSOF352, 416.

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

### III.    Ms. Gregorini sued Defendants for copyright infringement in 2020.

The case history is long. Judge John F. Walter granted Defendants' motion to dismiss in 2020. Dkt. 39. The Ninth Circuit reversed, holding that dismissal was "improper" because "reasonable minds could differ on the issue of substantial similarity." *Gregorini v. Apple Inc.*, No. 20-55664, 2022 WL 522307, at *1 (9th Cir. Feb. 22, 2022) (internal quotations omitted). The Ninth Circuit explained further that expert testimony "in particular' was useful to evaluate the extent and qualitative importance of the similarities. *Id.*

On remand, the parties completed fact discovery, including Defendants' extensive third-party discovery. One third party was Sarah Thorp, who once had a close relationship with Ms. Gregorini. PSOF353-54, 362. Ms. Thorp had orally discussed an idea for a story with Ms. Gregorini. PSOF355-57. That discussion lasted less than five minutes. PSOF355. Ms. Thorp's idea was undeveloped and completely different from what became *Emanuel*. PSOF356-61. This brief conversation unfortunately led to a quarrel between friends that they later resolved, as Ms. Thorp agreed that Ms. Gregorini owned "100%" of the copyright in *Emanuel*. PSOF362.

After fact discovery closed, the parties completed expert discovery. Ms. Gregorini disclosed three experts: (1) Professor David Román, who will testify about the striking and substantial similarity between *Emanuel* and *Servant*, and the dramatic differences between *Practically Perfect* before *Emanuel* and what became *Servant*; (2) Ellen Pittleman, an industry executive who will testify about the context for *Emanuel*'s widespread dissemination and the causal nexus between *Servant*'s episodes 1-3 and later episodes and seasons; and (3) Dominic Persechini, a damages expert who will testify about Defendants' revenue and profits from *Servant*. PSOF364.

Ms. Gregorini is ready for jury trial on December 9, 2024. Dkt. 132.

## Argument

### I.   Defendants cannot meet their burden to prove that Ms. Gregorini's copyright registration is invalid.

Defendants' lead argument epitomizes the motion's futility because they cannot meet their summary judgment burden on even one prong of the three-part test. First, basic principles of copyright law refute any notion that the copyright application includes an inaccuracy. Copyright law does not protect ideas alone, only expressions of ideas. *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 740 (9th Cir. 1971). To qualify as an author for a copyright registration, an individual needs to contribute to the original expression in a *fixed medium*. 17 U.S.C. § 102(a); *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 762 (E.D. Cal. 2021) (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) ("[T]o be an author, one must supply more than mere direction or ideas; one must 'translate an idea into a fixed tangible expression entitled to copyright protection.'"). Here, the record is undisputed that Ms. Thorp only shared—"fairly briefly"—an unwritten idea through an oral conversation with Ms. Gregorini. PSOF355. Her idea was not fixed in a tangible medium and was merely a high-level idea. Ms. Thorp could never qualify as a co-author under copyright law. PSOF356-58. Even then, Ms. Thorp's undeveloped and unwritten idea is materially different from what Ms. Gregorini conceived and developed into *Emanuel*. PSOF359-61. Ms. Thorp is irrelevant to the federal copyright registration for *Emanuel* and not a basis to render the copyright inaccurate or invalid.

Second, the Defendants failed to eliminate any genuine dispute about whether Ms. Gregorini intended to defraud the Copyright Office. *See, e.g.*, *Unicolors Inc. v. H&M Hennes & Mauritz L.P.*, 52 F.4th 1054, 1069 (9th Cir. 2022) (explaining that lack of intent to defraud means lack of knowledge about inaccuracies). To start, courts seldom find fraudulent intent on summary judgment. *See, e.g.*, *Schaffer v. Litton Loan Servicing, LP*, No. 05–07673, 2008 WL 9758641,

1    at *10 (C.D. Cal. July 31, 2008). This case is no exception because Ms. Thorp

2    concedes that "100%" of any copyright interest in the *Emanuel* screenplay belongs

3    to Ms. Gregorini. PSOF362. No intent to defraud the Copyright Office can exist

4    because *both* believe—then and now—that Ms. Gregorini owns the entire

5    copyright to *Emanuel*. Far from summary judgment in Defendants' favor, courts

6    routinely grant summary judgment against defendants in similar motions. *See, e.g.*,

7    *Anhing Corporation v. Thuan Phong Co. Ltd.,* 215 F. Supp. 3d 919, 935 (C.D. Cal.

8    2015); *Dealertrack, Inc. v. Huber*, No. 06–2335, 2008 WL 11337833 at *4 (C.D.

9    Cal. July 21, 2008) (granting summary judgment because no intent to deceive the

10   patent office over inventorship).

11       Third, Defendants cannot prove materiality because, again, Ms. Thorp

12   concedes that all ownership rights to the copyright in *Emanuel* belongs to Ms.

13   Gregorini. Put differently, Defendants' work-for-hire argument would not change

14   the outcome at the Copyright Office because Ms. Thorp has no interest in any

15   copyright to *Emanuel.* PSOF363. On this record, in fact, the Court should grant

16   summary judgment in Ms. Gregorini's favor to avoid Defendants' digressions over

17   this frivolous dispute at trial. *See* Fed. R. Civ. P. 56(f). But the Court may not grant

18   Defendants' motion based on Ms. Gregorini's contested evidence for each prong.

19   **II.    The Court should deny Defendants' motion over access.**

20       Access is simply "an opportunity to view or to copy plaintiff's work."

21   *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016). "To prove access," Ms.

22   Gregorini need only show "*a reasonable possibility*" that Defendants "had the

23   *chance* to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581

24   F.3d 1138, 1143 (9th Cir. 2009) (emphasis added). Even when "distinguishing a

25   bare possibility from a reasonable possibility" may "present a close question," that

26   question is for the jury. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482, 485

27   (9th Cir. 2000). And those close questions over access are often proven through

28

circumstantial evidence. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846-47 (9th Cir. 2012). Defendants' motion fails for three reasons.

## A.    Defendants' motion fails because Emanuel was widely disseminated.

First, Ms. Gregorini can show a genuine fact dispute over widespread dissemination. *Id.* at 846-47. Widespread dissemination occurs when a work achieves substantial "commercial success *or* notoriety." *Cope v. Warner Recs., Inc.*, No. 22-01384, 2023 WL 11827959, at *4 (C.D. Cal. June 5, 2023). Courts recognize that no specific threshold for widespread dissemination exists because sufficient evidence "will vary from case to case." *Loomis,* 836 F.3d at 997. Defendants ignore the vast evidence that proves a triable issue over *Emanuel*'s widespread notoriety.

In January 2013, *Emanuel* premiered at the Sundance Film Festival, one of the most renowned film festivals in the world. PSOF293-95. *Emanuel* then showed at *many* film festivals around the world:

- Sundance London
- Ashland Independent Brooklyn
- Provincetown
- LA Femme International
- Marfa
- Big Eddy
- Cannes Film Market
- Bend

- Woodstock
- Morelia
- Key West
- Cine-World
- Starz Denver
- Hawaii International
- Crested Butte
- Rio de Janeiro

PSOF296-97. That *Emanuel* starred A-list actors, like Jessica Biel and Alfred Molina, only enhanced the film's prominence at these festivals and throughout the entertainment industry. PSOF292.

1    *Emanuel*'s renown was well earned and well documented too, including on

2    its website. PSOF418. *Emanuel* received many awards, like the Ashland

3    Independent Film Award for Best Acting Ensemble: Feature; the Gerald Hirschfeld

4    A.S.C. Cinematography Award; and it was nominated for Sundance's 2013 Grand

5    Jury Prize – Dramatic. PSOF293. Ms. Gregorini also won the LA Femme

6    Filmmaker Award for Best Feature Director for *Emanuel*. PSOF297. The LA

7    TIMES and *Rolling Stones*, for instance, featured *Emanuel*. PSOF294. So too did

8    some of the most influential industry publications in the world, like *Variety*,

9    *Deadline*, and the *Hollywood Reporter*. PSOF294.

10   The entertainment industry's interest in *Emanuel* bears special import here.

11   Courts recognize that widespread dissemination is often industry specific. *See, e.g.*,

12   *L.A. Printex*, 676 F.3d at 848 (reversing summary judgment "because "[a]

13   reasonable jury could find that C30020 was widely disseminated in *the Los

14   Angeles-area fabric industry*") (emphasis added); *Peel & Co. v. Rug Mkt.,* 238

15   F.3d 391, 397 (5th Cir. 2001) (focusing on dissemination in "the United States rug

16   trade"). Even without commercial success, a work is widely disseminated when

17   "readily available in the relevant market." *Gray v. Perry*, No. 15-05642, 2018 WL

18   3954008, at *5 (C.D. Cal. Aug. 13, 2018). Ms. Gregorini's expert (Ellen Pittleman)

19   will demonstrate the importance of film festivals, especially within the

20   entertainment industry. PSOF364-66. For example, the entertainment industry

21   closely follows film festivals to scout up-and-coming talent. PSOF364-66.

22   *Emanuel* was uniquely attractive in this context because Ms. Gregorini was

23   considered an up-and-coming female director when demand for female directors

24   had just started to increase. PSOF368.

25   Defendants had reason to track *Emanuel*'s notoriety too. *Emanuel* premiered

26   in the "Dramatic Competition" at Sundance—the same genre that Defendants work

27   in. PSOF369-71. Mr. Shyamalan sends representatives to film festivals like those

28   featuring *Emanuel*. PSOF367. Defendants' also regularly read the entertainment

-8-

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

industry publications *Emanuel* was featured in. PSOF369. They routinely watch movies of the same type as *Emanuel*. PSOF370. As Mr. Basgallop explained, "I like thrillers. I like independent films more than big-budget blockbusters. I like things -- anything with a -- kind of a unique and distinctive voice to it." PSOF371, 320-24. That description fits *Emanuel* to a tee. These collective circumstances create a triable issue over notoriety and saturation in entertainment industry. *See, e.g.*, *Gray*, 2018 WL 5095118, at *4 (C.D. Cal. Oct. 17, 2018) (citing *Loomis*, 836 F.3d at 997-98) (addressing "saturation in a relevant market in which [both parties] participate.").

*Emanuel*'s extensive distribution enhances this conclusion. Far from "mere availability of a work online," *Emanuel* has also been widely available through many platforms. *Emanuel* was also released across the country and world in theaters, including in New York, Los Angeles, San Diego, Phoenix, Philadelphia, Minneapolis, Denver, Miami, Dallas, Houston, Milwaukee, and London. PSOF 232, 296. And based on the significant acclaim above, *Emanuel* secured a distribution deal with Myriad Pictures for international distribution and with Tribeca Films and WellGo USA for domestic distribution. PSOF300. *Emanuel* was released through a broad range of distribution channels across the world. PSOF300. The film was available for sale and rental on DVD. PSOF241. It was available on-demand in more than 50 million homes in the U.S. and Canada. PSOF300. On top of that, *Emanuel* was available across many streaming services, like Hulu, iTunes, Amazon Watch Instantly, VUDU, Xbox, Sony PlayStation, Google Play, and YouTube. PSOF301-03.

Defendants' argument is generally limited to how *Emanuel* performed commercially. Dkt. 180 at 11:20-22. But courts reject any threshold commercial success requirement. *See, e.g.*, *Gray*, 2018 WL 5095118, at *4 (C.D. Cal. Oct. 17, 2018) ("So while plaintiffs have not shown evidence of commercial success, they have demonstrated a triable issue of fact as to access"). Like *Gray*, any challenges

-9-

1  Defendants may respond with over the "meaningfulness" of *Emanuel*'s notoriety

2  above, or concerns over commercial activity, "are questions of fact to be resolved

3  by the jury." *Id.* So too here.

4       **B.      Defendants' motion fails because several Defendants had direct**

5       **access to *Emanuel*.**

6       Second, Ms. Gregorini has shown a genuine fact dispute by "establishing a

7  chain of events linking the plaintiff's work and the defendant's access." *L.A.*

8  *Printex*, 676 F.3d at 846-47. In the context of an infringing television show, for

9  instance, one person's access creates a triable issue across all defendants involved

10 in the television show. *See, e.g.*, *Irish Rover v. Sims*, No.: 20-06293, 2023 WL

11 4317054, at *6 (C.D. Cal. June 30, 2023) (finding one artist's access sufficient to

12 overcome summary judgment on access for all defendants over *Stranger Things*

13 show). Here, various individuals involved with *Servant* had direct access to

14 *Emanuel* before *Servant* even began production in summer 2018, and before the

15 *Servant* episodes were completed. PSOF175. (*Servant* evolved significantly over

16 the course of Defendants' work on the scripts and then the television show before

17 being completed in 2019. PSOF304-19.)

18      Start with Mr. Aronson. Before he worked on *Servant*, Mr. Aronson

19 considered and hired Ms. Gregorini as a director on a television show for Sony in

20 2017. PSOF326-29. Through this work, and Apple's later consideration of Ms.

21 Gregorini, Mr. Aronson had direct access to *Emanuel*. PSOF328, 346-49. And

22 after his access, Mr. Aronson later reviewed, provided input on, and approved

23 scripts and creative direction for *Servant*. PSOF345. He even met with Ms.

24 Gregorini when his co-executive interviewed her for projects including an untitled

25 show with Mr. Shyamalan. PSOF346. His access alone dooms Defendants'

26 motion.

27      But Mr. Aronson is not the only Apple employee who had access to

28 *Emanuel* before *Servant*. Mr. Van Amburg and Mr. Erlicht, both top Apple

executives tasked with launching Apple TV+, were familiar with Ms. Gregorini and her work. PSOF326-27. They both knew and worked with Ms. Gregorini when she directed *Electric Dreams* at Sony. PSOF326-27. Both a reasonable inference, and Ms. Pittleman's expert testimony, allow the jury to conclude that these executives were familiar with Ms. Gregorini's highest profile work on *Emanuel* under the circumstances. PSOF326-28. The same is true for similar submissions to Defendants Blinding Edge and its executive, Mr. Rajan. PSOF345-49, 374-75. And Mr. Van Amburg, Mr. Erlicht, and Mr. Rajan were involved from the start of *Servant*. PSOF345-49.

The record also creates a triable issue over Mr. Basgallop's access to *Emanuel*. To start, Mr. Basgallop lived in both London and Los Angeles, where *Emanuel* screened at two high-profile film festivals, before 2016. PSOF296, 320-24. Ms. Gregorini was also considered for a director role on a television show that Mr. Basgallop wrote and produced, *Berlin Station*. PSOF372. As a co-executive producer and writer, Mr. Basgallop would have had a say in director selection and access to their submissions. PSOF373. And Ms. Gregorini's agent will testify that it was her practice to submit a list and provide access to Ms. Gregorini's prior work, including *Emanuel*, during consideration for director roles. PSOF329. Drawing reasonable inferences in Ms. Gregorini's favor here, a triable dispute exists over Mr. Basgallop's "reasonable possibility" to view *Emanuel*.

The Defendants' only argument is to deny individual access. PSOF257-264. But mere denials do not warrant summary judgment. *See, e.g.*, *Gray*, 2018 WL 3954008, at 2; *Irish Rover*, 2023 WL 4317054, at *6. Defendants' deep exposure to *Emanuel* substantiates its widespread dissemination in the entertainment industry too. A jury should evaluate this full record and Defendants' credibility to decide this dispute over access.

**C.    Striking similarity between *Emanuel* and *Servant* also negates any need to prove access.**

Third, a triable issue exists over the striking similarity between *Emanuel* and *Servant*. PSOF376-414. "Where two works are strikingly similar, access may be inferred." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019). Striking similarity is "a question of fact to be left to the jury where reasonable minds could differ[.]" *Vargas v. Transeau*, 514 F. Supp. 2d 439, 443 (S.D.N.Y. 2007). Plaintiff's expert, Professor David Román, will testify to his opinions on the works' striking similarities. PSOF364. And the jury may assess the striking similarity independently as well. PSOF376-414. This fact issue negates any need to prove access, and so the Court should deny Defendants' motion for this reason as well.

**III.    The Court should deny Defendants' motion because a genuine dispute exists over the substantial similarity between *Emanuel* and *Servant*.**

The Ninth Circuit has emphasized—in this case no less—that summary judgment over substantial similarity "has traditionally been disfavored in copyright litigation." *See, e.g.*, *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, n.6 (9th Cir. 1983); *Gregorini v. Apple*, Nos. 20-55664, 20-55846, 2022 WL 522307, at *1 (9th Cir. Feb. 22, 2022). The Ninth Circuit's reversal makes two conclusions for this motion clear: (1) expert testimony is relevant to this issue, and (2) "reasonable minds could differ" over substantial similarity when comparing the two works alone, so judgment as a matter of law is "improper." *Gregorini*, 2022 WL 522307, at *1. After the Ninth Circuit's decision and remand, this Court even previewed why it "is unlikely to be able to rule as a matter of law on the question of substantial similarity." Dkt. 99 at 10. The record now only underscores this well-reasoned observation.

**A.**     **Professor Román's expert opinions alone render summary judgment improper.**

Basic summary judgment principles prevent this Court from disregarding opinions from Ms. Gregorini's expert, Professor Román, at this stage. "[T]he Court is precluded from granting summary judgment in either side's favor" when the "case boils down to a battle of the experts" which and such a battle "must be left for the jury's resolution." *Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 937 (C.D. Cal. 2016), *aff'd*, 742 F. App'x 282 (9th Cir. 2018) (collecting cases). Courts naturally apply this elementary proposition in copyright cases to deny summary judgment:

- *Alfred v. Walt Disney Pictures*, No. 18-8074, 2021 WL 6882322, at *3 (C.D. Cal. Dec. 16, 2021): "Accordingly, because the parties' expert opinions create a genuine issue of disputed fact regarding whether the works are substantially similar, the Court denies Defendant's Motion for Summary Judgment on the issue of substantial similarity."

- *Irish Rover*, 20-06293, 2023 WL 4317054, at *7: denying summary judgment on substantial similarity because the "Plaintiff has presented expert testimony to establish components that are common to both works including the areas of character, plot, sequence of events, theme, setting, mood, tone, pace, and dialogue."

- *Swirsky v. Carey*, 376 F.3d 841, 846-47 (9th Cir. 2004): reversing summary judgment because district court erred by discounting copyright owner's expert.

Thus, Professor Román's opinion about similarities between works, along with his opinion about the qualitative importance of those similarities, is alone grounds for the Court to deny Defendants' motion. PSOF364.

Nor may this Court credit Defendants' expert witness, Bob Gale, on Defendants' motion. *See, e.g.*, PSOF270. To accept Mr. Gale's opinions would

1  violate the two things forbidden on summary judgment: weighing evidence and

2  making credibility determinations. *Liuget v. Danney*, No. 18-01683, 2019 WL

3  7906432, at *4 (C.D. Cal. Dec. 6, 2019).

4      **B.    Juries resolve disputes about originality/protectability over**

5      **similar elements across both works.**

6      Even without expert testimony, Defendants' motion over substantial

7  similarity still fails. Defendants' motion ignores the originality standard, which is a

8  low standard: "the requisite level of creativity is extremely low; even a slight

9  amount will suffice." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345

10 (1991). This standard controls any dispute over protectability in a copyrighted

11 work. Indeed, courts use "original" and "protected" interchangeably. *See, e.g.*,

12 *Swirsky*, 376 F.3d at 844. And a work may include protectible elements in

13 isolation, or through an original selection and arrangement of unprotectible

14 elements. *See, e.g.*, *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002). Either

15 way, disputes over originality (and thus protectability) present classic fact issues

16 for the jury. *See, e.g.*, *Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy

17 Stud.*, No. 16-226, 2016 WL 7486286, at *5 (C.D. Cal. May 25, 2016) (explaining

18 "question of originality in copyright law 'is one of fact, not law'" (quoting

19 *Dezendorf v. Twentieth Century-Fox Film Corp.*, 99 F.2d 850, 851 (9th Cir.

20 1938))). Such a fact issue exists here under two separate theories.

21     **Original Selection-and-Arrangement**. The seminal case about summary

22 judgment over original selection-and-arrangement of elements in a television show

23 is *Metcalf.* 294 F.3d at 1069. There, the Ninth Circuit observed that the setting was

24 "set in overburdened county hospitals in inner-city Los Angeles with mostly black

25 staffs" and "deal[t] with issues of poverty, race relationships and urban blight." *Id.*

26 at 1073. The main character is a "young, good-looking, muscular" surgeon who

27 grew up in the hospital's neighborhood, and struggles "to choose between the

28 financial benefits of private practice and the emotional rewards of working in the

-14-

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

inner city." *Id.* This character also develops a strong attraction to a hospital
administrator who is in her thirties, divorced, and devoted to the hospital. *Id.* As to
plot, the court recounted that "the hospital's bid for reaccreditation is vehemently
opposed by a Hispanic politician." *Id.* at 1074. This selection and arrangement of
elements—and no more—was sufficiently original (and thus protectible) to survive
summary judgment. *Id.*

To be clear, whether any of these elements above was individually
protectible was irrelevant. The Ninth Circuit explained in *Metcalf*, "one cannot
copyright the idea of an idealistic young professional choosing between financial
and emotional reward, or of love triangles among young professionals that
eventually become strained, or of political forces interfering with private action."
294 F.3d at 1074. But the combination of even generic elements "can itself be a
protectible element" sufficient to overcome summary judgment. *Id.*; *see also
Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020) ("the district
court erred by failing to compare the original selection and arrangement of the
unprotectible elements between the two works").

Ms. Gregorini's original selection and arrangement of expressive elements
in *Emanuel* far surpasses what sufficed in *Metcalf*. Both works feature a
psychological thriller set in an affluent Victorian-style home and neighborhood.
PSOF399. The main character in both works is a nanny/caretaker who is a pretty
18-year-old girl with long dark hair, blue eyes, fair white skin, and a troubled and
mysterious background. PSOF400. The works revolve around the
nanny/caretaker's interactions with a grief-stricken mother who is in her late 30s,
lives in privilege, but is trapped in delusion after losing her first and only baby,
even though she still appears confident and self-possessed to others. PSOF401,
415. The mother cares for a hyper-realistic, life-like doll about three-months old
with patchy dark hair that is spoken to, bathed, and dressed by the mother and
nanny/caretaker as if it were alive, which bonds the mother and nanny/caretaker

-15-

because the nanny/caretaker supports the mother's delusion. PSOF402. The life-like doll also later appears in human form. PSOF403. Both works feature a father who explains to the nanny/caretaker what happened with the birth, death, and mother's grief resulting in the doll. PSOF404. Scenes from both works express sensual undertones between the mother and nanny/caretaker. PSOF405. Both works include cinematographic use of supernatural elements. PSOF406. An ominous, tense, and suspenseful mood based on the risk of uncovering secrets, while featuring humor, irony, and sarcasm in each work as well. PSOF407. And a theme of delusion, based on trauma, that involves complicity from others, underlies both works. PSOF408.

Defendants offer no credible support for their argument either. Dkt. 182-2 at 18. The only case they rely on is *Skidmore v. Zeppelin*, a music case about a four-bar passage in a song, for which the plaintiff never even presented any selection-and-arrangement argument to the jury. 952 F.3d 1051, 1072 (9th Cir. 2020). And their continued reliance on the court's order on their Rule 12 motion fails because the Ninth Circuit reversed it. Dkt. 182-2 at 18.

**The Extrinsic Element Factors.** The Ninth Circuit looks at eight factors for the extrinsic test in disputes over films and television shows. *Metcalf*, 294 F.3d at 1073. Courts evaluate these factors holistically and do not require a copyright owner to prove similarity across each factor. *See, e.g.*, *id.* at 1073-74 (finding triable issue based on similarities across setting, characters, and plot); *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir. 1990) (finding triable issue even though mood, setting, and pace "do not weigh heavily in our decision"). And the Defendants continue to ignore that the Ninth Circuit already held that "reasonable minds could differ on the issue of substantial similarity"—the *exact* standard for summary judgment. *Cf. Gregorini*, 2022 WL 522307, at *1 *with e.g.*, *Twentieth Century-Fox Film Corp.*, 715 F.2d at 1329-30 (reversing summary judgment because "reasonable minds could differ" over substantial similarity); *see also* Dkt.

99 at 9 (explaining that objective comparison of *Emanuel* and *Servant* "is the very same analysis that the Ninth Circuit has already found insufficient to resolve the question of extrinsic similarity in this case").

**Characters.** The expressive traits across characters in *Emanuel* and *Servant* are substantially similar. Courts require a minimal showing on this factor. *See, e.g.*, *Shaw*, 919 F.2d at 1363 (finding main characters substantially similar because they were "well dressed, wealthy and have expensive tastes. The most striking similarity is their self-assuredness, and unshakeable faith in the satisfactory outcome of any difficult situation."); *Metcalf*, 294 F.3d at 1073 (focusing on "young, good-looking, muscular black surgeons who grew up in the neighborhood where the hospital is located"). The expressive traits for the nanny/caretaker with a tragic past (Emanuel/Leanne), the first-time mother who lost her baby (Linda/Dorothy), the life-like baby doll (Chloe/Jericho), the emotionally-stable father (Thomas/Sean), and young male love interest (Claude/Tobe)—and the combination of these characters together—create a triable issue here. PSOF400-402.

**Plot, Sequence, and Pace.** The Ninth Circuit defined "the sequence of events" as the way "the author expresses the theme or idea[.]" *Shaw*, 919 F.2d at 1363. A "sufficiently concrete" pattern supports a substantial similarity finding. *Id.* Such a pattern exists across *Emanuel* and *Servant* based on the relationship between mother, nanny/caretaker, and doll; psychological tensions; and sensual undertones between the mother and nanny/caretaker, along with specific scenes like the mother and nanny/caretaker interview and the doll-on-the-floor. PSOF383, 400-05. Both works likewise follow the same chronological pattern: (1) a mother loses a child under mysterious circumstances, (2) a life-like doll replaces the dead infant, (3) the mother hires a nanny to care for the doll, (4) the mother and the nanny bond over caring for the doll, and then (5) the mother's delusions about the doll take over the story. PSOF409. Finally, the pacing for both works unfolds

quickly and builds narrative momentum as the stories unfold, disrupted by supernatural elements. PSOF410.

**Setting.**  Both works take place in affluent Victorian-style neighborhoods. PSOF399. The centerpiece for both works is the mother's home, and within it, the nursery. PSOF411. Both works feature well-designed, maintained, and pristine multi-story homes that have a downstairs dining room, kitchen, living room, and a foyer that leads to a large wood staircase that goes to the nursery. PSOF412. The nursery in both works is hyper-clean, nearly sterile, with specific expressive aesthetics, like a vintage crib, vintage rocking horse, and striped wallpaper. PSOF413.

**Tone and Mood.**  The tone and mood for each work is suspense, yet also include humor, irony, and sarcasm. PSOF407.

**Dialogue.**  The overlap in specific dialogue is minimal, although as explained above, no individual factor is necessary.

**Theme.**  The theme for both works feature delusion, especially based on trauma, that involves the complicity of denial by others. PSOF408.

Defendants' abstract and scattershot arguments about filtration principles warrant no relief on summary judgment either. Dkt. 180 at 14. What qualifies as generic or a general plot versus original and protected expressions is a fact question for the jury. *See, e.g.*, *Divine Dharma*, No. 16-226, 2016 WL 7486286, at *5. Scénes á faire likewise are notoriously improper for summary judgment on a contested record. *See Swirsky*, 376 F.3d at 850 ("It is inappropriate to grant summary judgment on the basis of *scenes a faire* without independent evidence, unless the allegation of *scenes a faire* is uncontested."). While a historical fact by itself may not be protected, the expression of facts—particularly in a fictional work—clearly is. *Cf. Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989). The mere presence of an individual element in a prior work is also irrelevant to any issue before the Court now. *See, e.g.*, *Desire, LLC v. Manna Textiles, Inc.*, 986

F.3d 1253, 1259 (9th Cir. 2021) (rejecting "prior art" arguments); *Feist Publ'ns*, 499 U.S. at 358 ("[N]ovelty is not required."). Nor can Defendants rely on their perceived differences between *Emanuel* and *Servant* to excuse their copying of similarities. *L.A. Printex*, 676 F.3d at 852 ("no plagiarist can excuse the wrong by showing how much of his work he did not pirate.") (internal quotation omitted).

## IV.   The Court should not grant summary judgment on the fact-intensive dispute over independent creation.

Independent creation is a "factual issue . . . for trial to resolve." *Gray*, No. 15-05642, 2020 WL 1275221, at *14 (omission in original). Courts reach this conclusion in part because credibility is essential to an independent creation defense. *See, e.g.*, *Fun With Phonics, LLC v. LeapFrog Enterprises, Inc.*, 09-916, 2010 WL 11404474 at *9 (C.D. Cal. Sept. 10, 2010); *Kaseberg v. Conaco, LLC* 260 F. Supp. 3d 1229, 1247 (S.D. Cal. 2017). That this Court does not make credibility determinations on summary judgment is alone grounds to deny Defendants' motion.

Defendants' self-serving version of the development of *Practically Perfect* into *Servant* is also demonstrably disputed. Before *Emanuel* was accessible, *Practically Perfect* was a crude male-centric work littered with raunchy sex acts from the male lead character's perspective. PSOF304-10. And after *Emanuel* became accessible, the tone and substance for this work transformed. PSOF292-303, 304-10, 320-24, 351. Only after *Emanuel* did *Servant* became a story with a lead female character that featured a tender relationship between a grieving mother and a young woman. PSOF292-303, 304-10, 320-24, 351. In fact, the record is undisputed that the core selection-and-arrangement combination that exists in *Emanuel* and *Servant*, most critically the entire character and story arc expressions about a mother and nanny's care for a life-like doll to indulge the mother's tragic delusion, is absent from pre-*Emanuel* versions of *Practically Perfect*. PSOF130-43, 304-18.

Defendants' own case law exemplifies why their motion must fail too. Case law in the Ninth Circuit on independent creation reflects an "interrelatedness" between access and substantial similarity, as none of the cited cases "award summary judgment based solely on the grounds of independent creation." *See, e.g.*, *Kaseberg*, 260 F. Supp. 3d at 1247. And like *Kaseberg*, none of Defendants' case law grants summary judgment only on independent creation. *See Silberstein v. Fox Ent.*, 424 F. Supp. 2d 616, 628-29 (S.D.N.Y. 2004) (no substantial similarity or access); *Stabile v. Paul Smith*, 137 F. Supp. 3d 1173, 1191 (C.D. Cal. 2015) (no access); *Walker v. Viacom*, 2008 WL 2050964 at *6 (N.D. Cal. May 13, 2008) (no access); *Bethea v. Burnett*, 2005 WL 1720631 (C.D. Cal. June 28, 2005) (no substantial similarity). Nor are any of these cases factually analogous, as they involve unbroken chains of development over short time frames. Mr. Basgallop's work, in contrast, transcended 15 years with substantial lapses—most notably the years-long gap that included *Emanuel*'s release and then a fundamental change in the core story arc, character traits, tone, theme, among other aspects in *Practically Perfect*. PSOF130, 304-18, 320-24.

A final independent basis to deny the Defendants' motion is the striking similarity in cinematographic expressions. "Striking similarity" between works renders it "unnecessary to consider . . . independent creation, coincidence, a prior common source, or any source other than copying." *Unicolors, Inc. v. Urban Outfitters, Inc. Eyeglasses*, 853 F.3d 980, 983 (9th Cir. 2017). Here, the visual expressions in *Emanuel* are strikingly similar to those in *Servant*. PSOF376-88. And those visual expressions do not exist in any *Practically Perfect* iteration.

## V.    Defendants' motion over *Servant* scripts also fails.

Defendants' motion fails for the same reason that it fails over the series: the Court should not decide substantial similarity on summary judgment. The scripts to the series contain some of the expressive similarities that create a genuine factual dispute—most notably the addition of the life-like doll and the mother's delusion

about it which the nanny/caretaker supports—and rendered it "improper" for the district court to decide based on the works alone. PSOF399-408.

## VI.    Defendants are not entitled to summary judgment on Ms. Gregorini's secondary liability claims.

According to the Supreme Court, "the lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn." *Metro-Goldwyn-Mayer Studios Inc. v Grokster, Ltd*., 545 U.S. 913, 930 n.9 (2005). Neither are the lines delineating Defendants' work on *Servant*. Defendants worked collaboratively on *Servant*'s episodes 1-3. PSOF333-344, 345-49. Defendants received financial benefits and recognition for their work on *Servant*. PSOF333-44, 365. If all Defendants are not found to have directly infringed *Emanuel*, then in the alternative, the remaining Defendants (except for Steve Tisch) are contributorily or vicariously liable for the infringement because they encouraged it and profited from *Servant* "while declining to exercise a right to stop or limit" the infringement. *Metro-Goldwyn-Mayer*, 545 U.S. at 930. Apple, for example, funded the production with a straight-to-series order, had final approval over casting and director choices, and had a role in shaping the creative direction of episodes 1-3. Dkt. 180-8 ¶¶ 12-13. Based on these facts and the credibility determinations necessary to find out each Defendant's work on *Servant*, Ms. Gregorini may pursue alternative legal theories based on Defendants' misconduct at trial, *Zamora Radio, LLC v. Last. FM Ltd.*, No. 09-cv-20940, 2010 WL 11505226, at *5 (S.D. Fla. Jan. 27, 2010), and the Court should deny Defendants' motion.

## VII.    Defendants' motion over indirect profits fails.

The Ninth Circuit's foundational case on indirect profits is *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545 (9th Cir. 1989). There, the infringement was one act in a ten-act show at the MGM Grand. *Id.* at 1547-48. Relevant here, the Ninth Circuit held that the copyright owner was entitled both to direct profits from ticket sales to the infringing show, and indirect profits from the

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

hotel and gaming operations, like profits from the casino, restaurants, and guest accommodations. *Id.* at 1550.

Two district court cases apply this principle to films. In *Alfred v. Walt Disney Pictures*, the plaintiffs alleged that the *Pirates of the Caribbean* film infringed their copyright. No. 18-8074, Dkt. 243 (C.D. Cal. May 13, 2022). They also sought indirect profits from the sequels that did not infringe. *Id.* There, the court agreed that "the sequels are *an extension of and borrow elements* from the original movie. The Court finds that Plaintiffs have established a sufficient causal nexus to support their claim for financial information regarding the sequels." *Id.* at 5. The district court in *Burns v. Imagine Films Entm't, Inc.*, reached the same conclusion when the plaintiff alleged that the *Backdraft* film infringed his copyright and sought indirect profits on a non-infringing theme park ride. 164 F.R.D. 589, 592 (W.D.N.Y. 1996). The court recognized that the theme park "attraction would not exist *but for* the success of the motion picture *Backdraft*." *Id.* (emphasis added).

To survive summary judgment, Ms. Gregorini need only "proffer *some* evidence to create a triable issue regarding whether the infringement at least *partially caused* the profits that the infringer generated as the result of the infringement." *Mackie v. Reiser*, 296 F.3d 909, 911 (9th Cir. 2002) (emphasis added). Put simply, Ms. Gregorini must offer "some evidence" that infringing *Servant* episodes 1-3 has a "causal link" with the Defendants' profits from *Servant* episodes 4-40. *See id.* at 911 & 914.

Ms. Gregorini meets this standard for two reasons. First, Ms. Gregorini's industry expert witness opined about the causal relationship between the infringing episodes (the first three episodes) and the later episodes, and her damages expert opined on the amount of indirect profits from episodes 4-40 and the direct profits from the infringing episodes. PSOF364. Second, like *Alfred* and *Burns*, the non-infringing episodes continue elements, story arc, and characters from the infringing

episodes. PSOF352, 416. Whether a causal relationship thus exists is well within the jury's ability to evaluate based on the infringing episodes alone. The Defendants have even conceded that episodes 4-40 would not exist but-for the infringing episodes 1-3. PSOF417. Indeed, profits from later episodes that continue elements started in the infringing episodes are far more causally related than the association between gambling profits and a single act in a 10-act show which the Ninth Circuit found sufficient in *Frank Music*.

The Defendants' misguided reference to "good will" in *Polar Bear Productions, Inc. v. Timex Corp.* has no application here. 384 F.3d 700 (9th Cir. 2004). There, the infringing work was a promotional video for Timex watches shown at several trade shows. *Id.* at 704. The Ninth Circuit found that the plaintiff proved an adequate causal nexus between this infringement and non-infringing watch sales. *Id.* at 712-13. But the Ninth Circuit declined to find a causal nexus between the limited showing of this promotional video and what Timex independently valued as its overall brand prestige. *Id.* at 713-15. Such a holding has no application here, as Ms. Gregorini makes no allegation that Apple's overall brand is more valuable based on *Servant*'s infringing episodes.

## Conclusion

The Court should deny Defendants' motion.


Dated: July 26, 2024                    ROBINS KAPLAN LLP

                                        By: */s/Patrick M. Arenz*
                                            Patrick M. Arenz

                                        Attorneys for Plaintiff
                                        Francesca Gregorini

**ROBINS KAPLAN LLP**
Michael A. Geibelson (SBN 179970)
MGeibelson@RobinsKaplan.com
Patrick M. Arenz (*Pro hac vice*)
PArenz@RobinsKaplan.com
Emily E. Niles (*Pro hac vice*)
ENiles@RobinsKaplan.com
Annie Huang (*Pro hac vice*)
AHuang@RobinsKaplan.com
2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
Telephone:   310 552 0130
Facsimile:   310 229 5800

*Attorneys for Plaintiff Francesca Gregorini*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Francesca Gregorini,<br>　　　　　　Plaintiff,<br>　　　v.<br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,<br>　　　　　　Defendants. | Case No. 2:20-cv-00406-SSS-JC<br><br>*Hon. Sunshine S. Sykes*<br><br>**L.R. 11-6.1 CERTIFICATE OF COMPLIANCE**<br><br>Discovery cutoff: May 17, 2024<br>Pretrial conference: November 22, 2024<br>Trial: December 9, 2024 |

-24-

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The undersigned, counsel of record for Plaintiff Francesca Gregorini,
certifies that this brief contains 6,912 words, which complies with the word limit of
L.R. 11-6.1.

Dated: July 26, 2024                          ROBINS KAPLAN LLP


By: */s/ Patrick M. Arenz*
        Patrick M. Arenz

Attorneys for Plaintiff
Francesca Gregorini

Case No. 2:20-cv-00406-SSS-JC

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT