1  **ROBINS KAPLAN LLP**
   Michael A. Geibelson (SBN 179970)
2  MGeibelson@RobinsKaplan.com
   Patrick M. Arenz *(Pro hac vice)*
3  PArenz@RobinsKaplan.com
   Emily E. Niles *(Pro hac vice)*
4  ENiles@RobinsKaplan.com
   Annie Huang *(Pro hac vice)*
5  AHuang@RobinsKaplan.com

6  2121 Avenue of the Stars
   Suite 2800
7  Los Angeles, California  90067
   Telephone:  310 552 0130
8  Facsimile:   310 229 5800

9  *Attorneys for Plaintiff Francesca Gregorini*

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13  | Francesca Gregorini, | Case No. 2:20-cv-00406-SSS-JC |
14  | Plaintiff, | *Hon. Sunshine S. Sykes* |

Francesca Gregorini,

    Plaintiff,

    v.

APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,

    Defendants.

Case No. 2:20-cv-00406-SSS-JC

*Hon. Sunshine S. Sykes*

**PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**

Discovery cutoff: May 17, 2024
Pretrial conference: November 22, 2024
Trial: December 9, 2024

**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT  DATED OCTOBER 9, 2024 (Dkt. 264)]**

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

Plaintiff Francesca Gregorini submits her Statement of Genuine Disputes of Material Fact (referred to as "PSOF") in support of her opposition to Defendants' motion for summary judgment. Plaintiff's citations to PSOF1-287 in her opposition brief are to Plaintiff's responses to Defendants' allegedly undisputed fact, which are provided in the right column of the first table below.

Defendants' statement of undisputed material fact is improper. Their 287-fact odyssey fails to identify the material facts for the Court to decide the motion in front of it. "A fact is 'material' only if it might affect the outcome of the suit under governing law." *Mahgerefteh v. City of Torrance*, 324 F. Supp. 3d 1121, 1127 (C.D. Cal. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Defendants' statement is instead an improper demand for a mini-trial on all its evidence at summary judgment. The Court should deny Defendants' motion.

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| *The Truth About Emanuel* | |
| 1. *The Truth About Emanuel* ("*Emanuel*") is a 2013 film directed by Plaintiff. Freeman Decl. Ex. 72 (Gregorini Dep. Tr.) at 11:15-18, 68:8-17. | Undisputed. Ms. Gregorini both directed and wrote the screenplay for *The Truth About Emanuel*. Ex. 1, Gregorini Dep. Tr. at 270:10-15.[1] |

---

[1] Exhibits 1-148 are attached to the accompanying Declaration of Patrick Arenz. Citations to exhibits submitted by Defendants are preceded by a reference to "Freeman Decl."

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 2.  Emanuel Langdon is the protagonist of *Emanuel*. Freeman Decl. Ex. 79 (*Emanuel*); Freeman Decl. Ex. 72 (Gregorini Dep. Tr.) at 108:13-15. | Undisputed. |
| 3.  Emanuel explains in the opening scene of *Emanuel* that her mother died giving birth to her, stating "I'm 17 years old and I killed my mother." Freeman Decl. Ex. 79 (*Emanuel*) at 1:30-2:22. | Undisputed as to content. |
| 4.  Emanuel is guilt-ridden over the fact that her mother died giving birth to her and has her father recount her mother's death to her each year on her birthday. Freeman Decl. Ex. 79 (*Emanuel*) at 2:27-3:25, 53:22-55:05. | Undisputed as to content. |
| 5.  When the film starts, Emanuel has never visited her mother's grave. Freeman Decl. Ex. 79 (*Emanuel*) at 2:27-3:25. | Undisputed as to content. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 6.  Emanuel typically wears outfits consisting of a casual top with jeans or a short skirt. Freeman Decl. Ex. 79 (*Emanuel*) at 2:40-3:25; 5:56-6:15; 9:08-9:55; 15:18-15:24; 28:26-28:36; 38:33-49; 1:16:13-1:16:30. | Undisputed as to content, but disputed as to relevance and materiality. Ms. Gregorini does not claim that Emanuel and Leanne have similar wardrobes. Emanuel and Leanne are both "slightly framed, darkly long haired and fair-skinned blue-eyed white girls in their late teens that are hired by a grieving mother to take of their infant child. The nannies are also strikingly pretty in that the other characters comment on their beauty and appeal. Both nannies have a dark or tragic past that informs their relationships with the other characters. Both nannies are withholding and enigmatic, often moody and distant." Freeman Ex. 69, Román Report at 24-25. |
| 7.  Emanuel lives in a detached house in a suburban area with her father and stepmother. Freeman Decl. Ex. 79 (*Emanuel*) at 2:53-3:25; 5:55-6:01. | Undisputed as to content. |
| 8.  Emanuel is frequently irritated with her stepmother, due to her discomfort with someone trying to replace her mother. Freeman Decl. Ex. 79 (*Emanuel*) at 3:35-4:36, 14:31-14:55. | Undisputed as to content. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 9. Emanuel makes Janice uncomfortable by telling Janice she had a sexual dream about her. Freeman Decl. Ex. 79 (*Emanuel*) at 4:09. | Undisputed as to content. Like Emanuel, Leanne can be direct, take control of situation, and make a person feel uncomfortable to get what she wants. For example, Leanne initiates a dinner date with Tobe. Freeman Ex. 31, Servant, Episode 3 at 17:37-19:50. After Julian interrupts her dinner with Tobe, Leanne asks Julian about Jericho in Episode 3: "Were you here when it happened? Did they call you for help? Did you see something?" Julian then gets up from the dinner table without answering Leanne's questions. Leanne approaches Julian, stands closely in front of him, gropes him, and whispers in his ear: "It's okay now." Freeman Ex. 31, Servant, Episode 3 at 22:57-23:19. |
| 10. Emanuel does not reveal where its story takes place. Freeman Decl. Ex. 79 (*Emanuel*), *passim*. | Disputed. The location of the story takes place primarily in Linda's multi-story home. Dkt. 180-94 (*Emanuel*). |
| 11. Emanuel works at a medical supply store, and takes the train to her workplace. Freeman Decl. Ex. 79 (*Emanuel*) at 6:01-7:52, 37:38-39:25. | Undisputed as to content. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 12. One of Emanuel's coworkers is a socially awkward man named Arthur. Freeman Decl. Ex. 79 (*Emanuel*) at 6:11-6:44, 37:38-38:26. | Undisputed as to content. |
| 13. Emanuel tells Arthur a storage room is not his "private jerk-off closet," and suggests he try one of the penis pumps the medical supply store sells, and tells him that she would try one if she had a penis. Freeman Decl. Ex. 79 (*Emanuel*) at 6:17-6:44. | Undisputed that *Emanuel* includes the quoted excerpt. This is an example of the humor, irony, and sarcasm that exists in both *Emanuel* and *Servant*. |
| 14. On the train, Emanuel meets a young man named Claude. Freeman Decl. Ex. 79 (*Emanuel*) at 2:44-2:53, 6:56-7:52. | Undisputed as to content. |
| 15. Emanuel and Claude strike up a relationship, which continues through the remainder of the film. Freeman Decl. Ex. 79 (Emanuel) at 9:03-9:42, 26:25-28:02, 38:30-39:23, 43:45-49:48, 55:45-101:55, 116:08-1:16:48, 1:19:08-1:19:53. | Undisputed as to content. The relationship between Emanuel and Claude is a subplot in *Emanuel* similarly to the relationship subplot between Leanne and Tobe in *Servant*. Freeman Ex. 31, *Servant*, Episode 3 at 16:42-20:22. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 16.  Emanuel gets strangers on the train to give up their seats for Claude by telling them lies, including that she is pregnant with Claude's child and wants to tell him on the train about her plan to get an abortion in case he becomes violent, and that she has lice. Freeman Decl. Ex. 79 (*Emanuel*) at 9:04-9:37; 38:33-38:46. | Undisputed as to content. Like Emanuel, Leanne can be direct, take control of situation, and make a person feel uncomfortable to get what she wants. For example, Leanne initiates a dinner date with Tobe. Freeman Ex. 31, Servant, Episode 3 at 17:37-19:50. After Julian interrupts her dinner with Tobe, Leanne asks Julian about Jericho in Episode 3: "Were you here when it happened? Did they call you for help? Did you see something?" Julian then gets up from the dinner table without answering Leanne's questions. Leanne approaches Julian, stands closely in front of him, gropes him, and whispers in his ear: "It's okay now." Freeman Ex. 31, Servant, Episode 3 at 22:57-23:19. |
| 17.  Linda is a single mother who moves in next door to Emanuel with her infant daughter Chloe. Freeman Decl. Ex. 79 (*Emanuel*) at 5:25-5:55, 8:10-30. | Undisputed as to content. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 18. Linda does not appear to have a job. Freeman Decl. Ex. 79 (*Emanuel*). | Undisputed as to content, but disputed as to relevance and materiality. Ms. Gregorini does not claim that Linda and Dorothy have similar jobs. "Linda and Dorothy are white thirty-something well-to-do women with financial resources and assumed privilege. They are both first-time mothers who lost their babies tragically under mysterious circumstances. Their grief is all encompassing and leads them into a delusional psychosis where they believe that a 'reborn doll' is their actual baby." Freeman Ex. 69, Román Report at 27. |
| 19. Emanuel reveals nothing about Linda's family other than her ex-husband. Freeman Decl. Ex. 79 (*Emanuel*) at 8:10-30, 33:52-34:16 and passim. | Undisputed as to content. |
| 20. Emanuel becomes fascinated with Linda, who bears a striking resemblance to Emanuel's dead mother. Freeman Decl. Ex. 79 (*Emanuel*) at 5:02-5:55. | Undisputed as to content. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 21. Emanuel offers to babysit Chloe, only to discover that Chloe is a doll who Linda delusionally believes is a real child. Freeman Decl. Ex. 79 (*Emanuel*) at 8:29-9:02. | Undisputed as to content. |
| 22. While she is uncomfortable with the Chloe doll at first, Emanuel begins to pretend it is a baby in Linda's presence. Freeman Decl. Ex. 79 (*Emanuel*) at 21:47-24:24, 28:30-32:23, 36:26-37:38, 39:58-41:43. | Disputed as misleading and incomplete. Ms. Gregorini testified that Emanuel is "surprised" when she learns the baby is a doll, but "right away she pivots into" treating the doll as a baby. Ex. 1, Gregorini Dep. Tr. at 141:9-12. |
| 23. At one point Emanuel intentionally drops the Chloe doll on the floor and kicks it behind a door to avoid Janice seeing it. Freeman Decl. Ex. 79 (*Emanuel*) at 32:50-32:55. | Disputed as misleading and incomplete. Ms. Gregorini testified that Emanuel does not kick the doll, but "scoots" the doll with her foot so that Janice does not see the doll. Ex. 1, Gregorini Dep. Tr. at 142:18-22. |
| 24. Plaintiff testified that Emanuel does not always treat the doll as a real baby, such as in the scene where Emanuel drops the Chloe doll on the floor and kicks it behind a door. Freeman Decl. Ex. 72 (Gregorini Dep. Tr.) at 142:8-12. | Disputed as misleading and incomplete. Ms. Gregorini testified that in "every way" Emanuel treats the doll "like a baby." Ex. 1, Gregorini Dep. Tr. at 142:11-17. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 25. Plaintiff testified that Emanuel knows the Chloe doll is a real baby. Freeman Decl. Ex. 72 (Gregorini Dep. Tr.) at 142:11-17. | Disputed as misleading and incomplete. Ms. Gregorini testified that in "every way" Emanuel treats the doll "like a baby." Ex. 1, Gregorini Dep. Tr. at 142:11-17. |
| 26. Emanuel works to prevent others finding out the truth about Chloe. Freeman Decl. Ex. 79 (*Emanuel*) at 29:32-29:50, 32:30-33:49; 38:59-39:12, 43:26-43:35, 50:00-51:50, 1:05:25-1:06:00. | Undisputed as to content. |
| 27. Linda's delusion is exposed when Arthur discovers the doll. Freeman Decl. Ex. 79 (*Emanuel*) at 1:06:20-1:08:50. | Undisputed as to content. |

- 10 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 28.  Arthur's discovery of the doll causes Emanuel to have a vision in which she imagines that she is underwater and that the Chloe doll comes to life. Freeman Decl. Ex. 79 (*Emanuel*) at 1:08:50-1:12:07. | Disputed. Ms. Gregorini did not use the terms "vision" or "imagines" when describing the scene after Arthur's discovery of the doll. Ms. Gregorini testified that Emanuel had "her own kind of breakdown" after Arthur's discovery of the doll. Ms. Gregorini described Emanuel's reaction to Arthur's discovery as "a kind of surreal, magical realism, otherworldly kind of aspect to what's going on. And I think more of…the threat element…things have—like, are hitting a critical point in the movie." Ex. 1, Gregorini Dep. Tr. 97:24-98:9, 146:10-17. |
| 29.  Plaintiff testified that the underwater scene in which Emanuel shows the Chloe doll turning into a baby represents Emanuel's "vision," and the occurrences depicted in that scene do not take place in the real world of the film. Freeman Decl. Ex. 72 (Gregorini Dep. Tr.) at 102:9-103:5. | Disputed as Ms. Gregorini did not use the quoted term "vision" in the deposition excerpt cited by Defendants. Ms. Gregorini testified that the underwater scene is a "visual manifestation" of the discovery of Emanuel "holding Linda's delusion for her." Ex. 1, Gregorini Dep. Tr. at 101:14-102:2. |

- 11 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 30. David Román testified that he does not think anyone would believe the occurrences depicted in the underwater scene in which Emanuel shows the Chloe doll turning into a baby represents Emanuel's "vision," and the occurrences depicted in that scene do not take place in the real world of the film. Freeman Decl. Ex. 73 (Román Dep. Tr.) at 308:21-309:7. | Disputed as Prof. Román did not use the quoted term "vision" in the deposition excerpt cited by Defendants. Prof. Román testified that "visually what happens" in *Emanuel* is that Emanuel's "mother comes back to life and the baby…comes back to life" but he did not "think that anyone would think…that actually happened in real life." Ex. 2 Román Dep. Tr. at 308:21-309:7. |
| 31. Following Arthur's discovery of the doll, Linda is committed to an institution. Freeman Decl. Ex. 79 (*Emanuel*) at 1:12:24-1:12:36, 1:19:47-1:24:00. | Undisputed as to content. |
| 32. While Linda is in the institution, her ex-husband, Thomas, comes to Emanuel's house. Freeman Decl. Ex. 79 (*Emanuel*) at 1:12:42-1:12:46; 1:16:59-1:18:09. | Undisputed as to content. |
| 33. Thomas explains to Emanuel, Dennis and Janice that the real Chloe died, and that Linda was given a doll as therapy to deal with her grief. Freeman Decl. Ex. 79 (*Emanuel*) at 1:16:59-1:17:45. | Undisputed as to content. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 34. Thomas reveals that he tried to have Linda committed when she began to believe the doll was real, but that Linda fled. Freeman Decl. Ex. 79 (*Emanuel*) at 1:17:42-1:17:54. | Undisputed as to content. |
| 35. Although Thomas is named in the credits, his name is never revealed during the film. Freeman Decl. Ex. 79 (*Emanuel*) at 1:16:59-1:18:13 and passim. | Undisputed as to content. |
| 36. Thomas does not appear in Emanuel except for the scene in which he explains the doll and his relationship with Linda, which lasts for one minute and twelve seconds. Freeman Decl. Ex. 79 (*Emanuel*) at 1:16:59-1:18:13 and passim. | Undisputed as to content. |
| 37. After Thomas's visit, Emanuel recovers the Chloe doll and breaks Linda out of the institution. Freeman Decl. Ex. 79 (*Emanuel*) at 1:18:56-1:24:18. | Undisputed as to content. |
| 38. Emanuel then takes Linda to Emanuel's mother's grave. Freeman Decl. Ex. 79 (*Emanuel*) at 1:24:18-1:24:56. | Undisputed as to content. |

- 13 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 39. Emanuel and Linda bury the Chloe doll beside Emanuel's mother. Freeman Decl. Ex. 79 (*Emanuel*) at 1:25:05-1:27:36. | Undisputed as to content. |
| 40. The film ends with Emanuel and Linda looking up at the stars. Freeman Decl. Ex. 79 (*Emanuel*) at 1:27:38-1:28:40. | Undisputed as to content. |
| 41. No characters in Emanuel are shown using cellphones, computers, televisions, or tablets. Freeman Decl. Ex. 79 (*Emanuel*). | Undisputed as to content, but disputed as to relevance and materiality. Ms. Gregorini does not claim there is a similarity between *Emanuel* and *Servant* with respect to the use of cellphones, computers, televisions, or tablets in each work. |
| 42. Emanuel never depicts falling rain or other precipitation. Freeman Decl. Ex. 79 (*Emanuel*). | Undisputed as to content, but disputed as to relevance and materiality. Ms. Gregorini does not claim there is similarity between *Emanuel* and *Servant* with respect to depicting falling rain or other precipitation, but the element of water is similarly featured in *Emanuel* and *Servant*, for example, with both Emanuel and Leanne immersed in water. Ex. 112, AL_0001001; Freeman Ex. 69, Román Report at 44; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 43. Emanuel contains scenes that take place at the Langdons' house, at Linda's house, at Emanuel's workplace, and on the train Emanuel takes to work, among other places. Freeman Decl. Ex. 79 (*Emanuel*). | Undisputed as to content, but disputed as misleading as the main action in *Emanuel* takes place in Linda's house similarly to the Turners' house in *Servant*. Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |
| *Servant* | |
| 44. *Servant* premiered on November 19, 2019. Basgallop Decl. ¶ 52. | Undisputed. |
| 45. Apple released the first three episodes of Season 1 of *Servant* on Apple TV+ on November 28, 2019. Basgallop Decl. ¶ 52. | Undisputed. |
| 46. *Servant's* Season 1 trailer is available on YouTube. Freeman Decl. Ex. 65 (Gale Report) at 7 (available on YouTube at https://www.youtube.com/watch?v=i15WxczTlf0). | Undisputed as to content. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 47.  In the opening scene of Episode 1 of Season 1 of *Servant*, Leanne Grayson arrives at the house of Sean and Dorothy Turner in Philadelphia. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 1:12-2:34. | Undisputed as to content. |
| 48.  After Leanne rings the doorbell, Dorothy asks Sean, "Do you think this is her?" Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 1:42-1:54. | Undisputed as to content. |
| 49.  Dorothy lets Leanne in and gives her a tour of the house. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 2:07-4:34. | Undisputed as to content. |
| 50.  After the Turners leave Leanne in her room, Leanne runs her hand over a folder titled "Duties & Responsibilities." Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 4:38-44. | Undisputed as to content. |
| 51.  Sean complains to Dorothy that Leanne is "quiet." Freeman Decl. Ex. 29 (*Servant* Season 1, Episode 1) at 4:45-5:50. | Disputed as incomplete. Sean comments that Leanne is "kind of quiet, don't you think" to Dorothy in the excerpt cited by Defendants. |

- 16 -

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 52.  Leanne enters the nursery, and a shot from outside the window shows her standing over the crib. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 5:25-54. | Undisputed as to content. |
| 53.  Sean looks into Leanne's room to see her kneeling beside her bed and praying. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 11:50-12:17. | Undisputed as to content. |
| 54.  Approximately 12 minutes into Episode 1, Sean enters the nursery alone and picks up a lifelike doll from the crib by its foot, knocking its head on the side of the crib. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 12:28-13:10. | Undisputed as to content. |
| 55.  The next morning, Dorothy prepares to go to work, stating that she is leaving Jericho "for the first time since he was born," and kisses Jericho as she leaves the house. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 14:24-15:25. | Undisputed as to content. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 56.  Dorothy is shown on television reporting live from the scenes of various news stories. Freeman Decl. Ex. 29 (*Servant* Season 1, Episode 1) at 19:54-20:03; Freeman Decl. Ex. 30 (*Servant* Season 1, Episode 2), at 17:07-17:31. | Undisputed as to content. |
| 57.  After Dorothy leaves, Sean explains to Leanne that the Jericho doll is a reborn doll, that their real son Jericho died suddenly at 13 weeks when he "just didn't wake up one morning," and that the doll was prescribed to Dorothy as a coping mechanism. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 16:04-16:15. | Undisputed as to content. |
| 58.  Sean tells Leanne he is not sure how long they will have to keep up the charade, but that she is paid until the end of the month and Dorothy is working "crazy hours." Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 16:55-17:05. | Undisputed as to content. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 59. Sean asks if Leanne has any questions, and she says that she does not. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 17:05-17:12. | Undisputed as to content. |
| 60. Sean finds a handmade wooden crucifix in Leanne's room. Freeman Decl. Ex. 29 (*Servant* Season 1, Episode 1) at 17:58-18:47. | Undisputed as to content. |
| 61. Leanne always treats the doll as a real baby at all times, even when she is alone or when Sean tells her she does not have to pretend it is a real baby. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 13:19-13:54, 15:30-17:40, 32:00-32:27 | Undisputed as to content, but disputed as misleading and incomplete as Leanne is aware that Jericho is a doll. For example, Leanne asks Julian about Jericho in Episode 3: "Were you here when it happened? Did they call you for help? Did you see something?" *Servant*, Episode 3 at 22:57-23:19. |
| 62. At the end of Episode 1, Sean hears crying on the baby monitor, and enters the nursery to find a real baby in the crib. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 33:44-34:32 | Undisputed as to content. |

- 19 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 63. After the real baby appears, the doll does not reappear in Episodes 1-3. Freeman Decl. Ex. 29 (*Servant*, Season 1, Episode 1) at 33:44-end; Ex. 30 (*Servant*, Season 1, Episode 2); Ex. 31 (*Servant*, Season 1, Episode 3) | Undisputed as to content, but Dorothy remains delusional about the death of her baby through *Servant's* episodes 1-3. *Servant*, Episodes 1-3. |
| 64. In Episode 2, Sean asks Leanne "whose baby is that," to which Leanne replies, "that's your baby, Mr. Turner. It's Jericho." Freeman Decl. Ex. 30 (*Servant*, Season 1, Episode 2) at 3:15-3:40. | Undisputed as to content. |
| 65. After Sean breaks Leanne's wooden crucifix and shoves it into the garbage disposal, he finds the code on the house alarm system does not work, experiences splinters in various parts of his body, including his feet, buttocks, and throat, and loses his sense of taste. Freeman Decl. Ex. 30 (*Servant*, Season 1, Episode 2) at 7:05-7:18, 8:24-9:07, 10:46-11:25, 17:54-18:57, 26:35-27:37, 27:56-28:31. | Undisputed as to content. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 66. Dorothy displays excitement at Julian coming over to the Turners' for his birthday, and cooks him an elaborate birthday dinner. Freeman Decl. Ex. 30 (*Servant* Season 1, Episode 2) at 20:35-27:30. | Undisputed as to content. |
| 67. Julian repeatedly expresses concern for Dorothy's wellbeing. Freeman Decl. Ex. 29 (*Servant* Season 1, Episode 1), at 24:56-25:33, Freeman Decl. Ex. 30 (*Servant* Season 1, Episode 2) at 21:23-21:57, 29:16-29:22; Freeman Decl. Ex. 31 (*Servant* Season 1, Episode 3) at 3:04-10. | Undisputed as to content. |
| 68. In Episode 3, Dorothy's brother Julian hires a private investigator named Roscoe to find out information about Leanne. Freeman Decl. Ex. 31 (*Servant*, Season 1, Episode 3) at 1:48-2:59. | Undisputed as to content. |
| 69. Roscoe finds records of a Leanne Grayson who was born in Wisconsin, and he and Julian decide to go to Wisconsin to investigate. Freeman Decl. Ex. 31 (*Servant*, Season 1, Episode 3) at 8:42-9:10. | Undisputed as to content. |

- 21 -

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
| --- | --- |
| 70. Roscoe and Julian visit the address they found for Leanne in Wisconsin, only to find the house abandoned and badly damaged by fire. Freeman Decl. Ex. 31 (*Servant*, Season 1, Episode 3) at 10:25-12:05. | Undisputed as to content. |
| 71. Roscoe and Julie visit a cemetery outside of the town where Leanne's house is located, and find gravestones reading "Stephen Grayson," "Laura Grayson," and "Leanne Grayson," leading Julian to state that the Turners' nanny "stole the identity of a dead kid." Freeman Decl. Ex. 31 (*Servant*, Season 1, Episode 3) at 26:09-27:10. | Undisputed as to content. |
| 72. In Episodes 1-3 of *Servant*, Tobe appears only in two scenes in Episode 3. Freeman Decl. Ex. 31 (*Servant*, Season 1, Episode 3) at 5:15-7:33, 14:10-14:44, 17:23-20:52. | Disputed. Tobe appears in and is mentioned in more than two scenes in Episode 3. *Servant*, Episode 3 at 4:32-10:14, 12:05-12:30, 13:30-14:02, 16:42-20:22, 24:53-57. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 73. The scene in which Leanne asks Tobe to have a drink with her and he prepares dinner lasts less than three minutes before Julian forces Tobe to leave. Freeman Decl. Ex. 31 (*Servant* Season 1, Episode 3) at 18:19-20:52. | Undisputed as to the length of the scene where Tobe and Leanne have a drink and prepare dinner, but Tobe is in more scenes and is mentioned multiple times in Episode 3. *Servant*, Episode 3 at 4:32-10:14, 12:05-12:30, 13:30-14:02, 16:42-20:22, 24:53-57. |
| 74. Episodes 1-3 of *Servant* only ever depict Leanne wearing dresses, skirts, or nightgowns, all of which extend well past her knees. Freeman Decl. Ex. 29 (*Servant* Season 1, Episode 1); Freeman Decl. Ex. 30 (*Servant* Season 1, Episode 2); Freeman Decl. Ex. 31 (*Servant* Season 1, Episode 3). | Undisputed as to content, but disputed as to relevance and materiality. Ms. Gregorini does not claim that Leanne and Emanuel have similar wardrobes. Leanne and Emanuel are both "slightly framed, darkly long haired and fair-skinned blue-eyed white girls in their late teens that are hired by a grieving mother to take of their infant child. The nannies are also strikingly pretty in that the other characters comment on their beauty and appeal. Both nannies have a dark or tragic past that informs their relationships with the other characters. Both nannies are withholding and enigmatic, often moody and distant." Freeman Ex. 69, Román Report at 24-25. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 75. *Servant* contains numerous references to the fact it takes place in Philadelphia. Freeman Decl. Ex. 29 (*Servant*, Season 1 Episode 1) at 4:03-4:07; Freeman Decl. Ex. 30 (*Servant*, Season 1, Episode 2), at 16:35-16:59, 19:43-20:03; Freeman Decl. Ex. 31 (*Servant*, Season 1, Episode 3), at 13:08-13:12, 14:30-35. | Undisputed as to content, but the specific city where the stories take place is irrelevant and immaterial as the main action in both *Emanuel* and *Servant* take place in multi-story homes. Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant,* Episodes 1-3). |
| **Tony Basgallop /** *Practically Perfect* | |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 76. On June 16, 2023, Defendants produced Document Date metadata for certain documents in Tony Basgallop's files, for which date information is not apparent on their face, to Plaintiff. These documents include TB_GREGO_00011340 (November 1, 2005); TB_GREGO_00009200 (November 18, 2005); TB_GREGO_00008381 (November 29, 2005); TB_GREGO_00011715 (January 4, 2006); TB_GREGO_00011013 (January 24, 2006); TB_GREGO_00012696 (February 1, 2006); TB_GREGO_00011330 (February 14, 2006); TB_GREGO_00011012 (February 16, 2006); TB_GREGO_00008018 (February 17, 2006); TB_GREGO_00010321 (August 24, 2006); TB_GREGO_00011337 (August 24, 2006); TB_GREGO_00011678 (September 7, 2006); TB_GREGO_00010431 (November 22, 2006); TB_GREGO_00007721 (April 2, 2007); TB_GREGO_00012571 (May 17, 2007); TB_GREGO_00009605 (May 24, 2007); TB_GREGO_00001217 (May 22, 2007); and | Undisputed as to the characterizations of Defendants' production. |

- 25 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| TB_GREGO_00012459 (September 29, 2011). Freeman Decl. ¶ 7. | |
| 77. Tony Basgallop conceived of a work, later called *Practically Perfect*, in November 2005. Basgallop Decl. ¶¶ 5-9; Lewin Decl. ¶¶ 4-5; Freeman Decl. Ex. 1 (Basgallop's November 1, 2005 notes); Freeman Decl. Ex. 2 (Basgallop's November 18, 2005 notes). | Undisputed that Mr. Basgallop took notes relating to a work. Disputed that the notes reflect any expression of *Practically Perfect*.<br><br>Mr. Basgallop explained to John Hardwick that he tried several different versions of the work between 2007-15 and none were purchased, and that even any script would need a lot of work. Ex. 3, TB_GREGO_00001866; Ex. 4, Basgallop Dep. Tr. at 132:3-139:7; Ex. 5, Basgallop Dep. Ex. 152. |
| 78. In 2005, Basgallop was living in Brighton, England with his wife and two children. Basgallop Decl. ¶ 5. | Undisputed as to content. |
| 79. At that time, Basgallop working as a screenwriter on the BBC television series *Hotel Babylon*. Basgallop Decl. ¶ 5. | Undisputed as to content. |
| 80. Basgallop's wife at the time, a former television producer, decided she wanted to return to work. Basgallop Decl. ¶ 5. | Undisputed as to content. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 81. Basgallop and his wife at the time hired a nanny to look after their children. Basgallop Decl. ¶ 5; Lewin Decl. ¶ 4. | Undisputed as to content. |
| 82. The nanny Basgallop and his wife hired was a religious 18-year-old girl. Basgallop Decl. ¶ 6. | Disputed as misleading and out of context, and irrelevant and immaterial. Mr. Basgallop only testified that the nanny was a local 18-year-old Christian girl, not that the nanny was actively practicing her religion. Ex. 4, Basgallop Dep. Tr. at 76:16-18, 77:2-4. |
| 83. In 2005, a UK production company called Tiger Aspect Productions Limited ("Tiger Aspect") approached Basgallop to create a show about nannies for the British network Channel 4. Basgallop Decl. ¶ 7; Lewin Decl. ¶ 4. | Disputed as misleading and out of context. Mr. Basgallop testified that Channel 4 eventually passed on the script. Ex. 4, Basgallop Dep. Tr. at 132:8-10. Ex. 5, Basgallop Dep. Ex. 152. |
| 84. Tiger Aspect conceived the show as showing nannies behaving irresponsibly, or "naughty nannies." Basgallop Decl. ¶ 7; Lewin Decl. ¶ 4. | Disputed as misleading and out of context. Mr. Basgallop testified he only thought Tiger Aspect was trying to repeat the formula of irresponsible nannies. Ex. 4, Basgallop Dep. Tr. at 75:24-76:4. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 85.  Basgallop was inspired instead to create a nanny story that subverted classic nanny tropes, including Mary Poppins. Basgallop Decl. ¶ 7; Lewin Decl. ¶ 5. | Disputed as misleading and out of context. Mr. Basgallop did not testify that he wanted to subvert classic nanny tropes, including Mary Poppins, when he developed the attempted show for Channel 4. Ex. 4, Basgallop Dep. Tr. at 76:11-78:20. <br><br> Mr. Basgallop said in other interviews that he wanted to tell a story like this based on his fears of what could go wrong with children, instead of trying to subvert nanny tropes. Ex. 6, FG276673; Ex. 7, FG276674; Ex. 8, FG276649; Ex. 9, FG276645. <br><br> Mr. Basgallop told Jason Blumenthal he was inspired to do the "Practically Perfect" scripts due to friction with a nanny that had moved in to take care of his child, who he viewed as beginning to "take that home over[.]" Ex. 10, Blumenthal Dep. Tr. at 46:25-47:12. |
| 86.  Basgallop's idea focused on a nanny story from the perspective of parents welcoming a stranger into their home. Basgallop Decl. ¶ 7; Lewin Decl. ¶ 5. | Disputed as misleading and out of context. Mr. Basgallop considered other characters and whether to narrate the show from their viewpoints. Ex. 4, Basgallop Dep. Tr. at 77:21-78:14, Freeman Ex. 1, TB_GREGO_00011340. |

- 28 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 87. Basgallop's November 1, 2005 notes state that "The Nanny" "start[s] out as an innocent, God fearing . . . woman moving to a new life and a new environment." Basgallop Decl. ¶¶ 8 n.1, 9; Freeman Decl. Ex. 1 (Basgallop's November 1, 2005 notes) at TB_GREGO_00011340. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. The notes also describe the nanny as "well intentioned" and "dowdy" and describes her final beat as ████████. Freeman Ex. 1, TB_GREGO_00011340. |
| 88. Basgallop's November 1, 2005 notes reference the name "Jericho." Basgallop Decl. ¶¶ 8 n.1, 9; Freeman Decl. Ex. 1 (Basgallop's November 1, 2005 notes) at TB_GREGO_00011341. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context, and irrelevant and immaterial. The notes do not describe Jericho as ever dying or a reborn doll. Freeman Ex. 1, TB_GREGO_00011340. |
| 89. Basgallop's November 1, 2005 notes state, "He's three months old." Basgallop Decl. ¶¶ 8 n.1, 9; Freeman Decl. Ex. 1 (Basgallop's November 1, 2005 notes) at TB_GREGO_00011341. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. The notes do not describe Jericho as dead or a reborn doll. Freeman Ex. 1, TB_GREGO_00011340. |

- 29 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 90. Basgallop's November 1, 2005 notes state, "Question: is she here on a mission from God. Is she trying to protect this child, or harm it?" Basgallop Decl. ¶¶ 8 n.1, 10; Freeman Decl. Ex. 1 (Basgallop's November 1, 2005 notes) at TB_GREGO_00011340. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. The notes also reflect a corruption arc for the Nanny, but do not reflect any supernatural elements or a reborn doll. Freeman Ex. 1, TB_GREGO_00011340. |
| 91. Basgallop's November 1, 2005 notes state, "RUTH ARRIVES AND SETTLES IN FOR A 1 MONTH TRIAL - CONSIDERS RUNNING HOME, BUT BELIEVES THAT SHE IS ON A MISSION FROM GOD." Basgallop Decl. ¶¶ 8 n.1, 10; Freeman Decl. Ex. 1 (Basgallop's November 1, 2005 notes) at TB_GREGO_00011341. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. The notes also reflect a corruption arc for the Nanny, but do not reflect any supernatural elements or a reborn doll. Freeman Ex. 1, TB_GREGO_00011340. |

- 30 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 92. Basgallop's November 1, 2005 notes state, "Is Ruth creepy in some way? Do we not trust her because she's so square and morally righteous? Does her religious beliefs prevent us - and Freddy and Claire - from trusting her? How did they interview Claire? Where is Claire from? Are we witnessing the blossoming and corruption of a young woman in a harsh environment?" Basgallop Decl. ¶¶ 8 n.1, 9; Freeman Decl. Ex. 1 (Basgallop's November 1, 2005 notes) at TB_GREGO_00011340. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. The notes also reflect a corruption arc for the Nanny, but do not reflect any supernatural elements or a reborn doll. Freeman Ex. 1, TB_GREGO_00011340. |
| 93. Basgallop's November 18, 2005 notes state under "Log line," "Professional couple hire an 18 year old live-in nanny." Basgallop Decl. ¶¶ 8 n.1, 9; Freeman Decl. Ex. 2 (Basgallop's November 18, 2005 notes, Basgallop Dep. Ex. 146) at TB_GREGO_00009200. | Undisputed that the document includes those quoted excerpts. Disputed as misleading and out of context. These notes do not discuss the baby dying or the relationships between the wife and the nanny or the husband and the nanny; instead they focus on how a relationship changes after you introduce a new element like a nanny. Ex. 4, Basgallop Dep. Tr. at 88:20-89:23. Mr. Basgallop did not confirm the existence of supernatural elements. Ex. 4, Basgallop Dep. Tr. 90 at 1-6. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 94. Basgallop's November 18, 2005 notes state, "The series will be about what happens to a relationship after you introduce a new element." Basgallop Decl. ¶¶ 8 n.1, 10; Freeman Decl. Ex. 2 (Basgallop's November 18, 2005 notes, Basgallop Dep. Ex. 146) at TB_GREGO_00009200 | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not discuss the baby dying or the relationships between the wife and the nanny or the husband and the nanny; instead they focus on how a relationship changes after you introduce a new element like a nanny. Ex. 4, Basgallop Dep. Tr. at 88:20-89:23. Mr. Basgallop did not confirm the existence of supernatural elements. Ex. 4, Basgallop Dep. Tr. 90 at 1-6. |
| 95. Basgallop's November 29, 2005 notes state, "Claire is paying off a woman. Suggest that her baby died, and this is one she bought as a replacement." Freeman Decl. Ex. 3 (Basgallop's November 29, 2005 notes) at TB_GREGO_00008381. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not reflect the mother being in a delusion state believing that her original child is still alive. Freeman Ex. 3, TB_GREGO_00008381. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 96. Basgallop's November 29, 2005 notes state, "Baby secrets: It was snatched. It was bought. … It's not Sean's." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 3 (Basgallop's November 29, 2005 notes) at TB_GREGO_00008381. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not reflect the mother being in a delusional state believing that her original child is still alive. Freeman Ex. 3, TB_GREGO_00008381. These notes also do not reflect any expression of the baby secrets; they also speculate many other secrets related to the baby. Freeman Ex. 3, TB_GREGO_00008381. |
| 97. Basgallop's January 4, 2006 notes state, "CLAIRE AND SEAN GOING OUT - LEANNE WILL BE ALONE IN HOUSE." Basgallop Decl. ¶¶ 8 n.1, 13; Freeman Decl. Ex. 4 (Basgallop's January 4, 2006 notes) at TB_GREGO_00011715. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not reflect the mother being in a delusional state believing that her original child is still alive. Freeman Ex. 3, TB_GREGO_00008381. |
| 98. Basgallop's January 4, 2006 notes state, "LEANNE IN THE MASTER BEDROOM, SNOOPING," "JULIAN SPIES ON LEANNE," and "LEANNE IN THE BATH." Basgallop Decl. ¶¶ 8 n.1, 13; Freeman Decl. Ex. 4 (Basgallop's January 4, 2006 notes) at TB_GREGO_00011715. | Undisputed that the document includes those quoted excerpts. Disputed as misleading and out of context. These notes do not reflect the mother being in a delusional state believing that her original child is still alive. Freeman Ex. 3, TB_GREGO_00008381. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 99. Basgallop's January 24, 2006 notes state, "The darkest of dark: Could we pull of[f] surreal, or would an audience turn off the weird stuff?" Basgallop Decl. ¶¶ 8 n.1, 14; Freeman Decl. Ex. 5 (Basgallop's January 24, 2006 notes, Basgallop Dep. Ex. 148) at TB_GREGO_00011013. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. Mr. Basgallop testified that this was just "an ideas document" of him just generating potential ideas that were not cemented in *Practically Perfect*. Ex. 4, Basgallop Dep. Tr. at 97:1-22. |
| 100. Basgallop's February 1, 2006 notes state, "SEAN TURNER is critical of everyone and everything." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 6 (Basgallop's February 1, 2006 notes) at TB_GREGO_00012696. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. The notes also describe Sean as wanting to be a better person, which triggers a downward spiral, and describes many things Mr. Basgallop wants to see him do. Freeman Ex. 6, TB_GREGO_00012696.<br><br>The notes also describe Leanne Barrett as "not pretty, not clever, inexperienced, and not sharp witted" and describes many things Mr. Basgallop wants to see her do. Freeman Ex. 6, TB_GREGO_00012696. |

- 34 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 101. Basgallop's February 1, 2006 notes state, "CLAIRE TURNER is organised to the point of combustion . . . She's living up to an image and appearing to do very well." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 6 (Basgallop's February 1, 2006 notes) at TB_GREGO_00012696-12697. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. The notes also reflect other ideas Mr. Basgallop was trying to generate.  Freeman Ex. 6, TB_GREGO_00012696-12697. There is no expression of losing a child and being in state of delusion over the loss. Freeman Ex. 6, TB_GREGO_00012696-12697. |
| 102. Basgallop's February 14, 2006 notes state, "I want it to be funny, dark, and uncomfortable." Basgallop Decl. ¶¶ 8 n.1, 14; Freeman Decl. Ex. 7 (Basgallop's February 14, 2006 notes) at TB_GREGO_00011330. | Undisputed that the document includes the quoted excerpt. |
| 103. Basgallop's February 14, 2006 notes state, "This thing must be the reason that Leanne is here. Is she running to, or running away? Could it be a strange version of both. What she's running away from is relevent [sic] to what she is running to? That's the CLAIRE is your mother / Sean is your father angle..." Freeman Decl. Ex. 7 (Basgallop's February 14, 2006 notes) at TB_GREGO_00011330. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes also contain other ideas for Leanne's intentions. Freeman Ex. 7, TB_GREGO_00011330. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 104. Basgallop's February 16, 2006 notes state, "Although initially at odds with the family's morals and lifestyle, the nanny is gradually influenced and corrupted by her new environment, and ultimately becomes just like her employers." Basgallop Decl. ¶¶ 8 n.1, 10; Freeman Decl. Ex. 8 (Basgallop's February 16, 2006 notes) at TB_GREGO_00011012. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes only describe ideas, and there is no mention of the relationships between the characters, the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |
| 105. Basgallop's February 16, 2006 notes state, "But the nanny isn't all that she says she is, and gradually she comes between the couple and destroys their supposedly perfect world." Basgallop Decl. ¶¶ 8 n.1, 10; Freeman Decl. Ex. 8 (Basgallop's February 16, 2006 notes) at TB_GREGO_00011012. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes only describe ideas, and there is no mention of the relationships between the characters, the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 106. Basgallop's February 17, 2006 notes state, "Claire introduced, gives Leanne the welcome tour of the house and shows her to the room. We still don't know why Leanne is here, but we do get to see the 'Duties & Responsibilities' folder." Basgallop Decl. ¶¶ 8 n.1, 13; Freeman Decl. Ex. 9 (Basgallop's February 17, 2006 notes) at TB_GREGO_00008018. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |
| 107. Basgallop's February 17, 2006 notes state, "In the kitchen: Sean and Claire discuss Leanne's arrival. Sean isn't impressed, and Claire doesn't know why. Leanne eats dinner as Sean and Claire fire questions at her. She answers well but is clearly quite shy and knows nothing about London. Sean's questions are quite ferocious, whereas Claire's are very gentle." Basgallop Decl. ¶¶ 8 n.1, 13; Freeman Decl. Ex. 9 (Basgallop's February 17, 2006 notes) at TB_GREGO_00008018. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 108. Basgallop's February 17, 2006 notes state, "Leanne retires to bed for a bath. Claire tells her to make this place her home and hopes she will be happy here - genuinely thinks it will work out. Leanne takes a bath - not comfortable. Claire takes a hot tub. Sean is still refusing to get excited about Leanne. Claire is amused because she realises that Sean hasn't got a 'fuckable' nanny living in the house." Basgallop Decl. ¶¶ 8 n.1, 13; Freeman Decl. Ex. 9 (Basgallop's February 17, 2006 notes) at TB_GREGO_00008018. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |
| 109. Basgallop's February 17, 2006 notes state, "Sean mentions that Leanne is religious. Claire says that won't be a problem... will it?" Basgallop Decl. ¶¶ 8 n.1, 13; Freeman Decl. Ex. 9 (Basgallop's February 17, 2006 notes) at TB_GREGO_00008018. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 110. Basgallop's February 17, 2006 notes state, "Leanne awakes and sees to Jericho . . . Claire leaves for her first day back at work - Sean niggles her." Basgallop Decl. ¶¶ 8 n.1, 13; Freeman Decl. Ex. 9 (Basgallop's February 17, 2006 notes) at TB_GREGO_00008018. | Undisputed that the document includes the quoted except. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |
| 111. Basgallop's August 24, 2006 notes state, "This seeds a terrifying doubt in Dora's mind: is Leanne the daughter she gave away?" Freeman Decl. Ex. 10 (Basgallop's August 24, 2006 notes) at TB_GREGO_00010321. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |
| 112. Basgallop's August 24, 2006 notes state, "despite herself," she [Dora] takes on a motherly role with Leanne…" Freeman Decl. Ex. 10 (Basgallop's August 24, 2006 notes) at TB_GREGO_00010321. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |

- 39 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 113. Basgallop's August 24, 2006 notes state, "Leanne arrives at the Turner household, as a live-in Nanny. She is something of an enigma to Sean and Dora . . . Dora instantly likes her, but Sean is put off by Leanne's religious beliefs." Basgallop Decl. ¶¶ 8 n.1, 9; Freeman Decl. Ex. 10 (Basgallop's August 24, 2006 notes) at TB_GREGO_00010321. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |
| 114. Basgallop's August 24, 2006 notes state, "Julian, his morally bankrupt brother in law." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 10 (Basgallop's August 24, 2006 notes) at TB_GREGO_00010321. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |
| 115. Basgallop's August 24, 2006 notes state, "Make Leanne the mystery." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 11 (Basgallop's August 24, 2006 notes) at TB_GREGO_00011337. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 116. Basgallop's August 24, 2006 notes state, "Leanne arrives - an enigma." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 11 (Basgallop's August 24, 2006 notes) at TB_GREGO_00011338. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |
| 117. Basgallop's September 7, 2006 notes state, "Comes home to discover Sean sanding the wooden floors"; "Throws out a load of wine - something has damaged his taste buds."; "Worries that losing taste is a punishment for what he said in church"; and "Pulls out a massive splinter from his throat." Basgallop Decl. ¶¶ 8 n.1, 13; Freeman Decl. Ex. 12 (Basgallop's September 7, 2006 notes) at TB_GREGO_00011678-11679. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 8, TB_GREGO_00011012. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 118. Basgallop's November 22, 2006 notes state, "DORATHEA TURNER is in her late thirties, well presented, and precise. She's a local television news reporter who never quite made it as a celebrity . . . Attractive, but the better days are now behind her. Beneath the surface she suffers from the same insecurities as everyone: she can be jealous, spiteful, and vindictive." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 13 (Basgallop's November 22, 2006 notes) at TB_GREGO_00010431. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 13, TB_GREGO_00010431. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 119. Basgallop's November 22, 2006 notes state, "SEAN TURNER has sharp edges, and projects the warning DO NOT APPROACH. He is late thirties, or perhaps early forties . . . He likes to stand back and observe situations, only getting involved when he absolutely has to. He takes great pleasure in identifying other people's faults, though deep down it is a characteristic that he hates about himself." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 13 (Basgallop's November 22, 2006 notes) at TB_GREGO_00010431. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. Mr. Basgallop removed the characteristic of Sean "as a gratuitously vicious critic" after *The Truth About Emanuel* was released. Ex. 11, TB_GREGO_00002664. |

- 43 -

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 120. Basgallop's November 22, 2006 notes state, "LEANNE BARRETT is not your typical eighteen year old. She doesn't drink, smoke, swear, or fuck . . . Armed only with an usual looking hair style and a crucifix, Leanne is innocence personified. As she breezes into London on a coach from we-don't-know-where, you wonder if Leanne has the basic skills to survive in her new environment. She's something of a blank canvas and should be unreadable to an audience." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 13 (Basgallop's November 22, 2006 notes) at TB_GREGO_00010431. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 13, TB_GREGO_00010431. |
| 121. Basgallop's November 22, 2006 notes state as to Julian, "He gives off an air that he always has somewhere better to be." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 13 (Basgallop's November 22, 2006 notes) at TB_GREGO_00010431. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes also reflect that Julian has many other negative qualities. Freeman Ex. 13, TB_GREGO_00010431. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 122. Basgallop's April 2, 2007 notes use the phrase "live-in nanny for a dual-income couple in their late thirties." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 14 (Basgallop's April 2, 2007 notes) at TB_GREGO_00007721. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 13, TB_GREGO_00010431. |
| 123. Basgallop's April 2, 2007 notes reference the names "Sean and Dora Turner." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 14 (Basgallop's April 2, 2007 notes) at TB_GREGO_00007721. | Undisputed that the document includes those quoted excepts. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 13, TB_GREGO_00010431. |
| 124. Basgallop's April 2, 2007 notes state, "Sean and Dora Turner are the embodiment of a successful urban lifestyle . . . The more they strive to be happy and content, the further from their grasp it always seems to be . . . And now that three month old Jericho is in their lives, Dora is returning to her career." Basgallop Decl. ¶¶ 8 n.1, 11; Freeman Decl. Ex. 14 (Basgallop's April 2, 2007 notes) at TB_GREGO_00007721. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 13, TB_GREGO_00010431. |

- 45 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 125. Basgallop's April 2, 2007 notes state, "They live in a three storey town house with period features, in a desirable street with a communal gated garden." Basgallop Decl. ¶¶ 8 n.1, 12; Freeman Decl. Ex. 14 (Basgallop's April 2, 2007 notes) at TB_GREGO_00007721. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 13, TB_GREGO_00010431. |
| 126. Basgallop's April 2, 2007 notes state, "To help Sean realise the error or his ways he is inflicted with what he believes to be a curse from God. In a perverse reversal of the Pinocchio tale, Sean convinces himself that he is turning to wood - literally becoming a puppet." Basgallop Decl. ¶¶ 8 n.1, 14; Freeman Decl. Ex. 14 (Basgallop's April 2, 2007 notes) at TB_GREGO_00007721. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and out of context. These notes do not describe the baby's death, replacement with a reborn baby doll, the mother's state of delusion, and the nanny's complicity in the delusion. Freeman Ex. 13, TB_GREGO_00010431. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 127. Basgallop was inspired by Mary Poppins, *The Servant*, *Pinocchio*, *The Omen*, *Rosemary's Baby*, and *The Wooden Man*, for *Practically Perfect*. Basgallop Decl. ¶ 15. | Undisputed as to content, but disputed as misleading and incomplete. Mr. Basgallop testified that he wanted to see other stories "that have elements that [he] want[s] to be able to – style elements or something like that that [he]want[s] to be reminded of" and otherwise "look at[.]" Ex. 4, Basgallop Dep. Tr. at 91:16-92:10. He wanted to learn the secrets to their success to bring into his project. Ex. 4, Basgallop Dep. Tr. at 93:9-18.<br><br>Mr. Basgallop testified that when he did a show like Servant, he looks for connections between his script to other stories and leans into what others know about that story. Ex. 4, Basgallop Dep. Tr. at 39:3-40:22.<br><br>Mr. Basgallop testified he saw additional stories when planning *Practically Perfect*. Ex. 4, Basgallop Dep. Tr. at 91:11-13, 94:17-20 (Star Wars, Magnolia, Desperate Housewives, Lost).<br><br>Mr. Basgallop also explained that he wanted to "find references of other films" while debating the pacing of the June 17, 2011 script. Freeman Ex. 19, TB_GREGO_00001098. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 128. Tiger Aspect and Liz Lewin approached Channel 4 with Basgallop's reframing of the nanny show and attachment. Basgallop Decl. ¶ 16. | Undisputed. |
| 129. Channel 4 commissioned Basgallop to write the first episode of *Practically Perfect* in March 2006. Basgallop Decl. ¶ 16. | Undisputed as to content, but disputed as misleading and irrelevant.<br><br>The episodes of *Practically Perfect* drafted for Channel 4 did not reflect the expressions in *Servant*. These scripts do not reflect that Jericho died or was replaced with a reborn doll. Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). Mr. Basgallop also testified that he "didn't know what a reborn doll was" in 2007. Ex. 4, Basgallop Dep. Tr. at 272:15-18.<br><br>Mr. Basgallop testified that the May 22, 2007 notes reflected changes to a script that was authored for "Channel 4," included ████████████████ ███████ but did not refer to a dead child or a reborn doll. Ex. 4, Basgallop Dep. Tr. at 271:18-273:17. |

- 48 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 130. Basgallop wrote his *Practically Perfect* draft scripts in the 2006-2007 period. Basgallop Decl. ¶ 17; Lewin Decl. ¶ 6; Sykes Decl. ¶ 3. | Undisputed as to the content, but disputed as misleading and incomplete. These scripts do not reflect that Jericho died and replaced with a reborn doll. Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). Mr. Basgallop also testified that he "didn't know what a reborn doll was" in 2007. Ex. 4, Basgallop Dep. Tr. at 272:15-18.<br><br>Defendant Basgallop testified that the May 22, 2007 notes reflected changes to a script that was authored for "Channel 4," included ████████████ ████████ but did not refer to a dead child or a reborn doll. Ex. 4, Basgallop Dep. Tr. at 271:18-273:17. The scripts also do not include any references to grief over the dead child, Dorothy's delusion that the reborn doll was the dead child, and Leanne's complicity in the delusion. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 131. Basgallop wrote a draft script of the first episode of *Practically Perfect*, dated in its metadata as May 17, 2007. Basgallop Decl. ¶ 17; Lewin Decl. ¶ 6; Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script). | Undisputed as to content, but disputed as misleading and incomplete. These scripts do not reflect that Jericho died or was replaced with a reborn doll. Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). Defendant Basgallop also testified that he "didn't know what a reborn doll was" in 2007. Ex. 4, Basgallop Dep. Tr. at 272:15-18.<br><br>Defendant Basgallop testified that the May 22, 2007 notes reflected changes to a script that was authored for "Channel 4," included ███████████ ███████ but did not refer to a dead child or a reborn doll. Ex. 4, Basgallop Dep. Tr. at 271:18-273:17. The scripts also do not include any references to grief over the dead child, Dorothy's delusion that the reborn doll was the dead child, and Leanne's complicity in the delusion. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 132. Basgallop wrote a draft script of the second episode of *Practically Perfect*, dated in its metadata as May 24, 2007. Basgallop Decl. ¶ 18; Lewin Decl. ¶ 6; Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). | Undisputed as to content, but disputed as misleading and incomplete. These scripts do not reflect that Jericho died or was replaced with a reborn doll. Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). Mr. Basgallop also testified that he "didn't know what a reborn doll was" in 2007. Ex. 4, Basgallop Dep. Tr. at 272:15-18.

Mr. Basgallop testified that the May 22, 2007 notes reflected changes to a script that was authored for "Channel 4," included ██████████████ ██████ but did not refer to a dead child or a reborn doll. Ex. 4, Basgallop Dep. Tr. at 271:18-273:17. The scripts also do not include any references to grief over the dead child, Dorothy's delusion that the reborn doll was the dead child, and Leanne's complicity in the delusion. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 133. Basgallop ultimately wrote four episodes of *Practically Perfect*. Basgallop Decl. ¶¶ 18, 21; Lewin Decl. ¶ 6; Sykes Decl. ¶ 4. | Undisputed as to content, but disputed as misleading and incomplete. These scripts do not reflect that Jericho died or was replaced with a reborn doll. Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). Defendant Basgallop also testified that he "didn't know what a reborn doll was" in 2007. Ex. 4, Basgallop Dep. Tr. at 272:15-18.<br><br>Defendant Basgallop testified that the May 22, 2007 notes reflected changes to a script that was authored for "Channel 4," included ▮▮▮▮▮▮ ▮▮▮▮ but did not refer to a dead child or a reborn doll. Ex. 4, Basgallop Dep. Tr. at 271:18-273:17. The scripts also do not include any references to grief over the dead child, Dorothy's delusion that the reborn doll was the dead child, and Leanne's complicity in the delusion. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 134. Basgallop's May 17, 2007 and May 24, 2007 scripts for the first and second episodes of *Practically Perfect* describe the character traits of Sean Turner, Dorothy Turner, Leanne, Julian, and Jericho. Basgallop Decl. ¶ 19; Lewin Decl. ¶ 7; Sykes Decl. ¶ 4; Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). | Disputed as misleading and incomplete. These scripts do not reflect that Jericho died or was replaced with a reborn doll. Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). Mr. Basgallop also testified that he "didn't know what a reborn doll was" in 2007. Ex. 4, Basgallop Dep. Tr. at 272:15-18. The scripts also do not include any references to grief over the dead child, Dorothy's delusion that the reborn doll was the dead child, and Leanne's complicity in the delusion.

These scripts do not reflect Sean Turner's character change from "a gratuitously vicious critic" to a man who is "failing to grieve." Ex. 11, TB_GREGO_00002664. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 135. Basgallop's May 17, 2007 and May 24, 2007 scripts for the first and second episodes of *Practically Perfect* describe the show's setting. Basgallop Decl. ¶ 19; Lewin Decl. ¶ 7; Sykes Decl. ¶ 4; Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). | Disputed as misleading and incomplete. Mr. Basgallop testified that the scripts he drafted in 2007 were set in London, but that he changed the setting to America in later scripts in "2013 or '14[.]" Ex. 4, Basgallop Dep. Tr. at 273:20-13.<br><br>Mr. Basgallop also testified that he "didn't know what a reborn doll was" in 2007. Ex. 4, Basgallop Dep. Tr. at 272:15-18. The scripts did not include any references to a dead child, the grief over the dead child, the use of a reborn doll, Dorothy's delusion that the reborn doll was the dead child, and Leanne's complicity in the delusion. |

- 54 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 136. Basgallop's May 17, 2007 and May 24, 2007 scripts for the first and second episodes of *Practically Perfect* include several plot points and scenes, including Leanne's tour of the Turner house; Dorothea and Leanne's contrasting baths; Sean spying on Leanne praying; Sean snooping in Leanne's room; Leanne snooping when the Turners leave; Leanne relieving Dorothea's mastitis while encouraging her to continue breastfeeding; Sean splintering and losing his sense of taste; Dorothea looking at her post-partum body in the mirror; and Dorothea dressing up Leanne. Basgallop Decl. ¶ 19; Lewin Decl. ¶ 7; Sykes Decl. ¶ 4; Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). | Disputed as misleading and incomplete. Mr. Basgallop testified that the May 22, 2007 notes reflected changes to a script that was authored for "Channel 4," included ██████████████████████ ██████ but did not refer to a dead child or a reborn doll. Ex. 4, Basgallop Dep. Tr. at 271:18-273:17.

Mr. Basgallop also intended for ██████ ████████████████████████ which was dropped in later editions. Ex. 4, Basgallop Dep. Tr. at 178:4-14.

Mr. Basgallop also wrote several drafts that explored "sex or intimacy involving the nanny" away from the mother in support of a corruption arc. Ex. 4, Basgallop Dep. Tr. 274:14-276:8.

Mr. Basgallop also testified that he "didn't know what a reborn doll was" in 2007. Ex. 4, Basgallop Dep. Tr. at 272:15-18. The scripts did not include any references to a dead child, the grief over the dead child, the use of a reborn doll, Dorothy's delusion that the reborn doll was the dead child, and Leanne's complicity in the delusion. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 137. Basgallop's May 22, 2007 notes state, "Established throughout that Dora is still breast feeding when she returns to work, which means having to 'express on the job'. Act three (the Dora / Leanne act) rewritten to boost a mother / daughter intimacy moment, where Leanne now helps relieve Dora's mastitis." Basgallop Decl. ¶ 20; Freeman Decl. Ex. 17 (May 22, 2007 notes, Basgallop Dep. Ex. 172) at TB_GREGO_00001217. | Undisputed that the document includes the quoted excerpt. Disputed as misleading and incomplete.<br><br>Mr. Basgallop testified that the May 22, 2007 notes reflected changes to a script that was authored for "Channel 4," included █████████████ ████ but did not refer to a dead child or a reborn doll. Ex. 4, Basgallop Dep. Tr. at 271:18-273:17.<br><br>Mr. Basgallop also testified that he "didn't know what a reborn doll was" in 2007. Ex. 4, Basgallop Dep. Tr. at 272:15-18. The notes did not include any references to a dead child, the grief over the dead child, the use of a reborn doll, Dorothy's delusion that the reborn doll was the dead child, and Leanne's complicity in the delusion.<br><br>Mr. Basgallop also wrote several drafts that explored "sex or intimacy involving the nanny" apart from the mother in support of a corruption arc. Ex. 4, Basgallop Dep. Tr. 274:14-276:8. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 138. *Practically Perfect* attached director Marc Munden and actor Rhys Ifans. Basgallop Decl. ¶ 22; Lewin Decl. ¶ 8; Sykes Decl. ¶ 5. | Disputed as misleading and incomplete. In later attempts at *Practically Perfect*, other leading men were proposed instead of Rhys Ifans. Ex. 11, TB_GREGO_00002664. Marc Munden himself criticized Rhys Ifans. Ex. 11, TB_GREGO_00002664. |
| 139. Channel 4 passed on *Practically Perfect* in June 2007. Basgallop Decl. ¶ 22; Lewin Decl. ¶ 9; Sykes Decl. ¶ 6. | Undisputed. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 140. Between 2007-2012, Basgallop attempted to rework *Practically Perfect* as a feature film and a novel. Basgallop Decl. ¶¶ 23-27; Lewin Decl. ¶ 10; Sykes Decl. ¶ 6; Freeman Decl. Ex. 18 (September 29, 2011 *Practically Perfect* feature film script). | Disputed as misleading and incomplete. Mr. Basgallop could not find other buyers for the 2007 scripts. Ex. 3, TB_GREGO_0001866. Mr. Basgallop tried to sell it as a feature script and could not find a buyer. Ex. 3, TB_GREGO_0001866. Mr. Basgallop tried to sell it as a 60,000 word novel and could not find a buyer. Ex. 3, TB_GREGO_0001866. Mr. Basgallop tried to sell it as a 30-minute spec pilot script and could not find a buyer. Ex. 3, TB_GREGO_0001866. After 2012 until years after *Emanuel*'s release in 2013, he stopped work on the project. Ex. 4, Basgallop Dep. Tr. 126:17-127:8.<br><br>By 2015, Mr. Basgallop wrote that the project "has been treated like a $5 crack whore with an anal prolapse[.]" Ex. 3, TB_GREGO_0001866. |
| 141. Basgallop wrote a draft script of the *Practically Perfect* feature film, dated September 29, 2011. Basgallop Decl. ¶¶ 24-25; Freeman Decl. Ex. 18 (September 29, 2011 *Practically Perfect* feature film script). | Undisputed as to content, but disputed as misleading and incomplete. Mr. Basgallop tried to sell it as a feature script and could not find a buyer. Ex. 3, TB_GREGO_0001866. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 142. The September 29, 2011 *Practically Perfect* feature film script included elements like an outside-the-window camera shot description and details related to Jericho's nursery, Sean's snooping in Leanne's room, Leanne's bath in Dorothy's tub, the mastitis scene, and Sean's splinters. Basgallop Decl. ¶ 25; Freeman Decl. Ex. 18 (September 29, 2011 *Practically Perfect* feature film script). | Disputed as misleading and incomplete. The September 29, 2011, *Practically Perfect* feature film was never made as a feature film because Mr. Basgallop could not find a buyer for the script. Ex. 3, TB_GREGO_0001866.

It did not include any references to a dead child, the grief over the dead child, the use of a reborn doll, Dorothy's delusion that the reborn doll was the dead child, and Leanne's complicity in the delusion. Freeman Decl. Ex. 18. |
| 143. Basgallop's June 17, 2011 draft communication to Marc Munden stated, "My instinct says that we have to start slowly and gradually escalate the weird and dark stuff." Basgallop Decl. ¶ 26; Freeman Decl. Ex. 19 (June 17, 2011 draft communication, Basgallop Dep. Ex. 150) at TB_GREGO_00001098. | Disputed as misleading and incomplete.

Defendant Basgallop conceded this script of Practically Perfect was "a drama." Freeman Ex. 19, TB_GREGO_00001098.

Defendant Basgallop wanted to focus on the story from Sean and Dorothy's perspective. Freeman Ex. 19, TB_GREGO_00001098. Ex. 4, Basgallop Dep. Tr. at 110:12-25.

Defendant Basgallop also explained that he wanted to "find references of other films" while debating the pacing of the June 17, 2011 script. Freeman Ex. 19, TB_GREGO_00001098. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 144. In 2012, Basgallop moved to Los Angeles. Basgallop Decl. ¶ 28. | Undisputed. |
| 145. In 2014, Basgallop wrote two episodes of the ABC show *Resurrection*, a show involving dead people coming back to life. Basgallop Decl. ¶ 29. | Disputed as irrelevant and immaterial. |
| 146. In 2014, Basgallop watched Episode 10 of Season 1 of *The Leftovers*. Basgallop Decl. ¶ 30. | Disputed as misleading and incomplete. The Leftovers aired after *The Truth About Emanuel*. Mr. Basgallop did not testify as to the specific episode he watched. Ex. 4, Basgallop Dep. Tr. 122:24-123:10. |
| 147. Episode 10 of Season 1 of *The Leftovers* includes a scene in which a grieving mother (who lost her husband and two children) finds hyper-realistic, life-size dolls based on her disappeared family members. Basgallop Decl. ¶ 30. | Disputed as incomplete and misleading. The Leftovers aired after *The Truth About Emanuel*. Mr. Basgallop only testified about two children laid on a table dressed up, eventually revealed to be very realistic dolls, but did not testify that the dolls were based on disappeared family members. Ex. 4, Basgallop Dep. Tr. 122:24-123:10.<br><br>The scene also does not reflect a mother with a delusion that the dolls are real. Basgallop Decl. ¶ 30. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 148. Basgallop learned about reborn dolls as a grief therapy after discussing Episode 10 of Season 1 of *The Leftovers* in the *Resurrection* writers' room. Basgallop Decl. ¶ 30. | Disputed as incomplete and misleading. The Leftovers aired after *The Truth About Emanuel.* Mr. Basgallop produced no documentation relating to these conversations nor any corroborating testimony from other participants. He could not testify as to what the participants said in the writers' room. Ex. 4, Basgallop Dep. Tr. at 125:6-8.

At an interview with Variety in 2019, Mr. Basgallop stated he'd "known about reborn dolls for several years" but didn't know anyone who'd gone through the process and did not mention who he'd learned it from. Ex. 12, FG276675.

In other interviews when the show launched and before the litigation, Mr. Basgallop did not mention how he learned about reborn dolls. Ex. 6, FG276673; Ex. 7, FG276674; Ex. 8, FG276649. He claimed the whole story flowed naturally from his initial fears of losing his child. Ex. 9, FG276645.

Taylor Latham only testified that Mr. Basgallop told them that he had found out about reborn doll therapy and shared an article concerning a celebrity's use of the reborn doll. Ex. 13, Latham. Dep. at 37:10-25.

Mr. Basgallop told Jason Blumenthal and Taylor Latham that the article from the London tabloid "was the lightbulb moment for him and 'Practically Perfect.'" Ex. 10, Blumenthal Dep. Tr. at |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| | 47:13-48:2. |
| 149. Basgallop thought that the reborn doll idea could suit *Practically Perfect* because the show had supernatural elements. Basgallop Decl. ¶ 30. | Disputed as misleading.<br><br>Defendant Basgallop testified that in 2014 he found the idea "intriguing" and that "maybe" there was an intriguing *Practically Perfect* Story. Ex. 4, Basgallop Dep. Tr. at 124:18-22.<br><br>At an interview with Variety in 2019, Defendant Basgallop stated he'd "known about reborn dolls for several years" but didn't know anyone who'd gone through the purpose, without any mention of how he learned it elsewhere. Ex. 12, FG276675.<br><br>In other interviews when the show launched and before the litigation, Defendant Basgallop did not mention how he learned about reborn dolls. Ex. 6, FG276673; Ex. 7, FG276674; Ex. 8, FG276649. He claimed the whole story flowed naturally from his initial fears of losing his child. Ex. 9, FG276645. |

- 62 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 150. In February 2015, Basgallop received a letter from John Hardwick about *Practically Perfect*. Basgallop Decl. ¶ 31. | Disputed as incomplete. A month later, Mr. Basgallop responded to that letter and explained to John Hardwick that he tried several different versions of the work between 2007-15 and none were purchased, and that even any script would need a lot of work. Ex. 3, TB_GREGO_00001866; Ex. 4, Basgallop Dep. Tr. at 132:3-139:7; Ex. 5, Basgallop Dep. Ex. 152. |
| 151. In 2016, Basgallop wrote Episode 8 of Season 1 of the Cinemax show *Outcast*, a supernatural horror show. Basgallop Decl. ¶ 32. | Undisputed as to content, but disputed as immaterial and irrelevant. |
| *Servant's* Development and Production | |
| 152. In 2016, Basgallop worked with Taylor Latham and Jason Blumenthal, both of Escape Artists, on the SyFy show *Prototype*. Basgallop Decl. ¶ 33; Latham Decl. ¶ 4; Blumenthal Decl. ¶ 3. | Undisputed as to content. "Prototype" was a pilot that "never made it past production." Ex. 10, Blumenthal Tr. at 22:19-23:8. |
| 153. In 2016, Basgallop and his wife decided to divorce. Basgallop Decl. ¶ 33. | Undisputed as to content, but disputed as immaterial. |

- 63 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 154. Basgallop was hired as a writer on Season 2 of the Epix show *Berlin Station*. Basgallop Decl. ¶ 35. | Undisputed as to content. |
| 155. One of the lead actors in *Berlin Station* was Rhys Ifans. Basgallop Decl. ¶ 35. | Disputed as irrelevant and misleading.<br><br>Before the litigation, Mr. Basgallop offered different accounts of how he added the reborn doll and other elements to his story that did not include *Berlin Station* or its cast. Ex. 12, FG276675; Ex. 6, FG276673; Ex. 7, FG276674; Ex. 8, FG276649. He claimed the whole story flowed naturally from his initial fears of losing his child. Ex. 9, FG276645. Also in 2016, *The Truth About Emanuel* was already released and available for purchase.<br><br>In addition, Rhys Ifans played Hector DeJean in *Berlin Station* but did not appear on a majority of the *Berlin Station* promotional materials gathered by IMDB. Nor was he described as a star. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 156. There was a *Berlin Station* billboard with Rhys Ifans' face on it across from Basgallop's Los Angeles Airbnb in October 2016. Basgallop Decl. ¶ 35. | Disputed as irrelevant and misleading and out of context.<br><br>In 2016, *The Truth About Emanuel* was available for streaming.<br><br>Before the litigation, Mr. Basgallop offered different accounts of how he added the reborn doll and other elements to his story that did not include *Berlin Station* or its cast. Ex. 12, FG276675; Ex. 6, FG276673; Ex. 7, FG276674; Ex. 8, FG276649. He claimed the whole story flowed naturally from his initial fears of losing his child. Ex. 9, FG276645.<br><br>In addition, Rhys Ifans played Hector DeJean in *Berlin Station* but did not appear on a majority of the *Berlin Station* promotional materials gathered by IMDB. Nor was he described as a star. |

- 65 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 157. In October 2016, Basgallop decided to implement the reborn doll concept into *Practically Perfect*, with the doll turning into a baby at the end of the first episode. Basgallop Decl. ¶¶ 36-38. | Disputed as misleading and out of context.<br><br>*The Truth About Emanuel* was available for viewing before October 2016.<br><br>Before the litigation, Mr. Basgallop offered different accounts of how he added the reborn doll and other elements to his story that did not include *Berlin Station* or its cast. Ex. 12, FG276675; Ex. 6, FG276673; Ex. 7, FG276674; Ex. 8, FG276649. He claimed the whole story flowed naturally from his initial fears of losing his child. Ex. 9, FG276645; Ex. 8, FG276649: at 6:17. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 158. In October 2016, before starting as a writer on Season 2 of *Berlin Station*, Basgallop sent Escape Artists the scripts for the first and second episodes of *Practically Perfect*. Basgallop Decl. ¶¶ 39, 42; Latham Decl. ¶¶ 5-6, 9, 11; Blumenthal Decl. ¶¶ 4-5; Freeman Decl. Ex. 20 (October 7, 2016 email); Freeman Decl. Ex. 21 (October 8, 2016 email); Freeman Decl. Ex. 22 (*Practically Perfect* Episode 1 script); Freeman Decl. Ex. 23 (October 14, 2016 email); Freeman Decl. Ex. 24 (*Practically Perfect* Episode 2 script). | Disputed as misleading and out-of-context. These scripts differ from Mr. Basgallop's earlier *Practically Perfect* scripts or the novel. And Mr. Basgallop did not send the earlier drafts of the *Practically Perfect* scripts or the novel, neither of which included the reborn doll. Ex. 14, EA-GREGO_00005028. Mr. Basgallop sent these scripts to Marc Munden and referred to the reborn doll as a "very surprising new twist in the opening." Ex. 15, TB_GREGO_00002656. |
| 159. In October 2016, Basgallop met with Latham and Blumenthal about *Practically Perfect*. Basgallop Decl. ¶ 40; Latham Decl. ¶¶ 7-8; Blumenthal Decl. ¶ 6. | Undisputed as to content. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 160. At that October 2016 meeting, Basgallop told Latham and Blumenthal about the history of *Practically Perfect*, its inspirations, and supernatural elements. Basgallop Decl. ¶ 40; Latham Decl. ¶¶ 7-8; Blumenthal Decl. ¶ 6. | Disputed as misleading and out-of-context. These scripts differ from Mr. Basgallop's earlier *Practically Perfect* scripts or the novel. And Mr. Basgallop did not send the earlier drafts of the *Practically Perfect* scripts or the novel, neither of which included the reborn doll. Ex. 14, EA-GREGO_00005028. In 2016, Mr. Basgallop sent these scripts to Marc Munden and referred to the reborn doll as a "very surprising new twist in the opening." Ex. 15, TB_GREGO_00002656. |
| 161. Basgallop educated Latham and Blumenthal about reborn doll grief therapy, including showing them a tabloid article featuring a reality star using a reborn doll after her miscarriage. Basgallop Decl. ¶¶ 40-41; Latham Decl. ¶ 8; Blumenthal Decl. ¶ 6; Freeman Decl. Ex. 41 (September 2, 2016 *Mirror* article). | Disputed as misleading. Ms. Latham testified she could not recall if he shared the tabloid article until after the meeting. Ex. 13, Latham. Dep. Tr. at 37:16-25. She also did not testify that Mr. Basgallop provided any other information on reborn doll testimony other than that article. *Id.* Nor did she testify that Mr. Basgallop was the one to tell the participants that reborn dolls were used for grief therapy. *Id.* She also did not testify that Mr. Basgallop shared any stories about mothers being deluded that their reborn baby dolls were in fact alive. *Id.*  <br><br>Mr. Blumenthal could not recall the contents of this conversation. Ex. 10, Blumenthal Dep. Tr. at 29:23-31:1. |

- 68 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 162. Escape Artists set about trying to attach directors or talent to *Practically Perfect*, to make it more appealing to networks. Basgallop Decl. ¶ 43; Latham Decl. ¶¶ 9, 11-12; Blumenthal Decl. ¶¶ 7-8. | Disputed as Ms. Latham did not testify that they were trying to get director attachments to make *Practically Perfect* more appealing to networks. Ex. 13, Latham. Dep. Tr. at 46:2-9. |
| 163. On March 30, 2017, Blumenthal sent Ashwin Rajan, of Blinding Edge, the scripts for the first and second episodes of *Practically Perfect*, who passed them on to M. Night Shyamalan. Basgallop Decl. ¶ 45; Latham Decl. ¶¶ 9, 11-12; Blumenthal Decl. ¶¶ 7-8; Shyamalan Decl. ¶ 5; Rajan Decl. ¶ 3; Freeman Decl. Ex. 36 (March 30, 2017 email); Freeman Decl. Ex. 37 (*Practically Perfect* Episode 1 script); Freeman Decl. Ex. 38 (*Practically Perfect* Episode 2 script). | Undisputed. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 164. Mr. Shyamalan has directed mystery, suspense, and supernatural thrillers. Shyamalan Decl. ¶ 3. | Disputed as misleading and incomplete. Mr. Shyamalan has also directed films of other genres, including *The Last Airbender* (Action, Adventure, Family, Fantasy), the superhero-inspired trilogy comprising *Glass* (Drama, Horror, Sci-fi, Thriller)*, Split* (Horror, Thriller) and *Unbreakable* (Drama, Mystery, Sci Fi, Thriller)*, Old* (Drama, Horror, Mystery, Thriller), *The Happening* (Adventure, Drama, Sci Fi, Thriller), and *Lady in the Water* (Drama, Fantasy, Mystery, Thriller). Shyamalan Dep. Ex. 176. <br><br> https://www.imdb.com/title/tt0938283/?ref_=nm_flmg_t_10_dr <br><br> https://www.imdb.com/title/tt6823368/?ref_=nv_sr_srsg_0_tt_6_nm_2_in_0_q_glass <br><br> https://www.imdb.com/title/tt0217869/?ref_=tt_sims_tt_t_1 <br><br> https://www.imdb.com/title/tt10954652/?ref_=nm_flmg_t_3_dr <br><br> https://www.imdb.com/title/tt0949731/?ref_=nm_flmg_t_11_dr <br><br> https://www.imdb.com/title/tt0452637/?ref_=tt_sims_tt_t_9 <br><br> https://www.imdb.com/name/nm0796117/?ref_=nmbio_ov |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 165. Mr. Shyamalan has an established reputation in the supernatural thriller genre. Shyamalan Decl. ¶ 3; Cherniss Decl. ¶ 9. | Disputed as misleading and incomplete. Mr. Shyamalan also has a reputation for twist endings, to the point that Matt Cherniss predicted and worried that the audience for *Servant* would expect a twist where one wasn't planned. Ex. 17, Ex. 17, Cherniss Dep. Tr. at 128:23-129:20.<br><br>Mr. Shyamalan is also known for directing *The Last Airbender*, which scored particularly poorly on Metacritic, and the superhero-inspired trilogy *Unbreakable*, *Split*, and *Glass*.<br><br>https://web.archive.org/web/2010070512 1616/http://apps.metacritic.com/film/title s/lastairbender |
| 166. Mr. Shyamalan has directed *The Sixth Sense*, *Unbreakable*, *Signs*, *The Village*, *Lady in the Water*, *The Happening*, *After Earth*, an episode of *Wayward Pines*, *The Visit*, *Split*, and *Glass*. Shyamalan Decl. ¶ 2. | Disputed as misleading and incomplete.<br><br>Mr. Shyamalan has also directed *The Last Airbender*, *Knock at the Cabin*, *Old*, *Wide Awake, and Praying with Anger*.<br><br>https://www.imdb.com/name/nm079611 7/?ref_=nmbio_ov |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 167. Mr. Shyamalan's works contain supernatural elements, but they walk the line between the supernatural and the grounded, meaning that a supernatural event can be equally explained by real or potentially supernatural forces. Shyamalan Decl. ¶ 3; Latham Decl. ¶ 14. | Disputed as misleading and incomplete.<br><br>Mr. Shyamalan has directed works that are more supernatural and fantastical in nature, for example, *Sixth Sense*, *Lady in the Water,* and *The Last Airbender*. |
| 168. Mr. Shyamalan was interested in walking the line between the real and the potentially supernatural in *Practically Perfect*. Basgallop Decl. ¶ 46; Latham Decl. ¶ 14; Shyamalan Decl. ¶ 8; Rajan Decl. ¶¶ 5-7; Freeman Decl. Ex. 39 (April 3, 2017 email); Freeman Decl. Ex. 40 (June 12, 2017 email). | Undisputed. |
| 169. In September 2017, Blinding Edge became attached to *Practically Perfect*, then retitled *Servant*, with Shyamalan to direct Episode 1. Basgallop Decl. ¶ 47; Latham Decl. ¶ 15; Blumenthal Decl. ¶ 9; Shyamalan Decl. ¶ 10; Rajan Decl. ¶ 9. | Undisputed. |

- 72 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 170. Between September 2017 and January 2018, Basgallop wrote a first draft Episode 3 of *Servant*. Basgallop Decl. ¶ 48; Latham Decl. ¶ 16; Freeman Decl. Ex. 25 (September 11, 2017 email). | Undisputed. |
| 171. In October 2017, Apple received the scripts for Episode 1 and Episode 2 of *Servant*. Cherniss Decl. ¶¶ 5-6; Freeman Decl. Ex. 42 (October 21, 2017 email); Freeman Decl. Ex. 43 (*Servant* Episode 1 script); Freeman Decl. Ex. 44 (*Servant* Episode 2 script); Freeman Decl. Ex. 45 (October 22, 2017 email). | Undisputed. |
| 172. In January 2018, Apple received the scripts for Episode 1, Episode 2, and Episode 3 of *Servant*. Cherniss Decl. ¶¶ 7, 11; Freeman Decl. Ex. 46 (January 17, 2018 email); Freeman Decl. Ex. 47 (*Servant* Episode 1 script); Freeman Decl. Ex. 48 (*Servant* Episode 2 script); Freeman Decl. Ex. 49 (*Servant* Episode 3 script). | Undisputed. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 173. On January 24, 2018, Basgallop, Shyamalan, Rajan, Latham, Blumenthal, and others attended a pitch meeting at Apple for *Servant*, after which Apple made a straight-to-series order for *Servant*. Basgallop Decl. ¶ 49; Latham Decl. ¶ 17; Blumenthal Decl. ¶ 10; Shyamalan Decl. ¶ 11; Rajan Decl. ¶ 10; Cherniss Decl. ¶¶ 8,11-12. | Disputed as incomplete.<br><br>On behalf of Apple, Apple's "entire team" also attended the pitch meeting, and this included Max Aronson, Matt Cherniss, Zack Van Amburg, and Jamie Erlicht all attended the pitch meeting for Servant. Ex. 4, Basgallop Dep. Tr. 202 at 5-11; Ex. 13, Latham Tr. at 84:11-25; Ex. 18, Aronson Dep. Tr. at 92:23-93:9 Ex. 19, (Aronson Dep. Ex. 6); Ex. 10, Blumenthal Dep. Tr. at 45:5-12; Ex. 17, Cherniss Dep. Tr. at 62:4-63:5.<br><br>After the pitch meeting, Zack Van Amburg informed Matt Cherniss that Max Aronson had told him to pass – they both joked about "torturing agents[.]" Ex. 20, APL-GREGO_00018613.<br><br>Apple had a follow-up call with Mr. Shyamalan and Mr. Basgallop to discuss certain elements of their pitch. Ex. 17, Cherniss Dep. Tr. at 68:13-69:18. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 174. Apple was interested in *Servant* due to the involvement of a prominent filmmaker like Shyamalan. Cherniss Decl. ¶¶ 9, 12-13; Rajan Decl. ¶ 10; Shyamalan Decl. ¶ 11. | Disputed as misleading and out of context.<br><br>Mr. Basgallop testified that Max Aronson was a fan of the scripts. Ex. 4, Basgallop Dep. Tr. at 204:10-18. Ms. Latham could not remember what Apple communicated about what they were looking for in a television program. Ex. 13, Latham Dep. Tr. at 88:15-17. Mr. Blumenthal could not remember what specifically Apple said about the show during the pitch meeting. Ex. 10, Blumenthal Dep. Tr. 45:22-46:1.<br><br>Mr. Aronson testified he was very surprised by and liked the direction of the characters as embodied in Mr. Basgallop's pitch, as well as "the deep emotional connection" that Mr. Basgallop had to the story "and how he really expertly explained the – the emotional resonance of the show." Ex. 18, Aronson Dep. Tr. at 95:8-97:12.<br><br>Apple was not interested in a version of *Servant* where the nanny would move on to another family in future seasons. Ex. 18, Aronson. Dep. Tr. at 101:8-102:1.<br><br>Mr. Chernis testified that to want to develop a show, he would "have to believe that there is a story to tell that could resonate with the audience, and that it could be executed at a high level in keeping with sort of the aims of [their] service." Ex. 17, Cherniss Dep. Tr. at 23:14-20. The process to develop *Servant* turned on a direct assessment of |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| | the scripts. Ex. 17, Cherniss Dep. Tr. at 28:4-29:3. He liked the show due to the strength of the writing and the originality of the idea in addition to Night's involvement. Ex. 17, Cherniss Dep. Tr. at 64:18-21.

Mr. Cherniss advised Apple executives to pick up *Servant* after complimenting its script, its "level of specificity" and "quality of writing." Ex. 21, APL-GREGO_00018336. He wanted to hear the pitch because he "wanted to hear where the series would go" from the received scripts. Ex. 17, Cherniss Dep. Tr. at 59:8-13.

Mr. Erlicht testified Apple TV also picked up *Servant* for a season due to the scripts or the pitch and the talent attached. Ex. 22, Erlicht Dep. Tr. at 37:14-20.

Mr. Van Amburg testified that he determined whether a pitch or idea was worth developing based on "the writing, the acting, the attachment, the underlying IP, the originality, the ability to execute." Ex. 23, Van Amburg Dep. Tr. at 39:7-25. |
| 175. *Servant* began production in the summer of 2018. Basgallop Decl. ¶ 50. | Undisputed. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 176. After Episodes 1-3 had been written, Apple offered discretionary creative suggestions to the *Servant* producers related to Sean and Dorothy's relationship and Sean's emotional state. Cherniss Decl. ¶ 15. | Disputed as incomplete, misleading and out of context.<br><br>Apple also had input on casting decisions and director decisions. Ex. 18, Aronson Dep. Tr. at 103:25-105:3, 107:9-17, 151:25-153:3. Mr. Erlicht was involved in casting decisions for *Servant*, particularly the four main characters, and had to approve series regulars. Ex. 22, Mr. Erlicht Dep. Tr. at 42:7-23. Likewise with Mr. Van Amburg. Ex. 23, Van Amburg Dep. Tr. at 65:21-66:20.<br><br>Apple executives – Mr. Aronson and Mr. Cherniss – also gave email and verbal notes on scripts during Episodes 1-3 to Mr. Blumenthal, Mr. Rajan, Ms. Latham, and Mr. Cherniss. Ex. 18, Aronson Dep. Tr. at 108:1-17, 130:9-24, 131:23-25. For Episode 1, Mr. Aronson also provided notes on Leanne's reactions to the baby doll. Ex. 18, Aronson Dep. Tr. at 125:12-22. Ex. 24, Aronson Dep. Ex. 9. Mr. Aronson also provided "multiple rounds of notes" for Episodes 2-9 of Season 1. Ex. 18, Aronson Dep. Tr. at 142:9-145:4,146:19-25. Exs. 32-34, Aronson Dep. Ex. 15-16, 18. Mr. Cherniss had verbal discussions with Mr. Aronson on notes on the first three scripts. Ex. 17, Cherniss Dep. Tr. 90:5-92:1.<br><br>Apple had a follow-up call with Mr. Shyamalan and Mr. Basgallop to discuss certain elements of their pitch. Ex. 17, Cherniss Dep. 68:13-69:18. Apple executives pushed back against a version |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

of *Servant* where the nanny would move on to another family in future seasons. Ex. 18, Aronson. Dep. Tr. at 101:8-102:1; Ex. 17, Matt Cherniss Dep. Tr at 70:4-10, 73:24-76:21.

Apple executive Mr. Aronson also gave notes to the individuals working on *Servant* during post-production. Ex. 18, Ex. 18, Aronson Dep. Tr. at 111:11-112:4. Apple executives visited the Servant set during production of Season 1 and 4, avoiding Seasons 2-3 only due to COVID protocols. Ex. 18, Aronson Dep. Tr. at 113:1-15. Max Aronson was "very involved" in production of Season 1. Ex. 18, Aronson Dep. Tr. at 115:2-10.

Every script on *Servant* was read by either Mr. Cherniss or someone on his team. Ex. 17, Cherniss Dep. Tr. at 122:199-24, 124:23-125:7. Mr. Cherniss and Mr. Aronson communicated over these notes. Ex. 17, Cherniss Dep. Tr. at 123:9-16. Mr. Aronson had the bulk of the conversations with the producers. Ex. 17, Cherniss Dep. Tr. at 123:9-16.

Mr. Cherniss gave periodic updates to Mr. Van Amburg and Mr. Erlicht on *Servant*. Ex. 17, Cherniss Dep. Tr. at 127:14-21. Mr. Van Amburg and Mr. Erlicht reviewed material and provided their points of view. Ex. 17, Cherniss Dep. Tr. at 125:8-19, 128:15-129:20; Ex. 35, APL-GREGO_00018259; Ex. 36, APL-GREGO_00018139.

Mr. Erlicht testified he would not be surprised if he reviewed "every script of

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| | Season 1" because Apple was "very hands on in the beginning of shows when they're still being formed." Ex. 22, Erlicht Dep. Tr. at 41:13-21. He would speak with the creative executive assigned to the show and sometimes directly with Mr. Shyamalan and Mr. Basgallop. Ex. 22, Erlicht Dep. Tr. at 43:6-44:10. He would resolve disagreements about the script directly with Mr. Shyamalan. Ex. 22, Erlicht Dep. Tr. at 44:17-22.<br><br>Mr. Van Amburg read all the first episodes and watched cuts of the episodes before they aired and give notes. Ex. 23, Van Amburg Dep. Tr. 64:6-16, 64:24-65:1, 65:15-20.<br><br>Apple collaborated with the *Servant* producers throughout the life of the show, including discussing whether Toby Kebbell (the actor for Sean) would keep a beard. Ex. 17, Cherniss Dep. Tr. at 162:4-164:12. Ex. 37, APL-GREGO_0000739. |
| 177. Shyamalan directed Episode 1 of *Servant*. Shyamalan Decl. ¶ 13; Basgallop Decl. ¶ 51; Freeman Decl. Ex. 29 (*Servant* Season 1, Episode 1). | Undisputed. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

- 79 -

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 178. Shyamalan relied in part on script descriptions for his directorial choices on Episode 1. Shyamalan Decl. ¶ 13; Freeman Decl. Ex. 26 (*Servant* Season 1, Episode 1 shooting script). | Disputed as misleading. Mr. Shyamalan testified that he did not develop his cinematic vision from the descriptions that Mr. Basgallop provided. Ex. 38, Shyamalan Dep. Tr. at 47:15-48:11. |
| 179. Shyamalan storyboarded each shot of Episode 1. Shyamalan Decl. ¶¶ 4, 13; Freeman Decl. Ex. 34 (*Servant* Season 1, Episode 1 storyboards, scenes 1-37); Ex. 35 (*Servant* Season 1, Episode 1 storyboards, Scenes 38-61). | Disputed as misleading. Mr. Shyamalan prepared very rough first versions of storyboards that an employee – Brick Mason – would later augment. Ex. 38, Shyamalan Dep. Tr. at 80:4-25. |
| 180. Shyamalan has used shots outside windows in his prior films. Shyamalan Decl. ¶ 13. | Disputed as Mr. Shyamalan testified that he doesn't borrow from his past films but prefers to "do fresh things" and give the audience and himself something unique. Ex. 38, Shyamalan Dep. Tr. at 23:3-22. |
| 181. Shyamalan has used shots of characters' feet in his prior films and series. Shyamalan Decl. ¶ 13. | Disputed as Mr. Shyamalan testified that he doesn't borrow from his past films but prefers to "do fresh things" and give the audience and himself something unique. Ex. 38, Shyamalan Dep. Tr. at 23:3-22. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 182. Shyamalan has used shots of facial close-ups looking direct to camera in his prior films and series. Shyamalan Decl. ¶ 13. | Disputed as Mr. Shyamalan testified that he doesn't borrow from his past films but prefers to "do fresh things" and give the audience and himself something unique. Ex. 38, Shyamalan Dep. Tr. at 23:3-22. |
| 183. Shyamalan has used shots of characters reflected in mirrors and other reflective surfaces in his prior films and series. Shyamalan Decl. ¶ 13. | Disputed as Mr. Shyamalan testified that he doesn't borrow from his past films but prefers to "do fresh things" and give the audience and himself something unique. Ex. 38, Shyamalan Dep. Tr. at 23:3-22. |
| 184. Shyamalan has used shots of staircases and entryways in his prior films. Shyamalan Decl. ¶ 18. | Disputed as Mr. Shyamalan testified that he doesn't borrow from his past films but prefers to "do fresh things" and give the audience and himself something unique. Ex. 38, Shyamalan Dep. Tr. at 23:3-22. |
| 185. Shyamalan worked with the *Servant* composer, Trevor Gureckis on the show's score, including that featured in Episodes 1-3. Shyamalan Decl. ¶ 19. | Undisputed. |
| 186. Shyamalan worked with the *Servant* music supervisor, Sue Jacobs, on the show's songs, including those featured in Episodes 1-3. Shyamalan Decl. ¶ 19. | Disputed as Mr. Shyamalan was the ultimate decisionmaker on the show's songs. Ex. 38, Shyamalan Dep. Tr. 120:11-23. |

- 81 -

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 187. *Rosemary's Baby* was a creative influence for Shyamalan on *Servant*. Shyamalan Decl. ¶ 13. | Disputed as misleading and out-of-context. Mr. Shyamalan only identified the formalism of how *Rosemary's Baby* was shot as an influence. Ex. 38, Shyamalan Dep. Tr. at 213:11-214:8. He did not identify other nanny films or doll films as influences. Ex. 38, Shyamalan Dep. Tr. at 214:20-215:5, 217:9-218:7. |
| 188. Shyamalan worked with *Servant's* cinematographer, Mike Gioulakis, on the lighting for Episode 1. Shyamalan Decl. ¶ 14. | Disputed as Mr. Shyamalan testified that he was the ultimate decider for lighting. Ex. 38, Shyamalan Dep. Tr. at 135:9-11. |
| 189. Daniel Sackheim directed Episode 2 and Episode 3 of *Servant* and selected his camera shots, angles, lighting (with Gioulakis), and other directorial choices for those episodes. Shyamalan Decl. ¶ 15; Basgallop Decl. ¶ 51; Freeman Decl. Ex. 30 (*Servant* Season 1, Episode 2); Freeman Decl. Ex. 31 (*Servant* Season 1, Episode 3). | Disputed as misleading as Mr. Shyamalan testified that he was the ultimate decider for "the position of the camera" and lighting. Ex. 38, Shyamalan Dep. Tr. at 135:3-11.<br><br>Mr. Shyamalan also testified he could not remember why he hired Mr. Sackheim and noted that Mr. Sackheim worked in fantasy series earlier. Ex. 38, Shyamalan Dep. Tr. at 276:19-277:6. |
| 190. Naaman Marshall was the production designer on Episodes 1-3 of *Servant*, and worked closely with Shyamalan. Shyamalan Decl. ¶ 17; Basgallop Decl. ¶ 51; Marshall Decl. ¶ 2. | Undisputed. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 191. Marshall scouted and drew upon real-life Philadelphia brownstones for the production design of the Turner brownstone. Marshall Decl. ¶¶ 5-8; Freeman Decl. Ex. 50 (*Servant* brownstone lookbook). | Disputed as incomplete.<br><br>Mr. Marshall's Declaration explained that Mr. Shyamalan also "wanted to draw from real-life Philadelphia brownstones." Marshall Decl. ¶¶ 5-8.<br><br>Mr. Shyamalan and Mr. Marshall discussed "[w]hat the style of the house should be, you know, brownstone and the center of Philadelphia and how that should feel." Ex. 38, Shyamalan Dep. Tr. at 211:18-212:24. |
| 192. Marshall created lookbooks for the Turner brownstone. Marshall Decl. ¶¶ 5-9; Freeman Decl. Ex. 50 (*Servant* brownstone lookbook); Freeman Decl. Ex. 51 (*Servant* set lookbook); Freeman Decl. Ex. 52 (*Servant* design lookbook). | Undisputed. |
| 193. Marshall mirrored Dorothy Turner's costuming in colorful and graphic patterns in his wallpapers in the Turner brownstone. Marshall Decl. ¶ 10; Shyamalan Decl. ¶ 17. | Disputed as Mr. Marshall testified that he mirrored Dorothy's "almost-manic quality" by playing with wallpapers throughout the house. Marshall Decl. ¶ 10. |

- 83 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 194. Marshall scouted a real-life Philadelphia brownstone with striped wallpaper. Marshall Decl. ¶ 8. | Undisputed. |
| 195. Marshall scouted several real-life Philadelphia brownstones with foyers and staircases. Marshall Decl. ¶ 8. | Undisputed. |
| 196. Marshall reviewed architectural and design sources to create his design lookbook for the Turner brownstone. Marshall Decl. ¶ 9; Freeman Decl. Ex. 52 (*Servant* design lookbook). | Undisputed. |
| 197. Marshall based production design decisions in part on the *Servant* scripts. Marshall Decl. ¶¶ 4, 11; Freeman Decl. Ex. 26 (*Servant* Season 1, Episode 1 shooting script); Freeman Decl. Ex. 27 (*Servant* Season 1, Episode 2 shooting script); Freeman Decl. Ex. 28 (*Servant* Season 1, Episode 3 shooting script). | Disputed as misleading as Mr. Marshall only provided examples of decisions based on Episode 1. Marshal Decl. ¶ 4, 11. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 198. Todd Black was minimally involved in early *Servant* attachment efforts by reading the Episode 1 and 2 scripts and sending them to a few actors' agents who he personally knew. Blumenthal Decl. ¶ 12; Latham Decl. ¶ 19. | Disputed. Mr. Black has an executive producer credit for *Servant* and has profited from the series. Ex. 93, 6/11/24 Persechini Report at Schedule 1.2. |
| 199. Steve Tisch had no involvement in *Servant* at any point. Blumenthal Decl. ¶ 12; Latham Decl. ¶ 19. | Disputed. Mr. Tisch has an executive producer credit for *Servant* and his company Escape Artists, where he is a partner, has profited from the series. Ex. 93, 6/11/24 Persechini Report at Schedule 1.2. |
| 200. Black received executive producer credit on *Servant* because of his involvement with Escape Artists. Blumenthal Decl. ¶ 12. | Undisputed. |
| 201. Tisch received executive producer credit on *Servant* because of his involvement with Escape Artists. Blumenthal Decl. ¶ 12. | Undisputed. |
| **Sarah Thorp** | |

- 85 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 202. As part of this litigation, Defendants subpoenaed Sarah Thorp. Freeman Decl. ¶ 61. | Undisputed. |
| 203. Sarah Thorp produced documents in response to Defendants' subpoena. Freeman Decl. ¶ 61. | Undisputed. |
| 204. On January 25, 2009, Plaintiff sent an email to Sarah Thorp to say she has "been very excited @ the idea of directing one of your scripts," and that she had "been giving some thought to your idea, re woman who has post partum depression and kills her baby accidentally and can't cope, so makes up that the child is still alive." Freeman Decl. Ex. 54 (January 25, 2009 email, Gregorini Dep. Ex. 111) at THORP-001. | Undisputed that the document includes those quoted excerpts, but disputed as misleading and lacking context, and irrelevant and immaterial. In that same email, Ms. Gregorini later describes a different and new idea that centers on a teenager's eventual complicity in the mother's delusion. Freeman Ex. 54, THORP-001 – 002. Ex. 39, Thorp Dep. Tr. at 49:19-50:4, Ex. 1, Gregorini Dep. Tr. at 172:18-173:12. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 205. In that email, Plaintiff recalled that Thorp's idea "opens w/ [the woman] moving into a small town, w/ her child and @ some point we find out that the child does not in fact exist." Freeman Decl. Ex. 54 (January 25, 2009 email, Gregorini Dep. Ex. 111) at THORP-001. | Undisputed that the document includes those quoted excerpts, but disputed as misleading and lacking context, and irrelevant and immaterial. In that same email, Ms. Gregorini later describes a different and new idea that centers on a teenager's eventual complicity in the mother's delusion. Freeman Ex. 54, THORP-001 – 002, Ex. 39, Thorp Dep. Tr. at 49:19-50:4, Ex. 1, Gregorini Dep. Tr. at 173:13-24. |
| 206. On November 8, 2009, Plaintiff sent Thorp an email regarding the script Plaintiff had shared with Thorp, stating "[t]his is ALL my fault. I am very much aware of this. I feel terrible that I have put you in this position and take all the responsibility." Freeman Decl. Ex. 55 (November 12, 2009 email, Gregorini Dep. Ex. 118) at THORP-046. | Undisputed that the document includes those quoted excerpts, but disputed as misleading and lacking context, and irrelevant and immaterial. In the same email chain, Ms. Gregorini differentiates her idea from Ms. Thorp's idea. Freeman Ex. 55, THORP-041 – 047; Ex. 39, Thorp. Dep. Tr. at 65:8-9, 67:20-68:11; Ex. 1, Gregorini Dep. Tr. at 206:16-210:15. |
| 207. On November 12, 2009, Thorp sent Plaintiff an email stating that she had read Plaintiff's script. Freeman Decl. Ex. 55 (November 12, 2009 email, Gregorini Dep. Ex. 118) at THORP-042. | Disputed as misleading, incomplete, and irrelevant and immaterial. In the same email chain, Ms. Gregorini differentiates her idea from Ms. Thorp's idea. Freeman Ex. 55, THORP-041 – 047; Ex. 1, Gregorini Dep. Tr. at 206:16-210:15. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 208. In that email, Thorp asserted that "[t]he dramatic architecture of your script depends on the character of a post-partum depressed woman who, we come to discover, is living in a delusional world in which she believes her dead child to be alive and living with her. Who, when later confronted with the reality of the situation (that there is, in fact, no child in her home), panics and accuses those around her of having hurt or taken her baby," and that "[t]his, as you know, is the exact story I shared with you earlier this year." Freeman Decl. Ex. 55 (Gregorini Dep. Ex. 118) at THORP-042. | Undisputed that the document includes those quoted excerpts, but disputed as misleading and lacking context, and irrelevant and immaterial. Ms. Thorp told Ms. Gregorini and later testified that Ms. Gregorini's story was different from her own idea. Ex. 55, THORP-041 – 047; Ex. 39, Thorp Tr. at 79:22-80:4; Ex. 1, Gregorini Tr. at 208:20-210:15. |
| 209. As Plaintiff's own substantial similarity expert testified, the elements Gregorini acknowledged were part of Thorp's story are all present in *Emanuel*. Freeman Decl. Ex. 73 (Román Dep. Tr.) at 289:1-290:25. | Disputed. Ms. Gregorini's substantial similarity expert had no awareness of Ms. Thorp's vague idea and did not testify about the elements of it. Ex. 2 Román Dep. Tr. at 289:1-290:25. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 210. On January 11, 2012, counsel for Plaintiff sent counsel for Thorp a draft Screenplay Purchase Agreement, which provided for Plaintiff's company Emanuel Film, LLC to pay a sum of $42,930 to Plaintiff and Thorp in exchange for the right to make a movie based off of Plaintiff's screenplay of *Emanuel*. Freeman Decl. Ex. 56 (draft Screenplay Purchase Agreement, Gregorini Dep. Ex. 125) at THORP-308-315. | Disputed as incomplete. The draft Screenplay Purchase Agreement also gave Emanuel Film, LLC, the right to exclusively, perpetually, and throughout the world exploit and turn to account the Picture (and to advertise and promote the Picture) in any and all media. THORP-308. Ms. Gregorini testified that the goal of the agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5. |

- 89 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 211. The draft Screenplay Purchase Agreement sent by Plaintiff's counsel to Thorp's counsel on January 11, 2012 was accompanied by a "Certificate of Authorship" to be signed by Thorp stating that "all literary material written and to be written by me (the "Material") in connection with the story and screenplay entitled "*Emanuel and the Truth About Fishes*" was written by me as an employee of Francesca Gregorini ("Gregorini") and that the work shall be deemed for copyright purposes a work made for hire specially ordered or commissioned by Gregorini for use as part of a motion picture." Freeman Decl. Ex. 56 (draft Screenplay Purchase Agreement, Gregorini Dep. Ex. 125) at THORP-317. | Disputed as misleading, lacking context, and irrelevant and immaterial. Ms. Gregorini testified that the goal of the agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5. |

- 90 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 212. Thorp did not sign the draft Screenplay Purchase Agreement or the Certificate of Authorship sent by Plaintiff's counsel to Thorp's counsel on January 11, 2012. Freeman Decl. Ex. 56 (draft Screenplay Purchase Agreement, Gregorini Dep. Ex. 125) at THORP-315, THORP-317. | Disputed as to relevance, materiality, and context. Ms. Gregorini testified that the goal of the agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5; Freeman Ex. 58, FG004058. |
| 213. Plaintiff and Thorp entered into a Screenplay Purchase Agreement with Plaintiff's company Emanuel Film, LLC, effective December 11, 2011. Freeman Decl. Ex. 58 (Screenplay Purchase Agreement, Gregorini Dep. Ex. 126) at FG004059-4067. | Disputed as to relevance, materiality, and context. Ms. Gregorini testified that the goal of the agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5; Freeman Ex. 58, FG004058. |
| 214. The executed Screenplay Purchase Agreement provided "that certain original screenplay written by Gregorini currently entitled "Emanuel and the Truth About Fishes" (the "Screenplay")" was "based on a story by Thorp (the "Story")." Freeman Decl. Ex. 58 (Screenplay Purchase Agreement, Gregorini Dep. Ex. 126) at FG004059. | Disputed as to relevance, materiality, and context. Ms. Gregorini testified that the goal of the agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5; Freeman Ex. 58, FG004058. |

- 91 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 215. The executed Screenplay Purchase Agreement provided for Emanuel Film, LLC to pay $42,930.00, split between Plaintiff (87.5%) and Thorp (12.5%). Freeman Decl. Ex. 58 (Screenplay Purchase Agreement, Gregorini Dep. Ex. 126) at FG004059. | Disputed as to relevance, materiality, and context. Ms. Gregorini testified that the goal of the agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5; Freeman Ex. 58, FG004058. |
| 216. In exchange, Plaintiff gave Emanuel Film, LLC "the right to make one motion picture (the "Picture") based upon the Screenplay," and Thorp gave Emanuel Film, LLC "a non-exclusive license, in perpetuity and throughout the universe to use the Story as embodied in the Screenplay in connection with the Picture." Freeman Decl. Ex. 58 (Screenplay Purchase Agreement, Gregorini Dep. Ex. 126) at FG004059. | Disputed as to relevance, materiality, and context. The Screenplay Purchase Agreement also gave Emanuel Film, LLC, the right to exclusively, perpetually, and throughout the world exploit and turn to account the Picture (and to advertise and promote the Picture) in any and all media. Ms. Gregorini testified that the goal of the agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5; Freeman Ex. 58, FG004058. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 217. The executed Screenplay Purchase Agreement provided that "ownership of the Story (including, but not limited to, copyright interest therein) shall be vested solely (100%) in Thorp," and that Thorp would receive a "Story By" credit in *Emanuel*. Freeman Decl. Ex. 58 (Screenplay Purchase Agreement, Gregorini Dep. Ex. 126) at FG004060. | Disputed as to relevance, materiality, and context. The executed Amended and Restated Screenplay Purchase Agreement also provided that "ownership of the Screenplay (including, but not limited to, copyright interest therein) shall be vested solely (100%) in Gregorini" and that Thorp's ownership of the story was "subject to Gregorini's right to use the Story as contained in the Screenplay in connection with the rights reserved to Gregorini[.]" Freeman Ex. 60, FG005600; Ex. 39, Thorp Dep. Tr. at 119:10-120:2.

Ms. Gregorini testified that the goal of the agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5, 235:23-236:3; Freeman Ex. 58, FG004058. |
| 218. The executed Screenplay Purchase Agreement did not contain any provision stating that Thorp's contribution to *Emanuel* was made as an employee of Gregorini or Emanuel Film, LLC. Freeman Decl. Ex. 58 (Screenplay Purchase Agreement, Gregorini Dep. Ex. 126). | Disputed as to relevance, materiality, and context.

Ms. Gregorini testified that the goal of the agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5; Freeman Ex. 58, FG004058. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 219. The application to register the copyright in *Emanuel* was submitted on November 20, 2019. Freeman Decl. Ex. 59 (correspondence with U.S. Copyright Office, Gregorini Dep. Ex. 191) at FG354920-354922. | Undisputed. |
| 220. The initial copyright application for *Emanuel* listed Plaintiff as the sole author of the film. Freeman Decl. Ex. 59 (correspondence with U.S. Copyright Office, Gregorini Dep. Ex. 191) at FG354923. | Undisputed. |

- 94 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 221. On November 21, 2019, an examiner from the United States Copyright Office ("USCO") wrote an email to counsel for Plaintiff, David Erikson, regarding the copyright application for *Emanuel*, observing that while the application listed Plaintiff as the sole author of the entire work, "[t]he credits on the copy, however, indicate that other individuals also contributed to the production of this motion picture." Freeman Decl. Ex. 59 (correspondence with U.S. Copyright Office, Gregorini Dep. Ex. 191) at FG354923. | Undisputed that the document includes the quoted excerpt, but disputed as misleading and lacking context. Ms. Gregorini testified that the goal of the Screenplay Agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*, but that Ms. Gregorini would retain full ownership of her script and film. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5, 235:23-236:3, 255:21-256:12. |
| 222. The examiner's email explained that the people involved in the making of a movie "may also be authors of the work," but that if they are employed by a company or an individual to make the movie, the resulting work is a "work made for hire" and the employer is the legal author. Freeman Decl. Ex. 59 (correspondence with U.S. Copyright Office, Gregorini Dep. Ex. 191) at FG354923. | Undisputed that the document includes the quoted excerpts, but disputed as misleading and lacking context. Ms. Gregorini testified that the goal of the Screenplay Agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*, but that Ms. Gregorini would retain full ownership of her script and film. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5, 235:23-236:3, 255:21-256:12. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 223. The examiner's email instructed Plaintiff's counsel to "reply and give us complete and accurate authorship information. If the entire work was "made for hire," tell us the employer's name. . . . Possibly part of the work was "made for hire" and part was not. If so, give us the appropriate information and we will amend the record accordingly." Freeman Decl. Ex. 59 (correspondence with U.S. Copyright Office, Gregorini Dep. Ex. 191) at FG354923. | Undisputed that the document includes the quoted excerpts, but disputed as misleading and lacking context. Ms. Gregorini testified that the goal of the Screenplay Agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*, but that Ms. Gregorini would retain full ownership of her script and film. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5, 235:23-236:3, 255:21-256:12. |
| 224. Plaintiff's counsel replied to the examiner's email on November 21, 2019, stating that "[t]he information for the author of this work should be updated to Emanuel Films, LLC, a California liability company; and to state that the work was made for hire (with the employer being Emanuel Films, LLC)." Freeman Decl. Ex. 59 (correspondence with U.S. Copyright Office, Gregorini Dep. Ex. 191) at FG354925. | Undisputed that the document includes the quoted excerpt, but disputed as misleading and lacking context. Ms. Gregorini testified that the goal of the Screenplay Agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel*, but that Ms. Gregorini would retain full ownership of her script and film. Ex. 1, Gregorini Dep. Tr. at 232:20-234:5, 235:23-236:3, 255:21-256:12. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 225. On November 22, 2019, in response to the email from Plaintiff's counsel, the examiner informed Plaintiff's counsel that the copyright application for *Emanuel* had been approved. Freeman Decl. Ex. 59 (correspondence with U.S. Copyright Office, Gregorini Dep. Ex. 191) at FG354926. | Undisputed. |
| 226. The email exchange between Plaintiff's counsel and the examiner contained no mention of Thorp or her story. Freeman Decl. Ex. 59 (correspondence with U.S. Copyright Office, Gregorini Dep. Ex. 191) at FG354919-354933. | Disputed as misleading, lacking context, and irrelevant and immaterial<br><br>Ms. Thorp and Plaintiff agreed that Plaintiff's script was different from Thorp's idea, and the goal of the Screenplay Agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel* while Plaintiff would retain full ownership of her script and film.<br>Freeman Ex. 54 and Ex. 40, THORP-001-003; Ex. 39, Thorp Dep. Tr. at 25:16-19, 26:3-7, 29:25-30:3, 32:25-33:2, 50:2-4, 79:22-80:4, 103:8-18; Ex. 1, Gregorini Dep. Tr. at 232:20-234:5, 235:23-236:3, 255:21-256:12. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 227. The final copyright registration for *Emanuel* contained no mention of Thorp or her story. Freeman Decl. Ex. 80 (November 20, 2019 copyright registration, Gregorini Dep. Ex. 189) at FG276587-276588. | Disputed as misleading, lacking context, and irrelevant and immaterial.<br><br>Ms. Thorp and Plaintiff agreed that Plaintiff's script was different from Thorp's idea, and the goal of the Screenplay Agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel* while Plaintiff would retain full ownership of her script and film.<br>Freeman Ex. 54 and Ex. 40, THORP-001-003;<br>Ex. 39, Thorp Dep. Tr. at 25:16-19, 26:3-7, 29:25-30:3, 32:25-33:2, 50:2-4, 79:22-80:4, 103:8-18;<br>Ex. 1, Gregorini Dep. Tr. at 232:20-234:5, 235:23-236:3, 255:21-256:12. |
| 228. On March 13, 2023, Plaintiff served her Responses to Defendant Uncle George Productions, LLC's First Set of Interrogatories. Freeman Decl. Ex. 64 (Plaintiff's responses to Uncle George's first set of interrogatories). | Undisputed as to Plaintiff's initial response but disputed as misleading because Plaintiff served supplemental responses to those Interrogatories. Ex. 123, 5/17/24 Supplemental Responses to Defendants' Interrogatories. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 229. Plaintiff responded to an interrogatory seeking identification of "any and all written, visual, or other materials that were a source of inspiration when creating or developing EMANUEL," by stating, "Francesca Gregorini served as her own inspiration and conceived of *Emanuel*." Freeman Decl. Ex. 64 (Plaintiff's responses to Uncle George's first set of interrogatories) at 25. | Undisputed that the document includes the quoted excerpts. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 230. Plaintiff's substantial similarity expert testified that it would be a "serious problem" if *Emanuel* were based on content owned by a third party. Freeman Decl. Ex. 73 (Román Dep. Tr.) at 207:25-208:14. | Disputed as misleading, lacking context, and irrelevant and immaterial. Ms. Gregorini's substantial similarity expert had no awareness of Ms. Thorp's idea and did not testify about the elements of Ms. Thorp's idea. Ex. 2 Román Dep. Tr. at 289:1-290:25.<br><br>Ms. Thorp and Ms. Gregorini agreed that Ms. Gregorini's script was different from Ms. Thorp's idea, and the goal of the Screenplay Agreement was for Ms. Thorp to be able to pursue her own story that was different from *Emanuel* while Ms. Gregorini would retain full ownership of her script and film. THORP-003, Ex. 55, THORP-041 – 047; Ex. 1, Gregorini Dep. Tr. at 208:20-210:15.232:20-234:5, 235:23-236:3, 255:21-256:12. |
| 231. Plaintiff did not produce any communications with, or documents about, Thorp until after Thorp had produced documents to Defendants – including communications with Plaintiff – pursuant to a third-party subpoena. Freeman Decl. ¶ 61. | Disputed as misleading, lacking context, and irrelevant and immaterial. Ms. Gregorini produced more than 37,000 documents before the close of fact discovery, including documents referencing Ms. Thorp appear to have been produced based on prior counsel's records on July 7, 2023, before Ms. Thorp's production on September 22, 2023. Arenz Decl. ¶ 150. |

- 100 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| **Access** ||
| 232. In 2013, *Emanuel* premiered at the Sundance Film Festival. Freeman Decl. Ex. 72 (Gregorini Dep. Tr.) at 68:8-17. | Undisputed as to content but disputed as to being incomplete and misleading. *Emanuel* was shown at many more film festivals:<br>• Sundance London<br>• Ashland Independent Film Festival<br>• Brooklyn Film Festival<br>• Provincetown Film Festival<br>• LA Femme International Film Festival<br>• Marfa Film Festival<br>• Big Eddy Film Festival<br>• Cannes Film Market<br>• Bend Film Festival<br>• Woodstock Film Festival<br>• Morelia Film Festival<br>• Key West Film Festival<br>• Cine-World Film Festival<br>• Starz Denver Fil Festival<br>• Hawaii International Film Festival<br>• Crested Butte Film Festival<br>• Rio de Janeiro Film Festival<br><br>Freeman Ex. 71, Pittleman Report ¶¶ 26-27; Ex. 41, FG000641; Ex. 42, FG147427; Ex. 79, FG146230. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 233. 119 feature films screened at Sundance in 2013. Freeman Decl. Ex. 77 (Sundance article). | Undisputed, but only 16 films screened in the Dramatic Competition category along with *Emanuel*. Freeman Ex. 71, Pittleman Report ¶ 21. |
| 234. The Expert Report of Ellen Pittleman (the "Pittleman Report") opined that Defendants had access to *Emanuel* as a result of its screening at Sundance and other film festivals. Freeman Decl. Ex. 71 (Pittleman Report) ¶¶ 21-28. | Undisputed as to the cited paragraphs of Ms. Pittleman's report, but she also opined about other ways *Emanuel* was widely accessible to Defendants through a variety of means. Freeman Ex. 71, Pittleman Report ¶¶ 29-28 |
| 235. The Pittleman Report does not state how many people attended the festivals at which *Emanuel* was screened, or how many people attended the screenings of *Emanuel* at those festivals. Freeman Decl. Ex. 71 (Pittleman Report) ¶¶ 20-30 and passim. | Undisputed as to content, but disputed as to relevance and materiality. *Emanuel* screened at the following film festivals: Sundance, Sundance London, Ashland Independent, Brooklyn, Provincetown, La Femme International, Marfa, Cannes Film Market, Bend, Woodstock, Morelia, Key West, Cone-World, Starz Denver, Hawaii International, Crested Butte, and Rio de Janeiro. Freeman Ex. 71, Pittleman Report ¶¶ 26-27; Ex. 41, FG000641; Ex. 42, FG147427; Ex. 79, FG146230. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 236. In January 2014, *Emanuel* was shown at the Village East Cinema in New York, NY; Los Feliz 3 in Los Angeles, CA; Laemmle Royal Theatre in Los Angeles, CA; Gaslamp 15 in San Diego, CA; Harkins Shea 14 in Scottsdale, AZ; AMC Sunset Place 24 in South Miami, FL; AMC Highlands Ranch 24 in Denver, CO; AMC Grapevine 30 in Dallas, TX; AMC Gulf Pointe 30 in Houston, TX; AMC Eden Prairie 18 in Minneapolis, MN; and AMC Cherry Hill 24 in Cherry Hill, NJ. Freeman Decl. Ex. 61 (November 26, 2013 email) at FG156186; Freeman Decl. Ex. 62 at FG276779. | Undisputed as reflecting some of the showings of *Emanuel* in the U.S. |

- 103 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 237. The screenings at Village East Cinema in New York, NY; Los Feliz 3 in Los Angeles, CA; Gaslamp 15 in San Diego, CA; AMC Sunset Place 24 in South Miami, FL; AMC Highlands Ranch 24 in Denver, CO; AMC Grapevine 30 in Dallas, TX; AMC Gulf Pointe 30 in Houston, TX; AMC Eden Prairie 18 in Minneapolis, MN; and AMC Cherry Hill 24 in Cherry Hill, NJ were all "4-wall" screenings. Freeman Decl. Ex. 61 (list of *Emanuel* theatrical releases) at FG156186. | Undisputed as reflecting some of the showings of *Emanuel* in the U.S. |
| 238. "4-walling" refers to a process whereby the distributor of a film pays a theatre to show the film for a specified date or period of time. Freeman Decl. Ex. 68 (Wiseman Report) ¶ 50. | Undisputed. |
| 239. *Emanuel* was also shown in March 2014 at Union Theatre in Milwaukee, WI. Freeman Decl. Ex. 63 (January 9, 2014 email) at FG159875. | Undisputed as reflecting some of the showings of *Emanuel* in the U.S. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 240. *Emanuel* generated ticket sales of $3,991.88. Freeman Decl. Ex. 78 (Tribeca financial statement) at WG-GREGO_00000001. | Undisputed as to content, but disputed as to relevance and materiality. |
| 241. Plaintiff provided *Emanuel* to various video-on-demand services, including iTunes, and sold physical copies of DVDs. Freeman Decl. Ex. 57 (Well Go business documents); Freeman Decl. Ex. 53 (iTunes transactional information for *Emanuel*). | Undisputed. |
| 242. Plaintiff responded to an interrogatory seeking identification of "all locations of non-theatrical distributions of EMANUEL, including but not limited to all streaming services where EMANUEL has ever been distributed," by stating, " Since 2014, *Emanuel* has been available for purchase or rental on defendant Apple's own iTunes as well as multiple additional streaming services and platforms." Freeman Decl. Ex. 64 (Plaintiff's response to Uncle George's first set of interrogatories) at 27. | Undisputed. |

- 105 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 243. The Pittleman Report opined that Defendants had access to *Emanuel* as a result of its availability on platforms including Amazon Video Direct, Hulu, Peacock, Plex Inc., Pluto Inc., Redbox, Tubi, and Vudu; its distribution through INDEMAND; its availability on Amazon Prime and through Netflix; and its availability for rent or purchase through iTunes. Freeman Decl. Ex. 71 (Pittleman Report) ¶¶ 31-35. | Undisputed. |
| 244. The only transaction or sales information for *Emanuel* that Pittleman cited in her report was the number of rentals or purchases on iTunes. Freeman Decl. Ex. 71 (Pittleman Report) ¶¶ 31-35. | Undisputed as to content, but disputed as to relevance and materiality. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 245. The document cited in the Pittleman Report for the number of rentals or purchases on iTunes reflects that *Emanuel* was rented or purchased ▮▮▮▮ times on iTunes through November 2019. Freeman Decl. Ex. 53 (iTunes transactional information for *Emanuel*) at APL-GREGO_00020266; Freeman Decl. Ex. 71 (Pittleman Report) ¶ 34 n.28. | Undisputed as to content, but disputed as to relevance and materiality. |
| 246. Plaintiff has no direct knowledge as to whether her agent in 2017, Olivia Blaustein, then at Creative Artists Agency ("CAA"), or any of her colleagues in fact submitted Plaintiff to direct an episode of *Berlin Station*. Freeman Decl. Ex. 72 (Gregorini Dep. Tr.) at 156:20-159:1. | Disputed. Ms. Gregorini testified that it was her understanding Emanuel was submitted to the *Berlin Station* team. Ex. 1, Gregorini Dep. Tr. at 156:20-158:9 |

- 107 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 247. Blaustein does not know whether she or any of her colleagues submitted Plaintiff to direct an episode of *Berlin Station*. Freeman Decl. Ex. 76 (Blaustein Dep. Tr.) at 31:18-35:22. | Disputed. Ms. Blaustein testified in October 2023 that she believed her assistant had submitted Ms. Gregorini for *Berlin Station* back in 2017. Ex. 43, Blaustein Dep. Tr. 31:21-24. Ms. Blaustein also testified that it was not typical to be copied on the email submitting Ms. Gregorini as a director to Berlin Station given the volume of email submissions. Ex. 43, Blaustein Dep. Tr. 33:7-13.<br><br>Ms. Blaustein sent an email to Ms. Gregorini on March 27, 2017 stating she "submitted Francesca for block 4 of BERLIN STATION—which is episodes 207/208. They had a director drop out, and they want a strong female director with some cable/premium experience." Ex. 44, FG007185. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 248. Blaustein testified that to the extent Plaintiff was submitted to direct an episode of *Berlin Station*, she did not know what materials were provided in connection with that submission. Freeman Decl. Ex. 76 (Blaustein Dep. Tr.) at 31:18-35:22. | Disputed. Ms. Blaustein testified in October 2023 that she believed her assistant had submitted Ms. Gregorini for *Berlin Station* back in 2017. Ex. 43, Ex. 43, Blaustein Dep. Tr. 31:21-24. Ms. Blaustein also testified that it was not typical to be copied on the email submitting Ms. Gregorini as a director to Berlin Station given the volume of email submissions. Ex. 43, Blaustein Dep. Tr. 33:7-13.<br><br>Ms. Blaustein sent an email to Ms. Gregorini on March 27, 2017 stating she "submitted Francesca for block 4 of BERLIN STATION—which is episodes 207/208. They had a director drop out, and they want a strong female director with some cable/premium experience." Ex. 44, FG007185. |
| 249. Ashley Holland, then an agent at CAA along with Blaustein, would have sent or been copied on any submission of Plaintiff to direct *Berlin Station*. Freeman Decl. Ex. 76 (Blaustein Dep. Tr.) at 31:18-35:22. | Disputed. Ms. Blaustein testified that Ms. Holland could have "possibly" been copied on the submission of Ms. Gregorini as a director for *Berlin Station*. Ex. 43, Blaustein Dep. Tr. 33:23-34:1. |

- 109 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 250. Holland does not know whether she submitted anyone to direct an episode of *Berlin Station*. Holland Decl. ¶ 3. | Disputed. In Ms. Holland declaration dated November 7, 2023, she states that she does "not recall whether" she "submitted anyone to potentially direct episodes of *Berlin Station*." Holland Decl. ¶ 3. |
| 251. Holland does not know whether she submitted Plaintiff to direct an episode of *Berlin Station*, or what materials would have been included with any such submission. Holland Decl. ¶¶ 3-5. | Disputed. In Ms. Holland declaration dated November 7, 2023, she states that she does "not recall whether" she "submitted anyone to potentially direct episodes of *Berlin Station*" or "what materials" she "would have included with that submission." Holland Decl. ¶ 3. |
| 252. Holland does not recall ever instructing her assistant to submit Plaintiff to direct episodes of *Berlin Station*. Holland Decl. ¶ 3. | Undisputed as to content. |

- 110 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 253. Neither Plaintiff nor any third party to this litigation has produced an email submitting Plaintiff to direct an episode of *Berlin Station*. Holland Decl. ¶ 3; Freeman Decl. Ex. 64 (Plaintiff's response to Uncle George's first set of interrogatories) at 26. | Undisputed that an email submitting Ms. Gregorini to direct an episode of Berlin Station has not been produced, but both Ms. Gregorini and Ms. Blaustein believe that Ms. Gregorini was submitted as a director for Berlin Station. Ex. 1, Gregorini Dep. Tr. at 156:20-158:9; Ex. 43, Blaustein Dep. Tr. 31:21-24. <br><br> Ms. Blaustein sent an email to Ms. Gregorini on March 27, 2017, confirming that she "submitted Francesca for block 4 of BERLIN STATION—which is episodes 207/208. They had a director drop out, and they want a strong female director with some cable/premium experience." Ex. 44, FG007185. |
| 254. Producers other than Basgallop— including Bradford Winters, the showrunner and executive producer, and Richard Gold, a producer—selected directors for *Berlin Station*, and Basgallop had no role in reviewing director submissions or hiring directors for the series. Winters Decl. ¶¶ 3-4; Gold Decl. ¶¶ 3-5. | Disputed. In Mr. Winters July 1, 2024 declaration, he states that he does "not recall" Mr. Basgallop receiving or reviewing director submissions. Dkt. 180-12, Winters Decl. ¶ 3. In Mr. Gold's July 2, 2024 declaration, he states that he does "not recall" Mr. Basgallop having any involvement in reviewing director submissions or participating in hiring discussions. Dkt 180-14, Gold Decl. ¶ 5. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 255. Plaintiff testified at her deposition that she does not believe Basgallop accessed *Emanuel* as a result of Plaintiff's alleged submission to direct an episode of *Berlin Station*. Freeman Decl. Ex. 72 (Gregorini Dep. Tr.) at 152:11-24, 154:3-10. | Disputed. Ms. Gregorini testified that "there was wide dissemination of the film" and that "anyone that wanted to have access to 'Emanuel,' starting in 2013, could have accessed it on Apple's iTunes." Her testimony about her submission as a director candidate for *Berlin Station* was that it was an "additional anomaly" or "a curiosity that occurred" regarding Mr. Basgallop's access to *Emanuel*. Ex. 1, Gregorini Dep. Tr. at 152:11-24, 154:3-10. |
| 256. Pittleman opined that M. Night Shyamalan "probably would have never watched" *Emanuel*. Freeman Decl. Ex. 75 (Pittleman Dep. Tr.) at 235:17-236:8. | Disputed. Ms. Pittleman was not asked to provide an expert opinion on whether Mr. Shyamalan watched *Emanuel*. Ms. Pittleman testified that "somebody on his staff may have" watched *Emanuel* and that Mr. Shyamalan would have watched *Emanuel* if Ms. Gregorini was recommended to direct an episode of Servant. Ex. 45, Pittleman Dep. Tr. at 235:8-13, 235:20-23. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 257. Tony Basgallop has never seen *Emanuel*. Basgallop Decl. ¶ 4. | Undisputed that Mr. Basgallop states that he has never seen Emanuel, but otherwise disputed because Mr. Basgallop had access to *Emanuel* including at least because it has been widely disseminated since 2013 and he had access to *Emanuel* through other individuals who worked on *Servant* and Defendants' consideration of Ms. Gregorini for a director role. Freeman Ex. 71, Pittleman Report ¶¶ 20-42; Ex. 41, FG000641; Ex. 42, FG147427; Ex. 46, FG156186; Ex. 47, FG276779; *see infra*, Fact #293-303, 328, 347, 372. |
| 258. M. Night Shyamalan has never seen *Emanuel*. Shyamalan Decl. ¶ 20. | Undisputed that Mr. Shyamalan states that he has never seen *Emanuel*, but otherwise disputed because Mr. Shyamalan had access to *Emanuel* including at least because it has been widely disseminated since 2013 and he had access to *Emanuel* through other individuals who worked on *Servant* and Defendants' consideration of Ms. Gregorini for a director role. Freeman Ex. 71, Pittleman Report ¶¶ 20-42; Ex. 41, FG000641; Ex. 42, FG147427; Ex. 46, FG156186; Ex. 47 FG276779; *see infra*, Fact #293-303, 328, 347, 372. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 259. Ashwin Rajan has never seen *Emanuel*. Rajan Decl. ¶ 12. | Undisputed that Mr. Rajan states that he has never seen *Emanuel*, but otherwise disputed because Mr. Rajan had access to *Emanuel* at least because it has been widely disseminated since 2013 and he had access to *Emanuel* through other individuals who worked on *Servant* and Defendants' consideration of Ms. Gregorini for a director role. Freeman Ex. 71, Pittleman Report ¶¶ 20-42; Ex. 41, FG000641; Ex. 42, FG147427; Ex. 46, FG156186; Ex. 47 FG276779; *see infra*, Fact #293-303, 328, 347, 372. |
| 260. Naaman Marshall has never seen *Emanuel*. Marshall Decl. ¶ 12. | Undisputed that Mr. Marshall states that he has never seen *Emanuel*, but otherwise disputed because Mr. Marshall had access to *Emanuel* at least because it has been widely disseminated since 2013 and he had access to *Emanuel* through other individuals who worked on *Servant* and Defendants' consideration of Ms. Gregorini for a director role. Freeman Ex. 71, Pittleman Report ¶¶ 20-42; Ex. 41, FG000641; Ex. 42, FG147427; Ex. 46, FG156186; Ex. 47 FG276779; *see infra*, Fact #293-303, 328, 347, 372. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 261. Taylor Latham has never seen *Emanuel*. Latham Decl. ¶ 20. | Undisputed that Ms. Latham states that she has never seen *Emanuel*, but otherwise disputed because Ms. Latham had access to *Emanuel* at least because it has been widely disseminated since 2013 and she had access to *Emanuel* through other individuals who worked on *Servant* and Defendants' consideration of Ms. Gregorini for a director role. Freeman Ex. 71, Pittleman Report ¶¶ 20-42; Ex. 41, FG000641; Ex. 42, FG147427; Ex. 46, FG156186; Ex. 47 FG276779; *see infra*, Fact #293-303, 328, 347, 372. |
| 262. Jason Blumenthal has never seen *Emanuel*. Blumenthal Decl. ¶ 13. | Undisputed that Mr. Blumenthal states that he has never seen *Emanuel*, but otherwise disputed because Mr. Blumenthal had access to *Emanuel* at least because it has been widely disseminated since 2013 and he had access to *Emanuel* through other individuals who worked on *Servant* and Defendants' consideration of Ms. Gregorini for a director role. Freeman Ex. 71, Pittleman Report ¶¶ 20-42; Ex. 41, FG000641; Ex. 42, FG147427; Ex. 46, FG156186; Ex. 47 FG276779; *see infra*, Fact #293-303, 328, 347, 372. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 263. Matt Cherniss has never seen *Emanuel*. Cherniss Decl. ¶ 16. | Undisputed that Mr. Cherniss states that he has never seen *Emanuel*, but otherwise disputed because Mr. Cherniss had access to *Emanuel* at least because it has been widely disseminated since 2013 and he had access to *Emanuel* through other individuals who worked on *Servant* and Defendants' consideration of Ms. Gregorini for a director role. Freeman Ex. 71, Pittleman Report ¶¶ 20-42; Ex. 41, FG000641; Ex. 42, FG147427; Ex. 46, FG156186; Ex. 47 FG276779; *see infra*, Fact #293-303, 328, 347, 372. |
| 264. Max Aronson does not recall ever seeing *Emanuel*. Freeman Decl. Ex. 81 (Max Aronson Dep. Tr.) at 175:1-5. | Undisputed that Mr. Aronson states that he does not recall ever seeing *Emanuel*, but otherwise disputed because Mr. Aronson had access to *Emanuel* at least because it has been widely disseminated since 2013, he previously worked with Ms. Gregorini and was familiar with her work, and he received a direct link to watch *Emanuel* as part of Defendants' consideration of Ms. Gregorini for a director role. Freeman Ex. 71, Pittleman Report ¶¶ 20-42; Ex. 41, FG000641; Ex. 42, FG147427; Ex. 46, FG156186; Ex. 47 FG276779; Ex. 48, APL-GREGO_00000631-633; *see infra*, Fact #293-303, 328, 347, 372. |
| **Substantial Similarity** ||

- 116 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 265. The report of Plaintiff's expert David Román (the "Román Report") opines that "a grieving mother and nanny caring for a lifelike doll" is a "general idea." Freeman Decl. Ex. 69 (Román Report) at 39. | Disputed as misleading, incomplete, and out of context. Professor Román's Report states that "[t]he collective expressive similarities stated above and found in both works are not generic, standard tropes, track standard psychological thrillers, or necessarily flow from the general idea of a grieving mother and nanny caring for a life-like doll. To the contrary, the collection of expressive elements identified above are highly original to *The Truth About Emanuel* and heavily and successfully utilized in *Servant*, which further supports my conclusion that these similarities are qualitatively important to both works." Freeman Ex. 69, Román Report at 39. |
| 266. Román testified at his deposition that "a young girl . . . and her relationship with a grieving mother who lost a young child and is now substituting or imagining that this rebirth doll is the child that she lost and that the young girl ends up being complicit in the mother's delusion" is a "basic plot premise." Freeman Decl. Ex. 73 (Román Dep. Tr.) at 234:24-235:11. | Disputed as misleading, incomplete, and out of context. Professor Román testified that "the basic plot of 'Emanuel' – 'The Truth About Emanuel'—and I kind of outline it in the report – is about – it's a story about a young girl who – and her relationship with a grieving mother who lost a young child and is now substituting or imagining that the rebirth doll is the child that she lost, and that the young girl ends up being complicit in the mother's delusion for reasons that are not fully articulated." Ex. 2 Román Dep. Tr. at 235:3-11. |

- 117 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 267. In response to the question, "How facts are treated under copyright law, you do not know?," Román testified at his deposition that "I would need to – I would say I think that facts most likely are protected." Freeman Decl. Ex. 73 (Román Dep. Tr.) at 181:7-17. | Disputed as misleading, incomplete, and out of context. Professor Román testified that he is "not a lawyer," was "not trained in law," and was "not asked to give a legal opinion." His "training is in comparative literature." Ex. 2 Román Dep. Tr. at 132:8-13. Professor Román further testified that he was in "the realm of the theoretical" regarding whether facts are protectable and was considering the "philosophical question" of "are facts original" and "a fact would be a discovery of something new that is a truth, and then that fact would be an original concept" that "most likely are protected." Ex. 2 Román Dep. Tr. at 180:5-181:17. |
| 268. The Román Report describes the use of a linear timeline in film and television works as "conventional." Freeman Decl. Ex. 69 (Román Report) at 37. | Disputed as misleading, incomplete, and out of context. Professor Román's Report states in referring to *The Truth About Emanuel* and *Servant* that "[e]ach story unfolds in a largely linear timeline that follows a conventional chronology. There are no flashback or time travel sequences." Freeman Ex. 69, Román Report at 37. |

- 118 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 269. Reborn dolls are a real method of grief therapy. Freeman Decl. Ex. 65 (Gale Report) at 10-11; Freeman Decl. Ex. 66 (Gale Report Supplement) 9-34; Ross Decl. ¶¶ 6-8; Freeman Decl. Ex. 75 (Pittleman Report) at 159:1-161:23. | Undisputed. |
| 270. Numerous works have depicted parents treating a doll as their real child. Freeman Decl. Ex. 66 (Gale Report Supplement) at 14-18 (discussing *The Searchers*, *Soft Monkey*, *Perception*, *High Maintenance*, *Chambers*, and *Pinocchio*). | Disputed as misleading as none of these works include a nanny/caretaker who is hired to care for the doll and is complicit in the mother's delusion of the doll as a real baby. Dkt. 180-94 (*Emanuel*). |
| 271. The reborn doll used to play Jericho was selected because he looked realistic. Ross Decl. ¶ 9. | Undisputed as to content. |
| 272. Plaintiff alleged in the First Amended Complaint ("FAC") that "The basic premise—of a mother so traumatized by her baby's death that she cares for a doll she believes to be her real baby—does not dictate the look of that doll." FAC ¶ 72 n.11. | Undisputed as to content. |

- 119 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 273. In response to the question, "When she [Emanuel] drops the doll and kicks it behind the door, does Emanuel think she's kicking a real baby?," Plaintiff testified at her deposition, "No." Freeman Decl. Ex. 72 (Gregorini Dep. Tr.) at 142:8-12. | Disputed as misleading and incomplete. Ms. Gregorini clarified in her testimony that Emanuel does not kick the doll, but "scoots" the doll with her foot so that Janice does not see the doll. Ex. 1, Gregorini Dep. Tr. at 142:18-22. |
| 274. Plaintiff testified that only Emanuel, in her vision, sees the baby coming back to life. Freeman Decl. Ex. 72 (Gregorini Dep. Tr.) at 102:13-103:5. | Disputed as Ms. Gregorini did not use term "vision" in the deposition excerpt cited by Defendants. Ms. Gregorini testified that the underwater scene is a "visual manifestation" of the discovery of Emanuel "holding Linda's delusion for her." Ex. 1, Gregorini Dep. Tr. at 101:14-102:2. |
| 275. Román testified that, regarding the scene in *Emanuel* with the baby coming back to life, "So yeah, no, in that moment, it is a scene that's completely outside of the realm of the real." Freeman Decl. Ex. 73 (Román Dep. Tr.) at 308:2-309:7. | Disputed as Prof. Román did not use the term "vision" in the deposition excerpt cited by Defendants. Prof. Román testified that "visually what happens" in *Emanuel* is that Emanuel's "mother comes back to life and the baby…comes back to life" but he did not "think that anyone would think…that actually happened in real life." Ex. 2 Román Dep. Tr. at 308:21-309:7. |
| **Indirect Profits/Causal Nexus** ||

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 276. Román testified that he did not conduct an analysis of any causal nexus between Defendants' profits from *Servant* Season 1 Episodes 4-10 and Seasons 2-3, and Defendants' alleged infringement in *Servant* Season 1 Episodes 1-3. Freeman Decl. Ex. 73 (Román Dep. Tr.) at 65:23-66:18, 69:22-70:8. | Disputed as Professor Román was asked to conduct a comparative analysis of *The Truth About Emanuel* and *Servant*'s episodes 1-3 and he testified that he watched episodes 4-10 to "see if the themes [in episodes 1-3] played out." Ex. 2 Román Dep. Tr.at 50:21-51:1. He further testified that "the success of the [*Servant*] series is dependent on the foundation that was established in the first three episodes…there would be no Season 2 if Season 1 was not successful. And Season 1 was successful because of the first three episodes." Ex. 2 Román Dep. Tr.at 51:17-52:1. Freeman Ex. 69, Román Report at 13-18. |
| 277. Román also testified that he has not watched Seasons 2-4 of *Servant*. Freeman Decl. Ex. 73 (Román Dep. Tr.) at 51:6-16. | Undisputed as Professor Román was asked to conduct a comparative analysis of *The Truth About Emanuel* and *Servant*'s episodes 1-3. He also watched episodes 4-10 to "see if the themes [in episodes 1-3] played out." Ex. 2 Román Dep. Tr.at 50:21-51:1. Freeman Ex. 69, Román Report at 13-18. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

- 121 -

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 278. Plaintiff's expert Dominic Persechini testified that he did not conduct an analysis of the causal nexus between Defendants' alleged infringement, and Defendants' profits from episodes of *Servant* other than Episodes 1-3 of Season 1. Freeman Decl. Ex. 74 (Persechini Dep. Tr.) at 68:19-70:7. | Disputed. Mr. Persechini testified that he conducted a quantitative analysis as to causal nexus by "looking at profits from Episodes 1, 2 and 3 and profits from Episodes 4 through 10 of Season 1, as well as Seasons 2, 3, and 4. So it just sort of follows logically, that you couldn't have profits from the follow-on episodes, if you didn't have the profits from the initial episodes. So in that respect…I traced this causal nexus through my damages." Ex. 49, Persechini Dep. Tr. at 175:10-21. |
| 279. Persechini also testified that he has not watched any episodes of *Servant*. Freeman Decl. Ex. 74 (Persechini Dep. Tr.) at 15:21-25. | Undisputed as to content, but disputed as to relevance and materiality. In forming his opinions on damages due Ms. Gregorini from Defendants' infringement of *Emanuel,* Mr. Persechini assumed that the Defendants infringed Ms. Gregorini's copyrights at issue in this matter. Ex. 50, Persechini Report ¶ 1. |
| 280. The Pittleman Report asserts that a causal nexus exists between Defendants' alleged infringement of *Emanuel*¸ and the profits from Episodes 4-40 of *Servant*. Freeman Decl. Ex. 71 (Pittleman Report) ¶¶ 52-80. | Undisputed. |

- 122 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 281. Pittleman testified that she has no expertise in financial analysis. Freeman Decl. Ex. 75 (Pittleman Dep. Tr.) at 109:22-24. | Disputed. Ms. Pittleman testified that she would not consider herself an expert at financial analysis, but she has experience with financial analysis, including the valuation of film libraries, and taught a Business in Entertainment course at UCLA Extension. Ex. 45, Pittleman Dep. Tr. at 81:19-85:7, Freeman Ex. 71, Pittleman Report ¶¶ 4-7. |
| 282. Pittleman testified that she has no expertise in profit allocation. Freeman Decl. Ex. 75 (Pittleman Dep. Tr.) at 109:25-110:2. | Disputed. Ms. Pittleman testified that she would not consider herself an expert at profit allocation, but she has experience with profit and loss management. 103:13-104:6, Freeman Ex. 71, Pittleman Report ¶ 5. |
| 283. The Pittleman Report does not contain analysis of any factors responsible for Defendants' profits from Episodes 4-40 of *Servant*. Freeman Decl. Ex. 71 (Pittleman Report) ¶¶ 52-80. | Disputed. In the paragraphs cited by Defendants, ¶¶ 52-80, she analyzes how episodes 1-3 are responsible for Defendants' revenues and profits for later episodes and seasons of *Servant*. |

- 123 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 284. Pittleman testified that her assertion of a causal nexus between Defendants alleged infringement and the profits from Episodes 4-40 of *Servant* is based on the fact Episodes 4-40 followed the allegedly infringing episodes (Episodes 1-3) sequentially and that she has not watched Seasons 2-4. Freeman Decl. Ex. 75 (Pittleman Dep. Tr.) at 139:9-16; 149:16-22. | Disputed. Ms. Pittleman testified that she read a synopsis of each of the episodes for seasons 2-4. Ex. 45, Pittleman Dep. Tr. at 139:1-19. Ms. Pittleman reached her opinion that a causal nexus exists because "[t]he rich series premise (from The Truth About Emanuel) enabled the *Servant* filmmakers to create a story lasting four seasons, entitling them to earn royalty payments for the ongoing use of the asset, producer fees for themselves and their studio, profits, and bonuses if the series achieved certain benchmarks. Without the strength of these initial, critical three episodes, there would not be the subsequent episodes in the first season or future seasons of the series and future revenues and profits would be limited. More directly, the content of the first three episodes of *Servant* caused there to be written, produced, and distributed subsequent episodes of that first season, and the seasons that followed it." Freeman Ex. 71, Pittleman Report ¶ 80. |
| 285. The Pittleman Report asserts that a causal nexus exists between Defendants' alleged infringement of *Emanuel*¸ and Apple's profits from Apple TV+. Freeman Decl. Ex. 71 (Pittleman Report) ¶¶ 81-92. | Undisputed. |

- 124 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 286. The Pittleman Report contains no analysis of the factors contributing to Apple TV+ revenues. Freeman Decl. Ex. 71 (Pittleman Report) ¶¶ 81-92. | Disputed. Ms. Pittleman analyzed that for "Apple TV+ to succeed, the content had to captivate audiences so they would press play over and over, watch more episodes and then seasons of a show, and subscribe to the service to get access to that content. Apple relied on Servant as one of its first shows and released it on Apple TV+ to do just that." Ms. Pittleman also noted that platforms "like Apple, evaluate the potential and actual upside of a television series based on whether it provides opportunities for follow-on episodes or seasons of a television series. Additional episodes drive viewership and profits to a network or platform." Freeman Ex. 71, Pittleman Report ¶¶ 81-92. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Allegedly Undisputed Fact and Evidence | Plaintiff's Disputed/Undisputed Fact and Evidence |
|---|---|
| 287. The Pittleman Report contains no analysis of how the allegedly infringing elements of *Servant* were responsible for Apple TV+ revenues. Freeman Decl. Ex. 71 (Pittleman Report) ¶¶ 81-92. | Disputed. Ms. Pittleman stated that platforms "like Apple, evaluate the potential and actual upside of a television series based on whether it provides opportunities for follow-on episodes or seasons of a television series. Additional episodes drive viewership and profits to a network or platform. The pitch of episodes 1 and 2 of Servant by and to Defendants presented this opportunity for multiple seasons with ten episodes per season. Apple was so confident in Servant, that before season 1 of *Servant* had even premiered, Apple renewed Servant for season 2. Apple invested in and relied heavily on *Servant*'s success, even before the series launched. ███████████ Apple continued leveraging *Servant*'s success and renewed it for season 3 in 2022 and season 4 in 2024 too." Freeman Ex. 71, Pittleman Report ¶¶ 81-92. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1

**Plaintiff's Statements of Additional Material Facts**

2   Plaintiff submits the following Statements of Additional Material Facts in

3   compliance with L.R. 56-2 and Judge Syke's Standing Order. These facts comprise

4   a mixture of the genuine, disputed material facts submitted in its Statement of

5   Genuine Disputes of Material Fact as well as additional background facts.

6

| Plaintiff's Additional Material Facts | Evidence |
|---|---|
| 288. Francesca Gregorini is an Emmy-nominated director with acclaimed hits like *Tanner Hall* and *The Dropout* in her credits. | Ex. 1, Gregorini Dep. Tr. at 13:25, 27:8-9, Freeman Ex. 71, Pittleman Report ¶ 36, Ex. 52, FG164823 (with cover email Ex. 95, FG164822); Ex. 98, IMDb Pro Francesca Gregorini. |
| 289. In 2010, Ms. Gregorini wrote the screenplay for *Emanuel and The Truth About Fishes*. | Ex. 1, Gregorini Dep. Tr. at 30:7-19. |
| 290. Emanuel is a female-centric psychological thriller that revolves around an 18-year-old nanny/caretaker who bonds with and forms a tender relationship with an apparently well-functioning mother after she lost her infant, and the nanny/caretaker supports the mother's delusion that a hyper-realistic doll is in fact alive and cares for the doll in that manner. | Dkt. 180-94 (*Emanuel*), Freeman Ex. 69, Román Report at 7. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 291. After raising money to develop her screenplay into a film, Ms. Gregorini directed and produced a feature-length indie film renamed as *The Truth About Emanuel*. | Ex. 1, Gregorini Dep. Tr. at 58:14-61:1, 270:10-15. |
| 292. *The Truth About Emanuel* stars Jessica Biel, Kaya Scodelario, and Alfred Molina. | Dkt. 180-94 (*Emanuel*), Ex. 52, FG164823. |
| 293. *The Truth About Emanuel* premiered on January 18, 2013 at Sundance Film Festival and earned a nomination for the 2013 Grand Jury Price – Dramatic. *Emanuel* was one of sixteen films selected for the Dramatic Competition in 2013 out of 12,146 films submitted. | Freeman Ex. 71, Pittleman Report ¶¶ 20-21; Ex. 53, FG278007. |
| 294. *The Truth About Emanuel*'s release was supported by a PR team and the press widely covered *The Truth About Emanuel*'s premier, like THE LOS ANGELES TIMES, ROLLING STONE, DEADLINE, VARIETY, and THE HOLLYWOOD REPORTER, among others. | Freeman Ex. 71, Pittleman Report ¶¶ 22-23; Ex. 52, FG164823 (with cover email Ex. 95, FG164822); Ex. 54, FG276527; Ex. 97, FG279487; Ex. 124, FG021032; Ex. 125, FG143365; Ex. 126, FG143395; Ex. 127, FG143985; Ex. 128, FG143465; Ex. 129, FG161439; Ex. 130, FG159700; Ex. 131, FG155284; Ex. 132, FG155741. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 295. Sundance staff referred to *The Truth About Emanuel* as "the most artistically liberated film at the 2013 Sundance Film Festival," noting Ms. Gregorini's distinctive voice and unique directorial choices. | Freeman Ex. 71, Pittleman Report ¶ 22; Ex. 133, https://www.sundance.org/blogs/francesca-gregorini-dispels-demons-in-emanuel-and-the-truth-about-fishes/ |
| 296. In 2013, *The Truth About Emanuel* was shown at the following film festivals:<br><br>• Sundance Film Festival<br>• Sundance London<br>• Ashland Independent Film Festival<br>• Brooklyn Film Festival<br>• Provincetown Film Festival<br>• LA Femme International Film Festival<br>• Marfa Film Festival<br>• Big Eddy Film Festival<br>• Cannes Film Market<br>• Bend Film Festival<br>• Woodstock Film Festival<br>• Morelia Film Festival<br>• Key West Film Festival<br>• Cine-World Film Festival<br>• Starz Denver Film Festival<br>• Hawaii International Film Festival<br>• Crested Butte Film Festival<br>• Rio de Janeiro Film Festival | Ex. 41, FG000641 at 1, 2 (Sundance Film Festival, Sundance London, Brooklyn Film Festival, Rio de Janeiro Independent Film Festival, Cine-World Film Festival, Starz Denver Film Festival, Bend Film Festival, Hawaii International Film Festival, Woodstock Film Festival, Crested Butte Film Festival, Big Eddy Film Festival);<br><br>Ex. 55, FG143452 at 2 (Ashland Independent Film Festival);<br><br>Ex. 56, FG151045 (Provincetown Film Festival);<br><br>Ex. 42, FG147427 (Woodstock Film Festival, Bend Film Festival, Morelia Film Festival, Key West Film Festival, Cine-World Film Festival, Starz Denver Film Festival, LA Femme Film Festival, Hawaii International Film Festival, Crested Butte Film Festival);<br><br>Ex. 57, FG144597 (Marfa Film Festival);<br><br>Ex. 58, FG276521; Ex. 79, FG146230;<br><br>Freeman Ex. 71, Pittleman Report ¶ 25. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

| | |
|---|---|
| 297. *The Truth About Emanuel* won at least the following awards at film festivals:<br><br>• Gerald Hirschfeld A.S.C. Cinematography Award at the Ashland Independent Film Festival;<br><br>• Best Acting Ensemble: Feature, and Juried Best Acting Ensemble: Feature at the Ashland Independent Film Festival;<br><br>• Festival Award for Best Cinematography at the Brooklyn Film Festival; and<br><br>• LA Femme Filmmaker Award for Best Feature Director at the LA Femme International Film Festival. | Freeman Ex. 71, Pittleman Report ¶ 27; Ex. 16, La Femme International; Ex. 41, FG000641; Ex. 59, MDB Pro, https://pro.imdb.com/title/tt1838520/details; Ex. 140, FG276595. |
| 298. In January 2014, *The Truth About Emanuel* was shown in movie theaters across the United States and the world, including Los Angeles, New York, San Diego, Phoenix, Minneapolis, Denver, Miami, Dallas, Houston, Milwaukee, and London. | Ex. 46, FG156186; Ex. 47 FG276779; Ex. 134, FG159863 Ex. 60, https://tribecafilm.com/news/the-truth-about-emanuel-trailer-jessica-biel-kaya-scodelario; Ex. 61, https://archive.jsonline.com/entertainment/movies/milwaukee-movies-off-the-grid-march-7-13-b99215724z1-248807701.html; Ex. 148, FG276780. |

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 299. Apple made *The Truth About Emanuel* available to stream or purchase on iTunes since 2013. | Ex. 62, APL-GREGO_00020155; Ex. 63, APL-GREGO_00020179; Ex. 64, APL-GREGO_00020228; Ex. 65, APL-GREGO_00020234; Freeman Ex. 53, APL-GREGO_00020266; Ex. 66, FG160295; Ex. 46, FG156189. |
| 300. The *Truth About Emanuel* was screened to numerous distributors and studios, and ultimately Tribeca Films and Well Go USA, acquired the rights to the non-theatrical release of *The Truth About Emanuel*, announced in 2013 that the film would be available in more than 50 million homes in the U.S. and Canada through video-on-demand offerings, Amazon Watch Instantly, VUDU, Xbox, Sony PlayStation, Google Play, and YouTube. | Ex. 145, FG143400; Ex. 146, FG280284; Ex. 135, FG282572; <br><br> Ex. 67, The Hollywood Reporter, "Tribeca Film and Well Go Acquire 'Emanuel and the Truth About Fishes,'" Tatiana Siegel, May 13, 2013, https://www.hollywoodreporter.com/movies/movie-news/tribeca-film-well-go-acquire-521722/; Ex. 68, IndieWire, "Tribeca Film and Well Go USA Team Up For 'Emanuel and the Truth About Fishes,'" Peter Knegt, May 13, 2013, https://www.indiewire.com/news/general-news/tribeca-film-and-well-go-usa-team-up-for-emanuel-and-the-truth-about-fishes-38480/; WG-Ex. 69, GREGO_00000004; Ex. 70, WG-GREGO_00000030; Ex. 71, FG160520. |
| 301. *The Truth About Emanuel* was distributed through multiple subscription video on demand, advertising video on demand, and transactional video on demand platforms, which includes Amazon Video Direct, Hulu, Peacock, Plex Inc., Pluto Inc., Redbox, Tubi, and Vudu. | Freeman Ex. 57, WG-GREGO_00000040; Ex. 136, FG156064. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 302. *The Truth About Emanuel* was also distributed through INDEMAND, which partners with Comcast, Charter, and Cox to provide content to 90 North American TV operators over 60 million homes, including through Xfinity. | Ex. 72, https://www.indemand.com/who-we-are/; Ex. 66, FG160295; Ex. 137, FG156872. |
| 303. *The Truth About Emanuel* has been available through Amazon Prime and Netflix. | Ex. 73, FG276794; Freeman Ex. 57, WG-GREGO_00000040 |
| 304. Tony Basgallop claims to have started work on what became the *Servant* series on Apple TV+ back in 2005. | Dkt. 180-2 ¶ 9. |
| 305. From 2005 through 2012, Mr. Basgallop developed materials for a television series and later for a novel called *Practically Perfect*. | Dkt. 180-2 ¶¶ 8-27. |
| 306. Mr. Basgallop claims that his personal life served as a foundation for his *Practically Perfect*-related work. | Ex. 6, FG276673; Ex. 7, FG276674; Ex. 8, FG276649; Ex. 9, FG276645; Ex. 10, Blumenthal Dep. Tr. at 46:25-47:12; Ex. 51, FG276627. |
| 307. Mr. Basgallop's *Practically Perfect* works addressed ███████ ████████████████████ ████████████████████ ████████████████ | Ex. 74, TB_GREGO_00000195 at 3, 15, 121; Ex. 75, TB_GREGO_00000542; Ex. 76, TB_GREGO_00001779; Ex. 77, TB_GREGO_00000086; Freeman Ex. 69, Román Report at 53, 54, 56. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 308. In early *Practically Perfect* stories, ███████████████████████████████████████████████████████ | Ex. 74, TB_GREGO_00000195 at 66, 71, 95-97, 112, 122; Ex. 75, TB_GREGO_00000542; Ex. 76, TB_GREGO_00001779; TB_GREGO_00000086; Freeman Ex. 69, Román Report at 56-59. |
| 309. Between 2007 and 2012, Mr. Basgallop's *Practically Perfect* stories included a baby that was alive from the beginning did not include a reborn doll. | Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script); Freeman Decl. Ex. 18; Ex. 74, TB_GREGO_00000195; Ex. 75, TB_GREGO_00000542; Ex. 76, TB_GREGO_00001779; TB_GREGO_00000086; Ex. 15, TB_GREGO_00002656; Freeman Ex. 69, Román Report at 52, 54. |
| 310. Between 2007 and 2012, in Mr. Basgallop's *Practically Perfect* stories, the mother did not suffer from delusions of her dead child still being alive in the form of a reborn doll. | Freeman Decl. Ex. 15 (May 17, 2007 *Practically Perfect* Episode 1 script); Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script); Freeman Decl. Ex. 18; Ex. 74, TB_GREGO_00000195; Ex. 75, TB_GREGO_00000542; Ex. 76, TB_GREGO_00001779; TB_GREGO_00000086; Freeman Ex. 69, Román Report at 52, 54. |
| 311. No company chose to produce or publish Mr. Basgallop's *Practically Perfect* works. | Ex. 3, TB_GREGO_0001866. |

- 133 -

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

| | |
|---|---|
| 312. Mr. Basgallop explained that Channel 4 rejected his script without any reference to a change in leadership. | Ex. 3, TB_GREGO_0001866. |
| 313. Mr. Basgallop tried to sell it as a feature script and could not find a buyer. | Ex. 3, TB_GREGO_0001866. |
| 314. Mr. Basgallop tried to sell it as a 60,000-word novel and could not find a buyer. | Ex. 3, TB_GREGO_0001866. |
| 315. Mr. Basgallop tried to sell it as a 30-minute spec pilot script and could not find a buyer. | Ex. 3, TB_GREGO_0001866. |
| 316. Mr. Basgallop stopped work on *Practically Perfect* between 2012 and 2015, during which time *The Truth of Emanuel* was released. | Ex. 4, Basgallop Dep. Tr. 126:17-127:8. |
| 317. Mr. Basgallop complained that *Practically Perfect* was "treated like a $5 crack whore with an anal prolapse." | Ex. 3, TB_GREGO_0001866. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 318. In 2015, Mr. Basgallop had no work that centered on a reborn doll or life-like doll. | Freeman Decl. Ex. 16 (May 24, 2007 *Practically Perfect* Episode 2 script). Mr. Basgallop also testified that he "didn't know what a reborn doll was" in 2007. Ex. 4, Basgallop Dep. Tr. at 271:18-273:17.<br><br>Freeman Decl. Ex. 18; Ex. 74, TB_GREGO_00000195; Ex. 75, TB_GREGO_00000542; Ex. 76, TB_GREGO_00001779; TB_GREGO_00000086; Ex. 15, TB_GREGO_00002656; Freeman Ex. 69, Román Report at 52, 54. |
| 319. In 2017, in meeting notes regarding *Practically Perfect* stated that "the reborn doll idea feels so compelling, fresh, and edgy" and "was definitely the big idea and should be the focus of the show." Mr. Rajan received notes that stated "The reborn idea feels too big, fresh, and edgy not to use." | Ex. 78, Rajan Dep. Tr. at 117:11-118:2, 122:6-22; Ex. 80, BE-GREGO_00001271; Ex. 81, BE-GREGO_00012216. |
| 320. Mr. Basgallop often referred to other stories with elements that he wanted to be reminded of so that he could incorporate "the secrets to their success." | Ex. 4, Basgallop Dep. Tr. at 91:16-92:10, 93:9-18. |

- 135 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 321. Mr. Basgallop testified that when he did a show like *Servant*, he looks for connections between his script to other stories and leans into what others know about that story. | Ex. 4, Basgallop Dep. Tr. at 39:3-40:22, 91:11-13, 94:17-20. |
| 322. Mr. Basgallop testified that he likes to observe independent movies that have garnered publicity, especially "an authored story, something that feels – feels like it's come from someone's heart[.]" | Ex. 4, Basgallop Dep. Tr. at 298:4-10, 298:15-18. |
| 323. Mr. Basgallop has purchased DVDs and subscribed to numerous streaming services dating from 2013. | Ex. 4, Basgallop Dep. Tr. 63: 6-21, 65:20-66:1, 66:2-15, 66:23-7. |
| 324. Mr. Basgallop watches independent films either by "getting them on DVD and watching them at home" or "streaming." | Ex. 4, Basgallop Dep. Tr. at 298:20-299:7. |
| 325. Mr. Basgallop claimed that he was inspired to redraft *Practically Perfect* around the concept of a reborn doll in 2016, two years after discussing a fleeting scene from *The Leftovers* in the "writers' room" for a television show he worked on. | Ex. 4, Basgallop Dep. Tr. at 125:6-8. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

| 326. | In 2016, Zack Amburg, Jamie Erlicht and Max Aronson were executives at Sony Pictures TV. | Ex. 18, Aronson Dep. Tr. at 33:21-34:1, 39:5-7. |
|---|---|---|
| 327. | Zack Van Amburg, Jamie Erlicht, and Max Aronson knew and worked with Ms. Gregorini when she worked as a director on Sony's show *Electric Dreams* after her film *The Truth About Emanuel*. | Ex. 18, Aronson Dep. Tr. at 17:19-25.; Ex. 1, Gregorini Dep. Tr. at 159:16-161:17; Ex. 98, IMDb Pro Francesca Gregorini; Ex. 138, FG241579. |
| 328. | When Mr. Aronson considered and selected Ms. Gregorini for the director role on *Electric Dreams*, and in doing so he considered her prior works, which included *The Truth About Emanuel*. He also had direct access to *Emanuel* in an email he received with submission of Ms. Gregorini's materials during Apple's consideration of Ms. Gregorini for Apple TV+ director roles as well. | Ex. 18, Aronson Dep. Tr. at 21:16-22:8, 163:12-164:16, 167:25-174:22; Ex. 82, Aronson Dep. Ex. 22; Ex. 48, APL-GREGO_00000631. |
| 329. | Ms. Gregorini's agents' practice was to send her prior work to companies that considered Ms. Gregorini for directorial roles. | Ex. 43, Blaustein Dep. Tr: 32:25-33:13; *see supra*, Fact #328; *see infra*, Fact #347. |

- 137 -

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 330. In 2017, Mr. Aronson, along with Mr. Van Amburg and Mr. Erlicht left Sony to become executives at Apple to launch its new streaming platform, Apple TV+. | Ex. 18, Aronson Dep. Tr. at 36:13-17, 40:9-13. |
| 331. In January 2018, Mr. Basgallop, M. Night Shyamalan, Ashwin Rajan, Jason Blumenthal, Taylor Latham met with Mr. Van Amburg, Mr. Erlicht, Matt Cherniss, and Mr. Aronson at Apple to discuss a new television series that ultimately became *Servant*. | Ex. 4, Basgallop Dep. Tr. 202 at 5-11; Ex. 13, Latham Tr. at 84:11-25; Ex. 18, Aronson Dep. Tr. at 92:23-93:9, Ex. 19, (Aronson Dep. Ex. 6); Ex. 10, Blumenthal Dep. at 45:5-12; Ex. 17, Cherniss Dep. Tr. at 62:4-63:5. |
| 332. Following the meeting, Apple decided to move forward with Season 1 of *Servant*. | Dkt. 180-8 ¶12; Ex. 22, Erlicht Dep. Tr. at 37:14-20. |
| 333. Defendant Uncle George Productions is a production entity of Defendant Blinding Edge created specifically for the production of the *Servant* series. | Ex. 78, Rajan Dep. Tr. at 35-36. |
| 334. Effective November 9, 2018, Apple, through Apple Video Programming LLC and Uncle George Productions entered into a Content Licensing Agreement for *Servant*. | Ex. 83, APL-GREGO_00000013 |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 335. Under the Content Licensing Agreement,  | Ex. 83, APL-GREGO_00000013 at 1. |
| 336. The Content Licensing Agreement sets forth | Ex. 83, APL-GREGO_00000013 at 3-4, 10. |
| 337. Under the Content Licensing Agreement, | Ex. 83, APL-GREGO_00000013 at 2. |
| 338. Under the Content Licensing Agreement, | Ex. 83, APL-GREGO_00000013 at 11. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 339. Blinding Edge Pictures entered into a Director and Executive Producer Agreement with Uncle George Productions for Mr. Shyamalan's director and executive producer services. Under the agreement, Mr. Shyamalan shall ███████ ████████████████ | Ex. 84, BE-GREGO_00018778. |
|---|---|
| 340. Escape Artists entered into an Executive Producer Agreement furnishing the non-writing executive producer services of Jason Blumenthal, Steve Tisch, and Todd Black in connection with "development and production" of *Servant*. | Ex. 85, BE-GREGO_00015989 at 1. |
| 341. Under the Executive Producer Agreement, Uncle George Production shall ███████ ████████████████ | Ex. 85, BE-GREGO_00015989 at 1. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 342. Dolphin Black Productions is a loan-out company formed by Mr. Basgallop. Mr. Basgallop confirmed that "Dolphin Black Productions and Tony Basgallop are one and the same." | Ex. 4, Basgallop Dep. Tr. at 34-35. |
| 343. Dolphin Black entered into a Writer and Executive Producer Agreement with Signatory, LLC for Mr. Basgallop's writer and executive producer/showrunner services for *Servant*. | Ex. 86, BE-GREGO_00016038. |
| 344. Under the Writer and Executive Producer Agreement for *Servant*, Mr. Basgallop's ███████████████████████████████████████████████████████████ | Ex. 85, BE-GREGO_00016038 at 8. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 345. After Apple made the straight-to-series order for *Servant*, the same individuals at the January 2018 meeting, Mr. Basgallop, Mr. Shyamalan, Mr. Rajan, Mr. Blumenthal, Ms. Latham, and the creative team at Apple worked collaboratively and had input into directors, casting, scripts, and the creative development of *Servant*. | Ex. 10, Blumenthal Dep. Tr. at 51:3-52:25, 49:23-50:2;<br><br>Ex. 18, Aronson Dep. Tr. at 103:25-105:3, 107:9-17, 101:8-102:1, 108:1-17, 111:11-112:4, 113:1-15, 115:2-10, 125:12-22, 129:6-16, 130:9-24, 131:23-25, 142:9-145:4,146:19-25, 151:25-153:3;<br><br>Ex. 22, Erlicht Dep. Tr. at 41:13-21, 42:7-23, 43:6-44:22;<br><br>Ex. 23, Van Amburg Dep. Tr. at 64:6-16, 64:24-66:20;<br><br>Ex. 17, Cherniss Dep. Tr. at 68:13-69:18, 70:4-10, 73:24-76:21, 90:5-92:1, 122:199-24, 123:9-16, 124:23-125:7, 125:8-19, 127:14-21, 128:15-129:20, 158:14-17, 162:4-164:12.<br><br>Ex. 38, Shyamalan Dep. Tr. at 56:21-57:4, 57:11-19, 120:24-121:1, 193:16-23, 201:17-202:12;<br><br>Ex. 78, Rajan Dep. Tr. at 86:17-24, 87:25-89:4, 93:10-94:4, 95:8-96:4, 186:24-187:4, 188:16-23;<br><br>Ex. 4, Basgallop Dep. Tr. at 169:18-170:17, 288:8-289:22<br><br>Ex. 37, APL-GREGO_0000739; Ex. 35, APL-GREGO_00018259; Ex. 36, APL-GREGO_00018139; Exs. 32-34, Aronson Dep. Exs. 15-16, 18; Dkt. 180-8 ¶¶ 12-13. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELIS

| | |
|---|---|
| 346. In 2018, Ms. Woodruff interviewed Ms. Gregorini to work as a director on an Apple series. Mr. Aronson stopped by while Ms. Woodruff and Ms. Gregorini were meeting. | Ex. 1, Gregorini Dep. Tr. at 159:16-161:17. |
| 347. Defendants, including Blinding Edge's Mr. Rajan, considered Ms. Gregorini for a director role on Servant and received her resume pointing to her prior work, *The Truth About Emanuel*. | Ex. 78, Rajan Dep. Tr. at 183:5-187:4; Ex. 87, APL-GREGO_00001248. |
| 348. Defendants all weighed in all potential directors for *Servant*. | Ex. 78, Rajan Dep. Tr. at 186:24-187:4, 188:16-23; *see supra,* Fact #345. |
| 349. Defendants considered Jimmi Simpson for roles in *Servant* as Sean and Julian, and they knew about his prior role as Arthur in *Emanuel*. | Ex. 78, Rajan Dep. Tr. 154:16-157:4, 163:25-165:23; Ex. 88, BE-GREGO_00008896-8898; Ex. 89, BE-GREGO_00000119-144 at 141; Ex. 90, BE-GREGO_00000392; Ex. 90, BE-GREGO_00000287; Ex. 87, APL-GREGO_00001248, Ex. 139, BE-GREGO_287. |
| 350. In 2019, Apple TV+ released the first three episodes of Servant over the coveted Thanksgiving weekend as one of five original series to launch Apple TV+. | Freeman Ex. 71, Pittleman Report ¶ 86; Dkt. 180-2 ¶ 52. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 351. *Servant* is a female-centric psychological thriller that revolves around an 18-year-old nanny/caretaker who bonds with and forms a tender relationship with an apparently well-functioning mother after she lost her infant, and the nanny/caretaker supports the mother's delusion that a hyper-realistic doll is in fact alive and cares for the doll in that manner. | Dkt. 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Freeman Ex. 69, Román Report at 8-9. |
| 352. Based on the success of season 1 of *Servant*, Apple greenlit season 2-4 to continue to build the story and characters. | Ex. 17, Cherniss Dep. Tr. at 95:4-20, 96:10-97:13, 99:5-9, 160:4-12; Ex. 22, Erlicht Dep. Tr. at 70:23-70:6; Ex. 23, Van Amburg Dep. Tr. at 71:3-15. |
| 353. On September 27, 2023, Defendants deposed Sarah Thorp. | Ex. 39, Thorp Dep. Tr. at 1:01. |
| 354. Ms. Gregorini and Ms. Thorp have been friends for more than twenty years. | Gregorini. Depo. Tr. 192:16-17, Ex. 55, THORP-041 – 047. |
| 355. Ms. Thorp discussed her idea with Ms. Gregorini once, for no more than five minutes. | Ms. Thorp shared her story "fairly briefly with Francesca." Ex. 39, Thorp Dep. Tr. 24:15. They had one conversation where this idea "specifically was discussed for probably under five minutes." Gregorini Dep. 197:3-5. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 356. Ms. Thorp's idea was undeveloped when she shared it with Ms. Gregorini. | Ms. Thorp testified her "idea was not completely fully formed." Ex. 39, Thorp Dep. Tr. 25:25-26:5. Ms. Gregorini testified that everything Ms. Thorp communicated to her was "just an idea." Gregorini. Dep. Tr. 200:7-9. Ms. Gregorini only had "a conversation with her about an idea." Ex. 1, Gregorini Dep. Tr. 191:11-12. |
| 357. Ms. Thorp never shared any written expression of her idea with Ms. Gregorini. | Ms. Thorp testified that she never showed "anything in writing" about her idea to Ms. Gregorini. Ex. 39, Thorp Dep. Tr. 148:15-19. Ms. Gregorini "never saw anything written." Gregorini Dep. 170:19-22. Ms. Gregorini "never saw anything of hers in writing" even after asking "to see it, like, numerous times." Gregorini Dep. 206:18-20. Ms. Gregorini "didn't have access to any of her writing. Not one sentence of it." Gregorini Dep. 210:6-8. |
| 358. Ms. Thorp did not provide any creative contributions to script for *The Truth About Emanuel*. | Ms. Thorp testified that "I was not creatively involved in her script." Ex. 39, Thorp Tr. at 103:8-18. Ms. Thorp also never visited the set of *Emanuel*. Ex. 39, Thorp Tr. at 115:3-6. Ex. 92, THORP-320. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 359. Ms. Thorp's idea was a thriller from a mother's point of view with a school-age child that does not exist, and a mysterious antagonist chasing the mother. | Ms. Thorp testified that the story "was meant to be a thriller from a mother's point of view in which we are with the mother, and there's a child. And we, as the audience, are unaware that that child does not exist." Ex. 39, Thorp Dep. Tr. 25:16-19, 32:25-33:2. Ms. Gregorini testified that Ms. Thorp discussed a "depressed mother who thinks that her child is alive. Her child being – like, a school-age, like, preschool or elementary school student is alive." Ex. 1, Gregorini Dep. Tr. 169:15-20, THORP-003, Ex. 55, THORP-041 – 047. |
| 360. Ms. Thorp's idea did not consider or include reborn dolls. | Ms. Thorp testified that the concept of reborn dolls or very life-like baby dolls "were not a part" of her story. Ex. 39, Thorp Dep. Tr. 29:25-30:3. |
| 361. Ms. Thorp admitted that the plot arc that Ms. Gregorini emailed her on January 25, 2009 "was all Francesca" and "was not me." | Ex. 39, Thorp Dep. Tr. 50:2-4, THORP-003. |
| 362. The less than five-minute conversation between Ms. Thorp and Ms. Gregorini disrupted their friendship, but they resolved their differences and Ms. Thorp agreed that Ms. Gregorini owned "100%" of the copyright in *The Truth About Emanuel*. | Gregorini Dep. 197:3-5; Freeman Ex. 60, FG005600; Ex. 39, Thorp Dep. Tr. at 119:10-120:2. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

| | |
|---|---|
| 363. Ms. Thorp has no interest in any copyright to *The Truth About Emanuel*. | Freeman Ex. 60, FG005600; Ex. 39, Thorp Dep. Tr. at 119:10-120:2. |
| 364. After fact discovery closed, Ms. Gregorini disclosed three experts: (1) Professor David Román, who will testify about the striking and substantial similarity between *Emanuel* and *Servant*, and the dramatic differences between *Practically Perfect* before *Emanuel* and what became *Servant*; (2) Ellen Pittleman, an industry executive who will testify about the context from *Emanuel*'s widespread dissemination and the causal nexus between *Servant*'s episodes 1-3 and later episodes and seasons; and (3) Dominic Persechini, a damages expert who will testify about Defendants' revenue and profits from *Servant*. | Dkt. 182-24, 182-25, 182-26; Ex. 50, 5/24/24 Persechini Report. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 365. Mr. Persechini calculated the following revenue received by each Defendant related to *Servant* seasons 1-4: <br><br> • Apple - ▮▮▮ <br> • Blinding Edge/Uncle George Productions - ▮▮▮ <br> • M. Night Shyamalan - ▮▮▮ <br> • Ashwin Rajan - ▮▮▮ <br> • Dolphin Black/Tony Basgallop - ▮▮▮ <br> • Escape Artists - ▮▮▮ <br> • Jason Blumenthal - ▮▮▮ <br> • Todd Black - ▮▮▮ <br> • Steve Tisch - ▮▮▮ | Ex. 93, 6/11/24 Persechini Report at Schedule 1.2. |
|---|---|
| 366. Ms. Pittleman will testify about the importance of film festivals, especially within the entertainment industry, for scouting up-and-coming talent. | Freeman Ex. 71, Pittleman Report ¶¶ 20, 30; Ex. 38, Shyamalan Dep. Tr. at 30:1-19, 31:4-16. |
| 367. Mr. Shyamalan has asked approximately twenty employees of his production company Blinding Edge, including Dom Catanzarite and Scott Friend, to go to festivals to see films "to try and find, you know, cinematographers or directors or writers." | Ex. 38, Shyamalan Dep. Tr. at 30:1-19, 31:4-16. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 368. | Ms. Gregorini was considered an up-and-coming female director when demand for female directors had just started to increase. | US News and World Report, Tierney Sneed, "Study: Women Still Missing in the Movie Industry," January 13, 2015; Deadline, "Feds Officially Probing Hollywood's Lack of Female Directors", David Robb, October 6, 2015; FG164820; FG164822; Ex. 96, FG226477; Ex. 52, FG164823 (with cover email Ex. 95, FG164822); Ex. 98, IMDb Pro Francesca Gregorini. |
|---|---|---|
| 369. | Defendants also regularly read the entertainment industry publications that *Emanuel* was featured in. Mr. Basgallop reads DEADLINE. Mr. Aronson reads DEADLINE, THE HOLLYWOOD REPORTER, and VARIETY. | Ex. 4, Basgallop Dep. Tr. at 49:9-17, Ex. 18, Aronson Dep. Tr. at 54:1-5. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

| | |
|---|---|
| 370. Defendants routinely watch movies of the same type as *Emanuel* or send representatives to watch movies at film festivals. | Mr. Basgallop watches independent films and drama. Ex. 4, Basgallop Dep. Tr. at 298:20-299:7. |
| | Mr. Shyamalan watches independent films and drama. Ex. 38, Shyamalan Dep. Tr. at 25:7-15; Ex. 38, Shyamalan Dep. Tr. at 30:1-19, 31:4-16. |
| | Mr. Rajan testified that he watches "a movie a week" and that Blinding Edge has a team to watch movies. Ex. 78, Rajan Dep. Tr. at 41:2-13. |
| | Mr. Aronson watches movies as one form of entertainment to stay up to date. Ex. 18, Aronson Dep. Tr. 54:9-14. |
| | Apple regularly goes to film festivals, including Sundance and the Toronto Film Festival, to look for films to purchase. Ex. 23, Van Amburg Dep. Tr. at 36:6-37:12; Ex. 18, Aronson Dep. Tr. at 59:25-60:13. |
| 371. Mr. Basgallop explained, "I like thrillers. I like independent films more than big-budget blockbusters. I like things – anything with a – kind of unique and distinctive voice to it." | Ex. 4, Basgallop Dep. Tr. 47:1-5. |
| 372. Ms. Gregorini was considered for a director role on a television show that Mr. Basgallop wrote and produced, *Berlin Station*. | Ex. 4, Basgallop Dep. Tr. at 221:12-21; Ex. 43, Blaustein Dep. Tr. at 31:4-11. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 373. As producer and writer, Mr. Basgallop would have had a say in director selection and access to the director's submissions. | Freeman Ex. 71, Pittleman Report ¶ 38. |
| 374. Mr. Rajan, who runs Blinding Edge and contributed to the creative process of *Servant*, is Mr. Shyamalan's cousin. | Ex. 38, Shyamalan Dep. Tr. at 56:21-57:4, 57:11-19; Ex. 17, Cherniss Dep. Tr. at 158:14-17. |
| 375. Mr. Shyamalan has asked approximately twenty employees of his production company Blinding Edge, including Dom Catanzarite and Scott Friend, to go to festivals to see films "to try and find, you know, cinematographers or directors or writers." | Ex. 38, Shyamalan Dep. Tr. at 30:1-19, 31:4-16. |
| 376. Both *Emanuel* and *Servant* have strikingly similar like-like dolls.   | Ex. 101, AL_0000983; Ex. 118, AL_0001013; Freeman Ex. 69, Román Report at 50; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

377. Both *Emanuel* and *Servant* contain scenes of a mother who cannot accept the death of her child and surrogates her dead child with a reborn doll.

Ex. 101, AL_0000983; Ex. 102, AL_0000988; Freeman Ex. 69, Román Report at 41; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3).





ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 378. Both Emanuel and Leanne discover early on that the baby they are hired to care for is a doll. Both the *Emanuel* and *Servant* include a strikingly similar shot of Emanuel/Leanne reaching into the crib to make this discovery.<br><br><br> | Ex. 101, AL_0000983; Ex. 103, AL_0000989; Freeman Ex. 69, Román Report at 41-42; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant,* Episodes 1-3). |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 379. Both Emanuel and Leanne keep up the pretense that the doll is real in the presence of the mothers, Linda and Dorothy.<br><br><br> | Ex. 101, AL_0000983; Ex. 104, AL_0000990; Freeman Ex. 69, Román Report at 42; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant,* Episodes 1-3). |
| 380. Both Emanuel and Leanne talk to the doll as if were real when the mother is absent while dressing the doll.<br><br><br> | Ex. 101, AL_0000983; Ex. 105, AL_0000991; Freeman Ex. 69, Román Report at 42; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant,* Episodes 1-3). |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | |
|---|---|---|
| 381. | Affection develops between the mother and nanny/caregiver with sexual/erotic undertones.<br><br><br><br> | Ex. 101, AL_0000983; Ex. 106, AL_0000992; Freeman Ex. 69, Román Report at 42; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |
| 382. | Both fathers explain the death of their baby, grief of the mother, and reason for the doll. Both mothers suffer psychotic episodes as result of the loss.<br><br><br><br> | Ex. 101, AL_0000983; Ex. 107, AL_0000993; Freeman Ex. 69, Román Report at 43; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |

- 155 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| 383. Both babies are dropped in the entry/hall and creates suspense over the potential discovery of the doll on the floor.  | Ex. 101, AL_0000983; Ex. 108, AL_0000994; Freeman Ex. 69, Román Report at 42; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

| | |
|---|---|
| 384. Both mothers sit at her vanity while applying makeup in front of a mirror, speaking with the nanny/caregiver with strikingly similar shot composition.   | Ex. 101, AL_0000983; Ex. 109, AL_0000995; Freeman Ex. 69, Román Report at 43-44; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 385. Both Emanuel and Leanne sit in front of the mirror applying makeup while the mothers are away, suggesting her aspiration to be like the mother, with strikingly similar shot composition. | Ex. 101, AL_0000983; Ex. 110, AL_0000997; Freeman Ex. 69, Román Report at 44; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |
| <br> | |
| 386. Emanuel and Leanne both appear underwater in similar water motif. | Ex. 101, AL_0000983; Ex. 112, AL_0001001; Freeman Ex. 69, Román Report at 44; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |
| <br> | |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 387. *Emanuel* and *Servant* have strikingly similar shots of Emanuel and Leanne looking and talking into the camera. | Ex. 101, AL_0000983; Ex. 116, AL_0001006; Freeman Ex. 69, Román Report at 47-48; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |
|---|---|
|  | |
| 388. Both mothers slip in and out of a trance-like states while others are present. | Ex. 101, AL_0000983; Ex. 117, AL_0001008; Freeman Ex. 69, Román Report at 49; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |
|  | |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 389. Both Emanuel and Leanne spy on an older parental couple kissing.<br><br><br><br><br> | Ex. 101, AL_0000983; Ex. 113, AL_0001002; Freeman Ex. 69, Román Report at 45; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 390. Both Emanuel and Servant have similar shots through the bars of a crib.<br> | Ex. 101, AL_0000983; Ex. 117, AL_0001008; Freeman Ex. 69, Román Report at 50; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |
| --- | --- |
| 391. Both Emanuel and Leanne descend dark staircases that are tonally similar.<br> | Ex. 101, AL_0000983; Ex. 120, AL_0001015; Freeman Ex. 69, Román Report at 51; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 392. The rocking horse in the nursey of both Emanuel and Servant have similar choice in art direction.   | Ex. 101, AL_0000983; Ex. 121, AL_0001016; Freeman Ex. 69, Román Report at 51; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |
| 393. Both Emanuel and Leanne go on dates that involve a taken/stolen bottle of red wine.   | Ex. 101, AL_0000983; Ex. 111, AL_0000999; Freeman Ex. 69, Román Report at 46; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 394. Both *Emanuel* and *Servant* have a strikingly similar shot with a slow push from outside through a window isolating Emanuel and Leanne. | Ex. 101, AL_0000983; Ex. 114, AL_0001004; Freeman Ex. 69, Román Report at 46-47; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |
|---|---|
| <br> | |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 395. Wallpaper selections for both the nursery (vertical stripes) and the mother's room (floral) are strikingly similar.<br><br><br><br><br><br><br><br> | Ex. 101, AL_0000983; Ex. 102, AL_0000988; Ex. 103, AL_0000989; AL_0000995; Freeman Ex. 69, Román Report at 48-49; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 396. Both Emanuel and Servant include occurrences of supernatural or surreal motifs comprised of natural elements (water and wood). | Ex. 101, AL_0000983; Ex. 115, AL_0001005; Freeman Ex. 69, Román Report at 47; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3). |
|---|---|
| <br><br><br> | |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES





397. Headstones appear prominently in both *Emanuel* and *Servant* to explain or resolve storylines.





Ex. 101, AL_0000983; Ex. 119, AL_0001014; Freeman Ex. 69, Román Report at 50; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3).

PLAINTIFF FRANCESCA GREGORINI'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 398. The casting of *Servant* mimics the casting of *Emanuel* in a strikingly similar manner. Actor Jimmi Simpson (3rd screenshot), who played Arthur in *Emanuel*, was considered for the role of Julian in *Servant* (4th screenshot).<br><br><br><br><br><br><br><br><br> | Ex. 101, AL_0000983; Ex. 120, AL_0001015; Freeman Ex. 69, Román Report at 51-52; Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 78, Rajan Dep. Tr. 154:16-157:4, 163:25-165:23; Ex. 88, BE-GREGO_00008896-8898; Ex. 89, BE-GREGO_00000119-144 at 141; Ex. 90, BE-GREGO_00000392; Ex. 91, BE-GREGO_00000287; Ex. 87, APL-GREGO_00001248; Ex. 139, BE-GREGO_287. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES





| | |
|---|---|
| 399. Both *Emanuel* and *Servant* are psychological thrillers set in an affluent Victorian-styled home and neighborhood. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 31-33, 40. |
| 400. The main character in both *Emanuel* and *Servant* is a nanny/caretaker who is a pretty 18-year-old girl with long dark hair, blue eyes, fair white skin, and troubled and mysterious background. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 24-27, 40. |
| 401. Both *Emanuel* and *Servant* revolve the nanny/caretaker's interactions with a grief-stricken mother who is in her late 30s, lives in privilege, but is trapped in delusion after losing her first and only baby, even though she still appears confident and self-possessed to others. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 27-28, 40. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 402. The mother in *Emanuel* and *Servant* care for a hyper-realistic, life-like doll about three-months old with patchy dark hair that is spoken to, bathed, and dressed by the mother and nanny/caretaker as if it were alive, and which bonds the mother and nanny/caretaker. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 26-28, 40. |
| 403. The life-like doll later appears in human form in both *Emanuel* and *Servant*. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 29, 40. |
| 404. Both *Emanuel* and *Servant* feature a father who explains to the nanny/caretaker what happened with the birth, death, and mother's grief resulting in the doll. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 29-30, 40. |
| 405. Scenes from both *Emanuel* and *Servant* express sexual or erotic undertones between the mother and nanny/caretaker. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 21-22, 40. |
| 406. Both *Emanuel* and *Servant* include cinematographic use of supernatural elements. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 11-12, 40. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| 407. | An ominous, tense, and suspenseful mood based on the risk of uncovering secrets, while featuring humor, irony, and sarcasm is in both *Emanuel* and *Servant*. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 35-36, 40. |
|------|------|------|
| 408. | A theme of delusion, based on trauma, that involves complicity from others, underlies both *Emanuel* and *Servant*. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 34-35, 40. |
| 409. | Both *Emanuel* and *Servant* follow the same chronological pattern: (1) a mother loses a child under mysterious circumstances, (2) a life-life doll replaces the dead infant, (3) the mother hires a nanny to care for the doll, (4) the mother and nanny bond over caring for the doll, and then (5) the mother's delusions about the doll take over the story. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 37-38, 40. |
| 410. | The pacing for both *Emanuel* and *Servant* unfolds quickly and builds narrative momentum as the stories unfold, disrupted by supernatural elements. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 38, 40. |
| 411. | The centerpiece setting for both *Emanuel* and *Servant* is the mother's multi-story home, and within it, the nursery. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 31-33. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 412. Both *Emanuel* and *Servant* feature well-designed, maintained, and pristine multi-story homes that have a downstairs dining room, kitchen, living room, and foyer that leads to a large wood staircase that goes to the nursery and mother's room. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 31-32. |
| 413. The nursery in both *Emanuel* and *Servant* is hyper-clean, nearly sterile, with specific expressive aesthetics like a vintage crib, vintage rocking horse, and striped wallpaper. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 33. |
| 414. The mother/nanny/doll triad structures the theme of both *Emanuel* and *Servant*. | Dkt. 180-94 (*Emanuel*), 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3); Ex. 101, AL_0000983; Freeman Ex. 69, Román Report at 34. |
| 415. Father/son dynamic is explored more in Hollywood than mother/daughter relationships. | Freeman Ex. 69, Román Report at 34. |
| 416. Episodes 4-40 of *Servant* continue elements, story arc, and characters from the first three episodes. | Freeman Ex. 71, Pittleman Report ¶¶ 52-80; Ex. 17, Cherniss Dep. Tr. at 99:5-9; 160:4-12; Dkt. 180-44, 180-45, 180-46 (*Servant*, Episodes 1-3), Exs. 25-31, Episodes 4-10, Exs. 99 and 100, IMDB Pro synopses of *Servant* episodes, Ex. 122, Wikipedia synopses of Servant episodes. |

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 417. When asked "would Seasons 2 through 4 have happened without the first three episodes of *Servant*," Mr. Cherniss responded, "You can't get to Episode 10 of a series without an Episode 1, 2, and 3. So, I think from a numerical standpoint you need the first season to have a second season. It's where the story began." | Ex. 17, Cherniss Dep. Tr. at 160:4-12. |
| 418. Information about *Emanuel*, including the cast, available showings, press, film clips, trailers, and awards were all available on the *Emanuel* website at thetruthaboutemanuel.com. | Ex. 147, Screenshots of thetruthaboutemanuel.com website |

Dated: July 26, 2024

ROBINS KAPLAN LLP

By: *s/Patrick Arenz*
      Patrick M. Arenz

Attorneys for Plaintiff
Francesca Gregorini

PLAINTIFF FRANCESCA GREGORINI'S
STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES