1   **ROBINS KAPLAN LLP**
    Michael A. Geibelson (SBN 179970)
2   MGeibelson@RobinsKaplan.com
    Patrick M. Arenz *(Pro hac vice)*
3   PArenz@RobinsKaplan.com
    Emily E. Niles *(Pro hac vice)*
4   ENiles@RobinsKaplan.com
    Annie Huang *(Pro hac vice)*
5   AHuang@RobinsKaplan.com
    Prateek N. Viswanathan *(Pro hac vice)*
6   PViswanathan@RobinsKaplan.com

7   2121 Avenue of the Stars
    Suite 2800
8   Los Angeles, California 90067
    Telephone:  310 552 0130
9   Facsimile:   310 229 5800

10  *Attorneys for Plaintiff Francesca Gregorini*

11

12               **UNITED STATES DISTRICT COURT**

13               **CENTRAL DISTRICT OF CALIFORNIA**

14

15  Francesca Gregorini,                    Case No. 2:20-cv-00406-SSS-JC

16              Plaintiff,                   *Hon. Sunshine S. Sykes*

17       v.                                 **PLAINTIFF FRANCESCA**
                                            **GREGORINI'S OPPOSITION**
18  APPLE INC., a California                **TO DEFENDANTS' MOTION**
    corporation; M. NIGHT                   **TO EXCLUDE EXPERT**
19  SHYAMALAN, an individual;               **REPORTS AND TESTIMONY**
    BLINDING EDGE PICTURES,                 **OF DOMINIC PERSECHINI**
20  INC., a Pennsylvania corporation;
    UNCLE GEORGE PRODUCTIONS,
21  a Pennsylvania corporate; ESCAPE
    ARTISTS LLC, a California limited
22  liability company; DOLPHIN
    BLACK PRODUCTIONS, a
23  California corporation; TONY            Date:      November 1, 2024
    BASGALLOP, an individual;              Time:      2:00 p.m.
24  ASHWIN RAJAN, an individual;           Dept.:     Courtroom 2
    JASON BLUMENTHAL, an
25  individual; TODD BLACK, an
    individual; STEVE TISCH, an
26  individual; and DOES 1-10, inclusive,

27              Defendants.

28

*Sidebar (vertical text):* ROBINS KAPLAN LLP · ATTORNEYS AT LAW · LOS ANGELES

Case No. 2-20-cv-00406-SSS-JC

# TABLE CONTENTS

**Page**

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

I.    Ms. Gregorini will seek direct and indirect profits for Defendants' infringement at trial. ......................................................................................... 1

II.   Mr. Persechini is an expert in the calculation of intellectual property damages. ................................................................................................................ 1

III.  Mr. Persechini detailed his opinions about direct and indirect profits in his initial, rebuttal, and supplemental reports. ................................................ 2

    A.   Mr. Persechini's opening report opined on Defendants' revenues ........................................................................................................ 2

    B.   Mr. Persechini's rebuttal report opined on Defendants' costs, profits, and responded to Ms. Trexler's opening report. ....................... 3

    C.   Mr. Persechini served a supplemental report to address data that Defendants withheld from fact discovery and produced for the first time on June 7, 2024 ...................................................................... 5

ARGUMENT .................................................................................................................. 6

I.    Mr. Persechini properly opined on a quantitative analysis to aid the jury's determination about a causal nexus for indirect profits. ........................ 6

II.   The Court should not exclude Mr. Persechini's rebuttal opinions about Defendants' failure to apportion profits. ........................................................... 9

III.  Mr. Persechini's opinions about Apple's profits are reliable ......................... 13

CONCLUSION ............................................................................................................. 14

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred v. Walt Disney Pictures*,
    Case No.18-8074 (C.D. Cal. May 13, 2022), Dkt.158-25 .................................. 7

*Burns v. Imagine Films Entm't, Inc.*,
    164 F.R.D. 589 (W.D.N.Y. 1996) .................................................................. 7, 8

*Charter Sch. Cap., Inc. v. Charter Asset Mgmt. Fund, LP*,
    No. CV 14-3385, 2015 WL 12655550 (C.D. Cal. Mar. 9, 2015) .................. 7, 8

*In re Flashcom, Inc.*,
    503 B.R. 99 (C.D. Cal. 2013) .......................................................................... 6

*Frank Music Corp., v. Metro-Goldwin-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) ........................................................................ 10

*Frank Music Corp. v. Metro-Goldwin-Mayer Inc.*,
    866 F.2d 1545 (9th Cir. 1989) ........................................................................ 7

*Furnituredealer.net, Inc. v. Amazon.com, Inc.*,
    No. 18-232 (JRT/HB), 2022 WL 891462 (D. Minn. Mar. 25, 2022) ............. 8

*Griffo v. Oculus VR, Inc.*,
    No. 15-1228, 2018 WL 6265067 (C.D. Cal. Sept. 18, 2018) .......................... 7

*Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.*,
    240 U.S. 251 (1916) ...................................................................................... 10

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985) ...................................................................................... 10

*Hendricks v. DreamWorks, LLC*,
    2007 WL 9705916 (C.D. Cal. Nov. 20, 2007) ............................................ 7, 9

*Irish Rover v. Sims*,
    No. 20-06293, 2023 WL 6793218 (C.D. Cal. June 30, 2023) ....................... 11

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    No. 04-cv-9049, 2011 WL 13128409 (C.D. Cal. Jan. 26, 2011) ................ 9, 10

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

*Nintendo of Am., Inc. v. Dragon Pac. Intern.*,
  40 F.3d 1007 (9th Cir. 1994) ................................................................. 10

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ............................................................. 7, 10

*Self v. FCA US LLC*,
  No. 17-cv-01107, 2018 WL 5999613 (E.D. Cal. Nov. 15, 2018) ......................... 8

*Sumotext Corp. v. Zoove, Inc.*,
  No. 16-CV-01370-BLF, 2020 WL 264701 (N.D. Cal. Jan. 17,
  2020) ................................................................................................. 12

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM
  Ericsson*,
  No. CV 15-02370 JVS, 2016 WL 7042085 (C.D. Cal. Aug. 17,
  2016) ................................................................................................. 12

*Wolfe v. C.R. Bard, Inc.*,
  No. 2:19-cv-07768-SAB-PJW, 2021 WL 370815 (C.D. Cal. Mar.
  22, 2021) .............................................................................................. 9

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
  235 F.3d 1184 (9th Cir. 2000) ............................................................ 6, 11

**Statutes**

17 U.S.C. § 504(b) ........................................................................ 2, 3, 10, 12

**Court Rules**

Fed. R. Evid. 702 ............................................................................... 6, 14

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**INTRODUCTION**

Dominic Persechini is a well-qualified expert witness experienced in the calculation of intellectual property damages. And that is the analysis he meticulously performed here. Across an opening, rebuttal, and supplemental report, Mr. Persechini applied settled copyright law on damages that requires the plaintiff first to prove gross revenue, which Mr. Persechini did, and then he rebutted Defendants' expert witness's opinion on deductible expenses and apportionment of profits, which Defendants bear the burden of proof on. Defendants' critiques present no credible basis to exclude any of Mr. Persechini's detailed opinions and analysis. Rather, Defendants simply debate his conclusions and mischaracterize his testimony. Because the weighing of expert testimony is a function for the jury to resolve at trial, and not for this Court in pretrial, the Court should deny Defendants' motion.

**FACTUAL BACKGROUND**

**I.    Ms. Gregorini will seek direct and indirect profits for Defendants' infringement at trial.**

Ms. Gregorini contends that Apple TV+'s television series *Servant* episodes 1-3 infringe her copyright in the film *The Truth About Emanuel* (*Emanuel*). And since the beginning of this case, Ms. Gregorini has sought both direct and indirect profits for this infringement. *See, e.g.*, Dkt. 25 at 91. Put simply, Ms. Gregorini seeks direct profits from episodes 1-3 of *Servant*, and indirect profits from episodes 4-40 that have a causal nexus to that infringement. Indeed, the first three episodes of *Servant* is "where the story began" and served as the entire foundation for the rest of the series. Dkt. 158-31, Cherniss Dep. Tr. at 160:4-12. The parties conducted significant fact and expert discovery on this topic.

**II.    Mr. Persechini is an expert in the calculation of intellectual property damages.**

Dominic Persechini is the founder of Persechini Consulting, LLC. Dkt. 201-4 ¶ 2. He has nearly two decades of experience providing financial consulting and

expert services in commercial and intellectual property matters, including patent infringement, trade secret misappropriation, trademark infringement, and copyright infringement. *Id.* ¶¶ 2-3. He has worked on over 145 cases with most of this work calculating financial damages. *Id.* ¶ 2; Dkt. 180-89, Persechini Dep. Tr. at 16:10-16. Both plaintiffs and defendants have retained Mr. Persechini's services. Ex. 150, Persechini Dep. Tr. at 9:3-9. In fact, Defendant Apple recognized Mr. Persechini's expertise and retained him as an expert witness to determine damages in an intellectual property case just a few years ago. Dkt. 189-89, Persechini Dep. Tr. at 16:10-16.

Before founding Persechini Consulting, he was Managing Director of Intensity, LLC and as a Senior Consultant at the consulting firm LitiNomics. *Id.* ¶ 4. Before LitiNomics, he worked for Charles River Associates. *Id.* Mr. Persechini earned an M.B.A. from the Booth School of Business at the University of Chicago and a B.A. in economics from Stanford University. *Id.* ¶ 5. He is a Certified Management Accountant and a member of the Licensing Executives Society. *Id.*

## III. Mr. Persechini detailed his opinions about direct and indirect profits in his initial, rebuttal, and supplemental reports.

### A. Mr. Persechini's opening report opined on Defendants' revenues.

Mr. Persechini submitted his opening report on May 24, 2024. Dkt. 201-4. That report followed the burden-shifting process for damages under copyright law. Mr. Persechini, for instance, understood that "upon showing of infringement, a copyright owner is entitled to recover…any profits of the infringer that are attributable to the infringement." *Id.* ¶ 52. He also understood that "in establishing an infringer's profits, the copyright owner bears the burden to present proof only of the infringer's gross revenue attributable to the infringement, after which the burden shifts to the infringer to show deductible expenses and elements of profit that are attributable to factors other than use of the copyrighted work." *Id.*; 17 U.S.C. § 504(b). Thus, his opening report addressed Defendants' gross revenue for *Servant*.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

To reach his opinions, Mr. Persechini analyzed the deposition testimony and documents produced by the Defendants to identify and calculate the revenue attributable to each Defendant's infringement of *Emanuel*. Dkt. 201-4 ¶¶ 8-9, 56-119, Tab 4. Apple produced limited financial information for Apple TV+ and with trial scheduled for December 9, 2024, Mr. Persechini estimated Apple TV+ revenue through fiscal year 2024 based on Apple's year-over-year growth rate for its Services business segment. *Id.* ¶ 58. Mr. Persechini's opening report identified and calculated the revenues received by Defendants related to *Servant* seasons 1-4 and episodes 1-3 of season 1. *Id.* ¶¶ 8-9. To determine the portion of Apple TV+ revenue attributable to *Servant*, Mr. Persechini relied on the viewing metrics for *Servant* produced by Apple. *Id.* ¶¶ 61-67. Mr. Persechini detailed his analysis and conclusions across a 55-page report with 23 pages of schedules.

**B.    Mr. Persechini's rebuttal report opined on Defendants' costs, profits, and responded to Ms. Trexler's opening report.**

Mr. Persechini served a rebuttal report on June 7, 2024. Dkt. 201-5. That report responded to Defendants' opening report from Dana Trexler, which identified revenues, costs, and profits for Defendants related to season 1 and episodes 1-3 (Dkt. 201-7). Put differently, Ms. Trexler followed the burden-shifting framework and tried to meet Defendants' burden of identifying deductible expenses and elements of profit not attributable to Defendants' infringement. Dkt. 201-5 ¶ 57; 17 U.S.C. § 504(b). Mr. Persechini responded to this report and offered his opinions on the profits for *Servant* (both direct and indirect).

Specifically, Mr. Persechini calculated profits related to seasons 1-4 of *Servant* as well as episodes 1-3 of season 1. Dkt. 201-5 ¶¶ 6-12, 63-109. He calculated profits for Defendants by identifying deductible costs related to each season and then subtracting that amount from the revenue that he calculated for Defendants in his opening report. *Id.* ¶¶ 63-109. Because Defendants refused to produce financial information for seasons 2-4 of *Servant*, Mr. Persechini analyzed the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  information that had been produced and estimated the deductible costs for seasons

2  2-4. *Id.* ¶¶ 69-71, 81-89, 98. Apple produced some cost information related to its

3  limited contribution margin calculation for Apple TV+, but because these costs "are

4  not incremental to *Servant*," Mr. Persechini did not deduct these costs in his profit

5  analysis. *Id.* ¶ 68. Ms. Trexler also did not deduct these costs in her opening report.

6      Mr. Persechini also addressed his disagreements with Ms. Trexler's report. *Id.*

7  ¶¶ 110-144. For example, Ms. Trexler offered an apportionment opinion based on a

8  percentage of cost for the *Servant* scripts for episodes 1-3. *Id.* ¶ 110. Mr. Persechini

9  detailed the many errors in Ms. Trexler's methodology. To start, he explained that

10  Ms. Trexler's opinion was incorrect because the copyrighted material "is not just

11  the script but is the entire film and motion picture itself." *Id.* ¶¶ 112, 110-113.

12      Next, Mr. Persechini explained that Ms. Trexler's analysis was incomplete

13  and incorrect because she failed to apportion between infringing and non-infringing

14  elements. *Id.* at ¶¶ 114-118. For instance, the costs for *Servant* episodes 1-3 were

15  part of the effort to create those episodes, which led to the acts of copyright

16  infringement by Defendants. *Id.* ¶ 115. He then provided concrete examples

17  showing how Ms. Trexler's opinion excluded contributions to the infringing

18  material that she characterized as non-infringing. *See id.* ¶¶ 116-18.

19      Mr. Persechini also set forth his opinion that Ms. Trexler's cost-based form of

20  apportionment is incorrect and incomplete because costs are not necessarily

21  indicative of value. *Id.* ¶¶ 123-129. Costs are expected to be lower than value since

22  the goal of most commercial endeavors is to turn a profit. *Id.* Mr. Persechini also

23  explained that Ms. Trexler failed to establish any correlation between the share of

24  costs incurred for a given factor and its share of value generated, which resulted in

25  a cost approach that is a poor proxy for value. *Id.* ¶¶ 125-129. In Mr. Persechini's

26  opinion, therefore, Ms. Trexler had not met Defendants' burden to prove any

27  apportionment theory.

28

Even so, Mr. Persechini opined that, while a cost-based approach is not appropriate to apportion profits here, if the Court were to permit its use, then Mr. Persechini described the adjustments needed to be made to correct other errors in Ms. Trexler's analysis. *Id.* ¶¶ 130-144. Because it is not only the scripts that infringe *Emanuel*, but the entirety of *Servant* episodes 1-3, a cost-based apportionment should result in an apportionment of 100% to episodes 1-3. *Id.* ¶ 131. Ms. Trexler's cost-based apportionment is based on script fees divided by total costs invested. Mr. Persechini provided two methods for adjusting Ms. Trexler's methodology. The first method involved adjusting the *numerator* in the calculation so that the apportionment percentage was based on the total costs invested in episodes 1-3 divided by the total costs invested in *Servant* on a cumulative season-by-season basis. *Id.* ¶¶ 132-137. The second method involved adjusting the *denominator* so that the apportionment percentage was based on the script fees incurred for episodes 1-3 divided by the total script fees incurred for *Servant* on a cumulative season-by-season basis. *Id.* ¶¶ 138-144. In total, Mr. Persechini detailed his analysis and opinions across his 64-page rebuttal report along with 40 pages of schedules.

### C. Mr. Persechini served a supplemental report to address data that Defendants withheld from fact discovery and produced for the first time on June 7, 2024.

Mr. Persechini served a supplemental report on June 11, 2024, four days after rebuttal reports. On June 7, 2024, Ms. Trexler submitted a rebuttal report (Dkt. 201-8) relying on 437 pages of documents and three native Excel files related to *Servant* seasons 2-4 that Defendants never produced during fact discovery, which closed on May 17, 2024 (Dkt. 132). All these documents were responsive to Ms. Gregorini's discovery requests. Because Defendants withheld these documents during discovery (even though some had print dates during the fact discovery period), Mr. Persechini was unable to consider these documents for his opening and rebuttal reports. Dkt. 201-6 ¶ 2. As a result, Mr. Persechini submitted his supplemental report that

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

incorporated his analysis of Ms. Trexler's rebuttal exhibits and the new documents. Dkt. 201-6. Mr. Persechini calculated and provided updated schedules for Defendants' revenue, deductible costs, and profits as well as adjustments to Ms. Trexler's cost-based apportionment. Dkt. 201-6, Schedules 1.1A-4.5B. Defendants deposed Mr. Persechini on all three reports.

ARGUMENT

Like scores of his other matters, Mr. Persechini's analysis and opinions contain the requisite intellectual rigor and apply the facts of this case to relevant copyright infringement damages law. While Defendants may disagree with Mr. Persechini's analysis and opinions, that disagreement does not render his opinions inadmissible. The "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee Notes (2000). Any alleged infirmities in an expert opinion should be properly addressed through cross-examination, presentation of contrary evidence, or jury instruction. *Daubert v. Merrell Pharm.*, Inc., 509 U.S. 579, 596 (1993). *Daubert* is not a proper channel to weigh evidence or resolve fact disputes. *See, e.g.*, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1192 (9th Cir. 2000). And any doubts as to whether the expert's testimony will be useful should be resolved in favor of admissibility. *In re Flashcom, Inc.*, 503 B.R. 99, 124 (C.D. Cal. 2013). The Court should deny Defendants' motion so that the jury may resolve the competing opinions between Mr. Persechini and Ms. Trexler about the damages due to Ms. Gregorini for Defendants' infringement.

**I.    Mr. Persechini properly opined on a quantitative analysis to aid the jury's determination about a causal nexus for indirect profits.**

Defendants' motion about "causal nexus" ignores established law on indirect profits and distorts Mr. Persechini's analysis and opinions. To begin, copyright law allows Ms. Gregorini to pursue Defendants' indirect profits stemming from their infringement when there is evidence of a causal nexus between the infringement

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

and Defendants' other profits from non-infringing sales or content. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004); *Frank Music Corp. v. Metro-Goldwin-Mayer Inc.*, 866 F.2d 1545, 1550 (9th Cir. 1989). In the context of sequels and follow-on works, this causal nexus may be satisfied in three ways. First, even when the sequel may not be itself an infringing work, interest in the first infringing work may elevate the public's interest in the sequel, so that some profits from the sequel may be "indirectly attributable to the infringement of the plaintiff's screenplays." *Hendricks v. DreamWorks, LLC*, 2007 WL 9705916, at *3 (C.D. Cal. Nov. 20, 2007) (citing *Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 589, 592 (W.D.N.Y. 1996)). Second, even if the later work "contained no infringing materials, it would not exist **but for** the success of the motion picture that purportedly was based on the screenplays[.]" *Charter Sch. Cap., Inc. v. Charter Asset Mgmt. Fund, LP*, No. CV 14-3385, 2015 WL 12655550, at *3 (C.D. Cal. Mar. 9, 2015) (emphasis added); *see also Burns*, 164 F.R.D. at 592 (same). Third, follow-on works "contain the same main characters and other key elements from the original film." *Alfred v. Walt Disney Pictures*, Case No.18-8074 (C.D. Cal. May 13, 2022), Dkt.158-25 at 5. This standard is satisfied even if the infringing material constitutes a fraction of the total work, if that material "strikes at the core of the product being promoted." *Griffo v. Oculus VR, Inc.*, No. 15-1228, 2018 WL 6265067, at *11 (C.D. Cal. Sept. 18, 2018).

Mr. Persechini set forth the background for why he was calculating indirect profits. For example, Defendants mischaracterize Mr. Persechini's testimony and opinions related to causal nexus. Dkt. 201-2 at 4-5. Mr. Persechini accurately testified that the scope of his work was *not* to do a qualitative or literary analysis of the causal nexus between the first three episodes of *Servant* and the rest of the series. To the contrary, he properly relied on the opinions of Professor David Román and an entertainment industry expert, Ellen Pittleman, that *Servant* builds on the characters, plot, setting, and other attributes of episodes 1-3 across four

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

seasons. Dkt. 182-26, Pittleman Report ¶¶ 52-80; Dkt. 182-24, Román Report at 13-18; Dkt. 158-29, Rajan Dep. Tr. at 148:18-25, 145:4-6; Dkt. 158-31, Cherniss Dep. Tr. at 160:4-12; *see also Self v. FCA US LLC*, No. 17-cv-01107, 2018 WL 5999613, at *3 (E.D. Cal. Nov. 15, 2018) (allowing experts to rely on other experts for their analysis and opinions). Rather than perform a qualitative analysis, Mr. Persechini explained that he opined on a causal nexus from a "quantitative standpoint." Ex. 201-3, Persechini Dep. Tr. at 175:10-23. He traced the revenue and costs for *Servant* from the first three episodes through the rest of season 1 and then to seasons 2-4 to calculate the profits for each season. *Id.*; Dkt. 201-6, 201-7, 201-8.

Defendants do not dispute Mr. Persechini's description of a causal nexus as a "connection…between the profits and the infringement" and that a "causal nexus exists if the infringement at least partially caused the profits that the infringer generated." Dkt. 201-6 ¶ 58. What Defendants appear to challenge is another way to assess causal nexus in the same paragraph of Mr. Persechini's report: "[y]et another way to look at this causal nexus issue is to determine whether the infringer would not have made the profits but-for the infringement." *Id.*; Dkt. 201-2 at 5-6. But courts do consider such a but-for analysis for indirect profits. *See, e.g.*, *Charter Sch. Cap., Inc.*, 2015 WL 12655550, at *3; *Burns*, 164 F.R.D. at 592. Even so, courts have also explained that the legal standard is less stringent than but-for causation, and merely requires "causal connection." *Furnituredealer.net, Inc. v. Amazon.com, Inc.*, No. 18-232, 2022 WL 891462, at *10 (D. Minn. Mar. 25, 2022). "Courts have used phrases like a 'causal connection,' 'contributed to,' and 'reasonably related.'" *Id.* (quoting *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 797 (8th Cir. 2003); *Balsley v. LFP, Inc.*, 691 F.3d 747, 770 n.6 (6th Cir. 2012)). That Mr. Persechini proved his quantitative analysis under a more stringent standard is no basis to exclude his testimony. *See Furnituredealer.net*, 2022 WL 891462, at *5 ("Contemplation of this one factor does not transform his entire

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  analysis of nexus into improper expert testimony [b]ecause [the expert] employed

2  the correct standard for nexus.").

3       Defendants also mischaracterize the sole case they rely on to claim that

4  courts have rejected "but for" logic related to indirect profits. *Hendricks*, 2007 WL

5  9705916, at *1-3. In *Hendricks*, plaintiff's infringement claim related to one draft

6  of a screenplay. The court in *Hendricks* found that there was no promotional value

7  for the draft screenplay that could have boosted the profitability of the later drafts

8  of the screenplay or the motion picture and did not mention any "but for" standard.

9  *Id.* at *3. Unlike here, the first three episodes of *Servant* promote the viewing and

10  value of later episodes leading to a lucrative television series for Defendants. Dkt.

11  158-31, Cherniss Dep. Tr. at 160:4-12; Dkt. 158-30, Latham Dep. Tr. at 79:15-

12  80:22; Dkt. 158-29, Rajan Dep. Tr. at 148:18-25; Mr. Persechini properly relied on

13  the Defendants' testimony and documents, the opinions of Professor Román and

14  Ms. Pittleman, and his own analysis of Defendants' profits to opine on a

15  quantitative foundation for the jury's determination of a causal nexus between

16  Defendant's infringing and non-infringing profits from *Servant*. At minimum, his

17  financial analysis is helpful to a jury even if he is not opining on the ultimate issue

18  of causal nexus. *See Wolfe v. C.R. Bard, Inc*., No. 2:19-cv-07768-SAB-PJW, 2021

19  WL 370815, at *3 (C.D. Cal. Mar. 22, 2021). And this quantitative analysis is well

20  within Mr. Persechini's expertise in intellectual property damages. Defendants'

21  motion should be denied.

22  **II.    The Court should not exclude Mr. Persechini's rebuttal opinions about**

23         **Defendants' failure to apportion profits.**

24       Defendants' argument to exclude Mr. Persechini's *rebuttal* opinions is a ploy

25  to eliminate their burden  to prove deductible expenses and apportionment. "The

26  Ninth Circuit employs a burden shifting analysis to determine the amount of

27  damages recoverable on a claim of copyright infringement." *Mattel, Inc. v. MGA*

28  *Entertainment, Inc*., No. 04-cv-9049, 2011 WL 13128409, *10 (C.D. Cal. Jan. 26,

2011). Ms. Gregorini bears the initial burden to prove "gross revenue" for the infringement. *Polar Bear*, 384 F.3d at 711; *Mattel*, 2011 WL 13128409, at \*10; 17 U.S.C. § 504(b). Here, that means Ms. Gregorini need only show Defendants' gross revenue from *Servant*, as opposed to Apple's gross revenue across all products. *Polar Bear*, 384 F.3d at 711 n.8 (explaining that "the statute's general reference to 'gross revenue' to mean the gross revenue associated with the infringement, as opposed to the infringer's overall gross sales resulting from all streams of revenue"). And Mr. Persechini met his burden in his opening report. *See generally* Dkt. 201-4.

The burden then shifts to Defendants to prove "the elements of profit that are attributable to factors other than use of the copyrighted work." *Mattel*, 2011 WL 13128409, at \*10; 17 U.S.C. § 504(b). Then, "[i]f the infringing defendant does not meet its burden of proving costs, the gross [revenue] figure stands as the defendant's profits." *Id.* (quoting *Frank Music Corp., v. Metro-Goldwin-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985)). While Ms. Trexler purported to address apportionment in her report, Mr. Persechini appropriately criticized her incomplete analysis and concluded that Ms. Trexler failed to meet her burden to apportion profits appropriately. *See* Dkt. 201-5 at ¶¶ 110-129. Indeed, Ms. Trexler conceded that relying only on script fees does not include all the infringing elements of episodes 1-3. Dkt. 201-7 at 5 n.12. *Daubert* is no basis to prevent Mr. Persechini from showing how Defendants and Ms. Trexler failed their burden of proof.

Not every case allows for apportionment. "[W]here infringing and noninfringing elements of a work *cannot be readily separated*, all of a defendant's profits should be awarded to a plaintiff." *Nintendo of Am., Inc. v. Dragon Pac. Intern.*, 40 F.3d 1007, 1012 (9th Cir. 1994) (citing *Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 261–62 (1916) (emphasis added)). Or as the Supreme Court explained, when a defendant has commingled infringing elements with noninfringing elements, the defendant bears the burden to prove that its profits were attributable to noninfringing elements. *Harper & Row Publishers, Inc. v.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Nation Enterprises*, 471 U.S. 539, 567 (1985) ("[A]n infringer who commingles infringing and noninfringing elements 'must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him.'") (quoting *Sheldon v. Metro-Goldwyn Pictures Corp*., 309 U.S. 390, 406 (1940)). And when a defendant seeks to prove apportionment, "the benefit of the doubt must always be given to the plaintiff, not the defendant." *Frank Music*, 886 F.2d at 1549 (citations omitted). Here, the first three episodes of *Servant* do not allow for apportionment because the Defendants have commingled infringing and noninfringing elements. *See, e.g.*, Dkt. 201-5 at ¶¶ 114-118. That Ms. Trexler has failed to meet her apportionment burden is no basis to exclude Mr. Persechini's critiques of that failure. Indeed, courts do "not weigh conflicting expert testimony or attempt to determine whether the conclusions are correct." *Irish Rover v. Sims*, No. 20-06293, 2023 WL 6793218, at *1 (C.D. Cal. June 30, 2023) (citing *Wyler Summit P'ship*, 235 F.3d at 1192).

Mr. Persechini explained that Ms. Trexler's premise was incorrect from the start: "Because the copyrighted work is more than just the script and is instead embodied by the entirety of the film itself, the basis for Ms. Trexler's script-based apportionment is incorrect, and not a reliable methodology to meet Defendants' burden to prove apportionment." Dkt. 201-5 ¶ 113. Mr. Persechini also appropriately criticized Ms. Trexler for ignoring that the acts of copyright infringement are all the costs for *Servant* episodes 1-3 that were part of the collaborative effort to create these episodes. Dkt. 201-5 ¶ 115. Ms. Trexler acknowledged that episodes 1-3 "would not exist without" all the efforts of "writing the scripts, production, casting, wardrobe, set design, etc.," but would only consider the costs of writing the scripts in her apportionment methodology. Dkt. 201-7 at 42-43.

Defendants try to seize on and take out of context Mr. Persechini's testimony stating that an analysis could "theoretically" or "hypothetically" be done at a "high level -- that looked at various elements and how these elements drove or are

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

responsible for profits." Ex. 201-3, Persechini Dep. Tr. at 122:7-11. He explained that this hypothetical statement was not applicable to this case where non-infringing factors are "encompassed in the infringing activities." Ex. 201-3, Persechini Dep. Tr. at 121:22-122:2. Moreover, Defendants misunderstand that Ms. Gregorini and Mr. Persechini have no burden of proof at all on apportionment. Defendants and Ms. Trexler have the burden of proving that their profits were somehow attributable to noninfringing elements. 17 U.S.C. § 504(b). Even so, Mr. Persechini still explained that he was unaware of how such an analysis could be done in the circumstances of this case. Ex. 150, Persechini Dep. Tr. at 125:9-126:4. He used a "spaghetti bowl" as an analogy for how intertwined Defendants' infringement is with the entirety of episodes 1-3 that it is impossible to disentangle non-infringing elements. Ex. 201-3, Persechini Dep. Tr. at 111:21-112:3. As a rebuttal expert, Mr. Persechini does not need to show that a superior methodology provides a different result and may just present rebuttal testimony that the original expert's "methodology was conducted improperly in some way." *Sumotext Corp. v. Zoove, Inc.*, No. 16-CV-01370-BLF, 2020 WL 264701, at \*3 (N.D. Cal. Jan. 17, 2020) (citing *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. CV 15-02370 JVS, 2016 WL 7042085, at \*5 (C.D. Cal. Aug. 17, 2016) (admitting rebuttal expert testimony that only challenged the original expert's methodology).

Mr. Persechini considered Ms. Trexler's factors that she claimed were other than the alleged infringement, but Ms. Trexler provided "no explanation, analysis, or citations supporting her inherent assumption that the relative *cost* share of each of those factors that Ms. Trexler identified as part of the *Servant* production reflect each factor's contribution to *profits*." Dkt. 201-5 ¶ 125. For example, Mr. Persechini identified that costs incurred for transportation (*e.g.*, drivers, truck rentals) would result in an allocation that is 1.7 times the value that she attributed to the scripts for episodes 1-3. *Id.* ¶ 125; Ex. 150, Persechini Dep. Tr. 125:17-126:4. In

another example, certain travel expenses would result in an allocation worth more than the scripts for episodes 1-3. Dkt. 201-5 ¶ 127. Defendants' attempt to exclude Mr. Persechini's valid criticisms of Ms. Trexler's cost-based apportionment as a poor proxy for value should be denied.

## III.    Mr. Persechini's opinions about Apple's profits are reliable.

Based on the limited amount of cherry-picked financial data that Apple produced, Mr. Persechini's opinions about Apple's profits are reliable. In total, Mr. Persechini and Ms. Trexler rely on a handful of documents produced by Apple for their reports. Apple alleges that two categories of Apple's service-wide costs that it included in a limited contribution margin report, publishing rights and network operation costs, should be deducted from Mr. Persechini's calculation of *Servant*'s gross revenue. But Apple produced no information about what portion of publishing rights and network operation costs are specific to *Servant*. Moreover, Apple's finance manager testified that the contribution margin calculation is "a pretty high level calculation for…Apple TV+, and includes some allocated costs as well as some costs that are tracked directly related to TV+…I wouldn't do the analysis to break all of that down to *Servant* specifically." Dkt. 201-5 ¶ 67. Any such information specific to *Servant*, however, is in *Apple*'s possession, custody, and control. For example, presumably Apple has made payments to use the copyrighted music in *Servant*, and so Mr. Perscehini explained that there should be documentation of the songs that were used and the payments made to the copyright holders. Ex. 201-3, Persechini Dep. Tr. at 90:2-13. And if there is a cost for Apple to maintain *Servant* on a network server, Apple should be able to calculate how much server space *Servant* uses. If there were engineering expenses or third-party infrastructure expenses incurred to add and maintain *Servant* on the network, Apple should also have documentation of those expenses. But Apple has produced none in this case. Notably, Ms. Trexler did not deduct these costs in her opening report.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Rather than produce the publishing rights and network operation costs that

2  are specific and incremental to *Servant*, Apple argues that Mr. Persechini should

3  have used Ms. Trexler's arbitrary percentage based on *Servant*'s viewing hours

4  compared to AppleTV+ total viewing hours for each season to allocate these costs.

5  Mr. Persechini testified that for damages, it would be inappropriate to include any

6  costs amounts that are not specific to *Servant*. Ex. 150, Persechini Dep. Tr. at

7  86:16-19. While applying the percentage of hours *Servant* was played to Apple

8  TV+'s subscription revenue may have been appropriate to determine gross *revenue*,

9  Mr. Persechini explained that there is no comparable percentage for *costs* for him to

10  consistently apply his methodology to these service-wide costs. "There is nothing

11  that says…Apple TV or 'Servant' bears 'x' percent of the overhead cost…there's no

12  further analysis" provided by Apple or Ms. Trexler. Dkt. 201-3, Persechini Dep. Tr.

13  at 87:11-23. Indeed, the operation of the Apple TV+ network does not depend on

14  the existence of *Servant*. If *Servant* did not exist, Apple would still incur the costs

15  of running the service network to exhibit the other series and programming

16  available on Apple TV+. Based on the limited financial data that Apple produced,

17  Mr. Persechini's profit calculations are reliable, and Apple's arguments should be

18  rejected. At core, this is a battle of the experts for the jury to resolve.

19                               **CONCLUSION**

20    Mr. Persechini's detailed analysis and opinions are supported by the evidence

21  from this case. His methodology and qualifications are more than enough to satisfy

22  Rule 702. Mr. Persechini's opinions and testimony will help the jury determine the

23  damages owed to Ms. Gregorini. At best, Defendants' arguments go to the weight of

24  Mr. Persechini's testimony rather than its admissibility. Accordingly, Defendants'

25  motion should be denied.

26  ///

27

28

Dated: August 2, 2024                       ROBINS KAPLAN LLP


By: */s/Patrick M. Arenz*
_____
Patrick M. Arenz

Attorneys for Plaintiff
Francesca Gregorini

15

1

**ROBINS KAPLAN LLP**
Michael A. Geibelson (SBN 179970)

2

MGeibelson@RobinsKaplan.com
Patrick M. Arenz *(Pro hac vice)*

3

PArenz@RobinsKaplan.com
Emily E. Niles *(Pro hac vice)*

4

ENiles@RobinsKaplan.com
Annie Huang *(Pro hac vice)*

5

AHuang@RobinsKaplan.com
Prateek N. Viswanathan *(Pro hac vice)*

6

PViswanathan@RobinsKaplan.com

7

2121 Avenue of the Stars
Suite 2800

8

Los Angeles, California 90067
Telephone:  310 552 0130

9

Facsimile:   310 229 5800

10

*Attorneys for Plaintiff Francesca Gregorini*

11

12

**UNITED STATES DISTRICT COURT**

13

**CENTRAL DISTRICT OF CALIFORNIA**

14

15

Francesca Gregorini,

Case No. 2:20-cv-00406-SSS-JC

16

Plaintiff,

*Hon. Sunshine S. Sykes*

17

v.

**L.R. 11-6.1 CERTIFICATE OF COMPLIANCE**

18

APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual;

Date:      August 23, 2024
Time:      2:00 p.m.
Dept.:     Courtroom 2

19

BLINDING EDGE PICTURES, INC., a Pennsylvania corporation;

20

UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE

21

ARTISTS LLC, a California limited liability company; DOLPHIN

22

BLACK PRODUCTIONS, a California corporation; TONY

23

BASGALLOP, an individual; ASHWIN RAJAN, an individual;

24

JASON BLUMENTHAL, an individual; TODD BLACK, an

25

individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,

26

27

Defendants.

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    The undersigned, counsel of record for Plaintiff Francesca Gregorini,

2  certifies that this brief contains 4,645 words, which complies with the word limit of

3  L.R. 11-6.1.

4

5  Dated: August 2, 2024                    ROBINS KAPLAN LLP

6

7                                           By: */s/ Patrick M. Arenz*
                                                Patrick M. Arenz

8                                           Attorneys for Plaintiff
                                            Francesca Gregorini
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES