1 | NICOLAS A. JAMPOL (State Bar No. 244867)
     nicolasjampol@dwt.com
2 | CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
     cydneyfreeman@dwt.com
3 | MEENAKSHI KRISHNAN (*pro hac vice*)
     meenakshikrishnan@dwt.com
4 | CARL MAZUREK (*pro hac vice*)
     carlmazurek@dwt.com
5 | DAVIS WRIGHT TREMAINE LLP
6 | 865 South Figueroa Street, 24th Floor
   | Los Angeles, California 90017-2566
   | Tel.: (213) 633-6800
7 | Fax: (213) 633-6899

8 | Attorneys for Defendants

9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA**

12 |

| FRANCESCA GREGORINI, | Case No. 2:20-cv-00406-SSS-JC |
|---|---|
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #3 REGARDING DISPUTE WITH SARAH THORP** |
| vs. | |
| APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive, | Date: November 15, 2024<br>Time: 2:00 p.m.<br>Dept.: Courtroom 2 |
| Defendants. | |

## I.   INTRODUCTION

1

2      Plaintiff claims she alone created *The Truth About Emanuel* (the "*Emanuel*"),

3  but the evidence says otherwise.  Plaintiff seeks to exclude evidence that she took a

4  story created by her former friend Sarah Thorp without permission, and then

5  privately agreed that *Emanuel* was based on Thorp's story, Thorp retained

6  ownership of her story, and Thorp granted a non-exclusive license to use the story

7  in *Emanuel* in exchange for a "Story By" credit.  Plaintiff also seeks to exclude

8  evidence that she lied to the Copyright Office about Thorp's contributions to

9  *Emanuel* to obtain a copyright registration under false pretenses.  And she wants to

10  prevent Defendants from showing how Plaintiff also repeatedly misrepresented the

11  origin of *Emanuel*, until Defendants discovered these facts from Thorp directly.

12  But this evidence is indispensable and potentially dispositive to the creation,

13  ownership, and protectability of *Emanuel*.

14      Plaintiff contends that Thorp's story is irrelevant because it consists entirely

15  of ideas and other unprotectable elements.  Yet Plaintiff simultaneously argues that

16  those same elements *are* protectable in her substantial similarity analysis.  In doing

17  so, Plaintiff ignores that this Circuit's extrinsic test requires the filtering out of any

18  unprotectable elements as well as any elements derived from preexisting works.

19  Plaintiff's own expert testified at his deposition that elements from Thorp's story

20  are all present in *Emanuel*, and it would be a "serious problem" if he discovered that

21  *Emanuel* was based on content owned by a third party, which Plaintiff had

22  concealed from him too.  Declaration of Cydney Swofford Freeman ("Freeman

23  Decl.") Ex. 3 (Román Depo. Tr. at 207:25-208:14).

24      Now, in the hopes of sweeping her "serious problem" under the rug, Plaintiff

25  tries to downplay her taking of Thorp's story, describing it as a "friendship spat."

26  But Plaintiff's efforts to distort this relationship cannot erase the critical facts

27  surrounding how *Emanuel* came to be, which are directly relevant to Plaintiff's

28  claims, Defendants' defenses, and Plaintiff's credibility—all of which the jury is

1

entitled to hear and weigh accordingly.  And while Plaintiff only seeks to exclude evidence about the "spat" between Plaintiff and Thorp—and *not* the factual underpinnings or outcome of that dispute—the evidence about their dispute is paramount to showing the context regarding the origin of *Emanuel* and Plaintiff's private treatment of Thorp as compared to her public representations about the film.  The motion should be denied in full.

## II.   PLAINTIFF IGNORES OR MISCONSTRUES KEY FACTS

The evidence in this case establishes that Thorp conceived of and pitched Plaintiff a project about a mother who loses a child, blames herself, and creates a delusion that her child is still alive.  Plaintiff took Ms. Thorp's story without permission, and used it to write the screenplay for *Emanuel*, in which the main character loses a child, blames herself, and creates a delusion that her child is still alive.  As Thorp told Plaintiff in late 2009:

> The dramatic architecture of your script depends on the character of a post-partum depressed woman who, we come to discover, is living in a delusional world in which she believes her dead child to still be alive and living with her.  Who, when later confronted with the reality of the situation (that there is, in fact, no child in her home), panics and accuses those around her of having hurt or taken her baby.  This, as you know, is the exact story I shared with you earlier this year.  A story that is very personal to me…

Freeman Decl. Ex. 4.  Plaintiff herself admitted she took *Emanuel*'s premise from her friend's story, conceding Thorp's story also "opens w/ [the woman] moving into a small town, w/ her child and @ some point we find out that the child does not in fact exist."  Freeman Decl. Ex. 5.

Plaintiff's motion also misrepresents what happened after Plaintiff took Thorp's story.  After Plaintiff profusely apologized to Thorp, Plaintiff then tried to get Thorp to agree to a work-for-hire agreement stating that Plaintiff owned Thorp's

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #3
4868-4400-3053v.2 0113237-000003

1  contributions, which Thorp did not sign.  Freeman Decl. Ex. 6 at 10.  Plaintiff and

2  Thorp did eventually reach an agreement, which gave Thorp a "Story By" credit,

3  earning her third billing in the end credits and her name in large print on the film

4  poster.  Although Plaintiff quotes from that agreement, she ignores that it expressly

5  confirmed that *Emanuel* was based on Thorp's story, and that Thorp would retain

6  any copyright in the story she created as embodied in *Emanuel*.  Freeman Decl. Ex.

7  7 ¶ 3(b).

8  **III.   THORP IS A HIGHLY RELEVANT, POTENTIALLY DISPOSITIVE,**

9  **WITNESS TO SEVERAL OF DEFENDANTS' DEFENSES**

10  Plaintiff seeks the extraordinary remedy of excluding evidence regarding the

11  origin, ownership, and protectability of the allegedly infringed work.  This request

12  has no support in law, would deprive the jury of critical and potentially dispositive

13  facts, and would prevent Defendants from fully and fairly defending themselves.

14  **A.   Evidence Regarding Thorp Is Highly Relevant to Showing That**

15  **Plaintiff's Copyright Registration Is Invalid**

16  Evidence relating to Thorp is highly relevant to Defendants' defense that

17  Plaintiff obtained a registration for *Emanuel* under false pretenses.  Despite

18  knowing that Thorp retained all rights to her story and did not sign Plaintiff's

19  proposed work-for-hire agreement, Plaintiff told the Copyright Office that

20  everyone's contributions on *Emanuel* were done as works for hire.  This was false

21  as to Thorp, and Plaintiff knew it was false at the time she made those

22  representations.  Freeman Decl. Ex. 6 at 10; Ex. 8 at 7 ("the work was made for

23  hire").  Thorp's story was a preexisting work that Plaintiff did not own and upon

24  which *Emanuel* was based, which Plaintiff improperly concealed from the

25  Copyright Office.  Defendants will rely on this evidence to establish that, as a result

26  of her misrepresentations to the Copyright Office, Plaintiff's copyright registration

27  for *Emanuel* is invalid.  *See Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*, 2023

28  WL 115558, at *12 (C.D. Cal. Jan. 4, 2023) (rejecting copyright infringement claim

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #3
4868-4400-3053v.2 0113237-000003

where plaintiff provided inaccurate information to Copyright Office, including

work-for-hire information); *Express, LLC v. Forever 21, Inc.*, 2010 WL 3489308, at

\*6 n.9 (C.D. Cal. Sept. 2, 2010) (rejecting claim for copyright infringement where

plaintiff failed to disclose preexisting works to Copyright Office; collecting cases).

And without a valid registration, Plaintiff's claims fail as a matter of law.

## B.      Evidence Regarding Thorp Is Relevant to Substantial Similarity

The evidence that Plaintiff hopes to exclude is also relevant to the issue of

whether *Emanuel* and *Servant* are substantially similar.  This is because Plaintiff

claims she did not disclose Thorp's contributions to the Copyright Office because

they consisted of an unprotectable "story idea."  Mot. at 7.  But if Thorp's story is

unprotectable, the elements comprising that story are unprotectable and must be

filtered out of the similarity analysis.  *See Apple Comp. v. Microsoft Corp.*, 35 F.3d

1435, 1446 (9th Cir. 1994) ("the unprotectable elements have to be identified, or

filtered, before the works can be considered as a whole").  Plaintiff cannot have it

both ways—arguing that Thorp's story is unprotectable when it comes to the

Copyright Office but protectable when it comes to substantial similarity.

Apart from the protectability of Thorp's story, it is "black-letter law" that

"*any elements* from prior works … are not considered original parts and are not

protected by copyright." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led

Zeppelin*, 952 F.3d 1051, 1071 (9th Cir. 2020) (emphasis added).  As a result, "the

original part of the plaintiff's work is limited to the part created … independently

by the works author, that is, the author did not copy it from another work." *Id.;

Gray v. Hudson*, 28 F.4th 87, 100 (9th Cir. 2022) (presence of claimed similarities

in prior works confirms the similarities are not protected expression); *Rice v. Fox.

Broad. Corp.*, 148 F. Supp. 2d 1029, 1052 (no protection for "elements borrowed

from another author"), *aff'd in relevant part*, 330 F.3d 1170 (9th Cir. 2003).

Defendants intend to rely on Plaintiff's correspondence and agreement with Thorp

to demonstrate that Thorp conceived of the story upon which *Emanuel* is based, and

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #3
4868-4400-3053v.2 0113237-000003

those preexisting elements must be filtered out of the substantial similarity analysis.[1]

Evidence from and about Thorp is also relevant to rebutting the testimony of Plaintiff's substantial similarity expert.  Plaintiff concealed this information from her own substantial similarity expert, who conducted his analysis under the incorrect assumption that Plaintiff conceived of and owned all of the elements in *Emanuel*, including those from Thorp's story.  In fact, her expert testified that the elements from Thorp's story were in *Emanuel* and that if Plaintiff had failed to disclose to him that *Emanuel* was based on third-party content, it would be a "serious problem."  Freeman Decl. Ex. 3.  Her expert's ignorance regarding Thorp's story—which informs which elements must be filtered out of the substantial similarity analysis—renders his similarity analysis deficient.  *See also* ECF 196.

Evidence regarding Thorp's story, which Plaintiff expressly agreed was the basis for *Emanuel*, and Thorp's misrepresentations about *Emanuel*'s origin are all highly relevant to this case and must not be concealed from the jury.

## C.    Plaintiff's Misrepresentations with Respect to the Origin of *Emanuel* Are Relevant to Defendants' Unclean Hands Defense

At trial, Defendants will also establish that Plaintiff's misconduct renders her hands unclean, and separately bars her claims of copyright infringement.  Unclean hands is an affirmative defense that exists when a defendant proves "(1) the plaintiff's conduct is inequitable, and (2) relates to the subject matter of its claims."

---

[1] Plaintiff suggests that Thorp's story is not preexisting because Thorp confirmed Plaintiff owned the copyright in *Emanuel*.  But their agreement expressly states that Thorp retains 100% of the copyright in her story and that Plaintiff merely has a non-exclusive license to use that story as the basis for *Emanuel*.  Under well-established law, Plaintiff's agreement regarding the ownership of *Emanuel* does not extend to the elements from Thorp's story, which is a preexisting work.  *See Idema v. Dreamworks*, 162 F. Supp. 2d 1129 (C.D. Cal. 2001) ("elements borrowed from another author" are unprotectable).

5

*Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003) (citations omitted).  These elements are easily satisfied with respect to Plaintiff's conduct in taking Thorp's story and making numerous false statements regarding the origin and creation of *Emanuel*, including to the Copyright Office, the public, and in this case.[2]

For example, in addition to the false statements Plaintiff made to the Copyright Office described above, Plaintiff alleged in the First Amended Complaint that "the idea for [*Emanuel*] came to [Plaintiff] in 2010," including the concept of "giving birth to a child only to see it die."  FAC ¶ 42.  No mention of Thorp—even though it was Thorp who, in 2009, pitched Plaintiff on a story about a mother who lost a child.  Freeman Decl. Ex. 4.  Plaintiff's sworn discovery responses about the sources of inspiration for Emanuel also falsely represent that Plaintiff "served as her own inspirations for *Emanuel*."  Freeman Decl. Ex. 9.  Again, nothing about Thorp.  Only after Plaintiff learned that Defendants had subpoenaed and received communications from Thorp did Plaintiff then "locate" responsive communications which showed she took Thorp's story.  Meanwhile, Plaintiff has given multiple public interviews where she discusses the origin of her work but erases Thorp's contributions altogether.[3]

All of these facts go directly to the defense of unclean hands.  *See McCormick v. Cohn*, 1992 WL 687291, at *4 (S.D. Cal. July 31, 1992) (finding application of unclean hands appropriate where plaintiff "made clear misstatements regarding their ownership of the copyright before and during litigation … was highly relevant to the defense of the copyright claims"); *Intamin, Ltd. v. Magnetar*

---

[2] As explained in Defendants' opposition to Plaintiff's Motion in Limine #5, Plaintiff also withheld documents about Thorp until specifically ordered by the Court.

[3] As explained in Defendants' opposition to Plaintiff's Motion in Limine #4, Plaintiff has consistently misrepresented the origin of *Emanuel* to the press.

6

*Techs. Corp.*, 623 F.Supp.2d 1055, 1077-1078 (C.D. Cal. 2009) (finding unclean hands where the plaintiff "made materially false statements in connection with its ownership of the patent-in-suit, both before and during litigation" and failed to produce the documents that bore on its false statements during discovery). Evidence regarding Thorp is highly relevant for this reason as well.

**D.     Evidence About the Origin of the Plaintiff Work Are Highly Relevant**

The origin of an allegedly infringed work is almost always relevant in a copyright action. While Plaintiff attempts to exclude only evidence about the "alleged dispute" between Plaintiff and Thorp, and *not* the factual underpinnings of that dispute,[4] an order granting her motion in limine risks excluding foundational information about the creation and protectability of *Emanuel*.

Plaintiff, however, fails to cite a single case where such information was excluded as irrelevant or unfairly prejudicial. Mot. at 1, 6-7. This is because courts have reached the opposite conclusion, permitting evidence about the origin of the plaintiff's work with respect to a third party. *See Hendricks v. DreamWorks, LLC*, 2007 WL 9705916, at *4 (C.D. Cal. Nov. 20, 2007) (in copyright infringement action where plaintiff's friend's illness inspired parts of the at-issue work, court rejected motion in limine seeking to exclude testimony about friend as irrelevant and prejudicial, finding that "evidence regarding plaintiff's inspirations for writing 'Double' and his motivations for the creative decisions … may have narrative relevance and may also be relevant to establish originality."). Similarly here, the jury should be permitted to hear the full story about how Plaintiff created *Emanuel*, which involves how she took elements from Thorp without her permission and then pretended that Plaintiff alone came up with *Emanuel*.

---

[4] As a result, regardless of the outcome of this motion, Defendants could present evidence that *Emanuel* is based on Thorp's story, Thorp owns that story, and how Thorp was (minimally) compensated for that story, among other things.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #3
4868-4400-3053v.2 0113237-000003

1    Ignoring *Hendricks* altogether, Plaintiff refers to two cases for the generic

2 proposition that "ancillary disputes" sometimes violate Rules 402 and 403.  Mot. at

3 5-6.  Neither are copyright cases, and neither implicate even remotely similar

4 factual or legal issues.  In *Bioriginal Food & Science Corp. v. Biotab*

5 *Nutraceuticals, Inc.*, 2015 WL 10733384, at *6 (C.D. Cal. Aug. 24, 2015), a breach

6 of contract case, the court excluded evidence of former payment disputes between

7 plaintiff and third parties because they concerned products and transactions not at

8 issue in the case.  But Defendants are not seeking to introduce irrelevant disputes

9 between Plaintiff and third parties unrelated to *Emanuel*.  In any event, *Bioriginal*

10 stated that depending on the evidence presented at trial, evidence of such disputes

11 may become relevant or may be admissible for another purpose.  *Id.*

12    The only other case Plaintiff relies on for this proposition is *Grouse River*

13 *Outfitters Ltd. v. Oracle Corp.*, 2019 WL 8918902, at *4 (N.D. Cal. June 21, 2019),

14 in which Oracle moved to preclude plaintiff from introducing evidence of unrelated

15 lawsuits.  The court declined to categorically exclude such evidence, opting to

16 address them in context at trial.  *Id.*  *Grouse River* has no bearing on the issues here,

17 as Defendants are not seeking to introduce evidence of unrelated lawsuits involving

18 Plaintiff, and here, the "prior dispute" that Plaintiff references are actually the facts

19 surrounding the creation of *Emanuel*—the exact work Plaintiff is suing over.

20  **IV.  EVIDENCE ABOUT THORP'S CONTRIBUTIONS TO *EMANUEL***

21  **BEAR ON PLAINTIFF'S CREDIBILITY**

22    Plaintiff's revisionist history of *Emanuel*'s creation also directly contradicts

23 her prior statements, Thorp's testimony, and the evidence in the case.  Plaintiff still

24 refuses to admit what she has admitted and agreed to privately—that *Emanuel* is

25 based on Thorp's story, which still belongs to Thorp.  Her numerous false

26 statements about the origin of *Emanuel* must be addressed, not suppressed, at trial.

27 These statements, and Plaintiff's attempt to erase Thorp's contributions, bear

28 directly on Plaintiff's credibility, which is permissible to explore at trial.  In

8

1 addition, to the extent Plaintiff testifies regarding the origin of *Emanuel*, Defendants

2 should be entitled to impeach her and show the full story, so the jury is not left with

3 the misimpression that Plaintiff alone created *Emanuel*.

## V.    NOTHING ABOUT THORP OR THE ORIGIN OF *EMANUEL* IS "UNFAIRLY" PREJUDICIAL

6 Finally, Plaintiff is wrong that Rule 403 countenances excluding evidence of

7 Thorp's contributions to *Emanuel*.  Notably, "'[u]nfair prejudice' as used in Rule

8 403 is not to be equated with testimony [or evidence] simply adverse to the

9 opposing party.  Virtually all evidence is prejudicial or it isn't material.  The

10 prejudice must be 'unfair.'"  *Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65

11 F.Supp.3d 932, 936 (C.D. Cal. 2014) (citation omitted); *Mims v. Fed. Express*

12 *Corp.*, 2015 WL 12711651, at *6 n.5 (C.D. Cal. Jan. 15, 2015) ("[T]he prejudice

13 that inures from powerful evidence, even severe prejudice, is often entirely proper.

14 Rule [403] does not preclude *harmful* evidence; it precludes *improper* evidence.")

15 (emphasis in original).

16 Plaintiff never explains what prejudice she believes she might suffer if these

17 issues are raised at trial, nor that any such prejudice would be *unfair*.  To the

18 contrary, preventing Defendants from offering critical facts about the origin and

19 ownership of the allegedly infringed work would cause severe prejudice by

20 ensuring Defendants do not get to fully and fairly present their defenses.

21 Excluding such evidence will also cause the jury confusion by presenting an

22 incomplete and distorted view of *Emanuel*'s origin.  At trial, the jury will see

23 Thorp's "Story by" credit in the end credits, and her name on the movie poster, and

24 yet would not have the necessary context to fully understand how the work came to

25 be: that Thorp told Plaintiff of her story, Plaintiff took it, and now falsely accuses

26 Defendants of copying that story from *her*, once again attempting to erase Thorp's

27 role in the origin of *Emanuel*.

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #3
4868-4400-3053v.2 0113237-000003

## VI.    CONCLUSION

Plaintiff's motion in limine regarding Thorp is pretext to prevent the jury from hearing and considering unfavorable facts to Plaintiff.  The jury can and must hear about how *Emanuel* was created.  The Court should deny Plaintiff's third Motion in limine in full.


DATED: October 25, 2024        DAVIS WRIGHT TREMAINE LLP
                               NICOLAS A. JAMPOL
                               CYDNEY SWOFFORD FREEMAN
                               MEENAKSHI KRISHNAN
                               CARL MAZUREK

                               By:   /s/ Nicolas A. Jampol
                                        Nicolas A. Jampol

                               Attorneys for Defendants

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #3
4868-4400-3053v.2 0113237-000003