1   **ROBINS KAPLAN LLP**
    Michael A. Geibelson (SBN 179970)
2   MGeibelson@RobinsKaplan.com
    Patrick M. Arenz *(Pro hac vice)*
3   PArenz@RobinsKaplan.com
    Emily E. Niles *(Pro hac vice)*
4   ENiles@RobinsKaplan.com
    Annie Huang *(Pro hac vice)*
5   AHuang@RobinsKaplan.com
    Prateek Viswanathan *(Pro hac vice)*
6   PViswanathan@RobinsKaplan.com

7   2121 Avenue of the Stars
    Suite 2800
8   Los Angeles, California 90067
    Telephone:  310 552 0130
9   Facsimile:   310 229 5800

10  *Attorneys for Plaintiff Francesca Gregorini*

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14

15  Francesca Gregorini,                    Case No. 2:20-cv-00406-SSS-JC

16          Plaintiff,                      **PLAINTIFF FRANCESCA GREGORINI'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

17      v.

18  APPLE INC., a California               Final Pretrial Conference
    corporation; M. NIGHT                  Date: November 22, 2024
19  SHYAMALAN, an individual;              Time: 1:00 pm
    BLINDING EDGE PICTURES,                Courtroom: 2
20  INC., a Pennsylvania corporation;
    UNCLE GEORGE PRODUCTIONS,              Trial: December 9, 2024
21  a Pennsylvania corporate; ESCAPE
    ARTISTS LLC, a California limited
22  liability company; DOLPHIN
    BLACK PRODUCTIONS, a
23  California corporation; TONY
    BASGALLOP, an individual;
24  ASHWIN RAJAN, an individual;
    JASON BLUMENTHAL, an
25  individual; TODD BLACK, an
    individual; STEVE TISCH, an
26  individual; and DOES 1-10, inclusive,

27          Defendants.

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................. 1

    I.      Francesca Gregorini created and released *Emanuel*. ................................. 1

    II.     Apple TV+ released *Servant* in 2019. ........................................................ 2

SUMMARY OF CLAIMS AND AFFIRMATIVE DEFENSES ............................. 3

    I.      Plaintiff Ms. Gregorini's Claims ................................................................. 3

    II.     Defendants' Affirmative Defenses ................................................................ 6

EVIDENTIARY ISSUES ...................................................................................... 8

ISSUES OF LAW .................................................................................................. 9

BIFURCATION OF ISSUES ................................................................................ 9

    I.      The Court Should Not Bifurcate Plaintiff Ms. Gregorini's Damages Claim for Defendants' Profits. ....................................................................... 9

       A.    The Copyright Act establishes a jury trial right over profits as damages for copyright infringement. ................................................................... 10

       B.    Ms. Gregorini has a Seventh Amendment right to trial by jury for her claim for profits as damages. ............................................................. 13

       C.    In the alternative, the Court should submit the question of profits as damages to the jury for an advisory verdict. .................................... 14

       D.    The Court should not bifurcate the jury trial into a liability and damages phase. ....................................................................................... 15

    II.     The Court Should Bifurcate and Conduct a Bench Trial over Defendants' Two Defenses about Copyright Registration. ..................... 16

RIGHT TO A JURY TRIAL ............................................................................... 18

ATTORNEYS' FEES AND COSTS ................................................................... 18

NARROWING OF ISSUES ................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Breakdown Servs., Ltd. v. Now Casting, Inc.*,
   550 F. Supp. 2d 1123, 1134 (C.D. Cal. 2007 .................................................. 7, 16

*Burlington Industries, Inc. v. Dayco Corp.*,
   849 F.2d 1418 (Fed. Cir. 1988) ....................................................................... 17

*Capture Eleven Group v. Otter Products, LLC*,
   No. 1:20-cv-02551, --- F. Supp. 3d ----, 2023 WL 5573966 (D.
   Colo. May 31, 2023) ................................................................................ 9, 12, 13

*Cisco Sys., Inc. v. Arista Networks, Inc.*,
   No. 14-cv-05344, 2016 WL 11752975 (N.D. Cal. Nov. 16, 2016) .................. 14

*Classical Silk, Inc. v. Dolan Grp., Inc.*,
   No. 14-09224, 2016 7638112 (C.D. Cal. Mar. 21, 2016) ................................ 17

*Dennis Fugnetti Photography Tr. v. Bird B. Gone, Inc.*,
   No. 1900847, 2022 WL 1585747 (C.D. Cal. Apr. 4, 2022) ........................... 7, 16

*Dimick v. Schiedt*,
   293 U.S. 474 (1935) ....................................................................................... 15

*Fair Isaac Corp. v. Fed. Ins. Co.*,
   468 F. Supp. 3d 1110 (D. Minn. 2020) ....................................................... 12, 13

*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998) ....................................................................... 10, 12, 13, 14

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989) ......................................................................................... 13

*Griffo v. Oculus*,
   No. 151228, 2018 WL 6265067 (C.D. Cal. Sept. 18, 2018) ........................... 14

*Huffman v. Activision Publ'g Inc.*,
   No. 2:19-cv-00050, 2021 WL 2339193 (E.D. Tex. 2021)
   ............................................................................................... 10, 11, 12, 13, 14

*In re U.S. Financial Sec. Litig.*,
 609 F.2d 411 (9th Cir. 1979) ............................................................................ 15

*JIPC Mgmt., Inc. v. Incredible Pizza Co., Inc.*,
 No. 08-4310, 2009 WL 8591607 (C.D. Cal. July 14, 2009) ........................ 16, 17

*Kamakana v. City and Cnty. of Honolulu*,
 447 F.3d 1172 (9th Cir. 2006) .............................................................................. 8

*Navarro v. Procter & Gamble Co.*,
 529 F. Supp. 3d 742 (S.D. Ohio 2021) ................................................................ 12

*Out of the Box Enters., LLC v. El Paseo Jewelry Exch., Inc.*,
 No. 10-1858, 2012 WL 12893524 (C.D. Cal. June 27, 2012) ............................ 16

*Petrella v. MGM*,
 572 U.S. 663 (2014) ............................................................................................ 10

*Rearden LLC v. Walt Disney Co.*,
 No. 17-cv-04006, 2023 WL 9187385 (N.D. Cal. Dec. 14, 2023) ................. 10, 14

*Sosa v. Alvarez-Machain*,
 542 U.S. 697 (2004) ............................................................................................ 11

*Taylor Holland v. MVMT Watches Inc.*,
 No. 2:15-CV-03578, 2016 WL 6892097 (C.D. Cal. Aug. 11, 2016) ............. 7, 16

*Therasense, Inc. v. Becton, Dickinson & Co.*,
 649 F.3d 1276 (Fed. Cir. 2011) .......................................................................... 17

*Three Boys Music Corp. v. Bolton*,
 212 F.3d 477 (9th Cir. 2000) ................................................................................ 7

*Tull v. United States*,
 481 U.S. 412 (1987) ...................................................................................... 10, 14

*Unicolors, Inc. v. H&M Hennes & Mauritz L.P.*,
 52 F.4th 1054 (9th Cir. 2022) ....................................................................... 8, 9, 17

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

PLAINTIFF'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

**Statutes**

17 U.S.C.
  § 411 ....................................................................................8, 9, 16, 17, 18
  § 502 ...................................................................................................... 10
  § 502(a) ................................................................................................. 10
  § 503 ...................................................................................................... 11
  § 503(a) ................................................................................................. 11
  § 504 ...................................................................................................... 11
  § 504(b) ...............................................................................7, 11, 12, 13, 14
  § 505 .........................................................................................10, 11, 18

28 U.S.C, § 1498 .................................................................................... 10

**Rules**

Fed. R. Civ. P.
  39 .......................................................................................................... 10
  39(c) ...................................................................................................... 14
  56(f) ........................................................................................................ 9

Local Rule 16-2 ...................................................................................... 15

**Other Authorities**

Ninth Circuit Manual of Model Civil Jury Instructions
  § 17.20 (2019) .......................................................................................... 6
  § 17.21 (2019) .......................................................................................... 5
  § 17.5 (2020) ............................................................................................ 3

U.S. Const. VII ................................................................................. 10, 13

1

2
**INTRODUCTION**

3       This lawsuit is a copyright infringement case over Plaintiff Francesca

4   Gregorini's award-winning film *The Truth About Emanuel* (*Emanuel*). This trial

5   will reveal that Defendants copied Ms. Gregorini's original expression from

6   *Emanuel* to release a television series, *Servant*, that helped launch Apple's new

7   streaming service Apple TV+ and generate hundreds of millions of dollars for

8   Defendants. Ms. Gregorini is ready for trial, and after nearly five years of litigation,

9   this case is ready for resolution.

10
**FACTUAL BACKGROUND**

11  **I.    Francesca Gregorini created and released *Emanuel*.**

12      Francesca Gregorini is an Emmy-nominated director with acclaimed hits like

13  *Killing Eve* and *The Dropout*. In 2010, she wrote the screenplay for *Emanuel and*

14  *The Truth about Fishes*. After raising money to develop her screenplay into a film,

15  Ms. Gregorini directed and produced a feature-length indie film renamed as *The*

16  *Truth About Emanuel* (*Emanuel*). *Emanuel* was a female-centric psychological

17  thriller that revolves around an 18-year-old nanny/caretaker who bonds with and

18  forms a tender relationship with a seemingly well-functioning mother after she lost

19  her infant, and the nanny/caretaker supports the mother's delusion that a hyper-

20  realistic doll is in fact alive and cares for the doll in that manner.

21      In 2013, *Emanuel* premiered at the prestigious Sundance Film Festival and

22  earned a nomination for the 2013 Grand Jury Prize – Dramatic. Sundance staff

23  referred to the film as "the most artistically liberated film at the 2013 Sundance

24  Film Festival." *Emanuel* earned widespread recognition and awards from domestic

25  and international festivals. In 2014, *Emanuel* premiered in movie theaters across the

26  United States and in London.

27      *Emanuel* then became available in various non-theater platforms. In 2013, for

28  instance, Apple first made *Emanuel* available to stream on iTunes. *Emanuel* also

became available in more than 50 million homes in the United States and Canada through on-demand and then other streaming options, like Amazon Watch Instantly, VUDU, Xbox, Sony PlayStation, Google Play, and YouTube. *Emanuel* was available through DVD and Blu-ray platforms, like Amazon Video Direct, and Redbox, among others. Comcast, Charter, Cox, and Xfinity made *Emanuel* available over cable. Finally, *Emanuel* has been available on Amazon Prime, Netflix, and Hulu.

**II.    Apple TV+ released *Servant* in 2019.**

From 2005 through 2012, Mr. Basgallop developed materials for a television series and later for a novel called *Practically Perfect*. He maintains that his personal life served as a foundation for them. These works addressed vulgar subject matter. No company chose to produce or publish *Practically Perfect*. By 2015, for instance, Mr. Basgallop complained that *Practically Perfect* was "treated like a $5 crack whore with an anal prolapse."

Before 2016, Mr. Basgallop had no work that involved a reborn or life-like doll. He claims he discussed a fleeting scene from *The Leftovers* in a writer's room on a different show in 2014 that inspired him to redraft *Practically Perfect* around this concept in 2016. Mr. Basgallop does not have a single document or witness to corroborate this story.

In 2016, Zack Van Amburg, Jamie Erlicht, and Max Aronson were executives at Sony Pictures TV. They all knew and worked with Ms. Gregorini as a director on Sony's show *Electric Dreams*. In 2017, Mr. Aronson, along with Mr. Van Amburg and Mr. Erlicht left Sony to become executives at Apple to launch its new streaming television unit, Apple TV+.

In 2018, Mr. Basgallop, M. Night Shyamalan, and Ashwin Rajan, among others, met with Mr. Van Amburg, Mr. Erlicht, Matt Cherniss, and Mr. Aronson at Apple to discuss a new television series. Following this meeting, Apple decided to move forward with Season 1 of *Servant.* These same individuals worked on the

creation and development of *Servant*. Multiple defendants knew about *Emanuel* through their consideration of Ms. Gregorini for director roles (including for *Servant*) and consideration of Jimmi Simpson, who played Arthur in *Emanuel*, for roles as Julian or Sean in *Servant* too. When Apple considered Ms. Gregorini for a director role, in fact, they received an email with a direct link to watch *Emanuel*.

In 2019, Apple TV + released *Servant* over the coveted Thanksgiving weekend to launch Apple TV +. *Servant* is a female-centric psychological thriller that revolves around an 18-year-old nanny/caretaker who bonds with and forms a tender relationship with a seemingly well-functioning mother after she lost her infant, and the nanny/caretaker supports the mother's delusion that a hyper-realistic doll is in fact alive and cares for the doll in that manner. Based on the show's success, Apple greenlit seasons 2-4 to continue the story and characters. In total, Defendants have generated hundreds of millions of dollars from the *Servant* series.

### SUMMARY OF CLAIMS AND AFFIRMATIVE DEFENSES

### I.    Plaintiff Ms. Gregorini's Claims

**Claim 1 (Copyright Infringement)**: Defendants infringed Plaintiff Ms. Gregorini's copyright in *Emanuel*.

Summary and Elements of Claim: Plaintiff Ms. Gregorini has the burden to prove by a preponderance of evidence that (1) she owns a copyright in *Emanuel*, and (2) Defendants copied original expression from *Emanuel*. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.5 (2020). Plaintiff Ms. Gregorini will seek both direct and indirect profits attributable to the infringement. To prove profits, Ms. Gregorini need only prove by a preponderance of evidence the revenue from *Servant*, and for indirect profits, a causal nexus between the infringement in episodes 1-3 with Defendants' revenue from episodes 4-40.

Key evidence in support of Claim 1: Plaintiff Ms. Gregorini will offer the categories of evidence below to prove that Defendants infringed her copyright in *Emanuel* through the television series *Servant*.

*Ownership*. Ms. Gregorini will testify and offer the Certificate of Registration from the Copyright Office to prove she owns the copyright in *Emanuel*.

*Access*. Evidence showing Defendants' access to *Emanuel* will include documentary and testimonial evidence about Defendants' reasonable opportunity to view *Emanuel* through both widespread dissemination and chain-of-events linking *Emanuel* with Defendants' access. For widespread dissemination, Ms. Gregorini's evidence will include her testimony and exhibits about *Emanuel*'s release, film festivals, awards, publications, and availability on streaming platforms among other platforms and distributions across the world and specifically within the entertainment industry. Ms. Gregorini's expert witness, Ellen Pittleman, will also testify about this evidence and industry-specific practices related to it. For chain-of-events, Ms. Gregorini's evidence will include her own testimony, exhibits, and testimony from adverse witnesses to show that Apple had direct access to *Emanuel* before releasing *Servant*, that Defendant Mr. Basgallop and Defendant Ashwin Rajan, and their related entities and personnel, had access to *Emanuel* based on her agent's practice of submitting *Emanuel* for potential director roles, along with industry practices described by Ms. Pittleman, and that Defendants met with and considered talent connected to *Emanuel* before releasing *Servant*.

*Substantial and Striking Similarity*. Evidence showing the substantial and striking similarity between original elements in *Emanuel* and elements in episodes 1-3 of *Servant* include documentary and testimonial evidence about the works themselves; testimony from Ms. Gregorini, among other fact witnesses; and Ms. Gregorini's expert witness, Professor David Román, who will opine about elements like characters, plot, sequence of events, theme, setting, mood, tone, pace, and dialogue.

*Damages*. Evidence showing the revenue Defendants generated for episodes 1-3 and 4-40 will include Defendants' internal financial information, testimony

from adverse witnesses, and Ms. Gregorini's damages expert, Dominic Persechini. To prove a causal nexus between episodes 1-3 and revenue from episodes 4-40, Ms. Gregorini's evidence will include testimony from Ms. Pittleman, Professor Román, and Mr. Persechini, along with adverse witnesses and Defendants' internal financial information.

**Claim 2 (Contributory Infringement)**: Defendants contributorily infringed Ms. Gregorini's copyright in *Emanuel*.

Summary and Elements of Claim: Plaintiff Ms. Gregorini has the burden to prove by a preponderance of evidence that (1) *Emanuel* was directly infringed; (2) Defendants knew or had reason to know of the infringing activity; and (3) Defendants intentionally induced or materially contributed to the infringing activity. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.21 (2019). To prove profits, Ms. Gregorini need only prove by a preponderance of evidence the revenue from *Servant*, and for indirect profits, a causal nexus between the infringement in episodes 1-3 with Defendants' revenue from episodes 4-40.

Key evidence in support of claim: In addition to the evidence above about direct infringement and damages, Ms. Gregorini will offer the following categories of evidence to prove contributory infringement by a preponderance of evidence.

*Knowledge of Infringing Activity*. Evidence showing that Defendants knew or should have known about their infringement will include documentary and testimonial evidence that Defendants were aware of Ms. Gregorini and her prior work, that they had access to *Emanuel* through numerous avenues, and that Defendants met with and considered talent connected to *Emanuel* before releasing *Servant*.

*Material Contribution/Inducement*. Evidence showing that Defendants contributed to the infringement will include documentary and testimonial evidence that Defendants worked collaboratively on the development and production of *Servant*.

**Claim 3 (Vicarious Infringement)**: Defendants vicariously infringed Ms. Gregorini's copyright in *Emanuel*.

Summary and Elements of Claim: Plaintiff Ms. Gregorini has the burden to prove by a preponderance of evidence that (1) *Emanuel* was directly infringed; (2) Defendants received a direct financial benefit from the infringing activity; (3) Defendants had the legal right and practical ability to supervise or control the infringing activity; and (4) Defendants failed to exercise that right and ability. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.20 (2019). To prove profits, Ms. Gregorini need only prove by a preponderance of evidence the revenue from *Servant*, and for indirect profits, a causal nexus between the infringement in episodes 1-3 with Defendants' revenue from episodes 4-40.

Key evidence in support of claim: In addition to the evidence above about direct infringement and damages, Ms. Gregorini will offer the following categories of evidence to prove vicarious infringement by a preponderance of evidence.

*Direct financial benefit*. Evidence showing that Defendants received a direct financial benefit from the infringement in *Servant* include documentary and testimonial evidence that Defendants all profited from the infringement.

*Right and Ability to Supervise/Control*. Evidence showing that Defendants had the right, and continue to have the right, to supervise and control the infringement will include documentary and testimonial evidence about the Defendants' roles and responsibilities for the development and production of *Servant*, and Defendants' decision not to stop or discontinue *Servant*.

## II.    Defendants' Affirmative Defenses

Plaintiff Ms. Gregorini understands that Defendants will assert three affirmative defenses to all claims at trial.

Defendants' Affirmative Defense 1: Independent Creation.

Elements of Defendants' Affirmative Defense 1: Defendants bear the burden to rebut evidence of copying with proof that they independently created *Servant*.

*See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000); *17.34 Copyright—Damages—Defendant's Profits (17 U.S.C. § 504(b))*, Manual of Model Jury Instructions for the District Courts of the Ninth Circuit (last updated 2024).

<u>Key Evidence In Opposition To Affirmative Defense 1</u>: Ms. Gregorini will rebut any suggestion that the expressive elements in *Servant* and *Emanuel* existed in Mr. Basgallop's previous works before 2012. To the contrary, the documentary and testimonial evidence will show that Ms. Basgallop's previous works, spread out over multiple iterations, were all totally different in tone and substance than the original expressive elements found in both *Servant* and *Emanuel*.

<u>Defendants' Affirmative Defense 2: Unclean Hands</u>

<u>Elements of Defendants' Affirmative Defense 2</u>: In a copyright case, an unclean hands defense only relates to copyright misuse. *See, e.g.*, *Breakdown Servs., Ltd. v. Now Casting, Inc.*, 550 F. Supp. 2d 1123, 1134 (C.D. Cal. 2007) ("There is essentially no other way to interpret an unclean hands defense in a copyright infringement suit other than involving copyright misuse."). Defendants must prove inequitable conduct or some scheme to defraud the public. *See, e.g.*, *Taylor Holland v. MVMT Watches Inc.*, No. 2:15-CV-03578, 2016 WL 6892097, at *11 n.21 (C.D. Cal. Aug. 11, 2016) (requiring inequitable conduct); *Dennis Fugnetti Photography Tr. v. Bird B. Gone, Inc.*, No. 1900847, 2022 WL 1585747, at *8 (C.D. Cal. Apr. 4, 2022).

<u>Evidence In Opposition To Affirmative Defense 2</u>: Ms. Gregorini will rebut any contention that she misused her copyright or defrauded the public in any way. The Defendants' purported basis for this defense relates to a third party, Sarah Thorp. The Parties have already briefed this issue in summary judgment and in motions in limine. *See, e.g.*, Dkt. 278 at 11-13; Dkt. 269. Documentary and testimonial evidence on this subject will show why any unclean hands defense will fail.

Defendants' Affirmative Defense 3: Copyright Invalidity (Fraud on the Copyright Office) under 17 U.S.C. § 411.

Elements of Defendants' Affirmative Defense 3: Defendants must prove (1) that Ms. Gregorini submitted her copyright application with inaccuracies, (2) she knew the application failed to comply with legal requirements, and (3) the inaccuracies were material to the Copyright Office's to register the copyright. *Unicolors, Inc. v. H&M Hennes & Mauritz L.P.*, 52 F.4th 1054, 1069 (9th Cir. 2022). Put simply, Defendants must prove that Ms. Gregorini "perpetrated fraud on the Copyright Office by knowingly misrepresenting material facts." *Id.* This is an issue for the Court to decide. *See, e.g.*, *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1064 (9th Cir. 2022) (explaining that "a court must resolve" the issue of validity of a copyright registration under 17 U.S.C. § 411).

Evidence In Opposition To Affirmative Defense 3: Ms. Gregorini will rebut any contention that she defrauded the Copyright Office. For instance, documentary and testimonial evidence will show that Sarah Thorp is not an author under the Copyright Act because she never disclosed anything in writing (or a fixed medium) to Ms. Gregorini, but rather only shared an idea through an oral communication that lasted less than five minutes; second, Ms. Gregorini neither knew nor intended for there to be any inaccuracy in any copyright application; and third, the alleged inaccuracy was immaterial because Ms. Thorp concedes that Ms. Gregorini is the "100%" owner of the copyright to *Emanuel*.

## EVIDENTIARY ISSUES

Apart from the motions in limine filed by Defendants, which Plaintiff Ms. Gregorini addressed in her opposition briefs, the only anticipated evidentiary issue that Plaintiff Ms. Gregorini expects that should be addressed at the final pretrial conference relates to the public forum of the courthouse. To date, Defendants have aggressively litigated this case in secret through sealed filings. Yet courtrooms belong to the public. *See, e.g.*, *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d

1172, 1178 (9th Cir. 2006) (resolving a dispute on the merits at trial "is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events"). Ms. Gregorini will oppose any demand from Defendants to clear and seal the courtroom for any portion of this trial.

### ISSUES OF LAW

Plaintiff Ms. Gregorini is only aware of one issue of law for the Court. Defendants challenge the validity of Ms. Gregorini's copyright registration under 17 U.S.C. § 411. This defense is an issue of law based on underlying fact that the Court must decide. *See, e.g.*, *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1064 (9th Cir. 2022) (explaining that "a court must resolve" the issue of validity of a copyright registration under 17 U.S.C. § 411). Thus, if the Court does not grant Ms. Gregorini summary judgment under Rule 56(f), Dkt. 278 at 13, then the Court should resolve this issue in a bench trial as set forth in more detail below on bifurcation.

### BIFURCATION OF ISSUES

The Parties do not agree on bifurcation. Defendants contend that the Court should bifurcate and hold a bench trial over Plaintiff Ms. Gregorini's damages claim for Defendants' profits. Plaintiff Ms. Gregorini objects to this proposal for the statutory, constitutional, and practical reasons below. Plaintiff Ms. Gregorini contends that the Court should bifurcate and hold a bench trial over Defendants' two overlapping equitable defenses. Defendants have stated their opposition to this request.

### I.      The Court Should Not Bifurcate Plaintiff Ms. Gregorini's Damages Claim for Defendants' Profits.

The jury should decide the profits that Defendants owe Plaintiff Ms. Gregorini as damages for their infringement. While the Supreme Court and Ninth Circuit have not addressed this issue, Ms. Gregorini submits that this Court should follow the district courts in *Capture Eleven Group v. Otter Products, LLC*, No.

1:20-cv-02551, --- F. Supp. 3d ----, 2023 WL 5573966 (D. Colo. May 31, 2023) and *Huffman v. Activision Publ'g Inc.*, No. 2:19-cv-00050, 2021 WL 2339193 (E.D. Tex. 2021) that have found a right to trial by jury over profits in copyright infringement cases. In the alternative, the Court should submit the issue for the jury to decide as an advisory verdict under Federal Rule Civil Procedure 39, as is common among the split of district courts that have not recognized a jury trial right. *See, e.g.*, *Rearden LLC v. Walt Disney Co.*, No. 17-cv-04006, 2023 WL 9187385, at *2 (N.D. Cal. Dec. 14, 2023).

### A.  The Copyright Act establishes a jury trial right over profits as damages for copyright infringement.

A jury trial right may exist from statute or the Seventh Amendment. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998). Courts first examine whether a statutory jury trial right exists before analyzing the two-step test under the Seventh Amendment. *Id.* (quoting *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987)). Under the "constitutional avoidance doctrine," courts first ask whether it is "fairly possible" that statutory construction may avoid the constitutional question. *Id.* A construction is "fairly possible" if "***any*** congressional intent" to grant a jury trial right exists, either explicitly or implicitly. *Id.* (emphasis added).

This Court's analysis should start with the Copyright Act. The Copyright Act provides four sections on infringement remedies: § 502 provides for injunctions; § 503 provides for impoundment and disposition of infringing articles; § 504 provides for actual damages and profits; and § 505 provides for costs and attorneys' fees. 17 U.S.C. §§ 502-505; *Petrella v. MGM*, 572 U.S. 663, 668 n.1 (2014). In every section except for § 504, Congress directs the "court" to provide these remedies:

> **§ 502(a)**: "Any **court** having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

**§ 503(a)**: "At any time while an action under this title is pending, the **court** may order the impounding, on such terms as it may deem reasonable".

**§ 505**: "In any civil action under this title, the **court** in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the **court** may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Even though Congress directed "the court" to provide these remedies, Congress omitted any reference to the court over awards of actual damages or profits:

**§ 504(b)**: The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

Thus, the question is whether it is "fairly possible" to construe this statute as indirectly establishing a jury trial right for remedies in 504(b) (both actual damages and profits).

The district courts with the most in-depth analysis answer that question affirmatively. The district court in *Huffman*, for instance, found it "fairly possible" to construe the Copyright Act as granting a jury trial right over profits for three reasons. 2021 WL 2339193, at *4-6. First, "Congress is presumed to have purposely omitted that term in order to distinguish it from the other remedies." *Id.* at *4 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 697, 711 n.9 (2004)). "Second, Congressional intent to grant a statutory right to a jury trial can be inferred from the pairing of actual damages and 'infringer's profits.' The actual damages remedy is unmistakably legal in nature, by pairing an unmistakably legal remedy with 'infringer's profits' Congress expressed an intent for courts to treat both remedies as legal." *Id.* at *5. "Lastly—and perhaps most importantly—the Defendants' interpretation of 504(b) goes against longstanding precedent, not only in this

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

circuit, but in circuits throughout the United States." *Id.* (collecting cases). That the Ninth Circuit offers a model jury instruction—cited in *Huffman*—only confirms the expectation and practice that juries decide an infringer's profits in copyright cases. *See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* 17.34 Copyright—Damages—Defendant's Profits.

The district court in *Capture Eleven* reached the same conclusion for similar reasons. 2023 WL 5573966, at *1-3. The court also emphasized the Supreme Court's recognition over the significance about the omission of "court" in the 504(b). In *Feltner*, for instance, the Supreme Court explained this significance in a footnote: "In fact, the other remedies provisions of the Copyright Act use the term 'court' in contexts generally thought to confer authority on a judge, rather than a jury. . . . *In contrast, the Copyright Act does not use the term 'court' in the subsection addressing awards of actual damages and **profits**, see § 504(b), **which generally are thought to constitute legal relief***." *Id.* (quoting *Feltner*, 523 U.S. at 346) (emphasis added in bold). This statement was "persuasive and strongly supports the notion that 504(b) includes a jury trial right." *Id.* at *2.

Both *Huffman* and *Capture Eleven* also distinguished decisions from district courts reaching a contrary conclusion about this statutory construction. *Cf. Fair Isaac Corp. v. Fed. Ins. Co.*, 468 F. Supp. 3d 1110 (D. Minn. 2020); *Navarro v. Procter & Gamble Co.*, 529 F. Supp. 3d 742 (S.D. Ohio 2021). *Navarro*, for instance, concluded that Congress knows how to create a jury trial right and did not do so here by omitting the word "jury." But *Huffman* responded that "by that same token, Congress also knows how to expressly delineate equitable remedies from legal ones," and did not do so here. *Huffman*, 2021 WL 2339193, at *5. Perhaps more importantly, both courts explained that *Fair Isaac* and *Navarro* ignored the Supreme Court's "clear admonition to abide by the canon of constitutional avoidance." *Capture Eleven*, 2023 WL 5573996, at *3 n.1. The question is not even which interpretation is most reasonable or preferred; the only question is whether

an interpretation providing for a jury trial right is a reasonable one: "Though *Fair Isaac* presents one reasonable interpretation of § 504(b), there is another competing fair and reasonable interpretation that would sidestep the underlying constitutional question; the alternative construction is therefore the preferred construction." *Huffman*, 2021 WL 2339193, at *4; *see also Feltner*, 523 U.S. at 358 (Scalia, J., concurring) ("The doctrine of constitutional doubt does not require that the problem-avoiding construction be the *preferable* one—the one the Court would adopt in any event. Such a standard would deprive the doctrine of all function."). "Because it is 'fairly possible' to construe the statutory language according to this competing meaning, and because it is a construction by which the constitutional question may be avoided, it is the preferred construction here." *Capture Eleven*, at 2023 WL 5573996, at *3. This Court should follow *Huffman* and *Capture Eleven*, and conclude that the Copyright Act provides a jury trial right in § 504(b).

**B.    Ms. Gregorini has a Seventh Amendment right to trial by jury for her claim for profits as damages.**

If the Court finds that no statutory jury trial right exists in the Copyright Act, then the Court must assess whether the Seventh Amendment provides for one. The Seventh Amendment guarantees "the right of trial by jury" over "suits at common law." U.S. Const. VII. The Supreme Court applies this constitutional right "not only to common-law causes of action, but also 'actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th Century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). Thus, the Supreme Court examines "both [1] the nature of the statutory action and [2] the remedy sought." *Feltner*, 523 U.S. at 348.

The Supreme Court already answered the first question for copyright infringement cases in *Feltner*. "Before the adoption of the Seventh Amendment, the common law and statutes in England and this country granted copyright owners

1 causes of action for infringement." *Id.* at 348. Thus, step one for this two-part test is
2 met here.

3       The second step—the remedy sought—is also met here. For this step, the
4 Supreme Court asks if the remedy sought is legal or equitable in nature. *See, e.g.*,
5 *Tull v. United States*, 481 U.S. 412, 417 (1987). The Supreme Court explained "the
6 general rule" in *Feltner* that "monetary relief is legal." 523 U.S. at 352. Indeed,
7 monetary relief that provides "compensation and punishment" is traditionally
8 associated with legal relief too. *Id.* Here, an award of Defendants' profits plainly
9 meets this standard. In fact, an award of profits is just as compensatory and punitive
10 as statutory damages—which the Court held was legal relief in *Feltner*. *Id.* at 353-
11 54. *Huffman* suggested this conclusion as well: "There is a strong indication that the
12 'infringer's profits' remedy is a corollary, or otherwise similar in nature, to the
13 actual damages remedy of § 504(b). Thus, if necessary, this Court should hold that a
14 constitutional right to trial by jury attaches to copyright claims seeking an
15 infringer's profits.

16         **C.**    **In the alternative, the Court should submit the question of**
17                **profits as damages to the jury for an advisory verdict.**

18       Even if the Court finds that no jury trial right exists, the Court should still
19 submit the issue about Defendants' profits to the jury for an advisory verdict.
20 Federal Rule Civil Procedure 39(c) allows for advisory jury verdicts. In *Rearden*,
21 for instance, the district court denied a right to jury trial over the infringer's profits,
22 but still submitted the issue to the jury as courts often do. 2023 WL 9187385, at *2;
23 *see also Griffo v. Oculus*, No. 151228, 2018 WL 6265067, at *15 (C.D. Cal. Sept.
24 18, 2018), *Cisco Sys., Inc. v. Arista Networks, Inc.*, No. 14-cv-05344, 2016 WL
25 11752975, at n.2 (N.D. Cal. Nov. 16, 2016) ("this Court will submit the
26 disgorgement of profits claim to the jury and treat the disgorgement verdict as
27 advisory, if not conclusive"). The Court should reach the same conclusion here
28 because the jury will already decide overlapping issues about the qualitative

importance about the similarities between *Emanuel* and *Servant*, which will
underlie both liability and damages.

* * *

In closing, Ms. Gregorini asks the Court to consider the grave importance of
the right to trial by jury. The Ninth Circuit has warned that "the importance of the
civil right to jury trial should not be underestimated." *In re U.S. Financial Sec.
Litig.*, 609 F.2d 411, 419 (9th Cir. 1979). "Maintenance of the jury as a fact-finding
body is of such importance and occupies so firm a place in our history and
jurisprudence that any seeming curtailment of the right to jury trial should be
scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935). So
too here. Any doubt over a right to trial by jury should be resolved in favor of this
bedrock institution. The Court should grant Ms. Gregorini a jury trial on her claim
for profits.

> ### D.    The Court should not bifurcate the jury trial into a liability and damages phase.

Plaintiff Ms. Gregorini understands that Defendants will ask for bifurcation
even if the Court decides to submit damages to the jury. The Court has already once
denied Defendants' motion to bifurcate liability and damages. Dkt. 99. As the Court
explained, courts have discretion to bifurcate proceedings "[f]or convenience or to
avoid prejudice, or to expedite and economize" with a focus on judicial economy.
*Id.* at 5. Defendants bear the burden to prove that bifurcation is likely to promote
efficiency. *Id.* Defendants can make no such showing here.

The Court estimated this jury trial will last three days. Plaintiff Ms. Gregorini
is prepared to complete this trial in this time frame. But even Defendants' counsel
agreed that the trial can be tried in just five days total during the parties' Local Rule
16-2 conference. Put simply, this case is a straightforward civil trial, and bifurcation
of liability and damages will only complicate and delay matters for the parties, the
Court, and the jury. Indeed, the evidence and testimony for liability and damages

will overlap. As the Ninth Circuit has already explained here, the "extent and qualitative importance" of the expressive elements in *Emanuel* and *Servant* is an important consideration for liability. Dkt. 60 at 3-4. The same is true for Defendants' burden to prove that profits can or should be apportioned, and whether the key elements that Defendants copied in episodes 1-3 are causally connected with Defendants' continuing the series in later episodes. Thus, the Court should deny any request to bifurcate liability and damages.

## II.    The Court Should Bifurcate and Conduct a Bench Trial over Defendants' Two Defenses about Copyright Registration.

The Court faces no hard decision about a jury trial right over Defendants' unclean hands and copyright invalidity (fraud on the Copyright Office under 17 U.S.C. § 411) defenses.

**Unclean Hands.** To start with unclean hands, that defense is clearly equitable for which no jury trial right exists. *Out of the Box Enters., LLC v. El Paseo Jewelry Exch., Inc.*, No. 10-1858, 2012 WL 12893524, at *8, n.6 (C.D. Cal. June 27, 2012) ("Since unclean hands is an equitable defense, [the parties are] not entitled to have a jury decide its applicability."); *JIPC Mgmt., Inc. v. Incredible Pizza Co., Inc.*, No. 08-4310, 2009 WL 8591607, at *19 (C.D. Cal. July 14, 2009) ("Defendants' unclean hands defense is equitable, however, and committed to the discretion of the court; there is no right to jury trial on this defense."). In a copyright case, an unclean hands defense only relates to copyright misuse. *See, e.g.*, *Breakdown Servs., Ltd.*, 550 F. Supp. 2d at 1134 ("There is essentially no other way to interpret an unclean hands defense in a copyright infringement suit other than involving copyright misuse."). Defendants must prove inequitable conduct or some scheme to defraud the public. *See, e.g.*, *Taylor Holland v. MVMT Watches Inc.*, No. 2:15-CV-03578, 2016 WL 6892097, at *11 n.21 (C.D. Cal. Aug. 11, 2016) (requiring inequitable conduct); *Dennis Fugnetti Photography Tr.*, No. 1900847, 2022 WL 1585747, at *8. Defendants therefore have no jury trial right over this defense, nor

have they even demanded one. The Ninth Circuit Model Jury Instructions offer no model instruction either, precisely because this defense is for the Court.

**Copyright Registration Invalidity (Fraud on the Copyright Office under 17 U.S.C. § 411).** The same is true for their copyright invalidity or "fraud on the copyright office" defense. Like the name suggests, this defense requires Defendants to prove that Ms. Gregorini knowingly and intentionally sought to defraud the Copyright Office. *See, e.g.*, *Unicolors, Inc. v. H&M Hennes & Mauritz L.P.*, 52 F.4th 1054, 1069 (9th Cir. 2022). They also must prove that intent to deceive was "material" to the Copyright Office' registration. *See id.* These elements parallel inequitable conduct defenses in patent cases, which likewise require an intent to deceive and materiality. *See, e.g.*, *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011); *see also Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) (explaining inequitable conduct defense was also known as "fraud on the Patent Office"). These are clearly defenses that courts—not juries—resolve. *Id.* ("Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent."). Indeed, the Ninth Circuit has made clear that challenges to copyright registration under § 411 is for the court to resolve. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1064 (9th Cir. 2022) (explaining that "a court must resolve" the issue of validity of a copyright registration under 17 U.S.C. § 411). Like unclean hands, the Ninth Circuit Model Jury Instructions offer no model instruction for this defense either.

The Court should try these two defenses in a bench trial separate from any jury trial. Courts routinely bifurcate defenses for the court to resolve when they are divisible and the evidence on the equitable defenses would be unfairly prejudicial. *See, e.g.*, *Classical Silk, Inc. v. Dolan Grp., Inc.*, No. 14-09224, 2016 7638112, at *5 (C.D. Cal. Mar. 21, 2016); *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, No. 08-04310, 2009 WL 8591607, at *20 (C.D. Cal. July 14, 2009). Here, Defendants have

stated that the same core factual basis underlies both defenses. They have a contrived (and baseless) argument that a third-party (and a former intimate partner to Ms. Gregorini) had a passing oral discussion about a story before Ms. Gregorini wrote, directed, and produced *Emanuel*. Even though this third party, Sarah Thorp, has conceded that Ms. Gregorini owns "100%" of the copyright in *Emanuel*, and that no legal dispute ever existed between them, Defendants have manufactured arguments to contend otherwise solely to try to present Ms. Gregorini in a bad light. This is the quintessential framework for a bifurcated bench trial.

## RIGHT TO A JURY TRIAL

Plaintiff Ms. Gregorini demanded a jury trial on her claims for trial. *See, e.g.*, Dkt. 25 at 50 ("DEMAND FOR JURY TRIAL"). This Court has set the case for jury trial as well. Dkt. 132 at 3. And as explained in the section on bifurcation above, Ms. Gregorini submits that she has a right to trial by jury for her entire claim, including her claim for Defendants' profits.

In contrast, Defendants made no jury trial demand for any of their affirmative defenses. *See generally* Dkt. 77-80. And as also explained above, Defendants have no right to trial by jury for their unclean hands and copyright registration invalidity (fraud on the Copyright Office under § 411) defenses. Ms. Gregorini therefore asks that the Court decide those defenses in a bench trial after the jury trial.

## ATTORNEYS' FEES AND COSTS

Plaintiff Ms. Gregorini may have a right to recover, as the prevailing party, her reasonable attorney's fees and costs. 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."). If Plaintiff Ms. Gregorini prevails, she may seek an award of reasonable attorney fees and costs and request that the issue be briefed after the jury and the Court have decided the merits of her claims.

1

## NARROWING OF ISSUES

Plaintiff Ms. Gregorini has elected to narrow her case for trial and identifies that she will not proceed on Claim 2 (Copyright Infringement re: Early *Servant* Script) and Claim 3 (Copyright Infringement of Later *Servant* Script) from her Amended Complaint. Ms. Gregorini reserves the right to narrow her claims further as the Court resolves pending motions ahead of trial.

Dated: October 25, 2024          **ROBINS KAPLAN LLP**

By: */s/ Patrick M. Arenz*
          Patrick M. Arenz

Attorneys for Plaintiff
Francesca Gregorini

**ROBINS KAPLAN LLP**
Michael A. Geibelson (SBN 179970)
MGeibelson@RobinsKaplan.com
Patrick M. Arenz *(Pro hac vice)*
PArenz@RobinsKaplan.com
Annie Huang *(Pro hac vice)*
AHuang@RobinsKaplan.com
Emily E. Niles *(Pro hac vice)*
ENiles@RobinsKaplan.com
Prateek Viswanathan *(Pro hac vice)*
PViswanathan@RobinsKaplan.com

2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
Telephone:  310 552 0130
Facsimile:   310 229 5800

*Attorneys for Plaintiff Francesca Gregorini*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Francesca Gregorini,<br><br>       Plaintiff,<br><br>    v.<br><br>APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,<br><br>       Defendants. | Case No. 2:20-cv-00406-SSS-JC<br><br>**L.R. 11-6.1 CERTIFICATE OF COMPLIANCE**<br><br>Final Pretrial Conference<br>Date: November 22, 2024<br>Time: 1:00 pm<br>Courtroom: 2<br><br>Trial: December 9, 2024 |

PLAINTIFF'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

The undersigned, counsel of record for Plaintiff Francesca Gregorini, certifies that this brief contains 5,915 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 25, 2024                    ROBINS KAPLAN LLP


                                            By: /s/ Patrick M. Arenz
                                                Patrick M. Arenz

                                            Attorneys for Plaintiff
                                            Francesca Gregorini