NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
  meenakshikrishnan@dwt.com
CARL MAZUREK (*pro hac vice*)
  carlmazurek@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel.: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA GREGORINI, <br><br> Plaintiff, <br><br> vs. <br><br> APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual; BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 2:20-cv-00406-SSS-JC <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1 REGARDING EXPERT TESTIMONY ABOUT APPORTIONMENT OF PROFITS** <br><br> Date:  November 15, 2024 <br> Time:  2:00 p.m. <br> Dept.:  Courtroom 2 <br><br> **[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]** |

## I. INTRODUCTION

Plaintiff's motion seeks the extraordinary remedy of precluding Defendants from establishing that certain profits from their series *Servant* were not attributable to the alleged infringement in this case. Plaintiff essentially requests a preemptive order that she is entitled to 100% of profits from *Servant* if she prevails, even though the Copyright Act expressly allows defendants to establish some portion of profits are the result of other factors. This is exactly the sort of evidence that Defendants' damages expert Dana Trexler will proffer at trial. After looking at Defendants' ledgers, Plaintiff's allegations, and industry standards, Trexler opined that ▬ of the profits from Episodes 1-3 of *Servant* were attributable to the allegedly infringing scripts.[1] Defendants are entitled to present this evidence to establish what profits Plaintiff can potentially recover.

Plaintiff does not challenge Trexler's qualifications or the overall reliability of her analysis regarding profits. Nor does Plaintiff challenge the premise that only those profits generated by the alleged infringement are recoverable. Instead, Plaintiff takes issue with how Trexler arrived at ▬, which reflects the costs paid for the relevant scripts as a percentage of the overall cost to produce those episodes. Many courts have held that this "cost-based" apportionment is reliable, including for intellectual property matters like this one and including from Trexler herself. Trexler even verified the reasonableness of this percentage based on the industry custom of paying between 2-5% of a series' profits to the writer.

Plaintiff's attempts to cast doubt on Trexler's apportionment analysis are points for cross-examination, not a basis for precluding Trexler's testimony. Notably, Plaintiff does not suggest some more reliable approach—instead she

---

[1] Plaintiff's motion focuses on a ▬ apportionment percentage, but Trexler issued a Supplemental Rebuttal Report adjusting the percentage from ▬ to ▬ for the allegedly infringing scripts after identifying additional costs for writing services related to those scripts. Declaration of Cydney Swofford Freeman ("Freeman Decl.") Ex. 1 at 1, 6-8 (June 17, 2024).

1
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

would like this Court to preclude *any* apportionment so that Plaintiff could recover *all* profits if she prevails.  While "apportioning profits is not always an easy task," "the one certainly unjust course" would be to "giv[e] the plaintiff[] everything."  *See Abend v. MCA*, 863 F.2d 1465, 1480 (9th Cir. 1988) (discussing Judge Learned Hand's decision in *Sheldon v. Metro-Goldwyn-Mayer Pictures Corp.*, 106 F.2d 45 (2d Cir. 1939)).  Plaintiff's motion should be denied.

## II.     THE COPYRIGHT ACT EXPRESSLY ALLOWS EVIDENCE OF PROFIT ALLOCATION

Under the Copyright Act, Plaintiff may only recover profits "attributable to the infringement," and no more.  17 U.S.C. § 504(b).  To arrive at such profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  *Id.*  Courts do not require "mathematical exactness" in assessing profits attributable to the infringement, and instead look for a "reasonable and just apportionment."  *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 518 (9th Cir.1985); *see also Abend*, 863 F.2d at 1480 ("Defendants' fear that [plaintiff] could receive 100% of their profits is unfounded.  [Plaintiff] can receive only the profits attributable to the infringement.").  Trexler's opinion regarding apportionment is reasonable, just, and supported by a well-established and reliable methodology.

## III.    TREXLER'S PROFIT ALLOCATION ANALYSIS IS ADMISSIBLE

Myriad factors contribute to the profitability of a television series, including its writers, directors, producers, cast, and marketing.  And there would be no profits on any series but for sufficient financing and the complex logistics required to produce it, from equipment to catering to transportation.  To determine a "reasonable and just apportionment," Trexler used a cost-based approach to identify profits from *Servant* Episodes 1-3 that could be considered attributable to the allegedly infringing scripts.  Ex. Dkt. 284-6 ¶¶ 108, 111-112 (October 20, 2023

2

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Trexler Report). Specifically, Trexler calculated the cost of the scripts for the allegedly infringing episodes as a percentage of total production costs, resulting in an apportionment percentage of ▬. *Id.*[2] From there, she multiplied Defendants' total profits by ▬ (except for Defendant Tony Basgallop's profits for writing *Servant*, for which Trexler attributed 100% to the alleged infringement). *Id.* She explained her rationale for applying this method:

> The [▬] apportionment percentage is appropriate to apply to the profits for each defendant, as that is the portion that relates to the writing versus all of the other efforts that went into the production of those episodes. The profits generated by the Episodes-at-Issue are the result of all of the efforts that went into the production of those episodes including, but not limited to, writing the scripts, production, casting, wardrobe, set design, etc. Said another way, the Episodes-at-Issue would not exist without all of these efforts. Therefore, my apportionment percentage of [▬] is determined by dividing the total amounts paid to the writer for writing services divided by the total production costs.

*Id.* ¶ 114.[3]

After conducting this analysis, Trexler conducted a "reasonableness check" on the resulting apportionment percentage. Dkt. 284-6 (October 10, 2023 Trexler Report). As she explained, it is typical in the industry for screenwriters to receive a profit participation percentage between 2% and 5%, which is aimed at providing a share in the ultimate success of a scripted work proportionate to one's contribution—just like an apportionment percentage. *Id.* ¶ 113.[4]

Despite the reliability and widespread support of a cost-based methodology like this, Plaintiff nitpicks Trexler's approach based on unsupported arguments.

---

[2] Again, Trexler initially opined that ▬ of profits were potentially attributable to the allegedly infringing scripts before she identified additional writing costs and adjusted the percentage to ▬.
[3] While Plaintiff contends that an expert must explain the rationale for their opinion, Mot. at 2-3, Trexler does just that in her reports.
[4] Trexler's apportionment percentage assumes the scripts are found to be infringing in their entirety even though numerous elements in *Servant* were written years prior to *Emanuel*, meaning they cannot possibly infringe. As a result, Trexler's apportionment percentage is *more* favorable to Plaintiff than it could have been.

3
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff simply wants all of the profits if she prevails, but that is not permissible under the Copyright Act.

### A. Cost-Based Apportionment Is a Reliable Methodology

Numerous courts have endorsed the same apportionment methodology Trexler applies here, including analyses performed by Trexler herself. *See, e.g.*, *Wherevertv. v. Comcast Cable Commc'ns*, 2022 WL 4017049, at *7-8 (M.D. Fla. Sept. 4, 2022) (admitting Ms. Trexler's cost-based apportionment methodology as reliable as a "widely used" method of apportionment); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571332, at *8 (N.D. Cal. June 30, 2012) (admitting a cost-based approach as "sound" and "not subject to exclusion under FRE 702 and *Daubert*"); *BlueRadios v. Kopin Corp.*, 2023 WL 9104818, at *11 (D. Colo. Dec. 27, 2023) (admitting cost-based apportionment as "a sufficiently reliable methodology");[5] *In re Avaya*, 602 B.R. 445, 461 (S.D.N.Y. 2019) (affirming bankruptcy court's decision that a cost-based apportionment methodology was "a credible and precise way of calculating" damages); *Summit 6, LLC v. Samsung Elecs.*, 802 F.3d 1283, 1296-97 (Fed. Cir. 2015) (finding expert's cost-based method "was structurally sound and tied to the facts of the case").[6]

*Wherevertv*—a case Plaintiff herself relies on—illustrates how courts treat this methodology. *See Wherevertv*, 2022 WL 4017049, at *7. In that case, Trexler calculated Comcast's "Software and Intangibles" expenses relative to its overall costs, resulting in an apportionment percentage she could then apply to Comcast's profits. *Id.* at *8. The court held that Trexler's approach was reliable, noting that "[c]ost-based apportionment, which compares the relative cost of the infringing

---

[5] Plaintiff mistakenly cites *BlueRadios* as an example of a decision rejecting a cost-based analysis, but the court actually *admitted* the testimony as reliable. *See BlueRadios*, 2023 WL 9104818, at *11 (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993)).

[6] Plaintiff cites one case that rejected a request to admit a cost-based apportionment analysis because it did not fit the facts of that case (*Sheldon v. Moredall Realty*, 29 F. Supp. 729, 732 (S.D.N.Y. 1939)), but ignores the majority of decisions issued in the nearly 100 years since that have held the exact opposite.

4
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

activity or component to the overall cost, is a widely used method of performing apportionment analysis." *Id.* (citing American Institute of CPAs, FORENSIC VALUATION SERVICES PRACTICE AID: CALCULATING DAMAGES IN INTELLECTUAL PROPERTY DISPUTES 108 (4th ed. 2019)).

Notably, Plaintiff offers no alternate methodology capable of application to the facts of this case, suggesting instead that she should recover *all* of Defendants' profits—which is contrary to both law and common sense. *See* 17 U.S.C. § 504(b); *See also Abend*, 863 F.2d at 1480. Even if Plaintiff prevails, she could never show that all of *Servant* is infringing, as there are numerous elements in Episodes 1-3 that were written years before *Emanuel* was conceived (*see* Dkt. 182-3 at 11-20 (SUF)), and she cannot reasonably dispute that at least some of *Servant*'s success is due to other factors like the draw of M. Night Shyamalan's involvement. *See, e.g.*, Dkt. 215-1 (Reply SUF) ¶¶ 77-143, 165-167, 174, 202-208. Consequently, reasonable approaches to apportionment—such as Trexler's—are necessary to avoid the "certainly unjust" outcome of awarding Plaintiff *all* profits. *See Abend*, 863 F.2d at 1480; *see also Frank Music*, 772 F.2d at 518; *Summit 6*, 802 F.3d at 1296 ("[W]here the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder.").

Plaintiff's criticisms of a cost-based analysis are unavailing. For instance, she criticizes Trexler's report for not citing any publication supporting a cost-based methodology (Dkt. 267 at 2-3, 5-6), but "[p]ublication ... is not a *sine qua non* of admissibility." *Daubert*, 509 U.S. at 593. Similarly, Plaintiff misquotes *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), which explains that the court must assess reliability "using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance" but "the inquiry is a flexible one." In any event, where an expert "otherwise reliably utilizes scientific methods to reach a

5
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

conclusion," as Trexler does here, an alleged "lack of textual support may go to the weight, not the admissibility of the expert's testimony." *Knight v. Kirby Inland Marine*, 482 F.3d 347, 354 (5th Cir. 2007) (internal quotation marks omitted).

Plaintiff also takes issue with a guide published by Trexler's firm, which Plaintiff mistakenly claims warns against using a cost-based methodology for apportionment. *See* Dkt. 267 at 3; Dkt. 272-3. Not so. The article deals with a "cost approach" to "patent valuations"—not apportionment—and has no application here. *See* Dkt. 272-3. The article's primary criticism is that a "cost approach" to valuation (which simply equates cost to value) "does not recognize the future economic benefit provided to the owner of the asset." *Id.* at 3. To the contrary, here, Trexler applies an apportionment percentage to total profits, which necessarily takes into account the future benefit (*i.e.*, profits) in proportion to Defendants' investment in the allegedly infringing component. Moreover, her analysis is consistent with the range that writers typically share *in the profits* for successful television series.

**B.     Trexler's Focus on the Scripts for *Servant* Is Appropriate for this Case**

The *Servant* Episode 1-3 scripts are the appropriate focus of the apportionment analysis here for several reasons. To start, Plaintiff alleged that all of the similarities between *Emanuel* and *Servant* were present in "Early *Servant* Script[s]" written by Basgallop and pitched to Apple, before production had even commenced. FAC ¶¶ 95, 101. Indeed, Plaintiff alleges that these early *Servant* scripts "hew[ed] even closer to *Emanuel* than *Servant* does, in part because even less of Defendants['] own decisions had been incorporated." *Id.* Because of Plaintiff's claim that all allegedly copied elements from *Servant* were in those scripts, using the scripts as the basis for the profits analysis is appropriate. In reality, relying on the scripts is *over*-inclusive, as the scripts contain numerous elements Plaintiff does not allege are infringing and numerous other elements indisputably written well before *Emanuel*.

6

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

     Moreover, many of the alleged similarities between *Emanuel* and *Servant* that Plaintiff claims go beyond the scripts, such as set decoration and camera techniques, are in fact reflected in the *Servant* scripts. For example, Plaintiff points to the "idiosyncratic camera technique" of a "shot from outside the home, pushing in on the second story window to show a figure fussing over baby." FAC ¶ 68. The script for *Servant* calls for the camera to "move into a second floor window, through the glass, and into" the nursery. Dkt. 180-33 (TB_GREGO_00012459) at TB_GREGO_00012461. This is just one of many examples reinforcing that, based on Plaintiff's own allegations, the scripts are a reasonable anchor for Trexler's analysis. *See* Dkt. 182-3 at 11-20 (SUF) (listing numerous examples of allegedly infringing elements that existed in early scripts written by Basgallop).

     Plaintiff attacks a straw man by arguing that Defendants' transportation costs illustrate that cost is not a proxy for value. Dkt. 267 at 6-7. Of course there are essential expenses to produce and promote a television series beyond script fees. And even transportation costs, which are necessary to produce a television series, are partially responsible for the profits generated by the distribution of that series. Regardless, in any apportionment analysis, "what is required is not mathematical exactness but only a reasonable approximation." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940); *see also Summit 6*, 802 F.3d at 1296 ("the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder"). As explained above, the scripts provide a completely "reasonable approximation" for apportionment. *See Sheldon*, 309 U.S. at 408.

     Plaintiff relies on authority that is readily distinguishable. In *Albritton*, for example, the court found that application of a cost-based analysis in a patent lawsuit was inappropriate because the component at issue (a handle) bore only a "limited relationship" to the product's overall value. *See Albritton v. Acclarant*, 2020 WL 11627275, at *11 (N.D. Tex. Feb. 28, 2020). To the contrary, here, Plaintiff herself

7
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

contends that the early Episode 1-3 *Servant* scripts were even closer to *Emanuel* than the episodes themselves, before Defendants later added more of their own original components that skewed further away from *Emanuel*. FAC ¶¶ 95, 101. Plaintiff cannot reasonably dispute that the scripts bear far more than a "limited relationship" to *Servant*'s success. Plaintiff also relies on *Frank Music v. Metro-Goldwyn-Mayer,* but that case actually supports Trexler's approach here. *See* 886 F.2d 1545, 1548 (9th Cir. 1989). In that case, the Court acknowledged that it was appropriate to consider non-infringing contributions such as the "creativity of producers, performers and others involved" in the production when apportioning profits. *Id.* at 1594. And while the Court ultimately held that the district court overvalued other of the defendants' non-infringing contributions, that was largely based on factual findings that the defendants used actual excerpts of the plaintiff's work. *Id*. Another case Plaintiff cites, *Edwards Lifesciences v. Meril Life Sciences*, 2022 WL 254348, at *10-11 (N.D. Cal. Jan. 27, 2022), has no application to this case at all, as it dealt with the loss of goodwill—not apportionment.

## IV.    CONCLUSION

Trexler's opinion is the product of "reliable principles and methods" and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. To the extent Plaintiff believes other categories of costs should factor into the analysis, that is a matter for cross-examination, not exclusion. The Court should deny Plaintiff's motion.

DATED: October 25, 2024

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
CARL MAZUREK

By:    /s/ Nicolas A. Jampol
          Nicolas A. Jampol

Attorneys for Defendants

8
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899