NICOLAS A. JAMPOL (State Bar No. 244867)
nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
cydneyfreeman@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
meenakshikrishnan@dwt.com
CARL MAZUREK (*pro hac vice*)
carlmazurek@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071-2566
Tel.: (213) 633-6800; Fax: (213) 633-6899

BRITTANY B. AMADI (*pro hac vice*)
brittany.amadi@wilmerhale.com
HEATH A. BROOKS (*pro hac vice*)
heath.brooks@wilmerhale.com
WILMER CUTLER PICKERING HALE & DORR
2100 Pennsylvania Ave., NW
Washington, D.C. 20037
Tel.: (202) 663-6000; Fax: (202) 663-6363

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FRANCESCA GREGORINI,

Plaintiff,

vs.

APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive,

Defendants.

Case No. 2:20-cv-00406-SSS-JC

**DEFENDANTS' TRIAL BRIEF**

Trial: January 13, 2025

# TABLE OF CONTENTS

**Page**


I. DEFENDANTS' STATEMENT OF THE CASE .......... 1

A. Defendants Independently Created *Servant* Over the Course of 15 Years .......... 1

B. Plaintiff Is Suing Over A Copyright She May Not Own and Elements She Took from Someone Else .......... 3

C. Whether Defendants Had Access to Emanuel Is Entirely Speculative .......... 5

D. *Servant* and *Emanuel* Are Not Substantially Similar .......... 6

II. ANTICIPATED UNRESOLVED ISSUES .......... 7

A. Plaintiff May Not Argue Striking Similarity at Trial .......... 7

B. Whether the Jury May Hear Disputed Evidence Concerning Plaintiff's Copyright Ownership and Registration .......... 8

C. Whether the Jury May Hear Evidence of the Dispute Between Plaintiff and Sarah Thorp .......... 9

D. Defendants' Unclean Hands Defense Should Be Submitted to the Jury .......... 9

E. Other Unresolved Evidentiary Issues and Procedural Disputes .......... 11

III. CONCLUSION .......... 11




**DAVIS WRIGHT TREMAINE LLP**
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Stock v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673 (9th Cir. 2014) ....................8

*Benay v. Warner Bros. Ent.*, 607 F.3d 620 (9th Cir. 2010) ....................6

*Blackthorne Publ'g v. Black*, 2000 WL 123225 (9th Cir. 2000) ....................4

*Bob Barker Co. v. Ferguson Safety Prods.*, 2007 WL 4554012 (N.D. Cal. Dec. 4, 2007)....................7

*ConsumerDirect, Inc. v. Pentius, LLC*, 2024 WL 3914667 (C.D. Cal. July 19, 2024).................... 9, 10

*Cope v. Warner Records*, 2023 WL 11827959 (C.D. Cal. June 5, 2023)....................5

*Fuddruckers v. Doc's B.R. Others*, 826 F.2d 837 (9th Cir. 1987) .................... 10

*Funky Films v. Time Warner Ent.*, 462 F.3d 1072 (9th Cir. 2006) ....................6

*Galen v. Ave. of the Stars Assocs.*, 2011 WL 837785 (C.D. Cal. Mar. 1, 2011)....................7

*Gilbert-Daniels v. Lions Gate Ent.*, 2024 WL 5116299 (9th Cir. Dec. 16, 2024)....................7

*Gregorini v. Apple*, 2022 WL 522307 (9th Cir. Feb. 22, 2022) ....................6

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140 (9th Cir. 2003) ....................8

*Loomis v. Cornish*, 836 F.3d 991 (9th Cir. 2016) ....................5



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Pacira Pharms. v. Rsch. Dev. Found.*,
2024 WL 4190043 (D. Nev. Sept. 13, 2024) .......................................................7

*Rentmeester v. Nike*,
883 F.3d 1111 (9th Cir. 2018) .......................................................................1

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) .........................................................................7

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) .................................................................. 6, 7

*Sky Zone v. Flip N Out*,
2015 WL 4548694 (D. Nev. July 28, 2015) .......................................................8

*Unicolors v. H&M Hennes & Mauritz*,
52 F.4th 1054 (9th Cir. 2022) .........................................................................4

*Unilogic v. Burroughs Corp.*,
10 Cal. App. 4th 612 (1992) ........................................................................ 10

*Williams v. Gaye*,
895 F.3d 1106 (9th Cir. 2018) ............................................................. 3, 7, 8

**Statutes**

17 U.S.C. § 411(a) ........................................................................... 4, 8, 10

**Rules**

Federal Rule of Civil Procedure 56(f) ..............................................................8

Federal Rules of Evidence
401 ...................................................................................................9
403 ...................................................................................................9
608(b) ...............................................................................................9

Local Rule 16-10 ...........................................................................................1



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Pursuant to Local Rule 16-10, defendants Blinding Edge Pictures, Inc. ("Blinding Edge"), Uncle George Productions, LLC ("Uncle George"), Apple Inc. ("Apple"), Escape Artists, Inc. (erroneously sued as Escape Artists LLC) ("Escape Artists"), Dolphin Black Productions ("Dolphin Black"), M. Night Shyamalan, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch (collectively, "Defendants") submit the following trial brief.

## I. DEFENDANTS' STATEMENT OF THE CASE

Plaintiff Francesca Gregorini claims that Episodes 1-3 of Defendants' series *Servant* infringe the copyright in her little-watched 2013 film, *The Truth About Emanuel* ("*Emanuel*"), despite extensive and undisputed evidence that writer Tony Basgallop began writing *Servant* years before *Emanuel*'s creation. Moreover, Plaintiff has no evidence that any of the creators of the allegedly infringing episodes had access to *Emanuel*, nor can she show that the works are substantially similar. This is because *Servant* was independently created over the course of 15 years, involving hundreds of people over the years to bring the series to life.

Plaintiff contends that Defendants engaged in a grand conspiracy to copy almost every aspect of her film in making Episodes 1-3 of *Servant*, including the plot, characters, directing, camera angles, techniques, lighting, props, set design, location, and even casting, and she wants windfall damages flowing from 37 episodes she does not even contend are infringing. The evidence at trial, however, will tell an entirely different story.

### A. Defendants Independently Created *Servant* Over the Course of 15 Years

The evidence will show that Defendants independently wrote, directed, produced, and distributed *Servant*. Independent creation is a "complete defense to copyright infringement." *Rentmeester v. Nike*, 883 F.3d 1111, 1117 (9th Cir. 2018). In 2005—almost a decade before *Emanuel* was released—creator Mr. Basgallop began writing much of what was to become *Servant*. From the beginning, Mr. Basgallop's script was informed by real life. Around this time, he and his wife



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

hired a religious teenage nanny so his wife could return to work. His early drafts, which pre-date *Emanuel*, included many of the allegedly infringing elements and share a throughline with the ultimate episodes of *Servant*. For instance, the story of an urban professional couple in their thirties with a three-month-old baby hiring a mysterious and religious teenage nanny who disrupts their lives was written by Mr. Basgallop between 2005 and 2007.

Over the years, Mr. Basgallop kept tinkering with the script (at the time called *Practically Perfect*), at one point reworking it as a feature film and a novel. Between 2007-2012, for instance, he began to flesh out additional plot points, as well as some of the cinematography, props, and script directions. Plaintiff claims many of these elements were also copied from her, but they were created years before her film was released.

Just as Mr. Basgallop's early drafts reflected events in his own life, his revisions were informed by and drawn from his intervening experiences. In 2012, he moved to Los Angeles to advance his career, and in 2014 found himself writing for the supernatural show *Resurrection*, which involved dead people coming back to life. It was then that Mr. Basgallop watched an episode of *The Leftovers*—a series dealing with themes of grief and loss, like *Resurrection*—that included a scene in which a grieving mother finds hyper-realistic, life-size dolls based on her disappeared family members. Discussing the episode later in the *Resurrection* writers' room, Mr. Basgallop learned about the use of reborn dolls as grief therapy.

In October 2016, looking for his next project, Mr. Basgallop decided to revisit *Practically Perfect*. He wrote a reborn doll into the first episode, with the doll turning into a baby at the episode's end and sparking the show's central questions concerning the supernatural, resurrection, and the occult. He shopped this revised script to Defendant Escape Artists, which in March 2017 attracted the attention of M. Night Shyamalan, one of the world's most sought-after filmmakers in the supernatural genre. Mr. Shyamalan, who wrote and directed the 1999 hit *The*



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Sixth Sense*, is known for incorporating similarly eerie, unexpected twists involving the living and the dead into his films. In September 2017, after receiving the script for the third episode, Mr. Shyamalan officially signed onto the project. With Mr. Shyamalan's established name, brand, and reputation attached to it, the series was pitched to Apple in January 2018, who ordered it in February of that same year. By the time Apple received the scripts for Episodes 1-3, all of the scripts' allegedly copied elements were already included.

Significantly, Plaintiff has *not a shred of documentary evidence* that anyone involved in *Servant*—including Defendants—ever discussed or even mentioned *Emanuel*. Numerous people collaborated on *Servant*'s production, which involved hundreds of creative decisions over approximately one year for the first season alone. If they had conspired to copy *Emanuel*, as Plaintiff claims, it is unbelievable that this collaboration would not have produced even one email or communication in which somebody working on *Servant* discussed her film. The only plausible explanation is the truth: *Servant* was independently conceived.

**B. Plaintiff Is Suing Over A Copyright She May Not Own and Elements She Took from Someone Else**

As a threshold issue of her infringement claim, Plaintiff must first prove to the jury that "she owns the copyright in the infringed work." *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018). To do this, Plaintiff must overcome numerous factual disputes revealed during discovery as to who, or who all, may own the copyright to the *Emanuel* film. *See* Dkt. 364 (Defendants' brief regarding ownership). Further, she must have a valid registration to bring this suit.

The evidence will show that Plaintiff's copyright ownership is uncertain. In 2019, Plaintiff purportedly had an entity named Emanuel Film, LLC assign its rights to the film over to her in her individual capacity. This assignment was the basis for her claim of copyright ownership in her 2019 copyright registration application for the film. But Emanuel Film, LLC—which had multiple members



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

and more than a dozen investors—had been dissolved *years* before and ceased to exist at the time of the purported assignment, rendering it incapable of transferring any copyrights. *See Blackthorne Publ'g v. Black*, 2000 WL 123225, at *2 (9th Cir. 2000) (plaintiff failed to obtain copyright ownership through assignment from suspended assignor corporation). Moreover, multiple other entities have asserted ownership over the film's copyright.

Nor is Plaintiff, as she maintained for years, the sole author of *Emanuel*. Instead, *Emanuel* is based on a story owned by her former close friend, Sarah Thorp, who has a "Story by" credit on the film. Plaintiff did not initially have permission from Ms. Thorp to use her story, while privately admitting that Ms. Thorp was the inspiration. Plaintiff also falsely told the Copyright Office that Ms. Thorp's contributions were made as works for hire when they were not, and has taken inconsistent positions that Ms. Thorp's contributions are unprotectable for purposes of copyright registration but protectable to show substantial similarity between *Emanuel* and *Servant*.

Plaintiff's behavior regarding the origin and inspiration for *Emanuel* undermines her claims and calls into question the validity of Plaintiff's purported copyright registration in the film because her application contained knowing and material inaccuracies concerning *Emanuel*'s origin. *Unicolors v. H&M Hennes & Mauritz*, 52 F.4th 1054, 1067 (9th Cir. 2022). Without a valid copyright registration, she cannot bring suit. 17 U.S.C. § 411(a) (only parties with valid copyright registrations may initiate infringement lawsuits).[1]

---

[1] Plaintiff responds that Ms. Thorp's contributions to *Emanuel* are not protectable. But Plaintiff herself stated that Ms. Thorp's story, at a minimum, "inspire[ed]" *Emanuel* and "g[ave] birth to a script in my mind," making her sworn interrogatory response false. *See* Dkt. 364 at 9 (JTX0007, JTX0009, JTX2047). Moreover, she improperly wields Ms. Thorp's contributions as a sword against Defendants, claiming *Servant* copies *Emanuel*'s use of a grieving mother delusionally believing her deceased child to still be alive.



**DAVIS WRIGHT TREMAINE LLP**
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**C. Whether Defendants Had Access to Emanuel Is Entirely Speculative**

There is no evidence that the creators of *Servant* Episodes 1-3 had access to *Emanuel* prior to this lawsuit. Instead, Plaintiff's entire access theory relies on inferences of access based on the purportedly widespread dissemination of *Emanuel*, and purported chains of events linking *Emanuel* with Defendants. *Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir. 2016). The evidence does not bear this out.

Widespread dissemination can be proven by establishing that the film had a "substantial" degree of success. *Cope v. Warner Records*, 2023 WL 11827959, at *4 (C.D. Cal. June 5, 2023). "[M]ere availability" is insufficient. *Id*. Plaintiff will try to inflate *Emanuel*'s success by touting its inclusion at the 2013 Sundance Film Festival, its theatrical release, and its accessibility on streaming and on-demand services. The evidence, however, will show that her film had minimal reach. It was one of 113 films at Sundance—which Defendants did not attend—where it failed to generate industry buzz, pick up any awards, or secure a distribution sale. Later, it performed poorly at the box office, where it grossed only about $4,000 in theaters that Plaintiff rented out herself, and garnered just a small amount of views online.

Plaintiff's chain-of-events theory is similarly speculative. She has argued that she *may* have been pitched to direct an episode of *Berlin Station* while Mr. Basgallop was working on that show in March 2017; that certain Apple employees *may* have encountered Plaintiff's film while working for another company on the TV series *Electric Dreams* in 2017; and that Plaintiff was submitted (but not chosen) as a potential director for *Servant* in 2018. She has no evidence of access by Mr. Shyamalan, the director of Episode 1, who her own expert doubts would have ever watched *Emanuel*. She also has no theory of access by Mr. Sackheim, the director for Episodes 2 and 3.

Critically, the few touchpoints she may have had with Mr. Basgallop or certain Apple employees came *after Servant*'s first three episodes were already written, and all of the alleged scripted similarities between *Emanuel* and *Servant*



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

predate Apple's involvement in the project. But even if this were enough to support an inference of access, "[a]ccess does not obviate the requirement that the plaintiff must demonstrate that the defendant actually copied the work." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020). As discussed *supra* § I.A, Plaintiff cannot demonstrate that anything was copied from *Emanuel*. Because it was not.

**D. *Servant* and *Emanuel* Are Not Substantially Similar**

In 2022, the Ninth Circuit revived Plaintiff's claims that *Servant* infringed *Emanuel* to allow her an opportunity to conduct discovery on substantial similarity. *Gregorini v. Apple*, 2022 WL 522307, at *1 (9th Cir. Feb. 22, 2022). That opportunity has come to naught. After more than two years of extensive discovery, Plaintiff has uncovered no evidence to support her belief that Episodes 1-3 of *Servant* and *Emanuel* share "*substantial* similarities … in protectable expression." *Skidmore*, 952 F.3d at 1064 (emphasis in original). Instead, discovery has only further accentuated the dissimilarities between the works.

This Circuit determines substantial similarity based on an objective ("extrinsic") and a subjective ("intrinsic") comparison of the works. *See Benay v. Warner Bros. Ent.*, 607 F.3d 620, 624 (9th Cir. 2010); *Funky Films v. Time Warner Ent.*, 462 F.3d 1072, 1077 (9th Cir. 2006). Objectively, many of the elements Plaintiff alleges to be infringing are generic, *scenes a faire*, based on real facts, or otherwise unprotectable ideas. For instance, the fact that reborn dolls are used as a form of grief therapy is not "protectable expression[]" that may result in infringement liability. *See, e.g.*, *Benay*, 607 F.3d at 624-625. Put simply, Plaintiff cannot own the idea of a grieving mother hiring a nanny to care for a doll—even a hyper-realistic doll—in place of a child who had died, or any of the similarities that naturally flow from these ideas.

Subjectively, once jurors watch *Servant* and *Emanuel*, it will be obvious to the "ordinary, reasonable person" that "the total concept and feel of the works" are



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

significantly different. *Williams*, 895 F.3d at 1119 (citation omitted). Plaintiff will try to cherry-pick "random similarities scattered throughout … the works" to argue that the selection and arrangement of these unprotected elements is protected. *Skidmore*, 952 F.3d at 1075. But copyright protection extends to "a combination of unprotectable elements … *only if* those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) (emphasis added). *See also Skidmore*, 952 F.3d at 1075; *Gilbert-Daniels v. Lions Gate Ent.*, 2024 WL 5116299, at *2 (9th Cir. Dec. 16, 2024) (affirming summary judgment for lack of substantial similarity and finding no viable selection-and-arrangement theory "because there is no 'striking' similarity between the two works' sequence and arrangement of unprotectable elements"). As the District Court observed after independently reviewing the works and dismissing this case four years ago, "the alleged overlap between *Emanuel* and *Servant* is not pervasive enough or substantial enough to demonstrate substantial similarity based on a 'selection and arrangement' theory." Dkt. 39.

## II. ANTICIPATED UNRESOLVED ISSUES

For the Court's convenience, Defendants identify the following issues they anticipate will require decision before or during trial.

### A. Plaintiff May Not Argue Striking Similarity at Trial

Plaintiff should be prohibited from making any argument, or introducing any testimony, that *Emanuel* and *Servant* are "strikingly similar" at trial. The Court already decided on summary judgment that it "does not find the works to be strikingly similar[.]" Dkt. 337 at 7. "Issues that have already been decided by the court have no probative value at trial[.]" *Pacira Pharms. v. Rsch. Dev. Found.*, 2024 WL 4190043, at *4 (D. Nev. Sept. 13, 2024) (citing *Galen v. Ave. of the Stars Assocs.*, 2011 WL 837785, at *2 (C.D. Cal. Mar. 1, 2011) (excluding testimony about issues already ruled on at summary judgment)); *Bob Barker Co. v. Ferguson*





DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Safety Prods.*, 2007 WL 4554012, at *1 (N.D. Cal. Dec. 4, 2007) (granting motion in limine "to disregard evidence probative of breach as it relates to issues already decided on summary judgment"). *See also Sky Zone v. Flip N Out*, 2015 WL 4548694, at *2 (D. Nev. July 28, 2015) ("[T]he court will not revisit at trial any issues already decided … on summary judgment.").

**B. Whether the Jury May Hear Disputed Evidence Concerning Plaintiff's Copyright Ownership and Registration**

On December 20, 2024, and pursuant to Federal Rule of Civil Procedure 56(f), the Court ordered the parties to submit briefing addressing issues of copyright ownership and registration. Dkt. 361. Those briefs were submitted on January 3, 2025 and remain pending. Dkts. 364, 366.

Defendants will not repeat all those arguments here but, in short, whether Plaintiff *owns* a valid copyright in the *Emanuel* film and whether she holds a valid copyright *registration* are separate and distinct issues each involving disputed issues of fact. The Court should not relieve Plaintiff of her burden of establishing the "threshold question" of ownership of the copyright at issue. *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003). *See Williams*, 895 F.3d at 1119 (plaintiff must prove to the jury that "she owns the copyright in the infringed work"). A ruling from the Court that Plaintiff established ownership of the film would deny the jury its core fact-finding function and improperly relieve her of proving a required element of her case, despite numerous factual disputes surrounding that issue.

While one may own a copyright even in the absence of a registration, *Alaska Stock v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 678 (9th Cir. 2014), a valid copyright registration is required to assert a claim for copyright infringement. *See* 17 U.S.C. § 411(a). Defendants thus also are entitled to present evidence to the jury that Plaintiff's copyright registration for the film is invalid because an invalid registration is fatal to her lawsuit.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**C. Whether the Jury May Hear Evidence of the Dispute Between Plaintiff and Sarah Thorp**

Plaintiff has moved the Court to preclude evidence of the dispute between Plaintiff and Sarah Thorp about the ownership and copyright interest in *Emanuel*. *See* Dkt. 269 (Plaintiff's Motion In Limine No. 3). On December 20, 2024, the Court ordered the parties to meet and confer and, if necessary, to submit briefing addressing the Court's proposed stipulation regarding Ms. Thorp. Dkt. 361. The parties were unable to agree following their December 31, 2024 conference and submitted briefing on January 3, 2025, which remains pending. Dkts. 365, 367.

Defendants will not repeat those arguments here other than to emphasize that the probative value of evidence regarding the dispute goes not only to Defendants' unclean hands and improper registration arguments, but also as to substantial similarity, and weighs on Plaintiff's credibility. Plaintiff's approximately $5,000 payment to Ms. Thorp is relevant for the jury to consider when assessing Plaintiff's indirect profits claims. Plaintiff's misstatements—including under oath—regarding *Emanuel*'s origin and inspiration have high probative value that cuts to the core issues in this case. Fed. R. Evid. 401, 403. It is Defendants who would be prejudiced by their exclusion, not Plaintiff by their inclusion. The Court's proposed stipulation would present a story to the jury not in conformance with the record in this case. The stipulation would unfairly prevent Defendants from presenting key evidence relevant to their defenses and Plaintiff's lack of credibility, and it would unfairly allow Plaintiff to misrepresent the "personal" origin of *Emanuel*. Fed. R. Evid. 401, 608(b).

**D. Defendants' Unclean Hands Defense Should Be Submitted to the Jury**

Defendants intend to assert the affirmative defense of unclean hands in response to Plaintiff's claims. Dkt. 305, § II(B)(2). "'[A] jury trial of the equitable issues [including unclean hands] is within the court's discretion.'" *ConsumerDirect, Inc. v. Pentius, LLC*, 2024 WL 3914667, at *4 (C.D. Cal. July 19,



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

2024) (quoting *Unilogic v. Burroughs Corp.*, 10 Cal. App. 4th 612, 623 (1992)) (alteration in original). Because Defendants' unclean hands defense is "intertwined" with the facts underlying Plaintiff's claims, "the inter-related questions of fact and credibility" should be submitted to the jury. *ConsumerDirect*, 2024 WL 3914667, at *4.

In *ConsumerDirect*, this Court considered whether plaintiff/counterdefendant ConsumerDirect's equitable defense of unclean hands should be decided by the jury or the Court where it was asserted in response to defendant Array's legal claim for intentional interference with prospective business relations with non-party TransUnion. *Id*. at *2-4. The Court found that both the legal claim and the unclean hands defense "involve[d] the same fact and credibility determinations"—"[s]pecifically, the jury's adjudication of Array's legal claim necessarily required the jury to determine whether Array made false representations to TransUnion[.]" The Court thus found that the defense was properly submitted to the jury. *Id*. at *3-4. *See also Unilogic*, 10 Cal. App. 4th at 623 (trial court did not err in submitting equitable defense of unclean hands to jury because "all of Burroughs's theories in support of the unclean hands defense were intertwined with the parties' legal causes of action and raised questions of fact and credibility properly submitted to a jury").

Here, too, Defendants' theories in support of their unclean hands defense are intertwined with Plaintiff's copyright infringement claims and they will require the jury to weigh the same fact and credibility determinations. For instance, the jury must assess the protectability of elements that Plaintiff relies upon in her attempt to show substantial similarity, which also impacts whether Plaintiff has unclean hands in her dealings with Thorp and Defendants. Moreover, whether Plaintiff holds a valid copyright registration, 17 U.S.C. § 411(a), and whether her conduct was inequitable, *Fuddruckers v. Doc's B.R. Others*, 826 F.2d 837, 847 (9th Cir. 1987), will both require consideration of evidence concerning Plaintiff's misrepresentations to the Copyright Office regarding Ms. Thorp's contributions to



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Emanuel*; Plaintiff's statements before this Court and in her sworn discovery responses misrepresenting *Emanuel*'s origin and creation; and her attempts to conceal Ms. Thorp's specific contributions to *Emanuel*.

**E. Other Unresolved Evidentiary Issues and Procedural Disputes**

On December 20, 2024, the Court further ordered the parties to meet and confer and to submit updated jury instructions, a revised verdict form, and a joint witness list by January 3, 2025. Dkt. 361. The parties have submitted these items as directed and await further guidance from the Court during the hearing set for January 7, 2025. Dkts. 374-379.

Other unresolved evidentiary and procedural issues that Defendants anticipate raising during the January 7, 2025 hearing include:

- When to show the jury the full works at trial;
- The admissibility of certain categories of trial exhibits; and
- Plaintiff's improper trial subpoenas to corporate representatives.

## III. CONCLUSION

Ultimately, Plaintiff's case rests on mischaracterizations of the works at issue and her belief that a whole array of people banded together to steal her little-seen film. Neither the evidence nor the law supports this. Defendants did not copy *Emanuel*, and Plaintiff is not entitled to a payout based on a series she did not create, much less from episodes that she does not even contend infringe her work.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DATED: January 6, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
CARL MAZUREK

WILMER CUTLER PICKERING HALE & DORR
BRITTANY B. AMADI
HEATH A. BROOKS

By: /s/ Nicolas A. Jampol
Nicolas A. Jampol

Attorneys for Defendants



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899