

NICOLAS A. JAMPOL (State Bar No. 244867)
nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
cydneyfreeman@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
meenakshikrishnan@dwt.com
CARL MAZUREK (*pro hac vice*)
carlmazurek@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071-2566
Tel.:  (213) 633-6800; Fax:  (213) 633-6899

BRITTANY B. AMADI (*pro hac vice*)
brittany.amadi@wilmerhale.com
HEATH A. BROOKS (*pro hac vice*)
heath.brooks@wilmerhale.com
WILMER CUTLER PICKERING HALE & DORR
2100 Pennsylvania Ave., NW
Washington, D.C. 20037
Tel.: (202) 663-6000; Fax: (202) 663-6363

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

FRANCESCA GREGORINI,

            Plaintiff,

    vs.

APPLE INC., a California corporation;
M. NIGHT SHYAMALAN, an
individual, BLINDING EDGE
PICTURES, INC., a Pennsylvania
corporation; UNCLE GEORGE
PRODUCTIONS, a Pennsylvania
corporate; ESCAPE ARTISTS LLC, a
California limited liability company;
DOLPHIN BLACK PRODUCTIONS, a
California corporation; TONY
BASGALLOP, an individual; ASHWIN
RAJAN, an individual; JASON
BLUMENTHAL, an individual; TODD
BLACK, an individual; STEVE TISCH,
an individual; and DOES 1-10, inclusive,

            Defendants.

Case No. 2:20-cv-00406-SSS-JC

**DEFENDANTS' BRIEF
REGARDING COPYRIGHT
OWNERSHIP AND
REGISTRATION**

Pursuant to the Court's December 20, 2024 Order, Defendants submit the following brief addressing the issues of copyright ownership and registration.

## I.    INTRODUCTION

There is no dispute that copyright plaintiffs must establish they own a valid copyright in the allegedly infringed work.  This issue of copyright *ownership* is different from whether a plaintiff owns a valid *registration* for the copyright in the film.  Ownership is an element of a claim of copyright infringement, while a valid copyright registration is a precondition to bringing a lawsuit.  Plaintiff herself acknowledged the distinction between these issues, arguing in the proposed Final Pretrial Conference Order that "Plaintiff bears the burden to prove she has a valid copyright.  That is different than Defendants' affirmative defense to prove the Plaintiff's copyright registration is invalid."  Dkt. 326-1 at 4.

As to ownership, the Court has never seen documents, heard argument, or received briefing relating to copyright ownership, as neither party moved for summary judgment on it—because it implicates significant facts that remain in dispute.  Nor is Plaintiff entitled to any presumption she owns a valid copyright, as her 2019 registration for her film occurred more than five years after it was first published.  This means Plaintiff retains the burden of having to prove ownership.  Dispensing with this requirement would be improper for several reasons.

First, while the Court has expressed an inclination to find that Plaintiff has "demonstrated a valid copyright in the *Emanuel* screenplay," Dkt. 361, ownership of the *screenplay* for *The Truth About Emanuel* is not at issue in this case.  *See* Freeman Declaration Ex. A (the "Screenplay Copyright") (JTX134).  The allegedly infringed work is the audiovisual film itself.  *See* FAC ¶ 85; Ex. B (the "Audiovisual Copyright") (JTX434).  Plaintiff must prove she owns the Audiovisual Copyright, which the parties dispute.  *See* Section III.A.

Second, as to the Audiovisual Copyright, there are multiple disputed facts relating to ownership, including that Plaintiff purportedly had an LLC assign her

rights to the Audiovisual Copyright years after that LLC ceased to exist, and that
multiple other entities have asserted ownership over the film's copyright. At trial,
Plaintiff must overcome these disputed facts. *See* Section III.B.

Separate from ownership, Plaintiff must also prove she has a valid
*registration* from the Copyright Office.[1] While the Court heard some evidence
regarding copyright registration at summary judgment, Defendants relied only on
undisputed evidence, and can now rely on disputed evidence at trial. This includes
disputed evidence regarding the contributions of third-party Sarah Thorp and
Plaintiff's own representations to the Copyright Office. Plaintiff has taken contrary
positions on whether the elements in Thorp's story are protectable. To the extent
they are protectable, Plaintiff was required to disclaim them in her registration.
Instead, Plaintiff falsely told the Copyright Office that Thorp's contributions were
made as works for hire, which Plaintiff knew was untrue. As a result, Plaintiff
cannot prove her registration is valid, separately barring her claim. *See* Section IV.

The issues of ownership and registration both involve contested facts, and
Plaintiff has not met her burden on either. The Court should deny summary
judgment, and permit both parties to raise these issues with the jury.

## II.    LEGAL STANDARD

The Court ordered the parties to submit additional briefing regarding whether
summary judgment was appropriate as to Plaintiff's purported copyright ownership
in the *Emanuel* screenplay pursuant to Federal Rules of Civil Procedure 56(f). *See*
Dkt. 361. Under Rule 56, summary judgment is appropriate only when "there is no
genuine dispute as to any material fact and the [moving party] is entitled to a

---

[1] Copyright ownership and copyright registration are two different things. It
is well-established that copyright owners may validly own a copyright even in the
absence of a registration. *See, e.g., Alaska Stock v. Houghton Mifflin Harcourt
Pub.*, 747 F.3d 673, 678 (9th Cir. 2014) ("One can own a copyright without
registering."). However, copyright owners must obtain a valid registration to *assert*
a copyright claim. *See* 17 U.S.C. § 411(a).

judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the
Court must construe all facts and reasonable inferences in the light most favorable
to the non-movant. *See Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587
(1986). While the court may consider summary judgment on its own pursuant to
Rule 56(f), summary judgment is not proper where the non-moving party presents
evidence from which a reasonable jury could resolve the disputed issue of material
fact in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

**III.    THERE ARE FACTUAL DISPUTES REGARDING PLAINTIFF'S
OWNERSHIP OF THE AUDIOVISUAL COPYRIGHT**

To prevail on a copyright infringement claim, a plaintiff must prove to the
jury that "(1) he or she owns the copyright in the infringed work, and (2) the
defendant copied protected elements of the copyrighted work." *Williams v. Gaye*,
895 F.3d 1106, 1119 (9th Cir. 2018). The Ninth Circuit has long held that
"ownership of the copyright … is always a threshold question." *Lamps Plus v.
Seattle Lighting Fixture*, 345 F.3d 1140, 1144 (9th Cir. 2003). It is firmly
established that the plaintiff "bears the burden of proving copyright ownership."
*Fleischer Studios v. A.V.E.L.A.*, 654 F.3d 958, 962 (9th Cir. 2011). Plaintiff has
acknowledged this burden. *See* Dkt. 326-1 at 4 ( "Plaintiff bears the burden to
prove she has a valid copyright.").

Moreover, where, like here, the work was first published *more* than five years
before its registration, the Plaintiff does not benefit from a presumption of valid
copyright ownership, and she retains the burden to prove ownership. *See Art of
Living Found. v. Does 1-10*, 2012 WL 1565281, at *8 (N.D. Cal. May 1, 2012)
("Because the registration was obtained more than five years after the BWSM's first
publication, the registration certificate, on its own, does not constitute prima facie
evidence of valid copyright ownership."); 17 U.S.C. § 410(c).

A ruling that Plaintiff has established ownership of the Audiovisual
Copyright would improperly relieve her of a required element of copyright

infringement—an element that is hotly contested and where Plaintiff has no presumption.  First, while the Screenplay Agreement states that "ownership of the screenplay" is vested solely in Plaintiff (as opposed to Thorp), the allegedly infringed work in this lawsuit is *not* the screenplay, but instead is the film itself, a wholly distinct work.  As a result, the issue of whether Plaintiff owns the Screenplay Copyright is different from the issue of whether Plaintiff owns the Audiovisual Copyright, the only copyright asserted.  Second, as to the Audiovisual Copyright, there are disputed facts that the parties have not briefed and which raise important issues regarding ownership.

## A.    Plaintiff's Screenplay Ownership Does Not Establish Audiovisual Ownership

While the Court stated it is "partial to finding Gregorini has demonstrated a valid copyright in the *Emanuel* screenplay as a matter of law," Dkt. 361 at 1, ownership of the *screenplay* is not at issue.  This lawsuit is about the audiovisual work of the film itself—a different copyright altogether.  *See* Dkt. 25 (FAC ¶ 85 (suit relating to "U.S. Copyright Office Reg. No. PA0002213169.")).  The purported Audiovisual Copyright for *Emanuel* was issued in 2019 and bears registration number PA 2-213-169.  *See* Ex. B.  The purported Screenplay Copyright in the underlying screenplay was issued in 2011 with the registration number PAu 3-590-582.  *See* Ex. A.  Even if Plaintiff owned the 2011 Screenplay Copyright, that does not mean she owns the Audiovisual Copyright at issue (nor that she holds a valid *registration* for that copyright).  And Plaintiff and Thorp's Screenplay Agreement has nothing to do with whether Plaintiff owns the Audiovisual Copyright, as the film did not even exist at the time of that agreement.  *See Gable v. Nat'l Broad.*, 727 F.Supp.2d 815, 834 n.14 (C.D. Cal. 2010) ("[U]nder the Copyright Act, a movie … would fall into the category of an audiovisual work,

whereas a book or screenplay would be categorized as a literary work.").[2]

**B.    There Are Disputed Factual Issues Regarding Ownership of the Film**

Neither party moved for summary judgment as to the required element of Plaintiff's copyright ownership in the film; indeed, multiple disputed issues prevent such a finding.  For example, in her 2019 copyright registration application for the Audiovisual Copyright, Plaintiff identified an entity named Emanuel Film, LLC as the author, and Plaintiff as the copyright owner as the result of "Transfer statement: By assignment."  Ex. B.  During discovery, Plaintiff produced a Copyright Assignment also dated in 2019 purporting to transfer the copyrights in the Screenplay Copyright and Audiovisual Copyright from Emanuel Film, LLC to Plaintiff in her individual capacity.  Ex. C (JTX1022).  But Emanuel Film, LLC, which had multiple members and more than a dozen investors, *was dissolved in 2017*—two years prior to the alleged assignment—thus raising the issue of how a non-existent entity could transfer any copyrights.  Ex. D; *Blackthorne Publ'g v. Black*, 210 F.3d 381, at *2 (9th Cir. 2000) (plaintiffs did not obtain copyright ownership through assignment where assignor corporation was suspended at time of assignment).  Moreover, information about the Audiovisual Copyright—again, the only copyright at issue in this case—was left blank in the 2019 Copyright Assignment, raising additional factual questions that a jury must resolve.  Ex. C.

Nor are these the only issues placing ownership squarely in dispute.  After Plaintiff attempted to register the 2019 Audiovisual Copyright, two other parties, Rook Nest Entertainment and Tribeca Film, subsequently registered their *own* audiovisual copyright in the film—the same work Plaintiff now says she owns in

---

[2] The distinction between the Screenplay Copyright and the Audiovisual Copyright is important because Plaintiff alleges copying of audiovisual elements in the film, such as cinematography, actors, and props.  *See*, FAC ¶¶ 7, 10, 12, 77-80.  Notably, the Audiovisual Copyright expressly states it excludes "preexisting music" and applies to "all other *cinematographic* material."  Ex. B (emphasis added).

this lawsuit.  Ex. E (JTX2251) at 3.  In addition, Plaintiff has public documents

from as far back as 2014 indicating that, as a partner of Emanuel Film, LLC, she

only possessed "ownership of capital" totaling 24.27%.  *See* Ex. F (JTX2253).

These are precisely the kinds of unresolved disputed facts that must be addressed at

trial, where Plaintiff—who cannot receive the presumption of ownership under 17

U.S.C. § 410(c)—must prove that despite numerous ambiguities, she owns the

Audiovisual Copyright she claims was infringed.  *See Aurora World v. Ty Inc.*,

2011 WL 13176413, at *10 (C.D. Cal. Mar. 14, 2011) ("Copyright ownership and

authorship of a copyrighted work are questions of fact."); *Softkeeters v. Regal W.*,

2022 WL 17968835, at *5 (C.D. Cal. Dec. 22, 2022) (noting "several questions of

fact to determine copyright ownership").

       And while Plaintiff has repeatedly pointed to a recent copyright decision,

*Roblox v. WowWee Grp.*, 2024 WL 4051751, at *2 (N.D. Cal. Sept. 3, 2024), the

*Roblox* court held that summary judgment as to ownership was inappropriate and

belonged to the jury when there were disputed facts relating to who owned the

work, who authored it, whether the copyright involved an "audiovisual work," and

whether the copyright registration was consistent with these facts—all of which are

similarly disputed issues ripe for the jury in this case.

       In the current posture of summary judgment under Rule 56(f), these disputed

facts must be viewed in a light most favorable to *Defendants*, and the issue of

ownership must proceed to trial.

## IV.    VALIDITY OF THE ALLEGED COPYRIGHT REGISTRATION, SEPARATE FROM OWNERSHIP, SHOULD GO TO THE JURY

       Separate from the disputed facts about copyright ownership in the film

*Emanuel*, Defendants moved for summary judgment based on the argument that

Plaintiff's *registration* for the copyright in the film is invalid under *Unicolors v.*

*H&M*, 52 F.4th 1054, 1067 (9th Cir. 2022).  There is no dispute that, in addition to

proving copyright ownership, Plaintiff must also hold a valid registration for the

copyright in the allegedly infringed work to maintain a copyright infringement action. *See* 17 U.S.C. § 411(a).

Defendants should be permitted to show how Plaintiff falsely told the Copyright Office that all contributions to *Emanuel* were made as works for hire even though that was untrue, and that Plaintiff has taken inconsistent positions that Thorp's contributions are unprotectable for purposes of her copyright registration but are protectable to show substantial similarity between *Emanuel* and *Servant*.

## A.    There Are Numerous Disputed Facts Relevant to Registration

In their Motion for Summary Judgment, Defendants relied only on *undisputed* facts, as required.  And in denying Defendants' motion regarding Plaintiff's registration, the Court noted that it was "considering the evidence *in a light most favorable to Gregorini*."  Dkt. 337 at 6.  There are numerous disputed facts rendering summary judgment for Plaintiff inappropriate, particularly when (as the Court must) considering the evidence in a light most favorable to Defendants.

Upon summary judgment, the Court had to accept as true Plaintiff's contention that Thorp provided a "basic one-liner" during a "discussion that lasted less than five minutes" and that Thorp's idea was "not fixed in a tangible medium." Dkt. 337 at 5; Dkt. 235-1 at 4-5.  But now Defendants are entitled to show the jury evidence disputing this characterization.  In contemporaneous emails, Thorp stated she had written scripts based on her story.  *See* Ex. G (JTX17) (email chain between Plaintiff and Thorp discussing Thorp's script).  Thorp further confirmed this in her testimony, where she stated that she "had worked on [her story] for years" at the time she discussed her story with Plaintiff and that she had "several versions of the script written" by then.  Ex. H at 27:15-28:1, 148:2-14.  Plaintiff confirmed she knew about Thorp's script prior to producing *Emanuel*, telling a third party that Thorp "will be going out w/ her draft very soon" so Plaintiff needed to get her screenplay "out now."  Ex. I (JTX87).  And details about Thorp's pitch are disputed: Thorp testified she did not recall the length, Ex. H Tr. at 147:24-148:1,

and Plaintiff's testimony has ranged from less than five minutes to probably under five minutes to ten minutes, and possibly occurring in person, by phone, or both. Ex. J at 167:20-168:8; 169:15-17; 197:3-6.  Defendants are entitled to highlight Plaintiff's shifting testimony on this important topic.

Contrary to Plaintiff's assertion that Thorp shared a single, unwritten idea, there is evidence from both Thorp and Gregorini showing that Thorp's preexisting story included more than a dozen elements, all of which appear in *Emanuel*, and all of which are ripe to be explored at trial.  These include:

- A "character of a post-partum depressed woman who, we come to discover, is living in a delusional world in which she believes her dead child to still be alive and living with her." Ex. K (JTX10).

- The "woman who has post partum depression and kills her baby accidentally and can't cope, so makes up that the child is still alive" and the movie "opens w/ her moving into a small town, w/ her child and @ some point we find out that the child does not in fact exist." Ex. L (JTX1).

- The mother character "when later confronted with the reality of the situation (that there is, in fact, no child in her home), panics and accuses those around her of having hurt or taken her baby." Ex. K (JTX10).

- The film would be an "indie thriller" "about a woman who creates a delusion in which she believes her child is still alive" and the audience "go[es] on a journey with this woman as her delusion started breaking down." Ex. H at 23:20- 24:21.

- The mother character "comes to believe that someone kidnapped the child" and "she moved to a new town." *Id.* at 25:5-8.  She would later "suspect the people around her of taking her child." *Id.* at 26:6-12.

- When the baby died, it would have been an "infant" and "[v]ery, very small" and that the mother specifically creates "a fake baby." *Id.* at 37:17-19; 91:14-92:1.

- The mother character was "put in a mental hospital" where "her delusion, her comfort has come back to her even though she's locked up." *Id.* at 32:13-22.

Thorp's story also involved a scene where "people think there's a missing baby, she's panicking, the police get involved." *Id.* at 31:22-25.

- As to location, Thorp's story involved "somewhere anonymous" and "a small town." *Id.* at 34:6-9.
- As to the husband, he "com[es] back toward the end," and the third act is the wife "confronted with that information [about her delusion]" causing a "mental break" that "triggers into the third act kind of action." *Id.* at 34:25-35:15.
- The story takes place over a "short time frame" such as "a couple weeks, a month." *Id.* at 37:23-38:3.

Gregorini even admitted she was inspired by Thorp's story, telling Thorp "your idea did give birth to a script in my mind" and "your idea was such an inspiration to me writing my script." Ex. M (JTX7); Ex. N (JTX9). Notably, these private acknowledgements contradict Plaintiff's later discovery response, under oath, that she served as her own inspiration and conceived of *Emanuel*. Ex. O (JTX2047).

Thorp contributed the foundational story upon which *Emanuel* is based, and Thorp and Plaintiff executed an agreement making clear Thorp retained 100% of the copyright in that story while allowing Plaintiff a non-exclusive license to use it as embodied in *Emanuel*. Ex. P (JTX37) ¶ 3(b). Ignoring Thorp's ownership in her preexisting story, Plaintiff then misrepresented to the Copyright Office that the film was a work for hire (Ex. Q (JTX436) at 7), which she knew was untrue, as Thorp did not sign a work for hire agreement as Plaintiff wanted. Ex. R (JTX30) at 10.

While Plaintiff asserts that Thorp provided a single, unprotectable idea, the facts that Defendants could not present at summary judgment tell a different story. They are highly relevant, disputed facts about Plaintiff's misrepresentations to the Copyright Office, which render her registration invalid.

**B.    Disputed Facts Relating to Registration Frequently Go to a Jury**

Where there are facts in dispute relating to the accuracy of a party's copyright registration, courts in this Circuit have previously held that this issue belongs to the

DEFENDANTS' BRIEF REGARDING COPYRIGHT OWNERSHIP AND REGISTRATION

trier of fact.  *See Crew Knitwear v. U.S. Textile Printing*,  2009 WL 305526, at *3 (C.D. Cal. Feb. 6, 2009) ("Equally competing evidence has been presented, for example, as to whether the designs at issue were works made for hire, and therefore as to whether Defendants intended to defraud the Copyright Office by registering the subject designs as such. The credibility afforded to Baek's explanations of how the subject designs were created … is better weighed and determined by the trier of fact and not by the Court on … summary judgment."); *Hong v. Rec. Equip.*, 2022 WL 294096, at *3-4 & n. 1 (D. Idaho Feb. 1, 2022) (issue of material fact "whether [p]laintiff's copyright registration is valid" that "must be decided by a jury"); *Enterprise Mgmt. v. Construx Software Bldrs.*, 73 F.4th 1048, 1055 (issue of material fact whether registration certificate sufficiently registered the work).

Defendants could not rely on any facts in dispute in their original motion for summary judgment.  But they are now entitled to present them to the jury and must be permitted to introduce evidence regarding Plaintiff's misrepresentations to the Copyright Office and their impact on her registration.

## V.    CONCLUSION

In light of these disputed facts, the Court should not relieve Plaintiff of her burden to prove ownership of the copyright at issue in this lawsuit.  There are also numerous disputed facts relating to the separate issue of Plaintiff's copyright registration which Plaintiff will have to overcome to show she has a valid registration.  Summary judgment should not be entered, and both issues should proceed to the jury.

DATED: January 3, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL

WILMER CUTLER PICKERING HALE & DORR
BRITTANY B. AMADI
HEATH A. BROOKS

By:  ___/s/ Nicolas A. Jampol_____
        Nicolas A. Jampol

*Attorneys for Defendants*