UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA GREGORINI,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC. et al.,<br><br>    Defendants. | Case No. 2:20-cv-00406-SSS-JCx<br><br>**ORDER GRANTING SUMMARY JUDGMENT INDEPENDENT OF THE MOTION** |

Before the Court is parties' briefing regarding the validity of Plaintiff Francesca Gregorini's ("Gregorini's") copyright registration requested by the Court pursuant to Federal Rule of Civil Procedure 56 (f). [Dkt. 361]. Having considered the parties' arguments, the relevant legal authority, and the record in this case, the Court **GRANTS** summary judgment independent of the motion in favor of Gregorini.

## I.     BACKGROUND

This case arises from a dispute regarding the originality of the first three episodes of a television series, *Servant*. Gregorini alleges Defendants Apple Inc., M. Night Shyamalan, Blinding Edge Pictures, Inc., Uncle George Productions, Escape Artists LLC, Dolphin Black Productions, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch (collectively,

the "Defendants") infringed on the copyright of her movie, *The Truth About Emanuel* ("*Emanuel*"). [*See* Dkt. 25, First Amended Complaint].

### A. Procedural History

This Court denied Defendants' Motion for Summary Judgment on November 25, 2024. [Dkt. 337]. In that motion, Defendants challenged the validity of Gregorini's copyright. [*See id.* at 5–6]. The Court found no basis for concluding as a matter of law the copyright was invalid. [*Id.*]. The parties' motion in limine and pretrial filings indicated the validity of Gregorini's copyright would be a heavily contested issue at trial. [*See* Dkts. 269, 296, 271, 329]. The Court held this issue suitable to resolve as a Rule 56 (f) judgment independent of the motion and ordered parties to submit briefing related to the validity of Gregorini's copyright. [Dkt. 337].

### B. Relevant Facts

Gregorini's film, *Emanuel*, premiered in 2013. [Dkt. 239 at 27]. About four years prior, Gregorini and her longtime friend Sarah Thorp ("Thorp") discussed a potential collaboration over the phone. [Dkt. 286 ¶ 354, 355]. During this phone call, Thorp shared the idea of a "post-partum depressed woman" who "is living in a delusional world in which she believes her dead child to still be alive." [Dkt. 368-11 at 2]. Gregorini, inspired by Thorp's idea but without Thorp's knowledge or involvement, wrote the *Emanuel* screenplay in which a character is a post-partum mother who believes her dead child is still alive. [Dkt. 368-11 at 3; Dkt. 386-14 at 4, 5].

The Copyright Office approved Gregorini's copyright application for *Emanuel* on November 22, 2019. [Dkt. 368-17 at 9]. The day prior to approval, the Copyright Office emailed Gregorini inquiring if *Emanuel* was "work made for hire." [*Id.* at 6]. Gregorini confirmed *Emanuel* was made for hire and the employer was Emanuel Films LLC. [*Id.* at 8]. The Court discusses additional relevant facts below.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Rule 56 (f) permits a court to consider summary judgment *sua sponte* after (1) "identifying for the parties material facts that may not be genuinely in dispute" and (2) "giving notice and a reasonable time to respond." *See also Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1199–200 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016) ("So long as [a] party has been given reasonable notice that the sufficiency of his or her claim will be in issue, and has therefore had adequate time to develop the facts on which the litigant would depend to oppose summary judgment," *sua sponte* summary judgment is appropriate.") (citations omitted).

A court may grant summary judgment *sua sponte* in favor of a nonmoving party if, after drawing all reasonable inferences in favor of the party who opposes summary judgment, there are no genuine issues of material fact. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 654–55 (9th Cir. 2016). Like motioned summary judgment, the party opposing summary judgment must still carry its burden of "establish[ing] a genuine issue of material fact." *See id*.

## III. DISCUSSION

As an initial matter, the Court notes it has complied with the requirements of Rule 56 (f). The Court adequately identified the material facts that may not be genuinely in dispute and gave parties reasonable notice and time to respond. [*See* Dkt. 361 (identifying the issues the Court found may not genuinely be in dispute and giving parties 14 days to submit briefing on identified issues]. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 972 (9th Cir. 2010) (holding "at least

1  10 days" notice to parties of a judgment independent of the motion is required
2  by Rule 56).
3  　　　The Court now turns to the merits. At trial, as they did in their previous
4  motion for summary judgment, Defendants seek to argue Gregorini's copyright
5  registration in the *Emanuel* film is invalid, and her copyright suit is barred. [*See*
6  Dkt. 239 at 18; Dkt. 364 at 7–11]. A "party seeking to invalidate a copyright
7  registration," as Defendants intend, must show that (1) Gregorini's registration
8  application contained "inaccuracies," (2) Gregorini "knowingly" included the
9  inaccuracies, and (3) the inaccuracies were "material" to the Copyright Office's
10 decision. *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1067
11 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2583 (2023). In other words,
12 Defendants must show Gregorini "perpetuated fraud on the Copyright Office by
13 knowingly misrepresenting material facts." *Id*.
14 　　　To invalidate Gregorini's copyright registration, Defendants must first
15 demonstrate her application contained inaccuracies. *Id*. at 1065. In their motion
16 for summary judgment, Defendants asserted Thorp's story was a "preexisting
17 work" such that the Copyright Act required Gregorini to disclose it in her
18 copyright application. [Dkt. 239 at 18]. The Court was dubious the Copyright
19 Act mandated this of Gregorini because Thorp's contribution was seemingly a
20 mere idea and thus *Emanuel* was not a derivative work or compilation. [*See*
21 Dkt. 337 at 5–6]. Defendants most recent briefing on this issue indicates they
22 agree with the Court; Defendants have yet again not pointed to any section of
23 the Copyright Act that suggests Thorp's story was a "preexisting work" of
24 *Emanuel* such that Gregorini was required to disclose it. [*See* Dkt. 364 at 7–10].
25 *See* 17 U.S.C. § 409 (9) (requiring "identification of any preexisting work" only
26 "in the case of a compilation or derivative work").
27 　　　"[I]n order to qualify as a 'preexisting work,' the underlying work must
28 be copyrightable," and copyright law does not protect ideas, but only ideas

"translate[d] … into a fixed tangible expression." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1078–79 (9th Cir. 2000); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989). Here, there is no genuine dispute that Thorp shared only mere ideas with Gregorini. First, Defendants have stated it is undisputed Thorp "never shared any written expression of her idea" with Gregorini. [Dkt. 286 ¶ 357]. It is also undisputed the basis for Defendants' claims of invalid copyright registration regarding Thorp stems from a five-minute phone call between Thorp and Gregorini, where again, no "fixed tangible expression" was shared. [Dkt. 286 ¶ 355]. *See S.O.S, Inc.,* 886 F.2d at 1087.

Thorp and Gregorini are also in agreement, both then and now, that Thorp only provided an idea to Gregorini. Thorp refers to her story as an "idea" countless times in her deposition testimony. [*See* Dkt. 368-8 at 18 ("germ of the idea"); *id.* at 9 ("something that was an idea"); *id.* at 7–8 ("[t]he idea was not completely fully formed"); *see also* Dkt. 194-3 at 21, 28 (describing what she shared with Gregorini as a "very basic one-liner" and a "basic seed of a story")]. Even when Thorp was seemingly angriest at Gregorini, or right after Gregorini told Thorp she developed the *Emanuel* script incorporating Thorp's idea without Thorp's knowledge, Thorp refers to her story as "an idea." [Dkt. 368-11 at 2]. Gregorini also called Thorp's contributions "ideas" in emails between the two, as well as in more recent deposition testimony. [Dkt. 368-12 at 2 ("your idea"); Dkt. 368-13 at 3 ("your idea"); Dkt. 194, Ex. 1 at 19 (stating it was "an idea")].

Further, even considering the evidence in the light most favorable to Defendants, Thorp still only communicated to Gregorini the "one-liner" of a "post-partum depressed woman" who moves to a "small town," "believes her dead child to still be alive," and eventually is "confronted with the reality." [Dkt. 364 at 9; Dkt. 368 at Exs. K and L, Emails between Thorp and Gregorini]. The handful of additional details Defendants reference in their brief about

Thorp's idea are Thorp's musings about the story she was thinking of pursuing, not what Thorp told Gregorini prior to Gregorini's initial drafts of *Emanuel*. [*See* Dkt. 364 at 9, citing Dkt. 368-8 at 5–17, or Thorp's responses to questions about "what [Thorp] would [] say [her] story idea was" or what "the story that [Thorp] had planned to put together" was about during her deposition].

Even so, Thorp agrees her and Gregorini's stories were "different." [Dkt. 272-11 at 15]. Thorp agrees the reborn doll "was all Francesca" and there was "no doll in [her] story." [Dkt. 194-3 at 25; Dkt. 368-8 at 11]. Additionally, Thorp's ideas focused on the mother's perspective, so much so that the audience would not know the child was dead until the end, whereas *Emanuel* is principally about a young girl's participation in a mother's delusion such that the audience is aware of the delusion the entire time. [Dkt. 368-8 at 6; Dkt. 638-11 at 3]. At most, Thorp states, her idea and *Emanuel* had a "germ to them that was similar," but even so, she "didn't feel that [she] owned that germ of an idea." [Dkt. 272-11 at 18]. Taken together, there is only one reasonable conclusion: Thorp provided only an idea to Gregorini. Defendants' inability to point to any statutory or legal basis that required Gregorini to disclose Thorp's idea to the Copyright Office only confirms this conclusion.

Now, Defendants have turned to arguing the actual inaccuracy in Gregorini's copyright application was representing to the Copyright Office that *Emanuel* was made for hire.[1] [Dkt. 364 at 10]. Defendants contend Gregorini represented Thorp was an employee of Emanuel Film LLC even though Thorp did not sign a work for hire agreement. [*Id*.]. However, this misstates the evidence.

---

[1] The Court notes Defendants change of tack in their latest set of briefing regarding the alleged inaccuracy of Gregorini's copyright registration application.

-6-

|   |   |
|---|---|
| 1 | According to the Copyright Office's email to Gregorini, the Office had a |
| 2 | "question about the authorship statement on [Gregorini's] application," because |
| 3 | "[u]sually several people are involved in making a motion picture." such as |
| 4 | "producer, director, writer, camera operator, editor" or other "authors of the |
| 5 | work." [Dkt. 386-17 at 6]. When these people are "employed by a company or |
| 6 | another individual to make the motion picture," the Copyright Office explained |
| 7 | in the email, "the resulting work is a work made for hire." [*Id*.]. The Copyright |
| 8 | Office included a link to "Circular 30" which defines "works made for hire." |
| 9 | [*Id*.]. |
| 10 | Circular 30 states "[a] copyrightable work is 'made for hire' in two |
| 11 | situations": (1) "[w]hen it is created by an employee as part of the employee's |
| 12 | regular duties," and (2) "[w]hen a certain type of work is created as a result of |
| 13 | an express written agreement between the creator and a party specially ordering |
| 14 | or commissioning it." UNITED STATES COPYRIGHT OFFICE, |
| 15 | https://copyright.gov/circs/circ30.pdf (last visited January 7, 2025). Defendants |
| 16 | do not contend or point to any evidence showing Thorp was an employee of |
| 17 | Emanuel Films LLC or Gregorini, or that Thorp was a party specially ordered or |
| 18 | commissioned to produce work. [*See* Dkt. 364 at 10]. That is because Thorp |
| 19 | simply communicated an idea to Gregorini in a five-minute phone conversation. |
| 20 | Thus, it is not inaccurate for Gregorini to indicate *Emanuel* was work made for |
| 21 | hire, even though Thorp did not sign a work for hire agreement. |
| 22 | /// |
| 23 | /// |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

Again, Thorp at most, provided Gregorini with the inspiration for *Emanuel*. Without an underlying inaccuracy, Defendants cannot prove Gregorini's copyright registration is invalid as a matter of law. Thus, the Court **GRANTS** summary judgment regarding the validity of the copyright registration of *Emanuel*.[2]

**IT IS SO ORDERED**.

Dated: January 8, 2025

SUNSHINE S. SYKES
United States District Judge

---

[2] The Court declines to reach the issue of copyright ownership on this summary judgment independent of the motion. This order is limited to establishing Gregorini's valid copyright registration.

-8-