

1  NICOLAS A. JAMPOL (State Bar No. 244867)
   nicolasjampol@dwt.com
2  CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
   cydneyfreeman@dwt.com
3  MEENAKSHI KRISHNAN (*pro hac vice*)
   meenakshikrishnan@dwt.com
4  CARL MAZUREK (*pro hac vice*)
   carlmazurek@dwt.com
5  DAVIS WRIGHT TREMAINE LLP
   350 South Grand Avenue, 27th Floor
6  Los Angeles, California 90071-2566
   Tel.: (213) 633-6800; Fax: (213) 633-6899
7
   BRITTANY B. AMADI (*pro hac vice*)
8  brittany.amadi@wilmerhale.com
   HEATH A. BROOKS (*pro hac vice*)
9  heath.brooks@wilmerhale.com
   WILMER CUTLER PICKERING HALE & DORR
10 2100 Pennsylvania Ave., NW
   Washington, D.C. 20037
11 Tel.: (202) 663-6000; Fax: (202) 663-6363

12 Attorneys for Defendants

13

14 **UNITED STATES DISTRICT COURT**

15 **CENTRAL DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| 17  FRANCESCA GREGORINI, | Case No. 2:20-cv-00406-SSS-JC |
| 18                     Plaintiff, | **DEFENDANTS' RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW** |
| 19       vs. | |
| 20  APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an | |
| 21  individual, BLINDING EDGE PICTURES, INC., a Pennsylvania | |
| 22  corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania | |
| 23  corporate; ESCAPE ARTISTS LLC, a California limited liability company; | |
| 24  DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY | |
| 25  BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON | |
| 26  BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, | |
| 27  an individual; and DOES 1-10, inclusive, | |
| 28                     Defendants. | |

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(a), Defendants Apple Inc., M. Night Shyamalan, Blinding Edge Pictures, Inc., Uncle George Productions, Escape Artists LLC, Dolphin Black Productions, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, and Todd Black ("Defendants") respectfully renew their mid-trial JMOL motion and move for judgment as a matter of law on all claims asserted by Plaintiff Francesca Gregorini. As to Count 1 (infringement by Episodes 1-3 of *Servant*), Plaintiff has failed to present substantial evidence on the issues of ownership, registration, copying, access, or substantial similarity, and thus Defendants are entitled to judgment as a matter of law. Defendants are additionally entitled to judgment as a matter of law on Count 1 because no reasonable jury could find that Defendants had not met their burden to prove independent creation. Defendants are also entitled to judgment of noninfringement on Counts 2 and 3, because Plaintiff has abandoned those claims. Defendants are entitled to judgment as a matter of law on Count 4 (vicarious and contributory infringement), because there is no direct infringer, and separately because Plaintiff has failed to present substantial evidence of plot, financial benefit, supervision or control, knowledge or reason to know, or intentional inducement or material contribution. Finally, Defendants are entitled to judgment as a matter of law of no damages attributable to any profits other than those generated by Episodes 1-3 of *Servant*, because Plaintiff has failed to present substantial evidence of any non-speculative causal relationship between any infringement and those profits.

## II.    ARGUMENT

### I.    Legal Standard

Federal Rule of Civil Procedure 50(a) permits a party to move for judgment as a matter of law after the close of evidence but before the case is submitted to a jury. *Dupree v. Younger*, 598 U.S. 729, 731 (2023). "This standard largely mirrors the summary-judgment standard, the difference being that district courts

1

DEFENDANTS RULE 50(A) MOTION

1 | evaluate Rule 50(a) motions in light of the trial record rather than the discovery

2 | record." *Id.* at 731-32 (citation and internal quotation marks omitted). The Court

3 | must review all evidence in the record, drawing all reasonable inferences in favor of

4 | the nonmoving party, and may not make credibility determinations or weigh the

5 | evidence. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

6 | **II.   Defendants Are Entitled to Judgment as a Matter of Law on**

7 | **Plaintiff's Claim for Copyright Infringement Regarding *Servant***

8 | **Episodes 1 through 3 (Count 1).**

9 | Defendants are entitled to judgment as a matter of law of noninfringement by

10 | *Servant* episodes 1 through 3 for numerous independent reasons.

11 | **a.  Ownership**

12 | Ms. Gregorini failed to meet her burden to present legally sufficient evidence

13 | that she is the owner of the copyright in *The Truth About Emanuel*.

14 | First, she failed to meet her burden of proof to show a valid transfer of

15 | copyright to her from the prior owner of *The Truth About Emanuel*, Emanuel Film

16 | LLC.  There is no exhibit in evidence that is a transfer in writing signed by the

17 | transferor, as required by 17 U.S.C. § 204.  The ***only*** transfer agreement in evidence

18 | is an inoperative document dated in 2019, after Emanuel Film LLC dissolved and

19 | Ms. Gregorini no longer had authority to act on its behalf.  *See* Trial Ex. 1022.

20 | Uncorroborated oral testimony concerning an alleged written transfer agreement is

21 | insufficient to meet the requirement of 17 U.S.C. § 204 of an instrument of

22 | conveyance, or a note or memorandum of the transfer, that is in writing and signed

23 | by the owner of the rights conveyed or such owner's duly authorized agent.[1]  Nor

24 | can a party obtain valid copyright ownership through an assignment when the

25 | assignee does not exist at the time of the assignment.  *See, e.g.*, *Blackthorne Publ'g,*

26 | *Inc. v. Black*, 2010 F.3d 381 (9th Cir. 2000) (plaintiffs did not obtain copyright

27 |

28 |

2

1  ownership through assignment where assignor corporation was suspended at time of

2  assignment); *McLaughlin Land & Livestock Co. v. Bank of Am.*, 94 F.2d 491, 493

3  (9th Cir. 1939) (holding that a suspended corporation is "incapable of exercising

4  corporate powers for any business purposes").

5       Ms. Gregorini testified that this 2019 transfer agreement purportedly

6  "memorialized" an earlier agreement from before her LLC dissolved (*see* Trial Tr.

7  489:24-490:14; 620:7-12).  However, she offered no prior agreement into evidence,

8  and the 2019 transfer agreement does not memorialize, or even reference, a prior

9  agreement.  *See* Trial Ex. 1022.  Nor did Ms. Gregorini show that these supposed

10  agreements were "substantially contemporaneous," as this Circuit requires.  *See*

11  *Konigsberg Intern. Inc. v. Rice*, 16 F.3d 355, 357 & n.3 (9th Cir. 1994) (no valid

12  transfer when written agreement was made three-and-a-half years after an alleged

13  agreement and did not mention the alleged prior transfer).  And in any event, even if

14  her 2019 oral testimony concerning a supposed 2017 contract could be legally

15  sufficient (which it could not), that should have been stricken, because it was made

16  in the context of a waiver of the attorney-client privilege.  *See* Defendants' Brief

17  and Proffer, Dkt. 407 (Jan. 18, 2025), at 3-7 (explaining waiver and requesting

18  testimony be stricken); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th

19  Cir. 1992) ("The privilege which protects attorney-client communications may not

20  be used both as a sword and a shield.").

21       To the extent Ms. Gregorini is only a co-owner of the copyright in *Emanuel*

22  as a result of the invalid assignment, that too bars her from suit.  In the absence of a

23  valid transfer of copyright in 2017, Ms. Gregorini, as a co-owner of the copyright,

24  lacks standing to pursue this lawsuit without joining other co-owners.  *See Corbell*

25  *v. DeVito*, 777 F.3d 1058, 1065 (9th Cir. 2015) (reiterating that "when one co-

26  owner independently attempts to grant an exclusive license of a particular copyright

27  interest, that licensee … does not have standing to sue alleged third-party

28  infringers.")).

3

Second, Ms. Gregorini failed to meet her burden of proof to show that any portion of *The Truth About Emanuel* alleged to be copied is original to Ms. Gregorini, in whole or in part. Portions of *The Truth About Emanuel* alleged to have been copied were the work of Sarah Thorp, a former friend of Ms. Gregorini. *See* Tr. Ex. 1 (Ms. Gregorini memorializing Ms. Thorp's "idea, re woman who has post partum depression and kills her baby accidentally and can't cope, so makes up that the child is still alive [and] opens w/ her moving into a small town, w/ her child and @ some point we find out that the child does not in fact exist"); Tr. Ex. 11 ("your idea was such an inspiration to me writing my script"); *id.* ("your idea did give birth to a script in my mind"). These elements that Ms. Gregorini took from Ms. Thorp are the same elements that Ms. Gregorini now claims Defendants copied.

Portions of *The Truth About Emanuel* alleged to have been copied are facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, and discoveries that cannot be copyrighted. For example, while Ms. Gregorini testified that Defendants stole the idea of a reborn doll from her, she later admitted that real-world things cannot be copyrighted (Trial Tr. 614:4-6), that she does not own the idea of a reborn doll (*id.* 618:2-5), that she does not own the idea of a reborn doll as a coping mechanism for having lost a child (*id.* 618:6-10), and that reborn dolls existed before *The Truth About Emanuel* (*id.* 614:7-12). Ms. Gregorini also confirmed that there are news articles and documentaries and blogs about reborn dolls, including a documentary on reborn dolls that that she sent a friend in 2010 before making *The Truth About Emanuel*. *See id.* 614:21-24; Tr. Ex. 394A. In addition, Ms. Gregorini conceded that that "a delusional mother who believes her dead baby is still alive" is an idea that is not protectable. *See* Trial Tr. 541:12-20 ("Q. And that idea of a movie about a delusional mother who believes her dead baby is still alive, that's not your original idea, is it? A. Um, it is – it is ***my idea***, but it is, as I talked about in my direct, um, came from a conversation that I had with

4

my friend Sarah Thorp…"); Trial Tr. 712:4-6 (Plaintiff's expert confirming "without the doll, there is no delusion").

### b. Registration

Plaintiff Francesca Gregorini failed to meet her burden to present legally sufficient evidence that she has a valid registration for *The Truth About Emanuel*, which is a prerequisite for action under 17 U.S.C. § 411(a).  U.S. Copyright Office Registration No. PA0002213169 is invalid because it was obtained based on the misrepresentation that it was a work made for hire. *See* Dkt. 180 at 10; Dkt. 385.

### c. Direct Copying

Ms. Gregorini failed to meet her burden to present legally sufficient evidence that any defendant actually copied *The Truth About Emanuel*.  She presented no evidence of actual copying by any Defendant.  To the contrary, every Defendant witness offered unrebutted, uncontradicted testimony that they did not copy *Emanuel*.  Trial Tr. 393:6-8 (Basgallop) ("Q. Did you copy anything, anything at all, from *The Truth About Emanuel*? A. No, I did not."); Trial Tr. 902:24-25 (Latham) ("I knew there was no copying.  None of us had seen the movie."); Trial Tr. 807:20-22 (Aronson) ("Q. Did you or anyone else at Apple copy anything from The Truth About Emanuel and put it into Servant? A. No, we did not."); [Rough] Trial Tr. 39:11-14 (Rajan) ("We would never ever copy anyone.  Never."); [Rough] Trial Tr. 184:22-25 (Shyamalan) ("Q. [W]as anything, anything at all, copied from The Truth About Emanuel and incorporated into Servant?  A. Absolutely not. I would have never allowed it."); [Rough] Trial Tr. 273:7 ("We copied nothing."); [Rough] Trial Tr. 283:1-3 (Tisch) ("Q. Did you copy anything from Emanuel and put it into Servant? A. I did not.").

### d. Access

Plaintiff failed to meet her burden to present legally sufficient evidence that any defendant had access to *Emanuel*.  *Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir. 2016).  Where, like here, there is no direct evidence of access, Plaintiff must

5

DEFENDANTS RULE 50(A) MOTION

1    circumstantially prove access either by "(1) establishing a chain of events" linking

2    *Emanuel* and Defendants' access, or "(2) showing that [*Emanuel*] has been widely

3    disseminated." Plaintiff failed to present substantial evidence of either.

4         *First*, none of Plaintiff's scattershot "chain of events" theories has a legally

5    sufficient evidentiary basis. Plaintiff first theorized that Mr. Basgallop reviewed

6    her purported director submission pitched by Plaintiff's then-agent, Olivia

7    Blaustein, for an episode of *Berlin Station* while Mr. Basgallop was working on the

8    show. But Plaintiff offered **no** evidence that she was in fact submitted as a director

9    for *Berlin Station* or that Mr. Basgallop received any such submission (or even

10   reviewed director submissions in his role on that show in the first place). Trial Tr.

11   388:15-390:4, 861:15-19, 1255:21-1257:11. Nor can Plaintiff prove any relevant

12   access when her purported director submission occurred no earlier than March

13   2017, long after Mr. Basgallop had completed the scripts for the first episodes of

14   *Servant*, including the material alleged to have been copied. Trial Tr. 388:15-390:4,

15   1255:21-1257:11 & Ex. 49.

16        Next, Plaintiff speculated that while at their previous posts at Sony, Apple

17   TV+ executives Zack Van Amburg, Jamie Erlicht, and Max Aronson somehow

18   accessed *Emanuel* via her director submission for the show *Electric Dreams*. Trial

19   Tr. 835:23-838:20. At the outset, Mr. Aronson testified—unrebutted and

20   uncontradicted—that he did not watch *Emanuel*, and that Mr. Van Amburg or Mr.

21   Erlicht did not review materials for potential directors at Sony. Trial Tr. 800:5-8,

22   803:16-22. But regardless, Ms. Gregorini's director submission for that show

23   happened in January 2017 (and directors had not even been selected as of March

24   2017), again, long after Mr. Basgallop had written the aspects of *Servant* alleged to

25   have been copied. Trial Tr. 863-8:23 & Ex. 1181. Also, Plaintiff adduced no

26   evidence that Mr. Van Amburg, Mr. Erlicht, or Mr. Aronson had ever seen—much

27   less contributed to creatively—*Servant* scripts before first receiving Mr. Basgallop's

28   scripts for Episodes 1 and 2 in October 2017 (and the script for Episode 3 in

                                             6

January 2018), by which time the scripts already contained all of the allegedly infringing elements.

Finally, Plaintiff set forth two hypotheses related to *Servant*: that (1) Mr. Aronson reviewed *Emanuel* after receiving a link to her film in March 2018 and (2) Ms. Gregorini's resume accompanying her July 2018 director submission to *Servant* referenced (though did not link to) *Emanuel*.  Trial Tr. 840:7-16.  Again, unrebutted testimony from Mr. Aronson, Mr. Rajan, and Mr. Shyamalan establish that *Emanuel* was not viewed in connection with either of these communications. Trial Tr. 802:3-803:22 & Ex. 52.  And again, Ms. Gregorini's timing does not work: both of those alleged access points long post-date the completion of the scripts for *Servant* that include all allegedly copied material.[2]

*Second*, Plaintiff has not shown a legally sufficient evidentiary basis for her access claim based on widespread dissemination.  Widespread dissemination requires a "substantial" degree of success or notoriety.  *Cope v. Warner Records*, No. 2:22-cv-01384-SSS-ASx, 2023 WL 11827959, at *4 (C.D. Cal. June 5, 2023).  Evidence of widespread dissemination largely "centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums."  *Loomis*, 836 F.3d at 997.

The undisputed evidence showed meager dissemination of *Emanuel*.  The film was released at a scattering of film festivals.  Trial Tr. 390:9-18, 624:25-626:4, 627:5-7, 856:7-18, 861:1-14, 917:11-13, 1014:23-24.  Even though Plaintiff ***paid*** to have her film released in a handful of theaters (a process known as "four-walling"), Trial Tr. 824:11-19, 856:19-857:11 & Ex. 1150, the film nonetheless performed

---

[2] To the extent Plaintiff suggests any additional access theories based on Jimmi Simpson's casting submission for *Servant*, undisputed testimony establishes both that Defendants did not access *Emanuel* in connection with that submission and that any submission from March 2018 long post-dated the scripts for Episodes 1-3.  Trial Tr. 960:2-961:22 & Ex. 1170.

7

poorly at the box office, with less than $4,000 in ticket sales.  Trial Tr. 824:20-24, 857:24-858:4 & Ex. 2044.  Plaintiff presented no evidence as to when *Emanuel* was available on various video-on-demand or streaming services, or whether they were even available on those platforms before the aspects of *Servant* alleged to have been copied were complete.  Trial Tr. 858:9-18.  Nor did Plaintiff present any information as to when *Emanuel* was viewed or seen on any of those platforms.  Trial Tr. 860:2-8.[3]  Courts "have consistently held that the mere availability of a work online is insufficient to establish widespread dissemination," *Cope*, 2023 WL 11827959 at *4 (collecting cases); *see also Lois v. Levin*, 2022 WL 4351968 at *3 (C.D. Cal. Sept. 16, 2022) (same).  Tellingly, despite attending film festivals, including Sundance; reviewing entertainment industry publications; using streaming services; and keeping her "finger on the pulse of the entertainment industry," Plaintiff's own access expert (a self-described "experienced expert in the entertainment business") had never even heard of, let alone seen, *Emanuel* prior to this lawsuit.  Trial Tr. 853:18-855:7. This is insufficient evidence to establish widespread dissemination as a matter of law.

### e.  Substantial Similarity

Plaintiff failed to meet her burden to present legally sufficient evidence that *The Truth About Emanuel* and *Servant* Episodes 1 through 3 of Season 1 are substantially similar on multiple bases.

### i.  Extrinsic Test and Total Concept

There is legally insufficient evidence to show that, once any unprotected elements are filtered out, the protected elements of *The Truth About Emanuel* are substantially similar to *Servant* Episodes 1 through 3 of Season 1. Plaintiff presented **no** element of *The Truth About Emanuel* that was both sufficiently

---

[3] Plaintiff made an unsubstantiated claimed that her film was pirated, but presented no evidence as to the volume or extent of any purported piracy.  Trial Tr. 860:9-22.

original to warrant protection, and actually present in Episodes 1 through 3 of Season 1 of *Servant*.  There is legally insufficient evidence to show that the total concept and feel of *The Truth About Emanuel* and *Servant* Episodes 1 through 3 of Season 1 are substantially similar.

### ii.  Selection and Arrangement

Plaintiff did not present a legally sufficient selection and arrangement theory under *Skidmore v. Led Zepplin*, 952 F.3d 1051 (9th Cir.) (en banc). Under *Skidmore*, to articulate a selection and arrangement theory, a plaintiff must argue that claimed elements "cohere to form a holistic . . . design." *Id.*at 1075. Where the plaintiff's expert refers to the claimed elements as "***categories*** of similarities," this confirms that the elements are separate. *Id.* (emphasis added). Here, that is precisely what Plaintiff's expert did: repeatedly, Plaintiff's expert conceded that his analysis was relying on "***categories*** of elements." Trial Tr. at 710:14-17, 743:5-20; 764:10-14. Just as in *Skidmore*, "labeling them a 'combination' of unprotectable elements does not convert the argument into a selection and arrangement case." *Skidmore*, 952 F.3d at 1075.

Moreover, there is legally insufficient evidence to show that *The Truth About Emanuel* contains a selection and arrangement of otherwise unprotected elements that is original enough to be protected or that *Servant* Episodes 1 through 3 of Season 1 contain the same selection and arrangement.  The Ninth Circuit has held that "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).  "[R]andom similarities scattered throughout the works" are insufficient.  *See Litchfield v. Spielberg*, 73 F.2d 1352, 1356 (9th Cir. 1984).

Here, Plaintiff has not alleged any elements numerous enough in their selection and arrangement to constitute an original work of authorship.  Plaintiff's

9

expert failed to provide *any* testimony regarding how supposedly copied elements

from *The Truth About Emanuel* and from *Servant* are selected and arranged in a

similar manner. The works themselves confirm that Plaintiff's claimed similarities,

all of which are commonplace and unprotectable, all appear at different times, with

different characters, in different scenes.  *Compare* Ex. 1000 (*The Truth About*

*Emanuel* at 1:16:38, unnamed father character explains why Linda has reborn doll

to Emanuel and her family) *with* Ex. 1003 (*Servant* at 00:15:56, Sean explains

reason for doll to Leanne); *compare* Ex. 1000 (*The Truth About Emanuel* at

1:11:04, baby appears "alive" in underwater dream sequence when Emanuel sees

her dead mother) *with* Ex. 1003 (*Servant* at 0:34:15, reborn doll has turned into real

baby).  And when confronted with these elements, Plaintiff's expert confirmed there

were stark differences relating to the major elements that Plaintiff claims were

infringed.  *See, e.g.*, Trial Tr. 727:2-21 (father in *Emanuel* is "in one scene in the

movie" and "near the end of *The Truth About Emanuel*"; by comparison, father in

*Servant* is "a main character of *Servant*" and is "prominent"); Trial Tr. 745:3-12

(admitting there are "obvious and unarguable distinctions between the works in this

case," and that "[s]ome of those differences are important").  Plaintiff's selection-

and-arrangement theory is nothing more than a mismatch of randomly selected

elements scattered throughout the works, all of which are expressed very differently

in *The Truth About Emanuel* and *Servant*.

### f.  Independent Creation

Independent creation is a "complete defense to copyright infringement."

*Rentmeester v. Nike*, 883 F.3d 1111, 1117 (9th Cir. 2018). In 2005—almost a

decade before *Emanuel* was released—creator Mr. Basgallop began writing much

of what was to become *Servant*. *See, e.g.*, Trial Tr. 203:4-5, 203:22-204:3. With the

sole exception of the factual concept of a reborn doll, the uncontroverted testimony

showed that all protectable elements asserted to be copied from *The Truth About*

*Emanuel*, including characters, plot points, theme, and tone, were independently

10

created by Mr. Basgallop prior to the release of *Emanuel* in 2013. *See, e.g.*, Exs. 146, 149, 172, 1191, 2000, 2001, 2002, 2004, 2005, 2006, 2007, 2008, 2011, 2035, 2149; Trial Tr. 292:5-323:9. Reborn dolls are an unprotectable factual concept not created by the Plaintiff, and unprotectable by copyright. *See, e.g.*, Trial Tr. 701:23-702:6 (Plaintiff's expert conceding that reborn dolls "are a real thing in the real world" and "existed in the real world before *The Truth About Emanuel*"; *Benay v. Warner Bros. Ent.*, 607 F.3d 620, 625 (9th Cir. 2010) ("Historical facts are also unprotected by copyright law.").

As for the alleged cinematographic similarities, undisputed testimony shows that numerous individuals involved in production—from Mr. Shyamalan, who storyboarded and directed Episode 1 (Exs. 250, 2013), to Daniel Sackheim, who directed Episodes 2-3, to individuals in "multiple production departments"—collaborated to bring the "pages of" Episodes 1-3 "to life." Trial Tr. 1001:12-18. In fact, Mr. Shyamalan previously used several of the allegedly infringing camera shots (like mirror shots, facial close-ups, and through-the-window angles) and elements (like staircases) in his films predating *Emanuel* by several years. Trial Tr. 1127:9-1129:1, 1122:8-22, 1152:2-1154:5.

### g. No Identified Direct Infringer

Plaintiff has failed to identify any specific direct copyright infringer responsible for the combination of plot, character, thematic, and visual elements that form the basis for her claim of substantial similarity. Instead, Plaintiff generally accused all Defendants of both direct and indirect infringement. Absent a least one single, identified, direct infringer, there can be no finding of infringement.

### III. Defendants Are Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Copyright Infringement Regarding Early *Servant* Scripts (Count 2).

As to Plaintiff's Second Claim for Relief for Copyright Infringement Regarding Early *Servant* Scripts, Defendants Tony Basgallop and Jason Blumenthal

11

are entitled to judgment of noninfringement because Ms. Gregorini has expressly abandoned this claim and not presented legally sufficient evidence to support it. Plaintiff offered no evidence that these scripts contain any allegedly infringing elements that are not in the series. *Compare* Ex. 2006 (5/17/2007 Script: Practically Perfect, Episodes 1) *with* Ex. 1003 (*Servant* Episode 1); *compare* Ex. 2007 (5/24/2007 Script: Practically Perfect, Episode 2) *with* Ex. 1004 (*Servant* Episode 2). Furthermore, Plaintiff alleges only that the *Servant* series infringed *The Truth About Emanuel* – not Mr. Basgallop's Early *Servant* scripts. Trial Tr. 152:15-18 (Gregorini) ("Q. Ms. Gregorini, you've talked about how you allege that *Servant* first three episodes infringe your film. Is that right? A. Correct."); Trial Tr. 153:10-14 (Gregorini) ("Q. Your counsel's representation that Episodes 1 through 3 of *Servant* infringe your copyright in Emanuel. Is that right? A. Yes."). Other fact witnesses reaffirmed that Plaintiff abandoned her infringement claims as to these Early Scripts. Trial Tr. 391:13-15 (Basgallop) ("Q. Now, you understand that the allegation – the allegations in this case is that Episodes 1, 2, and 3 of *Servant* copy from Ms. Gregorini's 2013 film *The Truth Abou Emanuel*? A. I understand that.); Trial Tr. 792:6-9 (Aronson) ("Q. Now, are you aware in this case that the allegation is that Episodes 1, 2, and 3 of Servant infringe a 2013 film called The Truth About Emanuel? A. I am.").

### IV.    Defendants Are Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Copyright Infringement Regarding Later *Servant* Scripts (Count 3).

As to Plaintiff's Third Claim for Relief for Copyright Infringement Regarding Later *Servant* Scripts, Defendants M. Night Shyamalan, Blinding Edge Pictures, Inc., Uncle George Productions, Escape Artists, Inc., Dolphin Black Productions, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch are entitled to judgment of noninfringement because Ms. Gregorini has expressly abandoned this claim and not presented legally sufficient evidence to

12

support it.  Plaintiff's substantial similarity expert offered no evidence of any specific or unique similarity between Mr. Basgallop's Later *Servant* scripts and *The Truth About Emanuel*.  Trial Tr.  714:19-23 ("Practically Perfect…is fundamentally different from the core expressive elements in Servant).  Furthermore, Plaintiff alleges only that the *Servant* series infringed – not Mr. Basgallop's Later *Servant* scripts.  Trial Tr. 152:15-18 (Gregorini) ("Q. Ms. Gregorini, you've talked about how you allege that *Servant* first three episodes infringe your film. Is that right? A. Correct."); Trial Tr. 153:10-14 (Gregorini) ("Q. Your counsel's representation that Episodes 1 through 3 of *Servant* infringe your copyright in Emanuel. Is that right? A. Yes.").

V.      **Defendants Are Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Contributory and Vicarious Copyright Infringement (Count 4).**

As to Plaintiff's Fourth Claim for Relief for Contributory and Vicarious Copyright Infringement, all Defendants are entitled to judgment of noninfringement for the following reasons:

**a.  Direct Infringement**

For the reasons stated above, Plaintiff failed to present legally sufficient evidence of direct infringement of her claimed copyright, thus precluding liability for vicarious or contributory infringement.

Moreover, Plaintiff failed to identify any specific direct copyright infringer responsible for the combination of plot, character, thematic, and visual elements that form the basis for her claim of substantial similarity, thus precluding liability for vicarious or contributory infringement by anyone else.

**b.  Vicarious Infringement**

**i.  Direct Financial Benefit**

Plaintiff failed to present legally sufficient evidence that any defendant benefitted financially from the infringing activity of any identified direct infringer.

13

### ii.  Right and Ability to Supervise or Control

Ms. Gregorini has failed to present legally sufficient evidence that any defendant had the right to supervise or control any infringing activity of any direct infringer.

### c.  Contributory Infringement

#### i.  Knowledge or Reason to Know of Infringing Activity

Ms. Gregorini has failed to present legally sufficient evidence that any defendant knew or had reason to know of the infringing activity of any direct infringer.

#### ii.  Intentionally Induced or Materially Contributed

Plaintiff Francesca Gregorini has failed to present legally sufficient evidence that any defendant intentionally induced or materially contributed to any direct infringer's activity.

## VI.  Damages

As to Plaintiff's claim for damages, all Defendants are entitled to judgment of no damages based on any profits from Episodes 4 through 40 of *Servant*, because Plaintiff Francesca Gregorini has failed to meet her burden to show a non-speculative and factual causal relationship between any infringement and profits generated from those noninfringing episodes.  Moreover, there was not substantial evidence to support any profit awards other than those put forth by Defendants' expert, Ms. Trexler.

## III.  CONCLUSION

For these reasons, Defendants respectfully request entry of judgment as a matter of law in their favor on all counts.

14

DEFENDANTS RULE 50(A) MOTION

DATED: January 23, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
MEENAKSHI KRISHNAN
CARL MAZUREK


WILMER CUTLER PICKERING HALE & DORR
BRITTANY B. AMADI
HEATH A. BROOKS

By:    */s/ Brittany Amadi*


*Attorneys for Defendants*

15

DEFENDANTS RULE 50(A) MOTION