UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 2:20-cv-00406-SSS-JCx | Date | April 30, 2025 |
|---|---|---|---|
| Title | *Francesca Gregorini v. Apple Inc. et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL AND JUDGMENT AS A MATTER OF LAW [DKT. 450]**

Before the Court is a Motion for a New Trial and Judgment as a Matter of Law ("Motion") filed by Plaintiff Francesca Gregorini. [Dkt. 450]. Defendants Apple Inc., M. Night Shyamalan, Blinding Edge Pictures, Inc., Uncle George Productions, Escape Artists LLC, Dolphin Black Productions, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch (collectively, the "Defendants") oppose. [Dkt. 452]. Having considered the parties' arguments, the relevant legal authority, and the record in this case, the Court **DENIES** the Motion. [Dkt. 450].

## I.  BACKGROUND

This case arises out Defendants' alleged infringement of Gregorini's movie, *The Truth About Emanuel* ("*Emanuel*") in the making of their television series, *Servant*. Following a two-week trial, the jury returned a defense verdict, finding no Defendant had access to Gregorini's film. [*See* Dkt. 449].

Gregorini sought to prove Defendants' access by, in part, demonstrating *Emanuel*'s "widespread dissemination." [*See* Motion at 9]. Using the Ninth Circuit Model Instruction, the Court instructed the jury that "[a]ccess may be shown by…the plaintiff's work being widely disseminated." [Dkt. 421 at 40]. Prior to trial, Gregorini proposed adding a definition of "widely disseminated" to the instruction that stated the jury "may consider whether" *Emanuel* was "commercially successful" or "attained notoriety in or saturated a relevant market in which the plaintiff and defendant participated." [*See* Motion at 10]. The Court denied Gregorini's addition, opting for the Model Instruction.

Additionally, at 3:11 p.m. on the first day of deliberation, the jury submitted a note to the Court asking for a definition of widely disseminated. [Dkt. 426]. While the Court was working to craft a response to the question, the jury returned its verdict at 4:52 p.m. [Dkt. 428]. Now, Gregorini moves for a new trial and judgment as a matter of law on this record. [Dkt. 450]. The Court discusses additional relevant facts below.

## II.   LEGAL STANDARDS

### A.   New Trial

Federal Rule of Civil Procedure 59(a) authorizes new trials "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A court generally "must uphold a jury verdict if it is supported by substantial evidence." *Guy v. City of San Diego*, 608 F.3d 582, 585 (9th Cir. 2010). Substantial evidence is evidence "adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Id*. (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

However, a court may grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent . . . a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) (quoting *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1452 (9th Cir. 1998)). In considering a Rule 59(a) motion, the court is "not required to view the trial evidence in the light most favorable to the verdict." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). Instead, the court "can weigh the evidence and assess the credibility of the witnesses." *Id*.

### B.   Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(b), courts may enter judgment as a matter of law after a jury trial if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." See Fed. R. Civ. P. 50(a)(1). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006)). In considering a Rule 50(b) motion, unlike a Rule 59(a) motion, the court may not weigh the evidence or make credibility determinations. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Josephs*, 443 F.3d at 1062.

## III.   DISCUSSION

### A.   New Trial

Gregorini moves for a new trial on the grounds that (1) the verdict is contrary to the clear weight of evidence and (2) the Court failed to give adequate instruction to the jury. [Motion at 12–13]. The Court finds neither of these grounds warrant a new trial.

#### 1.   Weight of Evidence

Substantial evidence supports the jury's verdict that no Defendant had access to *Emanuel*. See *Guy*, 608 F.3d at 585. Gregorini sought to prove Defendants' access to her work through "widespread dissemination" and "chain-of-events" theories. [Motion 19–21]. See *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016). There was adequate evidentiary support to deny a finding of access on both theories.

##### i. Widespread Dissemination

At trial, substantial evidence indicated *Emanuel* was not widely disseminated. As the Court has previously held, *Emanuel* may be widely disseminated if it attained substantial commercial success or notoriety in the relevant market. [Dkt. 337 at 7–9]. See *Loomis*, 836 F.3d at 997 (holding "[t]he evidence required to show widespread dissemination will vary from case to case,"

though in "most cases" commercial success will be determinative); *Cope v. Warner Recs., Inc.*, No. 2:22-CV-01384-SSS-ASx, 2023 WL 11827959, at *4 (C.D. Cal. June 5, 2023) (holding Ninth Circuit precedent indicates "a work's degree of commercial success or notoriety must be 'substantial'" to meet the threshold of widespread dissemination).

First, Gregorini conceded in her opening statement that *Emanuel* was not a commercial success and "did not make money." [Dkt. 437, Trial Transcript Day Two ("Trial Tr. 2") at 127:7-12].  Indeed, throughout trial, Defendants repeatedly emphasized *Emanuel* made only $4,000 in ticket sales.  [*See* Dkt. 440 Trial Tr. Day Five at 824:20-24, 857:24-858:4; Trial Tr. 2 at 160:4-22, 168:5-10].  Thus, adequate evidence supports a jury's conclusion *Emanuel* was not commercially successful.

Second, there was substantial evidence *Emanuel* did not attain sufficient notoriety.  Gregorini argues, both then and now, that *Emanuel*'s premiere at Sundance Film Festival, showings at dozens of other festivals, and coverage in mainstay entertainment reporters shows the widespread dissemination of her work and the reasonable possibility Defendants had access to it.  [Motion at 18–19].  However, Gregorini's own expert on access, Ellen Pittleman, never saw or heard of *Emanuel* prior to this litigation.  [Trial Tr. 2 at 854:24-855:7].  Pittleman even testified to attending film festivals, including Sundance, reading the entertainment publications *Emanuel* was featured in, and generally ""keep[ing] [her] finger on the pulse of the entertainment industry."  [*Id.* at 853:18-854:20].  And yet, even she was unaware of *Emanuel*.

In fact, Gregorini was the only witness at trial who testified to seeing *Emanuel* prior to this litigation, a point Defendants heavily emphasized in their closing argument.  [Dkt. 442 Trial Transcript Day Seven at 1540:23-1542:11].  If the basis for *Emanuel*'s notoriety did not extend to Gregorini's own expert or any other trial witness, it is reasonable for the jury to conclude *Emanuel* may not have been sufficiently acclaimed to establish widespread dissemination and the Defendants' access.

### ii.  Chain of Events

Likewise, substantial evidence supports the conclusion there was no "chain of events" linking *Emanuel* and the Defendants' access.  *See Loomis*, 836 F.3d at 995.  To establish a chain of events, Gregorini had to demonstrate Defendants'

"reasonable opportunity to view" *Emanuel* "before" *Servant* was "created." [Dkt. 421, Final Jury Instructions, at 40].

At trial, Gregorini showed Defendant and Apple Executive Max Aronson received an email with a link to *Emanuel* in March of 2018. [Trial Tr. 2 at 802:3-805:5]. However, Aronson obtained the last of the allegedly infringing episode scripts of *Servant* by January 2018. [*Id*. at 796:13-797:23]. Those scripts already contained a reborn doll and a delusional mother, or the central elements alleged to be infringed. [*See id*.]. Thus, a jury could reasonably conclude Aronson's access to *Emanuel* happened *after Servant* was created, and a "chain of events" was not established.

Accordingly, the jury's verdict finding no Defendant had access to *Emanuel* is supported by substantial evidence.

### 2. Jury Instruction

Gregorini contends the Court's failure to instruct the jury on her theory of access and respond to the jury's question about widespread dissemination was clear error requiring a new trial. [Motion at 13–19]. Specifically, Gregorini argues the Court should have instructed the jury that "widespread dissemination does not require commercial success" and can be "based on notoriety and saturation in the entertainment industry." [*Id*. at 13–14]. Gregorini likewise argues the jurors' question underscored their need for clarity and the Court's response. [*Id*. at 15–17]. The Court disagrees.

If a district court has given "erroneous jury instructions" or did not "give adequate instructions," a new trial may be warranted. *Crowley v. Epicept Corp*., 883 F.3d 739, 747–48 (9th Cir. 2018). Jury instructions "must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005). However, if the "error in the jury instruction is harmless," the jury verdict "does not warrant reversal." *Id*. Similarly, "it is reversible error for a trial judge to give an answer to a jury's question that is misleading, unresponsive, or legally incorrect." *United States v. Anekwu*, 695 F.3d 967, 986 (9th Cir. 2012).

First and foremost, even if the Court erred as Gregorini argues, it was clearly harmless. As discussed above, substantial evidence supported the jury's verdict that no Defendant had access. Particularly, there was substantial evidence showing that *Emanuel* was *neither* commercially successful *nor* sufficiently notable in the

relevant market to establish widespread dissemination. So even if the jury received the exact instructions and note response Gregorini requested, it is "more probable than not that the jury would have reached the same verdict." *See Dang*, 422 F.3d at 811 (9th Cir. 2005).

What is more and equally dispositive here: the Court did not err in its jury instructions or its attempt to respond to the jury note. The Court provided the jury with the Ninth Circuit Model Instruction on "Copyright Infringement—Copying—Access Defined." [*See* Dkt. 421 at 40]. It included instruction on Gregorini's two theories of access: chain of events and widespread dissemination. [*Id*.]. *See Dang*, 422 F.2d at 805 (holding jury instructions must include a party's "theory of the case" if supported by law and evidence). Gregorini argues the instruction should have clarified "widespread dissemination does not require commercial success," [Motion at 13], but nowhere did the instructions indicate commercial success was required. [*See* Dkt. 421 at 40]. It is true Defendants argued *Emanuel*'s lack of commercial success meant few people saw the film at trial, but Gregorini was free to, and did in fact, rebut this argument, arguing *Emanuel*'s notoriety established its widespread dissemination. [*See* Trial Tr. 2 at 127:7-12, 160:4-16; Dkt. 442 Trial Transcript Day Seven at 1488:16-1490:20].

The instruction was an accurate statement of the law. *See Loomis,* 836 F.3d at 995 ("Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated."). Further instruction, as Gregorini requested, would have potentially misled the jury: while commercial success is not required, it is also dispositive in "most cases." *See id.* at 997. Additionally, because "[t]he evidence required to show widespread dissemination will vary from case to case," it is arguably not the Court's role to tell the jury what evidence to consider in deciding widespread dissemination. *See id*.

With the foregoing in mind, the Court was exercising the utmost caution in crafting a response to the jury's question. *See Bollenbach v. United States*, 326 U.S. 607, 612–1 (1946) (noting trial judge's obligation to attend to jury questions with "concrete accuracy"). First, the Court offered parties a chance to stipulate to a response, hoping the adversarial process would prevent any misstatements of law. [*See* Motion at 11–12]. When the parties were unable to agree, the Court was inclined to refer the jury back to the Ninth Circuit Model Instruction without further specification. With the end of the day fast approaching, however, the Court opted to give parties a chance to argue their positions orally the next day of

deliberation. Thus, the Court was attending to its duty to respond the best way it sought fit. *See Anekwu*, 695 F.3d at 986 ("[T]he precise manner by which the court fulfills [its] obligation [to answer jury questions] is a matter committed to its discretion.").

Further, "the jury apparently did not want or need the answer to the question in order to reach a unanimous verdict." *See United States v. Ortega-Garcia*, No. CR 17-203 DSF, 2017 WL 11439800, at *3 (C.D. Cal. Dec. 11, 2017), *aff'd*, 748 F. App'x 172 (9th Cir. 2019) (finding the district court's failure to answer a jury note before the jury returned the verdict did not warrant a new trial). Additionally, after the verdict was read, the jurors were polled and "no juror expressed any problem with the verdict." *See id*.

Accordingly, the Court did not err in its instruction to the jury or lack of response to the jury note, and even if an error occurred, it was clearly harmless. Because substantial evidence supports the jury's verdict and instructions to the jury were proper, Gregorini's Motion for a New Trial is **DENIED**.

### B. Judgment as a Matter of Law

Lastly, Gregorini requests the Court grant judgment as a matter of law on access because the evidence does not support the jury's verdict. [Motion at 19–22]. However, because the Court has found substantial evidence supports the jury's verdict, the Court cannot conclude that "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *See E.E.O.C.*, 581 F.3d at 961. As stated, substantial evidence permits the jury to reasonably conclude no Defendant had access to *Emanuel*. *See* Fed. R. Civ. P. 50(a)(1). Therefore, Gregorini's Motion for Judgment as a Matter of Law on access is **DENIED**.

## IV. CONCLUSION

Gregorini's Motion is **DENIED** in its entirety. [Dkt. 450]. Per parties' stipulation, if Defendants move for attorney's fees and costs they are **ORDERED** to do so within fourteen days of the date of this Order. [Dkt. 454].

**IT IS SO ORDERED.**